**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CITY OF EAST ST. LOUIS, an Illinois Municipal Home Rule Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:21-cv-00232-DWD |
| v. | ) ) | |
| MONSANTO COMPANY, SOLUTIA, INC., PHARMACIA, LLC, and DOES 1-100 | ) ) ) | Jury Trial Demanded |
| Defendants. | ) ) | |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND ABATEMENT**

# TABLE OF CONTENTS

I.     NATURE OF THE LAWSUIT ............................................................................ 1

II.    JURISDICTION AND STATUTE OF LIMITATIONS.................................... 6

III.   PARTIES ........................................................................................................... 7

       A.     PLAINTIFF................................................................................................... 7

       B.     DEFENDANTS .............................................................................................. 8

IV.    CAUSES OF ACTION...................................................................................... 10

       COUNT I – PUBLIC NUISANCE ...................................................................... 10

       COUNT II – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §94-91.................................... 12

       COUNT III – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §50-78 .............................. 14

       COUNT IV – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §62-45 .............................. 15

       COUNT V – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §50-71 ................................ 16

       COUNT VI – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §§50-79 AND 62-2
       (ABATEMENT).......................................................................................................... 18

       COUNT VII – CONTINUING TRESPASS ......................................................... 20

       COUNT VIII– DESIGN DEFECT ...................................................................... 21

       COUNT IX – FAILURE TO WARN AND INSTRUCT ...................................... 23

       COUNT X – NEGLIGENCE................................................................................ 25

       JURY DEMAND .................................................................................................. 27

COMES NOW Plaintiff, The City of East St. Louis (hereinafter "Plaintiff" or "East St. Louis"), by and through its undersigned counsel, and for its First Amended Complaint against the Defendants, Monsanto Company (hereinafter "Monsanto"), Solutia, Inc. (hereinafter "Solutia"), and Pharmacia LLC (hereinafter "Pharmacia") (collectively referred to as "Monsanto" or "the Defendants"), states as follows:

## I.      NATURE OF THE LAWSUIT

1.      The City of East St. Louis, Illinois brings this action in its public governmental capacity seeking all legally cognizable fines and damages available to it for the contamination of vast swaths of its lands with polychlorinated biphenyls ("PCBs") manufactured in Defendants' Monsanto Plant in adjacent Sauget, Illinois.[1]

2.      Monsanto manufactured PCBs and other chemical products at the Monsanto Plant from approximately 1936 through 1977. During this time period, Monsanto was the sole producer of PCBs in the United States. By 1970, PCBs had become one of Monsanto's most profitable products. As a byproduct of Monsanto's PCB manufacturing operations and waste handling practices, PCBs were emitted into the atmosphere and into and onto East St. Louis lands.

3.      PCBs are toxic and dangerous synthetic organic chemical compounds. Due to their non-flammability, chemical stability, high boiling point and electrical insulating properties, PCBs were used in hundreds of industrial applications, including in electrical, heat transfer and hydraulic equipment and as plasticizers in paints, plastics and rubber products. Between 1936 and 1977, approximately 390,000 metric tons of PCBs were *produced* at the Monsanto Plant. In addition,

---

[1] Upon information and belief, 1.1 acres of the Solutia/Monsanto facility is assessed in the corporate limits of the City of East St. Louis. The facility was known as the W.G. Krummrich Plant and will be referred to as the "Monsanto Plant" throughout this Complaint.

thousands of metric tons of PCB-containing wastes were *incinerated* at the Monsanto Plant after 1977. Finally, Monsanto *deposited* various hazardous wastes, including PCBs, in toxic dumps in Sauget from the 1940s through the 1980s.

4.     When Monsanto began manufacturing PCBs in 1936, there were zero background levels of PCBs in the United States. By the late 1970s, PCBs were a worldwide environmental pollutant and part of almost every human being.

5.     PCBs are found in bays, oceans, rivers, streams, soil, and air. They have been detected in the tissues of all living beings, including all forms of marine life, various animals and birds, plants and trees, and humans. PCBs regularly leach, leak, off-gas, and escape their intended applications, thereby dispersing into and onto adjacent lands and waterways.

6.     The extent of toxic environmental PCB contamination is troubling because PCBs cause a variety of adverse health effects. In humans, PCB exposure is associated with cancer and other serious health effects, including effects on the immune system, reproductive system, nervous system, and endocrine system. In addition, PCBs destroy populations of fish, birds, and other animal life.

7.      Between 1936 and 1977, Monsanto was responsible for the manufacture of 99% or more of all PCBs used or sold within the United States. Moreover, most, if not all, of the PCB contamination found in soil samples within East St. Louis is directly attributable to the Monsanto Plant. PCBs are completely anthropogenic, and there are no other known sources for the East St. Louis PCB contamination other than the Monsanto Plant's PCB manufacturing operations and waste handling practices.

8.     Because of PCBs' proven toxicity and persistence in the environment, production and, with limited exceptions, use of PCBs were prohibited in the United States in when the U.S.

