IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CITY OF EAST ST. LOUIS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-232-DWD |
| | ) |
| **MONSANTO COMPANY,** | ) |
| **PHARMACIA LLC, and** | ) |
| **SOLUTIA, INC.,** | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court are Defendants' motion to dismiss Counts II–VI and VIII–X (Doc. 32) and motion for more definite statement as to Counts I and VII (Doc. 33) of Plaintiff the City of East St. Louis' ("the City") first amended complaint (Doc. 29). The motions are fully briefed and ripe for decision. (Docs. 32, 33, 37 & 40) For the following reasons, the motion to dismiss is due to be granted in part and denied in part, and the motion for more definite statement is due to be denied.

### I.  FACTUAL BACKGROUND

Defendants Monsanto Company, Pharmacia LLC, and Solutia, Inc. are the successors to the original Monsanto organization ("Monsanto"), and the City alleges that they have all assumed any liability for Monsanto's production of polychlorinated biphenyls ("PCBs"). (Doc. 29 at 10–11) Monsanto manufactured PCBs at its plant in Sauget, Illinois from 1936 to 1977. (Doc. 29 at 3) During that period, Monsanto was the only producer of PCBs in the United States. (Doc. 29 at 3) About 1.1 acres of the plant fall

within the corporate limits of East St. Louis, and "[h]undreds of East St. Louis-owned lots and rights-of-way . . . are immediately adjacent to the Monsanto Plant PCB contaminated site and industrial area . . . ." (Doc. 29 at 3 & 5)

PCBs have a diverse set of uses, including in electrical, heat transfer, and hydraulic equipment and as plasticizers in paints, plastics, and rubber products. Monsanto produced about 390,000 metric tons of PCBs at its plant from 1936 to 1977, incinerated thousands of metric tons of PCBs at its plant after 1977, and deposited PCB waste in toxic dumps in Sauget from the 1940s to the 1980s. (Doc. 29 at 3–4) Soil samples taken in 2020 from East St. Louis-owned lots and rights-of-ways located near to the Monsanto plant contained PCB concentrations far exceeding the national background average. (Doc. 29 at 5–6)

The City alleges that Monsanto knew that PCBs were highly toxic when it was producing them. (Doc. 29 at 6) Yet, Monsanto publicly denied that PCBs were harmful to humans and the environment. (Doc. 29 at 6–7) Monsanto also knew or should have known that PCBs persist in the natural environment instead of breaking down over time. (Doc. 29 at 7) Thus, Monsanto also knew or should have known that PCBs disposed of in landfills, incinerators, and other waste facilities in or near East St. Louis "regularly leached, leaked, and escaped their disposal sites, entering and contaminating vast swaths of land in East St. Louis." (Doc. 29 at 7) The PCB contamination will cost the City millions of dollars to clean its land and restore its residential or commercial value. (Doc. 29 at 8)

## II. LEGAL STANDARDS

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint

must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. Proc. 8(a)(2)). The court will accept all well-pleaded allegations as true. *Iqbal*, 556 U.S. at 678. However, the court will not accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 677–78). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Arnett*, 658 F.3d at 751–52 (internal quotations and citation omitted).

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Motions under Rule 12(e) are generally disfavored and should be granted "only if the complaint is so unintelligible that the defendant cannot draft a responsive pleading." *Cain v. Cont'l. Tire*, No. 19-cv-643-NJR, 2020 WL 5645670, at *1 (S.D. Ill. Sept. 22, 2020) (internal quotation marks and citation omitted). "When the complaint apprises the responding party of the substance of the

3

claim being asserted, or where the details can be obtained through discovery, the motion should be denied." *Id.*

## III. ANALYSIS

Defendants seek to dismiss two groups of Plaintiff's claims: (1) Counts II–VI, which are based on East St. Louis city ordinances and (2) Counts VIII–X, which are product-liability claims. Defendants have also filed a separate motion for more definite statement as to Counts I and VII. The Court addresses each group of claims in turn.

