IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CITY OF EAST ST. LOUIS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-232-DWD |
| | ) |
| **PHARMACIA LLC,** | ) |
| **SOLUTIA, INC., and** | ) |
| **MONSANTO COMPANY,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Plaintiff City of East St. Louis' ("the City") motion to strike Defendants' affirmative defenses. (Doc. 52). The motion has been fully briefed and is ripe for decision. (Docs. 52 & 61). For the following reasons, the motion is due to be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Defendants Monsanto Company, Pharmacia LLC, and Solutia, Inc. are the successors to the original Monsanto organization ("Monsanto"), and the City alleges that they have all assumed any liability for Monsanto's production of polychlorinated biphenyls ("PCBs"). (Doc. 29 at 10-11). Monsanto manufactured PCBs at its plant in Sauget, Illinois from 1936 to 1977. (Doc. 29 at 3). About 1.1 acres of the plant fall within the corporate limits of East St. Louis, and "[h]undreds of East St. Louis-owned lots and rights-of-way . . . are immediately adjacent to the Monsanto Plant PCB contaminated site and industrial area…" (Doc. 29 at 3 & 5). Monsanto produced about 390,000 metric tons

of PCBs at its plant from 1936 to 1977, incinerated thousands of metric tons of PCBs at its plant after 1977, and deposited PCB waste in toxic dumps in Sauget from the 1940s to the 1980s. (Doc. 29 at 3-4).

In an amended complaint filed on April 23, 2021, the City alleges that Monsanto knew that PCBs were highly toxic when it was producing them. (Doc. 29 at 6). Monsanto also knew or should have known that PCBs persist in the natural environment instead of breaking down over time. (Doc. 29 at 7). Thus, Monsanto also knew or should have known that PCBs disposed of in landfills, incinerators, and other waste facilities in or near East St. Louis "regularly leached, leaked, and escaped their disposal sites, entering and contaminating vast swaths of land in East St. Louis." (Doc. 29 at 7). The PCB contamination will cost the City millions of dollars to clean its land and restore its residential or commercial value. (Doc. 29 at 8). Defendants filed an answer and affirmative defenses on October 12, 2021. (Doc. 48).

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 8(c) provides that "a party must affirmatively state any avoidance or affirmative defense." Federal Rule of Civil Procedure 12(f) provides that the "court may strike from a pleading an insufficient defense . . . or immaterial . . . matter." When considering a motion to strike an affirmative defense, the Court applies the same test used to weigh a Rule 12(b)(6) motion. That is, the non-moving party's well-pleaded facts are deemed admitted, all reasonable inferences are drawn in the pleader's favor, and all doubts are resolved in favor of denying the motion to strike. *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698

(2009); *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (noting that affirmative defenses must meet the pleading standards of the Federal Rules of Civil Procedure).

The heightened pleading standards set forth in *Twombly* and *Iqbal* apply to affirmative defenses as well, meaning that the standard requiring a plaintiff to plead with "factual plausibility" and "more than mere labels and conclusions or a formulaic recitation" is also applicable to Defendants.[1] Allegations in affirmative defenses are also insufficient if they bear no relation to the controversy between the parties or if they would prejudice the movant. *See Red Label Music Publ'g, Inc. v. Chila Prods.*, 388 F. Supp. 3d 975, 980 (N.D. Ill. 2019). Affirmative defenses subject to a motion to strike are examined using a three-part test: (1) the defense must be a proper affirmative defense, (2) it must be adequately pleaded under Rules 8 and 9; *and* (3) it must be able to withstand a Rule 12(b)(6) challenge. *Hughes v. Napleton's Holdings, LLC*, No. 15 C 50137, 2016 WL 6624224, at *2 (N.D. Ill. Nov. 9, 2016) (emphasis added). "An affirmative defense is one that admits the allegations in the complaint, but avoids liability, in whole or in part, by new allegations of excuse, justification or other negating matters." *Reed v. Columbia St. Mary's*

---

[1] As noted by other courts, the Seventh Circuit has not yet decided whether affirmative defenses must comport with the *Twombly* and *Iqbal* standards. However, despite some disagreement among the district courts in this Circuit, the majority seems to find the heightened pleading standards of *Twombly* and *Iqbal* applicable to defendants attempting to plead affirmative defenses. *See Soos & Assocs. v. Five Guys Enterprises*, 425 F. Supp. 3d 1004, 1010 n.2 (N.D. Ill. 2019) (siding with the majority rule and concluding that an affirmative defense must contain "sufficient factual matter to be plausible on its face."); *Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034 (N.D. Ill. 2014). *Cf. LaPorte v. Bureau Veritas N. Am. Inc.*, No. 12 C 9543, 2013 WL 250657, at *1 (N.D. Ill. Jan. 18, 2013) (stating heightened pleading standards of *Twombly* not to be applied to affirmative defenses in the Northern District of Illinois). This Court believes that just as the heightened pleading standards for plaintiffs serve the purpose of ensuring the theory of recovery that is plead is at least plausible and not just possible, it is also served when pleading avoidance and affirmative defenses. *See* Fed. R. Civ. P. 8(c).

*Hosp.*, 915 F.3d 473, 477 n.1 (7th Cir. 2019) (quoting *Divine v. Volunteers of Am. of Ill.*, 319 F. Supp. 3d 994, 1003 (N.D. Ill. 2018)).

