**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS**

CITY OF EAST ST. LOUIS, ILLINOIS )
            )
    Plaintiff, )
            )
v. )
            )   Case No. 3:21-cv-232-DWD
MONSANTO COMPANY, )
PHARMACIA LLC, and SOLUTIA, INC. )
            )
    Defendants. )

**DEFENDANTS' AMENDED AFFIRMATIVE DEFENSES**

COME NOW Defendants Monsanto Company, Pharmacia LLC and Solutia Inc. (collectively "Defendants"), and for their Amended Affirmative Defenses to Plaintiff's First Amended Complaint (Doc. 29) (the "Amended Complaint"), state as follows:

**PRELIMINARY STATEMENT**

On March 2, 2022, the Court entered an Order (Doc. 70) granting in part and denying in part Plaintiff's Motion to Strike Defendants' Affirmative Defenses, and granting leave to Defendants to amend defenses 2-4, 7-11, 13, 15-20, 23, 25, and 34.  Defendants hereby assert their amended defenses herein.[1]

---

[1] As the Court noted in its Order, "the Seventh Circuit has not yet decided whether affirmative defenses must comport with the *Twombly* and *Iqbal* standards." (Doc. 70, n.1).  While Defendants set forth their amended defenses pursuant to the Court's Order, Defendants also, to the extent required or necessitated by applicable law, preserve any objections they have to providing affirmative defenses that comport with *Twombly* and *Iqbal* standards.

48498065v1

As of the date of these amended defenses, no party has yet responded to written discovery (written discovery has been served, but responses are not yet due).  Thus, Defendants are filing these Amended Affirmative Defenses without the benefit of any discovery responses.  To the extent possible, Defendants have pled facts currently known to them; however, due to the limited discovery to-date, Defendants have also pled certain facts based upon good-faith information and belief.  Defendants explicitly reserve the right to amend their Affirmative Defenses should discovery provide additional factual information to support the same defenses and/or support the inclusion of additional defenses.

<u>**AMENDED AFFIRMATIVE DEFENSES**</u>

**<u>Amended Affirmative Defense No. 2:</u>** Some or all of Plaintiff's claims are barred by the applicable statutes of limitations, and/or by the doctrine of laches and/or statutes of repose.

Plaintiff City of East St. Louis ("Plaintiff" or the "City") brought this lawsuit in 2021, asserting in its complaint that PCBs passively migrated through the atmosphere from Sauget to East St. Louis, and onto the lands of East St. Louis, as a result of Defendants' operations in Sauget. (Amended Complaint, ¶¶ 1, 2, 42, 53, 58, 63, 69, and 75). The Amended Complaint also alleges Defendants ceased their manufacture of PCBs at the Sauget plant in 1977 and ceased depositing PCBs in landfills in the 1980s. (Amended Complaint, ¶ 3). Thus, unless an exception applies to the applicable statutes of limitation, Plaintiff's causes of action are time-barred. *See* 735 ILCS 5/13-202 (applying two-year statute of limitations to ordinance violations involving a

2

penalty); *see also* 735 ILCS 5/13-205 (applying five-year statute of limitations to claims for damage to property).

It is Plaintiff's burden to plead and prove that any exceptions to the statutes of limitation apply. *See, e.g., Knapp v. Galinski*, 249 Ill.App.3d 243, 245, (1st Dist. 1993) ("[A]s a plaintiff ostensibly falling within the discovery rule, Knapp bears 'the burden of proving the date of discovery when seeking to come within the discovery exception to the statute of limitations.") (internal quotations omitted); therefore, Defendants have sufficiently pled statute of limitations as an affirmative defense and need not address any potential exceptions here.

