IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CITY OF EAST ST. LOUIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-00232-DWD |
| | ) |
| MONSANTO CO., PHARMACIA LLC, | ) |
| and SOLUTIA, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court is Plaintiff's Motion to Strike Defendants' Affirmative Defenses ("Motion") (Doc. 87) related to the statutes of limitations, the statute of repose, laches, and estoppel. Defendants filed a Response in Opposition to the Motion (Doc. 98). For the reasons explained below, the Court **DENIES** the Motion.

Background

This case was removed from the Circuit Court of St. Clair County. Plaintiff filed a First Amended Complaint for Damages and Abatement (Doc. 29), alleging public nuisance, violations of the ordinances of the City of East St. Louis, continuing trespass, design defect, failure to warn and instruct, and negligence. Plaintiff's allegations relate to "the contamination of vast swaths of its land with polychlorinated biphenyls… manufactured in Defendants' Monsanto Plant in adjacent Sauget, Illinois." (Doc. 29, ¶ 1).

In response, Defendants filed an Answer (Doc. 48) that raised affirmative defenses based upon, *inter alia*, the statutes of limitations, the statute of repose, laches, and

estoppel.[1] (Doc. 48, pgs. 15-16). Defendants later filed Amended Affirmative Defenses (Doc. 71). Defendants prefaced their affirmative defenses with the following statement:

> As of the date of these amended defenses, no party has yet responded to written discovery (written discovery has been served, but responses are not yet due). Thus, Defendants are filing these Amended Affirmative Defenses without the benefit of any discovery responses. To the extent possible, Defendants have pled facts currently known to them; however, due to the limited discovery to-date, Defendants have also pled certain facts based upon good-faith information and belief.

(Doc. 71, pg. 2).

Defendants then noted they allegedly ceased producing polychlorinated biphenyls ("PCBs") in Sauget in 1977 and ceased depositing PCBs in nearby landfills in the 1980s. (Doc. 71, pg. 2). Thus, unless an exception applies, Defendants stated Plaintiff's allegations are barred by the limitations periods contained in §§ 13-202 and 13-205 of the Illinois Code of Civil Procedure. *See* 735 ILCS 5/13-202; 13-205; (Doc. 71, pgs. 2-3). Likewise, Defendants alleged Plaintiff could not avoid the repose period stated in § 13-213 of the Illinois Code of Civil Procedure since it did not file suit within 20 years of when Defendants manufactured PCBs, *i.e.*, 1977. *See* 735 ILCS 5/13-213; (Doc. 71, pgs. 4-5).

Defendants also stated no exception applies to save Plaintiff's claims from the limitations periods. (Doc. 71, pgs. 3-4). The continuing tort and sovereign immunity exceptions were said to be inapplicable. (Doc. 71, pg. 3). To the extent Plaintiff seeks to toll those periods by alleging it was unaware of PCBs until December 2020, that allegation

---

[1] Defendant's Answer was filed on October 12, 2021. On October 25, 2021, Plaintiff filed a Motion to Strike Defendants' Affirmative Defenses (Doc. 52). That Motion to Strike was granted in part and denied in part by the Court. (Doc. 70). Defendants were granted leave to amend certain affirmative defenses. (Doc. 70).

would be contradicted in discovery.[2] (Doc. 71, pg. 3). Defendants noted the Sauget plant and landfills "have been the subject of well-known, well-publicized investigation and oversight…for decades…[and,] upon information and belief, the City had direct communications…concerning such investigation and oversight." (Doc. 71, pg. 3).

In addition, since Plaintiff "slept on its rights," despite knowledge of PCBs in East St. Louis before 2020, Defendants argued Plaintiff's claims were barred by the doctrine of laches. (Doc. 71, pg. 5). Similarly, Plaintiff's allegations were arguably barred by the doctrine of estoppel. (Doc. 71, pg. 6). Defendants realleged, upon information and belief, that Plaintiff had "direct communications" regarding the aforementioned investigation and oversight of the Sauget plant and landfills. (Doc. 71, pgs. 3, 6). Those facts, and the facts adduced during discovery, would reveal Plaintiff was aware of the potential or actual presence of PCBs in East St. Louis before 2020 but took no action. (Doc. 71, pg. 6).

