## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CITY OF EAST ST. LOUIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:21-cv-232-DWD** |
| | ) | |
| **MONSANTO CO., PHARMACIA LLC,** | ) | |
| **and SOLUTIA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge:**

Before the Court are Defendants' Combined Motion to Dismiss Certain Request for Relief under Federal Rule of Civil Procedure 12(b)(1) (Doc. 145) and Plaintiff's Motion to Dismiss Defendants' Counterclaim (Doc. 138) under Rule 12(b)(1) and (6). The Motions are now fully briefed and ripe for a ruling. (Docs. 142, 143, 146, 147). Consistent with the reasoning that follows, each Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

This case was removed from the Circuit Court of St. Clair County, Illinois. (Doc. 1). Plaintiff filed a Second Amended Complaint for Damages and Abatement ("Second Amended Complaint") (Doc. 129) against all Defendants, alleging a public nuisance (Count I), violations of Plaintiff's Municipal Code (§ 50-71 (Nuisance)) (Count II), abatement under Plaintiff's Municipal Code (§§ 50-79 and 62-2) (Count III), a continuing trespass (Count IV), a design defect (Count V), a failure to warn and instruct (Count VI), and negligence (Count VII). (Doc. 1, generally). Plaintiff's allegations pertain to "the

contamination of vast swaths of its land with polychlorinated biphenyls… manufactured in Defendants' Monsanto Plant in adjacent Sauget, Illinois." (Doc. 129, pg. 1).

Also, Defendants filed a Counterclaim (Doc. 130) under 42 U.S.C. § 1983 for certain alleged constitutional violations by Plaintiff under the color of state law. Specifically, Defendants allege: (1) due process violations related to Plaintiff's arbitrary and vague enforcement of its ordinances (Count I); (2) due process violations stemming from Plaintiff's oppressive delay in prosecution (Count II); (3) violations of the Ex Post Facto Clause due to Plaintiff's attempt to retroactively penalize Defendants' conduct under its ordinances (Count III); (4) violations of the excessive fines clause due to the "punitive and grossly disproportionate" nature of the penalties in relation to the gravity of the alleged conduct (Count IV); and (5) an equal protection violation due to the "malicious or improper application" of Plaintiff's ordinances (Count V). (Doc. 130, generally).

## II. ANALYSIS

Now, Defendants move to dismiss certain relief, requested in the Second Amended Complaint under Plaintiff's ordinances, pursuant to Rule 12(b)(1). Plaintiff, for its part, moves to dismiss Defendants' Counterclaim under Rule 12(b)(1) and (6).

### A. Defendants' Combined Motion to Dismiss
### Certain Request for Relief Under Rule 12(b)(1) (Doc. 145)

In Count II, Plaintiff invokes § 50-71(a) of its Municipal Code, which states: "No person shall create, commit, permit or continue a nuisance of any kind or description in, upon or about any private property or public place within the city which may affect the health, comfort or convenience of persons residing or doing business in the

2

vicinity." City of East St. Louis, Illinois, Municipal Code § 50-71(a). As the sole request

for relief, aside from interest and any other relief thought just and proper by the Court,

Count II states: "The East St. Louis Municipal Code further provides…that each violation

of East St. Louis, Ill., Municipal Code § 50-71(a) 'shall be punished by a fine not exceeding

$750.00' and that '[e]ach day any violation of any provision of this Code or of any

ordinance shall constitute a separate offense.' " (Doc. 129, pg. 28) (quoting City of East St.

Louis, Illinois, Municipal Code § 1-15(a)). By extension, § 1-15(a), which is the primary

subject of the Defendants' Combined Motion to Dismiss under Rule 12(b)(1), states:

> Whenever in this Code or in any ordinance of the city any act is prohibited
> or declared to be unlawful or an offense, or whenever in such Code or
> ordinance the doing of any act is required or the failure to do any act is
> declared to be unlawful, where no specific penalty is provided therefor,
> the violation of any such provision of this Code or any ordinance shall be
> a misdemeanor, to the extent permitted by 65 ILCS 5/1-2-1.1, and, in any
> case, shall be punished by a fine not exceeding $750.00 and/or
> imprisonment not exceeding six months. Each day any violation of any
> provision of this Code or of any ordinance shall constitute a separate
> offense.

