IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CITY OF EAST ST. LOUIS,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 3:21-cv-232-DWD |
| **MONSANTO CO., PHARMACIA LLC,** and **SOLUTIA, INC.,** | ) ) ) ) |
| Defendants. | ) ) |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendants' Combined Motion to Disqualify Counsel and to Stay ("Combined Motion"). (Doc. 137). Plaintiff filed a Memorandum in Opposition to the Combined Motion. (Doc. 140). The matter was the subject of a hearing on February 1, 2024. (Docs. 168 & 169). As explained below, the Combined Motion is **DENIED**.

### I. BACKGROUND

This case was removed from the Circuit Court of St. Clair County, Illinois. (Doc. 1). Plaintiff filed a Second Amended Complaint for Damages and Abatement ("Second Amended Complaint") (Doc. 129) against Defendants, alleging a public nuisance (Count I), violations of Plaintiff's Municipal Code (§ 50-71 (Nuisance)) (Count II), abatement under Plaintiff's Municipal Code (§§ 50-79 and 62-2) (Count III), a continuing trespass (Count IV), a design defect (Count V), a failure to warn and instruct (Count VI), and negligence (Count VII). (Doc. 129, generally). Plaintiff's allegations pertain to "the

contamination of vast swaths of its land with polychlorinated biphenyls…manufactured in Defendants' Monsanto Plant in adjacent Sauget, Illinois." (Doc. 129, pg. 1).

On March 12, 2024, the Court dismissed Count II of the Second Amended Complaint without prejudice. (Doc. 171). The Court found it lacked subject matter jurisdiction to grant the only relief requested in Count II, namely, fines under § 1-15 of Plaintiff's Municipal Code, which the Court found to be criminal in nature. (Doc. 171).

The Combined Motion was filed before the above ruling. Therefore, when arguing Plaintiff's attorneys must be disqualified, Defendants relied heavily on the request for fines under § 1-15 in Count II. (Doc. 137, generally).[1] When resolving the Combined Motion, the Court accounts for the fact that Count II, together with its request for fines, was dismissed without prejudice and is now inconsequential to the Combined Motion.

## II. ANALYSIS

In the Combined Motion, Defendants argue Plaintiff's pursuit of this action, pursuant to its police power and ordinances, violates their due process rights because Plaintiff's attorneys have "a significant financial interest in any monetary recovery." (Doc. 137, pg. 1). Each attorney, including the City Attorney, entered a contingency-fee agreement entitling them to a "substantial percentage" of any recovery. (Doc. 137, pg. 1).

---

[1]For example, in the Combined Motion, Defendants note that Plaintiff sought daily fines, going back to the 1970s, under § 1-15(a) of its Municipal Code, which they argue outlines a misdemeanor carrying a term of imprisonment as a penalty. (Docs. 129, pg. 28; 137, pgs. 5-8, 14). Defendants also note, "[a]cting in his official capacity, the City's Chief of Police signed the original ordinance citations." (Docs. 1-1, pg. 2; 137, pg. 7). Defendants argue contingency-fee agreements are barred in the pursuit of these criminal penalties. (Doc. 137, pg. 1). Again, though, the Court dismissed Count II of the Second Amended Complaint without prejudice on March 12, 2024. (Doc. 171).

Although Defendants concede that contingency-fee agreements are sometimes permitted in the context of civil public nuisance cases, Defendants argue Plaintiff has not in any way satisfied the necessary prerequisites for neutrality, which purportedly require, at a minimum, "a financially-neutral government lawyer [to] oversee and, in fact, control the prosecution of [the] public nuisance action." (Doc. 137, pgs. 1, 5, 11-13). Defendants also suggest Plaintiff, other than having the right to approve a settlement, does not "retain critical decision-making responsibilities over the course and conduct of the litigation." (Doc. 137, pg. 3). Defendants emphasize the importance of the rule against contingency-fee agreements in this context by stating, "[a] lawyer representing a government entity, prosecuting a case in the name of the public interest, has a duty to seek justice, not to obtain a conviction or to win at any cost." (Doc. 137, pg. 1).

