IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CITY OF EAST ST. LOUIS,** )<br>)<br>   **Plaintiff,** )<br>)<br>vs. )<br>)<br>**MONSANTO CO., PHARMACIA LLC,** )<br>**and SOLUTIA, INC.,** )<br>)<br>   **Defendants.** ) | Case No. 3:21-cv-232-DWD |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Plaintiff's Motion to Dismiss Defendants' First Amended Counterclaim ("Motion to Dismiss"), together with its Supporting Memorandum, under Federal Rule of Civil Procedure 12(b)(6). (Docs. 188 & 189). Defendants filed a Response in Opposition to, and Plaintiff filed a Reply in Support of, that Motion to Dismiss. (Docs. 194 & 195). For the reasons explained below, the Motion to Dismiss is **DENIED**.

### I. BACKGROUND

This case was removed from the Circuit Court of St. Clair County. (Doc. 1). Plaintiff filed a Second Amended Complaint for Damages and Abatement (Doc. 129), alleging a public nuisance (Count I), violations of the Municipal Code (§ 50-71 (Nuisance)) (Count II), abatement under the Municipal Code (§§ 50-79 and 62-2) (Count III), a continuing trespass (Count IV), a design defect (Count V), a failure to warn and instruct (Count VI), and negligence (Count VII). (Doc. 1, generally). Plaintiff's claims relate to "the

contamination of vast swaths of its land with polychlorinated biphenyls…manufactured in Defendants' Monsanto Plant in adjacent Sauget, Illinois." (Doc. 129, pg. 1).[1]

Defendants filed a First Amended Counterclaim under 42 U.S.C. § 1983, stating an as-applied due process challenge to the enforcement of §§ 50-79 and 62-2 of the Municipal Code ("Abatement Ordinances"). (Doc. 179, generally).[2][3] The Abatement Ordinances, which are the only portions of the Municipal Code still at issue, are invoked in Count III of the Second Amended Complaint for Damages and Abatement. (Doc. 129, pgs. 29-31).

More specifically, Defendants allege "the Abatement Ordinances only authorize the City to undertake abatement on its own where, for example, a landowner within the City has a nuisance on his or her property…. [T]he Abatement Ordinances do not authorize civil claims of the kind the City is attempting to assert in this litigation." (Doc. 179, pg. 5). Even if the Abatement Ordinances may apply in the manner alleged by Plaintiff, though, Defendants state such applications against them are unconstitutional because they are "utterly devoid of standards for what might constitute a violation," *i.e.*, "what level or concentration of PCBs constitutes a nuisance" and "in what media (air, water, soil) an alleged contaminant like PCBs "may affect the health of those nearby." (Doc. 179, pgs. 5-7). Indeed, Defendants suggest Plaintiff still has not "published an interpretation of its Abatement Ordinances[] or advised Defendants specifically regarding the amount of…[PCBs] that would constitute a 'nuisance.' " (Doc. 179, pgs. 11-12). Further, Defendants allege Plaintiff "has sought to apply its ordinances to conditions

---

[1] The Court dismissed Count II of the Second Amended Complaint without prejudice. (Doc. 171).
[2] Defendants' prior Counterclaim was dismissed without prejudice. (Docs. 130; 171, pgs. 15-18).
[3] Defendants do not bring a facial challenge to the Abatement Ordinances. (Doc. 179, pg. 2 n. 1).

2

it claims existed before anyone," such as the Environmental Protection Agency ("EPA") or the Illinois Environmental Protection Agency ("IEPA"), "developed or implemented numeric remediation goals for PCBs in soil." (Doc. 179, pg. 6). The alleged presence of PCBs in Plaintiff's soil is also "qualitatively different than [the] traditional nuisances" that the Abatement Ordinances were intended to address, as PCBs are allegedly toxic but "affect none of the senses," are measured in parts per billion, and were "deposited…passively[] by wind, water, and other elements of nature[] over an indefinite period of time." (Doc. 179, pgs. 6, 10-11). For these reasons, Defendants allege the Abatement Ordinances are "impermissibly vague" because they fail to provide fair notice of the proscribed conduct and invite arbitrary or discriminatory enforcement. (Doc. 179, pgs. 6, 10-12). As relief, Defendants request that the Court enjoin the enforcement of the Abatement Ordinances, declare the Abatement Ordinances unconstitutional as applied, and award them attorney fees under 42 U.S.C. § 1988. (Doc. 179, pgs. 1-2, 12-13).

