**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CITY OF EAST ST. LOUIS, ILLINOIS, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:21-cv-232-DWD |
| MONSANTO COMPANY, | ) | |
| PHARMACIA LLC, and SOLUTIA INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO STRIKE NEW AFFIRMATIVE OPINIONS**
**IN DR. RANDALL BELL'S JANUARY 28, 2025 REBUTTAL REPORT**

Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC (collectively "Defendants") move to strike portions of the January 28, 2025 rebuttal expert report prepared by Dr. Randall Bell that disclose, for the first time, his calculation of alleged loss-of-use damages[1] dating back to December 1, 1955.  In his original report, Dr. Bell estimated loss-of-use damages, for each property at issue, going back to 1973.  Calculating damages premised on eighteen additional years of alleged injury is a new affirmative opinion—introduced at the close of expert discovery, only after the opportunity for Defendants to take discovery of the facts that underlie these new opinions and for Defendants' experts to serve reports has passed, and mere months before the commencement of trial on June 16, 2025.

Dr. Bell's revision to his opinions—to now calculate an additional eighteen years of loss-of-use damages—was not in response to any opinions disclosed by Defendants' experts and

---

[1] Dr. Bell's so-called "loss-of-use" damages purport to estimate the economic impact of a property-owner's inability to make use of a property as a result of contamination, using the estimated market rent for as a proxy for the monetary value associated with the right to use a property. *See* Exhibit A, at 10-11.

therefore cannot properly be considered a rebuttal opinion. In fact, Dr. Bell admitted during his recent deposition that he recalculated these damages at the instruction of the private law firms for the City of East St. Louis (the "City"), and that this direction was given following, and as a result of, the Court's order dismissing municipal ordinance penalties (Count II) from this litigation.

Even if the dismissal of ordinance penalties were somehow a sufficient basis for issuing a new loss-of-use damages calculation, the Court issued its Order dismissing ordinance penalties nearly a year ago, on March 12, 2024. Dr. Bell did not disclose his new calculations until three weeks ago—even though he had plenty of opportunity to raise these new opinions prior to, or as part of, his May 2024 deposition.

This delay until the close of fact and expert discovery is a blatant violation of Rule 26 of the Federal Rules of Civil Procedure and this Court's scheduling orders. Discovery and disclosure obligations exist for a reason. The City's decision to delay disclosing its new damages theory until the close of fact and expert discovery has deprived Defendants of their ability to defend against the City's claim for damages. Because of the delay, Defendants no longer have an opportunity to develop evidence to rebut Dr. Bell's new opinions before trial.[2]

---

[2] This is not the first time the lawyers for the City have attempted to manipulate the Court's schedule to deprive Defendants of a meaningful opportunity to take discovery. In September 2024, the City claimed it had been authorized by St. Clair County to bring damages claims on the County's behalf through a General Assignment. *See* Exhibit B; Dkt. 212-2, p. 2. When Defendants requested additional discovery on the topic of the General Assignment and the included parcels, the City objected. Dkt. 213. Following a hearing, the Court permitted this discovery. Dkt. 219; Dkt. 222. Discovery revealed the City's lawyers presented the General Assignment to a member of the County's Trustee Committee, Roy Mosley, whom the lawyers encouraged to take the document to his uncle Lonnie Mosley (the Chair of the Trustee Committee) for signature, in order to improve the City's position in this lawsuit. *Id.* The General Assignment was never formally presented to the full County Board for discussion or ratification. *See* Exhibit C; Exhibit D; Exhibit E. Indeed, the Chairman of the County Board was made aware of the General Assignment only when Defendants' counsel issued a Freedom of Information Act request for materials relating to it. *See* Exhibit E. The State's Attorney for St. Clair County reviewed the General Assignment and declared it null and void. *See* Exhibit F. Like the phony General Assignment, the late disclosure of Dr. Bell's new opinions