Environmental Protection Agency (hereinafter "EPA") promulgated final regulations banning PCBs under the Toxic Substances Control Act (hereinafter "TSCA"), enacted by the U.S. Congress in 1976.

9.      Hundreds of East St. Louis-owned lots and rights-of-way (in teal) are immediately adjacent to the Monsanto Plant PCB contaminated site and industrial area (in peach)[2]:



10.      According to the EPA, the average concentration of PCBs in U.S. rural soils is approximately 3 parts per billion ("ppb")[3]. In 2020, 200 separate soil samples were taken from City-owned lots and rights-of-ways located to the north and northeast of the Monsanto Plant. All

---

[2] St. Clair County GIS viewer, retrieved June 17, 2020
https://stclairco.maps.arcgis.com/apps/webappviewer/index.html?id=6943a374c91a427b955e242
aceb62fc6&find=01250112007
[3] US EPA, 2007. Pilot Survey of Levels of Polychlorinated Dibenzo-p-dioxins, Polychlorinated Dibenzofurans, Polychlorinated Biphenyls, and Mercury in Rural Soils of the United States National Center for Environmental Assessment Office of Research and Development U.S. Environmental Protection Agency Washington, DC 20460. EPA/600/R-05/048F April 2007.

samples had PCB concentrations that exceeded the U.S. background average as referenced in a 2007 EPA study.[4] The maximum concentration in a reported sample was 75,300 ppb, or approximately 25,100 times the average concentration in U.S. rural soils. The average concentration of the 200 samples was 3,416 ppb, or 1,138 times the average U.S. soil concentration, with the greatest concentrations reported in the samples closest in proximity to the Monsanto Plant. Prior to 1936, there was no background PCB level in the United States.

**MONSANTO AND PCBS**

11.     At the time Monsanto manufactured PCBs and PCB-containing products, and during the time periods it attempted to dispose of the byproducts of the manufacturing process at its Monsanto Plant, Monsanto knew PCBs were highly toxic, harmful to human and animal health, and environmentally ruinous to nearby municipalities.

12.     Internally, the company acknowledged as early as 1937 that PCBs (often sold under the trade name "Aroclor") produce systemic toxic effects upon extended exposure. In the 1950s, Monsanto's Medical Office specifically advised workers not to eat lunch in the PCB department, with Monsanto's Medical Director declaring that "[w]e know Aroclors are toxic."

13.     Despite its early knowledge of the dangers associated with PCBs, Monsanto embarked on a decades-long campaign of disinformation and deception in order to prolong the manufacture, incineration, and disposal of PCBs in East St. Louis and thereby preserve the considerable profits PCBs generated for the company.

14.     In public statements, Monsanto vigorously denied that PCBs were harmful to human and environmental health despite knowledge to the contrary. Incredibly, it was not until

---

[4] *Id.*

1969 when Monsanto first did a long-term evaluation of PCBs, and this only after outside parties had found PCBs to be a worldwide environmental contaminant.

15.     As early as the late 1930s, Monsanto knew or should have known, based on its knowledge of the environmental risks associated with related chlorinated hydrocarbons like DDT (which Monsanto also manufactured), that its PCB formulations would inevitably volatilize and leach, leak, and escape their intended applications, contaminating sediment, soils, and plants, thereby destroying the utility of vast swaths of lands in East St. Louis.

16.     Monsanto also knew or should have known that PCBs substantially persist in the natural environment rather than break down over time. The environmental persistence of PCBs and their resistance to breaking down is highly correlated with their chlorine content: the higher the chlorine content in a given PCB formulation, the more environmentally persistent it is.

17.     Monsanto sold many high-chlorination PCB formulations for uncontrolled uses knowing that their manufacture at the Monsanto Plant would cause PCB waste to be dispersed into and onto the lands of East St. Louis.

18.     Nonetheless, Monsanto sold PCBs for a variety of uses, including household uses, without any warnings or instructions concerning their safe use or disposal. PCBs were sold for use in paints, caulks, inks, dyes, lubricants, sealants, plasticizers, coolants, hydraulic fluids, fireproofing, and industrial electrical equipment such as capacitors and transformers, among other applications.

19.     Upon information and belief, Monsanto also knew or should have known that PCBs disposed of in landfills, incinerators, and other types of waste facilities in or near East St. Louis regularly leached, leaked, and escaped their disposal sites, entering and contaminating vast swaths of land in East St. Louis.

20.     Monsanto's PCBs now grossly contaminate East St. Louis. Upon information and belief, this toxic PCB contamination will cost East St. Louis millions and millions of dollars because it is forced to attempt to clean up PCBs from its lands if they are to ever have any residential or commercial utility and value. These costs must be borne by Monsanto.

21.     In short, and upon information and belief, East St. Louis will incur massive remediation and abatement costs caused by Monsanto's toxic PCB contamination of vast swaths of its land.

## II.     JURISDICTION AND STATUTE OF LIMITATIONS

22.     This Court has jurisdiction over this action in accordance with 28 USC § 1332(a) (diversity of citizenship) because the Plaintiff is an Illinois Home Rule Municipal Corporation and, as detailed below, the named Defendants are citizens of states other than Illinois. The amount in controversy exceeds $75,000, exclusive of interest and costs.