**A.   Ordinance-based Claims**

"Under Illinois law, municipal ordinances are interpreted according to the traditional rules of statutory construction." *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 871 (7th Cir. 2009). "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning. Where the language in the statute is clear and unambiguous, this court will apply the statute as written without resort to extrinsic aids of statutory construction." *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 303 (Ill. 2009) (internal citations omitted).

*1.   Code § 94-91 (Count II)*

"No person shall dump, *deposit*, drop, throw, discard or leave, *or cause or permit* the dumping, *depositing*, dropping, throwing, discarding or leaving of, litter upon any public or private property in the state . . . ." East St. Louis, Ill., Code § 94-91 (emphasis added). As used in the East St. Louis city code, "litter" means

4

> any discarded, used or unconsumed substance or waste [including but] not limited to, any garbage, trash, refuse, debris, rubbish, grass clippings or other lawn or garden waste, newspaper, magazine, glass, metal, plastic or paper container or other packaging, construction material, abandoned vehicle (as defined in the Illinois Vehicle Code), motor vehicle part, furniture, oil, carcass of a dead animal, nauseous or offensive matter of any kind, *any object likely to injure any person* or create a traffic hazard, or anything else of an unsightly or unsanitary nature *which has been discarded, abandoned or otherwise disposed of improperly*.

*Id.* § 94-2 (emphasis added). In its first amended complaint, the City claims that Monsanto's "PCB manufacturing operations and waste handling practices" caused PCBs to be "emitted into the atmosphere and into and onto East St. Louis lands." (Doc. 29 at 3) These "waste handling practices" included the disposal of PCBs "in toxic dumps in Sauget." (Doc. 29 at 3) These actions violated the ordinance because they caused "the release and migration of PCBs into and onto East St. Louis lands." (Doc. 29 at 15)

Defendants argue that § 94-91 prohibits actively dumping litter in East St. Louis. They argue that the City only alleges that Monsanto actively produced and dumped PCBs in Sauget and that any subsequent leaking or leaching of PCBs into nearby East St. Louis would not violate § 94-91. Defendants also argue that the prohibited activities apply only to quantities of material that can be "collected and physically discarded" and not to materials such as PCBs that are measured in parts per billion and can only be detected through the sampling and analysis of soil. They insist that § 94-91 only prohibits "dumping trash on the ground or tossing beer cans, plastic bags, candy bar wrappers, or the like, in places where they do not belong." (Doc. 32 at 6)

The City argues in response that Monsanto's actions fall under the definition of "deposit." Under Illinois rules of statutory construction, the dictionary may be used to

5

understand the meaning of undefined terms. *People v. Beachem*, 890 N.E.2d 515, 520 (Ill. 2008). Further, an undefined term "must be given its full meaning, not the narrowest meaning of which it is susceptible." *Lake Cnty. Bd. of Rev. v. Prop. Tax Appeal Bd. of the State of Ill.*, 519 N.E.2d 459, 461 (Ill. 1988). The East St. Louis city code does not define "deposit."

The *Merriam-Webster* dictionary defines "deposit" as "to lay down" or "to let fall." *Deposit*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/deposit (last visited Aug. 23, 2021). Under this definition, Monsanto plausibly deposited PCBs into toxic dumps in Sauget, which then migrated by natural processes into nearby East St. Louis. Although the City has not plead facts showing that Monsanto actively deposited PCBs in East St. Louis, the statute also prohibits anyone from causing or permitting the depositing of litter in East St. Louis. The City alleges that Monsanto knew that the PCBs would migrate into surrounding areas. Thus, the City has adequately alleged that Monsanto violated § 94-91 by permitting PCBs to be deposited by natural processes onto land within city limits.

Further, PCBs fall under the definition of litter because the City has alleged that they are objects likely to injure persons and were disposed of improperly. The definition of "litter" in § 94-2 certainly applies to tossing aside beer cans and candy wrappers, as Defendants argue. But nothing in the language of the ordinance necessarily excludes the act of depositing PCBs. For these reasons, the City has stated a plausible claim under § 94-91, and Defendants' motion to dismiss is due to be denied as it pertains to Count II.