## III. DISCUSSION

Plaintiff moves to strike all 38 of Defendants' affirmative defenses as insufficiently pleaded and some as not being affirmative defenses. (Doc. 52 at 2). In their response, Defendants agreed to withdraw affirmative defenses 1, 5, 6, 12, 14, 21, 22, 24, 26–29, 33, 37, and 38. (Doc. 61 at 1). As a result, these will be stricken.

Affirmative defenses 2–4, 7–11, 13, 15, 16–20, 23, and 25 fail to meet the pleading requirements of *Twombly* and *Iqbal* because they do not provide "sufficient factual matter to be plausible on [their] face." *Soos & Assocs.*, 425 F. Supp. 3d at 1010 n.2. For instance, affirmative defense 3 alleges that Plaintiff "by its conduct and actions, has waived in whole or in part its claims, or some of them, for relief." (Doc. 48 at 15). However, Defendant does not provide factual allegations specifying which of Plaintiff's actions waived which claims and to what degree. As it is, affirmative defense 3 contains nothing beyond legal conclusions. Additionally, affirmative defense 8 asserts that "Plaintiff's claims, in whole or in part, where Defendants' actions were taken under color of a federal officer are barred by federal immunity." (Doc. 48 at 16). Again, Defendant's pleadings do not provide factual allegations showing which claims are barred by which of Defendants' actions taken under color of which federal officer. These affirmative defenses are insufficiently plead and will be stricken without prejudice.

Affirmative defenses 30 and 31 assert that Sections 1-15 and 50-71 of the East St. Louis Municipal Code are unconstitutionally overbroad, vague, and ambiguous. (Doc. 48

4

at 19). Affirmative defense 32 asserts that the fines being sought are excessive and not permitted under the United States Constitution or Constitution of the State of Illinois. Affirmative defense 35 alleges that retroactive applications of these statutes and case law are violative of the United States Constitution and Illinois Constitution. Plaintiff alleges that these are not affirmative defenses. (Doc. 52 at 10). However, the City has made no specific argument explaining why such constitutional challenges are not affirmative defenses. Defendants have stated these affirmative defenses in sufficient detail to put the City on notice of their claims. Therefore, the Court will permit these affirmative defenses to stand.

Affirmative defense 34 states, "Pursuant to the East St. Louis Municipal Code, Plaintiff must make an election of remedies." (Doc. 48 at 19). The election of remedies doctrine requires a plaintiff to choose a specific remedy when two or more fundamentally conflicting remedies are available. *See Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 984 F.2d 223, 229 (7th Cir. 1993). For example, the doctrine would require a plaintiff seeking a remedy related to a contract dispute to choose between seeking damages, which involves affirming the contract, and rescission, which involves disaffirming the contract. *Id.* "The principle underlying the election of remedies doctrine is that the defendant could be prejudiced if the plaintiff were not forced to choose the form of his action fairly early in the game." *Id.* Here, the City seeks damages, fines, and injunctive relief consisting of abatement and remediation of East St. Louis lands damaged by Monsanto's alleged pollution. (Doc. 29 at 13–29). These claims present no discernible election of remedies problem.

In their response to the motion to strike, Defendants argue for the first time that affirmative defense 34 relies on Section 1-16 of the East St. Louis Municipal Code, which provides that the City may not recover "against the same person for the same offense." East St. Louis, Ill., Code § 1-16. According to Defendants, Section 1-16 requires the City to choose under which section of the municipal code it wishes to proceed. (Doc. 61 at 13). This defense is distinct from the election of remedies doctrine. If Defendants wish to raise an affirmative defense under Section 1-16, they must amend this affirmative defense to cite Section 1-16 specifically. As it stands, affirmative defense 34 is due to be stricken without prejudice because the City's claims present no discernible election of remedies problem.

Finally, affirmative defense 36 alleges that Plaintiff's claims are in violation of the one-act, one-crime doctrine as articulated in *People v. King*, 66 Ill.2d 551 (1977), and its progeny. (Doc. 48 at 20). However, this defense applies solely to criminal cases. "[T]he one-act, one-crime rule, which aims to protect the fundamental fairness of a criminal defendant's trial and a criminal defendant's parole rights; has no application to [a] civil municipal ordinance violation . . . ." *Smoke N Stuff v. City of Chicago*, 40 N.E.3d 338, 344 (Ill. App. Ct. 2015). Because it is inapplicable to this lawsuit, affirmative defense 36 is due to be stricken with prejudice.

CONCLUSION

For the above-stated reasons, Plaintiff's motion to strike (Doc. 52) is **GRANTED in part** and **DENIED in part**. Plaintiff's motion is **GRANTED** as to affirmative defenses 1, 5, 6, 12, 14, 21, 22, 24, 26–29, 33, and 36–38, and they are **STRICKEN with prejudice**.

Plaintiff's motion is **GRANTED** as to affirmative defenses 2–4, 7–11, 13, 15, 16–20, 23, 25, and 34, and they are **STRICKEN without prejudice** with leave to amend within 21 days of entry of this Order. Plaintiff's motion is **DENIED** as to affirmative defenses 30–32 and 35.

    **SO ORDERED.**

    Dated: March 2, 2022

                                                    DAVID W. DUGAN
                                                   United States District Judge