Nevertheless, Defendants note that potential exceptions to the statutes of limitations are not applicable. For example, to the extent Plaintiff may seek to toll applicable statutes of limitation by alleging it was unaware of alleged PCB contamination until December of 2020 (Amended Complaint, ¶ 10), Defendants believe such allegations will be contradicted by the evidence adduced in discovery.  For example, the Sauget Krummrich plant and nearby Sauget landfills have been the subject of well-known, well-publicized investigation and oversight by the United States Environmental Protection Agency ("EPA") and the Illinois Environmental Protection Agency ("IEPA") for decades; upon information and belief, the City had direct communications with these agencies concerning such investigation and oversight.[2]  Defendants contend that these

---

[2] It bears mentioning that, in January of 2020 – more than one year before the City filed this action, and months before the alleged environmental sampling that is the very basis of this action was conducted (Amended Complaint, ¶ 10)

48498065v1

facts, and others adduced during discovery, will reveal that Plaintiff was aware of the potential or actual presence of PCBs alleged to be in East St. Louis before the date it claims it was (namely, the 2020 sampling referenced in Plaintiff's Amended Complaint, ¶ 10). Defendants affirmatively state that the continuing tort and sovereign immunity exceptions to the statutes of limitations do not apply, either.[3]

The product liability statute of repose bars claims based upon strict products liability brought more than twelve years after the manufacturer's sale of the allegedly defective product. Pursuant to section (d) of the statute, the period of repose may be extended up to eight years for injuries occurring within the twelve-year period if an action is brought within two years of discovery of an injury. *See* 735 ILCS 5/13-213(d). Under any set of facts, the maximum time that a plaintiff has to file a products-liability action sounding in strict liability in tort is twenty years after the sale of the product at issue. *See Landry v. Keene Corp.*, 811 F.Supp. 367, 372 (N.D.Ill. 1993). The product at issue in this case – PCBs – was last manufactured and sold in 1977.  Plaintiff filed its

---

– Plaintiff's attorneys approached the City in a public meeting to seek approval for filing suit against Defendants for the alleged PCB contamination it claims to have only become aware of in 2020.

[3] The Complaint alleges the "continuing tort doctrine" and sovereign immunity will allow Plaintiff to avoid statute of limitations defenses.  Plaintiff cannot meet the requirements of these exceptions.  *See*, *e.g.*, *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 (2003) (continuing tort doctrine); *Vill. of DePue, Ill. v. Viacom Int'l, Inc.*, 713 F.Supp.2d 774, 779–85 (C.D. Ill. 2010) (holding sovereign immunity to statute of limitations did not apply).

Complaint in 2021.  Accordingly, Counts VIII and IX are barred by the product liability statute of repose.

Finally, as discussed above, upon information and belief, Plaintiff was aware of the alleged presence of PCBs in East St. Louis prior to 2020.  To the extent Plaintiff slept on its rights, Plaintiff's causes of action are barred by the doctrine of laches.  *PNC Bank, Nat'l Ass'n v. Kusmierz*, 2022 IL 126606, ¶ 25 ("Laches is an equitable principle that bars relief for a litigant whose unreasonable delay in bringing an action has prejudiced the other party.").

**Amended Affirmative Defense No. 3:** Plaintiff's claims are barred, in whole or in part, because Plaintiff, by its conduct and actions, has waived its claims, or some of them, for relief.  The Sauget Krummrich plant and nearby Sauget landfills have been the subject of well-known, well-publicized investigation and oversight by the EPA and IEPA for decades; upon information and belief, the City of East St. Louis had direct communications with these agencies concerning such investigation and oversight.  Defendants contend that these facts, and others adduced during discovery, will reveal that Plaintiff was aware of the potential or actual presence of PCBs in East St. Louis before the date it claims it was (namely, the 2020 sampling referenced in Plaintiff's Amended Complaint, ¶ 10), and decided not to pursue any potential remedy at the time.  Thus, to the extent Plaintiff may otherwise be able to assert claims against Defendants, said claims are waived. *See Hahn v. Cty. of Kane*, 2013 IL App (2d) 120660, ¶ 11 (defining waiver).