Now, in its Motion, Plaintiff presents two arguments. First, with respect to the four Counts of the First Amended Complaint for Damages and Abatement relating to ordinance violations, Plaintiff invokes the continuing tort doctrine. Plaintiff argues its Code of Ordinances has a "general penalty clause" for continuing ordinance violations. (Doc. 87, pg. 3). As a result, Plaintiff argues Defendants cannot raise affirmative defenses

---

[2]The Discovery Deadlines, which were recently extended, are presently as follows: any motions to amend the pleadings are due on January 15, 2023; fact discovery shall be completed by June 27, 2023; Plaintiff's Rule 26(a)(2) expert(s) shall be disclosed by July 17, 2023; Defendants' Rule 26(a)(2) expert(s) shall be disclosed by October 17, 2023; Plaintiff's Rule 26(a)(2) rebuttal expert(s) shall be disclosed by December 22, 2023; the depositions of Plaintiff's Rule 26(a)(2) experts shall be taken by September 20, 2023; the depositions of Defendants' Rule 26(a)(2) experts shall be taken by December 13, 2023; the depositions of Plaintiff's Rule 26(a)(2) rebuttal expert(s) shall be taken by February 7, 2024; all discovery shall be completed by February 23, 2024; and all dispositive motions shall be filed by March 22, 2024. (Doc. 108).

based upon the statutes of limitations, the statute of repose, laches, and estoppel in defense of the allegations pertaining to ordinance violations. (Doc. 87, pgs. 2-3).

Second, as to each Count of the First Amended Complaint for Damages and Abatement, Plaintiff argues the doctrine of *nullum tempus occurit regi* (commonly interpreted as "no time runs against the king") bars the affirmative defenses related to the statutes of limitations, the statute of repose, laches, and estoppel. (Doc. 87, pgs. 3-4). Under that doctrine, Plaintiff argues Defendants cannot assert their affirmative defenses because Plaintiff is an Illinois governmental entity acting in its public capacity. (Doc. 87, pg. 4). Indeed, Plaintiff suggests its allegations are presumed exempt from the affirmative defenses. (Doc. 87, pg. 4). Further, Plaintiff argues it is a home-rule corporation that, under Section 11-60-2 of the Illinois Municipal Code, has a public governmental interest in preserving and protecting its natural resources, lands, and citizenry. *See* 65 ILCS 5/11-60-2; (Doc. 87, pgs. 4, 12). In the same vein, Plaintiff argues it has a constitutional obligation to protect and vindicate rights related to the health and well-being of the public, environment, and economy. (Doc. 87, pgs. 4-5, 8-9, 11). Plaintiff states it incurred and will continue to incur "massive costs" related to this litigation and attempts to abate and remediate the alleged "PCB contamination." (Doc. 87, pgs. 5, 13).

In response, Defendants initially argue the Motion is untimely under Federal Rule of Civil Procedure 12(f). (Doc. 98, pg. 1). Defendants note that the Motion was filed in the middle of discovery and, as Plaintiff admits, 97 days after the service of Defendant's Amended Affirmative Defenses. (Docs. 98, pgs. 1, 3; 103, pg. 1). Defendants argue the Court may deny the Motion on this basis alone. (Doc. 98, pg. 1).