City of East St. Louis, Illinois, Municipal Code § 1-15(a).

Moreover, the statute enabling the enactment of § 1-15(a) of Plaintiff's Municipal

Code, namely, § 1-2-1.1 of the Illinois Municipal Code, states:

> The corporate authorities of each municipality may pass ordinances, not
> inconsistent with the criminal laws of this State, to regulate any matter
> expressly within the authorized powers of the municipality, or incidental
> thereto, making violation thereof a misdemeanor punishable by
> incarceration in a penal institution other than the penitentiary not to exceed
> 6 months. The municipality is authorized to prosecute violations of penal
> ordinances enacted under this Section as criminal offenses by its corporate
> attorney in the circuit court by an information, or complaint sworn to,
> charging such offense. The prosecution shall be under and conform to the

rules of criminal procedure. Conviction shall require the municipality to establish the guilt of the defendant beyond reasonable doubt.

65 ILCS 5/1-2-1.1; (Doc. 145, pg. 2).

In their Motion, Defendants argue § 1-15(a) imposes state criminal penalties, such that the Court lacks subject matter jurisdiction to award the $750 fines requested in Count II for violations of § 50-71(a). (Doc. 145, pgs. 1-3). Further, Defendants argue Plaintiff's request for fines under § 1-15(a), rather than imprisonment, "does not change the criminal nature of the relief requested." (Doc. 145, pg. 3). Notably, though, Defendants suggest the Court only lacks subject matter jurisdiction over *the relief* sought in Count II. (Docs. 145, pgs. 4-5; 147, pg. 3). Defendants note Plaintiff seeks abatement in the Second Amended Complaint, generally, and in Count III, specifically. (Doc. 147, pgs. 1-2). Defendants emphasize, as at the time of removal, Plaintiff's claims are civil and diversity exists. (Doc. 145, pg. 5). When arguing for a dismissal of the § 1-15(a) relief and against a remand, as Plaintiff seeks in the alternative, Defendants state the Court cannot "remand a case in its entirety where there is subject matter jurisdiction over some portion." (Doc. 145, pg. 5).

In response, Plaintiff argues "this is a civil case, daily fines included." (Doc. 146, pg. 3). Although subject matter jurisdiction cannot be waived, Plaintiff argues Defendants should be bound by their initial position that this is a civil action. (Doc. 146, pgs. 3, 9-10). In addition, Plaintiff suggests "there is no basis" to conclude the fines contemplated by § 1-15(a) represent criminal, as opposed to civil, penalties. (Doc. 146, pg. 4). Plaintiff points out that a municipality's authority to collect fines for ordinance violations is a civil function in Illinois, and Defendants are not natural persons who may be incarcerated

4

under § 1-15(a). (Doc. 146, pgs. 10-11). As such, Plaintiff suggests Defendants "focus[] on a…punishment (imprisonment)" that they do not face in this litigation. (Doc. 146, pgs. 12, 15-16). Since Defendants cannot be deprived of liberty through imprisonment, and "not all violations punishable by Section 1-15(a) are misdemeanors" requiring imprisonment, Plaintiff argues there is no reason to extend the additional procedural protections contained in § 1-2-1.1 of the Illinois Municipal Code to Defendants. (Doc. 146, pgs. 12-14). Even if § 1-15(a) imposes criminal penalties, however, Plaintiff argues a remand of the entire case or, at least of Count II, is the proper remedy. (Doc. 146, pgs. 4, 16-17, 21). Plaintiff reasons, if § 1-15(a) imposes criminal penalties, then it would have never been appropriate to remove the case, as "Defendants understood when they removed the citations that the City sought fines under…Section 1-15(a)." (Doc. 146, pgs. 4-5, 17-19).