In response, Plaintiff argues, *inter alia*, there is no basis for the "drastic step of disqualifying the City's chosen counsel" because the contingency-fee agreement is appropriate under the authorities governing requests for civil, rather than criminal, relief, and the City could not otherwise pursue relief. (Doc. 140, pgs. 3, 12-19).[2] In light of its belief that there are no conflicts, Plaintiff argues a stay is unwarranted. (Doc. 140, pg. 4).

Notably, since the passage of the contingency-fee agreement and the filing of the Combined Motion, Plaintiff amended the contingency-fee agreement to include "inadvertently omitted" language indicating, *inter alia*, "all critical decision-making" is

---

[2]Plaintiff notes it is a financially distressed city under the Illinois Financially Distressed City Law, 65 ILCS 5/8-12-16. (Docs. 140, pg. 19; 140-4, pg. 3).

reserved to Plaintiff. (Doc. 140, pgs. 17-18). Also, the City retained conflict counsel. (Doc. 140, pg. 18). The amendment to the contingency-fee agreement, in part, provides:

| | |
|---|---|
| **WHEREAS:** | On January 9, 2020, the City entered into an agreement for legal services with…[the Attorneys]…through Resolution No. 20-20001 (the "2020 Agreement"); and |
| **WHEREAS:** | On July 7, 2022, the City entered into an agreement for legal services with the Attorneys through Resolution No. 22-20040 (the "2022 Agreement"), which by its terms superseded the 2020 Agreement; and |
| **WHEREAS:** | The subject and purpose of the 2020 Agreement and the 2022 Agreement was to authorize the City's retention of the Attorneys to investigate, evaluate, and litigate the City's potential claims against entities responsible for creating or maintaining a historic nuisance on any property within the City's corporate limits in violation of any municipal ordinance, and any other claims related thereto (the "Nuisance Matters"); and |
| | … |
| **WHEREAS:** | The City did not through the 2020 Agreement or 2022 Agreement in any way delegate to the Attorneys its authority to exercise complete and ultimate control over the Nuisance Matters, nor did it abrogate its authority to oversee the Attorneys' work or to overrule the Attorneys' decisions as appropriate, or its obligation to serve the public interest; and |
| **WHEREAS**: | The 2020 Agreement memorialized the City's complete and ultimate control over the Nuisance matters by stating: "decisions regarding settlement, including but not limited to all critical decision-making regarding the case, are reserved exclusively to the discretion of the client and its retained general counsel. Any defendant that is the subject of the litigation may contact the retained general counsel directly; the client shall retain complete control over the course and conduct of the litigation; the client retains a veto power over any |

|  |  |
|---|---|
|  | decisions made by outside counsel; and the client's retained general counsel with supervisory authority will remain personally involved in overseeing the litigation"; and |
| **WHEREAS**: | The 2022 Agreement inadvertently omitted the above-quoted language; and |
| **WHEREAS**: | The Corporate Authorities find that it is in the best interests of the City to correct this omission and to reaffirm the City's complete and ultimate control over the Nuisance Matters through the execution of the Contingent Fee Agreement attached hereto as Exhibit A, which agreement by its terms supersedes the 2022 Agreement; and |
| **WHEREAS**: | The Corporate Authorities further find that, to avoid even the appearance of any impropriety or conflict of interest, the City's retained conflict counsel, Mr. Phil Rice, Esq., shall be specially designated to fulfill the City's obligation to oversee and control the Nuisance Matters upon the passage of this Resolution. |

(Docs. 140-4, pgs. 3-4; 140-5, pgs. 2-3).

By virtue of this amendment to the contingency-fee agreement, Plaintiff argues any conflicts of counsel have been cured, such that there is no basis for disqualification.