## II. ANALYSIS

Plaintiff's Motion to Dismiss Defendants' First Amended Counterclaim is filed under Rule 12(b)(6), which provides for challenges to a pleading based upon the failure to state a claim for which relief may be granted. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). To survive such a motion, which tests the sufficiency of a pleading but not its merits, the pleading must allege enough facts to state a claim that is facially plausible. *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (7th Cir. 2020) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012)); *Fosnight v. Jones*, 41 F.4th 916,

3

921-22 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means enough facts are pled for reasonable inferences as to liability. *Fosnight*, 41 F.4th at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading need not allege "detailed factual allegations," but it must state enough facts to lift the claim above the speculative level. *Kloss*, 462 F. Supp. 3d at 876 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals" of the elements, supported by mere conclusions, do not suffice. *Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 631 (N.D. Ill. 2022) (quoting *Iqbal*, 556 U.S. at 678). When ruling on the motion to dismiss, the Court accepts all well-pled facts as true and draws all reasonable inferences for the pleader. *Id.* (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)); *accord Kloss*, 462 F. Supp. 3d at 874-75.

In its Motion to Dismiss, Plaintiff initially argues the Court already found, in response to the same arguments of Defendants in their Motion to Dismiss the First Amended Complaint for Damages and Abatement, that the Abatement Ordinances embrace their alleged misconduct. (Docs. 29; 32; 41; 189, pgs. 11-13). If this were not the case, then Plaintiff suggests "the abatement count would have been dismissed years ago." (Doc. 189, pg. 12). Since there is no need to revisit that conclusion in light of Defendants' rehashed contentions, and the Abatement Ordinances "plainly appl[y] to PCB pollution," Plaintiff seeks a dismissal of the First Amended Counterclaim. (Doc. 189, pg. 13).

Further, Plaintiff contends the Abatement Ordinances are not violative of due process for three reasons. First, to avoid a finding of vagueness, Plaintiff suggests it is not necessary for the Abatement Ordinances to be drafted with perfect clarity and precision. (Doc. 189, pgs. 4, 9, 14, 18-19). And, since the prohibitions in the Abatement Ordinances

4

are reasonably ascertainable, stated in objective terms, and articulated to provide a core of understandable meaning, Plaintiff argues it is inconsequential that there may be some uncertainty as to the Abatement Ordinances. (Doc. 189, pgs. 4, 9, 14-15, 18-19).

Second, Plaintiff argues there is fair notice that PCBs are within the scope of the Abatement Ordinances. (Doc. 189, pgs. 4, 9, 13-17). More specifically, Plaintiff argues there is objective criteria for what is prohibited under the Abatement Ordinances, namely, things that are offensive to the health and welfare of inhabitants of the City or that create a hazard to or have a detrimental effect on property. (Doc. 189, pgs. 4, 9, 13, 15-17). Plaintiff states it is not difficult to foresee that PCBs, which are purportedly "the 'only chemical covered by name' in the Toxic Substances Control Act," are implicated by the objective criteria in the Abatement Ordinances. (Doc. 189, pgs. 4, 6-7).

Third, Plaintiff argues the objective criteria provide sufficient guidance for nonarbitrary enforcement of the Abatement Ordinances. (Doc. 189, pgs. 4, 9, 17-20). Plaintiff posits that whether something is offensive to the health and welfare of its inhabitants, or creates a hazard to or has a detrimental effect on property, can be answered as a matter of fact, so the enforcement of the Abatement Ordinances does not involve "unbridled discretion." (Doc. 189, pgs. 4, 13, 18-19). Defendants may disagree about the EPA's risk-based screening level for PCBs, but that disagreement is not indicative of arbitrariness. (Doc. 189, pgs. 4, 6-7, 19-20). For these reasons, Plaintiff requests a dismissal of Defendants' First Amended Counterclaim. (Doc. 189, pg. 4).

In their Response, Defendants initially suggest the Abatement Ordinances do not apply to the alleged PCB contamination, as those ordinances were written "for