Pursuant to Rule 37, the Court should therefore strike the portions of Dr. Bell's January 28, 2025 rebuttal report which express his new affirmative expert opinion relating to eighteen years' worth of alleged real estate damages from 1955 to 1973, and preclude him from testifying regarding purported damages during that period.  If the Court were to allow Dr. Bell to testify as to his new opinion, it would necessitate a substantial delay of the trial date, so that Defendants have the opportunity to conduct fact and expert discovery regarding the ownership and use data from 1955 to 1973 for the properties at issue.[3]

## **BACKGROUND**

The City filed this lawsuit against Defendants, old Monsanto's alleged successors-in-interest, in February 2021, claiming that the emission of polychlorinated biphenyls ("PCBs") from its Sauget, Illinois plant led to the contamination of 273 properties.  The City pressed numerous municipal ordinance and tort claims seeking billions of dollars in damages.  Dkt. 129 ¶¶ 75, 100, 118.

On October 31, 2023, the City served its First Amended Initial Disclosures under Rule 26. *See* Exhibit G.  The City disclosed that it intended to calculate damages for violations of municipal ordinances as "$750.00 per offense per day per parcel from June 12, 2003, through the present" and "$500.00 per day per parcel" for the period "[f]rom July 1, 1973, through June 12, 2003." *Id.* at 5.  For "non-ordinance violation Counts," the City stated that it would identify its alleged

---

requires them to be stricken or, at minimum, requires discovery to be reopened for Defendants explore these new opinions in fact and expert discovery.

[3] The 30(b)(6) deposition of the City occurred on April 2, 2024, weeks after Dr. Bell issued his initial damages report in February 2024 and almost a month after the Court's dismissal Order that purportedly prompted the City's lawyers to change their damages strategy.  The City's corporate representative, however, did not identify any damages dating back to 1955, and Defendants' discovery was thus tailored to Dr. Bell's damages period from 1973 to 2024.

damages in "timely expert reports and reliance material lists." *Id.* The City updated its initial disclosures on January 26, 2024, but still did not identify a damages amount for the "non-ordinance violation Counts." *See* Exhibit H. To date, the City has not supplemented its initial disclosures to reflect the City's alleged damages calculation.

On January 22, 2024, the Court issued an Amended Scheduling and Discovery Order requiring the City to make its expert disclosures February 16, 2024 and that depositions of the City's experts take place by June 18, 2024. ECF No. 167 (text entry order). The Court also set a deadline for Defendants to make their expert disclosures by July 9, 2024, and required both the City and Defendants to disclose rebuttal experts by September 10, 2024. *Id.*

Pursuant to the Court's Order, Dr. Bell submitted his initial expert report on February 16, 2024. Exhibit A. In his report, Dr. Bell calculated various categories of alleged real estate damages spanning the period of time from 1973 to 2024. Exhibit A, at pg. 8-13. With respect to loss-of-use damages in particular—what he calls "use effects"—Dr. Bell calculated the hypothetical "market rent" that the City purportedly lost as a result of purported PCB contamination on 273 properties for the period from 1973 to 1955. *Id.* at 10-12, 34-42. Dr. Bell estimated that these damages totaled more than $989 million. *Id*. at 14, 42. Dr. Bell also opined that Defendants incurred more than $3 billion in ordinance fines. *Id.* at 8, 14.

On March 12, 2024, the Court issued an order dismissing Count II of the complaint, the City's claim of ordinance violations on which Dr. Bell's $3 billion in ordinance-fine damages was based. ECF No. 171, at 15, 18.

Dr. Bell was deposed nearly two months later on May 3, 2024. *See* Exhibit I. During his deposition, Dr. Bell conceded that, pursuant to the Court's dismissal order, ordinance-fine

damages were no longer available. *Id.* at 177:1-4. At no point, however, did Dr. Bell disclose that he had expanded the period of time used for his calculation of loss-of-use damages, instead continuing to focus on the period starting in 1973. *See id.* 163:12-19.