23.     Further, this Court has personal jurisdiction over Defendants because, as further detailed below, Defendants conduct business in Illinois, purposefully direct or directed their actions toward Illinois, manufactured and sold their products in Illinois, own or possess real estate in Illinois, consented to be sued in Illinois by registering agents for service of process, committed the torts and ordinance violations alleged herein in Illinois, and thereby damaged the Plaintiff, an Illinois political subdivision, and because they have the requisite minimum contacts with Illinois to permit the Court to exercise jurisdiction.

24.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §6972(a), because all of the events or omissions giving rise to the claims herein occurred in this judicial district and the properties that are the subject of this action are also situated in this judicial district.

25.     East St. Louis became aware of PCB contamination of its lands when it received testing samples indicating highly elevated PCB levels in December of 2020.

26.     No statute of limitations or repose can be pleaded against East St. Louis as the allegations and ordinance violations herein are continuous, wrongful, and ongoing, and East St. Louis is a Home Rule Municipal Corporation.

27.     Additionally, under the common law, neither the statute of limitations nor statute of repose may be asserted against Illinois municipalities as plaintiffs in actions involving 'public rights.' _City of Shelbyville v. Shelbyville Restorium, Inc._, 96 Ill. 2d 457, 459, 451 N.E.2d 874 (1983). The doctrine emerges from the Latin maxim "_nullum tempus occurit regi_" (hereinafter _nullum tempus_), which translates to "time does not run against the King." _Shelbyville_, 96 Ill. 2d at 460.

## III.     PARTIES

### A.     PLAINTIFF

28.     The City of East St. Louis is a Home Rule Municipal Corporation located in St. Clair County, Illinois. Under the Illinois Municipal Code, 65 ILCS 5/11-60-2 (West 2008), only the corporate authorities of East St. Louis can define, prevent and abate public nuisances such as the public nuisance ordinance violations described herein. East St. Louis brings this action solely in its public governmental capacity as an Illinois Home Rule Municipal Corporation under the Illinois Constitution, charged with the "power to regulate for the protection of the public health, safety, morals and welfare" of its citizenry.[5]

---

[5] Ill. Const. 1970, Art. VII, §6(a).

29.    East St. Louis has a public governmental interest in its natural resources and lands. Its constitutional obligation to ensure the health and well-being of the public, its environment, and its economy are essential public functions and rights to be vindicated in this litigation. Moreover, upon information and belief, East St. Louis will incur massive costs to pay for this litigation and for the abatement and remediation of Monsanto's toxic PCB contamination.

## B.    DEFENDANTS

30.    Defendant, Monsanto Company ("Monsanto"), is a Delaware corporation with its principal place of business in St. Louis, Missouri. Following a merger transaction that closed in 2018, Monsanto is a wholly-owned subsidiary of Bayer AG.

31.    Defendant, Solutia, Inc. ("Solutia"), is a Delaware corporation with its principal place of business in St. Louis, Missouri. Solutia is a wholly-owned subsidiary of Eastman Chemical Company.

32.    Defendant, Pharmacia LLC ("Pharmacia"), formerly known as Pharmacia Corporation, is the successor to the original Monsanto Company (hereinafter "Original Monsanto"). Pharmacia LLC is a Delaware company with its principal place of business in Peapack, New Jersey. Pharmacia is now a wholly-owned subsidiary of Pfizer, Inc.

33.    Original Monsanto operated an agricultural products business, a pharmaceutical and nutrition business, and a chemical products business. Original Monsanto began manufacturing PCBs in 1935 after acquiring Swann Chemical Company. Original Monsanto manufactured PCBs within or immediately adjacent to East St. Louis from 1935 to until 1977.

34.    Through a series of transactions beginning in approximately 1997, Original Monsanto's businesses were spun off to form three separate corporations. The corporation now known as Monsanto Company operates Original Monsanto's agricultural products business.

Original Monsanto's chemical products business is now operated by Solutia. Original Monsanto's pharmaceuticals business is now operated by Pharmacia.

35.    Solutia was organized by Original Monsanto to own and operate its chemical manufacturing business. Solutia assumed the operations, assets, and liabilities of Original Monsanto's chemical business.

36.    Although Solutia assumed and agreed to indemnify Pharmacia (then known as Monsanto Company) for certain liabilities related to the chemicals business, Defendants have also entered into agreements to share or apportion liabilities, and/or to indemnify one or more entities, for claims arising from Original Monsanto's chemical business, including the manufacture and sale of PCBs.

37.    In 2003, Solutia filed a voluntary petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code. Solutia's reorganization was completed in 2008. In connection with Solutia's Plan of Reorganization, Solutia, Pharmacia, and Monsanto entered into several agreements under which Monsanto continues to manage and assume financial responsibility for certain tort litigation and environmental remediation related to the chemicals business.