    *2.    Code § 62-45 (Count IV)*

No part of the contents of, or substances from, any sink, privy or cesspool,

>or any manure, ashes, garbage, offal, rubbish, dirt, refuse, *waste* or thing which, by its decomposition, could or would become offensive to human beings, detrimental to health or create, or tend to create, a nuisance shall be thrown, deposited or placed by any person upon any vacant lot of land or vacant place upon the surface of any lot of land within the city, whether such lot is enclosed or otherwise; nor shall any of such substances *be allowed by any person to run or drop* from the premises occupied by such person upon any vacant lot of land or vacant place upon the surface of any lot of land within the city.

East St. Louis, Ill., Code § 62-45 (emphasis added).

Defendants first argue that only the City's health department has the authority to enforce § 62-45. While Chapter 62 of the city code does establish the health department, nothing in that chapter gives the health department the exclusive authority to enforce Chapter 62 in court. Nothing else in Chapter 62 suggests that the City does not have the authority to bring a claim under § 62-45.

Defendants argue that § 62-45 only prohibits "actively dumping or discarding garbage or waste material onto vacant lots." (Doc. 32 at 8) As discussed above, the City has not alleged that Monsanto actively deposited PCB waste in East St. Louis. But § 62-45 also prohibits allowing waste "to run or drop" upon lands within the City. The City has alleged that Monsanto deposited PCB waste in dumps in Sauget and that the waste then migrated to East St. Louis lands. Thus, the City has adequately alleged that Monsanto passively allowed PCB waste to "run" from Sauget to East St. Louis in violation of § 62-45. Defendants' motion to dismiss is due to be denied as it pertains to Count IV.

   3.  *Code §§ 50-71, 50-78, 50-79 & 62-2 (Counts III, V & VI)*

The East St. Louis city code contains a general probation against nuisances: "No person shall create, commit, permit or continue a nuisance of any kind or description in,

7

upon or about any private property or public place within the city which may affect the health, comfort or convenience of persons residing or doing business in the vicinity." East St. Louis, Ill., Code § 50-71(a). The code also contains a specific prohibition against keeping or bringing a nuisance into the city:

> No person shall bring into or keep with the city for sale or otherwise, either for food or any other purpose whatsoever, any animal, dead or alive, matter, substance or thing which shall be or occasion a nuisance within the city or which may or shall be dangerous or detrimental to the public health.

Code § 50-78. Sections 50-79 and 62-2 empower city officials to abate any nuisance found within the city. The City has not stated a claim under the specific nuisance prohibition in § 50-78 because it has not alleged that Monsanto brought PCBs into East St. Louis or kept them there. But § 50-71 contains a broader prohibition that includes permitting a nuisance in East St. Louis. The *Oxford English Dictionary* defines "permit" as "to allow the occurrence of . . . to allow (something) be carried out or to take place; to give permission or opportunity for." *Permit*, *Oxford English Dictionary*, https://www.oed.com/view/Entry/141222?rskey=IqgtcW&result=3#eid (last visited Aug. 23, 2021). For the same reasons discussed previously, the City has adequately alleged that Monsanto passively allowed PCBs to migrate from Sauget to East St. Louis.

The city code defines "nuisance" as "anything offensive or obnoxious to the health and welfare of the inhabitants of the city; or any act or thing or creating a hazard to, or having a detrimental effect on, the property of another person." East St. Louis, Ill., Code § 1-2. As alleged by the City, "PCBs are toxic and dangerous" to humans and the environment. (Doc. 29 at 3–4) Therefore, they meet the city code's definition of

"nuisance." And the City has adequately alleged that Monsanto violated § 50-71 by permitting PCBs to enter East St. Louis. Therefore, the City has stated a claim under § 50-71 but not § 50-78. For these reasons, Count III is due to be dismissed but Counts V and VI are not.