48498065v1

**Amended Affirmative Defense No. 4:** Plaintiff's claims, or some of them, are barred in whole or in part under the doctrine of estoppel.  The Sauget Krummrich plant and nearby Sauget landfills have been the subject of well-known, well-publicized investigation and oversight by the EPA and IEPA for decades; upon information and belief, the City of East St. Louis had direct communications with these agencies concerning such investigation and oversight.  Defendants contend that these facts, and others adduced during discovery, will reveal that Plaintiff was aware of the potential or actual presence of PCBs in East St. Louis before the date it claims it was (namely, the 2020 sampling referenced in Plaintiff's Amended Complaint, ¶ 10), and decided not to pursue any potential remedy at the time.  Thus, to the extent Plaintiff may otherwise be able to assert claims against Defendants, said claims are estopped. *See Hahn v. Cty. of Kane*, 2013 IL App (2d) 120660, ¶ 12 (defining estoppel).

**Amended Affirmative Defense No. 7:** Plaintiff's claims are expressly and/or impliedly preempted by federal and/or state law. Plaintiff's claims are based, at least in part, on the allegation that Defendants disposed of PCBs in Sauget landfills leading up to and during the 1980s. (Amended Complaint, ¶ 3). Federal law regulates disposal and cleanup of PCBs. *See, e.g., Rollins Env't Servs. (FS), Inc. v. St. James Par.*, 775 F.2d 627, 635-37 (5th Cir. 1985) (insofar as parish ordinance regulating commercial solvent cleaning businesses amounted to an outright ban of prohibition of waste disposal firm's PCB disposal activities it had the illegitimate objective of regulating a field

6

preempted by Congress under Toxic Substances Control Act).  Further, Seventh Circuit case law provides that, where a municipality's attempts to remediate environmental contamination directly interfere with the actions of an administrative agency, the municipality's ordinances are preempted. *See, e.g., Vill. of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 788 (7th Cir. 2008) (holding that village's attempts to remediate environmental contamination, pursuant to local ordinance, conflicted with the "phased and considered" cleanup plan of the Illinois Environmental Protection Agency, which were already in place and embodied in a consent order).  The Sauget Krummrich plant and nearby Sauget landfills have been the subject of governmental and regulatory oversight, for decades, by EPA and IEPA; to the extent the allegedly wrongful acts complained of by Plaintiff (e.g., the alleged wrongful disposal of PCBs) were overseen and/or approved by these agencies, Plaintiff's claims are preempted.

In addition, Plaintiff alleges that PCBs passively migrated through the atmosphere from Sauget to East St. Louis, and onto the lands of East St. Louis, as a result of Defendants' operations in Sauget. (Amended Complaint, ¶¶ 1, 2, 42, 53, 58, 63, 69, and 75).  To the extent the City seeks to impose extraterritorial enforcement of its ordinances to alleged acts/omissions that occurred in Sauget, the City's ordinances are preempted by Illinois state law. *City of Des Plaines v. Chicago & N. W. Ry. Co.*, 65 Ill.2d 1, 7 (1976) (holding that the City of Des Plaines could not apply its ordinance to noise pollution emanating from beyond the City's borders); *see also See Vill. of DePue, Ill. v.*

7

*Exxon Mobil Corp.*, 537 F.3d 775, 788 (7th Cir. 2008) ("The Village's application of its nuisance ordinance seeks to address, in a heavy-handed manner, a difficult environmental problem that certainly is not only of local concern.").