Further, Defendants argue Plaintiff, in each of its arguments, seeks for the Court to reach the substance of their affirmative defenses at a time when "the underlying facts[] and the application of Illinois law…[are] very much in dispute." (Doc. 98, pgs. 1, 3-4). With respect to the allegations that their activities constituted a continuing tort in violation of Plaintiff's ordinances, Defendants submit that Plaintiff must actually prove, with facts from discovery that are certain to be disputed, a tort that was "continuing." (Doc. 98, pg. 4). By extension, Defendants submit that Plaintiff must prove the tort not only continued but continued consistent with the applicable limitations periods or, if necessary, that the limitations periods did not limit the damages recoverable and were tolled by a lack of knowledge about the continuing tort. (Doc. 98, pgs. 5, 9). Defendants note, aside from the disputed facts relating to a potential continuing tort, they disagree with Plaintiff's reading of the applicable ordinances and case law. (Doc. 98, pgs. 5-10).

Likewise, Defendants argue Plaintiff ignores the disputed facts that are relevant to the doctrine of *nullum tempus occurit regi* under Illinois law. (Doc. 98, pgs. 10-11). For example, Defendants submit that Plaintiff's lawsuit is "lawyer-driven," Plaintiff has no legal obligation to "clean up" its properties as a result of Defendants' alleged PCB contamination, the circumstances in East St. Louis do not constitute a health and safety concern for residents, the only funds spent by Plaintiff relate to this litigation and not abatement, and in the absence of this litigation Plaintiff would not spend any public funds to "clean up" its properties. (Doc. 98, pgs. 10-11). Defendants note various other factual disputes about whether Plaintiff filed this case in a public or private capacity, which they believe is legally determinative of a governmental entity's immunity from the affirmative

5

defenses at issue. (Doc. 98, pgs. 11-13). Alternatively, Defendants claim laches and estoppel may be asserted against a governmental entity under extraordinary circumstances and to prevent fraud and injustice, respectively. (Doc. 98, pgs. 14-15).

In sum, Defendants assert the above-described factual and legal issues will be clarified in discovery, which is currently ongoing. (Doc. 98, generally). Defendants emphasize, after discovery, Plaintiff may challenge their affirmative defenses in a motion for summary judgment. (Doc. 98, pg. 2). At this early stage, though, Defendants state they must be allowed to assess their affirmative defenses in discovery. (Doc. 98, pgs. 1-2).

In a Reply to Defendants' Response to the Motion, Plaintiff suggested Defendants alleged no facts to support the affirmative defenses relating to the limitations periods. (Doc. 101, pg. 2). Defendants allegedly provided only legal conclusions. (Doc. 101, pg. 2). Therefore, Plaintiff argued those affirmative defenses were facially insufficient and could be stricken for the failure to satisfy pleading requirements. (Doc. 101, pg. 2). Further, Plaintiff argued Defendants did not address the legal presumption that their affirmative defenses, relating to the limitations periods, cannot be asserted against a governmental entity. (Doc. 101, pg. 2). Since the limitations periods asserted by Defendants do not expressly state a governmental entity is unexempt from such limitations, as necessary to rebut the legal presumption, Plaintiff suggested it is inconsequential that there may be factual disputes at this stage in the case. (Doc. 101, pg. 3).

**Analysis**

Under Rule 12(f), the Court may strike "an insufficient defense" from a pleading. *See* Fed. R. Civ. P. 12(f). The Court may act on its own or on the motion of a party before

the filing of a response or, if no response is allowed, within 21 days of service. *See id.*; *but see also Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006, 1011-12 (N.D. Ill. 2021) ("A court…has the discretion 'to consider a motion to strike at any point in a case' when the court's attention 'was prompted by an untimely filed motion.' [Citation]."). As a general matter, motions to strike are disfavored. *See Crumpton*, 513 F. Supp. 3d at 1011-12 (quoting *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