Now, under Rule 12(b)(1), a party may assert a lack of subject matter jurisdiction in a motion to dismiss. Fed. R. Civ. P. 12(b)(1). As is widely known, the Court must dismiss an action, at any time, if it finds a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Golemine, Inc. v. Town of Merrillville, Indiana*, 652 F. Supp. 2d 977, 980 (N.D. Ind. 2009). Moreover, as Defendants note, it is commonly understood that the Court lacks subject matter jurisdiction over state criminal matters. *See U.S. v. Brown*, 58 F. Supp. 3d 115, 120-21 (D.C. 2014) (citing *Beal v. Missouri Pacific R.R. Corp.*, 312 U.S. 45, 49-50 (1941); *Jerome v. U.S.*, 318 U.S. 101, 104-05 (1943); *U.S. v. Hudson*, 11 U.S. 32, 32-34 (1812)).

In Illinois, prosecutions of municipal ordinances solely for the collection of fines "have long been treated as quasi-criminal in character but civil in form." *See City of Danville v. Hartshorn*, 53 Ill. 2d 399, 401-02 (1973); *accord Young v. City of Pekin*, 2015 IL App

5

(3d) 140484-U, ¶ 25; *see also City of Decatur v. Chasteen*, 19 Ill. 2d 204, 216 (1960) ("An action to recover a penalty for the violation of a municipal ordinance, though quasi-criminal in character, is civil in form and is ordinarily termed a civil action and not a criminal prosecution."). But the Illinois Code of Civil Procedure only "appl[ies] to the prosecution, through the judicial system, of violations of ordinances passed pursuant to…section 1-2-1 of the Illinois Municipal Code…or home rule authority for which the penalty does not include *the possibility* of a jail term." Ill. S. Ct. Rs. 570, 571 (Emphasis added.); *see also Village of Downers Grove v. Village Square III Condominium Ass'n*, 2022 IL App (2d) 210098, ¶ 70 ("[W]hen…the violation of an ordinance does not carry the possibility of a jail term, the Code of Civil Procedure applies."). However, if the violation of an ordinance carries *the possibility* of imprisonment, as a result of being passed pursuant to section 1-2-1.1 of the Illinois Municipal Code, then the action is criminal in nature and implicates the criminal rules of procedure. *See Village of Cary v. Pavis*, 171 Ill. App. 3d 1072, 1075 (1988) ("Where the corporate authorities pass an ordinance to regulate a matter within their corporate powers and provide for a penalty of incarceration, section 1–2–1.1 of the Illinois Municipal Code…provides, in part, that the prosecution 'shall be under and conform to the rules of criminal procedure' and the municipality must 'establish the guilt of the defendant beyond a reasonable doubt.' "); *Peoria County v. Schielein*, 87 Ill. App. 3d 14, 15-17 (1980) (holding case with a complaint, filed against a person for violating an ordinance, was a criminal proceeding implicating criminal rules, where, *inter alia*, violations of the ordinance were punishable, as a misdemeanor, by fines and/or the possibility of imprisonment); *Chau v. Chicago Public School Dist. No. 299*, 2013 IL App (1st) 111244-U,

¶ 45 ("It is clear that violations of section 13.1 of the School Code are criminal in nature because the possibility of imprisonment is a penalty; thus, it is subject to the protections of the Constitution."); *City of Braidwood v. Williams*, 2012 IL App (3d) 110757-U, ¶ 11 ("[O]ur lawmakers have established that rules of criminal procedure must be followed in a prosecution for ordinance violations where a conviction could result in incarceration.").

It is notable, too, that the Supreme Court has outlined considerations for assessing whether a punishment is criminal or civil. *See Hudson v. U.S.*, 522 U.S. 93, 99 (1997); *see also Nelson v. Town of Paris*, 78 F.4th 389, 392, 395 (7th Cir. 2023) (Seventh Circuit employing the considerations to assess whether a town's ordinance pertaining to residency restrictions on sex offenders was punitive); *City of Neodesha v. BP Corp. North America Inc.*, 176 F. Supp. 3d 1233, 1243-48 (D. Kan. 2016) (employing the considerations to assess whether municipal waste ordinances provided civil penalties, such that the case involved civil actions that could be removed under 28 U.S.C. § 1441(a)). The assessment, initially, is a matter of statutory construction. *See Hudson*, 522 U.S. at 99 (citing *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)). That is, the Court first inquires as to "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *See id*. (citing *U.S. v. Ward*, 448 U.S. 242, 248 (1980)); *accord Nelson*, 78 F.4th at 395. Importantly, if the Court finds the legislature intended to impose a criminal punishment, then the law is penal and the inquiry ends. *See Nelson*, 78 F.4th at 395 (quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