Now, the Court has the inherent power to disqualify an attorney from representing a client. *See Healy v. Axelrod Const. Co. Defined Ben. Pension Plan and Trust*, 155 F.R.D. 615, 618 (N.D. Ill. 1994). However, the disqualification of counsel "is a drastic measure" that the Court "should hesitate to impose[,] except when absolutely necessary." *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *accord Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017). An order of disqualification destroys the attorney-client relationship "by depriving a party of [the]

5

representation of their own choosing." *See Freeman*, 689 F.2d at 721 (citing *Comden v. Superior Court*, 20 Cal. 3d 906 (1978)); *see also Watkins*, 869 F.3d at 519 (Seventh Circuit noting its prior observation "that granting a motion for disqualification has 'immediate, severe, and often irreparable…consequences' for the party and disqualified attorney," as there is an immediate deprivation of the losing party's chosen representation and a disruption of the litigation). Therefore, although motions to disqualify counsel may be "both legitimate and necessary," they "should be viewed with extreme caution for they can be misused as techniques of harassment." *See Freeman*, 689 F.2d at 721; *see also Doe v. Nielsen*, 883 F.3d 716, 718 (7th Cir. 2018) ("It is our duty to 'maintain public confidence in the legal profession and assist[] in protecting the integrity of the judicial proceeding.' ").

Relevantly, "traditions of prosecutorial discretion do not immunize from judicial scrutiny cases in which the enforcement decisions of an administrator were motivated by improper factors or were otherwise contrary to law." *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249 (1980); *accord Merck Sharp & Dohme Corp. v. Conway*, 861 F. Supp. 2d 802, 812 (E.D. Ky. 2012). A prosecutor must seek to do justice, "[a]nd a 'scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring…impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions.' " *See Merck*, 861 F. Supp. 2d at 812 (quoting *Marshall*, 446 U.S. at 249-50).

Put more directly, a prosecutor's financial interest in a case may violate a defendant's due process rights, *i.e.*, the right to an impartial tribunal. *See id*. For this reason, contingency-fee contracts are generally barred in criminal prosecutions, as "the prosecutor's duty to serve the public interest can be distorted by a system of

renumeration that compensates him based on the outcome of cases." *See id.* (quoting *People ex rel. Clancy v. Superior Court*, 39 Cal. 3d 740, 748 (1985); citing *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 476 n. 48 (2008); *Baca v. Padilla*, 190 P. 730, 732 (1920)). Consequently, the standards of neutrality, ethics, and constitutional behavior, required of state prosecutors, extend to private counsel performing prosecutorial functions. *See id.* (citing *Young v. U.S. ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 804 (1987); Martin H. Redish, *Private Contingent Fee Lawyers and Public Power: Constitutional and Political Implications*, 18 S. Ct. Econ. Rev. 77, 95 (2010)). If the behavior of a government attorney is deemed to be unacceptable, then that behavior by a private actor who is performing identical functions must also be deemed to be unacceptable. *See id.* (quoting Redish, 18 S. Ct. Econ. Rev. at 96). Accordingly, a private attorney prosecuting a criminal action cannot enter a contingency-fee agreement. *See id.* at 812-13; *see also Young*, 481 U.S. at 814 (stating, in case of criminal contempt, "we establish a categorical rule against the appointment of an interested prosecutor, adherence to which requires no subtle calculations of judgment").

In the civil context, the Northern District of Illinois has addressed a similar issue as that presented here. *See City of Chicago v. Purdue Pharma L.P.*, No. 14-cv-4361, 2015 WL 920719 (N.D. Ill. March 2, 2015). In that case, the City of Chicago sued the defendants for alleged violations of the Chicago Municipal Code and state law. *Id.* at *1. The defendants argued, *inter alia*, the City of Chicago's retained law firm's "pecuniary interest in the outcome of the suit create[d] a conflict of interest that violate[d] defendants' right to due process." *Id.* at *1-2. District Judge Jorge L. Alonso denied the defendants Joint Motion, recognizing "[a] number of courts have held that government entities may hire outside