specifically enumerated nuisances." (Doc. 194, pg. 2). As to § 50-79 of the Municipal Code, the nuisances purportedly include offensive animal pens or stables, lots with standing water, and dead animals. (Doc. 194, pgs. 2-3) (citing City of East St. Louis, Illinois, Municipal Code §§ 50-71(b), 50-73, 50-74, 50-75, 50-79). Likewise, as to § 62-2 of the Municipal Code, Defendants argue it "is not a standalone ordinance" but a "single element" of the chapter on health and sanitation. (Doc. 194, pg. 3). Chapter 62 established the health department, which no longer exists, and gave it the power to regulate nuisances relating to dead animals, rat control, and food establishments. (Doc. 194, pg. 3). Therefore, Defendants argue the Abatement Ordinances are being misapplied by Plaintiff in this case. (Doc. 194, pg. 3). Defendants also argue the Court has not already found the Abatement Ordinances embrace their alleged misconduct, as "the Court simply found…the City had stated a claim at the motion-to-dismiss stage." (Doc. 194, pg. 13). In other words, the Court found the First Amended Complaint for Damages and Abatement survived a challenge under Rule 12(b)(6), but it did not address whether the Abatement Ordinances provided fair notice as a matter of constitutional law. (Doc. 194, pg. 13).

Further, Defendants argue the Abatement Ordinances are violative of due process, as unconstitutionally vague when applied to PCBs in the soil, because they do not give ordinary people fair notice of the proscribed conduct and they are so standardless as to invite arbitrary enforcement. (Doc. 194, pg. 1). Defendants suggest the Abatement Ordinances do not proscribe any specific conduct, let alone give fair notice that PCBs are "clearly prescribed." (Doc. 194, pg. 4). That is, the Abatement Ordinances have no "core of meaning" and could apply to anything that is offensive or obnoxious to the health and

welfare of its inhabitants or that creates a hazard to or has a detrimental effect on property. (Doc. 194, pgs. 4, 9-12). For example, Defendants note the Abatement Ordinances have a "boundless purpose," no time limitation, no location restrictions, no requirement for causality between the harm and the alleged misconduct, no requirement that the unlawful action or inaction be willful, no limitation on what constitutes an offensive or obnoxious thing, and a "completely subjective standard of what is 'offensive or obnoxious.' " (Doc. 194, pgs. 8-9). Defendants further note Plaintiff failed to cite any case law to support such expansive ordinances. (Doc. 194, pgs. 1, 4-7). Indeed, Defendants emphasize the specific acts, conduct, or conditions that are proscribed or regulated by the statutes or ordinances at issue in each of Plaintiff's cited cases. (Doc. 194, pgs. 4-9).

Since there are no standards for enforcing the Abatement Ordinances that "provide color or otherwise limit what may or may not constitute 'obnoxious or offensive' things," Defendants also argue the Abatement Ordinances invite arbitrary enforcement by giving Plaintiff "unlimited police power to abate unlimited things (in this case, PCBs)." (Doc. 194, pgs. 2, 13-14). Defendants emphasize that PCBs are not inherently harmful to human health or to the environment, so "the assertion that the presence of…[PCBs] in soil is a nuisance because at some dose [they] may cause health effects provides no guidance as to concentrations that would reach a level of concern." (Doc. 194, pgs. 17-18). Similarly, Defendants stress that it took Plaintiff approximately three years after the filing of its ordinance citations to disclose, through its expert witnesses in this litigation, the level at which it believes the presence of PCBs constitutes a violation of the Abatement Ordinances. (Doc. 194, pgs. 15-16). And, according to Defendants, Plaintiff's

7

suggested nuisance and abatement threshold is based on one of multiple regulations, guidelines, and limits promulgated by federal and state agencies concerning the acceptable levels of PCBs. (Doc. 194, pg. 20). Again, Plaintiff's "make-it-up-as-you-go-along" argument, in Defendants' view, is constitutionally infirm because the Abatement Ordinances themselves "wholly fail to notify in advance what pollutants at what levels are regulated." (Doc. 194, pgs. 15-16). Also, while experts are often necessary to prove statutory or regulatory violations, Defendants note Plaintiff required experts "to define what the violation is," rendering it "nonsensical to suggest that an ordinary person [would] know[] what standards are sought to be enforced" by the Abatement Ordinances. (Doc. 194, pg. 16-17). Finally, Defendants argue adopting Plaintiff's standard, after the filing of this lawsuit and without the promulgation of regulations by a proper body, would constitute an end-run to the legislative process. (Doc. 194, pg. 16).

Relevantly, § 1-2 of Plaintiff's Municipal Code defines the term "nuisance" as "anything offensive or obnoxious to the health and welfare of the inhabitants of the city; or any act or thing or creating a hazard to, or having a detrimental effect on, the property of another person." City of East St. Louis, Illinois, Municipal Code § 1-2. Further, § 50-79 of Plaintiff's Municipal Code, relating to abatement, provides: "Whenever any nuisance shall be found on any premises within the city, the officials are authorized to cause such nuisance to be summarily abated in such a manner as may be directed." *Id*. § 50-79. Likewise, under § 62-2 of Plaintiff's Municipal Code, which pertains to the abatement or removal of nuisances and regulations for the prevention of disease, "[t]he health department shall cause all nuisances to be abated or removed which it may

8

deem prejudicial or obnoxious to the public health or comfort and shall make such sanitary regulations as it may think necessary or expedient to prevent the introduction or spreading of any contagious, malignant, infectious or pestilential disease." *Id.* § 62-2.