Two months later, on July 9, 2024, in keeping with the Court's Scheduling Order, Defendants disclosed several experts, some of whom critiqued Dr. Bell's damages opinions. One of these reports, submitted by JLL Value and Risk Advisory ("JLL"), identified numerous flaws in Dr. Bell's initial conclusions, including with regard to Dr. Bell's "claimed rental loss period starting on July 1, 1973." *See* Exhibit J, at 30, 206; *see also id.* at 58, 207-08. Similarly, the report submitted by Brian Hitchens focused on the City's claimed ownership of the 273 parcels "from 1973 through 2023" that was "included by Dr. Bell in his calculation of damages." *See* Exhibit K, at 60; *see also id.* at i, 6-8, 60-61, App. B. Importantly, none of Defendants' experts addressed any loss-of-use damages dating back to 1955.

On September 10, 2024, Dr. Bell issued a rebuttal report responding to some of Defendants' expert reports, including Mr. Hitchens'. Dr. Bell's rebuttal report did not again address the specific timeframe underlying his damages calculation, *see* Exhibit L, except in that it reserved the right to respond to Mr. Hitchens' analysis of the City's ownership of the relevant parcels "from 1973 through 2023." *Id.* at 5-6. Again, Dr. Bell made no mention of damages dating back to 1955.

Over the course of fact discovery, Defendants learned that the City owns just 100 of the 273 parcels described in the Complaint. Exhibit K at pgs. 6-7; Exhibit J at pgs. 6, 53. St. Clair

County, in the role of trustee, owns 73 of the parcels. Exhibit J at pgs. 6, 53.[4] In the face of these facts, the City attempted to acquire an assignment of rights from St. Clair County on August 30, 2024. *See* Exhibit B (purporting to assign to the City the County's "right, title, and interest in and to all claims, causes of action, and choses in action for damages to the [73 listed] Properties that [the County] has or may have"). The City signed the General Assignment on September 3, 2024, agreeing to pay "$10.00 Dollars per Parcel" for the assignment of claims it says are worth millions. *Id.*

After the City disclosed the General Assignment in this litigation, this Court "extend[ed] the current scheduling order" for additional discovery on the assignment and its effect on the City's claims. ECF 219 (Minute Entry). The Order required JLL to submit its supplemental expert report "based on the St. Clair County Trustee-City of East St. Louis Assignment" by January 7, 2025, and permitted Dr. Bell to submit a rebuttal report by January 24, 2025. *Id.* at 1-2. Consistent with the Court's Order, the subsequent January 7, 2025 supplemental JLL report focused on adjustments related to the purported assignment, *see* Exhibit M, at 2, and did not address unrelated issue of the time period for Dr. Bell's loss-of-use damages calculations.

Dr. Bell submitted his rebuttal report on January 28, 2025. In apparent recognition of the fact that the purported assignment was null and void, *see supra* at 2, n.2, Dr. Bell's rebuttal report limited his revised loss-of-use damages calculation to those of the original 273 parcels that the City actually owned, at one time or another. *See* Exhibit N, at 5. In addition, and with no connection to the purported assignment or any recently revealed facts, Dr. Bell drastically changed

---

[4] The remaining 100 parcels are held by private persons or entities other than the City, such as the East St. Louis Housing Authority, the East St. Louis School District, and the East St. Louis Township. Exhibit J at pg. 53.

6

the time frame for his damages calculation to include purported loss-of-use damages for the extended damages period from 1955 to 1973. *Id.* at 4 ("...the presence of PCBs on tested East St. Louis Parcels since (at least) December 1955."). Dr. Bell explained the basis for this change as follows:

> The Bell Report contained Use Effect calculations **based on the client's instruction to include any of the 273 tested parcels that were owned by a government entity since the ordinance violation on July 1, 1973.** Then, in March 2024, after the Bell Report was issued, the Court, however, dismissed the nuisance ordinance violation count. Accordingly, as instructed by the client, Use Effect calculations in this rebuttal have been revised to only include parcels during the years in which title was held by the City of East St. Louis (rather than all government entities). Additionally, **based on evidence obtained after the Bell Report was issued, the Use Effect in this rebuttal were calculated dating back to December 1, 1955**.