38.    Eastman Chemical Co. reported in its 2019 Form 10-K that it "has been named as a defendant in several [legacy tort] proceedings, and has submitted the matters to Monsanto, which was acquired by Bayer AG in June 2018, as Legacy Tort Claims [as defined in a settlement agreement with Monsanto arising out of Solutia, Inc.'s bankruptcy proceedings]. To the extent these matters are not within the meaning of Legacy Tort Claims, Solutia is potentially liable thereunder. In connection with the completion of its acquisition of Solutia, Eastman guaranteed the obligations of Solutia and Eastman was added as an indemnified party under the Monsanto Settlement Agreement."

39.     In its Form 10-K for the period ending August 31, 2017, filed with the U.S. Securities and Exchange Commission (the last such filing before Bayer AG acquired Monsanto), Monsanto represented: "Monsanto is involved in environmental remediation and legal proceedings to which Monsanto is a party in its own name and proceedings to which its former parent, Pharmacia LLC or its former subsidiary, Solutia, Inc. is a party but that Monsanto manages and for which Monsanto is responsible pursuant to certain indemnification agreements."

## IV.     CAUSES OF ACTION

### COUNT I – PUBLIC NUISANCE
### (ALL DEFENDANTS)

40.     Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

41.     The Defendants manufactured, distributed, marketed, promoted, and attempted the disposal of commercial PCBs and PCB-containing products in a manner that created or contributed to the creation of public nuisances that unreasonably obstruct the free use and enjoyment of East St. Louis' lands.

42.     The Defendants' actions and omissions, including the release and migration of PCBs and PCB-containing products and wastes into and onto the lands of East St. Louis, constitute past and continuing public nuisances.

43.     An ordinary person would be reasonably annoyed or disturbed by the presence of toxic PCBs in and on East St. Louis lands.

44.     The seriousness of the environmental, human health risks, and economic devastation from PCBs far outweighs any social utility of the Defendants' conduct in manufacturing their commercial PCBs and PCB-containing products at the Monsanto Plant.

45.     The Defendants' conduct caused and continues to cause permanent harm and seriously damages the property values and utility of the residential and commercial properties in East St. Louis, thereby causing East St. Louis to, upon information and belief, lose millions of dollars in tax revenue over the last four decades.

46.     Upon information and belief, East St. Louis will incur massive costs to investigate, monitor, analyze, abate, and remediate the Defendants' PCB toxic contamination of East St. Louis lands.

47.     As a result of the Defendants' conduct, East St. Louis has suffered, is suffering, and will continue to suffer injuries to the public interest and to the health, safety, and well-being of its residents, land, environment, and economy.

48.     The Defendants are under a continuing duty to act to correct, abate, and remediate the public nuisances their toxic PCB contamination has caused, and each day on which they fail to do so constitutes a new injury to East St. Louis.

49.     As a direct and proximate result of Monsanto's creation of public nuisances, East St. Louis has suffered, continues to suffer, and will into the indeterminable future suffer monetary damages, including loss of property values, loss of utility of East St. Louis lands and natural resources, loss of municipal income and tax revenue, and incuring costs to monitor, abate, and remediate Monsanto's toxic PCB contamination of East St. Louis lands.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.     Damages for injury to East St. Louis' land and natural resources, including the economic impact to the City from the loss of ecological health or other losses resulting from the

conduct alleged herein, including but not limited to the loss of value in the City's properties; and the loss of revenue to the City resulting from Monsanto's actions and omissions;

B.    An award of past, present, and future costs to abate and remediate the Monsanto PCB toxic contamination;

C.    A judicial determination that each Defendant is liable for all future costs related to the investigation, abatement, remediation and removal of the Monsanto PCB toxic contamination;

D.    An order requiring Defendants to return all monies by which they were unjustly enriched as a result of spending nothing to prevent the toxic PCB contamination of East St. Louis's lands and natural resources;

E.    Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

F.    Such other and further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §94-91 (ALL DEFENDANTS)

50.    Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

51.    The East St. Louis Municipal Code prohibits any person from dumping, depositing, dropping, throwing, discarding or leaving, or to cause or permit the dumping, depositing, dropping, throwing, discarding or leaving of, litter upon any public or private property in the state, or upon or into any river, lake, pond or other stream or body of water. East St. Louis Municipal Code §94-91.

52.    East St. Louis Municipal Code §94-2 further states that "[l]itter means any discarded, used or unconsumed substance or waste, including but not limited to nauseous or

offensive matter of any kind." A certified copy of §94-91 of the East St. Louis Municipal Code is attached hereto and incorporated herewith as **Exhibit A.**

53.    The Defendants' actions and omissions, including the release and migration of PCBs into and onto East St. Louis lands, constitute unlawful dumping as defined by, and in violation of, §94-91.

54.    East St. Louis has a penalty clause for violations of code §94-91, namely East St. Louis Municipal Code Section §1-15 (a certified copy of Section 1 of the East St. Louis Municipal Code is attached hereto and incorporated herewith as **Exhibit B**) which states:

> Whenever in…any ordinance of the city any act is prohibited or declared to be unlawful or an offense…where no specific penalty is provided therefor, the violation of any such provision of this Code or any ordinance shall be a misdemeanor…punished by a fine not exceeding $750.00… Each day any violation of any provision of this Code or of any ordinance shall constitute a separate offense.