**B.     Product Liability Claims**

Defendants seek to dismiss Counts VIII and IX, which bring product liability claims. Defendants argue that only users and consumers of products can bring strict liability claims against manufacturers or distributors of those products. However, Illinois law recognizes that manufacturers owe a duty to persons who might foreseeably be injured when a product is used as intended, even if those persons are outside the chain of distribution. *See Court v. Grzelinski*, 379 N.E.2d 281, 283 (Ill. 1978). The question of foreseeability is ordinarily a question of fact for the jury to decide. *Id.* The City has plead that Monsanto produced and distributed PCBs and products containing PCBs, knowing that their use and disposal would ultimately contaminate city lands. Therefore, the City has adequately plead its product liability claims, and the motion to dismiss is due to be denied as it pertains to Counts VIII and IX.

**C.     Negligence Claims**

In Count X, the City alleges that Monsanto was negligent because it manufactured and distributed PCBs, failed to warn of the PCBs' toxic and environmentally hazardous properties, and failed to take steps to reduce the risk posed by PCBs. Defendants argue that Count X should be dismissed because the City failed to allege that Monsanto's failure to warn proximately caused the City's injuries. However, the City has plead that

9

Monsanto failed to adequately warn its customers of the harm posed by PCBs, which ultimately contributed to the contamination of city lands. Further, the City also claimed that Monsanto was negligent in producing PCBs and failing to take steps to reduce the risk of harm they posed. The Court finds that the City has adequately plead that Monsanto owed it a duty as a foreseeable victim of the harmful effects of PCBs and products containing PCBs and that Monsanto's negligence caused the contamination of city lands and the loss of value of those lands. Therefore, the Court finds that the City has adequately plead negligence, and the motion to dismiss is due to be denied as it pertains to Count X.

D.      **Motion for More Definite Statement: Counts I & VII**

Defendants bring a separate motion seeking a more definite statement of the City's public nuisance (Count I) and continuing trespass (Count VII) claims. Defendants argue that they cannot respond to the City's nuisance and trespass claims unless the City identifies the specific properties that have been contaminated and the owners of those properties. Defendants argue that the City must identify the owners of the properties because a claim of public nuisance can only be made in defense of a public right concerning a public place or a place where the public frequently congregates. However, "[a] common law public nuisance is actionable even if the claim is premised on a nuisance present on private property." *City of Chicago v. Latronica Asphalt & Grading, Inc.*, 805 N.E.2d 281, 287 (Ill. App. Ct. 2004). Thus, failing to distinguish between publicly and privately owned lands does not make the City's complaint unintelligible.

Defendants also more generally argue that they need to know the specific

10

properties so they can formulate a response. However, Defendants can discover this information during the discovery process. A lack of specific addresses does not render the City's complaint so vague and ambiguous that Defendants cannot formulate a response. Therefore, the motion for more definite statement is due to be denied as to Count I.

Defendants argue that they cannot respond to the trespass claim without first knowing whether the City claims to own the allegedly contaminated properties. As Defendants point out, the City lacks standing to bring a trespass claim regarding property it does not own. *See Chicago Title & Trust Co. v. Weiss*, 605 N.E.2d 1092, 1097 (Ill. App. Ct. 1992). However, the City argues that even were that the case, it would have standing to bring a trespass for property that it does own. Thus, even if Defendants are correct, at most the City's lack of standing vis-à-vis private properties would limit the City's damages, not prevent the City from bringing a trespass claim altogether. Defendants will have the opportunity to obtain additional information regarding the specific properties and their ownership during discovery. The Court finds that lack of specific ownership information under the circumstances alleged here does not render the complaint unintelligible. Therefore, the motion for more definite statement is should be denied as to Count VII.

## IV. CONCLUSION

For these reasons, it is ORDERED that Defendants' motion to dismiss (Doc. 32) is **GRANTED in part** and **DENIED in part**, and Count III is **DISMISSED without prejudice**. It is further ORDERED that Defendants' motion for more definite statement

(Doc. 33) is **DENIED**. Plaintiff may file a second amended complaint on or before 14 days from this order.

    **SO ORDERED.**

    Dated: August 30, 2021

                                                                               _____
                                                                               DAVID W. DUGAN
                                                                               United States District Judge