**Amended Affirmative Defense No. 8:** Plaintiff's claims, in whole or in part, are barred by federal immunity and/or the government contractor defense where Defendants' actions were taken under color of a federal officer. *Boyle v United Technologies Corp.*, 487 U.S. 500 (1988); *see also Hercules, Inc. v. U.S.*, 516 U.S. 417, 421 (1996). Pharmacia (a/k/a "Old Monsanto") acted under color of federal officer when manufacturing and supplying PCBs to help the federal government carry out multiple wars. There is a potential nexus between Plaintiff's claims and Old Monsanto's compliance with government demands and contracts to provide the military with PCBs that were produced at their facility in Sauget, an operation the City now alleges contaminated its properties with PCBs. Having supplied PCBs to the military to conduct wars and other military activity, the government contractor defense and federal preemption preclude imposition of liability on Defendants for that conduct. *Id.*

**Amended Affirmative Defense No. 9:** Illinois law precludes East St. Louis from applying its ordinances to activities, omissions, and/or conditions which emanated and/or occurred beyond its borders.

The City asserts claims for damages and abatement that are based on local ordinances. (Amended Complaint, Counts II, IV, V, VI). Plaintiff alleges that PCBs passively migrated through the atmosphere from Sauget to East St. Louis, and onto the lands of East St. Louis, as a result of Defendants'

operations in Sauget. (Amended Complaint, ¶¶ 1, 2, 42, 53, 58, 63, 69, and 75).  To the extent the City seeks to impose extraterritorial enforcement of its ordinances to alleged acts/omissions that occurred in Sauget, such enforcement of said ordinances is prohibited under Illinois law. *City of Des Plaines v. Chicago & N. W. Ry. Co.*, 65 Ill.2d 1, 7 (1976); *Village of Goodfield v. Jamison,* 188 Ill.App.3d 851, 859 (4th Dist. 1989).

**Amended Affirmative Defense No. 10:** Plaintiff's claims, including its claims for equitable or injunctive relief, are barred by the primary jurisdiction doctrine. The primary jurisdiction doctrine is an affirmative defense that applies where "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Bradford Sch. Bus Transit, Inc. v. Chicago Transit Auth.*, 537 F.2d 943 (7th Cir. 1976). To the extent Plaintiff seeks damages for any action or inaction regarding the disposal and remediation of PCBs that are under the purview of EPA or IEPA, the primary jurisdiction doctrine applies.

**Amended Affirmative Defense No. 11:** Plaintiff's claims, or some of them, are barred in whole or in part to the extent any recovery would result in unjust enrichment to Plaintiff.  As stated below in Amended Affirmative Defense No. 18, Plaintiff seeks penalties from Defendants in the amount of $750 per day, for each day an alleged violation persisted, without providing Defendants any notice regarding the presence of PCBs on East St. Louis property or the alleged violations; this constitutes a due process violation. *See*

9

Amended Affirmative Defense No. 18.  The large sums of money Plaintiff seeks from Defendants would result in an enrichment of Plaintiff and an impoverishment of Defendants, without justification, entitling Defendants to an affirmative defense of unjust enrichment under Illinois law. *Sherman v. Ryan*, 392 Ill.App.3d 712 (1st Dist. 2009) (the elements of unjust enrichment are:  (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law). Additionally, the penalties Plaintiff seeks constitute unconstitutionally excessive fines. *See also* Affirmative Defense 32 regarding excessive fines, incorporated herein by this reference.

**Amended Affirmative Defense No. 13:** An injunction will not issue, ordering a defendant to abate a nuisance upon the land, if the defendant has no authority, by reason of ownership or possession, to enter upon the land. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill.2d 351, 401 (2004). Plaintiff's Amended Complaint requests injunctive relief in the form of abatement (Amended Complaint, Count VI); but, Defendants do not own or possess any of the properties at issue.  Under Illinois law, Defendants lack authority to enter upon the land and abate the alleged contamination because they do not own the property.  An injunction for abatement is improper in these circumstances.