Affirmative defenses are subject to pleading requirements. *See Heller Fin.*, 883 F.2d at 1294 (citing *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736-37 (N.D. Ill. 1982)). The Court applies the same test to motions to strike under Rule 12(f) that it uses to assess motions under Federal Rule of Civil Procedure 12(b)(6). *See City of East St. Louis v. Pharmacia LLC*, No. 21-232, 2022 WL 613278, *1 (S.D. Ill. March 2, 2022). The non-movant's well-pleaded facts are deemed admitted, all reasonable inferences are drawn in his or her favor, and all doubts are resolved in favor of denying the motion to strike. *See City of East St. Louis*, 2022 WL 613278, at *1 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009); *Heller Fin.*, 883 F.2d at 1294); *see also Crumpton*, 513 F. Supp. 3d at 1012. Further, the heightened pleading standards set forth in *Twombly* and *Iqbal* apply to affirmative defenses, meaning they must be pled with "facial plausibility" and "more than labels and conclusions" or a "formulaic recitation of the elements." *See City of East St. Louis*, 2022 WL 613278, at *1 (quoting *Ashcroft*, 556 U.S. at 698; *Twombly*, 550 U.S. at 555); *Crumpton*, 513 F. Supp. 3d at 1012; *see also McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (" 'A claim has facial plausibility when

7

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [Citation].").

The Court examines affirmative defenses, subject to a motion to strike, under the following three-part test: (1) they must be proper affirmative defenses; (2) they must be adequately pled under Federal Rules of Civil Procedure 8 and 9; and, as alluded to above, (3) they must withstand the Rule 12(b)(6) standard. *See City of East St. Louis*, 2022 WL 613278, at *1 (citing *Hughes v. Napleton's Holdings, LLC*, No. 15-50137, 2016 WL 6624224, *2 (N.D. Ill. Nov. 9, 2016)); *accord Crumpton*, 513 F. Supp. 3d at 1012. Generally, affirmative defenses will be stricken only if they are facially insufficient, *i.e.*, if it appears the pleader can prove no set of facts to plausibly entitle him or her to relief. *See Crumpton*, 513 F. Supp. 3d at 1011 (quoting *Heller Fin.*, 883 F.2d at 1294; citing *Mittelstaedt v. Gamla-Cedron Orleans LLC*, No. 12-5131, 2012 WL 6188548, *2 (N.D. Ill. Dec. 12, 2012)). Further, affirmative defenses will ordinarily not be stricken if they present disputed questions of law or fact. *See Heller Fin.*, 883 F.2d at 1294 (citing *U.S. v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975)); *see also LaSalle Bank Nat'l Ass'n v. Paramont Prop.*, 588 F. Supp. 2d 840, 860 (N.D. Ill. 2008) (" 'Before granting a motion to strike an affirmative defense, the Court must be convinced that there are no unresolved questions of fact, that any questions of law are clear, and that under no set of circumstances could the defense succeed.' [Citation].").

Here, the Court notes that Plaintiff's Motion was untimely under Rule 12(f)(2), as Defendants claim. Rather than file the Motion within 21 days of service, as required by that Rule, Plaintiff waited 76 additional days. *See* Fed. R. Civ. P. 12(f)(2); (Docs. 71, 87). The Court also notes, during that period, the parties were operating pursuant to a

8

Scheduling and Discovery Order (Doc. 54) and then an Amended Scheduling Order (Doc. 85). In other words, Defendants affirmative defenses were "fair game" in discovery, as they have been during the Court's consideration of the Motion. For these reasons, the Court **FINDS** it may deny the Motion for a lack of timeliness. *See* Fed. R. Civ. P. 12(f)(2).