Second, even if the legislature indicated an intent for a civil penalty, the Court asks " 'whether the statutory scheme was so punitive either in purpose or effect…as to

'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *See Hudson*, 522 U.S. at 99 (quoting *Ward*, 448 U.S. at 248-49; *Rex Trailer Co. v. U.S.*, 350 U.S. 148, 154 (1956)); *accord Nelson*, 78 F.4th at 395. As part of this inquiry, courts have looked to certain "useful guideposts." *See id.* (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)); *Nelson*, 78 F.4th at 395, 398 (outlining five of the "useful guideposts"). The "useful guideposts" must be considered in relation to the statute on its face, "and 'only the clearest proof' will override the legislative intent and operate to transform a civil remedy into a criminal penalty." *See id.* (quoting *Ward*, 448 U.S. at 249).

Here, the Court cannot escape the conclusion that § 1-15(a) is criminal both in nature and in substance. Whenever "any act is prohibited or declared to be unlawful or an offense" by Plaintiff's Municipal Code or ordinances, and there is "no specific penalty…provided therefor," as the parties appear to agree is the case as to § 50-71, the violation "*shall be* a misdemeanor to the extent permitted by 65 ILCS 5/1-2-1.1." City of East St. Louis, Illinois, Municipal Code § 1-15(a) (Emphasis added.). At the hearing on the instant Motion, Plaintiff sought to avoid this conclusion by relying on the language "to the extent permitted by 65 ILCS 5/1-2-1.1." However, the Court finds no inconsistencies between what is allowed by § 1-2-1.1 of the Illinois Municipal Code and what Plaintiff enacted with § 1-15(a). There is nothing in the record that would support the argument that Plaintiff did not clearly intend to pass an ordinance that regulated matters within its municipal powers by making certain violations of its Municipal Code or ordinances "a misdemeanor punishable by incarceration in a penal institution other than the penitentiary not to exceed 6 months." 65 ILCS 5/1-2-1.1. In passing the ordinance,

Plaintiff enacted a "penal ordinance[]" that authorized prosecutions for violations of its Municipal Code or ordinances, such as § 50-71, as criminal offenses requiring conformity with criminal procedure rules. *Id.*

In short, § 1-15(a) does precisely what is permitted by § 1-2-1.1—it makes all violations subject to its penalties a misdemeanor *and*, in any case, it provides for *the possibility* of "a fine not exceeding $750 *and/or* imprisonment not exceeding six months." City of East St. Louis, Illinois, Municipal Code § 1-15(a); *see also* 730 ILCS 5/5-4.5-60 (defining a Class B misdemeanor as including, *inter alia*, "a determinate sentence of not more than 6 months" and/or a minimum fine of $75 or "[a] fine not to exceed $1,500 for each offense or the amount specified in the offense"). The Court finds, while Illinois generally treats cases seeking *only* fines as quasi-criminal in character but civil in form, § 1-15(a)'s authorization of imprisonment *and/or* fines renders that ordinance criminal in nature. *Compare Hartshorn*, 53 Ill. 2d at 401-02; *Young*, 2015 IL App (3d) 140484-U, ¶ 25; *Chasteen*, 19 Ill. 2d at 216; *with* Ill. S. Ct. Rs. 570, 571; *Village Square III Condominium Ass'n*, 2022 IL App (2d) 210098, ¶ 70; *Schielein*, 87 Ill. App. 3d at 15-17; *Chau*, 2013 IL App (1st) 111244-U, ¶ 45; *Williams*, 2012 IL App (3d) 110757-U, ¶ 11. The Court emphasizes that the language of § 1-15(a) commands this conclusion because the City expressly indicated a preference for a criminal punishment. *See Hudson*, 522 U.S. at 99; *Nelson*, 78 F.4th at 395.