7

counsel on a contingent-fee basis if there are certain safeguards in place." *Id.* at 4. Such safeguards, District Judge Alonso noted, include: (1) the retention of complete control over the course and conduct of the case by the public-entity attorneys; (2) the retention of a veto power by the public-entity attorneys over any decisions made by outside counsel; and (3) the personal involvement of a public-entity attorney in overseeing the litigation. *See id.* (quoting *County of Santa Clara v. Superior Court*, 50 Cal. 4th 35, 40 (2010), *cert. denied sub nom. Atl. Richfield Co. v. Santa Clara County*, 562 U.S. 1169 (2011); quoting *Lead Indus.*, 951 A.2d at 477; citing David B. Wilkins, *Rethinking the Public-Private Distinction in Legal Ethics: The Case of "Substitute" Attorneys General*, 2010 Mich. St. L. Rev. 423); *accord Am. Bankers Mngt Co., Inc. v. Heryford*, 190 F. Supp. 3d 947, 955 (E.D. Ca. 2016). Based upon these considerations, Judge Alonso ultimately found the contingency-fee contract contained the necessary safeguards, as the City of Chicago "retain[ed] control over the investigation and litigation." *See Purdue Pharma L.P.*, 2015 WL 920719 at *5-6.

These authorities beg the question "what do we have here?" *See Heryford*, 190 F. Supp. 3d at 956-58 (finding a neutrality-spectrum analysis applied, meaning the court had to decide whether the lawsuit was criminal, civil, or civil but penal in order to assess the extent to which neutrality requirements were implicated); *Merck*, 861 F. Supp. 2d at 813 (noting the rule against the use of contingency fees in criminal actions may extend to a "small" class of civil actions that resemble criminal prosecutions, such as eminent domain and public nuisance abatement actions that "involve a 'delicate weighing of values,' " and finding it was presented with such an action because it was "penal in nature and thus implicate[d] the requirement of neutrality"); *Clancy*, 39 Cal. 3d at 749

8

(noting public nuisance abatement actions may share the public interest aspect of criminal cases and coincide with or trigger criminal prosecutions, such that there is a need for a neutral prosecuting attorney); *County of Santa Clara*, 50 Cal. 4th at 52 (noting, to the extent *Clancy* suggested public-nuisance prosecutions always invoked the same constitutional and institutional interests present in a criminal case, it "was unnecessarily broad and failed to take into account the wide spectrum of cases that fall within the public-nuisance rubric"). In this case, Plaintiff is now seeking, *inter alia*, damages for injuries to its land and natural resources, including for the loss of ecological health, value, and revenue of its properties; an award of past, present, and future costs of abating and remediating the PCB contamination; punitive damages in an amount that will punish and discourage Defendants and others from such future conduct; and an order for the return of monies from which Defendants were unjustly enriched after failing to prevent PCB contamination. (Doc. 129, pgs. 26, 29, 31-35, 37-40).

Here, the Court finds this case does not now resemble the type of proceeding that necessitates a prohibition on representation by contingency-fee attorneys. To be sure, Plaintiff is still seeking the enforcement of its Municipal Code. However, the ordinances that remain to be enforced in this case relate to abatement and remediation, as Plaintiff seeks the costs stemming from the rectification of the alleged PCB contamination.[3]

---

[3]Plaintiff seeks abatement in the Second Amended Complaint, generally, and in Count III, specifically. Count III invokes §§ 50-79 and 62-2 of Plaintiff's Municipal Code. (Doc. 129, pgs. 29-31). Section 50-79 states: "Whenever any nuisance shall be found on any premises within the city, the officials are authorized to cause such nuisance to be summarily abated in such a manner as may be directed." City of East St. Louis, Illinois, Municipal Code § 50-79. Section 62-2 states: "The health department shall cause all nuisances to be abated or removed which it may deem prejudicial or obnoxious to the public health or