Vagueness claims allege a statute or ordinance fails to provide definite notice of the proscribed behavior and/or invites arbitrary or discriminatory enforcement. *Bell v. Keating*, 697 F.3d 445, 455 (7th Cir. 2012) (citing *Skilling v. U.S.*, 561 U.S. 358, 402-03 (2010)); *see also Record Head Corp. v. Sachen*, 682 F.2d 672, 674 (7th Cir. 1982) ("A vague statute is constitutionally objectionable for two reasons: it fails to provide the public with fair notice of the line between lawful and unlawful conduct; and it allows fundamentally legislative decisions to be made on a subjective basis at the point of enforcement rather than enactment."). To satisfy due process, the statute or ordinance must define the offending conduct with sufficient definiteness for ordinary people of common intelligence to understand what is prohibited, and it must do so in a manner that will not encourage arbitrary and discriminatory enforcement. *Bell*, 697 F.3d at 455, 461 (citing *Skilling*, 561 U.S. at 402-03); *Discount Inn, Inc. v. City of Chicago*, 72 F. Supp. 3d 930, 936 (N.D. Ill. 2014) (quoting *Gresham v. Peterson*, 225 F.3d 899, 908 (7th Cir. 2000)). That is, the statute or ordinance must provide "fair warning" of the conduct subjecting a person to liability and include an "explicit and ascertainable standard" to be applied by those charged with its enforcement. *Karlin v. Foust*, 188 F.3d 446, 459 (1999) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

Notably, neither perfect clarity nor precise guidance is required for an ordinance or statute to survive a vagueness challenge. *Holder v. Humanitarian Law Project*, 561 U.S.

9

1, 19 (2010) (quoting *U.S. v. Williams*, 553 U.S. 285, 304 (2008)). The degree of vagueness tolerated, and the relative importance of notice and enforcement, depends on the nature of the enactment. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). There is greater tolerance for statutes or ordinances with civil, rather than criminal, penalties, as "the consequences of imprecision are qualitatively less severe." *Id*. Accordingly, enactments with civil penalties require less clarity to survive a vagueness challenge. *See Discount Inn, Inc.*, 72 F. Supp. 3d at 936 (quoting *Gresham*, 225 F.3d at 908); *accord Little Arm Inc. v. Adams*, 13 F. Supp. 3d 914, 922 (S.D. Ind. 2014). Likewise, when an enactment does not threaten constitutional rights, a less stringent vagueness test is applied. *See Karlin*, 188 F.3d at 458 (citing *Village of Hoffman Estates*, 455 U.S. at 498).

With an as-applied challenge, the vagueness of a statute or ordinance is not considered in the abstract but, rather, in light of the facts of the particular case. *U.S. v. Cook*, 970 F.3d 866, 873 (7th Cir. 2020) (citing *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *U.S. v. Johnson*, 875 F.3d 360, 370 (7th Cir. 2017)); *accord Little Arm Inc.*, 13 F. Supp. 3d at 908. The party challenging the enactment must show it is vague as applied to that party. *Cook*, 970 F.3d at 873 (citing *Holder*, 561 U.S. at 18-19; *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973)). If the statute or ordinance "undoubtedly applies" to the party's conduct, then that party cannot argue the enactment is vague in other hypothetical scenarios. *Id*. (citing *Holder*, 561 U.S. at 1); *Broadrick*, 413 U.S. at 610-11); *accord Little Arm Inc.*, 13 F. Supp. 3d at 908; *see also Village of Hoffman Estates*, 455 U.S. at 495 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness

of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.").

Here, the Court initially emphasizes it is not tasked with resolving the merits of the First Amended Counterclaim at this stage in the case. Instead, the Court must merely ascertain whether Defendants satisfied the federal pleading standards. Having reviewed the parties' arguments and drawn all reasonable inferences for Defendants, the Court finds they have satisfied those standards when drafting the First Amended Counterclaim. *See Firestone Fin. Corp.*, 796 F.3d at 825; *Kloss*, 462 F. Supp. 3d at 874-76; *Fosnight*, 41 F.4th at 921-22; *Trivedi*, 609 F. Supp. 3d at 631. And, as discussed below, the Court believes it would be particularly inappropriate to answer the unique and complex questions presented on the applicability and enforcement of the Abatement Ordinances as a response to Defendants' alleged PCB contamination on the pleadings without discovery.

In so finding, the Court stresses that Defendants may present evidence the Abatement Ordinances either fail to provide adequate notice of the proscribed behavior or invite arbitrary or discriminatory enforcement by Plaintiff. *See Bell*, 697 F.3d at 455; *Record Head Corp.*, 682 F.2d at 674; *Discount Inn, Inc.*, 72 F. Supp. 3d at 936; *Karlin*, 188 F.3d at 459. As alluded to above, the Court believes discovery is necessary to resolve the parties' arguments on each basis. As to the former basis for liability, the Court notes the Eighth Circuit recently reviewed an as-applied void-for-vagueness claim involving an ordinance pertaining to "offensive" or "obnoxious" odors. *See Sanimax USA, LLC v. City of South St. Paul*, 95 F.4th 551 (8th Cir. 2024). However, the appeal was taken from a grant of summary judgment. *See id.* at 554, 558. As such, the void-for-vagueness claim, which

11

involved some of the same language as that at issue here, was resolved after discovery.[4] That sequence is necessary in this case to properly resolve whether the Abatement Ordinances, in the specific context of the alleged PCB contamination, are impermissibly vague as applied.

Similarly, as to the latter basis for liability, Defendants have alleged that Plaintiff misapplied its Abatement Ordinances in a subjective, "make-it-up-as-you-go-along" fashion. For example, Defendants allege, *inter alia*, the Abatement Ordinances are "utterly devoid of standards for what might constitute a violation," such that this litigation was necessary for Plaintiff to ascertain the applicable standard in expert discovery. (Doc. 179, pgs. 5-7, 10-12). Again, the Court in no way suggests such allegations will win the day, but it believes Defendants have done enough for their claim to proceed. *See Leapers, Inc. v. Trarms, Inc.*, 203 F. Supp. 3d 969, 977 (S.D. Ind. 2016) (denying the defendants' motion to dismiss the plaintiff's amended complaint on the grounds that the underlying statute was unconstitutionally vague where, although the defendants efforts to establish a lack of fair notice "c[a]me up short," the court "lack[ed] sufficient evidence on which to base

---

[4] The Court notes that the Eighth Circuit ultimately found, among other things, that "offensive" and "obnoxious," despite being undefined, were widely used in traditional nuisance statutes and were well understood. *Sanimax USA, LLC*, 95 F.4th at 570. The Eighth Circuit also recognized those terms tracked the meaning of "nuisance" under the relevant city code and state statute. *Id.* The city code provided: "Public nuisance or nuisance means a condition on property that unreasonably annoys…the public health or safety and is a public health or safety hazard, including…any location…which emits unpleasant or noxious odors." *Id.* (citing South St. Paul, Minnesota, Code § 34-19). The state statute stated: "Anything which is…indecent or offensive to the senses…so as to interfere with the comfortable enjoyment of life or property, is a nuisance." *Id.* (citing Minn. Stat. § 561.01). Therefore, the plaintiff was on notice of what was prohibited by the ordinance and there was no risk of wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings. *Id.* (quoting *Metro. Omaha Prop. Owners Ass'n v. City of Omaha*, 991 F.3d 880, 887 (8th Cir. 2021)). Finally, the Eighth Circuit acknowledged its findings were confirmed by other subsections of the ordinance that "prohibit[ed] odor emissions that '[c]reate a detrimental effect on the property of another person in the City' or '[u]nreasonably interfere with the enjoyment of life, health, safety, peace, comfort or property of another person in the City.'" *Id.*

a decision respecting arbitrariness or discrimination" at the pleading stage); *Mustfov v. Rice*, 663 F. Supp. 1255, 1270-71 (N.D. Ill. 1987) (denying the defendants motion to dismiss a void-for-vagueness claim where, on the pleadings, the court did not have evidence of "the interpretation of the enactment given by those who must enforce it," so a decision was more appropriate at summary judgment); *Sanimax USA, LLC*, 95 F.4th at 571-72 (assessing the defendant's enforcement actions at summary judgment).

### III. CONCLUSION

For the reasons explained above, the Motion to Dismiss is **DENIED**.

**SO ORDERED.**

Dated: November 5, 2024

_____
DAVID W. DUGAN
United States District Judge