*Id.* at 4-5 (emphasis added; footnotes excluded). Dr. Bell attributes approximately $7.6 million in loss-of-use damages to the period between 1955 and 1973. *See id.* at 47-48 (total of "Cumulative Use Effect" for years 1955-1972).

At Dr. Bell's rebuttal deposition on February 7, 2025, he stated that this change in time period was due to "a directive" given to him by the City's lawyers to augment his loss-of-use damages calculation by expanding the timeframe to 1955. *See* Exhibit O. In particular, Dr. Bell testified that the "1973 date was being set aside" by the City's "legal team" because of the Court's dismissal of Count II, that they "reconsider[ed]" and "decided that 1955 was the appropriate date," and that they asked Dr. Bell "if [h]e could do that." *Id.* 35:21-36:9. Dr. Bell testified that he received the directive from the City's counsel to change the time period in his calculations sometime after his May 3, 2024 deposition and "certainly before the end of the year." *Id.* 26:19-27:25.

Contrary to the representation in his report, Dr. Bell did not attribute the change to "evidence obtained after the Bell report issued." Exhibit N, at 5. Rather, he admitted that "we got the information back to 1973, and, then, when we were given the 1955 instruction, we went back further." *Id.* 35:4-8.

Discovery closed on February 7, 2025. Motions for summary judgment and pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), are due on March 5, 2025. Trial is set to begin on June 16, 2025.

## **ARGUMENT**

This Court should strike the portions of Dr. Bell's January 28, 2025 rebuttal expert report that provide new, previously undisclosed affirmative opinions and evidence. Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Stanfield v. Dart*, No. 10 C 6569, 2013 WL 589222, at *1 (N.D. Ill. Feb. 14, 2013). Rule 37 is intended to provide "a self-executing sanction for failure to make a disclosure required by Rule 26(a)" in order to "provide[] a strong inducement for disclosure." Fed. R. Civ. P. 37(c), Advisory Cmte. Notes to 1993 Amendments.

Thus, in the Seventh Circuit, "the sanction of exclusion [under Rule 37] *is automatic and mandatory* unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (emphasis added). Courts in this District therefore routinely exclude untimely disclosed expert opinions where the untimely disclosure is unjustified or prejudices defendants. *See, e.g., Ruddell v. Marathon*

8

*Petroleum Co. LP*, 2017 WL 1479324 (S.D. Ill. Apr. 25, 2017) (granting defendant's motion to strike plaintiff's untimely rebuttal opinion where the rebuttal came after the discovery cutoff and plaintiff did not seek an extension or alert the court to the issue); *Custom Foam Works, Inc. v. Hydrotech Sys., Ltd.*, 2011 WL 2161106 (S.D. Ill. June 1, 2011) (granting motion to strike defendants' rebuttal opinion where the opinion was not timely submitted); *Gwin v. Am. River Transp. Co.*, 2005 WL 6742426 (S.D. Ill. May 25, 2005) (granting defendants' motion to strike plaintiffs' untimely expert designations made after the deadline provided in a revised scheduling order). Here, the City's late damages disclosure violates Rule 26 and this Court's scheduling order, and that violation was neither justified nor harmless.

## I.   The City's Untimely Disclosure of Dr. Bell's Damages Calculation Violates Rule 26(a), (e) and This Court's Scheduling Orders.

Under Rule 26(a), a party's disclosure of an expert's opinion must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). A party may offer a limited expert rebuttal opinion that is "intended solely to contradict or rebut evidence on the same subject matter identified" in the expert report of another party. Fed. R. Civ. P. 26(a)(2)(D)(ii). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). It naturally follows that "a party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Noffsinger v. The Valspar Corp.,* No. 09 C 916, 2011 WL 9795, at *6 (N.D. Ill. Jan. 3, 2011). "Nor may 'rebuttal' evidence be offered to provide new arguments or new evidence." *McCann v. Ogle Cnty.,* No. 11 C 50125, 2016 WL 5807922, at *1 (N.D. Ill. Oct. 5, 2016). Additionally, where a scheduling order provides for the time to disclose expert opinions and rebuttal opinions, a party

must disclose those opinions "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(B), 26(a)(2)(D).

The City disclosed Dr. Bell's new opinion as to pre-1973 loss-of-use damages well after the time for doing so in his initial report. Dr. Bell's initial report issued on February 16, 2024 calculated various categories of alleged real estate damages covering a period of time from 1973 to 2024, in line with the City's allegations and representations throughout discovery in this case. In his original damages report and in his initial deposition, Dr. Bell opined that the City is entitled to damages due to the presence of PCBs on parcels it now owns or once owned since 1973. *See supra* at 4. It was not until his January 28, 2025 report—almost a year after his original report— that Dr. Bell first opined regarding damages for alleged loss-of-use for an additional eighteen year period, going back to 1955. *See supra* at 7.

That new opinion cannot be described as a rebuttal opinion because it does not "contradict or rebut evidence" produced by Defendants' experts. Fed. R. Civ. P. 26(a)(2)(D)(ii). None of the expert reports submitted by JLL or Mr. Hitchens or any of Defendants' other experts in response to Dr. Bell's initial report and deposition mentions anything about damages before 1973. To the contrary, they directly addressed Dr. Bell's loss-of-use damages calculations based on his original start date of 1973. *See supra* at 5, 6. Dr. Bell's opinion as to pre-1973 loss-of-use damages is therefore nothing more than new "testimony under the guise of 'rebuttal.'" *Noffsinger,* 2011 WL 9795, at *6.

The City's late disclosure of Dr. Bell's new affirmative opinion was not in "a timely manner" under Rule 26 and flouts this Court's scheduling Orders. The Court required Dr. Bell's initial expert disclosures by February 16, 2024 and his rebuttal disclosures by September 10, 2024.

10

*See supra* at 4.  And the Court's Order permitting Dr. Bell to submit a rebuttal report by January 24, 2025 was necessarily limited to addressing JLL's supplemental expert report "based on the St. Clair County Trustee-City of East St. Louis Assignment."  *See supra* at 6.  Nothing in the Court's Order suggested that the City could submit entirely new and unrelated changes to Dr. Bell's damages calculations.  The late disclosure therefore violates both Rule 26 and the Court's Orders. *See Ruddell*, 2017 WL 1479324, at *2-3.

## II.     The City's Delay in Disclosing Dr. Bell's New Opinion as to Pre-1973 Loss-of-Use Damages Was Not Justified.

The City cannot point to any justification for its significant delay in disclosing Dr. Bell's new opinion.  The City has "offered no new evidence that caused the new opinions" from Dr. Bell and "nothing new came to light necessitating these new and untimely opinions." *McCann v. Cullinan*, 2016 WL 4593835, at *3 (N.D. Ill. Sept. 2, 2016), report and recommendation adopted sub nom. *McCann v. Ogle Cnty.*, 2016 WL 5807922 (N.D. Ill. Oct. 5, 2016).  To the contrary, Dr. Bell made clear in his last deposition that the only thing that changed was the directive he received from the City's counsel.  *See supra* at 7.  And that change by the City's counsel was purportedly precipitated by this Court's dismissal of Count II in March 2024.  *See supra* at 2, 4-5, and 7.

Even assuming the Court's March 2024 dismissal order somehow justified Dr. Bell's new opinion on an unrelated theory of damages—that is, other than to make up for the fact that the Court dismissed more than $3 billion in the City's claimed damages—that explanation offers no reason why the City could not have disclosed Dr. Bell's new opinion at his May 3, 2024 deposition, or at any other point in the more than ten months between the Court's dismissal Order and Dr. Bell's January 28, 2025 rebuttal report.  Thus, "[n]o reason has been presented showing why the opinions in [Dr. Bell's January 28, 2025 rebuttal] report could not have been contained in [his

11

initial report]….  Plaintiff was given the opportunity to present expert witness opinions and did so;

[Defendants are simply asking that Plaintiff be] prevented from improperly attempting to bolster

previous opinions or presenting new opinions in the guise of rebuttal."  *McCann*, 2016 WL

4593835, at *3.

### III.    The City's Delay in Disclosing Dr. Bell's New Opinion as to Pre-1973 Loss-of-Use Damages Was Not Harmless.

The City's late disclosure undeniably prejudices Defendants.  The implications of Dr.

Bell's new opinion go beyond mere damages calculations.  The addition of the eighteen year period

from 1955 to 1973 raises a variety of new issues, such as the circumstances that led to the City's

alleged acquisition of these parcels, the duration of the City's ownership, the prices (if any) the

City paid for these parcels, the condition or existence (if any) of each parcel's improvements, and

the then-existing PCB levels on those parcels and whether those levels might have required some

corrective action under existing regulations, either at the time they were obtained or when the City

sold or gave the property away.[5]  Dr. Bell's late disclosure of these new damages calculations

deprives Defendants of the opportunity to investigate these claims.

---

[5] After all, Bell himself agrees that the presence of a chemical on a parcel doesn't by itself mean the property is "impaired" in the first instance:

> [An environmental study] may find no contamination or concentrations that are below regulatory action limits. These are unusually seen as positive findings because the property is then deemed to be unimpaired by contamination."

Randall Bell, *Real Estate Damages, 3rd Edition* (Chicago: Appraisal Institute, 2016): 230 (emphasis added). *See also* The Appraisal Foundation, *The Uniform Standards of Appraisal Practice (USPAP)*, 2024 ed., Advisory Opinion 9 (AO-9) (defining environmental contamination where "concentrations of [hazardous substances] would exceed regulatory limits established by the appropriate federal, state, and/or local agencies.").

At this late stage of the case, there is no clear path to remedying the prejudice against Defendants without substantially delaying trial, which is set to commence on June 16, 2025. ECF 222 at 2. Adding eighteen years to the damages period implicates a litany of issues relating to the contamination and valuation of the new properties. For Defendants to thoroughly evaluate Dr. Bell's claims, additional expert opinions would be needed from causation as well as damages experts. And these experts may not be able to proceed with their analyses simultaneously, adding additional delay. Thus, under Seventh Circuit precedent, the proper remedy is to exclude Dr. Bell's new opinions in his January 2025 report.

## **CONCLUSION**

The Court should strike Dr. Bell's new affirmative opinions, insofar as they relate to the eighteen-year expanded damages timeframe of 1955 to 1973. If the Court is not inclined to strike these opinions, it should reopen both fact and expert discovery for the limited purpose of allowing Defendants the opportunity to explore ownership and use data from 1955 to 1973 for the properties at issue that are either currently, or were formerly, owned by the City.

Dated: February 19, 2025

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

*/s/ Adam E. Miller*
Adam E. Miller (6206249)
amiller@shb.com
Tyler W. Schwettman (6333327)
tschwettman@shb.com
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Telephone:  314.690.0200

13

*Attorneys for Defendants Monsanto Company and Pharmacia LLC*

**LATHROP GPM LLP**

*/s/ Charles R. Hobbs*
Charles R. Hobbs II (625917)
Ron.Hobbs@lathropgpm.com
The Plaza in Clayton
190 Carondelet Plaza, Suite 1400
St. Louis, MO 63105
Telephone:  314.613.2800

*Attorneys for Defendant Solutia Inc.*

14

<u>Certificate of Service</u>

The undersigned hereby certifies that on this 19th day of February 2025, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ ECF system.


*/s/ Adam E. Miller*_____