55.    The Defendants' unlawful acts and omissions resulting in toxic PCB contamination of East St. Louis lands, and the leaving of that toxic PCB contamination on East St. Louis lands, has violated, is currently violating, and will continue into the indeterminable future to violate the Municipal Code as aforementioned and, thus, Defendants are subject to daily fines for each past, present, and future ordinance violation.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.    Fines consistent with the City of East St. Louis Municipal Code for each and every separate offense;

B.    Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

C.    Such other and further relief as the Court deems just and proper.

## COUNT III – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §50-78
### (ALL DEFENDANTS)

56.     Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

57.     The East St. Louis Municipal Code prohibits any person from bringing into or keeping within the City of East St. Louis a substance or thing which shall be or occasion a nuisance within the city or which may or shall be dangerous or detrimental to the public health. East St. Louis Municipal Code §50-78. A certified copy of §50-78 of the East St. Louis Municipal Code is attached hereto and incorporated herewith as **Exhibit C**.

58.     The Defendants' actions and omissions, including the release and migration of PCBs and PCB-containing products into and onto the lands of East St. Louis and nearby residences and commercial properties, constitute bringing into and keeping within the City of East St. Louis a substance or thing which constitutes a public nuisance or is dangerous or detrimental to the public health, as defined by, and in violation of, §50-78.

59.     East St. Louis has a penalty clause for violations of §50-78, namely, East St. Louis Municipal Code Section §1-15 (**Exhibit B**), which states:

> Whenever in…any ordinance of the city any act is prohibited or declared to be unlawful or an offense…where no specific penalty is provided therefor, the violation of any such provision of this Code or any ordinance shall be a misdemeanor…punished by a fine not exceeding $750.00... Each day any violation of any provision of this Code or of any ordinance shall constitute a separate offense.

60.     The Defendants' unlawful acts and omissions resulting in toxic PCB contamination of East St. Louis lands, and the leaving of that toxic PCB contamination on East St. Louis lands, has violated, is currently violating, and will continue into the indeterminable future to violate the Municipal Code as aforementioned and, thus, Defendants are subject to daily fines for each past, present, and future ordinance violation.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.      Fines consistent with the City of East St. Louis Municipal Code for each and every separate offense;

B.      Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

C.      Such other and further relief as the Court deems just and proper.

## COUNT IV – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §62-45 (ALL DEFENDANTS)

61.     Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

62.     The East St. Louis Municipal Code prohibits any part of the contents of, or substances from refuse, waste or anything which, by its decomposition, could or would become offensive to human beings, detrimental to health or create, or tend to create, a nuisance from being thrown, deposited or placed by any person upon any vacant lot of land or vacant place upon the surface of any lot of land within the City. East St. Louis Municipal Code §62-45. A certified copy of §62-45 of the East St. Louis Municipal Code is attached hereto and incorporated herewith as **Exhibit D**.

63.     The Defendants' actions and omissions, including the release and migration of PCBs and PCB-containing products into and onto the lands of East St. Louis and nearby residences and commercial properties, constitute depositing substances or waste onto City lots and lands which is dangerous or detrimental to the public health and which is a nuisance, as defined by, and in violation of, §62-45.

15

64.     East St. Louis has a penalty clause for violations of the prohibitions of §62-45, namely, East St. Louis Municipal Code Section §1-15 (**Exhibit B**), which states:

> Whenever in…any ordinance of the city any act is prohibited or declared to be unlawful or an offense…where no specific penalty is provided therefor, the violation of any such provision of this Code or any ordinance shall be a misdemeanor…punished by a fine not exceeding $750.00... Each day any violation of any provision of this Code or of any ordinance shall constitute a separate offense.

65.     The Defendants' unlawful acts and omissions resulting in toxic contamination of East St. Louis lands, and the leaving of that toxic PCB contamination on East St. Louis lands, has violated, is currently violating, and will continue into the indeterminable future to violate the Municipal Code as aforementioned and, thus, Defendants are subject to daily fines for each past, present, and future ordinance violation.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.     Fines consistent with the City of East St. Louis Municipal Code for each and every separate offense;

B.     Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

C.     Such other and further relief as the Court deems just and proper.

## COUNT V – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §50-71 (ALL DEFENDANTS)

66.     Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

67.     The East St. Louis Municipal Code states that no person shall create, commit, or continue a nuisance of any kind or description in, upon or about any private or public property or place with the City which may affect the health, comfort or convenience of persons residing or

doing business in the vicinity. East St. Louis Municipal Code §50-71. A certified copy of §50-71 of the East St. Louis Municipal Code is attached hereto and incorporated herewith as **Exhibit E**.

68.     The East St. Louis Municipal Code further states that the City shall cause all nuisances to be abated or removed which it may deem obnoxious to the public health. East St. Louis Municipal Code §62-2. A certified copy of §62-2 of the East St. Louis Municipal Code is attached hereto and incorporated herewith as **Exhibit F**.

69.     The Defendants' actions and omissions, including the release and migration of PCBs and PCB-containing products into and onto the lands of East St. Louis and nearby residences and commercial properties, constitute the creation of, the committing of, and the permitting to continue a public nuisance, as defined by, and in violation of, §50-71.

70.     East St. Louis has a penalty clause for violations of the prohibitions of §50-71, namely, East St. Louis Municipal Code Section §1-15 (**Exhibit B**), which states:

> Whenever in…any ordinance of the city any act is prohibited or declared to be unlawful or an offense…where no specific penalty is provided therefor, the violation of any such provision of this Code or any ordinance shall be a misdemeanor…punished by a fine not exceeding $750.00... Each day any violation of any provision of this Code or of any ordinance shall constitute a separate offense.

71.     The Defendants' unlawful acts and omissions resulting in toxic PCB contamination of East St. Louis lands, and the leaving of that toxic PCB contamination on East St. Louis lands, has violated, is currently violating, and will continue into the indeterminable future to violate the Municipal Code as aforementioned and, thus, Defendants are subject to daily fines for each past, present, and future ordinance violation.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.     Fines consistent with the City of East St. Louis Municipal Code for each and every separate offense;

B.     Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

C.     Such other and further relief as the Court deems just and proper.

## COUNT VI – VIOLATION OF THE CITY OF EAST ST. LOUIS ORDINANCE §§50-79 AND 62-2 (ABATEMENT)

## (ALL DEFENDANTS)

72.     Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

73.     The East St. Louis Municipal Code states whenever any nuisance shall be found on any premises within the City, City officials are authorized to cause such nuisance to be summarily abated in such manner as may be directed. East St. Louis Municipal Code §50-79. A certified copy of §50-79 of the East St. Louis Municipal Code is attached hereto and incorporated herewith as **Exhibit G**.

74.     The East St. Louis Municipal Code further states that the City shall cause all nuisances to be abated or removed which it may deem obnoxious to the public health. East St. Louis Municipal Code §62-2. A certified copy of §62-2 of the East St. Louis Municipal Code is attached hereto and incorporated herewith as **Exhibit F**.

75.     The Defendants' actions and omissions, including the release and migration of PCBs and PCB-containing products into and onto the lands of East St. Louis and nearby residences and commercial properties, constitute the creation of, the committing of, and the permitting to continue a public nuisance, as defined by, and in violation of, §50-71, thus giving rise to the

demand for a complete abatement and remediation of all such toxic PCB contamination under §50-79.

76. Notice is here given to Defendants that East St. Louis demands a full abatement and remediation of all PCB contamination caused by the Defendants' business activities in and around the W. G. Krummrich Plant and at Defendants' unilateral expense. East St. Louis reserves the right to supplement the lists of properties, soils, waterways, and natural resources which may be found to be also PCB-contaminated.

77. The Defendants' unlawful acts and omissions resulting in toxic PCB contamination of East St. Louis lands, and the leaving of that toxic PCB contamination on East St. Louis lands, has violated, is currently violating, and will continue into the indeterminable future to violate the Municipal Code as aforementioned and, thus, Defendants are subject to daily fines for each past, present, and future ordinance violation; and are under a continuing obligation to fully abate and remediate all toxic PCB contamination caused by Defendants' PCBs.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A. Fines consistent with the City of East St. Louis Municipal Code for each and every separate offense;

B. Injunctive relief in the form of Court Orders mandating the immediate and complete abatement and remediation of all East St. Louis lands caused by the Defendants' PCB contamination;

C. Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

D. Such other and further relief as the Court deems just and proper.

## COUNT VII – CONTINUING TRESPASS

## (ALL DEFENDANTS)

78.     Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

79.     The Defendants knew with substantial certainty at the time of their manufacture and sale of PCBs and PCB-containing products, and then with their incineration and disposal of PCB-containing products and wastes, that such activities were likely if not certainly to result in contamination of the lands of East St. Louis.

80.     The Defendants' conduct as described constitutes a continuing trespass upon East St. Louis property, that is, a continuing invasion in and of the exclusive possession and control of its lands.

81.     The Defendants' conduct caused and continues to cause permanent harm to and seriously damages the property values and utility of the residential and commercial properties in East St. Louis, thereby causing East St. Louis to upon information and belief lose millions of dollars in tax revenue over the last four decades.

82.     Upon information and belief, East St. Louis will incur massive costs to investigate, monitor, analyze, abate and remediate Defendants' toxic PCB contamination.

83.     As a result of the Defendants' conduct, East St. Louis has suffered, is suffering, and will continue to suffer injuries to the public interest and to the health and well-being of its residents, lands, and economy.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.     Damages for injury to East St. Louis's lands, including the economic impact to the City; the loss of ecological health or other losses resulting from the conduct alleged herein; the

loss of value in the City's properties; and the loss of revenue to the City resulting from Defendants' actions and omissions;

B.     An award of past, present, and future costs to investigate, assess, analyze, monitor, abate and remediate the toxic PCB contamination;

C.     A judicial determination that each Defendant is liable for all future costs related to the investigation, abatement, remediation and removal of the toxic PCB contamination;

D.     An order requiring Defendants to return all monies by which Defendants were unjustly enriched as a result of spending nothing to prevent the destruction of East St. Louis's lands;

E.     Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

F.     Such other and further relief as the Court deems just and proper.

## COUNT VIII– DESIGN DEFECT
## (ALL DEFENDANTS)

84.     Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

85.     Defendants' PCBs mixtures and PCB-containing products as described herein constituted an unreasonably dangerous design of such products in that they contained PCBs, a known toxic substance and carcinogen, at the time they left their control.

86.     Defendants' PCB mixtures and PCB-containing products' toxicity, ability to bio-accumulate, inability to be contained, and environmental persistence rendered them defective and unreasonably dangerous at all times.

87.     Defendants' PCB mixtures and PCB-containing products were unsafe as designed.

88.     The risk of danger inherent in the design of the Defendants' PCB mixtures and PCB-containing products drastically outweighed any perceived benefits of the design of such products when such products were put to reasonably foreseeable uses.

89.     Alternatively, Defendants knew their PCB mixtures and PCB-containing products were unsafe to an extent beyond that which would be contemplated by an ordinary person.

90.     Practical and feasible alternative designs for Defendants' PCB mixtures and PCB-containing products capable of reducing East St. Louis's injuries, damages, and financial losses were commercially available, including mineral oils, silicone fluids, vegetable oils, and nonfluid insulating chemicals, as well as alternative chemical formulations and/or additional chemical processing measures.

91.     The PCB mixtures and PCB-containing products reached the East St. Louis lands without any substantial change in condition from when they left the control of the Defendants.

92.     The Defendants' unreasonably dangerous PCB formulas and PCB-containing products caused the permanent presence of PCBs in East St. Louis and injury to the public interest, including threats to the physical and economic health and well-being of East St. Louis's citizens.

93.     East St. Louis has suffered, is suffering, and will continue to suffer into the indeterminable future damage to its lands, and damages to its public treasury as a result of Defendants' unreasonably dangerous PCB formulas and PCB-containing products and the presence of PCBs within East St. Louis.

94.     The Defendants are strictly liable for all damages arising out of their defectively designed PCB formulas, mixtures, and PCB-containing products.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.      Damages for injury to East St. Louis's lands, including the economic impact to the City; the loss of ecological health or other losses resulting from the conduct alleged herein; the loss of value in the City's properties; and the loss of revenue to the City resulting from Defendants' actions and omissions;

B.      An award of past, present, and future costs to investigate, assess, analyze, monitor, abate, and remediate the toxic PCB contamination;

C.      A judicial determination that each Defendant is liable for all future costs related to the investigation, abatement, remediation and removal of PCBs from, in, and around East St. Louis;

D.      An order requiring Defendants to return all monies by which Defendants were unjustly enriched as a result of spending nothing to prevent the destruction of East St. Louis's lands;

E.      Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

F.      Such other and further relief as the Court deems just and proper.

## <u>COUNT IX – FAILURE TO WARN AND INSTRUCT</u>
## <u>(ALL DEFENDANTS)</u>

95.     Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

96.     Defendants' PCBs and PCB-containing products were not reasonably safe at the time they left their control because they lacked adequate warnings and/or instructions concerning the dangers and hazards associated with PCBs.

97.     At the time the Defendants manufactured, distributed, marketed, promoted, and sold PCBs and PCB-containing products, they knew their products were not safe and were likely if not certain to cause toxic PCB contamination of lands in East St. Louis.

98.     Despite the Defendants' knowledge, they failed to provide adequate warnings and/or instructions that their PCBs and PCB-containing products were toxic, carcinogenic, and would contaminate East St. Louis's lands.

99.     Defendants could have warned of and instructed about these dangers but failed to do so and intentionally concealed information in order to maximize profits for decades.

100.     In addition, the Defendants advised their commercial customers to dispose of PCBs and PCB-containing wastes in landfills, and they themselves did the same, when they knew that this method of disposal would lead to contamination of East St. Louis's lands.

101.     Defendants continued to conceal the dangers of PCBs after they manufactured, distributed, marketed, promoted, and sold PCBs and PCB-containing products.

102.     Defendants' PCBs and PCB-containing products in East St. Louis caused and continue to cause injury and damage to the physical and economic health and well-being of East St. Louis, including but not limited to the loss of value to and the utility of the City's properties; the lost revenue to the City resulting from Defendants' actions and omissions; and the costs of the City's efforts to abate and remediate its toxic PCB contamination.

103.     East St. Louis has suffered, is suffering, and will continue to suffer into the indeterminable future injuries to its lands and damages to its public treasury as a result of Defendants' failure to warn and instruct.

104.    Defendants are strictly liable for all damages to the City of East St. Louis arising out of their failure to provide adequate warnings and instructions regarding their unreasonably dangerous PCBs and PCB-containing products.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.    Damages for injury to East St. Louis's lands, including the economic impact to the City; the loss of ecological health or other losses resulting from the conduct alleged herein; the loss of value in the City's properties; and the loss of revenue to the City resulting from Defendants' actions and omissions;

B.    An award of past, present, and future costs to investigate, assess, analyze, monitor, abate, and remediate the toxic PCB contamination;

C.    A judicial determination that each Defendant is liable for all future costs related to the investigation, abatement, remediation and removal of PCBs from, in and around East St. Louis;

D.    An order requiring Defendants to return all monies by which Defendants were unjustly enriched as a result of spending nothing to prevent the destruction of East St. Louis's lands;

E.    Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

F.    Such other and further relief as the Court deems just and proper.

## COUNT X – NEGLIGENCE
## (ALL DEFENDANTS)

105.    Plaintiff restates, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

106.     The Defendants owed a duty of reasonable care to protect East St. Louis and its public and lands against the unreasonable health and safety risks resulting from the production, use, and disposal of PCBs and PCB-containing products at their Monsanto Plant.

107.     The Defendants failed to exercise ordinary care because a reasonably careful company that knew of its PCBs' toxicity, carcinogenicity, danger to humans, and destruction of the lands would not manufacture or distribute those products, would warn of their toxic and environmentally hazardous properties, or would take steps to enhance the safety and/or reduce the toxicity and environmental persistence of the products.

108.     The Defendants failed to exercise ordinary care because reasonably careful companies that knew that PCBs could not be contained during normal production, use, and disposal efforts would not continue to manufacture, distribute, and attempt to dispose of PCBs in a way that allowed the discharge of PCBs into and onto East St. Louis lands.

109.     The Defendants failed to exercise ordinary care because reasonably careful companies would not continue to manufacture and dispose of PCBs in mass quantities and to the extent and in the applications that Defendants manufactured and attempted to dispose of them.

110.     Defendants' PCBs and PCB-containing products in East St. Louis caused and continue to cause injury and damage to the physical and economic health and well-being of East St. Louis, including but not limited to the loss of value to and the utility of the City's properties; the lost revenue to the City resulting from Defendants' actions and omissions; and the costs of the City's efforts to abate and remediate its toxic PCB contamination.

111.     East St. Louis has suffered, is suffering, and will continue to suffer into the indeterminable future injuries to its lands, and damages to its public treasury as a result of Defendants' failure to warn and instruct.

WHEREFORE, Plaintiff, the City of East St. Louis, prays for Judgment in its favor and against Defendants, jointly and severally, as follows:

A.      Damages for injury to East St. Louis's lands, including the economic impact to the City; the loss of ecological health or other losses resulting from the conduct alleged herein; the loss of value in the City's properties; and the loss of revenue to the City resulting from Defendants' actions and omissions;

B.      An award of past, present, and future costs to investigate, assess, analyze, monitor, abate, and remediate the toxic PCB contamination;

C.      A judicial determination that each Defendant is liable for all future costs related to the investigation, abatement, and remediation and removal of PCBs from, in and around East St. Louis;

D.      An order requiring Defendants to return all monies by which Defendants were unjustly enriched as a result of spending nothing to prevent the destruction of East St. Louis's lands;

E.      Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and

F.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, the City of East St. Louis, respectfully requests trial by jury on all claims so triable.

Dated: April 22, 2021               Respectfully Submitted,

**CHATHAM & BARICEVIC**

By:    */s/ John Baricevic*
        John Baricevic, #3121537
        Grey Chatham, #6312518
        107 W. Main Street
        Belleville, IL 62220
        Phone: (618) 233-2200
        Fax: (618) 233-1589
        john@chathamlaw.org
        greyjr@chathamlaw.org

**THE DRISCOLL FIRM, LLC**
John J. Driscoll, #6276464
1311 Avenida Ponce de Leon, 6th Floor
San Juan, PR 00907
Phone: (618) 444-6049
Fax: (314) 932-3233
john@jjlegal.com

**THE DRISCOLL FIRM, P.C.**
Paul W. Johnson, #6193774
Christopher J. Quinn, #6310758
211 N. Broadway, Suite 4050
St. Louis, MO 63102
Phone: (314) 932-3232
Fax: (314) 932-3233
paul@thedriscollfirm.com
chris@thedriscollfirm.com

**SANDERS PHILLIPS GROSSMAN, LLC**
Melissa K. Sims, #6231297
100 Garden City Plaza, Suite 500
Garden City, NY 11530
Phone: (516) 741-5600, ext. 8201
Fax: (516) 741-0128
msims@thesandersfirm.com

**SMOUSE & MASON, LLC**
Roy L. Mason, #938118
Zachary E. Howerton, #151215033
233 Duke of Gloucester Street
Annapolis, MD 21401
Phone: (410) 269-6620
Fax: (410) 269-1235
rlm@smouseandmason.com
zeh@smouseandmason.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 22, 2021 the foregoing document was electronically filed with the Clerk of Court and will be served by operation of the Court's CM/ECF system upon all registered parties.

*/s/ John Baricevic*