**Amended Affirmative Defense No. 15:** Some or all of Plaintiff's claims and alleged damages are barred in whole or in part and/or are reduced by Plaintiff's own contributory or comparative negligence, contributory fault, comparative fault, and/or assumption of the risk.  The Sauget Krummrich

48498065v1

plant and nearby Sauget landfills have been the subject of well-known, well-publicized investigation and oversight by the EPA and IEPA for decades; upon information and belief, the City of East St. Louis had direct communications with these agencies concerning such investigation and oversight, and may have consented to any remediation that allegedly led to PCBs coming to rest on City properties; based on the foregoing, Plaintiff assumed the risk associated with the alleged PCBs located at those same properties.  Further, Defendants contend that these facts, and others adduced during discovery, will reveal that Plaintiff was aware of the potential or actual presence of PCBs in East St. Louis before the date it claims it was (namely, the 2020 sampling referenced in Plaintiff's Amended Complaint, ¶ 10).  To the extent Plaintiff's alleged damages result from Plaintiff's own delay or inaction, or indifference to the alleged presence of PCBs on East St. Louis Property, there is fault attributed to Plaintiff.  *See* IPI 11.01, Contributory Negligence.

**Amended Affirmative Defense No. 16:** Any injuries allegedly sustained by Plaintiff were directly and proximately caused, if at all, by the intervening or superseding cause and/or comparative fault of third parties, for whom these Defendants bear no responsibility, and/or by conditions over which Defendants had no control and for which they were not responsible.  Upon information and belief, Plaintiff would have sustained the same alleged damages as a result of PCBs not attributable to Defendants.  Plaintiff's Amended Complaint generally alleges that there "are no other known sources for the East St. Louis PCB contamination other than the Monsanto Plant's PCB manufacturing operations

11

and waste handling practices," (Amended Complaint, ¶ 7), but ignores the operations of other local industries in East St. Louis, Sauget, and other nearby areas, going back decades.  Plaintiff also alleges PCBs are ubiquitous (Amended Complaint, ¶¶ 3-5), that "[b]y the late 1970s, [they] were a worldwide environmental pollutant and part of almost every human being," that "PCBs are found in bays, oceans, rivers, streams, soil, and air" and "have been detected in the tissues of all living beings, including all forms of marine life, various animals and birds, plants and trees, and humans," and that PCBs were utilized by *third parties* – other than Defendants – in "hundreds of industrial applications including in electrical, heat transfer and hydraulic equipment and as plasticizers in paints, plastics and rubber products." (Amended Complaint, ¶¶ 3-5).  The alleged PCBs within East St. Louis can be attributed to third parties and/or other conditions not attributable to Defendants. *City of Chicago v. Am. Cyanamid Co.*, 355 Ill.App.3d 209 (1st Dist. 2005) (the conduct of manufacturers and sellers of lead-based paint in promoting and lawfully selling such paint decades earlier, which paint was subsequently lawfully used by others, was not a legal cause of City's alleged damages).

**Amended Affirmative Defense No. 17:** Plaintiff's claims, or some of them, are barred, in whole or in part, by its failure to use reasonable care to minimize or mitigate damages.

The Sauget Krummrich plant and nearby Sauget landfills have been the subject of well-known, well-publicized investigation and oversight by the EPA and IEPA for decades; upon information and belief, the City of East St. Louis

12

had direct communications with these agencies concerning such investigation and oversight.  Defendants contend that these facts, and others adduced during discovery, will reveal that Plaintiff was aware of the potential or actual presence of PCBs in East St. Louis before the date it claims it was (namely, the 2020 sampling referenced in Plaintiff's Amended Complaint, ¶ 10).

Moreover, Plaintiff seeks to impose a penalty against Defendants of $750 per day, for every day an alleged violation persisted. Plaintiff failed to mitigate its damage for each and every day it knew about the alleged presence of PCBs on the claimed properties and did not seek damages from Defendants. *See* IPI 33.02, Mitigation of Damages – Property ("In fixing the amount of money which will reasonably and fairly compensate the plaintiff, you are to consider that a person whose [property] [business] is damaged must exercise ordinary care to minimize existing damages and to prevent further damage. Damages proximately caused by a failure to exercise such care cannot be recovered.").

**<u>Amended Affirmative Defense No. 18:</u>** To the extent Plaintiff seeks penalties for time periods prior to when it put Defendants on notice of alleged ordinance violations and/or penalties without an opportunity to cure, Plaintiff's claims deny Defendants their constitutional right to due process of law. Plaintiff's Amended Complaint seeks to hold Defendants liable for allegedly contaminating land with PCBs for the past several decades. However, Plaintiff did not notify Defendants of alleged PCB contamination or any alleged violation of East St. Louis Ordinances within the City until this lawsuit was filed in 2021. To the extent Plaintiff seeks to hold Defendants liable for alleged

conduct, damages, code violations, and/or claims about which Defendants were unaware, without providing Defendants notice of their alleged violations and/or the opportunity to cure the alleged violations, this lack of notice violates Defendants' constitutional right to due process of law and prevents Plaintiff from seeking any penalties as a result. *See, e.g.*, *City of Kankakee v. Ellington-Snipes*, 2018 IL App (3d) 170835-U ("Plaintiff did not notify defendant that the tent on his property violated a city ordinance until plaintiff served its complaint on defendant on July 20, 2017.  Therefore, the trial court should have calculated defendant's fine to begin no earlier than July 20, 2017.").

**<u>Amended Affirmative Defense No. 19:</u>** To the extent Plaintiff purports to seek relief on behalf of the general public, the Amended Complaint and each of its claims for relief therein violate Defendants' right to due process under the Illinois and United States Constitutions.  The City has attempted to assert a product liability claim under the guise of a public nuisance theory on behalf of the general public.  If allowed, Plaintiff would be permitted to expand public nuisance law to include novel legal claims to be asserted against product manufacturers.

Plaintiff alleges, on behalf of the general public, that Defendants manufactured, distributed, and marketed PCBs in a manner that created or contributed to the creation of a public nuisance.  This theory does not allege Defendants placed PCBs directly onto property the City owns, and remains silent about potentially thousands of intervening actors who may have actually disposed of PCBs and PCB-containing materials in a manner to reach the City's

14

property including, potentially, the City itself.  Previous attempts to advance
similar public nuisance theories against manufacturers have been rejected.
*City of Chicago v. Am. Cyanamid Co.*, 355 Ill.App.3d 209 (1st Dist. 2005) (the
conduct of manufacturers and sellers of lead-based paint in promoting and
lawfully selling such paint decades earlier, which paint was subsequently
lawfully used by others, was not a legal cause in city's public nuisance action
that alleged that presence of lead-based paint in areas accessible to children
constituted a public nuisance); *see also City of Bloomington, Ind. v.
Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) (rejecting public
nuisance claim against manufacturer where intervening third party was
directly responsible for alleged contamination).

Defendants are entitled to notice of the substance of the law before being
penalized under the law; Plaintiff's attempt to hold Defendants liable under a
novel theory, if successful, would deprive Defendants of due process.

**Amended Affirmative Defense No. 20:** Plaintiff lacks standing to sue
Defendants on behalf of the general public. Count VII of Plaintiff's Amended
Complaint asserts a cause of action for trespass, alleging damage to
"residential and commercial properties in East St. Louis." (Amended Complaint,
¶ 81).  A plaintiff cannot sue in trespass for the physical invasion of his
neighbor's property; to the extent the City seeks to obtain damages in trespass
for properties to which it holds no ownership or possessory interest, it has
suffered no injury and lacks standing.  Defendants' written discovery seeks to
identify whether some of the "residential and commercial properties" for which

48498065v1

Plaintiff seeks damages are not owned by the City of East St. Louis, but rather, by private individuals and businesses.  Plaintiff, who has the burden of pleading, does not adequately identify in its Amended Complaint any of the subject properties by address, parcel number, or by any other means, nor does the City identify the ownership of any of the properties.  It is necessary to have standing to assert a claim for trespass.  Only the owner or possessor of property has standing to maintain an action for trespass. *Chicago Title & Tr. Co. v. Weiss*, 238 Ill.App.3d 921, 927 (2d Dist. 1992); *see also Millers Ins. Ass'n of Illinois v Graham Oil Co.*, 282 Ill.App.3d 129, 139 (2d Dist. 1996) ("trespass is an invasion of the *exclusive possession* and physical condition of the land") (emphasis added) (citation omitted).

Further, to the extent Plaintiff seeks damages in trespass for claims which rightfully belong to the owners of the properties at issue, it seeks to adjudicate the owners' claims for them, on the City's terms, rather than the terms of the owners, thus depriving them of notice of the claims, notice of the lawsuit, a right to participate in the lawsuit, and of damages which are allegedly due to them. This runs afoul of the rules regarding necessary and indispensable parties as well. *See* Fed. R. Civ. P. 19.

Similar concerns are also implicated for Count I of Plaintiff's Complaint for public nuisance. Like all claims, public nuisance claims require Plaintiff to demonstrate it has suffered an injury. *Helping Others Maintain Env't Standards v. Bos*, 406 Ill.App.3d 669, 689 (2d Dist. 2010).  However, to the extent the City

16

seeks damages on its public nuisance claim with respect to private property it does not own, it has suffered no injury and lacks standing.

**Amended Affirmative Defense No. 23:** Plaintiff's claims are barred by the "sophisticated user," "raw material supplier," and/or "bulk supplier" defense. *See*, *e.g.*, *Werckenthein v. Bucher Petrochemical Co.*, 248 Ill.App.3d 282 (1st Dist. 1993); s*ee also City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989).

As a preliminary matter, to properly assert a products liability claim, Plaintiff must plead and prove that the Defendants placed the products at issue into the stream of commerce, and that its alleged injury resulted from someone's use of the product. *Crowe v. Pub. Bldg. Comm'n of Chicago*, 74 Ill.2d 10, 15 (1978) (Whether as seller or lessor, theory of products liability requires defendant to have placed product into the stream of commerce.). Here, the alleged harm to Plaintiff in Counts VIII, IX, and X (and throughout the entire Amended Complaint) is not alleged to be the result of Defendants placing PCBs or PCB-containing products into the stream of commerce, or the result of PCB products being used by Plaintiff or by anyone else. Rather, Plaintiff asserts that PCBs were allegedly emitted into the atmosphere from the Krummrich plant and escaped Sauget landfills and made their way to properties in East St. Louis. (Amended Complaint, ¶¶ 2 and 19). Such allegations cannot support a *prima facie* claim for products liability. *See Crowe, supra.*

However, even if Plaintiff had pleaded a *prima facie* claim, Counts VIII-X are barred by the "sophisticated user," "raw material supplier," and/or "bulk

supplier" defenses.  The Amended Complaint alleges that PCBs were incorporated into "hundreds of industrial applications including in electrical, heat transfer and hydraulic equipment and as plasticizers in paints, plastics and rubber products." (Amended Complaint, ¶ 3).  Old Monsanto manufactured and sold PCB-containing products to numerous customers who used PCBs in their own products and/or product formulations.  For instance, General Electric and Westinghouse, some of the most sophisticated companies of the 20th Century, and who maintained their own industrial hygiene programs, routinely utilized PCBs, including in their electrical capacitors to be used in fluorescent light ballasts.  Similarly, Old Monsanto sold PCB-containing products to numerous product formulators in which PCBs were but one component of the formulator's end-product.  To the extent Plaintiff seeks to hold Defendants liable for the PCB-containing products that were placed into the stream of commerce by such third-parties, Plaintiff is barred from relief under Counts VIII-X of its Amended Complaint by the "sophisticated user," "raw material supplier," and/or "bulk supplier" defenses.  Such claims implicate third parties that failed to adequately design, manufacture, or warn about the products into which they incorporated PCBs, and/or that improperly used or disposed of said PCBs; Defendants are not liable as bulk suppliers/manufacturers of PCBs supplied to such entities.  *See*, *e.g.*, *Werckenthein v. Bucher Petrochemical Co.*, 248 Ill.App.3d 282 (1st Dist. 1993) (chemical suppliers, who supplied chemicals in bulk to chemist's employer, did not breach their duty, if any, to warn chemist and their product was not

18

unreasonably dangerous due to absence of specific cautions against chemist's testing procedure whereby he sniffed chemicals directly from open container, where suppliers provided documents warning against consequences that would flow from prolonged or intensive exposure to chemicals and instructing handlers of chemicals to wear protective garments and to use safety equipment, and standard testing procedure in industry was to conduct tests in different, safer manner, which chemist elected not to follow); *see also City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) (rejecting public nuisance claim against manufacturer where intervening third party was directly responsible for alleged contamination).

**Amended Affirmative Defense No. 25**: Plaintiff has no right to recover, or a verdict should be reduced by, the value of any benefits/compensation received by Plaintiff, without charge or requirement of payment or compensation.  The general rule under Illinois law is that collateral sources cannot be used to reduce the Plaintiff's recovery; however, an exception exists where services/benefits are provided without charge. *See, e.g., Nickon v. City of Princeton*, 376 Ill.App.3d 1095, 1099 (3rd Dist. 2007) (recognizing a charitable services exception to the collateral source rule).  To the extent East St. Louis may have received compensation/benefits from federal or state government, or other sources, related to alleged environmental contamination, without charge or the requirement of reimbursement, Plaintiff's recovery should be reduced by said payments.

**Amended Affirmative Defense No. 34**: Pursuant to Section 1-16 of the East St. Louis City Code, Defendants state that Plaintiff is barred from obtaining more than one recovery for the conduct alleged in the Amended Complaint. Section 1-16 of the East St. Louis City Code states:

> In all cases where the same offense is made punishable or is created by different clauses or sections of this Code, the corporation counsel or other proper legal officer of the city may elect under which section to proceed, but not more than one recovery shall be had against the same person for the same offense. Revocation of a license or permit shall not be considered a recovery or penalty so as to bar any other penalty being enforced.

Counts II, IV, and V of Plaintiff's Amended Complaint are each based upon separate sections of the Code, and each Count seeks its own set of penalties at a rate of $750 per violation.  To the extent Plaintiff may be entitled to recover penalties and/or damages under Counts II, IV, and/or V, Plaintiff is limited to only one recovery, and is barred from aggregating the penalties sought under each Count.

Dated: March 23, 2022

Respectfully submitted,

**SHOOK, HARDY & BACON LLP**

By:     */s/ Adam E. Miller*
Adam E. Miller (6206249)
amiller@shb.com
Katherine Landfried (6328549)
klandfried@shb.com
Michael W. Cromwell (*pro hac vice*)
mwcromwell@shb.com
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Telephone:  314.690.0200
Fax:  314.690.0249

20

*Attorneys for Defendants Monsanto Company and Pharmacia LLC*

**LATHROP GPM LLP**

By:    */s/ Charles R. Hobbs, II (by consent)*
          Charles R. Hobbs, II (625917)
          Ron.Hobbs@lathropgpm.com
          Mitchell A. Martin (631425)
          Mitchell.Martin@lathropgpm.com
          Pierre Laclede Center
          7701 Forsyth Boulevard, Suite 500
          Clayton, Missouri 63105
          Telephone:  314.613.2800
          Fax:  314.613.2801

*Attorneys for Defendant Solutia Inc.*

**YSURSA LAW OFFICES, LLC**

By:    */s/ Bernard J. Ysursa (by consent)*
          Bernard J. Ysursa (3095754)
          bjy@cbsclaw.com
          12 W. Lincoln Street
          Belleville, IL 62220
          Telephone:  618.235.3500
          Fax:  618.235.7286

*Attorneys for Defendant Solutia Inc.*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 23rd day of March 2022, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.


          */s/ Adam E. Miller*

21