However, the Court acknowledges it may, but is not required to, reach this conclusion under Rule 12(f). A lack of timeliness under Rule 12(f)(2) does not necessarily bar consideration of the Motion. *See* Fed. R. Civ. P. 12(f); *Crumpton*, 513 F. Supp. 3d at 1011-12. Therefore, in the alternative, the Court **FINDS** it is inappropriate to grant the Motion at this stage in the litigation due to the many disputed questions of fact and law identified in each of Plaintiff and Defendants' filings. As alluded to above, the parties are in the middle of fact discovery, which is not due to be completed until June 27, 2023. (Doc. 108). All discovery is due to be completed by February 23, 2024. (Doc. 108). It is during the discovery processes that the parties will obtain the complete set of facts necessary to answer the many disputed questions of fact and unclear questions of law related to Defendants' ability to succeed on its affirmative defenses, including, *inter alia*, what the parties knew about the alleged PCB contamination, when the parties became aware of the alleged PCB contamination, whether Plaintiff is acting in a public or private capacity, whether Plaintiff is exempt from Defendants' affirmative defenses, the actions taken or costs incurred by the parties in response to the alleged PCB contamination, the extent of any obligation of the parties to act in response to the alleged PCB contamination, whether Defendants committed a tort or a "continuing" tort under the disputed ordinances and

9

other standards, and the relationship between any tort and the limitations periods and damages. *See Heller Fin.*, 883 F.2d at 1294; *LaSalle Bank Nat'l Ass'n*, 588 F. Supp. 2d at 860.

The Court **FURTHER FINDS** Defendants' affirmative defenses survive the above-described three-part test. *See City of East St. Louis*, 2022 WL 613278, at *1; *Crumpton*, 513 F. Supp. 3d at 1012. To review, Defendants alleged: (1) Plaintiff's claims were barred by the limitations periods in §§ 13-202 and 13-205 of the Illinois Code of Civil Procedure because Defendants allegedly ceased producing PCBs in Sauget in 1977 and ceased depositing PCBs in nearby landfills in the 1980s, yet Plaintiff filed this lawsuit in 2021; (2) Plaintiff's claims were barred by the repose period in § 13-213 of the Illinois Code of Civil Procedure because Plaintiff did not file suit within 20 years of when Defendants manufactured PCBs in Sauget, *i.e.*, by 1977; (3) Plaintiff's claims were barred by the doctrines of laches and estoppel since the Sauget plant and landfills "have been the subject of well-known, well-publicized investigation and oversight…for decades…[and,] upon information and belief, the City had direct communications…concerning such investigation and oversight," such that Plaintiff knew of the alleged presence of PCBs in East St. Louis before 2020 yet slept on its rights by delaying the filing of this case or pursuing other potential remedies. (Doc. 71, pgs. 2-6). Further, Defendants affirmatively alleged no exceptions save Plaintiff's claims from the limitations periods. *See Crisman v. Peoria & Pekin Union Ry. Co.*, 846 F. Supp. 716, 719 (C.D. Ill. 1994) (stating the plaintiff bears the burden of establishing an exception to the statute of limitations); (Doc. 71, pgs. 3-4).

Therefore, Defendants appear to have raised proper affirmative defenses. *See* Fed. R. Civ. P. 8(c)(1). The affirmative defenses also comport with Rule 8(a), as Defendants

10

provided "short and plain statement[s]" of the nature of the affirmative defenses that gave Plaintiff "fair notice" of those affirmative defenses and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a); *Dace v. Chicago Public Schools*, No. 19-6819, 2020 WL 1861671, *4 (N.D. Ill. March 18, 2020) (quoting *Twombly*, 550 U.S. at 555). Finally, Defendants' affirmative defenses satisfy the Rule 12(b)(6) standard. *See City of East St. Louis*, 2022 WL 613278, at *1; *Crumpton*, 513 F. Supp. 3d at 1012; Fed. R. Civ. P. 8(c)(1). Contrary to Plaintiff's argument, which was first raised in its Reply to Defendants' Response, the affirmative defenses contain sufficient factual content to allow the court to draw reasonable inferences about Plaintiff's actions. *See McCauley*, 671 F.3d at 615; *see also City of East St. Louis*, 2022 WL 613278, at *1; *Crumpton*, 513 F. Supp. 3d at 1011-12.

## Conclusion

For the foregoing reasons, the Court **DENIES** the Motion.

**SO ORDERED.**

Dated: November 14, 2022

DAVID W. DUGAN
United States District Judge