In reaching its conclusion, the Court finds Plaintiff's other arguments to the contrary are unpersuasive. In particular, the Court finds it cannot arrive at a conclusion of whether § 1-15(a) is civil or criminal in nature based solely on the fact that the corporate Defendants are not subject to incarceration as a matter of fact or as a matter of Plaintiff's

discretion. That argument by Plaintiff oversimplifies the issue. For one thing, generally, corporations and their officers and directors are subject to criminal prosecutions and penalties. *See, e.g., Flomo v. Firestone Nat. Rubber Co., LLC*, 643 F.3d 1013, 1018-19 (7th Cir. 2011); *U.S. v. Doig*, 950 F.2d 411, 412 (7th Cir. 1991); *U.S. v. Segal*, 299 F. Supp. 2d 840, 845 (N.D. Ill. 2004). If the Court focused on the effect on these Defendants, rather than on the language of § 1-15(a), it would fail to capture whether § 1-15(a), when enacted as a generally applicable ordinance, was intended to be civil or criminal in nature. Also, in criminal cases, the imposition of a penalty is a judicial function, and "[o]ne cannot select procedural rules to be applied to a particular case by voluntarily waiving the possibility of certain statutory penalties for a given offense." *See Schielein*, 87 Ill. App. 3d at 17.

Having found § 1-15(a) is criminal in nature, the Court must decide the proper way forward in this case. Diversity jurisdiction remains satisfied, as it was at the time of removal; however, in light of the above conclusion, the Court lacks subject matter jurisdiction over the only relief specifically requested by Plaintiff in Count II.

Notably, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, *the case* shall be remanded." 28 U.S.C. § 1447(c); *accord Matter of Continental Cas. Co.*, 29 F.3d 292, 293-94 (7th Cir. 1994). This provision has been the subject of much discussion among courts addressing issues similar to those presented in this case. As their decisions indicate, the Courts have not always spoken in unison on the issues. The Court begins, as it must, with the guidance from our Supreme Court.

In *Wisconsin Department of Corrections v. Schacht*, the Supreme Court decided whether claims, subject to an Eleventh Amendment bar, destroyed removal jurisdiction.

*See* 524 U.S. 381, 386 (1998). The Supreme Court noted, as to removal jurisdiction, courts look at the case at the time it was filed in the state court. *See id.* at 390 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938)). The Supreme Court also noted its case was akin to that in which "a *later* event…destroy[ed] previously existing jurisdiction," which causes "a federal court…[to] *keep* a removed case." *See id.* at 391 (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 293-95; *Phelps v. Oaks*, 117 U.S. 236, 240-241 (1886); *Kanouse v. Martin*, 15 How. 198, 207-10 (1853); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) (Emphasis in original.)). Since the case fell within the original jurisdiction of the federal courts at the time of removal, the Supreme Court found the later invocation of the Eleventh Amendment placed *the particular claim* beyond the power of the federal courts but it did not destroy removal jurisdiction *over the entire case. See id.*

Also, under the plain language of § 1447(c), the Supreme Court rejected the respondent's argument that "if the 'district court lack[ed] subject matter jurisdiction' over *any* claim, then *every* claim, i.e., the entire 'case,' [had to] be 'remanded' to the state court." *See id.* at 391-92 (Emphasis in original.). The Supreme Court emphasized "[a]n ordinary reading" of § 1447(c) reveals that it references situations where a federal court lacks subject matter jurisdiction over *a case* and not simply over *one claim within a case. See id.* at 392 (quoting § 1447(c)); *see also Lutostanski v. Brown*, 88 F.4th 582, 588 (5th Cir. 2023) (stating "§ 1447(c) requires the court to remand the 'case,' not discrete claims."); *compare* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction."). Nevertheless, the Supreme Court acknowledged, "[c]onceivably,

one might also read the statute's reference to 'case' to include a claim within a case as well as the entire case," such that a remand of the relevant claims, but not the entire case, would be required. *See Schacht*, 524 U.S. at 392. These different readings of § 1447(c) were inconsequential in *Schacht. See id*. The Supreme Court reiterated its conclusion as follows:

> A State's proper assertion of an Eleventh Amendment bar after removal means that the federal court cannot hear the barred claim. But that circumstance does not destroy removal jurisdiction over the remaining claims in the case before us. A federal court can proceed to hear those other claims, and the District Court did not err in doing so.

*See id*. at 392-93.

Notwithstanding the Supreme Court's recognition of § 1447(c)'s "ordinary reading," some courts have acted pursuant to the other "[c]onceivabl[e]" reading of that statute by remanding some, but not all, of the claims to the state court. *See id*. at 392; *see also Gabriel, LLC v. PMG Mid Atlantic, LLC*, No. 21-TDC-2961, 2023 WL 6879091, *3 (D. Md. Oct. 18, 2023); *Tarpon Transp. Servs., Inc. v. Total Quality Logistics, LLC*, No. 20-cv-2656, 2021 WL 3111641, *3 (M.D. Fla. July 22, 2021); *Buscema v. Wal-Mart Stores East LP*, 485 F. Supp. 3d 1319, 1330-33 (D. N.M. 2020); *Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 960-61 (N.D. Cal. 2015), *abrogated on other grounds*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (2018); *California v. Northern Trust Corp.*, No. 12-cv-1813, 2013 WL 1561460, *5-6 (C.D. Cal. April 10, 2023). At base, the divergent views of the courts can best be attributed to differences of opinion on how to read § 1447(c) in light of the *Schacht*.

In *Lee v. American National Insurance Company*, the Ninth Circuit recognized *Schacht* "makes clear that a district court may not under § 1447(c) remand a case in its entirety where there is subject matter jurisdiction over some portion of it." *See* 260 F.3d 997, 1002

12

(9th Cir. 2001). Similarly, *Lee* acknowledged, under *Schacht*, a "case *must* be remanded only if subject matter jurisdiction is lacking over *the entire case*, and not over just some of the…*claims*." *See id*. at 1006 (citing *Schacht*, 524 U.S. at 392) (Emphasis added.). Since the district court lacked jurisdiction to decide only some, but not all, of the claims, the Ninth Circuit in *Lee* concluded the district court "could not have remanded…[the] entire case." *See id*. Whether the defective claims were dismissed by the district court or by the plaintiff, the Ninth Circuit noted that there should be no obstacle to the refiling of the claims in the state court, as the plaintiff apparently had viable and timely claims. *See id*.

When reaching these conclusions, however, the *Lee* court stated that it did not have to decide whether the district court could remand *only* the defective claims, as that was not the position taken on appeal. *See id*. at 1007. As an aside, though, the *Lee* court noted:

> *Schacht* left open the possibility that § 1447(c) might permit a district court to retain claims over which the court has subject matter jurisdiction, but remand those over which it lacks jurisdiction. 524 U.S. at 392, 118 S.Ct. 2047. ("Conceivably, one might also read [§ 1447(c)'s] reference to 'case' to include a claim within a case as well as the entire case….[This reading] requires remand only of the relevant claims, and not the entire case."). Some support for this interpretation of § 1447(c) derives from the historical origins of the term "civil action" in the removal statutes. *See Charles D. Bonanno Linen Serv. Inc. v. McCarthy,* 708 F.2d 1, 11 (1st Cir. 1983); *Langford v. Gates,* 610 F. Supp. 120, 122 (C.D. Cal. 1985). For the procedural reasons delineated in the text, however, we have no occasion in this case to decide whether such a partial remand would be appropriate.

*Id*. at 1007 n. 8.

Here, Defendants seek for the Court to dismiss only *the relief* requested under § 1-15(a) in Count II of the Second Amended Complaint. Plaintiff seeks a remand of the entire

case or, at the very least, of Count II to the Circuit Court of St. Clair County. Based upon the above-cited authorities, the Court cannot agree with Defendants or Plaintiff.

On the one hand, in light of the "ordinary reading" of § 1447(c) discussed in *Schacht* and its progeny, the Court disagrees with Plaintiff that a full remand of this case is appropriate. Also, the Court disagrees with Plaintiff that, if § 1-15(a) is criminal in nature, then a remand of the entire case would have been appropriate at the time of the removal to this Court. As noted by the parties in their briefing and at the hearing on this Motion, the parties were diverse at the time of the removal and only two out of the three original claims alleged by Plaintiff, none of which remain in this case, implicated § 1-15(a) as a penalty. The third claim, which arose under § 94-91 of Plaintiff's Municipal Code, has its own specific penalty. *See* City of East St. Louis, Illinois, Municipal Code § 94-91(c). Further, a partial remand of Count II is unwarranted. The substantive claim presented by Count II, namely, a violation of § 50-71 of Plaintiff's Municipal Code, was never filed in the Illinois state courts. (Doc. 1-1, pgs. 2, 19, 36). To the contrary, Count II was alleged for the first time in this case when Plaintiff filed its First Amended Complaint. (Doc. 29, pg. 18). As such, the Court is of the opinion that neither a full remand of the case nor a partial remand of Count II is appropriate.

On the other hand, Defendants are correct that Plaintiff seeks abatement in the Second Amended Complaint, generally, and in Count III, specifically.[1] However,

---

[1] Count III invokes §§ 50-79 and 62-2 of Plaintiff's Municipal Code. (Doc. 129, pgs. 29-31). Section 50-79 states: "Whenever any nuisance shall be found on any premises within the city, the officials are authorized to cause such nuisance to be summarily abated in such a manner as may be directed." City of East St. Louis, Illinois, Municipal Code § 50-79. Section 62-2 states: "The health department shall cause all

abatement is not requested in Count II. Again, as alluded to above, the only relief specifically requested in Count II are the fines contemplated by § 1-15(a). Here, no argument is presented that Plaintiff is unable to seek those fines for violations of § 50-71. Therefore, since the Court lacks subject matter jurisdiction to grant that relief, the Court finds it is appropriate under the circumstances of this case for Count II to be **DISMISSED without prejudice**. *See Parker v. Fed. Highway Admin.*, No. 22-cv-291, 2022 WL 17103830, *3 (S.D. Ind. Nov. 21, 2022) (remand could not be granted where "ordinary reading" of § 1447(c), recognized in *Schacht*, does not contemplate a "partial remand," so the court could only remand *the case* or dismiss *the claims* over which it lacked subject matter jurisdiction); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345, 2021 WL 1180058, *6-7 (S.D. N.Y. March 29, 2021) (dismissing claims without prejudice because, although the Supreme Court has not definitively decided whether § 1447(c) authorizes a remand of individual claims, the "ordinary reading" of § 1447(c), recognized in *Schacht*, "strongly suggest[s] that it does not," especially where the claims did not originate in state court and § 1447(c), unlike § 1441(c), refers to the "case" and not to the severance and remand of "claims"). Accordingly, Defendants' Combined Motion to Dismiss Certain Request for Relief under Rule 12(b)(1) (Doc. 145) is **GRANTED in part** and **DENIED in part**.

### B. Plaintiff's Motion to Dismiss Defendants' Counterclaim (Doc. 138)

Defendants' Counterclaim arises under § 1983 and alleges constitutional violations related to Plaintiff's application of §§ 1-15, 50-71, 50-79, and 62-2 of its

---

nuisances to be abated or removed which it may deem prejudicial or obnoxious to the public health or comfort and shall make such sanitary regulations as it may think necessary or expedient to prevent the introduction or spreading of any contagious, malignant, infectious or pestilential disease." *Id*. § 62-2.

Municipal Code. (Doc. 130, pg. 1).[2] Defendants assert, "[b]y applying the Ordinances…under a novel interpretation advanced by its outside counsel, the City…violates the Due Process, Ex Post Facto, Excessive Fines, and Equal Protection provisions of the United States Constitution." (Doc. 130, pgs. 1-2). Defendants seek injunctive relief and a declaration that the ordinances are unconstitutional as applied. (Doc. 130, pgs. 2, 13).

Now, Counts II, III, IV, and V appear to rely exclusively on Plaintiff's application of §§ 1-15 and 50-71. *See, e.g.*, (Doc. 130, pg. 9) ("If the City claims that it is not interpreting and applying differently its…Ordinances, and if the facts of this case reveal that the City had a basis to pursue its Ordinance claims and theories years or even decades ago…then the nearly 50 years of alleged 'daily penalty' liability will be the result of the City's delay in bringing the claims, such delay being oppressive, punitive, prejudicial and violative of due process."); (Doc. 130, pg. 10) ("The City seeks to penalize Defendants for trace levels of PCBs allegedly present on City-owned property before the penalty provisions of the Ordinances were added in the 1970s, as well as after. The City thus attempts to attach new legal consequences beginning in the early 1970s, to events that predated the daily-penalty ordinance."); (Doc. 130, pg. 11) ("The City has alleged that its Code has a general penalty clause which applies to all Ordinance violations and contends that, using that provision (City Code § 1-15), it can assess daily penalties going back to the enactment of the provision in the early 1970s."); (Doc. 130, pg. 12) ("[T]he Ordinances at issue have never been applied to the passive migration of substances invisible to the naked eye and

---

[2]Plaintiff has stated "[t]he ordinance claims remaining at issue are those under Section 50-71, which is governed by Section 1-15(a), and Sections 50-79 and 62-2, which provide for the abatement or removal of nuisances." (Doc. 140, pg. 7 n. 6).

measured in parts per billion….[T]he City has never sought to collect daily penalties for alleged Ordinance violations for the days, weeks, months, years or decades preceding the issuance of a citation for such violations; instead, Defendants anticipate that discovery will show the City's starting point for collecting daily penalties has always been the date a citation was issued, or the scheduled hearing date for such citation.").

By virtue of the Court's ruling with respect to Defendants' Combined Motion to Dismiss Certain Request for Relief under Rule 12(b)(1), however, Defendants' bases for asserting Counts II, III, IV, and V no longer exist. The dismissal of Count II of Plaintiff's Second Amended Complaint, without prejudice, means Plaintiff is not presently seeking to apply §§ 1-15 or 50-71 against Defendants. Accordingly, the aforementioned Counts are not ripe. *See Amling v. Harrow Industs. LLC*, 943 F.3d 373, 377-78 and n. 1 (7th Cir. 2019); *Wisconsin Right to Life State Political Action Committee v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011); *see also Golemine, Inc. v. Town of Merrillville, Indiana*, 652 F. Supp. 2d 977, 981 (N.D. Ind. 2009) ("When a claim is not ripe, a court lacks subject matter jurisdiction."). For this reason, Counts II, III, IV, and V are **DISMISSED without prejudice**.

Likewise, Count I appears, at least partially, to also challenge Plaintiff's application of §§ 1-15 and 50-71. (Doc. 130, pg. 7) ("The Ordinances on their face provided no notice that Defendants could be penalized for the alleged presence of trace levels of PCBs on City-owned property."). However, it is not altogether clear, based on Defendants' allegations, whether they are challenging Plaintiff's application of §§ 1-15, 50-71, 50-79, *and* 62-2. Accordingly, the Court finds Count I must also be **DISMISSED without prejudice**. For these reasons, the Motion to Dismiss Defendants' Counterclaim

17

under Rule 12(b)(1) and (6) is **GRANTED in part** and **DENIED in part**. Defendants are granted leave to refile their Counterclaim, if at all, within 21 days in light of these rulings.

### III. CONCLUSION

Defendants' Combined Motion to Dismiss Certain Request for Relief under Rule 12(b)(1) (Doc. 145) is **GRANTED in part** and **DENIED in part**. Count II of Plaintiff's Second Amended Complaint is **DISMISSED without prejudice**. Plaintiff's Motion to Dismiss Defendants' Counterclaim under Rule 12(b)(1) and (6) is also **GRANTED in part** and **DENIED in part**. Defendants' Counterclaim is **DISMISSED without prejudice**.

**SO ORDERED.**

Dated: March 12, 2024

_s/ David W. Dugan_
DAVID W. DUGAN
United States District Judge