9

*See County of Santa Clara*, 50 Cal. 4th at 55-56 (noting if defendants are found liable for a nuisance, the question will be "how the nuisance should be abated," resulting, "at most, in defendants' having to expend resources to abate the…nuisance they allegedly created, either by paying into a fund dedicated to that abatement purpose or by undertaking the abatement themselves"). To the extent Plaintiff's contingency-fee attorneys have a financial interest toward that end, however, it will necessarily be tethered to the cost of reducing the PCBs found on Plaintiff's properties. At base, Defendants' primary argument that Plaintiff's contingency-fee attorneys "decided on an approach that applies City ordinances using a novel interpretation in order to inflict as much financial damage as possible" is of lesser import now that Count II of the Second Amended Complaint has been dismissed without prejudice. (Doc. 137, pg. 13). Clearly, the enforcement of §§ 50-79 and 62-2 of the Municipal Code for purposes of obtaining the remedy of abatement, by itself, does not raise the same due process concerns as the request for fines under § 1-15 in Count II of the Second Amended Complaint. *See County of Santa Clara*, 50 Cal. 4th at 56 ("The expenditure of resources to abate a hazardous substance affecting the environment is the type of remedy one might find in an ordinary civil case.").

In any event, although Plaintiff and, by extension, its contingency-fee attorneys, also seek compensatory and punitive damages to remedy common law torts, as well as attorney fees and costs, the Court finds adequate safeguards are now in place to protect the due process rights of Defendants. It is no longer true (if, in fact, it ever was true) that

---

comfort and shall make such sanitary regulations as it may think necessary or expedient to prevent the introduction or spreading of any contagious, malignant, infectious or pestilential disease." *Id*. § 62-2.

Plaintiff does not "retain critical decision-making responsibilities over the course and conduct of the litigation." (Doc. 137, pg. 3). To the contrary, consistent with the authorities discussed herein, the amended contingency-fee agreement now, among other things, reaffirms that: (1) decisions regarding settlement, including but not limited to all critical decision-making regarding the case, are reserved exclusively to the discretion of Plaintiff *and* its conflict counsel, Mr. Rice, who is paid hourly and not pursuant to a contingency-fee agreement; (2) in combination with (1), Plaintiff *and* Mr. Rice retain complete control over the course and conduct of the litigation, including by the retention of a veto power over any decisions made by the contingency-fee attorneys; and (3) Mr. Rice will exercise supervisory authority over the contingency-fee attorneys and will remain personally involved in overseeing the litigation. *See Purdue Pharma L.P.*, 2015 WL 920719 at *4-6; *County of Santa Clara*, 50 Cal. 4th at 59, 64 (adopting these minimum guidelines and stating, "[p]rivate counsel serving in a subordinate role do not supplant a public entity's government attorneys, who have no personal or pecuniary interest in a case and therefore remain free of a conflict of interest that might require disqualification."); (Docs. 140-4, pgs. 3-4; 140-5, pgs. 2-3; 140-6, pg. 2); *Merck*, 861 F. Supp. 2d at 815 (noting, "if the government attorney or prosecutor retains 'full control over the course of the litigation,' then the right to an impartial tribunal is not infringed by the use of a contingency fee"); *Merck Sharp & Dohme Corp. v. Conway*, 947 F. Supp. 2d 733, 748 (E.D. Ky 2013) (concluding the attorney general's office did "not need to be intimately involved in all of the everyday work or decision-making…to exercise meaningful control over the proceedings").

For these reasons, the Court finds it is not "absolutely necessary" to take the "drastic measure" of disqualifying Plaintiff's attorneys, which would serve to deprive Plaintiff of its chosen counsel and potentially disrupt its ability to pursue this action. *See Healy*, 155 F.R.D. at 618; *Freeman*, 689 F.2d at 721; *Watkins*, 869 F.3d at 519; *see also County of Santa Clara*, 50 Cal. 4th at 56-59, 61-64 (finding the absolute prohibition on contingency-fee agreements, necessary in criminal cases, was unwarranted in a civil public-nuisance case, where neither fundamental constitutional rights nor the right to continue operating an existing business were implicated; however, notwithstanding this conclusion, the private attorneys prosecuting the action were subject to but satisfied the "heightened standard of ethical conduct" and neutrality "applicable to public officials acting in the name of the public"); (Docs. 140-4, pgs. 3-4; 140-5, pgs. 2-3; 140-6, pg. 2).

### III. CONCLUSION

For the reasons explained above, the Combined Motion is **DENIED**.

**SO ORDERED.**

Dated: March 12, 2024

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge