# EXHIBIT H

2024 EDITION

# 2024
## Uniform Standards of Professional Appraisal Practice (USPAP)

Effective January 1, 2024

**NEW stand-alone USPAP book.**

*Guidance and USPAP Reference Manual now available in a separate volume.*



The Appraisal **FOUNDATION**

Authorized by Congress as the Source of Appraisal Standards and Appraiser Qualifications

APPRAISAL STANDARDS BOARD

# Uniform Standards of Professional Appraisal Practice (USPAP)

## 2024
## EDITION



### The Appraisal FOUNDATION

Authorized by Congress as the Source of Appraisal
Standards and Appraiser Qualifications

### APPRAISAL STANDARDS BOARD

Published in the United States of America.

ISBN: 979-8-9884927-0-2

**All Rights Reserved**
Copyright © 2024, The Appraisal Foundation.

The Appraisal Foundation reserves all rights with respect to this material. No part of this publication may be reproduced, duplicated, altered or otherwise published in electronic or paper means or in any format or form without the express written permission of the publisher.

**EFFECTIVE:**
January 1, 2024



APPRAISAL STANDARDS BOARD

The Appraisal Foundation has developed a series of courses related to the *Uniform Standards of Professional Appraisal Practice* (USPAP). These courses are available for several appraisal disciplines: Business Valuation, Personal Property, Mass Appraisal and Real Property.

Please contact your educational provider for a schedule of course offerings.



### 15-HOUR USPAP COURSES

*15-Hour National USPAP Course (Real Property)*
*15-Hour Personal Property USPAP Course*
*15-Hour Business Appraisal USPAP Course*

### 7-HOUR USPAP COURSES

*7-Hour National USPAP Update Course (Real Property)*
*7-Hour USPAP Update Course for Mass Appraisal*
*7-Hour USPAP Update Course for Personal Property*

*7-Hour Residential Review and Compliance Course (Real Property)*

### YELLOW BOOK COURSES

*Uniform Appraisal Standards for Federal Land Acquisitions (Yellow Book) Course*
*USPAP and the Yellow Book, A Guide to Understanding Their Relationship*

### ABOUT THE APPRAISAL FOUNDATION

The Appraisal Foundation is the nation's foremost authority on the valuation profession. The organization sets the congressionally authorized standards and qualifications for real estate appraisers, and provides voluntary guidance on recognized valuation methods and techniques for all valuation professionals. This work advances the profession by ensuring appraisals are independent, consistent, and objective. More information on The Appraisal Foundation is available at www.appraisalfoundation.org.

### CONNECT WITH US

   

# THE APPRAISAL FOUNDATION AND THE INTERNATIONAL VALUATION STANDARDS COUNCIL

The Appraisal Foundation is an Institutional Member and proud Sponsor of the International Valuation Standards Council (IVSC). In addition, the Foundation is an active participant of the IVSC Advisory Forum Work Group.

**IVSC** The IVSC is an independent, not-for-profit organization that acts as the global standard setter for valuation practice and the valuation profession, serving the public interest. The IVSC is the developer of the International Valuation Standards (IVS), the latest version of the global standards for valuation professionals. For more information on the IVSC and IVS visit **www.ivsc.org**.

The Foundation and the IVSC are working together to harmonize valuation standards. As part of this effort, both groups jointly released *A Bridge from USPAP to IVS*. This document was developed to assist appraisers familiar with the *Uniform Standards of Professional Appraisal Practice* (USPAP) to produce a valuation that is also compliant with the IVS. While the document describes additional steps necessary to ensure that compliance, a full review of both sets standards is always encouraged. Both organizations note that this joint effort unveiled more commonalities than differences in the two sets of standards. The Core Principles of Valuation and Core Principles of Valuation Standards Setting were added to *A Bridge from USPAP to IVS* as a result from a series of meetings between the IVSC, the Foundation, and the Appraisal Institute of Canada (AIC) to understand if it was possible to reduce differences between their standards.



*A Bridge from USPAP to IVS* will be amended to be consistent with updates to IVS and USPAP as they occur.

For copies of *A Bridge from USPAP to IVS*, visit **www.ivsc.org** or **www.appraisalfoundation.org**.

# TABLE OF CONTENTS

FOREWORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . VII

PREAMBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ETHICS RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

RECORD KEEPING RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

COMPETENCY RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

SCOPE OF WORK RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

JURISDICTIONAL EXCEPTION RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

**STANDARDS AND STANDARD RULES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**17**

    STANDARD 1: REAL PROPERTY APPRAISAL, DEVELOPMENT . . . . . . . . . . . . . . . . . . . . .18

    STANDARD 2: REAL PROPERTY APPRAISAL, REPORTING . . . . . . . . . . . . . . . . . . . . . . 22

    STANDARD 3: APPRAISAL REVIEW, DEVELOPMENT . . . . . . . . . . . . . . . . . . . . . . . . 27

    STANDARD 4: APPRAISAL REVIEW, REPORTING . . . . . . . . . . . . . . . . . . . . . . . . . .31

    STANDARD 5: MASS APPRAISAL, DEVELOPMENT . . . . . . . . . . . . . . . . . . . . . . . . . 35

    STANDARD 6: MASS APPRAISAL, REPORTING . . . . . . . . . . . . . . . . . . . . . . . . . . .41

    STANDARD 7: PERSONAL PROPERTY APPRAISAL, DEVELOPMENT . . . . . . . . . . . . . . . . . . 45

    STANDARD 8: PERSONAL PROPERTY APPRAISAL, REPORTING . . . . . . . . . . . . . . . . . . . 49

    STANDARD 9: BUSINESS APPRAISAL, DEVELOPMENT . . . . . . . . . . . . . . . . . . . . . . . 55

    STANDARD 10: BUSINESS APPRAISAL, REPORTING . . . . . . . . . . . . . . . . . . . . . . . . 58

INDEX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

**STATEMENTS ON APPRAISAL STANDARDS**

Statements on Appraisal Standards (SMT) are authorized by the by-laws of The Appraisal Foundation and are specifically for the purposes of clarification, interpretation, explanation, or elaboration of the *Uniform Standards of Professional Appraisal Practice* (USPAP). Statements have the full weight of a Standards Rule and can be adopted by the Appraisal Standards Board only after exposure and comment. There are currently no active Statements.

GO BACK

# FOREWORD

The Appraisal Standards Board (ASB) of The Appraisal Foundation develops, interprets, and amends the *Uniform Standards of Professional Appraisal Practice* (USPAP) on behalf of appraisers and users of appraisal services. **The 2024 edition of USPAP has an effective start date but no end date.** As the standards have evolved and matured in the last 35 years, the need for the standards to be updated on a regular basis has decreased, leaving the standards unchanged for a longer period of time. Furthermore, the issues that now impact the standards are more complex and require additional research and time to consider potential changes.

### NEW CONFIGURATION

At the same time, changing market conditions have increased the need for new guidance related to the USPAP standards on a more frequent basis. Issues like new technology, fair housing, and the coronavirus pandemic have required the ASB to be responsive to the needs of the profession on a more frequent basis. As a result, the decision was made to publish the 2024 USPAP as a stand-alone publication and to publish the Advisory Opinions (AOs) and Frequently Asked Questions (FAQs), which in recent years have been part of the USPAP publication, separately as the *USPAP Guidance and Reference Manual* (USPAP GRM). This new publication also includes the *USPAP Reference Manual*, which was introduced in late 2021, and is now referred to as the Reference Index.

USPAP continues to comprise five sections: PREAMBLE, DEFINITIONS, Rules, Standards (including Standards Rules), and Statements on Appraisal Standards (there are currently no active Statements).

It is important that individuals understand and adhere to USPAP, including any changes adopted in each edition of USPAP. Various authorities, such as state and federal regulatory agencies or major appraisal organizations, enforce the content of the current or applicable edition of USPAP.

### HISTORY OF USPAP

These Standards are based on the original *Uniform Standards of Professional Appraisal Practice* developed in 1986–87 by the Ad Hoc Committee on Uniform Standards and copyrighted in 1987 by The Appraisal Foundation. The effective date of the original Uniform Standards was April 27, 1987. Prior to the establishment of the ASB in 1989, USPAP had been adopted by major appraisal organizations in North America. USPAP represents the generally accepted and recognized standards of appraisal practice in the United States.

At its organizational meeting on January 30, 1989, the Appraisal Standards Board unanimously approved and adopted the original USPAP as the initial appraisal standards promulgated by the ASB. Portions of USPAP may be amended, interpreted, supplemented, or retired by the ASB after exposure to the appraisal profession, users of appraisal services, and the public in accordance with established rules of procedure.

### CHANGES TO USPAP

Over the years, USPAP has evolved in response to changes in appraisal practice. The ASB has developed a process for developing both Standards and guidance based, in part, on written comments submitted in response to exposure drafts and oral testimony presented at public meetings.

### GUIDANCE NOW PUBLISHED SEPARATELY

The ASB issues the AOs, FAQs, and periodic USPAP Q&As as guidance. These do not establish new Standards or interpret existing Standards and are not part of USPAP. They illustrate the applicability of Standards in specific situations and offer advice from the ASB for the resolution of specific appraisal issues and problems. As stated above, this guidance is now part of a separate publication.

---



## INTERACTING WITH THE APPRAISAL STANDARDS BOARD

The ASB invites questions about USPAP, USPAP guidance, and proposed changes to USPAP from all interested parties, including appraisers, state enforcement agencies, users of appraisal services, and the public. The ASB is composed of five to nine members who are appointed by the Board of Trustees (BOT) and may serve up to eight years. Activities of the ASB are directed by the chair, who is appointed by the BOT for a one-year term. The current ASB consists of members who specialize in residential, commercial, personal, and mass property appraisal and business valuation work. The process for becoming an ASB member is competitive and transparent. The ASB issues Exposure Drafts on proposed changes to USPAP and obtains feedback at public meetings throughout the year in a virtual setting. To attend their meetings, please check the Foundation's Events page for a list of upcoming public meetings. Additionally, the ASB participates in speaking engagements on request and conducts live webinars. Please check the Webinars page on the Foundation's website to watch the recorded webinars, which are also posted on the Foundation's YouTube channel.

If you have any comments, questions, or suggestions regarding USPAP, please contact the ASB.

**Appraisal Standards Board**
The Appraisal Foundation
1155 15th Street, NW, Suite 1111
Washington, DC 20005
Phone: 202-347-7722
Email: info@appraisalfoundation.org
Website: www.appraisalfoundation.org

### 2023 APPRAISAL STANDARDS BOARD MEMBERS
Michelle Czekalski Bradley, Chair
Nicholas Pilz, Vice Chair
Melissa Bond
Riley Busenlener
Anjanette Hutson
Raymond Krasinski
Craig Morley
Heather Sullivan

The 2024 USPAP was adopted by the 2023 Appraisal Standards Board on May 5, 2023.

### 2022 APPRAISAL STANDARDS BOARD MEMBERS
Michelle Czekalski Bradley, Chair
Nicholas Pilz, Vice Chair
Melissa Bond
Riley Busenlener
Craig Morley
Roberta Ouellette

### 2021 APPRAISAL STANDARDS BOARD MEMBERS
Michelle Czekalski Bradley, Chair
(No Vice Chair)
Patricia H. Atwood
Riley Busenlener
Tim Luke
Roberta Ouellette
Craig Morley

GO BACK

# Uniform Standards of Professional Appraisal Practice (USPAP)

## 2024 EDITION

# PREAMBLE

The purpose of the *Uniform Standards of Professional Appraisal Practice* (USPAP) is to promote and maintain a high level of public trust in appraisal practice by establishing requirements for appraisers. It is essential that appraisers develop and communicate their analyses, opinions, and conclusions to intended users of their services in a manner that is meaningful and not misleading.

The Appraisal Standards Board promulgates USPAP for both appraisers and users of appraisal services. The appraiser's responsibility is to protect the overall public trust and it is the importance of the role of the appraiser that places ethical obligations on those who serve in this capacity. USPAP reflects the current standards of the appraisal profession.

USPAP addresses the ethical and performance obligations of appraisers through DEFINITIONS, Rules, Standards, Standards Rules, and Statements (there are currently no active Statements).

- The DEFINITIONS establish the application of certain terminology in USPAP.
- The ETHICS RULE sets forth the requirements for integrity, impartiality, objectivity, independent judgment, and ethical conduct.
- The RECORD KEEPING RULE establishes the workfile requirements for appraisal and appraisal review assignments.
- The COMPETENCY RULE presents pre-assignment and assignment conditions for knowledge and experience.
- The SCOPE OF WORK RULE presents obligations related to problem identification, research, and analyses.
- The JURISDICTIONAL EXCEPTION RULE preserves the balance of USPAP if a portion is contrary to law or public policy of a jurisdiction.
- The Standards establish the requirements for appraisal and appraisal review and the manner in which each is communicated.
  - STANDARDS 1 and 2 establish requirements for the development and communication of a real property appraisal.
  - STANDARDS 3 and 4 establish requirements for the development and communication of an appraisal review.
  - STANDARDS 5 and 6 establish requirements for the development and communication of a mass appraisal.
  - STANDARDS 7 and 8 establish requirements for the development and communication of a personal property appraisal.
  - STANDARDS 9 and 10 establish requirements for the development and communication of a business or intangible asset appraisal.
- There are currently no active Statements on Appraisal Standards.
- Comments are an integral part of USPAP and have the same weight as the component they address. These extensions of the DEFINITIONS, Rules, and Standards Rules provide interpretation and establish the context and conditions for application.

## When Do USPAP Rules and Standards Apply?

USPAP does not establish who or which assignments must comply. Neither The Appraisal Foundation nor its Appraisal Standards Board is a government entity with the power to make, judge, or enforce law. An appraiser must comply with USPAP when either the service or the appraiser is required by law, regulation, or agreement with the client. Individuals may also choose to comply with USPAP any time that individual is performing the service as an appraiser. In order to comply with USPAP, an appraiser must meet the following obligations:

GO BACK

- An appraiser must act competently and in a manner that is independent, impartial, and objective.

- An appraiser must comply with the ETHICS RULE in all aspects of appraisal practice.

- An appraiser must maintain the data, information and analysis necessary to support his or her opinions for appraisal and appraisal review assignments in accordance with the RECORD KEEPING RULE.

- An appraiser must comply with the COMPETENCY RULE and the JURISDICTIONAL EXCEPTION RULE for all assignments.

- When an appraiser provides an opinion of value in an assignment, the appraiser must also comply with the SCOPE OF WORK RULE, the RECORD KEEPING RULE, the applicable development and reporting Standards and applicable Statements (there are currently no active Statements).

- When an appraiser provides an opinion about the quality of another appraiser's work that was performed as part of an appraisal or appraisal review assignment, the appraiser must also comply with the SCOPE OF WORK RULE, the RECORD KEEPING RULE, applicable portions of STANDARDS 3 and 4, and applicable Statements (there are currently no active Statements).

- When preparing an appraisal or appraisal review that is a component of a larger assignment with additional opinions, conclusions, or recommendations, the appraisal or appraisal review component must comply with the applicable development and reporting Standards and applicable Statements (there are currently no active Statements), and the remaining component of the assignment must comply with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

**GO BACK**

# DEFINITIONS

Defined terms are intended to clarify the meaning of words or phrases in USPAP that differ from or are not found in popular English dictionaries and, in a few instances, to indicate which popular dictionary definition is meant to be used if there are multiple definitions.

For the purpose of the *Uniform Standards of Professional Appraisal Practice* (USPAP), the following definitions apply:

**APPRAISAL:** (noun) the act or process of developing an opinion of value; an opinion of value. (adjective) of or pertaining to appraising and related functions such as appraisal practice or appraisal services.

> Comment: Such expectation occurs when individuals, either by choice or by requirement placed upon them or upon the service they provide by law, regulation, or agreement with the client or intended users, represent that they comply.

**APPRAISAL PRACTICE:** valuation services performed by an individual acting as an appraiser, including but not limited to appraisal and appraisal review.

> Comment: *Appraisal practice* is provided only by appraisers, *while valuation services* are provided by a variety of professionals and others.[1] The terms *appraisal* and *appraisal review* are intentionally generic and are not mutually exclusive. For example, an opinion of value may be required as part of an appraisal review assignment.

**APPRAISAL REVIEW:** (noun) the act or process of developing an opinion about the quality of another appraiser's work (i.e., a report, part of a report, a workfile, or some combination of these), that was performed as part of an appraisal or appraisal review assignment; (adjective) of or pertaining to an opinion about the quality of another appraiser's work that was performed as part of an appraisal or appraisal review assignment.

**APPRAISER:** one who is expected to perform valuation services competently and in a manner that is independent, impartial, and objective.[2]

> Comment: Such expectation occurs when individuals, either by choice or by requirement placed upon them or upon the service they provide by law, regulation, or agreement with the client or intended users, represent that they comply.

**APPRAISER'S PEERS:** other appraisers who have expertise and competency in a similar type of assignment.[3]

**ASSIGNMENT:** a valuation service that is provided by an appraiser as a consequence of an agreement with a client.

**ASSIGNMENT CONDITIONS:** Assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions, and other conditions that affect the scope of work.

**ASSIGNMENT RESULTS:** An appraiser's opinions or conclusions, not limited to value, that were developed when performing an appraisal assignment, an appraisal review assignment, or a valuation service other than an appraisal or appraisal review.

> Comment: Physical characteristics are not assignment results.

**BIAS:** a preference or inclination that precludes an appraiser's impartiality, independence, or objectivity in an assignment.

**BUSINESS ENTERPRISE:** an entity pursuing an economic activity.

---

1    In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 21, *USPAP Compliance*.
2    See PREAMBLE and in USPAP GRM, see Advisory Opinion 21, *USPAP Compliance*.
3    In USPAP GRM, see Advisory Opinion 29, *An Acceptable Scope of Work*.

---

**DEFINITIONS**

**BUSINESS EQUITY:** the interests, benefits, and rights inherent in the ownership of a business enterprise or a part thereof in any form (including, but not necessarily limited to, capital stock, partnership interests, cooperatives, sole proprietorships, options, and warrants).

**CLIENT:** the party or parties (i.e., individual, group, or entity) who engage an appraiser by employment or contract in a specific assignment, whether directly or through an agent.

**CONFIDENTIAL INFORMATION:** information that is either:

- identified by the client as confidential when providing it to an appraiser and that is not available from any other source;[4] or
- classified as confidential or private by applicable law or regulation.[5]

**COST:** the actual or estimated amount required to create, reproduce, replace, or obtain a property.

**CREDIBLE:** worthy of belief.

> Comment: Credible assignment results require support, by relevant evidence and logic, to the degree necessary for the intended use.

**EFFECTIVE DATE:** the date to which an appraiser's analyses, opinions, and conclusions apply; also referred to as date of value.

**EXPOSURE TIME:** an opinion, based on supporting market data, of the length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.[6]

**EXTRAORDINARY ASSUMPTION:** an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions.

> Comment: Uncertain information might include physical, legal, or economic characteristics of the subject property; or conditions external to the property, such as market conditions or trends; or the integrity of data used in an analysis.

**FEASIBILITY ANALYSIS:** a study of the cost-benefit relationship of an economic endeavor.

**HYPOTHETICAL CONDITION:** a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

> Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.

**INTANGIBLE PROPERTY (INTANGIBLE ASSETS):** nonphysical assets, including but not limited to franchises, trademarks, patents, copyrights, goodwill, equities, securities, and contracts as distinguished from physical assets such as facilities and equipment.

---

4    See Confidentiality section of the ETHICS RULE.

5    For example, pursuant to the passage of the Gramm-Leach-Bliley Act in November 1999, some public agencies have adopted privacy regulations that affect appraisers. The Federal Trade Commission (FTC) issued two rules. The first rule (16 CFR 313) focuses on the protection of "non-public personal information" provided by consumers to those involved in financial activities "found to be closely related to banking or usual in connection with the transaction of banking." These activities include "appraising real or personal property." See GLB-Privacy. The second rule (16 CFR 314) requires appraisers to safeguard customer non-public personal information. See GLB-Safeguards-Rule. Significant liability exists for appraisers should they fail to comply with these FTC rules.

6    In USPAP GRM, see Advisory Opinion 35, *Reasonable Exposure Time in Real and Personal Property Opinions of Value*.

---

GO BACK

USPAP 2024 Edition
© The Appraisal Foundation

**DEFINITIONS**

**INTENDED USE:** the use(s) of an appraiser's reported appraisal or appraisal review assignment results, as identified by the appraiser based on communication with the client at the time of the assignment.[7]

**INTENDED USER:** the client and any other party as identified, by name or type, as users of the appraisal or appraisal review report by the appraiser, based on communication with the client at the time of the assignment.[8]

**JURISDICTIONAL EXCEPTION:** an assignment condition established by applicable law or regulation, which precludes an appraiser from complying with a part of USPAP.

**MARKET VALUE:** a type of value, stated as an opinion, that presumes the transfer of a property (i.e., a right of ownership or a bundle of such rights), as of a certain date, under specific conditions set forth in the value definition that is identified by the appraiser as applicable in an appraisal.[9]

> Comment: Appraisers are cautioned to identify the exact definition of market value, and its authority, applicable in each appraisal completed for the purpose of market value.

**MASS APPRAISAL:** the process of valuing a universe of properties as of a given date using standard methodology, employing common data, and allowing for statistical testing.

**MASS APPRAISAL MODEL:** a mathematical expression of how supply and demand factors interact in a market.

**PERSONAL INSPECTION:** (for an appraisal assignment) the appraiser's in-person observation of the subject property performed as part of the scope of work; (for an appraisal review assignment) the reviewer's in-person observation of the subject of the work under review, performed as part of the scope of work.

> Comment: An appraiser's personal inspection is typically limited to those things readily observable without the use of special testing or equipment. Appraisals of some types of property, such as gems and jewelry, may require the use of specialized equipment. A personal inspection is not the equivalent of an inspection by an inspection professional (e.g., a structural engineer, home inspector, or art conservator).[10]

**PERSONAL PROPERTY:** any tangible or intangible article that is subject to ownership and not classified as real property, including identifiable tangible objects that are considered by the general public as being "personal," such as furnishings, artwork, antiques, gems and jewelry, collectibles, machinery and equipment; and intangible property that is created and stored electronically such as plans for installation art, choreography, emails, or designs for digital tokens.

**PHYSICAL CHARACTERISTICS:** attributes of a property that are observable or measurable as a matter of fact, as distinguished from opinions and conclusions, which are the result of some level of analysis or judgment.

**PRICE:** the amount asked, offered, or paid for a property.

> Comment: Once stated, *price* is a fact, whether it is publicly disclosed or retained in private. Because of the financial capabilities, motivations, or special interests of a given buyer or seller, the price paid for a property may or may not have any relation to the *value* that might be ascribed to that property by others.

**REAL ESTATE:** an identified parcel or tract of land, including improvements, if any.

**REAL PROPERTY:** the interests, benefits, and rights inherent in the ownership of real estate.

---

7    In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

8    In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

9    In USPAP GRM, see General Comment on Market Value Definitions, and Advisory Opinion 22, *Scope of Work in Market Value Appraisal Assignments for Real Property*.

10    In USPAP GRM, see Advisory Opinion 2, *Inspection of Subject Property*.

---

**REPORT:** any communication, written or oral, of an appraisal or appraisal review that is transmitted to the client or a party authorized by the client upon completion of an assignment.

**SCOPE OF WORK:** the type and extent of research and analyses in an appraisal or appraisal review assignment.[11]

**SIGNATURE:** personalized evidence indicating authentication of the work performed by the appraiser and the acceptance of the responsibility for content, analyses, and the conclusions in the report.

**VALUATION SERVICE:** a service pertaining to an aspect of property value, regardless of the type of service and whether it is performed by appraisers or by others.

**VALUE:** the monetary relationship between properties and those who buy, sell, or use those properties, expressed as an opinion of the worth of a property at a given time.

Comment: In appraisal practice, value will always be qualified - for example, market value, liquidation value, or investment value.

**WORKFILE**: documentation necessary to support an appraiser's analyses, opinions, and conclusions.[12]

---

[11]  See SCOPE OF WORK RULE.
[12]  See RECORD KEEPING RULE.

---

**GO BACK**

USPAP 2024 Edition
© The Appraisal Foundation

# ETHICS RULE

**An appraiser must promote and preserve the public trust inherent in appraisal practice by observing the highest standards of professional ethics.**

**An appraiser must comply with USPAP when obligated by law or regulation, or by agreement with the client or intended users. In addition to these requirements, an individual should comply any time that individual represents that he or she is performing the service as an appraiser.**

> Comment: This Rule specifies the personal obligations and responsibilities of the individual appraiser. An individual appraiser employed by a group or organization that conducts itself in a manner that does not conform to USPAP should take steps that are appropriate under the circumstances to ensure compliance with USPAP.

This ETHICS RULE is divided into four sections: **Nondiscrimination, Conduct, Management,** and **Confidentiality**, which apply to all appraisal practice.

## NONDISCRIMINATION:

**An appraiser must not act in a manner that violates or contributes to a violation of federal, state, or local antidiscrimination laws or regulations.[13] This includes the Fair Housing Act (FHAct), the Equal Credit Opportunity Act (ECOA), and the Civil Rights Act of 1866.**

**An appraiser must have knowledge of antidiscrimination laws and regulations and when those laws or regulations apply to the appraiser or to the assignment. An appraiser must complete an assignment in full compliance with applicable laws and regulations.**

1. **An appraiser, when completing a residential real property assignment, must not base their opinion of value in whole or in part on race, color, religion, national origin, sex, disability, or familial status.**

   Comment: The FHAct prohibits discrimination in residential real estate appraisals on the basis of race, color, religion, national origin, sex, disability, or familial status. Under the FHAct, an appraiser may not use or rely upon information relating to these protected characteristics, with limited exceptions.

   The FHAct can be violated through disparate treatment (treating individuals of one protected group differently from and less favorably than others not in that protected group) and disparate impact (employing neutral policies or practices that disproportionately harm members of a protected group, except when those policies or practices are justified and there are no less disproportionate policies or practices that could be used instead).

   Section 1981 of the federal Civil Rights Act of 1866 prohibits many forms of discrimination with respect to the making and enforcement of contracts, and Section 1982 of the same law prohibits discrimination with respect to the purchasing, leasing, selling, holding, and conveyance of real and personal property. The Civil Rights Act of 1866 applies to real property appraisals, in addition to personal property and other appraisals.

---

[13] In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 39, *Antidiscrimination Laws and Nondiscrimination.*

---

GO BACK

**2. An appraiser, when completing an assignment where the intended use is in connection with a credit transaction, not limited to credit secured by real property, must not base their opinion of value in whole or in part on race, color, religion, national origin, sex, marital status, age, source of income, or the good-faith exercise of rights under the Consumer Credit Protection Act.**

Comment: ECOA prohibits discrimination in any aspect of a credit transaction on the basis of race, color, religion, national origin, sex, marital status, age, source of income, or the good-faith exercise of any right under the Consumer Credit Protection Act in any aspect of a credit transaction, with limited exceptions. An appraisal used in connection with a credit transaction is an aspect of the credit transaction.

**3. An appraiser must not violate any state or local antidiscrimination laws or regulations applicable to the appraiser or to their assignment.**

Comment: State and local laws may expand upon federal antidiscrimination requirements to protect additional characteristics and/or prohibit additional practices. The specific laws and regulations that are applicable to an appraiser or an assignment will vary.

**Whether or not any antidiscrimination law or regulation applies:**

**1. An appraiser must not develop and/or report an opinion of value that, in whole or in part, is based on the actual or perceived race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s).**

Comment: Within the context of the Nondiscrimination section of the ETHICS RULE, "person(s)" includes but is not limited to:

- a property or asset owner;
- a purchaser or potential purchaser of a property or an asset;
- an individual who might derive benefit from or use a property or an asset;
- a client, representative or agent of a client, or any other intended user; or the inhabitants of a geographic area.

**2. An appraiser must not base an opinion of value upon the premise that homogeneity of the inhabitants of a geographic area is relevant for the appraisal.[14]**

**3. An appraiser must not perform an assignment with bias with respect to the actual or perceived race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s).**

**4. An appraiser must not use or rely upon another characteristic as a pretext to conceal the use of or reliance upon race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s), when performing an assignment.**

Comment: Where an antidiscrimination law or regulation applies to the appraiser or the appraiser's assignment, the practices described in 1-4 immediately above may also be prohibited by applicable antidiscrimination law, including the FHAct, ECOA, and the Civil Rights Act of 1866. Any practice prohibited by an applicable antidiscrimination law or regulation is also prohibited by the preceding requirements of the Nondiscrimination section.

---

14    In USPAP GRM, see Advisory Opinion 40, *Antidiscrimination and the Research, Analysis, and Reporting of Location Data, including Demographics, for Residential Real Property Appraisal Assignments*.

---

8

**GO BACK**

**If an assignment does not involve residential real property and the intended use is not in connection with a credit transaction, the FHAct and ECOA do not apply. If the FHAct and ECOA do not apply, and no other law or regulation prohibits the use of or reliance upon a protected characteristic,[15] then the use of or reliance upon that characteristic is permitted only to the extent that it is essential to the assignment and necessary for credible assignment results.**

> Comment: Where the FHAct, ECOA, or another antidiscrimination law or regulation applies, any use of or reliance upon a protected characteristic must be expressly permitted by applicable laws or regulations.

## CONDUCT:

**An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests.**

**An appraiser:**

- **must not perform an assignment with bias;**
- **must not advocate the cause or interest of any party or issue;**
- **must not agree to perform an assignment that includes the reporting of predetermined opinions and conclusions;**
- **must not misrepresent his or her role when providing valuation services that are outside of appraisal practice;[16]**
- **must not communicate assignment results with the intent to mislead or to defraud;**
- **must not use or communicate a report or assignment results known by the appraiser to be misleading or fraudulent;**
- **must not knowingly permit an employee or other person to communicate a report or assignment results that are misleading or fraudulent;**
- **must not engage in criminal conduct;**
- **must not willfully or knowingly violate the requirements of the RECORD KEEPING RULE; and**
- **must not perform an assignment in a grossly negligent manner.**

> Comment: Development standards (1-1, 3-1, 5-1, 7-1 and 9-1) address the requirement that "an appraiser must not render appraisal services in a careless or negligent manner." The above requirement deals with an appraiser being grossly negligent in performing an assignment which would be a violation of the Conduct section of the ETHICS RULE.

**If known prior to agreeing to perform an assignment, and/or if discovered at any time during the assignment, an appraiser must disclose to the client, and in each subsequent report certification:**

- **any current or prospective interest in the subject property or parties involved; and**
- **any services regarding the subject property performed by the appraiser, as an appraiser or in any other capacity, within the three-year period immediately preceding the agreement to perform the assignment.**

---

15   For purposes of this exception, "protected characteristic" means race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s), or any other characteristic protected by applicable antidiscrimination laws or regulations.

16   In USPAP GRM, see Advisory Opinion 21, *USPAP Compliance*.

---

**GO BACK**

Comment: Disclosing the fact that the appraiser has previously appraised the property is permitted except in the case when an appraiser has agreed with the client to keep the mere occurrence of a prior assignment confidential. If an appraiser has agreed with a client not to disclose that he or she has appraised a property, the appraiser must decline all subsequent agreements to perform assignments that fall within the three-year period.

In assignments in which there is no appraisal or appraisal review report, only the initial disclosure to the client is required.

## MANAGEMENT:

**An appraiser must disclose that he or she paid a fee or commission, or gave a thing of value in connection with the procurement of an assignment.**

Comment: The disclosure must appear in the certification and in any transmittal letter in which conclusions are stated; however, disclosure of the amount paid is not required. In groups or organizations engaged in appraisal practice, intra-company payments to employees for business development do not require disclosure.

**An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:**

1. **the reporting of a predetermined result (e.g., opinion of value);**

2. **a direction in assignment results that favors the cause of the client;**

3. **the amount of a value opinion;**

4. **the attainment of a stipulated result (e.g., that the loan closes, or taxes are reduced); or**

5. **the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.**

**An appraiser must not advertise for or solicit assignments in a manner that is false, misleading, or exaggerated.**

**An appraiser must affix, or authorize the use of, his or her signature to certify recognition and acceptance of his or her USPAP responsibilities in an appraisal or appraisal review assignment (see Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3). An appraiser may authorize the use of his or her signature only on an assignment-by-assignment basis.**

**An appraiser must not affix the signature of another appraiser without his or her consent.**

Comment: An appraiser must exercise due care to prevent unauthorized use of his or her signature. An appraiser exercising such care is not responsible for unauthorized use of his or her signature

GO BACK

## CONFIDENTIALITY:

An appraiser must protect the confidential nature of the appraiser-client relationship.[17]

An appraiser must act in good faith with regard to the legitimate interests of the client in the use of confidential information and in the communication of assignment results.

An appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment.[18]

An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:

- the client;
- parties specifically authorized by the client;
- state appraiser regulatory agencies;
- third parties as may be authorized by due process of law; or
- a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.

An appraiser must take reasonable steps to safeguard access to confidential information and assignment results by unauthorized individuals, whether such information or results are in physical or electronic form.

An appraiser must ensure that employees, co-workers, sub-contractors, or others who may have access to confidential information or assignment results, are aware of the prohibitions on disclosure of such information or results.

A member of a duly authorized professional peer review committee must not disclose confidential information presented to the committee.

> Comment: When all confidential elements of confidential information, and assignment results are removed through redaction or the process of aggregation, client authorization is not required for the disclosure of the remaining information, as modified.

---

17    In USPAP GRM, see Advisory Opinion 27, *Appraising the Same Property for a New Client.*

18    For example, pursuant to the passage of the Gramm-Leach-Bliley Act in November 1999, some public agencies have adopted privacy regulations that affect appraisers. The Federal Trade Commission (FTC) issued two rules. The first rule (16 CFR 313) focuses on the protection of "non-public personal information" provided by consumers to those involved in financial activities "found to be closely related to banking or usual in connection with the transaction of banking." These activities include "appraising real or personal property." See GLB-Privacy. The second rule (16 CFR 314) requires appraisers to safeguard customer non-public personal information. See GLB-Safeguards-Rule. Significant liability exists for appraisers should they fail to comply with these FTC rules.

---

USPAP 2024 Edition
© The Appraisal Foundation

**GO BACK**

11

# RECORD KEEPING RULE

An appraiser must prepare a workfile for each appraisal or appraisal review assignment. A workfile must be in existence prior to the issuance of any report or other communication of assignment results. A written summary of an oral report must be added to the workfile within a reasonable time after the issuance of the oral report.

The workfile must include:

- the name of the client and the identity, by name or type, of any other intended users;

- true copies of all written reports, documented on any type of media. (A true copy is a replica of the report transmitted to the client. A photocopy or an electronic copy of the entire report transmitted to the client satisfies the requirement of a true copy.);

- summaries of all oral reports or testimony, or a transcript of testimony, including the appraiser's signed and dated certification; and

- all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other data, information, and documentation.

A workfile in support of a Restricted Appraisal Report or an oral appraisal report must be sufficient for the appraiser to produce an Appraisal Report. A workfile in support of an oral appraisal review report must be sufficient for the appraiser to produce an Appraisal Review Report.

An appraiser must retain the workfile for a period of at least five years after preparation or at least two years after final disposition of any judicial proceeding in which the appraiser provided testimony related to the assignment, whichever period expires last.

An appraiser must have custody of the workfile, or make appropriate workfile retention, access, and retrieval arrangements with the party having custody of the workfile. This includes ensuring that a workfile is stored in a medium that is retrievable by the appraiser throughout the prescribed record retention period.

An appraiser having custody of a workfile must allow other appraisers with workfile obligations related to an assignment appropriate access and retrieval for the purpose of:

- submission to state appraiser regulatory agencies;

- compliance with due process of law;

- submission to a duly authorized professional peer review committee; or

- compliance with retrieval arrangements.

> Comment: A workfile must be made available by the appraiser when required by a state appraiser regulatory agency or due process of law.

An appraiser who willfully or knowingly fails to comply with the obligations of this RECORD KEEPING RULE is in violation of the ETHICS RULE.

**GO BACK**

© The Appraisal Foundation

# COMPETENCY RULE

An appraiser must: (1) be competent to perform the assignment; (2) acquire the necessary competency to perform the assignment; or (3) decline or withdraw from the assignment. In all cases, the appraiser must perform competently when completing the assignment.

Perfection is impossible to attain, and competence does not require perfection. However, an appraiser must not render appraisal services in a careless or negligent manner. This Rule requires an appraiser to use due diligence and due care.

## BEING COMPETENT

An appraiser must determine, prior to agreeing to perform an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed;
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

   Comment: Competency may apply to factors such as, but not limited to, an appraiser's familiarity with a specific type of property or asset, a market, a geographic area, an intended use, specific laws and regulations, or an analytical method. If such a factor is necessary for an appraiser to develop credible assignment results, the appraiser is responsible for having the competency to address that factor or for following the steps outlined below to satisfy this COMPETENCY RULE.

   For assignments with retrospective opinions and conclusions, the appraiser must meet the requirements of this COMPETENCY RULE at the time the assignment is performed, rather than the effective date.

## ACQUIRING COMPETENCY

If an appraiser determines he or she is not competent prior to agreeing to perform an assignment, the appraiser must:

1. disclose the lack of knowledge and/or experience to the client before agreeing to perform the assignment;
2. take all steps necessary or appropriate to complete the assignment competently; and
3. describe, in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently.

   Comment: Competency can be acquired in various ways, including, but not limited to, personal study by the appraiser, association with an appraiser reasonably believed to have the necessary knowledge and/or experience, or retention of others who possess the necessary knowledge and/or experience.

   In an assignment where geographic competency is necessary, an appraiser who is not familiar with the relevant market characteristics must acquire an understanding necessary to produce credible assignment results for the specific property type and market involved.

When facts or conditions are discovered during the course of an assignment that cause an appraiser to determine, at that time, that he or she lacks the required knowledge and experience to complete the assignment competently, the appraiser must:

1. notify the client;

2. take all steps necessary or appropriate to complete the assignment competently; and

3. describe, in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently.

## LACK OF COMPETENCY

If the assignment cannot be completed competently, the appraiser must decline or withdraw from the assignment.

GO BACK

# SCOPE OF WORK RULE[19]

**For each appraisal and appraisal review assignment, an appraiser must:**

1. **identify the problem to be solved;**

2. **determine and perform the scope of work necessary to develop credible assignment results; and**

3. **disclose the scope of work in the report.**

**An appraiser must properly identify the problem to be solved in order to determine the appropriate scope of work. The appraiser must be prepared to demonstrate that the scope of work is sufficient to produce credible assignment results.**

Comment: Scope of work includes, but is not limited to:

- the extent to which the property is identified;
- the extent to which tangible property is inspected;
- the type and extent of data researched; and
- the type and extent of analyses applied to arrive at opinions or conclusions.

Appraisers have broad flexibility and significant responsibility in determining the appropriate scope of work for an appraisal or appraisal review assignment.

Credible assignment results require support by relevant evidence and logic. The credibility of assignment results is always measured in the context of the intended use.

## PROBLEM IDENTIFICATION

**An appraiser must gather and analyze information about those assignment elements that are necessary to properly identify the appraisal or appraisal review problem to be solved.**

Comment: The assignment elements necessary for problem identification are addressed in the applicable Standards Rules (i.e., SR 1-2, SR 3-2, SR 5-2, SR 7-2, and SR 9-2). In an appraisal assignment, for example, identification of the problem to be solved requires the appraiser to identify the following assignment elements:

- client and any other intended users;
- intended use of the appraiser's opinions and conclusions;
- type and definition of value;
- effective date of the appraiser's opinions and conclusions;
- subject of the assignment and its relevant characteristics; and
- assignment conditions.

This information provides the appraiser with the basis for determining the type and extent of research and analyses to include in the development of an appraisal. Similar information is necessary for problem identification in appraisal review assignments.

Communication with the client is required to establish most of the information necessary for problem identification. However, the identification of relevant characteristics is a judgment made by the appraiser that requires competency in that type of assignment.

---

19   In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 28, *Scope of Work Decision, Performance, Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.

---

**GO BACK**

Assignment conditions include assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions, and other conditions that affect the scope of work. Laws include constitutions, legislative and court-made law, administrative rules, and ordinances. Regulations include rules or orders, having legal force, issued by an administrative agency.

## SCOPE OF WORK ACCEPTABILITY[20]

**The scope of work must include the research and analyses that are necessary to develop credible assignment results.**

Comment: The scope of work is acceptable when it meets or exceeds:

- the expectations of parties who are regularly intended users for similar assignments; and

- what an appraiser's peers' actions would be in performing the same or a similar assignment.

Determining the scope of work is an ongoing process in an assignment. Information or conditions discovered during the course of an assignment might cause the appraiser to reconsider the scope of work.

An appraiser must be prepared to support the decision to exclude any investigation, information, method, or technique that would appear relevant to the client, another intended user, or the appraiser's peers.

**An appraiser must not allow assignment conditions to limit the scope of work to such a degree that the assignment results are not credible in the context of the intended use.**

Comment: If relevant information is not available because of assignment conditions that limit research opportunities (such as conditions that place limitations on inspection or information gathering), an appraiser must withdraw from the assignment unless the appraiser can:

- modify the assignment conditions to expand the scope of work to include gathering the information; or

- use an extraordinary assumption about such information, if credible assignment results can still be developed.

**An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.**

## DISCLOSURE OBLIGATIONS

**The report must contain sufficient information to allow the client and other intended users to understand the scope of work performed. The information disclosed must be appropriate for the intended use of the assignment results.**

Comment: Proper disclosure is required because clients and other intended users rely on the assignment results. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

The appraiser has broad flexibility and significant responsibility in the level of detail and manner of disclosing the scope of work in the appraisal report or appraisal review report. The appraiser may, but is not required to, consolidate the disclosure in a specific section or sections of the report, or use a particular label, heading or subheading. An appraiser may choose to disclose the scope of work as necessary throughout the report.

---

20    In USPAP GRM, see Advisory Opinion 29, *An Acceptable Scope of Work*.

GO BACK

Case 3:21-cv-00232-DWD    Document 279-5    Filed 03/05/25    Page 28 of 439    Page ID #15267

# JURISDICTIONAL EXCEPTION RULE

**If any applicable law or regulation precludes compliance with any part of USPAP, only that part of USPAP becomes void for that assignment.**

Comment: When compliance with USPAP is required by federal law or regulation, no part of USPAP can be voided by a law or regulation of a state or local jurisdiction.

**In an assignment involving a jurisdictional exception, an appraiser must:**

1. **identify the law or regulation that precludes compliance with USPAP;**
2. **comply with that law or regulation;**
3. **clearly and conspicuously disclose in the report the part of USPAP that is voided by that law or regulation; and**
4. **cite in the report the law or regulation requiring this exception to USPAP compliance.**

Comment: The JURISDICTIONAL EXCEPTION RULE provides a saving or severability clause intended to preserve the balance of USPAP if compliance with one or more of its parts is precluded by the law or regulation of a jurisdiction. When an appraiser properly follows this Rule in disregarding a part of USPAP, there is no violation of USPAP.

Law includes constitutions, legislative and court-made law, and administrative rules and ordinances. Regulations include rules or orders having legal force, issued by an administrative agency. Instructions from a client or attorney do not establish a jurisdictional exception.

# STANDARD 1:
## REAL PROPERTY APPRAISAL, DEVELOPMENT

**In developing a real property appraisal, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal.**

Comment: The requirements set forth in STANDARD 1 follow the appraisal development process in the order of topics addressed and can be used by appraisers and the users of appraisal services as a checklist.

### STANDARDS RULE 1-1, GENERAL DEVELOPMENT REQUIREMENTS

**In developing a real property appraisal, an appraiser must:**

**(a) be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal;**

Comment: This Standards Rule recognizes that the principle of change continues to affect the manner in which appraisers perform appraisal services. Changes and developments in the real estate field have a substantial impact on the appraisal profession. Important changes in the cost and manner of constructing and marketing commercial, industrial, and residential real estate as well as changes in the legal framework in which real property rights and interests are created, conveyed, and mortgaged have resulted in corresponding changes in appraisal theory and practice. Social change has also had an effect on appraisal theory and practice. To keep abreast of these changes and developments, the appraisal profession is constantly reviewing and revising appraisal methods and techniques and devising new methods and techniques to meet new circumstances. For this reason, it is not sufficient for appraisers to simply maintain the skills and the knowledge they possess when they become appraisers. Each appraiser must continuously improve his or her skills to remain proficient in real property appraisal.

**(b) not commit a substantial error of omission or commission that significantly affects an appraisal; and**

Comment: An appraiser must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

**(c) not render appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affects the credibility of those results.**

### STANDARDS RULE 1-2, PROBLEM IDENTIFICATION

**In developing a real property appraisal, an appraiser must:**

**(a) identify the client and other intended users;[21]**

**(b) identify the intended use of the appraiser's opinions and conclusions;[22]**

Comment: An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.[23]

---

21    In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

22    In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

23    In USPAP GRM, see Advisory Opinion 19, *Unacceptable Assignment Conditions in Real Property Appraisal Assignments.*

---

18    GO BACK    USPAP 2024 Edition
© The Appraisal Foundation

**(c) identify the type and definition of value, and ascertain whether the value is to be the most probable price:**

    **(i)    in terms of cash; or**

    **(ii)   in terms of financial arrangements equivalent to cash; or**

    **(iii)  in other precisely defined terms; and**

    **(iv)  if the opinion of value is to be based on non-market financing or financing with unusual conditions or incentives, identify the terms of such financing and any influences on value;**

           <u>Comment</u>: When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion.[24]

**(d) identify the effective date of the appraiser's opinions and conclusions;[25]**

**(e) identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal,[26] including:**

    **(i)    its location and physical, legal, and economic characteristics;**

    **(ii)   the real property interest to be valued;**

    **(iii)  any personal property, trade fixtures, or intangible assets that are not real property but are included in the appraisal;**

    **(iv)  any known easements, restrictions, encumbrances, leases, reservations, covenants, contracts, declarations, special assessments, ordinances, or other items of a similar nature; and**

    **(v)   whether the subject property is a fractional interest, physical segment, or partial holding;**

<u>Comment on (i)–(v)</u>: An appraiser may use any combination of a property inspection, documents, such as a legal description, address, map reference, copy of a survey or map, property sketch, photographs, or other information to identify the relevant characteristics of the subject property.

When appraising proposed improvements, an appraiser must examine and have available for future examination, plans, specifications, or other documentation sufficient to identify the extent and character of the proposed improvements.[27]

Identification of the real property interest appraised can be based on a review of copies or summaries of title descriptions or other documents that set forth any known encumbrances.

An appraiser is not required to value the whole when the subject of the appraisal is a fractional interest, a physical segment, or a partial holding.

**(f) identify any extraordinary assumptions necessary in the assignment. An extraordinary assumption may be used in an assignment only if:**

    **(i)    the extraordinary assumption is required to properly develop credible opinions and conclusions;**

    **(ii)   the appraiser has a reasonable basis for the extraordinary assumption; and**

    **(iii)  use of the extraordinary assumption results in a credible analysis;**

---

24   In USPAP GRM, see <u>Advisory Opinion 35</u>, *Reasonable Exposure Time in Real and Personal Property Opinions of Value*.

25   In USPAP GRM, see <u>Advisory Opinion 34</u>, *Retrospective and Prospective Value Opinions.*

26   In USPAP GRM, see <u>Advisory Opinion 2</u>, *Inspection of Subject Property,* and <u>Advisory Opinion 23</u>, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment.*

27   In USPAP GRM, see <u>Advisory Opinion 17</u>, *Appraisals of Real Property with Proposed Improvements.*

**GO BACK**

**(g)** identify any hypothetical conditions necessary in the assignment. A hypothetical condition may be used in an assignment only if:

    **(i)** use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and

    **(ii)** use of the hypothetical condition results in a credible analysis; and

**(h)** determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.[28]

## STANDARDS RULE 1-3, MARKET ANALYSIS, AND HIGHEST AND BEST USE

**When necessary for credible assignment results in developing a market value opinion, an appraiser must:**

**(a)** identify and analyze the effect on use and value of:

    **(i)** existing land use regulations;

    **(ii)** reasonably probable modifications of such land use regulations;

    **(iii)** economic supply and demand;

    **(iv)** the physical adaptability of the real estate; and

    **(v)** market area trends; and

    <u>Comment</u>: An appraiser must avoid making an unsupported assumption or premise about market area trends, effective age, and remaining life.

**(b)** develop an opinion of the highest and best use of the real estate.

    <u>Comment</u>: An appraiser must analyze the relevant legal, physical, and economic factors to the extent necessary to support the appraiser's highest and best use conclusion(s).

## STANDARDS RULE 1-4, APPROACHES TO VALUE

**In developing a real property appraisal, an appraiser must collect, verify, and analyze all information necessary for credible assignment results.**

**(a)** When a sales comparison approach is necessary for credible assignment results, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion.

**(b)** When a cost approach is necessary for credible assignment results, an appraiser must:

    **(i)** develop an opinion of site value by an appropriate appraisal method or technique;

    **(ii)** analyze such comparable cost data as are available to estimate the cost new of the improvements (if any); and

    **(iii)** analyze such comparable data as are available to estimate the difference between the cost new and the present worth of the improvements (depreciation).

**(c)** When an income approach is necessary for credible assignment results, an appraiser must:

    **(i)** analyze such comparable rental data as are available and/or the potential earnings capacity of the property to estimate the gross income potential of the property;

    **(ii)** analyze such comparable operating expense data as are available to estimate the operating expenses of the property;

---

[28] In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.

---

GO BACK

(iii)    analyze such comparable data as are available to estimate rates of capitalization and/or rates of discount;

(iv)    base projections of future rent and/or income potential and expenses on reasonably clear and appropriate evidence;[29] and

(v)    weigh historical information and trends, current supply and demand factors affecting such trends, and anticipated events such as competition from developments under construction, when developing income and expense statements and cash flow projections.

(d) When developing an opinion of the value of a leased fee estate or a leasehold estate, an appraiser must analyze the effect on value, if any, of the terms and conditions of the lease(s).

(e) When analyzing the assemblage of the various estates or component parts of a property, an appraiser must analyze the effect on value, if any, of the assemblage. An appraiser must refrain from valuing the whole solely by adding together the individual values of the various estates or component parts.

Comment: Although the value of the whole may be equal to the sum of the separate estates or parts, it also may be greater than or less than the sum of such estates or parts.

(f)    When analyzing anticipated public or private improvements, located on or off the site, an appraiser must analyze the effect on value, if any, of such anticipated improvements to the extent they are reflected in market actions.[30]

(g) When personal property, trade fixtures, or intangible assets are included in the appraisal, the appraiser must analyze the effect on value of such non-real property assets.

Comment: When the scope of work includes an appraisal of personal property, trade fixtures, or intangible assets, competency in personal property appraisal (see STANDARD 7) or business appraisal (see STANDARD 9) is required.

## STANDARDS RULE 1-5, SUBJECT SALES AND OTHER TRANSFERS, SALE AGREEMENTS, OPTIONS, AND LISTINGS

When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:[31]

(a) analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal; and

(b) analyze all sales and other transfers of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.[32]

## STANDARDS RULE 1-6, RECONCILIATION

In developing a real property appraisal, an appraiser must:

(a) reconcile the quality and quantity of data available and analyzed within the approaches used; and

(b) reconcile the applicability and relevance of the approaches, methods and techniques used to arrive at the value conclusion(s).

---

29   In USPAP GRM, see Advisory Opinion 33, *Discounted Cash Flow Analysis.*
30   In USPAP GRM, see Advisory Opinion 17, *Appraisals of Real Property with Proposed Improvements.*
31   In USPAP GRM, see Advisory Opinion 24, *Normal Course of Business.*
32   In USPAP GRM, see Advisory Opinion 1, *Sales History.*

GO BACK

# STANDARD 2:
## REAL PROPERTY APPRAISAL, REPORTING

**In reporting the results of a real property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

Comment: STANDARD 2 addresses the content and level of information required in a report that communicates the results of a real property appraisal.

STANDARD 2 does not dictate the form, format, or style of real property appraisal reports. The substantive content of a report determines its compliance.

## STANDARDS RULE 2-1, GENERAL REPORTING REQUIREMENTS

**Each written or oral real property appraisal report must:**

**(a) clearly and accurately set forth the appraisal in a manner that will not be misleading;**

**(b) contain sufficient information to enable the intended user(s) of the appraisal to understand the report properly; and**

**(c) clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.**

## STANDARDS RULE 2-2, CONTENT OF A REAL PROPERTY APPRAISAL REPORT

**Each written real property appraisal report must be prepared under one of the following options and prominently state which option is used: Appraisal Report or Restricted Appraisal Report.[33]**

**An appraiser may use any other label in addition to, but not in place of, the labels set forth in this Standards Rule for the type of report provided. The use of additional labels such as analysis, consultation, evaluation, study, or valuation does not exempt an appraiser from adherence to USPAP.**

**The report content and level of information requirements in this Standards Rule are minimums for each type of report. An appraiser must supplement a report form, when necessary, to ensure that any intended user of the appraisal is not misled and that the report complies with the applicable content requirements.**

**(a) The content of an Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:**

**(i)   state the identity of the client; or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile;[34]**

Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

**(ii)  state the identity of any other intended user(s) by name or type;**

Comment: A party receiving a copy of an Appraisal Report in order to satisfy disclosure requirements does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

---

33   In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 38, *Content of an Appraisal Report and Restricted Appraisal Report.*

34   In USPAP GRM, see Advisory Opinion 25, *Clarification of the Client in a Federally Related Transaction,* and Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.* Also applicable to Standards Rules 2-2(a)(ii) and (iii).

---

**GO BACK**

(iii)    state the intended use of the appraisal;

(iv)    contain information, documents, and/or exhibits sufficient to identify the real estate involved in the appraisal, including the physical, legal, and economic property characteristics relevant to the assignment;[35]

(v)    state the real property interest appraised;

(vi)    state the type and definition of value and cite the source of the definition;

Comment: Stating the definition of value also requires any comments needed to clearly indicate to the intended users how the definition is being applied.

When reporting an opinion of value, state whether the opinion is:

• in terms of cash or of financing terms equivalent to cash; or

• based on non-market financing or financing with unusual conditions or incentives.

When an opinion of value is based on non-market financing terms or financing with unusual conditions or incentives, summarize the terms of such financing and explain any influences on value.

When an opinion of reasonable exposure time has been developed in compliance with Standards Rule 1-2(c), the opinion must be stated in the report.[36]

(vii)    state the effective date of the appraisal and the date of the report;[37]

(viii)    summarize the scope of work used to develop the appraisal;[38]

Comment: Summarizing the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

(ix)    summarize the extent of any significant real property appraisal assistance;

(x)    provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by:

(1)    summarizing the appraisal methods and techniques employed;

(2)    stating the reasons for excluding the sales comparison, cost, or income approach(es) if any have not been developed;

(3)    summarizing the results of analyzing the subject sales and other transfers, agreements of sale, options, and listings in accordance with Standards Rule 1-5;[39]

Comment: If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

(4)    stating the value opinion(s) and conclusion(s); and

(5)    summarizing the information analyzed and the reasoning that supports the analyses, opinions, and conclusions, including reconciliation of the data and approaches;

(xi)    state the use of the real estate existing as of the effective date and the use of the real estate reflected in the appraisal;

---

35    In USPAP GRM, see Advisory Opinion 2, Inspection of Subject Property, and Advisory Opinion 23, Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment.

36    In USPAP GRM, see Advisory Opinion 35, Reasonable Exposure Time in Real and Personal Property Opinions of Value.

37    In USPAP GRM, see Advisory Opinion 34, Retrospective and Prospective Value Opinions.

38    In USPAP GRM, see Advisory Opinion 28, Scope of Work Decision, Performance, and Disclosure, and Advisory Opinion 29, An Acceptable Scope of Work.

39    In USPAP GRM, see Advisory Opinion 1, Sales History.

GO BACK

**(xii)** when an opinion of highest and best use was developed by the appraiser, state that opinion and summarize the support and rationale for that opinion;

**(xiii)** clearly and conspicuously:

- state all extraordinary assumptions and hypothetical conditions; and
- state that their use might have affected the assignment results; and

**(xiv)** include a signed certification in accordance with Standards Rule 2-3.

**(b)** The content of a Restricted Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:

**(i)** state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile;[40]

Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

**(ii)** state the identity of any other intended user(s) by name;[41]

Comment: A Restricted Appraisal Report may be provided when the client is the only intended user; or, when additional intended users are identified by name.

A party receiving a copy of a Restricted Appraisal Report in order to satisfy disclosure requirements does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

**(iii)** clearly and conspicuously state a restriction that limits use of the report to the client and the named intended user(s);

**(iv)** clearly and conspicuously warn that the report may not contain supporting rationale for all of the opinions and conclusions set forth in the report;

**(v)** state the intended use of the appraisal;

**(vi)** state information sufficient to identify the real estate involved in the appraisal;

**(vii)** state the real property interest appraised;

**(viii)** state the type of value and cite the source of its definition;

Comment: When an opinion of reasonable exposure time has been developed in compliance with Standards Rule 1-2(c), the opinion must be stated in the report.[42]

**(ix)** state the effective date of the appraisal and the date of the report;[43]

**(x)** state the scope of work used to develop the appraisal;[44]

Comment: Stating the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

**(xi)** state the extent of any significant real property appraisal assistance;[45]

---

40  In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.
41  In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.
42  In USPAP GRM, see Advisory Opinion 35, *Reasonable Exposure Time in Real Property and Personal Property Opinions of Value*.
43  In USPAP GRM, see Advisory Opinion 34, *Retrospective and Prospective Value*.
44  In USPAP GRM, see Advisory Opinions 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.
45  In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser*.

---

24

**GO BACK**

(xii) provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by:

    (1) stating the appraisal methods and techniques employed;

    (2) stating the reasons for excluding the sales comparison, cost, or income approach(es) if any have not been developed;

    (3) summarizing the results of analyzing the subject sales and other transfers, agreements of sale, options, and listings in accordance with Standards Rule 1-5;[46] and

       Comment: If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

    (4) stating the value opinion(s) and conclusion(s);

       Comment: An appraiser must maintain a workfile that includes sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 and for the appraiser to produce an Appraisal Report.

(xiii) state the use of the real estate existing as of the effective date and the use of the real estate reflected in the appraisal;

(xiv) when an opinion of highest and best use was developed by the appraiser, state that opinion;

(xv) clearly and conspicuously:

    • state all extraordinary assumptions and hypothetical conditions; and

    • state that their use might have affected the assignment results; and

(xvi) include a signed certification in accordance with Standards Rule 2-3.

## STANDARDS RULE 2-3, CERTIFICATION

A signed certification is an integral part of the appraisal report.

(a) The wording of a certification does not have to match the following verbatim, but each of the elements must be addressed:

I certify that, to the best of my knowledge and belief:

— the statements of fact contained in this report are true and correct.

— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

— I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.

— I have performed no (or the specified) services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

— my engagement in this assignment was not contingent upon developing or reporting predetermined results.

---

46   In USPAP GRM, see Advisory Opinion 1, *Sales History*.

— my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.

— I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)[47]

— no one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)[48]

**(b) An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign a certification.**

Comment: In an assignment that includes only assignment results developed by the real property appraiser(s), any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report. In an assignment that includes personal property, business or intangible asset assignment results not developed by the real property appraiser(s), any real property appraiser who signs a certification accepts full responsibility for the real property elements of the certification, for the real property assignment results, and for the real property contents of the appraisal report.

**(c) When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work.**

**(i)   The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent; and**

**(ii)  The signing appraiser must have no reason to doubt that the work of those individuals is credible.**

Comment: Although a certification must contain the names of individuals providing significant real property appraisal assistance, it is not required that the description of the extent of their assistance be located in a certification. This disclosure may be in any part(s) of the report.

**(d) When an assignment requires the use of a certification that does not include all of the certification elements in this Standards Rule, the appraisal report must contain a supplemental certification, which includes the remaining required certification elements.**

## STANDARDS RULE 2-4, ORAL APPRAISAL REPORT

**To the extent that it is both possible and appropriate, an oral real property appraisal report must address the substantive matters set forth in Standards Rule 2-2(a).**

Comment: See the RECORD KEEPING RULE for corresponding requirements.

---

47   In USPAP GRM, see Advisory Opinion 2, *Inspection of Subject Property*.
48   In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser*.

---

GO BACK

# STANDARD 3:
## APPRAISAL REVIEW, DEVELOPMENT

**In developing an appraisal review, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal review.**

Comment: The requirements set forth in STANDARD 3 generally follow the appraisal review development process in the order of topics addressed and can be used by appraisers and the users of appraisal services as a checklist.

In this Standard, the term "reviewer" is used to refer to an appraiser performing an appraisal review.

### STANDARDS RULE 3-1, GENERAL DEVELOPMENT REQUIREMENTS

**In developing an appraisal review, the reviewer must:**

**(a) be aware of, understand, and correctly employ those methods and techniques that are necessary to produce a credible appraisal review;**

Comment: Changes and developments in economics, finance, law, technology, and society can have a substantial impact on the appraisal profession. To keep abreast of these changes and developments, the appraisal profession is constantly reviewing and revising appraisal methods and techniques and devising new methods and techniques to meet new circumstances. Each appraiser must continuously improve his or her skills to remain proficient in appraisal review.

The reviewer must have the knowledge and experience needed to identify and perform the scope of work necessary to produce credible assignment results. Aspects of competency for an appraisal review, depending on the review assignment's scope of work, may include, without limitation, familiarity with the specific type of property or asset, market, geographic area, analytic method, and applicable laws, regulations and guidelines.

**(b) not commit a substantial error of omission or commission that significantly affects an appraisal review; and**

Comment: A reviewer must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

**(c) not render appraisal review services in a careless or negligent manner, such as making a series of errors that, although individually might not significantly affect the results of an appraisal review, in the aggregate affects the credibility of those results.**

### STANDARDS RULE 3-2, PROBLEM IDENTIFICATION

**In developing an appraisal review, the reviewer must:**

**(a) identify the client and other intended users;[49]**

**(b) identify the intended use of the reviewer's opinions and conclusions;[50]**

Comment: A reviewer must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased. A reviewer must not advocate for a client's objectives.

The intended use refers to the use of the reviewer's opinions and conclusions by the client and other intended users; examples include, without limitation, quality control, audit, qualification, or confirmation.

---

49   In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

50   In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

---

**(c) identify the purpose of the appraisal review, including whether the assignment includes the development of the reviewer's own opinion of value or review opinion related to the work under review;**

Comment: The purpose of an appraisal review assignment relates to the reviewer's objective; examples include, without limitation, to determine if the results of the work under review are credible for the intended user's intended use, or to evaluate compliance with relevant USPAP requirements, client requirements, or applicable regulations.

In the review of an appraisal assignment, the reviewer may provide an opinion of value for the property that is the subject of the work under review.[51]

In the review of an appraisal review assignment, the reviewer may provide an opinion of quality of the work that is the subject of the appraisal review assignment.

**(d) identify the work under review and the characteristics of that work which are relevant to the intended use and purpose of the appraisal review, including:**

> **(i)  any ownership interest in the property that is the subject of the work under review;**
>
> **(ii)  the date of the work under review and the effective date of the opinions or conclusions in the work under review;**
>
> **(iii)  the appraiser(s) who completed the work under review, unless the identity is withheld by the client; and**
>
> **(iv)  the physical, legal, and economic characteristics of the property, properties, property type(s), or market area in the work under review;**

Comment: The subject of an appraisal review assignment may be all or part of a report, a workfile, or a combination of these, and may be related to an appraisal or appraisal review assignment.

**(e) identify any extraordinary assumptions necessary in the review assignment. An extraordinary assumption may be used in an assignment only if:**

> **(i)  the extraordinary assumption is required to properly develop credible opinions and conclusions;**
>
> **(ii)  the reviewer has a reasonable basis for the extraordinary assumption; and**
>
> **(iii)  use of the extraordinary assumption results in a credible analysis;**

**(f) identify any hypothetical conditions necessary in the review assignment. A hypothetical condition may be used in an assignment only if:**

> **(i)  use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and**
>
> **(ii)  use of the hypothetical condition results in a credible analysis; and**

**(g) determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.[52]**

---

[51]  In USPAP GRM, see Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value.*

[52]  In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work.*

---

GO BACK

Comment: Reviewers have broad flexibility and significant responsibility in determining the appropriate scope of work in an appraisal review assignment.

Information that should have been considered by the original appraiser can be used by the reviewer in developing an opinion as to the quality of the work under review.

Information that was not available to the original appraiser in the normal course of business may also be used by the reviewer; however, the reviewer must not use such information in the reviewer's development of an opinion as to the quality of the work under review.

## STANDARDS RULE 3-3, APPRAISAL REVIEW METHODS

**In developing an appraisal review, a reviewer must apply the appraisal review methods and techniques that are necessary for credible assignment results.**

(a) **When necessary for credible assignment results in the review of analyses, opinions, and conclusions, the reviewer must:**

(i) **develop an opinion as to whether the analyses are appropriate within the context of the requirements applicable to that work;**

(ii) **develop an opinion as to whether the opinions and conclusions are credible within the context of the requirements applicable to that work; and**

(iii) **develop the reasons for any disagreement.**

Comment: Consistent with the reviewer's scope of work, the reviewer is required to develop an opinion as to the completeness, accuracy, adequacy, relevance, and reasonableness of the analysis in the work under review, given law, regulations, or intended user requirements applicable to the work under review.

(b) **When necessary for credible assignment results in the review of a report, the reviewer must:**

(i) **develop an opinion as to whether the report is appropriate and not misleading within the context of the requirements applicable to that work; and**

(ii) **develop the reasons for any disagreement.**

Comment: Consistent with the reviewer's scope of work, the reviewer is required to develop an opinion as to the completeness, accuracy, adequacy, relevance, and reasonableness of the report, given law, regulations, or intended user requirements applicable to that work.

(c) **When the assignment includes the reviewer developing his or her own opinion of value or review opinion, the following apply:[53]**

(i) **The requirements of STANDARDS 1, 5, 7, or 9 apply to the reviewer's opinion of value for the property that is the subject of the appraisal review assignment.**

(ii) **The requirements of STANDARD 3 apply to the reviewer's opinion of quality for the work that is the subject of the appraisal review assignment.**

---

[53]   In USPAP GRM, see Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value.*

**GO BACK**

Comment: These requirements apply to:

- The reviewer's own opinion of value when the subject of the review is the product of an appraisal assignment; or
- The reviewer's own opinion regarding the work reviewed by another when the subject of the review is the product of an appraisal review assignment.

These requirements apply whether the reviewer's own opinion:

- concurs with the opinions and conclusions in the work under review; or
- differs from the opinions and conclusions in the work under review.

When the assignment includes the reviewer developing his or her own opinion of value or review opinion, the following apply:

- The reviewer's scope of work in developing his or her own opinion of value or review opinion may be different from that of the work under review.
- The effective date of the reviewer's opinion of value may be the same or different from the effective date of the work under review.
- The reviewer is not required to replicate the steps completed by the original appraiser. Those items in the work under review that the reviewer concludes are credible can be extended to the reviewer's development process on the basis of an extraordinary assumption. Those items not deemed to be credible must be replaced with information or analysis developed in conformance with STANDARD 1, 3, 5, 7, or 9, as applicable, to produce credible assignment results.

**GO BACK**

# STANDARD 4:
## APPRAISAL REVIEW, REPORTING

**In reporting the results of an appraisal review, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

Comment: STANDARD 4 addresses the content and level of information required in a report that communicates the results of an appraisal review. STANDARD 4 does not dictate the form, format, or style of appraisal review reports. The substantive content of an appraisal review report determines its compliance.

## STANDARDS RULE 4-1, GENERAL REPORTING REQUIREMENTS

**Each written or oral appraisal review report must be separate from the work under review and must:**

**(a) clearly and accurately set forth the appraisal review in a manner that will not be misleading;**

**(b) contain sufficient information to enable the intended user(s) of the appraisal review to understand the report properly; and**

**(c) clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.**

## STANDARDS RULE 4-2, CONTENT OF AN APPRAISAL REVIEW REPORT

**The content of an appraisal review report must be appropriate for the intended use of the appraisal review and, at a minimum:**

**(a) state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile; state the identity of any intended user(s) by name or type;[54]**

Comment:  Because the client is an intended user, they must be identified in the review report as such. However, if the client has requested anonymity the reviewer must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

**(b) state the intended use of the appraisal review;**

**(c) state the purpose of the appraisal review;**

**(d) state information sufficient to identify:**

**(i)    the  work under review, including any ownership interest in the property that is the subject of the work under review;**

**(ii)   the date of the work under review;**

**(iii)  the effective date of the opinions or conclusions in the work under review; and**

**(iv)   the appraiser(s) who completed the work under review, or if the client has withheld their identity, state that the identity of the appraiser(s) has been withheld by the client;**

**(e) state the date of the appraisal review report;**

**(f)  clearly and conspicuously:**

- **state all extraordinary assumptions and hypothetical conditions; and**

- **state that their use might have affected the assignment results.**

---

54   In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

---

**(g) state the scope of work used to develop the appraisal review;[55]**

Comment: Stating the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

**(h) when any portion of the work involves significant appraisal or appraisal review assistance, state the extent of that assistance;[56]**

**(i) state the reviewer's opinions and conclusions about the work under review, including the reasons for any disagreement;**

Comment: The report must provide sufficient information to enable the client and intended users to understand the rationale for the reviewer's opinions and conclusions.

**(j) when the scope of work includes the reviewer's development of an opinion of value or review opinion related to the work under review, the reviewer must:[57]**

**(i)   state which information, analyses, opinions, and conclusions in the work under review that the reviewer accepted as credible and used in developing the reviewer's opinions and conclusions;**

**(ii)  if applicable, state the effective date of the reviewer's opinion of value;**

**(iii) at a minimum, summarize any additional information relied on and the reasoning for the reviewer's opinion of value or review opinion related to the work under review; and**

Comment: The reviewer may include his or her own opinion of value or review opinion related to the work under review within the appraisal review report itself without preparing a separate report. However, data and analyses provided by the reviewer to support a different opinion or conclusion must match, at a minimum, except for the certification requirements, the reporting requirements for an:

- Appraisal Report for a real property appraisal (Standards Rule 2-2(a));
- Appraisal Report for a personal property appraisal (Standards Rule 8-2(a));
- Appraisal Review Report for an appraisal review (Standards Rule 4-2);
- Mass Appraisal Report for mass appraisal (Standards Rule 6-2); and
- Appraisal Report for business appraisal (Standards Rule 10-2(a)).

**(k) include a signed certification in accordance with Standards Rule 4-3.**

## STANDARDS RULE 4-3, CERTIFICATION

**A signed certification is an integral part of the appraisal review report.**

**(a) The wording of a certification does not have to match the following verbatim, but each of the elements must be addressed:**

**I certify that, to the best of my knowledge and belief:**

**— the statements of fact contained in this report are true and correct.**

**— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.**

**— I have no (or the specified) present or prospective interest in the property that is the subject of the work under review and no (or the specified) personal interest with respect to the parties involved.**

---

55  In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work.*

56  In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

57  In USPAP GRM, see Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value.*

GO BACK

— I have performed no (or the specified) services, as an appraiser or in any other capacity, regarding the property that is the subject of the work under review within the three-year period immediately preceding the agreement to perform this assignment.

— I have no bias with respect to the property that is the subject of the work under review or to the parties involved with this assignment.

— my engagement in this assignment was not contingent upon developing or reporting predetermined results.

— my compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in this review or from its use.

— my compensation for completing this assignment is not contingent upon the development or reporting of predetermined assignment results or assignment results that favors the cause of the client, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal review.

— my analyses, opinions, and conclusions were developed and this review report was prepared in conformity with the *Uniform Standards of Professional Appraisal Practice*.

— I have (or have not) made a personal inspection of the subject of the work under review. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the subject of the work under review.) (For reviews of a business or intangible asset appraisal assignment, the inspection portion of the certification is not applicable.)[58]

— no one provided significant appraisal or appraisal review assistance to the person signing this certification. (If there are exceptions, the name of each individual providing appraisal or appraisal review assistance must be stated.)[59]

(b) A reviewer who signs any part of the appraisal review report, including a letter of transmittal, must also sign a certification.

Comment: Any reviewer who signs a certification accepts responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal review report.

Appraisal review is distinctly different from the cosigning activity addressed in Standards Rules 2-3, 6-3, 8-3, and 10-3. To avoid confusion between these activities, a reviewer performing an appraisal review must not sign the work under review unless he or she intends to accept responsibility as a cosigner of that work.

(c) When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work.

(i) The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent; and

(ii) The signing appraiser must have no reason to doubt that the work of those individuals is credible.

Comment: Although a certification must contain the names of individuals providing significant real property appraisal assistance, it is not required that the description of the extent of their assistance be located in a certification. This disclosure may be in any part(s) of the report.

---

58    In USPAP GRM, see Advisory Opinion 2, *Inspection of Subject Property*.
59    In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser*.

---

USPAP 2024 Edition
© The Appraisal Foundation

**GO BACK**

33

**(d)** If the assignment requires the use of a certification that does not include all of the certification elements in this Standards Rule, the appraisal review report must contain a supplemental certification, which includes the remaining required certification elements.

## STANDARDS RULE 4-4, ORAL APPRAISAL REVIEW REPORT

**To the extent that it is both possible and appropriate, an oral appraisal review report must address the substantive matters set forth in Standards Rule 4-2.**

Comment: See the RECORD KEEPING RULE for corresponding requirements.

# STANDARD 5:
## MASS APPRAISAL, DEVELOPMENT

**In developing a mass appraisal, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible mass appraisal.**

> Comment: STANDARD 5 applies to all mass appraisals of real or personal property regardless of the purpose or use of such appraisals.[60] The reporting and jurisdictional exceptions applicable to public mass appraisals prepared for ad valorem taxation do not apply to mass appraisals prepared for other purposes.

> A mass appraisal includes:

> 1) identifying properties to be appraised;
> 2) defining market area of consistent behavior that applies to properties;
> 3) identifying characteristics (supply and demand) that affect the creation of value in that market area;
> 4) developing a model structure that reflects the relationship among the characteristics affecting value in the market area;
> 5) calibrating the model structure to determine the contribution of the individual characteristics affecting value;
> 6) applying the conclusions reflected in the model to the characteristics of the property(ies) being appraised; and
> 7) reviewing the mass appraisal results.

> The JURISDICTIONAL EXCEPTION RULE may apply to several sections of STANDARD 5 because ad valorem tax administration is subject to various state, county, and municipal laws.

## STANDARDS RULE 5-1, GENERAL DEVELOPMENT REQUIREMENTS
**In developing a mass appraisal, an appraiser must:**

**(a) be aware of, understand, and correctly employ those recognized methods and techniques necessary to produce a credible mass appraisal;**

> Comment: Mass appraisal provides for a systematic approach and uniform application of appraisal methods and techniques to obtain estimates of value that allow for statistical review and analysis of results.

> This requirement recognizes that the principle of change continues to affect the manner in which appraisers perform mass appraisals. Changes and developments in the real property and personal property fields have a substantial impact on the appraisal profession.

> To keep abreast of these changes and developments, the appraisal profession is constantly reviewing and revising appraisal methods and techniques and devising new methods and techniques to meet new circumstances. For this reason it is not sufficient for appraisers to simply maintain the skills and the knowledge they possess when they become appraisers. Each appraiser must continuously improve his or her skills to remain proficient in mass appraisal.

---

60   In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 32, *Ad Valorem Property Tax Appraisal and Mass Appraisal Assignments*.

---

**(b) not commit a substantial error of omission or commission that significantly affects a mass appraisal; and**

<u>Comment</u>: An appraiser must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

**(c) not render a mass appraisal in a careless or negligent manner.**

## STANDARDS RULE 5-2, PROBLEM IDENTIFICATION

**In developing a mass appraisal, an appraiser must:**

**(a) identify the client and other intended users;[61]**

<u>Comment</u>: In ad valorem mass appraisal, the assessor, or party responsible for certification of the assessment or tax roll is required to apply the relevant law or statute and identify the clients and other intended users (if any).

**(b) identify the intended use of the appraisal;[62]**

<u>Comment</u>: An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.

**(c) identify the type and definition of value, and ascertain whether the value is to be the most probable price:**

    **(i)   in terms of cash; or**

    **(ii)   in terms of financial arrangements equivalent to cash; or**

    **(iii)   in such other terms as may be precisely defined; and**

    **(iv)   if the opinion of value is to be based on non-market financing or financing with unusual conditions or incentives, identify the terms of such financing and any influences on value;**

**(d) identify the effective date of the appraisal;**

**(e) identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the properties that are relevant to the type and definition of value and intended use,[63] including:**

    **(i)   the group with which a property is identified according to similar market influence;**

    **(ii)   the appropriate market area and time frame relative to the property being valued; and**

    **(iii)   their location and physical, legal, and economic characteristics;**

<u>Comment</u>: The properties must be identified in general terms, and each individual property in the universe must be identified, with the information on its identity stored or referenced in its property record.

When appraising proposed improvements, an appraiser must examine and have available for future examination, plans, specifications, or other documentation sufficient to identify the extent and character of the proposed improvements.[64]

Ordinarily, proposed improvements are not appraised for ad valorem tax purposes. Appraisers, however, are sometimes asked to provide opinions of value of proposed improvements so that developers can estimate future property tax burdens. Sometimes units in condominiums and planned unit developments are sold with an interest in un-built community property, the pro rata value of which, if any, must be considered in the analysis of sales data.

---

61   In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

62   In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

63   In USPAP GRM, see Advisory Opinion 34, *Retrospective and Prospective Value Opinions.*

64   In USPAP GRM, see Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment*, if applicable.

---

36            **GO BACK**          

**STANDARD 5**

(f) identify the characteristics of the market that are relevant to the purpose and intended use of the mass appraisal including:

(i) location of the market area;

(ii) physical, legal, and economic characteristics;

(iii) time frame of market activity; and

(iv) property interests reflected in the market;

(g) in appraising real property or personal property:

(i) identify the appropriate market area and time frame relative to the property being valued;[65]

(ii) when the subject is real property, identify and consider any personal property, trade fixtures, or intangible assets that are not real property but are included in the appraisal;

(iii) when the subject is personal property, identify and consider any real property or intangible assets that are not personal property but are included in the appraisal;

(iv) identify known easements, restrictions, encumbrances, leases, reservations, covenants, contracts, declarations, special assessments, ordinances, or other items of similar nature; and

(v) identify and analyze whether an appraised fractional interest, physical segment or partial holding contributes pro rata to the value of the whole;

Comment: The above requirements do not obligate the appraiser to value the whole when the subject of the appraisal is a fractional interest, physical segment, or a partial holding. However, if the value of the whole is not identified, the appraisal must clearly reflect that the value of the property being appraised cannot be used to develop the value opinion of the whole by mathematical extension.

(h) analyze the relevant economic conditions at the time of the valuation, including market acceptability of the property and supply, demand, scarcity, or rarity;

(i) identify any extraordinary assumptions necessary in the assignment. An extraordinary assumption may be used in an assignment only if:

(i) the extraordinary assumption is required to properly develop credible opinions and conclusions;

(ii) the appraiser has a reasonable basis for the extraordinary assumption; and

(iii) use of the extraordinary assumption results in a credible analysis;

(j) identify any hypothetical conditions necessary in the assignment. A hypothetical condition may be used in an assignment only if:

(i) use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and

(ii) use of the hypothetical condition results in a credible analysis; and

(k) determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.[66]

---

65    In USPAP GRM, see Advisory Opinion 17, *Appraisals of Real Property with Proposed Improvements,* if applicable.

66    In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure,* and Advisory Opinion 29, *An Acceptable Scope of Work.*

## STANDARDS RULE 5-3, PROPERTY'S USE AND APPROPRIATE MARKET

**When necessary for credible assignment results, an appraiser must:**

**(a) in appraising real property, identify and analyze the effect on use and value of the following factors:**

    **(i)    existing land use regulations;**

    **(ii)   reasonably probable modifications of such regulations;**

    **(iii)  economic supply and demand;**

    **(iv)  the physical adaptability of the real estate;**

    **(v)   neighborhood trends; and**

    **(vi)  highest and best use of the real estate; and**

Comment: This requirement sets forth a list of factors that affect use and value. In considering neighborhood trends, an appraiser must avoid stereotyped or biased assumptions relating to race, age, color, gender, or national origin or an assumption that race, ethnic, or religious homogeneity is necessary to maximize value in a neighborhood. Further, an appraiser must avoid making an unsupported assumption or premise about neighborhood decline, effective age, and remaining life. In considering highest and best use, an appraiser must develop the concept to the extent required for a proper solution to the appraisal problem.

**(b) in appraising personal property, identify and analyze the effects on use and value of industry trends, value-in-use, and trade level of personal property. Where applicable, analyze the current use and alternative uses to encompass what is profitable, legal, and physically possible, as relevant to the type and definition of value and intended use of the appraisal. Personal property has several measurable marketplaces; therefore, the appraiser must define and analyze the appropriate market consistent with the type and definition of value.**

## STANDARDS RULE 5-4, APPRAISAL METHODS

**In developing a mass appraisal, an appraiser must:**

**(a) identify the appropriate procedures and market information required to perform the appraisal, including all physical, functional, and external market factors as they may affect the appraisal;**

Comment: Such efforts customarily include the development of standardized data collection forms, procedures, and training materials that are used uniformly on the universe of properties under consideration.

**(b) employ recognized techniques for specifying property valuation models; and**

Comment: The formal development of a model in a statement or equation is called model specification. Mass appraisers must develop mathematical models that, with reasonable accuracy, represent the relationship between property value and supply and demand factors, as represented by quantitative and qualitative property characteristics. The models may be specified using the cost, sales comparison, or income approaches to value. The specification format may be tabular, mathematical, linear, nonlinear, or any other structure suitable for representing the observable property characteristics. Appropriate approaches must be used in appraising a class of properties. The concept of recognized techniques applies to both real and personal property valuation models.

**(c) employ recognized techniques for calibrating mass appraisal models.**

Comment: Calibration refers to the process of analyzing sets of property and market data to determine the specific parameters of a model. The table entries in a cost manual are examples of calibrated parameters, as well as the coefficients in a linear or nonlinear model. Models must be calibrated using recognized techniques, including, but not limited to, multiple linear regression, nonlinear regression, and adaptive estimation.

GO BACK

## STANDARDS RULE 5-5, APPROACHES TO VALUE

**In developing a mass appraisal, when necessary for credible assignment results, an appraiser must:**

**(a) collect, verify, and analyze such data as are necessary and appropriate to develop:**

    **(i)   the cost new of the improvements;**

    **(ii)  depreciation;**

    **(iii) value of the land by sales of comparable properties;**

    **(iv) value of the property by sales of comparable properties;**

    **(v)  value by capitalization of income or potential earnings (i.e., rentals, expenses, interest rates, capitalization rates, and vacancy data);**

    Comment: This Standards Rule requires appraisers engaged in mass appraisal to take reasonable steps to ensure that the quantity and quality of the factual data that are collected are sufficient to produce credible mass appraisals.

**(b) base estimates of capitalization rates and projections of future rental rates and/or potential earnings capacity, expenses, interest rates, and vacancy rates on reasonable and appropriate evidence;[67]**

    Comment: This requirement calls for an appraiser, in developing income and expense statements and cash flow projections, to weigh historical information and trends, current market factors affecting such trends, and reasonably anticipated events, such as competition from developments either planned or under construction.

**(c) identify and, as applicable, analyze terms and conditions of any available leases; and**

**(d) identify the need for and extent of any physical inspection.[68]**

## STANDARDS RULE 5-6, CALIBRATED MASS APPRAISAL MODEL APPLICATION

**When necessary for credible assignment results in applying a calibrated mass appraisal model an appraiser must:**

**(a) value improved parcels by recognized methods or techniques based on the cost approach, the sales comparison approach, and income approach;**

**(b) value sites by recognized methods or techniques; such techniques include but are not limited to the sales comparison approach, allocation method, abstraction method, capitalization of ground rent, and land residual technique;**

**(c) when developing the value of a leased fee estate or a leasehold estate, analyze the effect on value, if any, of the terms and conditions of the lease;**

    Comment: In ad valorem taxation the appraiser may be required by rules or law to appraise the property as if in fee simple, as though unencumbered by existing leases. In such cases, market rent would be used in the appraisal, ignoring the effect of the individual, actual contract rents.

**(d) analyze the effect on value, if any, of the assemblage of the various parcels, divided interests, or component parts of a property; the value of the whole must not be developed by adding together the individual values of the various parcels, divided interests, or component parts; and**

    Comment: Although the value of the whole may be equal to the sum of the separate estates or parts, it also may be greater than or less than the sum of such estates or parts.

---

67   In USPAP GRM, see Advisory Opinion 33, *Discounted Cash Flow Analysis.*

68   In USPAP GRM, see Advisory Opinion 2, *Inspection of Subject Property.*

---

**(e) when analyzing anticipated public or private improvements, located on or off the site, analyze the effect on value, if any, of such anticipated improvements to the extent they are reflected in market actions.**

## STANDARDS RULE 5-7, RECONCILIATION

**In developing a mass appraisal an appraiser must:**

**(a) reconcile the quality and quantity of data available and analyzed within the approaches used and the applicability and relevance of the approaches, methods and techniques used; and**

**(b) employ recognized mass appraisal testing procedures and techniques to ensure that standards of accuracy are maintained.**

Comment: It is implicit in mass appraisal that, even when properly specified and calibrated mass appraisal models are used, some individual value conclusions will not meet standards of reasonableness, consistency, and accuracy. However, appraisers engaged in mass appraisal have a professional responsibility to ensure that, on an overall basis, models produce value conclusions that meet attainable standards of accuracy. This responsibility requires appraisers to evaluate the performance of models, using techniques that may include but are not limited to, goodness-of-fit statistics, and model performance statistics such as appraisal-to-sale ratio studies, evaluation of hold-out samples, or analysis of residuals.

**GO BACK**

# STANDARD 6:
## MASS APPRAISAL, REPORTING

In reporting the results of a mass appraisal, an appraiser must communicate each analysis, opinion, and conclusion in writing and in a manner that is not misleading.

> Comment: STANDARD 6 addresses the content and level of information required in a report that communicates the results of a mass appraisal.

> STANDARD 6 does not dictate the form, format, or style of mass appraisal reports. The substantive content of a report determines its compliance.

### STANDARDS RULE 6-1, GENERAL REPORTING REQUIREMENTS

Each written report of a mass appraisal must:

(a) clearly and accurately set forth the appraisal in a manner that will not be misleading;

(b) contain sufficient information to enable the intended user(s) of the appraisal to understand the report properly; and

> Comment: Documentation for a mass appraisal for ad valorem taxation may be in the form of (1) property records, (2) sales ratios and other statistical studies, (3) appraisal manuals and documentation, (4) market studies, (5) model building documentation, (6) regulations, (7) statutes, and (8) other acceptable forms.

(c) clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.

### STANDARDS RULE 6-2, CONTENT OF A MASS APPRAISAL REPORT

The content of a mass appraisal report must be appropriate for the intended use of the appraisal and, at a minimum:

(a) state the identity of the client, or if the client has requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile; state the identity of any intended user(s) by name or type;[69]

> Comment:  Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

(b) state the intended use of the appraisal;[70]

(c) disclose any assumptions or limiting conditions that result in deviation from recognized methods and techniques or that affect analyses, opinions, and conclusions;

(d) state the effective date of the appraisal and the date of the report;

> Comment: In ad valorem taxation the effective date of the appraisal may be prescribed by law. If no effective date is prescribed by law, the effective date of the appraisal, if not stated, is presumed to be contemporaneous with the data and appraisal conclusions.[71]

---

69    In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

70    In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

71    In USPAP GRM, see Advisory Opinion 34, *Retrospective and Prospective Value Opinions.*

---

**(e) state the type and definition of value and cite the source of the definition;**

Comment: Stating the type and definition of value also requires any comments needed to clearly indicate to intended users how the definition is being applied.

When reporting an opinion of value, state whether the opinion is:

- In terms of cash or of financing terms equivalent to cash; or
- Based on non-market financing with unusual conditions or incentives.

When an opinion of value is based on non-market financing terms or financing with unusual conditions or incentives, summarize the terms of such financing and any influences on value.

**(f) state the properties appraised including the property rights; and, when the property rights to be appraised are specified in a statute or court ruling, reference the law;**

Comment: The report documents the sources for location, describing and listing the property. When applicable, include references to legal descriptions, addresses, parcel identifiers, photos, and building sketches. In mass appraisal this information is often included in property records.

**(g) summarize the scope of work used to develop the appraisal,[72] and explain the exclusion of the sales comparison approach, cost approach, or income approach;**

Comment: Summarizing the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

**(h) when any portion of the work involves significant mass appraisal assistance, summarize the extent of that assistance;[73]**

**(i) summarize and support the model specification(s) considered, data requirements, and the model(s) chosen; provide sufficient information to enable the client and intended users to have confidence that the process and procedures used conform to accepted methods and result in credible value conclusions; and include a summary of the rationale for each model, the calibration techniques to be used, and the performance measures to be used;**

Comment: In the case of mass appraisal for ad valorem taxation, stability and accuracy are important to the credibility of value opinions.

**(j) summarize the procedure for collecting, validating, and reporting data; and summarize the sources of data and the data collection and validation processes;**

Comment: Reference to detailed data collection manuals or electronic records must be made, as appropriate, including where they may be found for inspection.

**(k) summarize calibration methods considered and chosen, including the mathematical form of the final model(s); summarize how value conclusions were reviewed; and, if necessary, state the availability and location of individual value conclusions;**

**(l) when an opinion of highest and best use, or the appropriate market or market level was developed, summarize how that opinion was determined, and reference case law, statute, or public policy that describes highest and best use requirements;**

Comment: When actual use is the requirement, the report must summarize how use-value opinions were developed. The appraiser's reasoning in support of the highest and best use opinion must be provided in the depth and detail required by its significance to the appraisal.

---

72    In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.

73    In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser*.

---

GO BACK

(m) identify the appraisal performance tests used and the performance measures attained;

(n) summarize the reconciliation performed, in accordance with Standards Rule 5-7; and

(o) include a signed certification in accordance with Standards Rule 6-3.

## STANDARDS RULE 6-3, CERTIFICATION

A signed certification is an integral part of the appraisal report.

(a) The wording of a certification does not have to match the following verbatim, but each of the elements must be addressed:

I certify that, to the best of my knowledge and belief:

— the statements of fact contained in this report are true and correct.

— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

— I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.

— I have performed no (or the specified) services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

— my engagement in this assignment was not contingent upon developing or reporting predetermined results.

— my compensation for completing this assignment is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.

— I have (or have not) made a personal inspection of the properties that are the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)[74]

— no one provided significant mass appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant mass appraisal assistance must be stated.)[75]

Comment: The above certification is not intended to disturb an elected or appointed assessor's work plans or oaths of office.

---

74    In USPAP GRM, see Advisory Opinion 2, *Inspection of Subject Property.*

75    In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

GO BACK

**(b) An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign a certification.**

Comment: In an assignment that includes only assignment results developed by the real property appraiser, any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report. In an assignment that includes personal property assignment results not developed by the real property appraiser(s), any real property appraiser who signs a certification accepts full responsibility for the real property elements of the certification, for the real property assignment results, and for the real property contents of the appraisal report.

In an assignment that includes only assignment results developed by the personal property appraiser(s), any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report. In an assignment that includes real property assignment results not developed by the personal property appraiser(s), any personal property appraiser who signs a certification accepts full responsibility for the personal property elements of the certification, for the personal property assignment results, and for the personal property contents of the appraisal report.

**(c) When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work.**

**(i)    The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent; and**

**(ii)   The signing appraiser must have no reason to doubt that the work of those individuals is credible.**

Comment: Although a certification must contain the names of individuals providing significant real property appraisal assistance, it is not required that the description of the extent of their assistance be located in a certification. This disclosure may be in any part(s) of the report.

GO BACK

# STANDARD 7:
## PERSONAL PROPERTY APPRAISAL, DEVELOPMENT

**In developing a personal property appraisal, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal.**

> Comment: The requirements set forth in STANDARD 7 follow the appraisal development process in the order of topics addressed and can be used by appraisers and the users of appraisal services as a checklist.

## STANDARDS RULE 7-1, GENERAL DEVELOPMENT REQUIREMENTS

**In developing a personal property appraisal, an appraiser must:**

**(a) be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal;**

> Comment: This Standards Rule recognizes that the principle of change continues to affect the manner in which appraisers perform appraisal services. Changes and developments in personal property practice have a substantial impact on the appraisal profession. Important changes in the cost and manner of acquiring, producing, and marketing personal property and changes in the legal framework in which appraisers perform their assignments result in the need for corresponding changes in personal property appraisal theory and practice. Social change has also had an effect on appraisal theory and practice. The appraisal profession responds to changing circumstances with revised and new appraisal methods and techniques. Therefore, it is not sufficient for appraisers to maintain the skills and the knowledge they possess when they become appraisers. Each appraiser must improve and update his or her skills and knowledge to remain proficient in the appraisal of personal property.

**(b) not commit a substantial error of omission or commission that significantly affects an appraisal; and**

> Comment: An appraiser must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

**(c) not render appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affect the credibility of those results.**

## STANDARDS RULE 7-2, PROBLEM IDENTIFICATION

**In developing a personal property appraisal, an appraiser must:**

**(a) identify the client and other intended users;[76]**

**(b) identify the intended use of the appraiser's opinions and conclusions;**

> Comment: An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.

**(c) identify the type and definition of value; and ascertain whether the value is to be:**

**(i)   in terms of cash; or**

**(ii)  in terms of financial arrangements equivalent to cash; or**

**(iii) in other precisely defined terms; and**

---

[76] In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

---

USPAP 2024 Edition
© The Appraisal Foundation

**GO BACK**

45

**(iv)** **if the opinion of value is to be based on non-market financing or financing with unusual conditions or incentives, identify the terms of such financing and any influences on value;**

Comment: When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion.[77]

**(d) identify the effective date of the appraiser's opinions and conclusions;[78]**

**(e) identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including:**

**(i)** **sufficient characteristics to establish the identity of the item including the method of identification;**

**(ii)** **sufficient characteristics to establish the relative quality of the item (and its component parts, where applicable) within its type;**

**(iii)** **all other physical and economic characteristics with a material effect on value;**

Comment: Some examples of physical and economic characteristics include condition, style, size, quality, manufacturer, author, materials, origin, age, provenance, alterations, restorations, and obsolescence. The type of property, the type and definition of value, and intended use of the appraisal determine which characteristics have a material effect on value.

**(iv)** **the ownership interest to be valued;**

**(v)** **any known restrictions, encumbrances, leases, covenants, contracts, declarations, special assessments, ordinances, or other items of a similar nature if relevant to the assignment; and**

**(vi)** **any real property or intangible assets that are not personal property but which are included in the appraisal;**

Comment on (i)–(vi): An appraiser may use any combination of a property inspection, documents, or other information to identify the relevant characteristics of the subject property.

When appraising proposed modifications, an appraiser must examine and have available for future examination, documentation sufficient to identify the extent and character of the proposed modifications.

An appraiser may not be required to value the whole when the subject of the appraisal is a fractional interest, a physical segment, or a partial holding.

**(f) identify any extraordinary assumptions necessary in the assignment. An extraordinary assumption may be used in an assignment only if:**

**(i)** **the extraordinary assumption is required to properly develop credible opinions and conclusions;**

**(ii)** **the appraiser has a reasonable basis for the extraordinary assumption; and**

**(iii)** **use of the extraordinary assumption results in a credible analysis;**

**(g) identify any hypothetical conditions necessary in the assignment. A hypothetical condition may be used in an assignment only if:**

**(i)** **use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and**

**(ii)** **use of the hypothetical condition results in a credible analysis; and**

**(h) determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.**

---

77   In USPAP GRM, see Advisory Opinion 35, *Reasonable Exposure Time in Real Property and Personal Property Opinions of Value.*

78   In USPAP GRM, see Advisory Opinion 34, Retrospective and Prospective Value.

---

46

**GO BACK**

USPAP 2024 Edition
© The Appraisal Foundation

## STANDARD RULE 7-3, PROPERTY'S USE, MARKET, AND RELEVANT ECONOMIC CONDITIONS

**In developing a personal property appraisal, when necessary for credible assignment results, an appraiser must:**

(a) **analyze the property's current use and alternative uses as relevant to the type and definition of value and intended use of the appraisal;**

Comment: In the context of personal property, value can be a function of the choice of the appropriate market or, in some cases, market level for the type of item, the type and definition of value, and the intended use of the appraisal.

The appraiser must consider the various uses of the property when viable alternative uses exist and when those alternative uses may result in a different value.

(b) **define and analyze the appropriate market consistent with the type and definition of value; and**

Comment: The appraiser must recognize that there are distinct levels of trade (measurable marketplaces), and each may generate its own data. For example, a property may have a different value at a wholesale level of trade, retail level of trade, or under various auction conditions. Therefore, the appraiser must analyze the subject property within the correct market context.

(c) **analyze the relevant economic conditions that exist on the effective date of the valuation, including market acceptability of the property and supply, demand, scarcity or rarity.**

## STANDARDS RULE 7-4, APPROACHES TO VALUE

**In developing a personal property appraisal, an appraiser must collect, verify, and analyze all information necessary for credible assignment results.**

(a) **When a sales comparison approach is necessary for credible assignment results, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion.**

(b) **When a cost approach is necessary for credible assignment results, an appraiser must:**

    (i) **analyze such comparable cost data as are available to estimate the cost new of the property; and**

    (ii) **analyze such comparable data as are available to estimate the difference between cost new and the present worth of the property (depreciation).**

(c) **When an income approach is necessary for credible assignment results, an appraiser must:**

    (i) **analyze such comparable data as are available to estimate the market income of the property;**

    (ii) **analyze such comparable operating expense data as are available to estimate the operating expenses of the property;**

    (iii) **analyze such comparable data as are available to estimate rates of capitalization and/or rates of discount; and**

    (iv) **base projections of future income and expenses on reasonably clear and appropriate evidence.**

       Comment: An appraiser must, in developing income and expense statements and cash flow projections, weigh historical information and trends, current supply and demand factors affecting such trends, and competition.

(d) **When developing an opinion of the value of a lease, leased, or encumbered property, an appraiser must analyze the effect on value, if any, of the terms and conditions of the lease(s) or encumbrances.**

(e) **When appraising multiple objects, the appraiser must consider the significance of the value of the individual assets to the assignment results. Those objects which are more significant to the assignment results should be the focus of the analysis and analyzed in appropriate detail.**

Comment: A group of objects may have a mix of high and low value items. Those objects that are more significant to the assignment results should be subject to a greater and appropriate depth of analysis.

**(f) When analyzing the assemblage of the various component parts of a property, an appraiser must analyze the effect on value, if any, of the assemblage. An appraiser must refrain from valuing the whole solely by adding together the individual values of the various component parts.**

Comment: Although the value of the whole may be equal to the sum of the separate parts, it also may be greater than or less than the sum of such parts.

**(g) When analyzing anticipated modifications to the subject property, an appraiser must analyze the effect on value, if any, of such modifications to the extent they are reflected in market actions.**

**(h) When real property or intangible assets are included in the appraisal, the appraiser must analyze the effect on value of such non-personal property assets.**

Comment: When the scope of work includes an appraisal of real property or intangible assets, competency in real property appraisal (see STANDARD 1) or business appraisal (see STANDARD 9) is required. In addition, competency in other types of personal property outside of the appraiser's specialty area may be necessary (see the COMPETENCY RULE).

## STANDARDS RULE 7-5, SUBJECT SALES AND OTHER TRANSFERS, SALE AGREEMENTS, OPTIONS, AND LISTINGS

**When necessary for credible assignment results, an appraiser must, if such information is available to the appraiser in the normal course of business:[79]**

**(a) analyze all agreements of sale, validated offers or third-party offers to sell, options, and listings of the subject property current as of the effective date of the appraisal if warranted by the intended use of the appraisal; and**

**(b) analyze all prior sales and other transfers of the subject property that occurred within a reasonable and applicable time period if relevant given the intended use of the appraisal and property type.**

## STANDARDS RULE 7-6, RECONCILIATION

**In developing a personal property appraisal, an appraiser must:**

**(a) reconcile the quality and quantity of data available and analyzed within the approach or approaches used; and**

**(b) reconcile the applicability and relevance of the approach or approaches, methods and techniques used to arrive at the value conclusion(s).**

---

79   In USPAP GRM, see Advisory Opinion 24, *Normal Course of Business*.

USPAP 2024 Edition
© The Appraisal Foundation

# STANDARD 8:
## PERSONAL PROPERTY APPRAISAL, REPORTING

**In reporting the results of a personal property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

> Comment: STANDARD 8 addresses the content and level of information required in a report that communicates the results of a personal property appraisal.

> STANDARD 8 does not dictate the form, format, or style of personal property appraisal reports. The substantive content of a report determines its compliance.

### STANDARDS RULE 8-1, GENERAL REPORTING REQUIREMENTS

**Each written or oral personal property appraisal report must:**

(a) **clearly and accurately set forth the appraisal in a manner that will not be misleading;**

(b) **contain sufficient information to enable the intended user(s) of the appraisal to understand the report properly; and**

(c) **clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.**

### STANDARDS RULE 8-2, CONTENT OF A PERSONAL PROPERTY APPRAISAL REPORT

**Each written personal property appraisal report must be prepared under one of the following options and prominently state which option is used: Appraisal Report or Restricted Appraisal Report.[80]**

**An appraiser may use any other label in addition to, but not in place of, the labels set forth in this Standards Rule for the type of report provided. The use of additional labels such as analysis, consultation, evaluation, study, or valuation does not exempt an appraiser from adherence to USPAP.**

**The report content and level of information requirements in this Standards Rule are minimums for each type of report.**

(a) **The content of an Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:**

  (i) **state the identity of the client, or if the client requested anonymity, state that the client's identity is withheld at the client's request but is retained in the appraiser's workfile;[81]**

  > Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

  (ii) **state the identity of any other intended user(s) by name or type;[82]**

  > Comment: A party receiving a copy of an Appraisal Report in order to satisfy disclosure requirements does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

  (iii) **state the intended use of the appraisal;[83]**

---

80  In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 38, *Content of an Appraisal Report and Restricted Appraisal Report.*

81  In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

82  In USPAP GRM, see Advisory Opinion 35, *Reasonable Exposure Time in Real and Personal Property Opinions of Value.*

83  In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

---

USPAP 2024 Edition
© The Appraisal Foundation

**GO BACK**

49

**(iv)   summarize information sufficient to identify the property involved in the appraisal, including the physical and economic property characteristics relevant to the assignment;**

**(v)   state the property interest appraised;**

**(vi)   state the type and definition of value and cite the source of the definition;**

Comment: Stating the definition of value also requires any comments needed to clearly indicate to the intended users how the definition is being applied.

When reporting an opinion of value, state whether the opinion is:

- in terms of cash or of financing terms equivalent to cash; or
- based on non-market financing or financing with unusual conditions or incentives.

When an opinion of value is based on non-market financing terms or financing with unusual conditions or incentives, summarize the terms of such financing and any influences on value.

When an opinion of reasonable exposure time has been developed in compliance with Standards Rule 7-2(c), the opinion must be stated in the report.[84]

**(vii)   state the effective date of the appraisal and the date of the report;[85]**

**(viii)   summarize the scope of work used to develop the appraisal;[86]**

Comment: Summarizing the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

**(ix)   summarize the extent of any significant personal property appraisal assistance and, in an assignment involving appraisers with expertise in different specialties (e.g., antiques, fine art, or machinery and equipment), disclose the role of each appraiser signing the certification;[87]**

**(x)   provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 7 by:**

**(1)   summarizing the appraisal methods or techniques employed;**

**(2)   stating the reasons for excluding the sales comparison, cost, or income approach(es) if any have not been developed;**

**(3)   summarizing the results of analyzing the subject property's sales and other transfers, agreements of sale, options, and listings when, in accordance with Standards Rule 7-5, it was necessary for credible assignment results and if such information was available to the appraiser in the normal course of business;[88]**

Comment: If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

**(4)   stating the value opinion(s) and conclusion(s); and**

**(5)   summarizing the information analyzed and the reasoning that supports the analyses, opinions, and conclusions, including reconciliation of the data and approaches;**

---

84   In USPAP GRM, see Advisory Opinion 35, *Reasonable Exposure Time in Real and Personal Property Opinions of Value*.

85   In USPAP GRM, see Advisory Opinion 34, *Retrospective and Prospective Value Opinions*.

86   In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure,* and Advisory Opinion 29, An Acceptable Scope of Work.

87   In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser*.

88   In USPAP GRM, see Advisory Opinion 24, *Normal Course of Business*.

GO BACK

(xi)    **state, as appropriate to the class of personal property involved, the use of the property existing as of the effective date and the use of the property reflected in the appraisal;**

    Comment: In the context of personal property, value can be a function of the current and alternative use of the subject property, the choice of the appropriate market or market level for the type of item, the type and definition of value, and intended use of the report.

(xii)    **when, in compliance with Standards Rule 7-3, an opinion of the appropriate market or market level was developed by the appraiser, state that opinion and summarize the support and rationale for that opinion;**

(xiii)    **clearly and conspicuously:**

- **state all extraordinary assumptions and hypothetical conditions; and**
- **state that their use might have affected the assignment results; and**

(xiv)    **include a signed certification in accordance with Standards Rule 8-3.**

(b) **The content of a Restricted Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:**

(i)    **state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile;[89]**

    Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

(ii)    **state the identity of any other intended user(s) by name;[90]**

    Comment: A Restricted Appraisal Report may be provided when the client is the only intended user; or, when additional intended users are identified by name.

    A party receiving a copy of a Restricted Appraisal Report in order to satisfy disclosure requirements does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

(iii)    **clearly and conspicuously state a restriction that limits use of the report to the client and the named intended user(s);**

(iv)    **clearly and conspicuously warn that the report may not contain supporting rationale for all of the opinions and conclusions set forth in the report;**

(v)    **state the intended use of the appraisal;**

(vi)    **state information sufficient to identify the property involved in the appraisal;**

(vii)    **state the property interest appraised;**

(viii)    **state the type of value and cite the source of its definition;**

    Comment: When an opinion of reasonable exposure time has been developed in compliance with Standards Rule 7-2(c), the opinion must be stated in the report.[91]

(ix)    **state the effective date of the appraisal and the date of the report;[92]**

---

89   In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*. Also applicable to Standards Rules 8-2(b)(ii) and (v).

90   In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

91   In USPAP GRM, see Advisory Opinion 35, *Reasonable Exposure Time in Real and Personal Property Opinions of Value*.

92   In USPAP GRM, see Advisory Opinion 34, *Retrospective and Prospective Value Opinions*.

(x)    **state the scope of work used to develop the appraisal;**[93]

    Comment: Stating the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

(xi)    **state the extent of any significant personal property appraisal assistance;**[94]

(xii)    **provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 7 by:**

    (1)    **stating the appraisal methods and techniques employed;**

    (2)    **stating the reasons for excluding the sales comparison, cost, or income approach(es) if any have not been developed;**

    (3)    **summarizing the results of analyzing the subject property's sales and other transfers, agreements of sale, options, and listings when, in accordance with Standards Rule 7-5, it was necessary for credible assignment results and if such information was available to the appraiser in the normal course of business; and**

        Comment: If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.

    (4)    **stating the value opinion(s) and conclusion(s);**

        Comment: An appraiser must maintain a workfile that includes sufficient information to indicate that the appraiser complied with the requirements of STANDARD 7 and for the appraiser to produce an Appraisal Report.

(xiii)    **state, as appropriate to the class of personal property involved, the use of the property existing as of the effective date and the use of the property reflected in the appraisal;**

    Comment: In the context of personal property, value can be a function of the current and alternative use of the subject property, the choice of the appropriate market or market level for the type of item, the type and definition of value, and intended use of the report.

(xiv)    **when an opinion of the appropriate market or market level was developed by the appraiser, state that opinion;**

(xv)    **clearly and conspicuously:**

    • **state all extraordinary assumptions and hypothetical conditions; and**

    • **state that their use might have affected the assignment results; and**

(xvi)    **include a signed certification in accordance with Standards Rule 8-3.**

---

93    In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure,* and Advisory Opinion 29, *An Acceptable Scope of Work*.

94    In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More Than One Appraiser.*

---

**GO BACK**

## STANDARDS RULE 8-3, CERTIFICATION

A signed certification is an integral part of the appraisal report.

(a) The wording of a certification does not have to match the following verbatim, but each of the elements must be addressed:

I certify that, to the best of my knowledge and belief:

— the statements of fact contained in this report are true and correct.

— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

— I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.

— I have performed no (or the specified) services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

— my engagement in this assignment was not contingent upon developing or reporting predetermined results.

— my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.

— I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)[95]

— no one provided significant personal property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant personal property appraisal assistance must be stated.)[96]

(b) An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign a certification.

Comment: In an assignment that includes only assignment results developed by the personal property appraiser(s) from the same personal property specialty, any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report. In an assignment involving appraisers with expertise in different specialties (e.g., antiques, fine art, or machinery and equipment), an appraiser who signs a certification may accept responsibility only for the elements of the certification, assignment results, and report contents specific to the appraiser's specialty. The role of each appraiser signing a certification must be disclosed in the report.

---

95   In USPAP GRM, see Advisory Opinion 2, *Inspection of Subject Property.*
96   In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

---

GO BACK

In an assignment that includes real property, business or intangible asset assignment results not developed by the personal property appraiser(s), any personal property appraiser who signs a certification accepts full responsibility for the personal property elements of the certification, for the personal property assignment results, and for the personal property contents of the appraisal report.

**(c) When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work.**

> **(i)    The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent; and**

> **(ii)    The signing appraiser must have no reason to doubt that the work of those individuals is credible.**

> Comment: Although a certification must contain the names of individuals providing significant real property appraisal assistance, it is not required that the description of the extent of their assistance be located in a certification. This disclosure may be in any part(s) of the report.

## STANDARDS RULE 8-4, ORAL APPRAISAL REPORT

**To the extent that it is both possible and appropriate, an oral personal property appraisal report must address the substantive matters set forth in Standards Rule 8-2(a).**

> Comment: See the RECORD KEEPING RULE for corresponding requirements.

GO BACK

# STANDARD 9:
## BUSINESS APPRAISAL, DEVELOPMENT

**In developing an appraisal of an interest in a business enterprise or intangible asset, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete the research and analyses necessary to produce a credible appraisal.**

### STANDARDS RULE 9-1, GENERAL DEVELOPMENT REQUIREMENTS

**In developing an appraisal of an interest in a business enterprise or intangible asset, an appraiser must:**

**(a) be aware of, understand, and correctly employ those recognized approaches, methods and procedures that are necessary to produce a credible appraisal;**

Comment: Changes and developments in the economy and in investment theory have a substantial impact on the business and intangible asset appraisal profession. Important changes in the financial arena, securities regulation, financial reporting requirements, and law may result in corresponding changes in appraisal theory and practice.

**(b) not commit a substantial error of omission or commission that significantly affects an appraisal; and**

Comment: An appraiser must use sufficient care to avoid errors that would significantly affect his or her opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

**(c) not render appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affect the credibility of those results.**

### STANDARDS RULE 9-2, PROBLEM IDENTIFICATION

**In developing an appraisal of an interest in a business enterprise or intangible asset, an appraiser must:**

**(a) identify the client and other intended users;[97]**

**(b) identify the intended use of the appraiser's opinions and conclusions;[98]**

Comment: An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.

**(c) identify the standard (type) and definition of value and the premise of value;**

**(d) identify the effective date of the appraisal;**

**(e) identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the subject property that are relevant to the standard (type) and definition of value and intended use of the appraisal, including:**

**(i)    the subject business enterprise or intangible asset, if applicable;**

**(ii)   the interest in the business enterprise, equity, asset, or liability to be valued; and the attributes of the interest being appraised, including the rights and benefits of ownership;**

Comment: The interest to be valued may represent all ownership rights or a subset of those rights, such as a specific right to use the asset.

---

97   In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

98   In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

---

**GO BACK**

(iii)   all buy-sell and option agreements, investment letter stock restrictions, restrictive corporate charter or partnership agreement clauses, and similar features or factors that may have an influence on value;

(iv)   the extent to which the interest contains elements of ownership control; and

Comment: The elements of control in a given situation may be affected by law, distribution of ownership interests, contractual relationships, and many other factors.

(v)   the extent to which the interest is marketable and/or liquid;

(f)   identify any extraordinary assumptions necessary in the assignment. An extraordinary assumption may be used in an assignment only if:

(i)   the extraordinary assumption is required to properly develop credible opinions and conclusions;

(ii)   the appraiser has a reasonable basis for the extraordinary assumption; and

(iii)   use of the extraordinary assumption results in a credible analysis;

(g)   identify any hypothetical conditions necessary in the assignment. A hypothetical condition may be used in an assignment only if:

(i)   use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and

(ii)   use of the hypothetical condition results in a credible analysis; and

(h)   determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.[99]

## STANDARDS RULE 9-3, PREMISE OF VALUE

**In developing an appraisal of an interest in a business enterprise with the ability to cause liquidation, an appraiser must investigate the possibility that the business enterprise may have a higher value by liquidation of all or part of the enterprise than by continued operation as is. If liquidation of all or part of the enterprise is the indicated premise of value, an appraisal of any real property or personal property to be liquidated may be appropriate.**

Comment: This Standards Rule requires the appraiser to recognize that continued operation of a business is not always the best premise of value because liquidation of all or part of the enterprise may result in a higher value. However, this typically applies only when the business interest being appraised is in a position to cause liquidation. If liquidation of all or part of the enterprise is the appropriate premise of value, the scope of work may include an appraisal of real property or personal property. If so, competency in real property appraisal (STANDARD 1) or personal property appraisal (STANDARD 7) is required.

---

99   In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure,* and Advisory Opinion 29, *An Acceptable Scope of Work.*

GO BACK

## STANDARDS RULE 9-4, APPROACHES TO VALUE

**In developing an appraisal of an interest in a business enterprise or intangible asset, an appraiser must collect and analyze all information necessary for credible assignment results.**

**(a) An appraiser must develop value opinion(s) and conclusion(s) by use of one or more approaches that are necessary for credible assignment results.**

**(b) An appraiser must, when necessary for credible assignment results, analyze the effect on value, if any, of:**

    **(i)   the nature and history of the business enterprise or intangible asset;**

    **(ii)  financial and economic conditions affecting the business enterprise or intangible asset, its industry, and the general economy;**

    **(iii) past results, current operations, and future prospects of the business enterprise;**

    **(iv) past sales and other transfers of capital stock or other ownership interests in the business enterprise or intangible asset being appraised;**

    **(v)  sales and other transfers of capital stock or other ownership interests in similar business enterprises;**

    **(vi) prices, terms, and conditions affecting past sales and other transfers of similar ownership interests in the asset being appraised or a similar asset; and**

    **(vii) economic benefit of tangible and intangible assets.**

    <u>Comment on (i)-(vii)</u>: This Standards Rule directs the appraiser to study the prospective and retrospective aspects of the business enterprise in terms of the economic and industry environment within which it operates.

**(c) An appraiser must, when necessary for credible assignment results, analyze the effect on value, if any, of buy-sell and option agreements, investment letter stock restrictions, restrictive corporate charter or partnership agreement clauses, and similar features or factors that may influence value.**

**(d) An appraiser must, when necessary for credible assignment results, analyze the effect on value, if any, of the extent to which the interest appraised contains elements of ownership control and is marketable and/or liquid. An appraiser must analyze factors such as holding period, interim benefits, and the difficulty of marketing the subject interest.**

    <u>Comment</u>: Equity interests in a business enterprise are not necessarily worth the pro rata share of the business enterprise interest value as a whole. Also, the value of the business enterprise is not necessarily a direct mathematical extension of the value of the fractional interests. The degree of control, marketability and/or liquidity or lack thereof depends on a broad variety of facts and circumstances that must be analyzed when applicable.

## STANDARDS RULE 9-5, RECONCILIATION

**In developing an appraisal of an interest in a business enterprise or intangible asset, an appraiser must:**

**(a) reconcile the quality and quantity of data available and analyzed within the approaches, methods, and procedures used; and**

**(b) reconcile the applicability and relevance of the approaches, methods and procedures used to arrive at the value conclusion(s)**

GO BACK

# STANDARD 10:
## BUSINESS APPRAISAL, REPORTING

**In reporting the results of an appraisal of an interest in a business enterprise or intangible asset, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

Comment: STANDARD 10 addresses the content and level of information required in a report that communicates the results of an appraisal of an interest in a business enterprise or intangible asset developed under STANDARD 9.

STANDARD 10 does not dictate the form, format, or style of business or intangible asset appraisal reports. The substantive content of a report determines its compliance.

## STANDARDS RULE 10-1, GENERAL REPORTING REQUIREMENTS

**Each written or oral appraisal report for an interest in a business enterprise or intangible asset must:**

**(a) clearly and accurately set forth the appraisal in a manner that will not be misleading;**

**(b) contain sufficient information to enable the intended user(s) of the appraisal to understand the report properly; and**

**(c) clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.**

## STANDARDS RULE 10-2, CONTENT OF A BUSINESS APPRAISAL REPORT

**Each written appraisal report for an interest in a business enterprise or intangible asset must be prepared in accordance with one of the following options and prominently state which option is used: Appraisal Report or Restricted Appraisal Report.[100]**

**An appraiser may use any other label in addition to, but not in place of, the labels set forth in this Standards Rule for the type of report provided. The use of additional labels such as analysis, consultation, evaluation, study, or valuation does not exempt an appraiser from adherence to USPAP.**

**The report content and level of information requirements in this Standards Rule are minimums for both types of report.**

**(a) The content of an Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:**

**(i)    state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile;[101]**

Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

**(ii)   state the identity of any other intended user(s) by name or type;[102]**

Comment: A party receiving a copy of an Appraisal Report does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

**(iii)  state the intended use of the appraisal;**

---

100  In *USPAP Guidance and Reference Manual* (USPAP GRM), see Advisory Opinion 38, *Content of an Appraisal Report and Restricted Appraisal Report.*

101  In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

102  In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users.*

---

GO BACK

(iv) **contain information sufficient to identify the business or intangible asset and the interest[103] appraised, including property characteristics relevant to the type and definition of value and intended use of the appraisal;**

(v) **state the extent to which the interest appraised contains elements of ownership control, including the basis for that determination;**

(vi) **state the extent to which the interest appraised lacks elements of marketability and/or liquidity, including the basis for that determination;**

(vii) **state the standard (type) and definition of value and the premise of value and cite the source of the definition;**

> Comment: Stating the definition of value also requires any comments needed to clearly indicate to the intended users how the definition is being applied.

(viii) **state the effective date of the appraisal and the date of the report;**

(ix) **summarize the scope of work used to develop the appraisal;[104]**

> Comment: Summarizing the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

(x) **when any portion of the work involves significant business and/or intangible asset appraisal assistance, summarize the extent of that assistance;[105]**

(xi) **provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 9 by:**

    (1) **summarizing the appraisal procedures followed;**

    (2) **stating the reason(s) for excluding the market, asset-based (cost), or income approach(es) if any have not been developed;**

    (3) **stating the value opinions and conclusions; and**

    (4) **summarizing the information analyzed and the reasoning that supports the analyses, opinions, and conclusions, including reconciliation of the data and approaches;**

(xii) **clearly and conspicuously:**

    • **state all extraordinary assumptions and hypothetical conditions; and**

    • **state that their use might have affected the assignment results; and**

(xiii) **include a signed certification in accordance with Standards Rule 10-3.**

(b) **The content of a Restricted Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:**

(i) **state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile;[106]**

> Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

---

103  In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

104  In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.

105  In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser*.

106  In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

---

**(ii)    state the identity of any other intended user(s) by name;[107]**

Comment: A Restricted Appraisal Report may be provided when the client is the only intended user; or, when additional intended users are identified by name.

A party receiving a copy of a Restricted Appraisal Report does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.

**(iii)   clearly and conspicuously state a restriction that limits use of the report to the client and the named intended user(s);**

**(iv)   clearly and conspicuously warn that the report may not contain supporting rationale for all of the opinions and conclusions set forth in the report;**

**(v)    state the intended use of the appraisal;**

**(vi)   state information sufficient to identify the business or intangible asset and the interest appraised;**

**(vii)  state the extent to which the interest appraised contains elements of ownership control, including the basis for that determination;**

**(viii) state the extent to which the interest appraised lacks elements of marketability and/or liquidity, including the basis for that determination;**

**(ix)   state the standard (type) of value and the premise of value, and cite the source of its definition;**

**(x)    state the effective date of the appraisal and the date of the report;**

**(xi)   state the scope of work used to develop the appraisal;[108]**

Comment: Stating the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.

**(xii)  state the extent of any significant business and/or intangible asset appraisal assistance;**

**(xiii) provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 9 by:**

> **(1)   stating the appraisal procedures followed;**
>
> **(2)   stating the reason(s) for excluding the market, asset-based (cost), or income approach(es) if any have not been developed; and**
>
> **(3)   stating the value opinions and conclusions;**
>
> Comment: An appraiser must maintain a workfile that includes sufficient information to indicate that the appraiser complied with the requirements of STANDARD 9 and for the appraiser to produce an Appraisal Report.

**(xiv) clearly and conspicuously:**

> - **state all extraordinary assumptions and hypothetical conditions; and**
> - **state that their use might have affected the assignment results; and**

**(xv)  include a signed certification in accordance with Standards Rule 10-3.**

---

107   In USPAP GRM, see Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*.

108   In USPAP GRM, see Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, An Acceptable Scope of Work.

---

60

**GO BACK**

## STANDARDS RULE 10-3, CERTIFICATION

A signed certification is an integral part of the appraisal report.

(a) The wording of a certification does not have to match the following verbatim, but each of the elements must be addressed:

I certify that, to the best of my knowledge and belief:

— the statements of fact contained in this report are true and correct.

— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

— I have no (or the specified) present or prospective interest in the property that is the subject of this report, and I have no (or the specified) personal interest with respect to the parties involved.

— I have performed no (or the specified) services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

— my engagement in this assignment was not contingent upon developing or reporting predetermined results.

— my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

— my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice.*

— no one provided significant business and/or intangible asset appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant business and/or intangible asset appraisal assistance must be stated.)[109]

(b) An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign a certification.

Comment: In an assignment that includes only assignment results developed by the business and/or intangible asset appraiser(s), any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report. In an assignment that includes real property or personal property assignment results not developed by the business and/or intangible asset appraiser(s), any business and/or intangible asset appraiser who signs a certification accepts full responsibility for the business and/or intangible asset elements of the certification, for the business and/or intangible asset assignment results, and for the business and/or intangible asset contents of the appraisal report.

(c) When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work.

  (i)   The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent; and

  (ii)  The signing appraiser must have no reason to doubt that the work of those individuals is credible.

---

109  In USPAP GRM, see Advisory Opinion 31, *Assignments Involving More than One Appraiser.*

---

Comment: Although a certification must contain the names of individuals providing significant real property appraisal assistance, it is not required that the description of the extent of their assistance be located in a certification. This disclosure may be in any part(s) of the report.

## STANDARDS RULE 10-4, ORAL APPRAISAL REPORT

**To the extent that it is both possible and appropriate, an oral appraisal report for an interest in a business enterprise or intangible asset must address the substantive matters set forth in Standards Rule 10-2(a).**

Comment: See the RECORD KEEPING RULE for corresponding requirements.

**GO BACK**

# INDEX

**INDEX**

**A**

ad valorem mass appraisal,
    development STANDARD, 35-44.
        *See also* mass appraisal,
        development STANDARD 5.
    applying conclusions reflected in
        the model, 35
    approaches to value, 39
    appropriate market, 36, 37, 38, 42
    calibrated mass appraisal model, 39
    client, 36
    contribution of individual
        characteristics, 35
    cost approach, 39
    effective date of the appraisal, 36
    errors of omission or commission, 36
    extraordinary assumptions, 37
    hypothetical conditions, 37
    intended use, 36
    intended user(s), 36
    jurisdictional exception, 35
    land value, 39
    leases (income approach), 39
    letter of transmittal, 44
    market area identification, 35, 37
    methods and techniques, 35, 40
    negligence, 36
    personal inspection, 43
    personal property, 37
    physical inspection of the property, 39
    problem identification, 36
    produce a credible mass appraisal,
        35
    property identification, 35, 36
    real property, 37
    reconciliation, 40
    relevant characteristics identification,
        36
    relevant economic conditions, 37
    reliable sources of data, 36
    relying on the work of others, 44
    sales comparison approach, 39
    scope of work, 37
    signature, 42
    significant mass appraisal assistance,
        43
    supply and demand, 35
    type and definition of value, 36
    use of the property, 38
    what a mass appraisal includes, 35
ad valorem mass appraisal, reporting,
    41-44. *See also* mass appraisal,
        reporting STANDARD 6.
    assumptions, 41
    calibration methods, 42

certification, 43
client, 41
data collection (procedures), 42
date of report, 41
effective date, 41
extraordinary assumptions, 41
form or format of report, 41
highest and best use, 42
hypothetical conditions, 41
intended use, 41
intended user(s), 41
hypothetical conditions, 41
law, 42
limiting conditions, 41
methods used, 42
misleading (don't be), 41
models used, 42
personal inspection, 43
scope of work, 42
signed certification, 43
significant mass appraisal assistance,
    43
sufficient information, 41
type and definition of value, 42
written report requirement, 41
antidiscrimination 7, 8, 9. *See also*
    nondiscrimination.
appraisal, 3
appraisal practice, 3
    acquiring competency, 13
    being competent, 13
    lack of competency, 14
appraisal review, 3
appraisal review, development
        STANDARD 3, 27-30
    avoid biased assumptions, 38
    avoid stereotyped assumptions, 38
    client, 27
    condominiums, 37
    develop reasons for disagreement,
        29
    developing an opinion, 29
    errors of omission or commission, 27
    estimates of value, 35
    extraordinary assumption, 28
    hypothetical condition, 28
    intended use, 27
    methods and techniques, 27, 29
    negligence, 27
    personal inspection, 43
    prior services, 43
    proposed improvements, 37
    reviewer's own opinion of value,
        29, 30
    scope of work, 28, 29

signature, 43
significant mass appraisal
    assistance, 43
work under review, 28, 29, 30
appraisal review, reporting
        STANDARD 4, 31-34
    assumptions, 31
    certification, 32, 33
    clearly communicating results, 31
    client, 31
    content of appraisal review report, 31
    date of appraisal review report, 31
    electronic copy, 12
    extraordinary assumption, 31
    hypothetical conditions, 31
    intended use, 31
    intended user, 32
    limiting conditions, 31
    misleading (don't be), 31
    oral report, 31, 34
    personal inspection disclosure, 33
    prior services, 43
    purpose of the review, 31
    reasons for disagreement with work
        under review, 32
    reviewer's opinion of value, 32
    scope of work, 32
    signed certification, 32
    significant appraisal assistance, 32
    significant appraisal review
        assistance, 32
    work under review, 31, 32, 33
Appraisal Standards Board, 1, 2
appraiser, 3
appraiser's peers, 3
    and scope of work acceptability, 20
assemblage, 21, 39, 48
assignment, 3
assignment conditions, 3
assignment results, 3

**B**

bias
    in an assignment, 9
    avoid biased assumptions, 38
    certification of having no bias, 25,
        33, 43, 53, 61
    certification of unbiased opinions
        and conclusions, 25, 32, 43,
        53, 61
    and client's objectives, 16, 18, 27,
        36, 45, 55
    definition of, 3
    and intended use, 16, 18, 27, 36,
        45, 55

**INDEX**

protected characteristics, 8

business appraisal, development STANDARD 9, 55-57

approaches to value, 55, 57

attributes being appraised, 55

buy-sell agreements, 56, 57

client, 55

current operations, 57

economic benefit, 57

economic conditions affect, 57

effective date, 55

errors of omission or commission, 55

extraordinary assumption, 56

factors having an influence on value, 56

future prospects, 57

hypothetical condition, 56

intangible asset, 55

intended use, 55

intended user, 55

interest to be valued, 55

liquidity of the interest, 56

marketability of the interest, 56

methods and procedures, 55

nature of the business enterprise, 57

nature of the intangible asset, 57

negligence, 55

ownership control, 57

past results, 57

past sales and other transfers, 57

premise of value, 55, 56

reconciliation, 57

relevant characteristics, 55

reliable sources of information, 55

scope of work, 56

standard (type) and definition of value, 55

business appraisal, reporting STANDARD 10

appraisal procedures, 59

Appraisal Report, 58

assumptions, 58

certification, 61

client, 58, 59

date of report, 59, 60

effective date, 59, 60

extraordinary assumptions, 59, 60

hypothetical conditions, 59, 60

intended use, 58, 60

intended user, 58, 60

limiting conditions, 58

liquidity, 59

oral appraisal report, 58, 62

property characteristics (relevant), 59

report form, format or style, 58

report options, 58

Restricted Appraisal Report, 59-60

scope of work, 59

signed certification, 60, 61

significant business appraisal assistance, 59, 60, 61

significant intangible asset appraisal assistance, 59, 60, 61

standard (type) and definition of value, 59

written appraisal report, 58

business enterprise, 3

business equity, 4

**C**

capital stock, 57

capitalization, 21, 47, 39

cash flow, 21, 39, 47

Civil Rights Act of 1866, 7, 8

client, 4

and confidentiality, 11, 22, 31, 41, 49, 51, 58

identification of, 15, 18, 27, 36, 45, 55

compensation contingencies, 10

disclosed in certifications, 26, 33, 43, 53, 61

competency, 13-14

acquiring competency, 13

and all assignments, 2

in appraisal review, 27

and appraiser's peers, 3

being competent, 13

in business appraisal, 48

in personal property appraisal, 21, 48

in real property appraisal, 48, 56

relevant characteristics, identifying, 15

lack of, 14

COMPETENCY RULE, 13-14

compliance with USPAP

jurisdictional exception, 17

USPAP does not establish, 1

when an appraiser must comply, 1, 2, 7

confidential information, 4

and the client, 11

confidentiality, 11

and the client, 11, 22, 31, 41, 49, 51, 58

Consumer Credit Protection Act, 8

continuously improve skills, 18, 27, 35, 45

cost, 4

cost approach, 20, 39, 42, 47

credible, 4

**D**

depreciation, 20, 39, 47

discount rates, 21, 47

discrimination. See nondiscrimination.

disparate impact, 7

disparate treatment, 7

**E**

easements, 19, 37

effective date, 4

in appraisal review, 28, 30, 31, 32

in business appraisal, 55, 59, 60

in COMPETENCY RULE, 13

in exposure time, 4

in an extraordinary assumption, 4

in a hypothetical condition, 4

in mass appraisal, 41

in personal property appraisal, 46, 47, 48, 50, 51, 52

in real property appraisal, 19, 21, 23, 24, 25

in SCOPE OF WORK RULE, 15

electronic records, 11, 12, 42

encumbrances, 19, 37, 46, 47

Equal Credit Opportunity Act (ECOA), 7

equity interests, 57

errors, 18, 27, 36, 45, 55. *See also* negligence.

exposure time, 4

in personal property appraisal, 46, 50, 51

in real property appraisal, 18, 23, 24

extraordinary assumption, 4

in appraisal review, 28, 30, 31

as an assignment condition, 3, 16

in business appraisal, 56, 58, 59, 60

in mass appraisal, 37, 41

in personal property appraisal, 46, 49, 51, 52

in real property appraisal, 19, 22, 24, 25

in scope of work acceptability, 16

**F**

fair housing, 7

Fair Housing Act (FHAct), 7, 8

feasibility analysis, 4

Federal Housing Administration (FHA), 7, 8

fractional interests, 19, 37, 46, 57

**H**

highest and best use, 20, 24, 25, 38, 42

hypothetical condition, 4

in appraisal review, 28, 29, 31

as an assignment condition, 3, 16

in business appraisal, 56, 58, 59, 60

in mass appraisal, 37, 41

USPAP 2024 Edition
© The Appraisal Foundation

**INDEX**

in personal property appraisal, 46, 49, 51, 52

in real property appraisal, 20, 22, 24, 25

**I**

intangible property (intangible assets), 4

impartiality, 1, 3, 9

improvements, proposed, 19

incentives, financial, 19, 23, 36, 42, 46, 50

independence, 1, 3, 9

inspection (of property), 19, 39, 42, 46

certifications of personal inspection, 26, 33, 43, 53

definition of personal inspection, 5

intended use, 5

intended users, 5

**J**

Jurisdictional Exception Rule, 1, 2, 17, 35

jurisdictional exception, 5

ad valorem taxation, for, 35

as an assignment condition, 3, 16

**L**

leases, 19, 21, 37, 39, 46, 47

legal descriptions, 19, 42

letters of transmittal, 26, 33, 44, 53, 61

limiting conditions, 22, 25, 31, 32, 41, 43, 49, 53, 58, 61

liquidation, 56

liquidity, 57, 59, 60

listings, 21, 23, 25, 42, 48, 50, 52

**M**

maps, 19

market trends, 20, 21, 38, 39, 47

market value, 5

developing an opinion of, 20, 21

marketability, in business appraisal, 57, 59, 60

mass appraisal, 5

mass appraisal, development

STANDARD 5, 35-44

applying conclusions reflected in the model, 35

approaches to value, 39

appropriate market, 36, 37, 38, 42

calibrated mass appraisal model, 39

client, 36

contribution of individual characteristics, 35

cost approach, 39

effective date of the appraisal, 36

errors of omission or commission, 36

extraordinary assumptions, 37

hypothetical conditions, 37

intended use, 36

intended user(s), 36

jurisdictional exception, 35

land value, 39

leases (income approach), 39

letter of transmittal, 44

market area identification, 35, 37

methods and techniques, 35, 40

negligence, 36

personal inspection, 43

personal property, 37

physical inspection of the property, 39

problem identification, 36

produce a credible mass appraisal, 35

property identification, 35, 36

real property, 37

reconciliation, 40

relevant characteristics identification, 36

relevant economic conditions, 37

reliable sources of data, 36

relying on work of others, 44

sales comparison approach, 39

scope of work, 37

signature, 42

significant mass appraisal assistance, 43

supply and demand, 35

type and definition of value, 36

use of the property, 38

what a mass appraisal includes, 35

mass appraisal, reporting

STANDARD 6, 41-44

assumptions, 41

calibration methods, 42

certification, 43

client, 41

data collection (procedures), 42

date of report, 41

effective date, 41

extraordinary assumptions, 41

form or format of report, 41

highest and best use, 42

hypothetical conditions, 41

intended use, 41

intended user(s), 41

hypothetical conditions, 41

law, 42

limiting conditions, 41

methods used, 42

misleading (don't be), 41

models used, 42

personal inspection, 43

scope of work, 42

signed certification, 43

significant mass appraisal assistance, 43

sufficient information, 41

type and definition of value, 42

written report requirement, 41

mass appraisal model, 5

**N**

negligent conduct, 9, 13, 18, 27, 36, 45, 55. *See also errors*.

normal course of business, 21, 29, 48, 50, 52

nondiscrimination, 7

antidiscrimination, 7

Civil Rights Act of 1866, 7, 8

Consumer Credit Protection Act, 8

disparate impact, 7

disparate treatment, 7

Equal Credit Opportunity Act (ECOA), 7

Fair Housing Act (FHAct), 7, 8

laws and regulations, 7, 8

person, definition of, 8

protected classes, characteristics, group, 7, 8

state and local laws, 8

**P**

partial holdings, 19, 37, 46

peer review committee, 11, 12

peers, appraiser's, 16

personal inspection, 5

personal property, 5

personal property appraisal, development, 45-48

alternative uses of subject property, 47

approaches to value, 47

Civil Rights Act of 1866, 8

client, 45

economic conditions, 47

effective date of opinions and conclusions, 46

errors, 45

extraordinary assumption, 46

hypothetical condition, 46

intended use, 45

intended users of, 45

methods and techniques, 45

modifications to subject property, 46, 48

multiple objects, 47

non-personal property items, 48

property characteristics, 46

INDEX

reconciliation, 48
sales and other transfers history, 48
scope of work, 46
type and definition of value, 45
personal property reporting,
        STANDARD 8, 49-54
    Appraisal Report, 49
    certification, 53-54
    client, 49, 50
    dates of the report, 50, 52
    effective date of value, 50, 52
    extraordinary assumption, 51, 52
    hypothetical condition, 51, 52
    intended use, 49, 51
    intended users, 49, 51
    methods and techniques, 50, 52
    oral report, 54
    property characteristics, 50
    property interest appraised, 50, 51
    property use, 51, 52
    report form and format, 49
    report options, 49
    Restricted Appraisal Report, 51
    scope of work, 50, 52
    significant personal property
        appraisal assistance, 50, 52, 53
    state a restriction, 51
    type and definition of value, 50, 51
physical characteristics, 5
physical segment, 19, 37, 46
PREAMBLE, 1-2
price, 5
privacy laws, 11
procurement of assignments, 10
property characteristics, 23, 38, 50, 59
proposed improvements, 19, 36, 37
protected characteristic, 9
public trust, 1, 7
PUDs (planned unit developments), 37

R
rarity, 37, 47
real estate, 5
real property, 5
real property appraisal, development
        STANDARD 1, 18-21
    approaches to value, 20
    client, 18
    effective date, 19
    errors of omission or commission, 18
    extraordinary assumption, 19
    highest and best use, 20
    hypothetical condition, 20
    intended use, 18
    intended user, 18

market analysis, 20
market value, 20, 21
methods and techniques, 18
non-real property items, 21
reconciliation, 21
relevant property characteristics, 19
reliable sources of information, 19
sales history and other transfers, 21
scope of work, 20
subject property, 19
type and definition of value, 19
real property appraisal, reporting
        STANDARD 2
    Appraisal Report, 22
    certification, 25-26
    client, 22, 24
    date of report, 23, 24
    effective date of the appraisal, 23, 24
    extraordinary assumption, 24, 25
    highest and best use, 24, 25
    hypothetical condition, 24, 25
    intended use, 23, 25
    intended user, 22, 25
    methods and techniques, 23, 25
    oral report, 26
    relevant property characteristics, 23
    report form and format, 22
    report options, 22
    Restricted Appraisal Report, 23
    scope of work, 23, 24
    signed certification, 25
    significant real property appraisal
        assistance, 23, 24, 26
    type and definition of value, 23, 24
    workfile, 25
RECORD KEEPING RULE, 1, 2, 9, 12, 26,
    34, 54, 62
redaction, 11
regulatory agencies, state, 11, 12
report, 6
Restricted Appraisal Report, 24-25, 51-
    52, 59-60
retrospective opinions and conclusions,
    13, 57

S
sales comparison approach, 20, 23, 25,
    38, 39, 42, 47, 50, 52
scarcity, 37, 47
scope of work, 6
SCOPE OF WORK RULE, 15-16
services regarding subject property, 10,
    25, 33, 43, 53, 61
sketches, property, 19, 42
signature, 6, 10

signing appraiser, 26, 33, 44, 54, 61
special assessments, 19, 37, 46
state appraiser regulatory agencies,
    11, 12
stock restrictions, 56, 57

T
testimony, 12
trade fixtures, 19, 21, 37
type and definition of value
    business appraisals, 55, 59
    mass appraisals, 36, 38, 42
    personal property appraisals, 45,
        46, 47, 50, 51, 52
    real property appraisals, 19, 23
    in SCOPE OF WORK RULE, 15

U
USPAP
    compliance by agreement, 1
    compliance by choice, 1
    compliance by law, 1
    compliance by regulation, 1
    which assignments must comply, 2
    who must comply, 2

V
vacancy data, 39
valuation service, 6
value, 6
value-in-use appraisals, 38
value opinion
    and compensation arrangement,
        10, 26
    business appraisal, 57, 59, 60, 61
    market value opinion, 20, 21
    mass appraisal, 37, 42, 43
    personal property appraisal, 46, 50,
        52, 53
    real property appraisal, 23, 25
    and reasonable exposure time, 19, 46
    use-value opinion, 42

W
workfile, 6
    appraisal review, as part of, 28
    client identity, 22, 24, 31, 41, 49, 51,
        58, 59
    real property appraisal, 25
    in RECORD KEEPING RULE, 12
    sufficient information to show
        compliance, 25, 52, 60

## PAST APPRAISAL STANDARDS BOARD OFFICERS AND MEMBERS

**1989 Board Members**
Charles B. Akerson – Chair
John J. Leary – Vice Chair
Sherwood Darington
Daniel A. Dinote, Jr.
John L. Gadd

**1990 Board Members John**
J. Leary – Chair Sherwood
Darington – Vice Chair
Daniel A. Dinote
Jr. John L. Gadd
Charles B. Akerson

**1991 Board Members John**
J. Leary – Chair
Sherwood Darington –
    Vice Chair
Daniel A. Dinote, Jr.
John L. Gadd
Charles B. Akerson

**1992 Board Members John**
J. Leary – Chair
Sherwood Darington –
    Vice Chair
Daniel A. Dinote, Jr.
John L. Gadd
Ritch LeGrand

**1993 Board Members**
Ritch LeGrand – Chair
Sherwood Darington –
    Vice Chair
Daniel A. Dinote, Jr.
John L. Gadd
John J. Leary

**1994 Board Members**
Sherwood Darington – Chair
Daniel A. Dinote, Jr. –
    Vice Chair
Tim Leberman
John J. Leary Ritch LeGrand

**1995 Board Members**
Sherwood Darington – Chair
Tim Leberman – Vice Chair
Daniel A. Dinote, Jr.
W. David Snook
Laurie Van Court

**1996 Board Members**
W. David Snook – Chair
Laurie Van Court – Vice Chair
Stephanie Coleman
Tim Leberman

**1997 Board Members**
W. David Snook – Chair
Laurie Van Court – Vice Chair
Stephanie Coleman
Kenneth J. Kaiser
Tim Leberman

**1998 Board Members**
Tim Leberman – Chair Kenneth
J. Kaiser – Vice Chair
Stephanie Coleman
Yale Kramer
W. David Snook
Laurie Van Court

**1999 Board Members**
Kenneth J. Kaiser – Chair
Tim Leberman – Vice Chair
Yale Kramer
Lawrence E. Ofner
W. David Snook
Laurie Van Court

**2000 Board Members**
Kenneth J. Kaiser – Chair
Yale Kramer
Lawrence E. Ofner
W. David Snook
Richard A. Southern
Laurie Van Court
*No Vice Chair

**2001 Board Members**
Kenneth J. Kaiser – Chair
Richard A. Southern –
    Vice Chair
Thomas O. Jackson
Carla G. Glass Lawrence E.
Ofner Danny K. Wiley

**2002 Board Members**
Danny K. Wiley – Chair
Lawrence E. Ofner – Vice Chair
Carla G. Glass
Thomas O. Jackson
Kenneth J. Kaiser
Richard A. Southern

**2003 Board Members**
Danny K. Wiley – Chair
Lawrence E. Ofner – Vice Chair
Gregory J. Accetta
Carla G. Glass
Paula K. Konikoff
Dawn M. Molitor-Gennrich

**2004 Board Members Danny**
K. Wiley – Chair
Carla G. Glass – Vice Chair
Gregory J. Accetta
Paula K. Konikoff
Dawn M. Molitor-Gennrich
Lawrence E. Ofner

**2005 Board Members**
Carla G. Glass – Chair
Gregory J. Accetta – Vice Chair
James D. Cannon
Paula K. Konikoff
Dawn M. Molitor-Gennrich
Danny K. Wiley

**2006 Board Members**
Gregory J. Accetta – Chair
Paula K. Konikoff – Vice Chair
James D. Cannon
Carla G. Glass
Dawn M. Molitor-Gennrich
William J. Pastuszek, Jr.
Danny K. Wiley

**2007 Board Members**
Gregory J. Accetta – Chair
Noreen Dornenburg –
    Vice Chair
Paula K. Konikoff
Dawn M. Molitor-Gennrich
William J. Pastuszek, Jr.
William Henry Riley III

**2008 Board Members**
Sandra Guilfoil – Chair
Paula K. Konikoff – Vice Chair
Gregory J. Accetta
Richard L. Borges II Richard
Knitter William Henry Riley III

**2009 Board Members**
Sandra Guilfoil – Chair
J. Carl Schultz, Jr. – Vice Chair
Richard L. Borges II
Jay E. Fishman
Richard Knitter
Barry J. Shea

**2010 Board Members**
Sandra Guilfoil – Chair
J. Carl Schultz, Jr. – Vice Chair
Richard L. Borges II
Richard Knitter
Barry J. Shea
Jay E. Fishman

**2011 Board Members**
J. Carl Schultz, Jr. – Chair
Barry J. Shea – Vice Chair
Dennis L. Badger
Dennis J. Black
Margaret A. Hambleton
Richard Knitter
R. Lee Robinette

**2012 Board Members**
J. Carl Schultz, Jr. – Chair
Barry J. Shea – Vice Chair
Dennis L. Badger
Dennis J. Black
Margaret A. Hambleton
Richard Knitter
R. Lee Robinette

**2013 Board Members**
Barry J. Shea – Chair
J. Carl Schultz, Jr. – Vice Chair
Dennis L. Badger
Margaret A. Hambleton
Richard Knitter
R. Lee Robinette

**2014 Board Members**
Barry J. Shea – Chair
J. Carl Schultz, Jr. – Vice Chair
Dennis L. Badger
Steven H. Berg
Theddi Wright Chappell
Margaret A. Hambleton
Richard Knitter
R. Lee Robinette

**2015 Board Members**
Barry J. Shea – Chair
Margaret A. Hambleton –
    Vice Chair
Patricia H. Atwood
Steven H. Berg
Theddi Wright Chappell
David Hundrieser
R. Lee Robinette
J. Carl Schultz, Jr

**2016 Board Members**
Margaret A. Hambleton – Chair
J. Carl Schultz, Jr. – Vice Chair
Patricia H. Atwood
Steven H. Berg
Theddi Wright Chappell
David Hundrieser
R. Lee Robinette
Barry J. Shea

**2017 Board Members**
Margaret A. Hambleton – Chair
R. Lee Robinette – Vice Chair
Patricia H. Atwood
Steven H. Berg
Theddi Wright Chappell
David Hundrieser
Wayne R. Miller
Shawn L. Telford

**2018 Board Members**
Margaret A. Hambleton – Chair
Wayne R. Miller – Vice Chair
Patricia H. Atwood
Steven H. Berg
Michelle Czekalski Bradley
Lisa Desmarais
R. Lee Robinette

**2019 Board Members**
Wayne R. Miller – Chair
Patricia H. Atwood – Vice Chair
Michelle Czekalski Bradley
Lisa Desmarais
Roberta Ouellette
Robert Reardon

**2020 Board Members**
Wayne R. Miller – Chair
Michelle Czekalski Bradley –
    Vice Chair
Patricia H. Atwood
Riley Busenlener
Roberta Ouellette
Tim Luke
Craig Morley
Scott Robinson

69



Authorized by Congress as the Source of Appraisal Standards and Appraiser Qualifications

APPRAISAL STANDARDS BOARD

1155 15th Street NW, Suite 1111
Washington, DC 20005–3517

tel 202 347 7722

**www.appraisalfoundation.org**

**CONNECT WITH US ON**



Case 3:21-cv-00232-DWD    Document 279-5    Filed 03/05/25    Page 82 of 439    Page ID #15321

2024 EDITION

# 2024

## USPAP Guidance and Reference Manual

GUIDANCE FOR THE *2024 Uniform Standards of Professional Appraisal Practice* (USPAP)

**NOW AVAILABLE SEPARATELY.**

Companion volume to USPAP.
Includes Advisory Opinions, Frequently Asked Questions,
and the Reference Index.



The Appraisal
**FOUNDATION**

Authorized by Congress as the Source of Appraisal
Standards and Appraiser Qualifications

APPRAISAL STANDARDS BOARD

# USPAP GUIDANCE AND REFERENCE MANUAL

Companion volume to *Uniform Standards of Professional Appraisal Practice.* Includes Advisory Opinions, Frequently Asked Questions, and the *USPAP Reference Manual*.



**The Appraisal FOUNDATION**

Authorized by Congress as the Source of Appraisal Standards and Appraiser Qualifications

APPRAISAL STANDARDS BOARD

Published in the United States of America.

ISBN: 979-8-9884927-1-9

**All Rights Reserved**
Copyright © 2024, The Appraisal Foundation.

The Appraisal Foundation reserves all rights with respect to this material. No part of this publication may be reproduced, duplicated, altered or otherwise published in electronic or paper means or in any format or form without the express written permission of the publisher.

**EFFECTIVE:**

January 1, 2024

# TABLE OF CONTENTS

FOREWORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

ADVISORY OPINIONS (AOs) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    TABLE OF CONTENTS FOR ADVISORY OPINIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    ADVISORY OPINIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-132

FREQUENTLY ASKED QUESTIONS (FAQs) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .133

    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .135

    TABLE OF CONTENTS FOR FREQUENTLY ASKED QUESTIONS . . . . . . . . . . . . . . . . . . . . . . .136

    FREQUENTLY ASKED QUESTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145-285

REFERENCE INDEX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .287

    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 289

    TABLE OF CONTENTS FOR REFERENCE INDEX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 290

    REFERENCE INDEX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .297-350

# FOREWORD

The Appraisal Standards Board (ASB) of The Appraisal Foundation develops, interprets, and amends the *Uniform Standards of Professional Appraisal Practice* (USPAP) on behalf of appraisers and users of appraisal services.

This publication, *2024 USPAP Guidance and Reference Manual* (USPAP GRM), is the companion volume to the new stand-alone 2024 USPAP publication, and contains the Advisory Opinions (AOs) and Frequently Asked Questions (FAQs) that in recent years were published as part of the USPAP publication. The USPAP GRM also contains the Reference Index, which was introduced in late 2021 as the *USPAP Reference Manual*.

## NEW CONFIGURATION

**The 2024 edition of USPAP has an effective date of January 1, 2024, but does not have an end date.** As the standards have evolved and matured in the last 35 years, the need for the standards to be updated on a regular basis has decreased, leaving the standards unchanged for a longer period of time. Furthermore, the issues that now impact the standards are more complex and require additional research and time to consider potential changes.

At the same time, changing market conditions have increased the need for new guidance related to the USPAP standards on a more frequent basis. Issues like new technology, fair housing, and the coronavirus pandemic have required the ASB to be responsive to the needs of the profession on a more frequent basis. As a result, the decision was made to publish the 2024 USPAP as a stand-alone publication, and the AOs, FAQs, and Reference Index in this separate publication. Although the USPAP GRM also does not have an end date, it may be updated more frequently than USPAP.

The AOs and the FAQs are guidance issued by the ASB to illustrate the applicability of USPAP in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems. This guidance does not establish new standards or interpret existing standards. The AOs and FAQs are not part of USPAP and can be approved by the ASB without public exposure and comment. Guidance provided in the AOs and FAQs does not represent the only possible solution to the issues discussed and the advice provided may not be applied equally to seemingly similar situations.

The Reference Index is designed to provide appraisers with another resource to help navigate USPAP as well as the AOs and FAQs and to more easily find answers to complex USPAP-related questions. Topics are arranged to follow the typical appraisal process.

## CONTACTING THE APPRAISAL STANDARDS BOARD

The ASB invites questions about USPAP, USPAP guidance, and proposed changes to USPAP from all interested parties, including appraisers, state enforcement agencies, users of appraisal services, and the public. If you have any comments, questions, or suggestions regarding USPAP, please contact the ASB.

**Appraisal Standards Board**
The Appraisal Foundation
1155 15th Street, NW, Suite 1111
Washington, DC 20005
Phone: 202-347-7722
Email: info@appraisalfoundation.org
Website: www.appraisalfoundation.org



# USPAP ADVISORY OPINIONS

# INTRODUCTION

The USPAP Advisory Opinions (AOs) are a form of guidance issued by the Appraisal Standards Board (ASB) to illustrate the applicability of USPAP in specific situations and to offer advice from the ASB for resolving appraisal issues and problems. Advisory Opinions do not establish new standards or interpret existing standards. Advisory Opinions are not part of USPAP and can be approved by the ASB without public exposure and comment.

Advisory Opinions are based on presumed conditions without investigation or verification of actual circumstances. Guidance provided in the Advisory Opinions does not represent the only possible solution to the issues discussed and the advice provided may not be applied equally to seemingly similar situations.

Each Advisory Opinion applies to one or more appraisal disciplines as identified both in the individual Advisory Opinions and table of contents. However, there may be cases where the guidance in a particular Advisory Opinion could be helpful to an appraiser working in an appraisal discipline that is not specified. As the Advisory Opinions are not part of USPAP and do not establish new standards or interpret existing standards, their use is not limited solely to the appraisal discipline(s) specified.

# TABLE OF CONTENTS FOR AOs

**USPAP ADVISORY OPINIONS**

Each Advisory Opinion is labeled as to its applicability to the various appraisal disciplines. The abbreviations are:

- Real Property – RP
- Personal Property – PP
- Intangible Property – IP (includes business interests)
- All disciplines – ALL

AO-1      Sale and Transfer History (RP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

AO-2      Inspection of Subject Property (RP, PP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

AO-3      Update of a Prior Appraisal (ALL). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

AO-7      Marketing Time Opinions (RP, PP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

AO-9      The Appraisal of Real Property That May Be Impacted by Environmental Contamination (RP). . . . . . . .18

AO-13     Performing Evaluations of Real Property Collateral to Conform with USPAP (RP) . . . . . . . . . . . . . 23

AO-14     Appraisals for Subsidized Housing (RP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

AO-17     Appraisals of Real Property with Proposed Improvements (RP) . . . . . . . . . . . . . . . . . . . . . .  29

AO-18     Use of an Automated Valuation Model (AVM) (ALL) . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

AO-19     Unacceptable Assignment Conditions in Real Property Appraisal Assignments (RP) . . . . . . . . . . .  39

AO-20     An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value (ALL) . . . . . . .  44

AO-21     USPAP Compliance (ALL) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  49

AO-22     Scope of Work in Market Value Appraisal Assignments, Real Property (RP) . . . . . . . . . . . . . . .  58

AO-23     Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal
          Assignment (RP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  64

AO-24     Normal Course of Business (RP, PP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  68

AO-25     Clarification of the Client in a Federally Related Transaction (RP) . . . . . . . . . . . . . . . . . . . . . 71

AO-26     Readdressing (Transferring) a Report to Another Party (ALL) . . . . . . . . . . . . . . . . . . . . . . .73

AO-27     Appraising the Same Property for a New Client (ALL) . . . . . . . . . . . . . . . . . . . . . . . . . .  75

AO-28     Scope of Work Decision, Performance, and Disclosure (ALL)  . . . . . . . . . . . . . . . . . . . . . . .78

AO-29     An Acceptable Scope of Work (ALL) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  82

AO-30     Appraisals for Use by a Federally Regulated Financial Institution (RP) . . . . . . . . . . . . . . . . . .  85

AO-31     Assignments Involving More Than One Appraiser (ALL) . . . . . . . . . . . . . . . . . . . . . . . . .  89

AO-32     Ad Valorem Property Tax Appraisal and Mass Appraisal Assignments (RP, PP) . . . . . . . . . . . . . .  93

AO-33     Discounted Cash Flow Analysis (RP). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  96

AO-34     Retrospective and Prospective Value Opinions (RP, PP). . . . . . . . . . . . . . . . . . . . . . . . .  99

AO-35     Reasonable Exposure Time in Real and Personal Property Opinions of Value (RP, PP) . . . . . . . . . . . 101

AO-36     Identification and Disclosure of Client, Intended Use, and Intended Users (ALL) . . . . . . . . . . . . 104

AO-37     Computer Assisted Valuation Tools (RP). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .108

AO-38     Content of an Appraisal Report and Restricted Appraisal Report (RP, PP, IP) . . . . . . . . . . . . . . 113

AO-39     Antidiscrimination Laws and Nondiscrimination (ALL) . . . . . . . . . . . . . . . . . . . . . . . . . . 118

AO-40     Antidiscrimination and the Research, Analysis, and Reporting of Location Data, including
          Demographics, for Residential Real Property Appraisal Assignments (RP) . . . . . . . . . . . . . . . . .127

**GO BACK**

# ADVISORY OPINION 1 (AO-1)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Sale and Transfer History**
**APPLICATION: Real Property**

## THE ISSUE:

The *Uniform Standards of Professional Appraisal Practice* (USPAP) contain transfer history requirements that obligate appraisers of real property to analyze and report pending and recent agreements, options, listings, and transfers (including sales) involving the property being appraised. Because of differences in federal law and regulations, state laws and operating practices relating to the disclosure and confidentiality of real property sales data, the ways in which appraisers comply with reporting the sale and transfer history requirements vary according to the jurisdiction and the availability of information. This lack of consistency has raised questions regarding the applicability and relevance of the sale and transfer history requirements.

How can the appraiser best comply with the sales and transfers history provisions of the applicable appraisal standards in the face of obstacles that are beyond the control of the appraiser?

## ADVICE FROM THE ASB ON THE ISSUE:

### Relevant USPAP & Advisory References
  • Advisory Opinion 24 which addresses the "normal course of business"

### Analysis and Reporting Requirements

This Advisory Opinion offers advice and guidance for compliance with the requirements to analyze and report the sale and transfer history of the subject property, and related information in the appraisal of real property.

USPAP Standards Rules 1-5(a) and (b) require an appraiser, when the value opinion to be developed is market value, and if such information is available to the appraiser in the normal course of business, to:

  *(a) analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal; and*

  *(b) all sales and other transfers of the subject property that occurred within three (3) years prior to the effective date of the appraisal.*

USPAP Standards Rules 2-2(a)(x)(3) and (b)(xii)(3) then require the content of the report to provide:

  *Sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by…:*

  *(3) summarizing the results of the subject sales or other transfers, agreements of sale, options, and listings In accordance with Standards Rule 1-5;*

  *<u>Comment</u>: If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing Its lack of relevance is required.*

GO BACK

It should be noted that even in a Restricted Appraisal Report, it is necessary to include a "summary," not just a statement. If such information is unobtainable, the written appraisal report must include commentary on the efforts taken by the appraiser to obtain the information.

Laws, regulations and guidelines issued by government agencies, or government-sponsored enterprises, also contain requirements that require the appraiser to analyze and report specific sales history information, and these requirements vary according to jurisdiction. Some clients might also require analyses beyond what is required by USPAP. For example, while USPAP does not specifically require that a report include an affirmative statement regarding the lack of prior sales, it is often a client requirement to do so.

Consider, for example, why appraisers analyze sales history. The requirement for the appraiser to analyze and report sales history and related information is fundamental to the appraisal process. Just as the appraiser must analyze the details of pending and recent sales of comparable properties, the appraiser must also take into account the various factors associated with all pending and recent sales of the subject property itself. This is not to say that the agreed price in a pending or recent sale of the subject property is necessarily representative of value as defined in the report, but the appraiser's failure to analyze and report these facts may exclude important information from the sales comparison approach. Information pertaining to the current market status and the sales history of the subject property may also be useful information for the determination of highest and best use or the analysis of market trends.

Analysis of transfers, sales, offerings, etc., as referenced in Standards Rule 1-5, requires more than just stating the known facts about any given transaction. Each pertinent factor should be examined individually, methodically, and in detail, to ascertain whether it has relevance to, or potential impact on, the transaction and potentially other assignment results, including the opinion of market value (if applicable). By examining (or evaluating) the specific details of all agreements of sale, options, or current listings on the subject property, and all sales and other transfers that occurred within the prior three years, the appraiser gains valuable (or important) insights into market trends, property and buyer characteristics.

**Illustrations**

Following are examples of summaries of the results of analyses that might be included in an appraisal report in compliance with the applicable standards.

1. For a property that is not under agreement or option, that is not offered for sale on the open market and that has not been transferred within the past three years, the summary of the sales and transfer history might be shown in the appraisal report as follows:

   > Research of the applicable public records, private data services and an interview of the current owner, revealed that the subject property is not under current agreement or option and is not offered for sale on the open market. Additionally, according to these sources, the subject property has not been transferred during the past three years.

2. For a property that is currently offered for sale (a current listing) wording similar to one of the following examples might be used in the appraisal report, if relevant and if appropriate data exists for comparison. Comparing competitive listings to the subject property's list price helps to give a perspective of what might be a reasonable marketing time in situations where this is an assignment condition, for example:

   A. As of the effective date, the subject property has been listed for sale for 112 days. Originally listed at $369,900, the price was reduced to the current amount of $350,000 after 60 days on the market. Since the current list prices of comparable properties range from $342,000 to $359,900, and the average marketing time is 90 days, the subject property appears to be competitively priced.

   B. As of the effective date, the subject property has been listed for sale for 174 days. Originally listed at $199,900, the price was reduced to the current level of $179,000 after 50 days on the market. Properties with features superior to the subject property have list prices under $179,000, and the average marketing times of 40 days. Therefore, the subject property will likely continue to experience a longer marketing period at its current list price.

**GO BACK**

    C.    The subject property is listed for sale at $339,000. As of the effective date it had been listed for 4 days. Based on a comparison with other current listings, the subject appears to be superior to similarly priced properties. These differences may result in a quicker sale or buyers bidding the price up beyond the list price.

According to the public records, there have been no other transfers of the subject property within the past three years.

3. For a property that is currently under contract (a pending sale) reporting the summary of the analysis might be similar to one of the following examples:

    A.    The subject property is under contract to sell for $525,000. It had been listed for sale at $535,000 for 107 days prior to the contract. The contract provided to the appraiser contains no atypical terms or conditions. There are no reported seller concessions. This appears to be an arm's-length transaction.

    B.    The subject property is under contract to sell for $525,000. It had been listed for sale at $535,000 for 107 days prior to the contract. The contract provided to the appraiser includes a provision for the seller to retain possession of the premises for 30 days after the closing. In effect, the buyer is making a concession approximately equivalent to one month's rent. Otherwise, there are no atypical terms or conditions. There are no reported seller concessions. This appears to be an arm's-length transaction, and assuming that the parties were acting in their own best interests (per definition of market value), the price was likely affected by the concession.

    C.    The subject property is under contract to sell for $525,000. It had been listed for sale at $535,000 for 107 days prior to the contract. The contract provided to the appraiser contains no atypical terms or conditions. The contract states that the seller will pay 2% of the sale price ($10,500) toward the buyer's closing costs. This appears to be an arm's-length transaction, and assuming that the parties were acting in their own best interests (per definition of market value), the price was likely affected by the concession.

4. For a property that is not for sale but was acquired by the current owner during the past three years, the summary to be included in the appraisal report might appear as follows:

    A.    The subject property previously sold for $400,000 on (insert sale date). Based on discussions with the owner and a review of MLS and public records, the prior sale appears to have been an arm's-length transaction and was not impacted by any concessions.

    B.    The subject property (land only) previously sold for $100,000 on (insert sale date) prior to construction of the now existing improvements. Based on discussions with the owner and a review of MLS and public records, the prior sale appears to have been an arm's-length transaction and was not impacted by any concessions.

    C.    The subject property previously sold for $250,000 on (insert sale date). Based on discussions with the owner and a review of MLS and public records, the prior sale was a bank-owned (REO) property. In this market, REO properties are typically marketed for a quick sale and usually sell at a discount. The prior sale is not considered to be a market value transaction.

5. For a property that transferred between parties, but there was no sale, the summary of the analysis of the transfer Included In the appraisal report might appear as follows:

    A.    The subject property previously transferred title between family members on (insert date) as part of a quitclaim deed. The transfer amount is reported to be $1. Based on discussions with the owner and a review of MLS and public records, the prior transfer was confirmed to be a non-arm's-length transaction and has no bearing on the appraisal results or conclusions.

GO BACK

**Special Circumstances**

In cases where further information about a known sale or transfer is unobtainable, the reporting of sales and other transfers would likely differ from the examples shown above. The following examples are offered for purposes of illustration only.

**Illustrations**

1. In cases where the property being appraised is known to be the subject of a pending transaction, but the appraiser is not privy to the terms of the pending transaction and the parties to the transaction have declined to disclose the terms of the transaction to the appraiser, the summary to be included in the appraisal report might include wording similar to the following:

   The property being appraised is known to be the subject of a pending purchase and sale agreement, but the appraiser was unable to obtain the terms of the contract, as both the client and the seller stated they did not wish to share that information. However, the current owner confirmed that the property is under contract for sale but declined to disclose the details of the agreement.

2. In jurisdictions where reliable price information cannot be found in the public records and where the appraiser is unable to obtain complete information regarding a prior sale in the normal course of business, it would be appropriate to include in the appraisal report a comment similar to the following:

   The subject property was sold by John Jones to the current owner on June 1, 20XX, for an unknown price. Sale prices are not a matter of public record in this state. The appraiser attempted to obtain the purchase price and other terms of the transaction, by interviewing the parties in the transaction. The parties to the transaction declined to discuss the terms or conditions of the sale.

   According to the public records, there have been no other transfers of the subject property within the past three years.

In many cases, a property may require analyses of multiple items under Standards Rule 1-5 (e.g., both a prior sale and a current listing) and in those cases, the appraisal report would contain a summary of the analysis of those multiple items.

**GO BACK**

# ADVISORY OPINION 2 (AO-2)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Inspection of Subject Property**
**APPLICATION: Real Property, Personal Property**

## THE ISSUE:

An inspection of a property is not required by USPAP, but one is often conducted. USPAP does require the report to include a certification that indicates whether or not the subject property was personally inspected by the appraiser(s).

- What is the purpose of inspecting a subject property?
- What is a personal inspection?
- Is an appraiser's inspection different than a third-party inspection?
- When is an inspection part of the appraiser's scope of work?
- Does USPAP mandate a minimum level of property inspection?
- What are an appraiser's disclosure obligations relating to an inspection?
- When does a personal inspection conducted as Significant Appraisal Assistance require disclosure?

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References:**
- DEFINITION of PERSONAL INSPECTION

  PERSONAL INSPECTION: (for an appraisal assignment) the appraiser's in-person observation of the subject property performed as part of the scope of work; (for an appraisal review assignment) the reviewer's in-person observation of the subject of the work under review, performed as part of the scope of work.

  > Comment: An appraiser's personal inspection is typically limited to those things readily observable without the use of special testing or equipment. Appraisals of some types of property, such as gems and jewelry, may require the use of specialized equipment. A personal inspection is not the equivalent of an inspection by an inspection professional (e.g., a structural engineer, home inspector, or art conservator).

- Standards Rules 1-2(e) and 7-2(e)
- Standards Rules 2-3 and 8-3
- SCOPE OF WORK RULE
- Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property in a Real Property Appraisal Assignment.*

### Purpose of an Inspection

The primary reason for an appraiser to inspect a property is to gather information about the characteristics of the property that are *relevant* to its value.[1]

### What is a Personal Inspection?

A personal inspection is an appraiser's in-person observation of a property that is performed as part of the scope of work, usually to gather information about some or many of the property characteristics relevant to the assignment. While there are other ways to gather information on the subject property's relevant characteristics, the in-person observation (the personal inspection) allows the appraiser to conclude what information to gather that is relevant to the assignment.

The appraiser's personal inspection involves more than just gathering data about a property, it also includes developing relevant analyses. In all parts of the appraisal process, including during a personal inspection, the appraiser, acting competently and correctly applying judgment, continually determines the appropriate methods and techniques to use to gather the relevant information needed to solve the appraisal problem.

A personal inspection performed by an appraiser can be assisted by tools, and as technology evolves, so will the available tools. For example, the use of unmanned aerial vehicles, or drones, are tools that can be used to amplify vision like binoculars or a jeweler's loupe. Drones now allow an appraiser to view much more of a subject property while making a personal inspection. However, any tools used to view a property, or any data (video recordings, images, photos, etc.) produced by those tools are never a substitute for an appraiser's personal inspection. A "personal" inspection is when the appraiser makes the in-person observation of the subject property, regardless of any tools that appraiser may be using while making those in-person observations.

### An Appraiser's Personal Inspection Versus a Third-Party Inspection

There is a clear distinction between an appraiser who inspects a property as part of the scope of work to complete an appraisal assignment, and a "third party" person who has inspected or will inspect the same property, but who is not engaged in performing any part of the scope of work used to develop the appraisal.

Per the SCOPE OF WORK RULE:

> For each appraisal and appraisal review assignment, **an appraiser** must:

> 1. identify the problem to be solved;

> 2. determine and perform the scope of work necessary to develop credible assignment results; and

> 3. disclose the scope of work in the report. (Bold added for emphasis)

It is only the appraiser, the individual signing the certification for the appraisal report, who is responsible for determining and performing the scope of work necessary to develop credible assignment results. Deciding whether or not that appraiser will complete a personal inspection of the subject property is, therefore, part of that ap-praiser's scope of work decision.

Sometimes, a client will provide the appraiser with an inspection report of the subject property, which was completed by, for example, a person that is identified as a data collector. These reports may be provided to the appraiser before the appraiser agrees to perform an appraisal assignment, or at any point during the assignment. Regardless of the timing of the inspection report being provided, and if the information is useful to the appraiser, it is the appraiser who still needs to conclude if they must personally inspect the property to produce credible assignment results for the intended use.

---

1    See Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment* and Advisory Opinion 39, *Antidiscrimination Laws and Nondiscrimination*, and Advisory Opinion 40, *Antidiscrimination and the Research, Analysis, and Reporting of Location Data, including Demographics, for Residential Real Property Appraisal Assignments*.

---

**GO BACK**

**ADVISORY OPINION 2**

The following are examples of third-party inspector data reports:

1) A property inspection report completed by an appraiser, whose assignment was to only inspect the property and to collect data.

2) An assessment office property data card filled out by an appraiser.

3) A multiple listing service report filled out by an individual (who sometimes acts as an appraiser) who was acting in the role of a real estate broker when they collected the information about a property and listed that information in the MLS.

In cases when the appraiser relies upon the data and information in a third-party inspector's report, the appraiser still must conclude if they need to gather additional information (by, for example, making a personal inspection) to identify the relevant characteristics of the subject property.

A third-party inspection report that includes the inspector's opinions and conclusions about physical characteristics is not a substitute for the appraiser's opinions and conclusions about those same characteristics. An appraiser who signs a certification in an appraisal report is indicating that all opinions and conclusions in that report are the appraiser's own personal opinions and conclusions. Therefore, an inspection report provided to the appraiser is just information to consider, not conclusions the appraiser must accept, which is no different than any other information or data the appraiser uses such as MLS data, property tax data, maps, photographs, etc.

Third-party inspectors are not performing an inspection that is part of the scope of work of the assignment; it is only the appraiser that concludes what data is needed for the assignment.

**A Personal Inspection as Part of the Scope of Work**

Appraisers are often asked to appraise a property which they have previously inspected. If an appraiser has driven past a property many times prior to that property becoming the subject of an assignment, the appraiser has not yet inspected the property as a part of his or her scope of work for the assignment.

The definition of PERSONAL INSPECTION is distinguished as an inspection the appraiser performs "as part of the scope of work" for an appraisal or an appraisal review assignment. In these situations, prior inspections occurred before the agreement to perform an assignment and thus are not part of the appraiser's scope of work. It is not unusual for an appraiser to have, for example, seen a property in-person before they agree to perform an appraisal assignment.

**Minimum Extent of a Personal Inspection**

An inspection is not required by USPAP for appraisal or appraisal review assignments, but one is often conducted.

The appraiser's personal inspection, and the extent of that inspection, is an aspect of the scope of work and may be required as an assignment condition and/or be necessary for the intended use of the assignment results. The extent of any personal inspection can be quite comprehensive, or very limited in scope. Regardless of the level of detail of a personal inspection, it is always possible to perform a personal inspection that is even more thorough. It is the appraiser's responsibility to determine the appropriate scope of work, including the extent of a personal inspection (when one is performed, required or necessary to produce credible assignment results given the intended use of the assignment results).

There are many circumstances that influence the appraiser's personal inspection. In some assignments, the client may request that the appraiser perform an exterior-only inspection from the street or perform no inspection of the subject property (i.e., a "desktop appraisal"). There are situations where inspection of the subject property is not possible; for example, if the improvements have been destroyed, removed, or not yet built. In some cases, the appraiser is denied access to the property for legal, personal safety, or other reasons. In such cases, the appraiser must use other means to gather information about the characteristics of the subject property relevant to the assignment in order to provide credible assignment results in the context of the intended use.

GO BACK



### Disclosure Requirements Regarding the Appraiser's Personal Inspection

While an inspection is not required, written appraisal reports for real and personal property must contain a signed certification (oral reports must have the signed certification in the workfile) that clearly states whether the appraiser has or has not personally inspected the subject property.

When a personal inspection is performed as part of the scope of work used to develop the appraisal, there are additional reporting requirements.

First, the report must contain sufficient information to enable the intended users to understand the scope of work performed. Per the SCOPE OF WORK RULE this includes, "the extent to which tangible property is inspected." This disclosure informs the intended user how much (or what parts) of the property were personally inspected (or, if necessary, details about which parts of the property that were not inspected), so that the communication is meaningful and not misleading.

And, regardless of the minimum USPAP reporting requirements related to inspections performed as part of the scope of work, situations may arise where the intended user would need to know, provided there are no applicable confidentiality restrictions from a prior assignment, that the appraiser has inspected the property sometime prior to agreeing to perform an assignment. Such a disclosure of an inspection that occurred prior to agreeing to perform an assignment may be especially necessary if that knowledge was uniquely relevant to being able to solve the appraisal problem for the current assignment.

Second, the report must contain a certification indicating whether any signing appraiser has or has not personally inspected the property that is the subject of the appraisal report. For an appraisal review assignment, the certification would disclose if any signing appraiser personally inspected the property that is the subject of the work under review. A personal inspection that satisfies the appraiser's certification must be conducted as part of the scope of work for the appraisal or appraisal review assignment. An inspection by the appraiser that occurred outside of the assignment may be information used by the appraiser, but those inspections are a type of research that was not informed by the scope of work needed to solve the appraisal problem. Therefore, certifying a personal inspection was made as part of the assignment when the inspection occurred outside of the assignment would be misleading. If information from a prior inspection about a subject property is used to develop an appraisal, then appropriate disclosure of that inspection would be necessary as part of the scope of work reporting requirements.

Regarding third-party inspection reports, no disclosure about those reports is required in the certification or in the appraisal report; however, there may be instances where disclosures about those types of reports is necessary for the intended user to properly understand the appraisal report.

### Disclosure Requirements for a Personal Inspection as Part of Significant Appraisal Assistance

Appraisals can be completed by more than one appraiser. One common situation is there is a "signing appraiser" (the one who signs the certification) and a "trainee appraiser" (where that trainee is providing significant appraisal assistance).

In the case of a residential real property appraisal assignment, consider the following:

When a trainee appraiser inspects the subject property, the signing appraiser needs to determine if that inspection was just administrative in nature (i.e., the trainee is being employed to provide something similar to a third-party inspection report to the signing appraiser), or if the trainee's inspection was a personal inspection (one that meets the definition of personal inspection in USPAP, and thus, was performed as part of the scope of work used to develop the appraisal). If the signing appraiser concludes the trainee appraiser did perform a personal inspec-tion, and did provide significant real property appraisal assistance, then the extent of that assistance must be disclosed in the appraisal report.

In other words, a trainee's inspection may or may not be a "personal inspection" (as defined in USPAP) and may or may not be significant real property appraisal assistance.

---

**GO BACK**

If a trainee appraiser made a personal inspection (as defined in USPAP) of the subject property, the appraisal report, and maybe even the certification, must clearly disclose the significant real property appraisal assistance that was performed by the trainee.

**Illustrations**

1. I have agreed to appraise a single-unit property and I performed an exterior-only inspection of the property from the street. What are my reporting obligations for an Appraisal Report related to this inspection that I performed as part of the scope of work?

   An exterior-only inspection performed from the street, where the appraiser made an in-person observation of the property, is a personal inspection. As the appraiser signing the certification, you would indicate in the certification that you did make a personal inspection of the property. Additionally, you are required to disclose the scope of work used to develop the appraisal, including the extent to which the property was inspected sufficient to enable the intended users to understand the report properly.

2. I have agreed to perform an appraisal for a client. The client provided me with a detailed property inspection report that includes photographs, types of materials, and condition ratings of those materials by a third-party inspector. Does USPAP allow me to use this information to develop my opinions and conclusions and what am I required to disclose regarding the inspection completed by the third-party inspector?

   The property inspection report is information; therefore, you can use the information to conclude the characteristics of the property that are relevant to the assignment or decide to research additional information. An appraiser must have sufficient information to develop their own opinions and conclusions. Therefore, in cases when the appraiser relies upon a third-party inspector's report, it may be necessary to obtain additional information and/or examine other documents in order to understand the property characteristics relevant to the assignment. Since the inspection was not performed by you, it was not a part of the scope of work completed as a part of the appraisal assignment.

3. I have been contacted by a property owner who is being transferred by their employer to another city. The owner indicated that while they might want a "detailed appraisal" later, right now they only need a rough idea of the value of the residence to begin negotiations related to the relocation. The owner has asked me to perform a "desktop" appraisal (i.e., an appraisal with no inspection of the property). I believe that, given this intended use, credible assignment results can be developed without a personal inspection. Is this permitted under USPAP?

   Yes, this is permitted if sufficient information is available to conclude the characteristics of the property that are relevant to the assignment. Such information could be obtained from public records, previous listings of the property for sale, appraiser's files, etc.

While such an issue would likely not exist in this example, if, in a similar scenario the use of an extraordinary assumption about the condition of the property is necessary, then one must comply with the requirements for the use of an extraordinary assumption.

# ADVISORY OPINION 3 (AO-3)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Update of a Prior Appraisal**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

Once an appraisal of a property has been completed, there are many cases in which a client may need a subsequent appraisal involving the same property. Examples include:

- In the appraisal of real property, a current value is commonly required by lenders and secondary market participants when the time frame between the effective date of a prior appraisal and the closing of a loan exceeds certain limits. A current value is also required by agencies in eminent domain cases when time has elapsed between a prior appraisal and the date of taking.
- In the appraisal of business equity of privately held companies held by Employee Stock Ownership Trusts, current values are required at least annually.
- In the appraisal of personal property, it may be necessary to appraise equipment every two years for financing purposes.

Clients sometimes label such requests as "updates," "reappraisals," or "recertifications." Does USPAP address these and how can an appraiser comply with USPAP for such assignments?

## ADVICE FROM THE ASB ON THE ISSUE:

**Clarification of Terminology**

Various terms have been developed by clients and client groups for certain appraisal assignments, including "updates" and "recertifications." While such terms may be convenient for use in a business setting, they do not necessarily impart the same meaning in every situation.

The term "Update" is often used by clients when they are seeking a current appraisal of a property that was the subject of a prior assignment. This practice is addressed in this Advisory Opinion.

The term "Recertification of Value" is often mistakenly used by some clients in lieu of the term "Update." A Recertification of Value is performed to confirm whether or not the conditions of a prior appraisal have been met. A Recertification of Value does not change the effective date of the value opinion. If a client uses this term in an assignment request that includes an updated value opinion, then it constitutes a new appraisal assignment that must be completed as discussed in this Advisory Opinion.

**A New Assignment of a Prior Assignment**

Regardless of the nomenclature used, when a client seeks a more current value or analysis of a property that was the subject of a prior assignment, this is not an *extension* of that prior assignment that was already completed – it is simply a new assignment. An "assignment" is defined in USPAP as:

> *a valuation service that is provided by an appraiser as a consequence of an agreement with a client.*

The same USPAP requirements apply when appraising or analyzing a property that was the subject of a prior assignment. There are no restrictions on who the appraiser is in such a circumstance, who the client is,[1] what

---

1    See Advisory Opinion 27, *Appraising the Same Property for a New Client.*

length of time may have elapsed between the prior and current assignments, or whether the characteristics of the subject property are unchanged or significantly different than in the prior assignment.

### Development Requirements
For all assignments, the development of the assignment results must be in accordance with the requirements contained in the applicable STANDARD (1, 3, 5, 7, or 9). When developing an opinion regarding a property that was the subject of a previous assignment, the scope of work in the new assignment may be different from the scope of work in the prior one. In addition, rather than duplicating steps in the appraisal process, the appraiser can elect to incorporate some of the analyses from the previous assignment (those items that the appraiser concludes are credible and in compliance with the applicable development Standard) into the new assignment through the use of an extraordinary assumption.

### Reporting Requirements
For all assignments, the results must be reported in accordance with the requirements of STANDARDS 2, 4, 6, 8, or 10, as applicable. The new report is not required to have the same level of detail as the original report–e.g., a different reporting option may be used. However, the new report must contain sufficient information to be meaningful and not misleading to the intended users. There are three ways that the reporting requirements can be satisfied for these types of assignments:

1. Provide a new report that contains all the necessary information/analysis to satisfy the applicable reporting requirements, _without incorporation_ of the prior report by either attachment or reference.

2. Provide a new report that _incorporates by attachment_ specified information/analysis from the prior report so that, in combination, the attached portions and the new information/analysis added satisfies the applicable reporting requirements.

3. Provide a new report that _incorporates by reference_ specified information/analysis from the prior report so that, in combination, the referenced portions and the new information/analysis added satisfies the applicable reporting requirements. This option can only be used if the original appraiser's firm and original intended users are involved, since the prior report was issued from that appraiser to those intended users, ensuring they have access to a copy. When this incorporation by reference option is used, the following items from that prior report must be specifically identified in the new report to avoid being misleading:

   - subject property
   - client and any other intended users
   - intended use
   - appraiser(s)
   - effective date of value or assignment results
   - date of report, and
   - interest(s) appraised

When information is being extended to the report by use of an extraordinary assumption, the requirements in USPAP for use of an extraordinary assumption must be met.

### Confidentiality
In all assignments the appraiser must comply with the Confidentiality section of the ETHICS RULE with respect to the handling of confidential information – i.e., if the prior appraisal or appraisal review report included any confidential information, its disclosure in a new report to a different client or intended user might violate the ETHICS RULE. This includes the requirement to comply with all _confidentiality and privacy laws and regulations_.

### Record Keeping
If the assignment includes use of, or reliance upon, all or part of a prior report, that report (or the portions used or relied upon) must be retained in the workfile for the new assignment, or its location must be properly referenced in the workfile. Refer to the RECORD KEEPING RULE for more information.

# ADVISORY OPINION 7 (AO-7)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Marketing Time Opinions**
**APPLICATION: Real Property, Personal Property**

## THE ISSUE:

The *Uniform Standards of Professional Appraisal Practice* recognizes that some assignment conditions require the appraiser to analyze and report a reasonable marketing period (also referred to as marketing time) for the subject property when developing and reporting an opinion of market value of real or personal property.

How is this reasonable marketing period opinion developed, and what is the relationship of this opinion of marketing time to the appraisal process?

## ADVICE FROM THE ASB ON THE ISSUE:

The reasonable marketing time is an opinion of the amount of time it might take to sell a real or personal property interest at the concluded market value or at a benchmark price during the period immediately after the effective date of an appraisal.

Stakeholders often confuse exposure time and marketing time. Marketing time is a forecast that is made looking forward from the effective date. Marketing time differs from exposure time, which is always presumed to precede the effective date of an appraisal.[1]

### Rationale and Method for Developing a Marketing Time Opinion

The development of a marketing time opinion uses some of the same data analyzed in the process of developing a reasonable exposure time opinion as part of the appraisal process and is not intended to be a prediction of a date of sale or a one-line statement. It is an integral part of the analyses conducted during the appraisal assignment. The opinion may be expressed as a range or a number. An Appraisal Report should include a summary of the analysis upon which that opinion is based. The opinion can be based on one or more of the following:

- statistical information about days on market,
- information from data collection services,
- information gathered through sales verification,
- interviews of market participants, and
- anticipated changes in market conditions.

Related information garnered through this process includes other market conditions that may affect marketing time, such as the identification of typical buyers and sellers for the type of real or personal property involved and typical equity investment levels and/or financing terms. The reasonable marketing time is a function of price, time, use, and anticipated market conditions, such as changes in the cost and availability of funds, and is not an isolated opinion of time alone.

---

[1]   See Advisory Opinion 35, *Reasonable Exposure Time in Real and Personal Property Opinions of Value*.

**GO BACK**

Appraisers should not simply use the estimate of reasonable exposure time as their forecast of the marketing period.  A key difference in the analysis of marketing time is that the appraiser must also research and consider anticipated changes in market conditions. For example, while conducting research, the appraiser observes signs of strengthening in the market place. Signs could include shortening exposure periods, rising prices, lowering interest rates, increases in the ratio of listing price to sale price or reductions in inventory. An improving market place suggests property may be selling faster than it has in the past. The opposite is also true.

### Discussion of Marketing Time in the Appraisal Report

Marketing time occurs after the effective date of the market value opinion and the marketing time opinion is related to, yet apart from, the appraisal process. Therefore, it is appropriate for the section of the appraisal report that discusses marketing time and its implications to appear toward the end of the report after the market value conclusion. The request to provide a reasonable marketing time opinion exceeds the normal information required for the appraisal process and should be treated separately from that process.

It is also appropriate for the appraiser to discuss the impact of price/value relationships on marketing time and to contrast different potential prices and their associated marketing times with an appraiser's market value opinion for the subject property.

### Applications of Client Conditions on an Appraisal

Clients concerned with marketing real or personal properties who obtain a market value appraisal as part of their decision-making process should be aware that it may be inappropriate to assume that the value remains stable during the marketing period. Therefore, it is technically incorrect for the user of an appraisal to take a current value opinion, carry it forward to the end of a concluded marketing period, and then discount back to the present.

Some clients attempt to solve their problem by ordering a "120-day market value," a "six-month market value," or a "one-year market value" from the appraiser. Unless the opinion of reasonable exposure time made by the appraiser in the course of such an assignment coincides with the precondition imposed by the client, the answer to this assignment will not necessarily be market value under a typical definition of the term. In such situations, the appraiser must clearly distinguish between a market value opinion allowing for reasonable exposure time and any alternative, appropriately defined, value opinion(s) subject to a special limiting condition resulting from the client-imposed marketing time.

Whether or not the appraiser and client define the appraisal problem to include more than one opinion of value, the roles of the parties must be kept clear. The appraiser provides the client with a supported opinion of defined value in an appropriately documented report that includes a section on reasonable marketing time and any inherent price/value implications. The ultimate decision on issues such as what price to ask, when to accept a particular offering price, and how to account for the asset during the interim rests with the client.

### SUMMARY:

- An estimate of marketing time is often an assignment condition but it is not a requirement of USPAP.
- The appraiser's opinion of marketing time is a forecast of time that begins as of the effective date of the appraisal.
- Marketing time is different for various types of property and under various market conditions.
- Marketing time may be expressed as a single point in time or a range.
- The answer to the question "what is a reasonable forecast of marketing time," should always incorporate the answer to the question "for what kind of property at what price range," rather than appear as a statement of an isolated time period.
- When value is predicated on a marketing time that differs from the subject's reasonable exposure time the resulting value will not necessarily be market value.

GO BACK

# ADVISORY OPINION 9 (AO-9)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: The Appraisal of Real Property That May Be Impacted by Environmental Contamination**
**APPLICATION: Real Property**

## THE ISSUE:

Appraisals of contaminated properties, or properties suspected of being contaminated, are sometimes developed using either a hypothetical condition or an extraordinary assumption that the property is free of the contamination. While this is acceptable practice under certain conditions and for certain intended uses, there are assignments that require an appraisal of the "as-is" condition of the property, with full consideration of the effects of environmental contamination. In these assignments, the appraiser is asked to analyze the effects of known environmental contamination on the value of the subject property.

How does an appraiser comply with USPAP when appraising properties that may be impacted by environmental contamination?

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References**

- DEFINITIONS, specifically the definitions of

  - *Extraordinary Assumption: an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions.*

    *Comment: Uncertain information might include physical, legal, or economic characteristics of the subject property; or conditions external to the property, such as market conditions or trends; or the integrity of data used in an analysis.*

  - *Hypothetical Condition: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.*

    *Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.*

- ETHICS RULE, particularly:

  *Conduct: An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests .... An appraiser must not communicate assignment results with the intent to mislead or to defraud.*

- COMPETENCY RULE:

  *An appraiser must: (1) be competent to perform the assignment; (2) acquire the necessary competency to perform the assignment; or (3) decline or withdraw from the assignment. In all cases, the appraiser must perform competently when completing the assignment.*



- Standards Rule 1-1(a):

  *In developing a real property appraisal, an appraiser must: (a) be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal;*

- Standards Rule 1-2(e):

  *In developing a real property appraisal, an appraiser must: (e) identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal....*

- Standards Rule 1-2(f) and (g):

  *In developing a real property appraisal, an appraiser must: (f) identify any extraordinary assumptions necessary in the assignment; and (g) identify any hypothetical conditions necessary in the assignment.*

- Standards Rule 1-3(b):

  *When necessary for credible assignment results in developing a market value opinion, an appraiser must: (b) develop an opinion of the highest and best use of the real estate.*

- Standards Rule 1-4:

  *In developing a real property appraisal, an appraiser must collect, verify, and analyze all information necessary for credible assignment results.*

### Competency and Related Issues

Consistent with Standards Rule 1-1(a): in the appraisal of a property as impacted by environmental contamination, an appraiser must *be aware of, understand, and correctly employ those recognized methods and techniques necessary to produce a credible appraisal*. Accordingly, an appraiser must have the requisite knowledge about appropriate methods, and be able to assemble the required information. An appraiser who lacks knowledge and experience in analyzing the impact of environmental contamination on the value of real property must take the steps necessary to complete the assignment competently, as required by the COMPETENCY RULE. However, an appraiser need not be an expert on the scientific aspects of environmental contamination, and in most situations the appraiser will utilize scientific and other technical data prepared by others, such as environmental engineers. In these situations, the appraiser should utilize an extraordinary assumption regarding the information obtained from other experts that is used in the appraisal.[1] Examples of such information include items (1) to (10) under the header titled "Relevant Property Characteristics" later in this Advisory Opinion. This is especially important in situations where there is conflicting information about such information.

### Specialized Terms and Definitions

The appraisal of properties that may be impacted by environmental contamination involves specialized terms and definitions that might not be used in an appraisal assignment in which the effect of the property's environmental condition is not analyzed, or when the property is not contaminated. Though it is recognized that there are other valid definitions of these and similar terms, for purposes of this Advisory Opinion, the following definitions apply:

**Diminution in Value (Property Value Diminution):** The difference between the unimpaired and impaired values of the property being appraised. This difference can be due to the increased risk and/or costs attributable to the property's environmental condition.

**Environmental Contamination:** Adverse environmental conditions resulting from the release of hazardous substances into the air, surface water, groundwater or soil. Generally, the concentrations of these substances would exceed regulatory limits established by the appropriate federal, state, and/or local agencies.

---

1    In USPAP publication see Standards Rule 1-2(f).

**Environmental Risk:** The additional or incremental risk of investing in, financing, buying and/or owning property attributable to its environmental condition. This risk is derived from perceived uncertainties concerning:

1)  the nature and extent of the contamination;

2)  estimates of future remediation costs and their timing;

3)  potential for changes in regulatory requirements;

4)  liabilities for cleanup (buyer, seller, third party);

5)  potential for off-site impacts; and

6)  other environmental risk factors, as may be relevant.

**Environmental Stigma:** An adverse effect on property value produced by the market's perception of increased environmental risk due to contamination. (See Environmental Risk.)

**Impaired Value:** The market value of the property being appraised with full consideration of the effects of its environmental condition and the presence of environmental contamination on, adjacent to, or proximate to the property. Conceptually, this could be considered the "as-is" value of a contaminated property.

**Remediation Cost:** The cost to cleanup (or remediate) a contaminated property to the appropriate regulatory standards. These costs can be for the cleanup of on-site contamination as well as mitigation of off-site impacts due to migrating contamination.

**Remediation Lifecycle:** A cycle consisting of three stages of cleanup of a contaminated site: before remediation or cleanup; during remediation; and after remediation. A contaminated property's remediation lifecycle stage is an important determinant of the risk associated with environmental contamination. Environmental risk can be expected to vary with the remediation lifecycle stage of the property.

**Source, Non-source, Adjacent and Proximate Sites:** Source sites are the sites on which contamination is, or has been, generated. Non-source sites are sites onto which contamination, generated from a source site, has migrated. An adjacent site is not contaminated, but shares a common property line with a source site. Proximate sites are not contaminated and not adjacent to a source site, but are in close proximity to the source site.

**Unimpaired Value:** The market value of a contaminated property developed under the hypothetical condition that the property is not contaminated.

### Relevant Property Characteristics

The appraisal of a property that includes the effects of environmental contamination on its value usually requires data not typically used in an appraisal of an otherwise similar but uncontaminated property or an appraisal of a potentially impacted property using either a hypothetical condition or an extraordinary assumption that it is uncontaminated or not impacted. The inclusion of these additional relevant property characteristics is consistent with Standards Rule 1-2(e). The relevant property characteristics may include, but are not limited to:

1)  whether the contamination discharge was accidental or permitted;

2)  the status of the property with respect to regulatory compliance requirements;

3)  the remediation lifecycle stage (before, during or after cleanup) of the property as of the appraisal date;

4)  the contamination constituents (petroleum hydrocarbons, chlorinated solvents, etc.);

5)  the contamination conveyance (air, groundwater, soil, etc.);

6)  whether the property is a source, non-source, adjacent or proximate site;

7)  the cost and timing of any site remediation plans;

8)  liabilities and potential liabilities for site cleanup;

**GO BACK**

9)  potential limitations on the use of the property due to the contamination and its remediation; and

10) potential or actual off-site impacts due to contaminant migration (for source sites).

Since the appraiser is usually not an expert on the scientific aspects of contamination, experts from other fields will typically provide this information. Appropriate regulatory authorities should also be consulted to confirm the presence or absence of contamination. The appraiser should consider the use of extraordinary assumptions when this information serves as a basis for an opinion of value. The appraiser should also collect similar data for any comparable sales used in the analysis.

### Valuation Issues – As If Unimpaired

In some assignments, the appraiser may be asked to appraise a property known to be contaminated under the hypothetical condition that the real estate is free of contamination. In these assignments, an appraiser may appraise interests in real estate that is known to be contaminated under the hypothetical condition that the real estate is free of contamination when:

1)  the resulting appraisal report is not misleading,

2)  the client has been advised of the limitation, and

3)  all the requirements of the ETHICS RULE have been satisfied.

To avoid confusion in the marketplace, the appraiser should disclose available information about the contamination problem, explain the purpose of the *hypothetical condition* that the real estate is not contaminated, and state that the use of the hypothetical condition might have affected the assignment results in accordance with Standards Rule 2-2(a)(xiii) and (b)(xv).

In other situations, the appraiser may be asked to appraise a property believed to be free of contamination or for which the environmental status is uncertain due to the lack of information or conflicting information. For these assignments, the property may be appraised under the *extraordinary assumption* concerning assumed factual information about its environmental condition and status. Indeed, since an appraiser is usually not an expert in detecting contamination, or confirming its absence, extraordinary assumptions regarding environmental condition may be necessary in many assignments.

### Valuation Issues - As Impaired

Highest and Best Use Issues: The appraisal of properties that may be impacted by environmental contamination usually involves extensive highest and best use analysis. In accordance with Standards Rules 1-2(e) and 1-3(b), the appraiser must consider relevant factors in developing an opinion of the highest and best use of the property in its impaired condition. The valuation of properties impacted by environmental contamination usually involves the estimate of two values: the unimpaired value and the impaired. As such, two highest and best use analyses are typically required. The first does not consider any limitations on the property due to the environmental contamination. The second does consider any limitations due to the contamination, its remediation, and any legal use restrictions associated with the cleanup of the contamination source. Environmental contamination and its remediation to appropriate regulatory standards may affect the feasibility of site development or redevelopment, use of the site during remediation, use of the site after remediation, marketability of the site, and other economic and physical characteristics of a contaminated property. The appraiser should consider the possibility that site remediation and any remaining limitations on the use of the site following remediation may alter or limit its highest and best use in the impaired condition. In addition, excessive environmental risk and stigma may deter site development or redevelopment and thereby limit the highest and best use until the property's environmental risk is reduced to levels acceptable to the relevant market participants.

GO BACK

Satisfying Standards Rule 1-4 Requirements: When the appraiser addresses the diminution in value of a contaminated property and/or its impaired value, the appraiser must recognize that the value of an interest in impacted or contaminated real estate may not be measurable simply by deducting the remediation or compliance cost estimate from the opinion of the value as if unaffected (unimpaired value). Rather, *cost, use* and *risk* effects can potentially impact the value of contaminated property. *Cost effects* primarily represent deductions for costs to remediate a contaminated property. These costs are usually estimated by someone other than the appraiser, and should include consideration of any increased operating costs due to property remediation. The appraiser should also be aware that the market might not recognize all estimated costs as having an effect on value. *Use effects* reflect impacts on the utility of the site as a result of the contamination. If the contamination and/or its cleanup rendered a portion of the site unusable, or limited the future highest and best use of the property, then there could be a use effect on value. *Risk effects* are typically estimated by the appraiser and often represent the most challenging part of the appraisal assignment. These effects are derived from the market's perception of increased environmental risk and uncertainty. The analysis of the effects of increased environmental risk and uncertainty on property value (environmental stigma) must be based on market data, rather than unsupported opinion or judgment.

In general, an opinion of the subject property's unimpaired value can be developed using the sales comparison approach [Standards Rule 1-4(a)], cost approach [Standards Rule 1-4(b)], and income approach [Standards Rule 1-4(c)]. Estimating the effects of environmental contamination on real property value usually involves the application of one or more specialized valuation methods. These methods should be consistent with the requirements related to the valuation approaches in USPAP.

**GO BACK**

# ADVISORY OPINION 13 (AO-13)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Performing Evaluations of Real Property Collateral to Conform with USPAP**
**APPLICATION: Real Property**

## THE ISSUE:

How can an appraiser operating under the *Uniform Standards of Professional Appraisal Practice* (USPAP) develop and communicate a valuation of real property collateral that complies with the *Interagency Appraisal and Evaluation Guidelines*?[1]

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References**

- The DEFINITIONS in USPAP include the following: *APPRAISAL: (noun) the act or process of developing an opinion of value; an opinion of value.*

- Also included in the DEFINITIONS is the following:
  *APPRAISER: one who is expected to perform valuation services competently and in a manner that is independent, impartial, and objective.*

   > <u>Comment</u>: *Such expectation occurs when Individuals, either by choice or by requirement placed upon them or upon the service they provide by law, regulation, or agreement with the client or Intended users, represent that they comply.*

- The SCOPE OF WORK RULE states in part, *Appraisers have broad flexibility and significant responsibility in determining the appropriate scope of work for an appraisal or appraisal review assignment.*

- Under STANDARD 1, in developing a real property appraisal, an appraiser must *be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal.*

- STANDARD 2 requires that a real property appraisal report *contain sufficient information to enable intended user(s) of the appraisal to understand the report properly.*

**Background**

The terms "appraisal" and "evaluation" have specific meanings and uses for institutions regulated by and under the rules and published guidelines of the Office of the Comptroller of the Currency (OCC), the Board of Governors of the Federal Reserve System (FRS), the Federal Deposit Insurance Corporation (FDIC), and the National Credit Union Administration (NCUA) (Agencies). The federal regulators require that an appraisal must conform to generally accepted appraisal standards as evidenced by USPAP, but that an evaluation need not conform to USPAP. The Glossary (Appendix D) to the December 2010, *Interagency Appraisal and Evaluation Guidelines* (Agencies' Guidelines) defines "evaluation" as: *A valuation permitted by the Agencies' appraisal regulations for transactions that qualify for the appraisal threshold exemption, business loan exemption, or subsequent transaction exemption.* However, appraisers who are bound by USPAP must recognize that an evaluation meets the USPAP definition of appraisal and appraisers must comply with USPAP when providing such a service.

---

1    *Interagency Appraisal and Evaluation Guidelines*, 75 *Federal Register* 77449 (December 2010)

Appraisers must be aware that each lender may have its own internal policies and requirements regarding the format and content of an evaluation. Those policies and requirements supplement the requirements stated in the Agencies' Guidelines. It is critical that the appraiser and the client have a mutual understanding of the intended use and the scope of work for the assignment. One way to enhance this mutual understanding is for the appraiser to request copies of the institution's evaluation standards or requirements pertinent to the assignment.

**ASB Opinion on Evaluations of Real Property Collateral**

USPAP defines an appraisal as:

*(noun) the act or process of developing an opinion of value;* an opinion of value.

An evaluation, per the Agencies' Guidelines, provides an estimate of market value. When that estimate of market value is the opinion of an individual who is required to comply with USPAP, that opinion (i.e., the evaluation) is, per USPAP, an appraisal. Therefore, an appraiser who is required to comply with USPAP must meet both the Agencies' requirements for an evaluation and the requirements of STANDARDS 1 and 2 and other applicable parts of USPAP.

Any request for an opinion of value of real property requires compliance with the SCOPE OF WORK RULE, which states in part:

*The scope of work must include the research and analyses that are necessary to develop credible assignment results.*

*An appraiser must be prepared to support the decision to exclude any investigation, information, method, or technique that would appear relevant to the client, another intended user, or the appraiser's peers.*

*An appraiser must not allow assignment conditions to limit the scope of work to such a degree that the assignment results are not credible in the context of the intended use.*

Under the SCOPE OF WORK RULE, any development requirements imposed on an assignment for evaluation of real property collateral would be considered assignment conditions.

If an individual is engaged to provide information or analysis that does not include an opinion of value, the assignment is neither an appraisal (per USPAP), nor an evaluation (per Agencies' Guidelines). However, if the individual providing that service is acting as an appraiser (as defined in USPAP), the assignment would be appraisal practice and the appraiser would be obligated to comply with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

Examples of requests for services that do not require a value conclusion include, but are not limited to:

- providing sales and rent data, listings, assessments and other similar information, without adjustments or determination of comparability to indicate or suggest the value of a specific property; and

- providing data describing a neighborhood, community, or any other real estate market segment and analyses on real estate market trends.

Appraisers who believe certain requests for evaluations of real property collateral are inconsistent with USPAP or contrary to law or regulation should explain their concerns to the potential client. If necessary, additional information and advice may be obtained from the appropriate federal regulator regarding the Agencies' Guidelines. If the client does not agree to an assignment that allows the appraiser to comply with USPAP and applicable law or regulation, the appraiser must decline or withdraw from the assignment.

### Illustration

A potential client requests evaluations of real property collateral for two properties from an appraiser who is required to comply with USPAP. The client wants to know the market value of the fee simple interest in the properties presented in very brief and concise reports. The client is knowledgeable about the market for the types of property involved.

In an assignment to appraise either property, the appraiser must determine the appropriate scope of work to develop credible assignment results based on the problem to be solved before considering the reporting requirements of STANDARD 2.

One evaluation is for an existing single-family residential fee simple property in connection with a real estate loan amount of less than $250,000. The client requests only the sales comparison approach for this residential evaluation.

If the appraiser determines that the sales comparison approach alone is sufficient to produce credible assignment results in the appraisal of the residential property, an evaluation (i.e., an appraisal) based solely on this approach can be performed in compliance with USPAP.

The other evaluation is for an existing office building, occupied by the owner (without a lease). The lender is considering a business loan amount of $1,000,000 or less that is not dependent on the sale of, or rental income derived from, real estate as the primary source of repayment.[2] The client requests only the income capitalization approach for this office building evaluation.

If the appraiser determines that the income capitalization approach alone is sufficient to produce credible assignment results in the appraisal of the office building property, an evaluation of this property based solely on the income approach can be performed. However, if the sales comparison approach is necessary for credible results, the appraiser should discuss the necessity of developing and reporting it with the client. The appraiser is ultimately responsible and must include whatever research and analysis is necessary for credible results in the scope of work.

### Reporting the Results of an Evaluation

When reporting evaluations, appraisers need to be aware that the evaluation content, described in the Agencies' Guidelines, may differ from the content required for appraisal reports under STANDARD 2. It is important that the contents of all appraisal reports satisfy the requirements of STANDARD 2 as well as all applicable assignment conditions. In many cases, an Appraisal Report may be required, but in other cases, a Restricted Appraisal Report may be sufficient if expanded to include all of the content requirements for an evaluation.[3]

In addition to the requirements in USPAP, an appraisal report used in an evaluation assignment must also comply with the *Interagency Appraisal and Evaluation Guidelines*. The December 2010 Agencies' Guidelines include the following report requirements:

> **XIII. Evaluation Content**
>
> *An evaluation should contain sufficient information detailing the analysis, assumptions, and conclusions to support the credit decision. An evaluation's content should be documented in the credit file or reproducible. The evaluation should, at a minimum:*
>
> - *Identify the location of the property.*
> - *Provide a description of the property and its current and projected use.*
> - *Provide an estimate of the property's market value in its actual physical condition, use and zoning designation as of the effective date of the evaluation (that is, the date that the analysis was completed), with any limiting conditions.*
> - *Describe the method(s) the institution used to confirm the property's actual physical condition and the extent to which an inspection was performed.*

---

2    National Credit Union Administration regulations do not contain an exemption from the appraisal requirements specific to member business loans.

3    See Advisory Opinion 38, *Content of an Appraisal Report and Restricted Appraisal Report*.

---

GO BACK

- *Describe the analysis that was performed and the supporting information that was used in valuing the property.*
- *Describe the supplemental information that was considered when using an analytical method or technological tool.*
- *Indicate all source(s) of information used in the analysis, as applicable, to value the property, including:*
  - *External data sources (such as market sales databases and public tax and land records);*
  - *Property-specific data (such as previous sales data for the subject property, tax assessment data, and comparable sales information);*
  - *Evidence of a property inspection;*
  - *Photos of the property;*
  - *Description of the neighborhood; or*
  - *Local market conditions.*
- *Include information on the preparer when an evaluation is performed by a person, such as the name and contact information, and signature (electronic or other legally permissible signature) of the preparer.*

**Conclusion**

An evaluation, when performed by an individual acting as an appraiser, is an appraisal. In addition to complying with USPAP, the appraiser must be aware of and comply with any additional assignment conditions and reporting requirements imposed on the assignment.

**GO BACK**

# ADVISORY OPINION 14 (AO-14)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Appraisals for Subsidized Housing**
**APPLICATION: Real Property**

## THE ISSUE:
Preparation of appraisals for subsidized housing in compliance with the *Uniform Standards of Professional Appraisal Practice* (USPAP) requires knowledge and experience that goes beyond typical residential appraisal competency. What guidance does USPAP provide for the appraisal of subsidized housing?

## ADVICE FROM THE ASB ON THE ISSUE:
### Relevant USPAP & Advisory References
- The COMPETENCY RULE states, in part:

    *Competency requires:*

    1. *the ability to identify the problem to be addressed; and*

    2. *the knowledge and experience to complete the assignment competently.*

- The COMPETENCY RULE also requires: *recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment*.

- The <u>Comment</u> to Standards Rule 1-1(a) states, in part:

    *Important changes in the cost and manner of constructing and marketing commercial, industrial, and residential real estate as well as changes in the legal framework in which real property rights and interests are created, conveyed, and mortgaged have resulted in corresponding changes in appraisal theory and practice. Social change has also had an effect...*

- Standards Rule 1-2, particularly (a), (b), (c)(iv), (e) and (h); Standards Rule 1-3(a) and (b); and Standards Rule 1-4(g)

### Identification of Subsidized Housing
Subsidized housing may be defined as single- or multifamily residential real estate targeted for ownership or occupancy by low- or moderate-income households as a result of public programs and other financial tools that assist or subsidize the developer, purchaser, or tenant in exchange for restrictions on use and occupancy. The United States Department of Housing and Urban Development (HUD) provides the primary definition of income and asset eligibility standards for low- and moderate-income households. Other federal, state, and local agencies define income eligibility standards for specific programs and developments under their jurisdictions.

### Competency Issues
Appraisers should be aware that the competency required to appraise subsidized housing extends beyond typical residential appraisal competency. Subsidized housing appraisals require the appraiser to understand the various programs, definitions, and pertinent tax considerations involved in the particular assignment applicable to the location and development. An appraiser should be capable of analyzing the impact of the programs and definitions in the local subsidized housing submarket, as well as in the general market that is unaffected by subsidized housing programs. Appraisers should also be aware of possible political changes that will affect the durability of the benefits and restrictions to subsidized housing projects and fully understand interpretation and enforcement of subsidy programs. An appraiser's lack of knowledge and understanding of the impact of the various influences that affect subsidized housing projects could lead to misleading conclusions. For example, subsidized housing projects may have differences

GO BACK

in income, expenses, and rates of returns when compared with nonsubsidized housing projects. Appraisers should reflect the actions of the participants in the market and avoid any stereotyped or biased assumptions.

**Property Rights Issues**

Subsidies and incentives that encourage housing for low- and moderate-income households may create intangible property rights in addition to real property rights and may also create restrictions that modify real property rights. The appraiser should demonstrate the ability to discern the differences between the real and intangible property rights and value the various rights involved. Low-Income Housing Tax Credits (LIHTCs) are an example of an incentive that results in intangible property rights that are not real property but might be included in the appraisal. Project-based rent subsidies are an example of a subsidy accompanied by restrictions that modify real property rights. Appraisers should be aware that tenant-based rent subsidies do not automatically result in a property right to the owner or developer of subsidized housing.

Standards Rule 1-2(e) allows the inclusion of intangible assets that are not real property in the appraisal. *When personal property, trade fixtures, or intangible assets are included in the appraisal, the appraiser must analyze the effect on value of such non-real property assets*, as required by Standards Rule 1-4(g).

A critical factor in all subsidized housing appraisals is the analysis of whether or not the various subsidies, incentives, and restrictions remain with the real property following a sale or foreclosure and thus are marketable property rights to be included in the appraisal.

**Value Definition Issues**

The value definition in any appraisal is a controlling factor of the bundle of rights to be considered in the appraisal. Standards Rule 1-2(c) requires an appraiser to identify the type and definition of value. Standards Rule 1-2(c) further required an appraiser to *ascertain whether the value is to be the most probable price*:

(i)  *in terms of cash; or*

(ii)  *in terms of financial arrangements equivalent to cash; or*

(iii) *in other precisely defined terms; and*

(iv) *if the opinion of value is to be based on non-market financing or financing with unusual conditions or incentives, identify the terms of such financing and any influences on value.*

The appraiser must determine which requirement(s) above applies to the specific definition selected or required by the client. The appraiser can then determine if the programs and intangible assets created by the programs affecting the subject property qualify under the selected or required market value definition. This determination requires competent knowledge of the programs and whether the programs qualify under (i), (ii), (iii), or (iv) above.

USPAP does not mandate market value appraisals, but it does require that the type and definition of value be identified.

In appraisal of subsidized housing, the value definition selected or required by the client and the reporting techniques used should be discussed with the client prior to agreeing to perform the assignment because the analyses may be based on general market terms, subsidized housing submarket financing with unusual conditions or incentives, both, or some other defined premise.

Subsidies and incentives should be explained in the appraisal report, and their effect on value, if any, needs to be reported in conformity with STANDARD 2.

**Market Analysis Issues**

Certain specific steps should be taken when appraising subsidized property. Research with housing organizations and public agencies should be completed to find appropriate data on financing, rental and occupancy restrictions, resale restrictions, and sales of comparably subsidized or restricted properties. Knowledge of the general markets and the subsidized housing submarkets should be evident in all analyses. The market analyses should also address the subject's ability to attract a sufficient number of subsidized tenants. Reversion projections should be based on interviews with market participants; any factual information from developments that have reached the expiration of their subsidies, incentives, and restrictions; and other relevant information.

GO BACK

# ADVISORY OPINION 17 (AO-17)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Appraisals of Real Property with Proposed Improvements**
**APPLICATION: Real Property**

## THE ISSUE:

Can either a current or a prospective value opinion for a property subject to completion of proposed improvements be provided in compliance with the *Uniform Standards of Professional Appraisal Practice* (USPAP)?

## BACKGROUND:

An appraisal of real property with proposed improvements presents complex analysis and reporting issues because some portion of the property appraised does not exist at the time of the appraisal. Consequently, an appraiser must use particular care when performing an appraisal of such property to ensure that the results are credible and the appraisal report is not misleading.

A client may have a legitimate need for either a current or a prospective opinion of value (or both) concerning proposed improvements to real property. This kind of appraisal may be performed for a variety of client types, such as lenders, developers, private investors, trusts, attorneys, government agencies, or insurance companies. Further, such an appraisal may be for purposes other than providing an opinion of market value.

Many real property appraisers have been uncertain whether a current value opinion, rather than a prospective value opinion, may be provided in compliance with USPAP for a property subject to completion of proposed improvements and, if so, which portions of USPAP are most relevant to the assignment.

Advisory Opinion 34 addresses how an appraiser may provide a prospective value opinion in a manner that is not misleading. This Advisory Opinion provides guidance in performing an assignment involving proposed improvements to real property, whether the purpose of the assignment is to develop a current value opinion or to develop a prospective value opinion.

The value opinion in an appraisal assignment involving proposed improvements is developed on the basis of one or more extraordinary assumptions. Using an extraordinary assumption always requires specific reporting steps. An appraiser must properly address the requirements set forth in Standards Rule 1-2(f) related to use of an extraordinary assumption in developing an appraisal and must address Standards Rules 2-2(a)(xiii) and (b)(xv) in reporting the appraisal opinions and conclusions so as to ensure that the results are credible and not misleading.

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References**
The following USPAP references are applicable when completing an assignment involving proposed improvements to real property:

- COMPETENCY RULE, as it relates to the complexity of an appraisal assignment involving proposed improvements;
- SCOPE OF WORK RULE particularly regarding laws, regulations, or guidelines which may augment USPAP;
- JURISDICTIONAL EXCEPTION RULE;

- STANDARD 1, particularly Standards Rules 1-1(a), 1-2(d), 1-2(e), 1-2(h), 1-3(a); and
- STANDARD 2, particularly Standards Rules 2-1(a), 2-1(c), and Standards Rule 2-2.

Additional guidance appears in the following Advisory Opinions:

- AO-7, *Marketing Time Opinions*;
- AO-30, *Appraisals for Use by a Federally Regulated Financial Institution*;
- AO-33, *Discounted Cash Flow Analysis*;
- AO-34, *Retrospective and Prospective Value Opinions*;
- AO-35, *Reasonable Exposure Time in Real and Personal Property Opinions of Value*.

Additional guidance appears in Advisory Opinion 7, which addresses marketing time opinions. AO-30, *Appraisals for Use by a Federally Regulated Financial Institution* addresses when other requirements may augment USPAP.

**General Comments**

Both current and prospective value appraisals subject to completion of proposed improvements to real property are permitted under USPAP. As noted in Advisory Opinion 34, a current value appraisal occurs when the effective date of appraisal is contemporaneous with the date of the report, and a prospective value appraisal occurs when the effective date of appraisal is after the date of the report.

Development of a value opinion(s) for a subject property with proposed improvements in a current value appraisal involves at least one hypothetical condition, specifically that the described improvements have been completed as of the date of value. The use of a hypothetical condition, in turn, imposes additional reporting requirements as set forth in Standards Rule 1-2(g) and Standards Rules 2-2(a)(xiii) and (b)(xv). The additional reporting requirements are to ensure that an intended user understands that:

(a) the improved subject property does not yet, in fact, exist as of the date of appraisal;

(b) the analyses performed to develop the opinion of value are based on a hypothesis, specifically that the improved subject property is assumed to exist when in fact it does not exist;

(c) certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and

(d) the appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

Development of a value opinion based on a hypothetical condition is addressed in Standards Rule 1-2(g). Use of a hypothetical condition is permitted when it is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison. An analysis based on a hypothetical condition must not result in an appraisal or appraisal review report that is misleading. The hypothetical condition must be clearly and conspicuously disclosed in the report with a description of the hypothetical condition and a statement that its use might have affected the assignment results.

There may be laws, regulations or guidelines that affect how and when a hypothetical condition may be used in an appraisal assignment. An appraiser should consider these assignment conditions, but he or she must make certain that developing and reporting a current value opinion under a hypothetical condition in accordance with the assignment conditions still results in an appraisal that complies with USPAP.

**Assignment Considerations**

An appraiser asked to complete an assignment involving proposed improvements to real property should consider and discuss with the client:

- the intended use of the appraisal report;
- the effective date of the appraisal and the date when the proposed improvements are expected to be complete;

---

30

**GO BACK**

- the physical and economic changes to the existing property and changes in the market for the property that may result from completion of the proposed improvement; and

- the possible change in market competition from other properties over the time frame of the improvement project.

It is important for an appraiser to ensure that the client knows that the differences in the information considered in the two types of analyses can result in significant differences between a current and a prospective value opinion concerning the same subject property.

Taken together, these factors and the client's needs determine whether it is most appropriate to develop:

- a current value opinion on the basis of a hypothetical condition that the proposed improvements already have been completed, or

- a prospective value opinion on the basis of an extraordinary assumption that the property will be improved as of a future date, as proposed.

If a prospective value opinion is the most appropriate, the appraiser should review and follow the guidance in Advisory Opinion 34 in the course of completing the assignment.

As stated in "General Comments" above, an appraisal of a property subject to completion of proposed improvements with a current date of value always involves use of at least one hypothetical condition (i.e., the proposed improvements have been completed as of the date of value), and this always requires reporting that the proposed improvements are appraised as if completed as described in the report, as of the date of value.

In an appraisal with a prospective date of value, the extraordinary assumption that the proposed improvements are complete as of that future date must be disclosed clearly and conspicuously. The appraiser also should report that the extraordinary assumption might have affected the assignment results.

An appraiser should carefully review Standards Rule 1-2(e) and determine whether the information available for analysis is sufficient to identify the extent and character of the proposed improvements. If sufficient information is not available, an appraiser may use an extraordinary assumption about the extent and character of the proposed improvements, if credible assignment results can still be developed. In an appraisal with a prospective date of value, the extraordinary assumption about the extent and character of the improvements is in addition to the extraordinary assumption about those improvements being completed on the future date of value.

A current value opinion assignment does not require an appraiser to provide a prospective value opinion. However, so as to not be misleading the appraisal report should clearly indicate the fact that the value of the property that actually exists as of the date of the report would be different from the value concluded for the property with the proposed improvements completed as described in the hypothetical condition(s) used in the appraisal.

**Illustrations:**

1. A client is considering financing the construction of a single-family residence. Construction is expected to be complete in six to eight months from the date of the appraisal report. No significant changes in market conditions are foreseeable during the construction period. The client requests a current value opinion based on the hypothetical condition that the improvements are complete as of the current date. Can such an appraisal be provided in compliance with USPAP?

   Yes, provided sufficient information about the extent and character of the proposed improvements is available or can be reasonably assumed under a hypothetical condition used for purposes of reasonable analysis in this case. Given the intended use of the appraisal (construction financing) and the lack of significant change in the market conditions during the construction period, in this case, a current value appraisal would not be misleading solely on the basis of the hypothetical condition that the improvements are complete as of a current date.

GO BACK

2. A client requests an appraisal to assist in establishing contract rent in a build-to-suit agreement. The agreement stipulates that contract rent will be based on a stated percentage of the market value of the property as if it were completed as of a current date. The client requests a current value opinion based on the hypothetical condition that the improvements are complete as of the current date. Can such an appraisal be provided in compliance with USPAP?

   Yes. Given the intended use of the appraisal, the use of the hypothetical condition is necessary for purposes of reasonable analysis and would not in itself result in a misleading appraisal.

3. A client is considering making a current loan on a hotel and requests an opinion of the current value. The current occupancy levels are below 60% and are not expected to improve for at least two years. The client has requested the appraiser to utilize a hypothetical condition which assumes that the occupancy level of the hotel is 70%. Can such an appraisal be provided in compliance with USPAP?

   No. The resulting appraisal would be misleading because of the combination of the intended use of the appraisal to make a current loan and the market conditions that are expected to affect the subject property.

4. A client is considering construction of a large apartment complex. The client expects construction to be complete in about two years. Currently, demand for similar apartment units is strong, but because of the amount of new construction under way or planned in the near future, vacancy levels are expected to rise from the current level (below 1 percent) to about 20 percent in two years.

   A. The client requests an appraisal with a current value opinion for use in obtaining financing from a non-regulated financial institution, based on the hypothetical condition that the apartment complex is complete and at stabilized occupancy. Can such an appraisal be provided in compliance with USPAP?

      No, because given the intended use and the foreseeable changes in market competition during the course of construction, a current value opinion for the property, as if complete, would most likely be misleading. A prospective value opinion, with an effective value date as of the expected completion date, would more realistically reflect market conditions affecting the subject property as proposed.

   B. The client requests an appraisal with a current value opinion for use in testing project feasibility or investment alternatives, based on the hypothetical condition that the apartment complex is complete and at stabilized occupancy. Can such an appraisal be provided in compliance with USPAP?

      Yes, because the intended use of the appraisal and the hypothesis, in this type of assignment, is for purposes of reasonable analysis and comparison. However, so as not to be misleading, the appraisal analyses should reflect the market risk resulting from the foreseeable trend in vacancy and its probable impact on cash flow and market competition, and the appraisal report must clearly indicate the intended use of the appraisal.

GO BACK

# ADVISORY OPINION 18 (AO-18)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Use of an Automated Valuation Model (AVM)**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

What steps should an appraiser take when using an AVM as a tool in the development of an appraisal or appraisal review concerning an individual property?

In addition, what steps should an appraiser take when he or she is using an AVM only to process information and communicate the AVM's output but is not performing an appraisal or appraisal review assignment?

## BACKGROUND:

This Advisory Opinion addresses how an appraiser may use an AVM.

An AVM is a computer software program that analyzes data using an automated process. For example, AVMs may use regression, adaptive estimation, neural network, expert reasoning, and artificial intelligence programs.

The output of an AVM is not, by itself, an appraisal. An AVM's output may become a basis for appraisal or appraisal review if the appraiser believes the output to be credible for use in a specific assignment.

An appraiser can use an AVM as a tool in the development of an appraisal or appraisal review. However, the appropriate use of an AVM is, like any tool, dependent upon the skill of the user and the tool's suitability to the task at hand.

This Advisory Opinion applies when an appraiser uses an AVM in connection with an individual property. This Advisory Opinion does not apply to mass appraising.

An appraiser needs to know, before using an AVM, whether it is to be used:

1. to perform an appraisal or appraisal review or
2. solely to provide the client with AVM output.

When an appraiser uses an AVM to develop his or her own opinions or conclusions in an appraisal or appraisal review assignment, all of the USPAP rules governing that assignment apply and all of this Advisory Opinion is relevant.

An appraiser is not performing an appraisal or appraisal review assignment when he or she simply runs an AVM by using information provided by the client and:

1. does not alter the input or affect the output of the AVM, and
2. does not communicate his or her own appraisal or appraisal review regarding the AVM's output.

If the appraiser uses an AVM only to provide the client with the AVM output, the references to the Conduct section of the ETHICS RULE and the "Communicating the AVM Output" section in this Advisory Opinion are relevant.

---



## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP References**

- <u>Conduct</u> section of the ETHICS RULE:

  *An appraiser must not engage in criminal conduct.*

  *An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests.*

Further,

  *An appraiser must not communicate assignment results with the intent to mislead or to defraud. An appraiser must not use or communicate a report that is known by the appraiser to be misleading or fraudulent.*

- The COMPETENCY RULE states, in part:

  *... Competency requires: (1) the ability to properly identify the problem to be addressed; and (2) the knowledge and experience to complete the assignment competently; and (3) recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.*

- The <u>Comment</u> to the COMPETENCY RULE states, in part:

  *Competency may apply to factors such as, but not limited to, an appraiser's familiarity with a specific type of property or asset, a market, a geographic area, an intended use, specific laws and regulations, or an analytical method.*

- SCOPE OF WORK RULE:

  *The scope of work must include the research and analyses that are necessary to develop credible assignment results... Appraisers have broad flexibility and significant responsibility in determining the appropriate scope of work for an appraisal or appraisal review assignment. The appraiser must be prepared to demonstrate that the scope of work is sufficient to produce credible assignment results... An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.*

- Standards Rule 1-1(a):

  *An appraiser must be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisa*l.

- Standards Rule 1-1(b):

  *An appraiser must not commit a substantial error of omission or commission that significantly affects an appraisal.*

- Standards Rule 1-1(c):

  *An appraiser must not render appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affect the credibility of those results.*

- Standards Rule 1-6(b):

  *An appraiser must reconcile the applicability and relevance of the approaches, methods and techniques used to arrive at the value conclusion(s).*

- STANDARD 2:

  *In reporting the results of a real property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.*

- STANDARD 3:

  *In developing an appraisal review assignment, an appraiser acting as a reviewer must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal review.*

GO BACK

- STANDARD 4:

  *In reporting the results of an appraisal review assignment, an appraiser acting as a reviewer must communicate each analysis, opinion, and conclusion in a manner that is not misleading.*

- Advisory Opinion 37, *Computer Assisted Valuation Tools*.

## Competency

When an appraiser is asked to use an AVM in an assignment, the appraiser must ensure that he or she can comply with the requirements of the COMPETENCY RULE both prior to accepting the assignment and in the course of performing it.

In an appraisal assignment, an appraiser must have a basic understanding of how the AVM works in order to reasonably determine that:

1. use of the AVM is appropriate for the assignment;
2. the output of the AVM is credible for use in the assignment; and
3. the AVM does not exclude relevant market measures or factual information necessary for a credible calculation.

A client may suggest or request the use of an AVM in an appraisal or appraisal review assignment, but ultimately the appraiser is responsible for the decision to use or not use the AVM and its output. The appraiser must be able to reasonably conclude that the AVM's output is credible before deciding to use the AVM or rely on its output. For example, in an appraisal assignment, the credibility of the AVM output may be established by comparison to the subject market. If the appraiser concludes that using the AVM output in an assignment would be misleading, the appraiser should either use other tools to perform the analysis or decline or withdraw from the assignment.

## Under What Conditions May AVMs Be Used?

There are five critical questions to which the appraiser should answer "yes" before deciding to use an AVM in an appraisal or appraisal review assignment:

1. Does the appraiser have a basic understanding of how the AVM works?
2. Can the appraiser use the AVM properly?
3. Are the AVM and the data it uses appropriate given the intended use of assignment results?
4. Is the AVM output credible?
5. Is the AVM output sufficiently reliable for use in the assignment?

The answers to these questions may be affected by the degree to which the appraiser can interact with the AVM. The decision to use an AVM may also be affected by support information supplied by the AVM's developer, the appraiser's previous experience in using the AVM, or other available information.

## Database

Credibility of the AVM output depends on the quality of its database and how well the AVM is designed to analyze that database. When using an AVM in an appraisal or appraisal review assignment, the appraiser must have reason to believe the AVM appropriately uses data that are relevant.

## Understanding and Control of the AVM

When using an AVM in an appraisal or appraisal review assignment, an appraiser should have a basic understanding of how the AVM analyzes data to determine whether the AVM measures and reflects market activity for the subject property. The appraiser does not need to know, or be able to explain, the AVM's algorithm or intricacies of its statistical or mathematical formulae. However, the appraiser should be able to describe the AVM's overall process and verify that the AVM is consistent in producing results that accurately reflect prevailing market behavior for the subject property.

AVMs differ in the number and type of data characteristics as well as in the volume of data analyzed. The appraiser should know which characteristics (e.g., size, location, quality) are analyzed and how the analysis is tested for accuracy and reasonableness. The appraiser should ascertain that the characteristics analyzed are those to which the market responds.

GO BACK

Some AVMs allow the appraiser to select the data analyzed on the basis of, for example, distance from subject, size, or age of the improvements. An appraiser's ability to change the AVM's selection parameters may affect the appraiser's decision to use or rely on the AVM output.

The appraiser should be aware that the AVM may not perform consistently given the same input criteria. The appraiser should be confident of the AVM's credibility when applied to a specific property. The appraiser decides whether to rely on the AVM output, regardless of the AVM's overall test performance. In some cases, the appraiser may accept the AVM's output, while in other cases that same AVM's output would not be acceptable.

### Communicating the AVM Output

Appraisers must ensure that their communication of an AVM's output is not misleading.

An AVM's output is not, by itself, an appraisal, and communication of an AVM's output is not, in itself, an appraisal report. When an AVM is used in an appraisal or appraisal review assignment, information furnished about an AVM in the appraiser's report must satisfy the reporting requirements applicable to the type of report provided (e.g., in the case of a real property appraisal, an Appraisal Report or Restricted Appraisal Report). The appraiser should cite the name and version of the AVM software and provide a brief description of its methods, assumptions, and level of allowed user intervention. The report should, to the extent possible, identify the database (e.g., Multiple Listing Services) and the data analyzed.

An appraiser bound by USPAP may be asked to run an AVM and communicate its output without performing an appraisal or appraisal review assignment. For example, an appraiser may be asked to simply enter property characteristics provided by the client but not alter the input or affect the AVM's output. In this specific instance, the appraiser is not acting in the capacity of an appraiser but rather is functioning only as an AVM operator. In such a situation, an appraiser must carefully avoid any action that could be considered misleading or fraudulent. The appraiser should take steps to ensure that communication of the AVM's output is not misconstrued as an appraisal or appraisal review report. For example, appraisers should:

1.  not communicate their opinions or conclusions as an appraiser regarding the credibility or reliability of the AVM's output;

2.  not provide an appraiser's certification or statement of limiting conditions in connection with the AVM's output; and

3.  ensure that their role as only an AVM operator is clearly indicated if their signature or other identification marks appear on document(s) used to communicate the AVM's output.

### Analyzing an AVM's Effectiveness

An appraiser bound by law, regulation, or an agreement to comply with USPAP may be asked to analyze and comment on the effectiveness of an AVM for a stated intended use. Such a request involves an aspect of value and thereby this would be an appraisal practice service, but one for which USPAP has no specific performance standards. Before agreeing to perform such an assignment, an appraiser bound to comply with USPAP must ensure compliance with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE. To meet the COMPETENCY RULE, at a minimum, the appraiser should also have a basic understanding of how the AVM works.

### Review of the Output of an AVM

An appraiser bound by law, regulation, or an agreement to comply with USPAP may be asked if the output of an AVM is credible for a specific property, given the intended use of the AVM's output. Such a request involves an aspect of value and thereby making this determination is an appraisal practice service, but one for which USPAP has no specific performance standards. The appraiser must ensure compliance with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

### Review of an Appraisal Report Containing Output of an AVM

An appraiser may be asked to review an appraisal report that includes an opinion of value based on the output of an AVM. This is an appraisal review assignment under USPAP which must follow the requirements of STANDARDS

3 and 4. This kind of appraisal review assignment may be performed if the appraiser conducting the review understands how the AVM works and can form an opinion as to the adequacy and relevancy of the data and the appropriateness of the analysis, based on the information provided in the report under review.

### Use of an AVM in an Appraisal Review Assignment

An AVM may be used in the process of reviewing a real property appraisal report. The appraisal reviewer may use the AVM to test the reasonableness of the value conclusion in the report under review if the appraisal reviewer has a basic understanding of how the AVM works, can use the AVM properly, determines that use of the AVM is appropriate for the appraisal review assignment, and believes the AVM output is credible and sufficient for the appraisal review assignment.

### Illustrations:

1(a). Staff Appraiser D, who has access to market databases, is asked to use an AVM to process information. When Appraiser D runs the AVM, she has done no other appraisal research. Appraiser D does not apply any of her appraisal knowledge or judgment in operating the AVM. Appraiser D has entered only property characteristics provided by the client and does not know how the AVM analyzes the data. Is the AVM output an appraisal?

No. The AVM output by itself is not an appraisal. Appraiser D did not apply her appraisal knowledge, judgment, or expertise, nor did she represent that the output was her own opinion of value.

Appraiser D must be very careful in communicating the AVM output to ensure that there is no misunderstanding as to her role in operating the AVM or communicating its output. For example, Appraiser D should:

1. not communicate her opinions or conclusions as an appraiser regarding the credibility or reliability of the AVM's output;

2. not provide an appraiser's certification or statement of limiting conditions in connection with the AVM's output; and

3. ensure that her role as only an AVM operator is clearly indicated if her signature or other identification mark appears on documents used to communicate the AVM's output.

1(b). Staff Appraiser D receives AVM output from a coworker who is not an appraiser. Appraiser D is requested to determine if the AVM output is credible, given the intended use. What can Appraiser D do?

Appraiser D should not express an opinion regarding value. However, the request involves an aspect of value and, therefore, Appraiser D can indicate if the AVM output is credible. USPAP includes no specific performance standards for this kind of service. However, because performing the service requires an appraiser to consider an aspect of property value, it is part of appraisal practice. Appraiser D must, therefore, ensure compliance with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

1(c). After staff Appraiser D has received the AVM output, can she incorporate the information into the appraisal process?

Yes. However, Appraiser D must be able to understand how the AVM works and determine that the information analyzed is credible and reliable.

2. Appraiser V provides residential appraisals to Client A, whose intended use is to document security for equity lines of credit. Appraiser V has determined that Orange Box AVM is sufficiently reliable to use as a tool in these appraisals. Orange Box AVM was recently used by Appraiser V on a house in a suburban single-family residential subdivision.

Client B requests Appraiser V to use Orange Box AVM, alone, for a relocation appraisal assignment on an identical house in the same subdivision. Can Appraiser V use Orange Box AVM alone in this relocation appraisal assignment?

AVM itself and the AVM output for Client A's needs may not be appropriate for Client B's needs.

Client A's intended use of the appraisal is to document security for an equity line of credit. Typically, Client A's lending decision is based primarily on the homeowner's capacity to pay the debt and only secondarily on the value of the house. The reliability expectation of the value opinion needed by Client A is relatively low.

The intended use of the relocation appraisal for Client B is to develop an opinion of a sale price of the house under very specific conditions. Typically, the reliability expectation of the opinion needed by Client B is relatively high because their intended use involves a near-term transfer of the house, with immediate financial implications. Appraiser V must determine if Orange Box AVM's output is sufficiently reliable to meet Client B's stated expectations.

3(a).  Appraiser A developed a regression analysis model that suggests a relationship between the size of a residence and the price per square foot of similar residences in a specific market. This relationship has been confirmed by market behavior, and the database used is believed to be reliable. Can the appraiser use the regression analysis model in other appraisal assignments of similar properties in the same market?

Yes, because the appraiser knows how the regression analysis model works, has independently tested the conclusions it provides, and believes the database is reliable. However, the appraiser must consider whether the AVM output is credible and reliable for each assignment on a case by case basis.

3(b).  Appraiser A's friend, Appraiser B, works in a different market area. Appraiser B is impressed with Appraiser A's model and wants to use the model in Appraiser B's market area. Can Appraiser B use Appraiser A's model?

Yes, if Appraiser B understands how Appraiser A's model works and verifies by independent testing that the model produces reliable results in Appraiser B's market area and that the database used by Appraiser B reflects behavior in Appraiser B's market area. However, the appraiser must consider whether the AVM output is credible and reliable for each assignment on a case-by-case basis.

4(a).  A client of Appraiser A requests that Appraiser A use Blue Box AVM. The client says, "Since we are only doing residential appraisals, you can skip the cost and income approach. To lower the cost of the appraisal just use the Blue Box AVM results as the basis for your value conclusion." The client also says, "Blue Box AVM makes thirteen adjustments, and that is all that the appraiser needs to be concerned with." The Blue Box AVM developer feels that appraisers cannot understand this new technology and that appraisers do not need to know how the thirteen adjustments are made. What should Appraiser A do?

Appraiser A should:

1.  learn how the Blue Box AVM works;

2.  determine if he can use the AVM properly; and,

3.  given the intended use, determine if the output of Blue Box AVM is credible and sufficiently reliable for use in the assignment.

If Appraiser A cannot understand how the Blue Box AVM works or concludes that the results are not credible, given the intended use, Appraiser A should discuss the issue with the client. This discussion may result in a modified scope of work or in the appraiser declining the assignment.

4(b).  Another client requests that Appraiser A consider Green Box AVM. The client indicates that Appraiser A can modify six of the thirteen items analyzed in Green Box AVM, such as the distance within which the comparables are selected and the size range (square footage) of the comparables. The developer of Green Box AVM will also describe how the AVM works and provide the results of test data, which indicate that the model is reliable. What should Appraiser A do?

Appraiser A should follow the same steps described in 4(a).

---

38

**GO BACK**

# ADVISORY OPINION 19 (AO-19)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Unacceptable Assignment Conditions in Real Property Appraisal Assignments**
**APPLICATION: Real Property**

## ISSUE:

All real property appraisal assignments involve conditions that affect the appraiser's scope of work and the type of report. What types of assignment conditions are unacceptable?

## BACKGROUND:

Many residential property appraisers report requests for service where the caller includes statements or information in the request similar to the following:

1. We need comps for (property description) that will support a loan of $_____; can you provide them?

2. Sales Price: _____

3. Approximate (or minimum) value needed: _____

4. Amount needed: _____

5. Owner's estimate of value: _____

6. If this property will not appraise for at least _____, stop and call us immediately.

7. Please call and notify if it is NOT possible to support a value at or above _____ BEFORE YOU PROCEED!!!!

Appraisers report that the caller usually makes it clear that they do not want the appraiser to do any fieldwork. Some callers refer to the service requested as a "comp check" while others refer to it as a "preliminary appraisal" or use some terms other than appraisal (such as preliminary evaluation, study, analysis, etc.). Some callers indicate that if the numbers will not work, the appraiser can send a bill for research services or a "preliminary" inspection. Other callers promise future assignments if the appraiser can make the present deal work.

Appraisers ask, "Can I respond to such requests without violating USPAP and, if so, how?"

## ADVICE FROM THE ASB ON THE ISSUE:

### Relevant USPAP & Advisory References

Appraisers receiving requests for services that include the kind of information and situations described in the Background section of this Advisory Opinion should carefully review:

- The Conduct and Management sections of the ETHICS RULE, particularly in regard to assignments offered under condition of "predetermined opinions or conclusions" or compensation conditioned on the reporting of a predetermined value result, a direction in assignment results that favors the cause of the client, the amount of a value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.

- The definitions of "Appraisal," "Appraisal Practice," "Assignment" and "Scope of Work" in the DEFINITIONS section of USPAP.

- Standards Rule 1-1(b), particularly as it relates to diligence in the level of research and analysis necessary to develop credible opinions and conclusions.

- Standards Rules 1-2(f), (g), and (h), regarding identification of the scope of work necessary to complete an assignment and any extraordinary assumptions or hypothetical conditions necessary in an assignment.
- Standards Rules 1-5(a) and (b), regarding the analysis of current or historical market activity regarding the property appraised.
- The SCOPE OF WORK RULE, with particular attention to the appraiser's responsibility in connection with the scope of work decision and disclosure obligations
- As guidance, Advisory Opinions 13 and 38.

## Unacceptable Conditions

Certain types of conditions are unacceptable in any assignment because performing an assignment under such conditions violates USPAP. Specifically, an assignment condition is unacceptable when it:

- precludes an appraiser's impartiality, because such a condition destroys the objectivity and independence required for the development and communication of credible results;
- limits the scope of work to such a degree that the assignment results are not credible, given the intended use of the assignment; or
- limits the content of a report in a way that results in the report being misleading.

## Acceptable Assignment Conditions

The intended use of the assignment results affect whether assignment conditions are acceptable. Some assignment conditions may be acceptable in one type of assignment but not in another. An appraiser should carefully consider the information provided by the client in a prospective assignment before agreeing to perform or declining the assignment. (See Advisory Opinion 36.)

In the highly competitive financial services market, cost versus benefit is always an issue. Residential appraisers, particularly, have seen an increase in the use of sophisticated loan application screening tools by their lender-clients. Many lenders believe an appraiser can enhance their screening efforts by doing "preliminary work" that they do not view as an "appraisal."

Other client groups also ask appraisers to provide services under conditions that limit the appraiser's scope of work. Investors, trust administrators, and portfolio account managers often require opinions and data from appraisers in order to make decisions. Attorneys often rely on appraisers in counseling their clients and in preparing for litigation.

When considering a request for service, appraisers should ascertain:

- whether the service involves an appraisal,
- what levels of risk are associated with the service, and
- whether there are any unacceptable conditions attached to the assignment.

Appraisers should take care to communicate with prospective clients to reach a common understanding about assignment conditions. Further, the appraiser and client need to recognize that:

1) **the type of assignment in each request described in the Background section of this Advisory Opinion is an appraisal.**

If an appraiser is asked whether a specific property has a value (a point, a range, or a relationship to some benchmark), that request is for an opinion of value (an appraisal). Appraisers, obligated to comply with USPAP, must develop a real property appraisal in accordance with STANDARD 1. Reporting that value opinion must be accomplished in accordance with STANDARD 2.

Appraisers, like other professionals, must ensure that those who use their services recognize the amount of work required — and the expertise needed — to develop a credible value conclusion about a property.

**GO BACK**

However, this does not mean that the appraiser cannot provide an economic and competitive service. Indeed, the *Uniform Standards of Professional Appraisal Practice* recognize the need for different kinds of appraisals. A competent appraiser can vary the scope of work in an assignment, in accordance with the type and definition of value and intended use of the appraiser's opinions and conclusions in the assignment, and remain in compliance with USPAP.

2) **assignment limitations affect the level of risk accepted by each party in an assignment;**

Appraisers and users of appraisals should recognize that assignment limitations affect the reliability of an appraiser's opinions and conclusions. In some assignments, an appraiser can reasonably apply extraordinary assumptions to compensate for assignment limitations. In other situations, the use of the same assumptions may not be acceptable.

When the intended use is to screen a potential business for feasibility, the use of assumptions or extraordinary assumptions is more appropriate than when the intended use is for loan documentation or loan settlement. Because intended users' reliance on an appraisal may be affected by the scope of work, the report must enable them to be properly informed and not misled.

3) **assignment conditions that compromise an appraiser's impartiality and objectivity in an assignment are unacceptable.**

While a client may feel that offering preference in current or future assignments on the basis of "making the numbers work" in a specific assignment is appropriate, attaching such a condition to an assignment compromises an appraiser's impartiality and destroys the appraiser's credibility.

The *Uniform Standards of Professional Appraisal Practice* is explicit about such matters. Agreeing to perform an appraisal assignment under such a condition violates the <u>Conduct</u> section of the ETHICS RULE in USPAP, which states, in part:

> *An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests.*

> *An appraiser must not agree to perform an assignment that includes the reporting of predetermined opinions and conclusions.*

Furthermore, accepting compensation for completing an appraisal assignment under such a condition violates the <u>Management</u> section of the ETHICS RULE in USPAP, which states:

> *An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*

> *1.   the reporting of a predetermined result (e.g., opinion of value);*

> *2.   a direction in assignment results that favors the cause of the client;*

> *3.   the amount of a value opinion;*

> *4.   the attainment of a stipulated result (e.g., that the loan closes or taxes are reduced); or*

> *5.   the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.*

**Illustrations:**

Some of the requests shown in the Background section of this Advisory Opinion share common characteristics. Possible responses to each common group of requests could be:

1. *We need comps for (a specific property) that will support a loan of _____; can you provide them?*

   "Maybe, but I'll need to research the market to know whether the 'comps' will support a value range relative to the loan amount. In doing this, I will be deciding which sales are 'comps' and what those 'comps' mean. Those decisions will result in a range of value for your prospective borrower's property, which is an appraisal.

You also need to recognize that there are risks in this kind of assignment. You should realize that my value conclusion could change if I subsequently perform an appraisal. Under the research and analysis limitations you suggest, I would not have verified some of the data and would have to use extraordinary assumptions about the market data and your borrower's property information. I would not have performed some of the analyses steps I might complete in an appraisal assignment without those limitations. If all of that is agreeable to you, we can proceed."

2. *Sales Price:* _____

"As long as the amount is only to inform me of the pending contract [or of the sale price] and is not a condition for your placement of this assignment with me, we can proceed. However, if that amount is a condition of this assignment, agreeing to perform an assignment under that condition violates professional ethics."

Note: A sale price (in a pending or a settled transaction) is part of the information an appraiser is required to ascertain in accordance with Standards Rules 1-5(a) and (b). Receiving this information with a request for service is appropriate, but agreeing to perform this assignment with the price an assignment in an agreement of sale, option, or listing or a sale price in a settled transaction as a predetermined value in the assignment violates USPAP.

3. *Approximate (or minimum) value needed:* _____

4. *Amount needed:* _____

5. *Owner's estimate of value:* _____

"As long as the amount is only to inform me of your objectives or someone else's opinion and is not a condition for your placement of this assignment with me, we can proceed. However, if that amount is a condition of this assignment, agreeing to perform an assignment under that condition violates professional ethics."

6. *If this property will not appraise for at least* _____, *stop and call us immediately.*

7. *Please call and notify if it is NOT possible to support a value at or above* _____ *BEFORE YOU PROCEED!!!!*

"Your request is acknowledged, but it is important for you to be aware that I must develop an appraisal before I can tell you whether the property will support the value indicated. It is also important for you to be aware that your statement of that amount with this request for service does not, in my view, establish a 'condition' for my performing the appraisal. If you intend it to be a condition for performing the assignment, I cannot agree to perform the assignment because it violates professional ethics."

**Research Illustration:**

The foregoing illustrations all include an appraisal assignment. In some situations, a client will request a service that is not an appraisal or appraisal review assignment as defined in USPAP. The service to be performed by the appraiser in the following illustration is:

- not an appraisal assignment (the appraiser does not develop a value opinion); and

- not a real property appraisal review (there is no appraisal to review).

The caller in this illustration is usually in the process of making a business decision and needs impartial and objective information but has not yet decided whether to pursue the matter at hand. The caller knows there is the potential for needing an appraisal, depending, in part, on what the sales data shows. The caller also believes that, if the data indicates that an appraisal is worthwhile, having that work completed by the appraiser in that subsequent assignment will lessen the time required to perform an appraisal. The prospective client may ask:

"We want you to check your data resources to see if there are sales within the past six months that are within one mile of [address]. If you find some, we may order an appraisal from you."

**GO BACK**

One possible response would be:

"If what you want is only the sales of properties shown in the databases available to me with the criteria you specified, I can do that research and send you the result. Then you can decide what you think your client's property is worth. If I do only that, it is just research and is not an appraisal.

However, you need to recognize that there are risks if you decide to have the research done that way. If you decide to limit my work to just gathering the sales data using the research criteria you set, you are taking the risk that those criteria are both adequate and appropriate to find all of the market data relevant to your client's property. You also take the risk that any appraiser's analysis of that data would result in a value conclusion within the price range suggested by the sales data assembled using your criteria. There is no assurance that such would be the case."

## Staff or Multi-Appraiser Firm Context

The foregoing illustrations reflect communications between a client and an appraiser in the context of the appraiser as an independent contractor (fee appraiser).

In a staff context, such as where the appraisal function is established as a business or agency unit, the part of the entity that uses the appraiser's opinions and conclusions represents the "client" (intended user) and the part that completes the assignment represents the "appraiser."

In that context, the "assignment" originates from the "intended user" part of the entity. The appraisal unit's response to an "intended user" in situations like those in the foregoing illustrations reasonably could be similar because imposing assignment conditions that compromise an appraiser's impartiality and objectivity is unacceptable, whatever the setting.

However, the example responses in the illustrations do not apply to the customary interaction and dialogue that occurs between appraisers within organizations or peers in multi-appraiser firms. Such interaction and dialogue within the unit or group that develops the opinions and conclusions in an assignment is not the same as communicating opinions and conclusions to an intended user.

GO BACK

# ADVISORY OPINION 20 (AO-20)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

A client may want appraisers, who are functioning as a reviewer, to develop and report their own opinion of value (i.e., an appraisal) within an appraisal review assignment. This leads to two questions:

How does the assignment change when the reviewer's scope of work includes the development of the reviewer's own opinion of value?

What language in appraisal review reports indicates when the reviewer did or did not develop an opinion of value?

## BACKGROUND:

Appraisal review is a specialized area of appraisal practice. Appraisal reviews are used in a variety of business, governmental, and legal situations and also have an important role in the enforcement of professional standards.

STANDARDS 3 and 4 allow the reviewer to address all or part of the work under review (also referred to in this Advisory Opinion as the "original work"). In every appraisal review assignment, the reviewer is required to *"…identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal review."* The reviewer's opinion about the quality of the work under review can include addressing its completeness, relevance, appropriateness, and reasonableness, all in the context of the requirements applicable to that work.

However, a client may also want the reviewer to develop and report his or her own opinion of value (an appraisal) within an appraisal review assignment. In this instance, the appraisal review assignment is actually a two-stage assignment: an appraisal review *plus* a value opinion by the reviewer.

The purpose and intended use together, of an appraisal review assignment, affect the scope of work in an assignment. Therefore, it is essential that reviewers clearly identify the purpose and intended use of the appraisal review and establish a well-defined scope of work with their client to ensure a clear understanding of what steps are and are not necessary in an appraisal review assignment.

This Advisory Opinion applies to both STANDARDS 3 and 4, and provides guidance to help appraisers, clients, and other users or readers of an appraisal review report:

A. recognize how terminology used in STANDARDS 3 and 4, and in this Advisory Opinion prevents confusion as to the function the reviewer is fulfilling in an appraisal review assignment;

B. understand how the purpose of the appraisal review and the intended use of the appraisal review results affect the scope of work in an appraisal review assignment;

C. recognize how the scope of work changes when an appraisal review assignment includes a requirement for the reviewer to develop (STANDARD 3) and report (STANDARD 4) his or her own opinion of value concerning the subject property of the work under review; and

D. understand how the language in an appraisal review report can be used to indicate whether a value opinion was or was not developed by the reviewer.

**GO BACK**

## ADVICE FROM THE ASB ON THE ISSUE:

### Relevant USPAP & Advisory References

- DEFINITIONS section, specifically the definition of "Appraisal," "Appraisal Review," and "Assignment"
- STANDARD 3, Appraisal Review, Development
- STANDARD 4, Appraisal Review, Reporting

Portions of the referenced material are cited in this Advisory Opinion. An appraiser performing an appraisal review assignment should carefully study the complete text to ensure a proper understanding of the requirements and the text in STANDARDS 1, 5, 7, or 9, as applicable, as well as those in STANDARDS 3 and 4.

### A. Terminology

When reading the references cited above, appraisers performing appraisal review assignments (referred to as "reviewers" in USPAP) should note that the terminology used in STANDARDS 3 and 4 have very specific meanings.

The term "Appraisal Review" is used in USPAP to identify the activity of a reviewer in an appraisal review assignment. Appraisers sometimes use such terms as "Desk Review," "Field Review," "Complete Review," "Limited Review," "Technical Review," and "Administrative Review." However, without appropriate explanation, these terms and phrases can result in misunderstanding about the function being performed by a reviewer. While such terms may be convenient labels for use in a business setting, they do not necessarily impart the same meaning in every situation.

Rather than simply using labels, reviewers should also accurately define the scope of work — in fact, Standards Rule 3-2(g) requires the reviewer to "...*determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE*" and Standards Rule 4-2(g) requires the reviewer to *"state the scope of work used to develop the appraisal review..."* These requirements are designed to ensure that an intended user of appraisal review results is not misled as to the reviewer's scope of work and the basis for his or her opinions and conclusions.

The terms "Review Appraisal" and "Review Appraiser" are also sometimes used in practice, primarily to refer to the marketing of services or to an appraiser's functional status in employment. These phrases are not used in STANDARDS 3 and 4, in part to avoid giving confusing implications, such as, for example, the impression that an appraisal is always part of a review.

### B. How purpose and intended use affect scope of work

A reviewer's scope of work in an appraisal review assignment is determined primarily by the purpose(s) of the assignment and the intended use of the assignment results. Standards Rule 3-2(b) requires, in part, that the reviewer must **"identify the intended use of the reviewer's opinions and conclusions."** In addition, Standards Rule 3-2(c) states the reviewer must **"identify the purpose of the appraisal review, including whether the assignment includes the development of the reviewer's own opinion of value or review opinion related to the work under review."**

Examples of intended use include (without limitation) quality control, audit, qualification, or confirmation. Each type of intended use affects the scope of work that may be appropriate for a particular appraisal review assignment.

As examples, a client may want the reviewer to develop (STANDARD 3) and report (STANDARD 4) an opinion as to the quality of another appraiser's work, *and*:

1. only state the corrective action to be taken by the appraiser with regard to curing any deficiency, leaving the client to decide whether to interact with the appraiser to accomplish the correction; or

2. act on behalf of the client to interact with the appraiser who prepared the original work to ensure any deficiency is appropriately corrected by that appraiser; or

3. make corrections to cure an error, such as a mathematical miscalculation, by showing what the calculation would have been if correct but without expressing the result as the reviewer's own opinion of value; or

4. make corrections to cure a deficiency, expressing the result as the reviewer's own opinion of value, which is to be developed within the same scope of work as was applicable in the assignment that generated the original work; or

5. make corrections to cure a deficiency, expressing the result as the reviewer's own opinion of value, which is to be developed using a different scope of work than was applicable in the assignment that generated the original work; or

6. regardless of the appraisal review result, develop his or her own opinion of value using the same scope of work as was applicable in the assignment that generated the original work; or

7. regardless of the appraisal review result, develop his or her own opinion of value using a different scope of work than was applicable in the assignment that generated the original work.

In Examples 1, 2, and 3 the reviewer has not taken any steps to offer his or her own opinion of value, and therefore, has not bridged over into the appraisal stage.

In Examples 4, 5, 6, and 7, the appraisal review assignment is actually a two stage assignment—an appraisal review *plus* a value opinion by the reviewer. It is also important to note that this second stage occurs even if the reviewer concurs with the value opinion in the original work. This is because a reviewer's concurrence in a value opinion developed by another appraiser converts it to the reviewer's *own* opinion of value—in effect, the reviewer is taking ownership of that value by concurring with it. As such, it constitutes a value opinion (i.e., appraisal) by the reviewer.

In Examples 6 and 7, the client might, alternatively, engage the reviewer (as an appraiser) in a separate assignment to perform an appraisal outside the context of the appraisal review assignment.

In any case, the reviewer must carefully develop the scope of work as required by Standards Rule 3-2(g) and state the scope of work in the report as required by Standards Rule 4-2(g). The concluding language used (see illustrations to follow) should also be consistent with the scope of work decision.

**C. Scope of work and the reviewer's opinion of value**

An appraisal review assignment that includes a requirement for the reviewer to develop his or her own opinion of value imposes on the reviewer an expanded scope of work. This additional scope of work requirement is set forth in the <u>Comment</u> to Standards Rule 3-2(g), which states, in part:

> ***Determine the scope of work necessary to produce credible assignment results in accordance with the SCOPE OF WORK RULE.***

> <u>Comment</u>: *Reviewers have broad flexibility and significant responsibility in determining the appropriate scope of work in an appraisal review assignment. Information that should have been considered by the original appraiser can be used by the reviewer in developing an opinion as to the quality of the work under review. Information that was not available to the original appraiser in the normal course of business may also be used by the reviewer; however, the reviewer must not use such information in the reviewer's development of an opinion as to the quality of the work under review.*

**<u>Compliance with STANDARD 1, 5, 7, or 9 through the Use of Extraordinary Assumption(s)</u>**—The development of the reviewer's opinion of value requires compliance with STANDARD 1, 5, 7, or 9 as applicable. The reviewer's use of those items from the work under review that the reviewer concludes are credible and in compliance with the applicable development standard is based on an extraordinary assumption. This is because, unless the reviewer actually replicates the steps necessary to develop those items, the reviewer is assuming the integrity of that work without personal verification. If those assumptions were found to be false, the reviewer's appraisal-related opinions and conclusions would be affected. As such, this situation constitutes an extraordinary assumption (refer to requirements for proper application in Standards Rule 1-2(f), 5-2(i), 7-2(f), or 9-2(f) as applicable). Those items not deemed to be credible or in compliance must be replaced with information or analysis by the reviewer, developed in conformance with STANDARD 1, 5, 7, or 9, as applicable, to produce a credible value opinion.

**<u>Altering the Scope of Work in Developing the Reviewer's Opinion of Value</u>**—In some appraisal review assignments, the client needs a reviewer's opinion of value to be developed under a different scope of work than in the original appraisal.

GO BACK

If the reviewer's assignment has a different scope of work than does the original work, or if the reviewer relies on different information not available to, or not used by, the original appraiser, then it is possible that the two appraisal results could also differ. This does not mean that either set of results is "wrong" per se; in any event, the reviewer should not use information unavailable to the original appraiser as the basis to discredit the original appraiser's opinion of value.

If there is a difference between the appraiser's opinion of value and the reviewer's opinion of value, the reviewer should use care to ensure correct identification of the cause of that difference in the appraisal review process. The reviewer should also use care to not mislead an intended user when providing support for the reviewer's conclusions in the appraisal review report. This is critical from an enforcement perspective as well as in a business setting. Incorrectly characterizing the cause of a deficiency can erode the credibility of appraisal review conclusions and of the reviewer's value opinion.

## D. Appraisal review report content

The reviewer's opinions and conclusions stated in compliance with Standards Rule 4-2(i) can vary significantly, depending on the purpose and intended use of the appraisal review. A reviewer should carefully compose the particular language stating his or her opinions and conclusions to avoid misleading the user of the appraisal review report as to the scope of work completed in the assignment and the meaning of the reviewer's stated opinions and conclusions. Note that any additional information relied upon and the reasoning and basis for the reviewer's opinion of value must be summarized, in contrast to the other requirements in this section that must only be stated. Additionally, changes to the report content by the reviewer to support a different value conclusion must match, at a minimum, the reporting requirements for an Appraisal Report.

**An Appraisal Review Assignment WITHOUT an Opinion of Value**—If the assignment is only to develop an opinion as to the quality of another appraiser's work, the appraisal review report content must include:

1. the information set forth in Standards Rules 4-2(a)–(h) and (j); and

2. the reviewer's certification in accordance with Standards Rule 4-3.

When the appraisal review is only for ascertaining quality, the reviewer should use extreme care to ensure the appraisal review report does not include language that implies the reviewer developed an opinion of value concerning the subject property of the original work. When the reviewer uses language to signify concurrence with the value or a different value opinion, the reviewer has additional appraisal development and reporting obligations.

### Illustrations of the Language in an Appraisal Review Report WITHOUT an Opinion of Value

The following are examples of language that might be used in an appraisal review report that does not express an opinion of value and thus does not constitute evidence of an appraisal by the reviewer:

- "the value opinion stated in the appraisal report is (or is not) adequately supported;"

- "the value conclusion is (or is not) appropriate and reasonable given the data and analyses presented;"

- "the value opinion stated in the report under review was (or was not) developed in compliance with applicable standards and requirements;"

- "the content, analyses, and conclusions stated in the report under review are (or are not) in compliance with applicable standards and requirements;"

- "I reject the value conclusion as lacking credibility due to the errors and/or inconsistencies found;"

- "the value conclusion is not appropriate due to (for example) a significant math error in the Sales Comparison Approach—if calculated properly, the value conclusion would change to $XXX; however, the reader is cautioned that this solely represents a recalculation and not a different opinion of value by the reviewer;"

- "I accept (or approve) the appraisal report for use by XYZ bank (or agency)."

Such language, or language that conveys similar meanings to the intended users of the appraisal review report, relates to the quality of the work under review, including the opinion of value stated in that work, but does not suggest either concurrence or a different opinion of value by the reviewer. It is also important that this language be consistent with the scope of work described in the appraisal review report.

GO BACK

**An Appraisal Review Assignment WITH an Opinion of Value—**When the appraisal reviewer develops an opinion as to the quality of another appraiser's work PLUS the reviewer's own opinion of value, the appraisal review report content must include:

1. the information set forth in Standards Rules 4-2(a)–(j); and

2. the reviewer's certification in accordance with Standards Rule 4-3.

   The appraisal-related content of the appraisal review report, in combination with the content of the original work under review that the reviewer concludes is in compliance with the Standards applicable to that work, must at least match the report content required for an Appraisal Report.

The reviewer is not required to replicate or duplicate in the appraisal review report the material in the work under review that the reviewer concludes is in compliance with the Standards applicable to that work. The reviewer can incorporate by reference those portions of the work under review that he or she concludes are in compliance with the applicable Standards by use of an extraordinary assumption.

## Illustrations of the Language in an Appraisal Review Report WITH an Opinion of Value

The following are examples of language that signify a value opinion (i.e., either by concurrence or by indication of a numeric point, a range, or a relationship to a numeric benchmark). These examples DO constitute evidence of a value opinion (i.e., appraisal) by the reviewer, thereby making the appraisal review one that includes an appraisal.

- "I concur (or do not concur) with the value."
- "I agree (or disagree) with the value."
- "In my opinion, the value is (the same)."
- "In my opinion, the value is incorrect and should be $XXX."
- "In my opinion, the value is too high (or too low)."

Such language, or language that conveys similar meanings to the intended users of the report, represents that the reviewer has completed the steps required to develop his or her own value opinion. Such language indicates the reviewer has either concurred with the appraiser's value opinion in the underlying work, and thus has adopted that value opinion as his or her own, or has developed a different opinion of value. It is important that this language be consistent with the scope of work described in the appraisal review report.

Note that if a reviewer rejects the value, he or she should use care in how that result is stated. If the language of such rejection is based on errors or inconsistencies in the original work and does not include any qualifiers that would relate to a direction in value, it does not imply an appraisal by the reviewer.

However, if such rejection is stated in relation to a value or value range, such as indicating a direction in value (i.e., more than, less than) or to an established benchmark, that language indicates the appraisal review has taken on the "opinion of value" characteristic of an appraisal. This is an important distinction that must be kept in mind by the reviewer when composing any language regarding the original appraiser's opinions or conclusions. In addition, whichever category such language may fall under, it must also be consistent with the purpose, scope of work, and intended use of the appraisal review assignment results.

The following list summarizes the requirements in a real property appraisal review assignment with the reviewer's opinion of value. The sequence of steps completed in this type of assignment is presented in order.

1. The reviewer develops **opinions and conclusions about the quality** of the work under review.

2. The reviewer develops **an opinion of value for the subject property** of the work under review.

3. The reviewer then **communicates the opinions and conclusions** developed in the first two steps in the report.

**GO BACK**

# ADVISORY OPINION 21 (AO-21)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: USPAP Compliance**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

Individuals perform numerous roles within the broad realm of valuation services. Examples include appraisal, brokerage, auctioning, property management, consulting, appraisal review and collecting market data. Some valuation services are part of appraisal practice and require compliance with USPAP. What are the USPAP compliance requirements for these various services? More specifically:

1. When should an individual comply with USPAP?
2. What is the relationship between Valuation Services and Appraisal Practice?
3. What does acting "as an appraiser" or performing a service "as an appraiser" mean?
4. Why does an expectation for an individual to act as an appraiser indicate an obligation to comply with USPAP?
5. What are the responsibilities of an appraiser regarding intended user expectations?
6. What are the USPAP obligations for appraisal practice outside of appraisal and appraisal review?
7. What are the USPAP obligations for valuation services outside of appraisal practice?

## ADVICE FROM THE ASB ON THE ISSUE:

**1. When should an individual comply with USPAP?**
The PREAMBLE states that compliance with USPAP is required when either the service or the appraiser is obligated to comply by law or regulation, or by agreement with the client or intended users. An obligation to comply with USPAP is created by law, regulation, or agreement with intended users.[1] In such cases an appraiser must follow USPAP. The PREAMBLE also states that when not obligated, individuals may still choose to comply with USPAP. The ETHICS RULE states that *an individual should comply any time that individual represents that he or she is performing the service as an appraiser.*[2] An ethical obligation to comply with USPAP is created by choice, that is, by choosing to represent oneself as an appraiser.

Therefore,

- When required by law, regulation, or agreement, an individual <u>must</u> comply with USPAP.
- When choosing to represent oneself as an appraiser, an individual <u>should</u> comply with USPAP.

---

[1] USPAP gains legal authority through adoption by the various state and federal jurisdictions. Consequently, the legal requirement to follow USPAP is rooted in federal and state laws or regulations.

[2] The PREAMBLE states that the appraiser's responsibility is to protect the overall public trust and it is the importance of the role of the appraiser that places ethical obligations on those who serve in this capacity. However, the PREAMBLE also states that USPAP does not establish who or which assignments must comply. Neither The Appraisal Foundation nor its Appraisal Standards Board is a government entity with the power to make, judge, or enforce law.

---

**GO BACK**

**2. What is the relationship between Valuation Services and Appraisal Practice?**

A key to distinguishing an appraiser's obligations is understanding the relationship between "valuation services" and "appraisal practice" in USPAP. Appraisal practice is a subset of valuation services.

"Valuation services" are *services* pertaining to *aspects* of property value. Appraisers and others for whom value is an issue provide valuation services. Examples include appraisal, brokerage, auctioning, property management, consulting, appraisal review and collecting market data.

"Appraisal practice" is defined as *valuation services performed by an individual acting as an appraiser, including but not limited to appraisal and appraisal review*. Only appraisers may offer services that are considered appraisal practice. Examples include appraisal, appraisal review and collecting market data (acting as an appraiser).

Since USPAP obligations apply to those who are acting as appraisers, USPAP applies to appraisal practice.

**3. What does acting "as an appraiser" or performing a service "as an appraiser" mean?**

An "appraiser" is defined as *one who is expected to perform valuation services competently and in a manner that is **independent, impartial, and objective*** (bold added for emphasis). Therefore, an individual "acting as an appraiser" is expected, in part, to be competent in the service being provided. Also, an individual "acting as an appraiser" is expected to provide the service in a manner that is independent, impartial, and objective. Performing a service in a manner that is independent, impartial, and objective is an ethical requirement within USPAP.

"Acting as an appraiser" means representing oneself as an appraiser. Many individuals have other professional roles in addition to their appraiser role. For example, some appraisers are also brokers, consultants, or leasing agents. Individuals who have appraiser roles as well as other professional roles must be careful to explain their role in performing a given valuation service (see question #7 below).

Law, regulation, agreement, or representation (choice) each prescribes when a valuation service is to be provided by an appraiser as part of appraisal practice. Emphasizing another portion of the definition of an "appraiser" is *one who is **expected** to perform valuation services competently and in a manner that is independent, impartial, and objective* (bold added for emphasis). The Comment to the definition goes on to state that the *expectation* (for ethical and competent performance) *occurs when individuals, either by choice or by requirement... represent that they comply*. Expectation is the crucial element in determining when one is acting as an appraiser.

**4. Why does an expectation for an individual to act as an appraiser indicate an obligation to comply with USPAP?**

Public trust requires that when an individual is expected to perform with the ethics and competency of an appraiser, he or she will do so. An individual who agrees to perform a valuation service as an appraiser has a duty to comply with the ethics and competency that the public expects from an appraiser. This obligates the individual to comply with USPAP in performing the service.

The definition of an appraiser in conjunction with the need for public trust establishes the "expectation" as the basis for the obligation to comply with USPAP.

Intended user expectations for valuation services performed in compliance with USPAP are created when an individual represents that he or she is acting as an appraiser in a service. For example, these expectations can arise when an individual advertises or solicits as an appraiser (such as telephone listings, professional directories, business cards, stationery, or office signage), holds appraiser accreditation from a licensing agency, or maintains membership in a professional appraiser organization. An individual's identification as an appraiser in a given valuation service establishes a justifiable expectation that the valuation service will be performed in compliance with USPAP.

In summary, expectation is the basis for determining when an individual providing a valuation service is acting as an appraiser. Because of the need to preserve public trust and confidence in appraisal practice, the expectations of the client and other intended users for ethical and competent performance create an obligation to comply with USPAP.

GO BACK

### 5. What are the responsibilities of an appraiser regarding intended user expectations?

The appraiser has a professional responsibility to recognize the capacity in which he or she is performing. The responsibility includes inquiry about, and recognition of, the intended users' expectations. When an individual's appraisal expertise and reputation for providing services without bias induce the client or other intended users to select the individual to provide a valuation service, there is a justifiable expectation that the valuation service will be performed in compliance with USPAP. When an individual who acts as an appraiser in some circumstances chooses to provide a valuation service in some other capacity (i.e., not as an appraiser and outside of appraisal practice), he or she must not represent himself or herself to be acting in the capacity of an appraiser. Since choice is an instrument to create USPAP obligations it follows that when an individual has an opportunity to choose the capacity in which he or she will provide a valuation service, he or she is free to provide the valuation service as an appraiser or in some other capacity. However, an individual who is recognized as an appraiser must use great care not to violate the public trust.

### 6. What are the USPAP compliance obligations for appraisal practice outside of appraisal and appraisal review?

Within appraisal practice, there are some assignments that are addressed by the Standards. The Standards describe the requirements for appraisal or appraisal review assignments.

However, the Standards do not apply in the performance of all appraisal practice services. Examples include assignments (performed as an appraiser) to teach appraisal courses, provide sales data, collect market data, analyze specific elements of value (e.g., reproduction cost or functional utility), and develop educational texts. As defined in USPAP, assignments are performed by an individual acting as an appraiser. Therefore, all assignments fall within appraisal practice.

The PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE apply generally to all appraisal practice. As a result, assignments to which the Standards do not apply must be provided without bias or accommodation of personal interest by competent appraisers.

The RECORD KEEPING RULE applies to appraisal and appraisal review assignments. For other assignments, there are no workfile or record keeping requirements in USPAP. The SCOPE OF WORK RULE also applies only to appraisal and appraisal review assignments.

Some assignments may include appraisal or appraisal review as well as other analyses that lead to additional opinions or recommendations. In these assignments, the appraiser must comply with the USPAP requirements that apply to appraisal or appraisal review in the appraisal or appraisal review portion of the assignment and, at a minimum comply with the ETHICS RULE, the COMPETENCY RULE and the JURISDICTIONAL EXCEPTION RULE for the rest of the assignment.

### 7. What are the USPAP obligations for valuation services outside of appraisal practice?

As previously stated, many individuals have other professional roles in addition to their appraiser role. For example, some appraisers are also attorneys, accountants, brokers, or consultants. USPAP also places an obligation on an individual who sometimes acts as an appraiser even when he or she provides a valuation service in some other capacity — that obligation being not to mislead the users of the valuation service about the capacity in which he or she is acting. The ETHICS RULE states that *an appraiser must not misrepresent his or her role when providing valuation services that are outside of appraisal practice*. If a valuation service is premised on advocacy or compensation arrangements that are contrary to the ETHICS RULE, the valuation service is not consistent with the objectives of USPAP and cannot be performed by the individual acting as an appraiser.

An individual who sometimes provides services as an appraiser, but who is currently acting in another role, must ensure that intended users are not misled as to the individual's role in providing that valuation service. This can be accomplished through such means as disclosure, notification, or careful distinction when providing the valuation service as to the individual's role. Additionally, clear representation of the valuation services to be rendered in the engagement communication, scope of work description, or contract, as well as in written and oral correspondence with the client should assist in ensuring intended users are not misled.

**GO BACK**

**Relationships and Application**

The relationship between valuation services and appraisal practice can be illustrated as follows:



Valuation Services (large light-shaded oval): When providing valuation services, the obligation for an individual recognized in some circumstances as an appraiser is not to misrepresent his or her role.

Appraisal Practice (dotted-line oval): Within valuation services is appraisal practice (i.e., valuation services provided by an individual acting as an appraiser). All services performed as part of appraisal practice must comply with USPAP. The portions of USPAP that apply generally to appraisal practice include the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

Appraisal and Appraisal Review (dark-shaded oval within Appraisal Practice oval): Within appraisal practice, there are requirements that apply to developing and reporting appraisal or appraisal review assignments in addition to those that apply to all appraisal practice. These requirements are described by the Standards, the SCOPE OF WORK RULE, and the RECORD KEEPING RULE.

# ⟵ VALUATION SERVICES ⟶

| | | |
|---|---|---|
| **Appraisal Practice** Valuation services performed by an individual acting as an appraiser Appraisal and Appraisal Review (Development and Reporting) | | |
| All Rules apply. Standards apply. Which ones apply varies by assignment. | Other valuation services when acting as an appraiser | Valuation services when **not** acting as an appraiser |
| | Three Rules apply: ETHICS RULE COMPETENCY RULE JURISDICTIONAL EXCEPTION RULE No Standards apply in these assignments. Compliance with the RECORD KEEPING RULE and SCOPE OF WORK RULE is not required in these assignments. | When performing these services, do not misrepresent your role: i.e., clearly communicate that you are **not** acting as an appraiser. |

**Examples**

| Appraisal and Appraisal Review (Development and Reporting) | Other valuation services when acting as an appraiser | Valuation services when not acting as an appraiser |
|---|---|---|
| Appraisal with Appraisal Report Appraisal with Restricted Appraisal Report Appraisal with oral appraisal report Expert witness testimony Appraisal Review with report Selecting comparable sales data *Calculation engagement *Limited scope appraisal *Evaluation Purchase price allocation Valuation engagement | Researching market data (when acting as appraiser) Teaching appraisal courses Analyzing specific elements of value (e.g., reproduction cost of functional utility) Consulting (when acting as an appraiser) Mechanical computation Developing educational texts Ad valorem tax consulting (when acting as an appraiser) Providing raw sales data Litigation support (when acting as an appraiser) | Brokerage Consulting (when acting as an advocate) Ad valorem tax consulting (when acting as an advocate) Auctioning Litigation support (when acting as an advocate) Property management Mortgage underwriting Leasing (agent) |

\* **Note:** These terms are commonly used by appraisers to describe appraisals with a narrow scope of work. Regardless of the label used in the assignment, these opinions of value are appraisals as defined in USPAP. An appraiser may perform these assignments under USPAP by complying with the Rules and applicable Standards.

GO BACK

## SUMMARY:

- An individual <u>must</u> comply with USPAP when required by law, regulation, or agreement.

- An individual <u>should</u> comply with USPAP when choosing to represent oneself as an appraiser.

- Appraisal practice is a subset of valuation services. Since USPAP obligations apply to those who act as appraisers, USPAP applies to appraisal practice.

- The definition of appraiser and need for public trust establish the factor of "expectation" as the basis for the obligation to comply with USPAP.

- An individual's public identification as an appraiser establishes a justifiable expectation that valuation services will be performed in compliance with USPAP. Because of the need to preserve public trust and confidence in appraisal practice, the expectations of the client and other intended users for ethical and competent performance create an obligation to comply with USPAP.

- The appraiser has a professional responsibility to recognize the capacity in which he or she is performing. The responsibility includes inquiry about, and recognition of, the client's expectations.

- When an individual has an opportunity to choose the capacity in which he or she will provide a valuation service, he or she is free to provide the valuation service as an appraiser or in some other capacity.

- An individual who is recognized as an appraiser must use great care not to violate the public trust. An appraiser acting in another role must ensure that intended users are not misled as to the individual's role in providing that valuation service.

- USPAP also places an obligation on an appraiser even when he or she provides a valuation service in some other capacity — that obligation being to not mislead the intended users of the valuation service about the capacity in which he or she is acting.

- If a valuation service is premised on advocacy, or compensation arrangements that are contrary to the ETHICS RULE, an individual acting as an appraiser cannot perform the valuation service.

- Within appraisal practice, there are Standards that describe the requirements for developing and communicating appraisal or appraisal review assignments. Appraisers who provide valuation services for which there are no Standards must comply with the portions of USPAP that apply generally to appraisal practice.

- The RECORD KEEPING RULE applies to appraisal or appraisal review assignments. For other assignments, there are no USPAP record keeping or workfile requirements.

- The SCOPE OF WORK RULE applies only to appraisal and appraisal review assignments.

### Illustrations:

*Brokerage and Appraisal*

1.  Robert Agent is an individual who provides both brokerage and appraisal services. What are Robert's obligations under USPAP when preparing a broker's price opinion (BPO)?

    <u>Answer</u>: Many states' brokerage and appraiser licensing laws have specific provisions for appraisers who are also brokers. In the absence of such laws, USPAP provides flexibility for brokers/appraisers and others who have multiple professional roles.

    If providing the service as an agent or broker, USPAP requires only that an appraiser must not misrepresent his or her role. In other words, if Robert was contacted by his client because he is an agent or broker and signing his report as an agent or broker, then Robert need not comply with USPAP except to not misrepresent his role. If Robert is contacted by the client because he is known as an appraiser and is signing his report as an appraiser, then USPAP applies.

GO BACK

*Appraisal Review*

2. Dan Williams is an appraiser. He was asked by a client to perform an "administrative screening review" of an appraisal report to determine if a more thorough review is warranted. The client would like Dan to check the math calculations and determine whether the appraisal report complies with the client's basic content specifications. What are Dan's obligations under USPAP?

> Answer: The client has engaged Dan because of his identification as an appraiser; this clearly creates an expectation by the client that the service will be provided in compliance with USPAP. Therefore, this service is part of appraisal practice; at a *minimum* Dan <u>must</u> comply with the portions of USPAP that apply generally to appraisal practice (i.e., the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE).

> Dan must next decide if compliance with STANDARDS 3 and 4 is required. To do this, Dan must consider the intended use, intended user, and type and definition of value for the assignment. These factors are the basis of Dan's scope of work decision. If the appropriate scope of work includes *developing or communicating an opinion about the quality of another appraiser's work that was performed as part of an appraisal or appraisal review assignment*, then that assignment is by definition an appraisal review. The label placed on the service cannot support acting outside of STANDARDS 3 and 4. The client may call the assignment an "administrative screening review," but it is the extent of the service that defines it. Dan must decide, based on the problem to be solved and scope of work, if the assignment is an *appraisal review* as defined by USPAP. If the assignment is an *appraisal review*, then Dan must comply with the development and reporting requirements of STANDARDS 3 and 4.

> There may be circumstances when Dan is not acting as an appraiser. If Dan acts in other roles, say as a mortgage underwriter, then Dan may be in a position to provide the valuation service outside of appraisal practice. If Dan acts outside of appraisal practice, he must ensure that he does not misrepresent his role and that the client and any other intended users do not expect him to act as an appraiser.

*Rent Survey*

3. A client has asked Mike Black to perform a rent survey. The client owns the Acme Office Building and wants to know if he is charging enough rent. The client asked Mike to perform this work because he knows Mike is an appraiser; therefore, this valuation service is included in appraisal practice and USPAP applies. How can Mike provide this service in compliance with USPAP?

> Answer: Mike should fully investigate the client's expectations before determining the scope of work for this assignment. Does the client want only to know what rental rates are being charged for other office buildings in the area? If so, this is likely a service for which USPAP has no Standards (i.e., Standards 1 and 2 when providing real property appraisals). Mike would then be obligated to comply with the portions of USPAP that apply generally to appraisal practice (i.e., the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE). The development and reporting of the assignment results would be entirely at his discretion, and a workfile would not be required.

> However, if the client expects Mike to collect rental rate and lease term information and to analyze them to conclude the market rental terms for the Acme Building, this is an appraisal. This assignment is an appraisal because it includes a specific subject property (i.e., the right to use space in the building) and the problem to be solved in the assignment is a value opinion (i.e., the market rental terms for that space). The appraisal assignment should then be completed in compliance with Standards 1 and 2.

*Litigation Services*

4. Marie Vaughn has a diverse practice with a specialization in litigation services. She commonly aids attorneys in developing cross-examination strategies for expert witness testimony from appraisers. How does USPAP apply to Marie's "litigation services?"

Answer: In order to determine Marie's obligation, it is necessary to understand the nature of her role. If she is acting as an appraiser, her litigation services are part of appraisal practice. The PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE will apply to the assignment. As an appraiser, Marie cannot act as an advocate for any party or issue.

If Marie's services include providing an opinion of value, she must also comply with the appropriate appraisal standards (Standards 1 and 2, 7 and 8, or 9 and 10). If Marie's services include providing an opinion about the quality of another appraiser's work, the appraisal review requirements of STANDARDS 3 and 4 apply. If the service includes providing analysis, recommendation, or an opinion to solve a problem where an opinion of value is a component of the analysis leading to the assignment results, then Marie must comply with the ETHICS RULE, the COMPETENCY RULE and the JURISDICTIONAL EXCEPTION RULE for the entire assignment; and she must also comply with any applicable Rules and Standards if she performs an appraisal or appraisal review as part of the assignment.

On the other hand, if Marie provides litigation services as an advocate, then she is providing a valuation service outside of appraisal practice. When performing services outside of appraisal practice, Marie can act as an advocate and accept contingent compensation. The only USPAP obligation is that she not misrepresent her role. She must use care to distinguish her role from other roles that would carry an expectation of being impartial, objective, and independent, i.e., acting as an appraiser.

Marie may provide litigation services by either acting as an appraiser or acting as an advocate for the client's cause; however, she must not perform both roles in the same case.

*Assignments with Services Other Than Appraisal or Appraisal Review*

5a. Jane Doe, an appraiser, agrees to perform an assignment to perform a feasibility analysis for a proposed real estate subdivision. In order to complete the assignment, she develops prospective market value opinions for the potential lots in the subdivision given several different possible configurations. Each configuration may also have different absorption rates and/or absorption periods. The objective of the assignment is to recommend the optimal configuration. With which parts of USPAP must Jane comply in this assignment?

Answer: Jane must comply with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE for the entire assignment.

Because the value opinions are appraisals, the SCOPE OF WORK RULE and the RECORD KEEPING RULE apply to the appraisal portion of the assignment. In addition, she must develop each value opinion in compliance with STANDARD 1 and report the opinions in compliance with STANDARD 2.

5b. John Doe, an appraiser, agrees to perform to advise a client regarding the feasibility of replacing existing manufacturing equipment with newer, more efficient pieces. In order to complete the assignment, he uses a liquidation value appraisal of the existing machinery. That appraisal was prepared by another appraiser and will be reviewed by John. The objective of the assignment is to recommend whether to replace the equipment now, or to wait. With which parts of USPAP must John comply in this assignment?

Answer: John must comply with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE for the entire assignment.

Since John is doing an appraisal review, the SCOPE OF WORK RULE and the RECORD KEEPING RULE apply to the appraisal review portion of the assignment. He must also develop and report the review opinion in compliance with STANDARDS 3 and 4.

GO BACK

5c. Chris Filo is an appraiser who has an assignment to advise a corporation regarding a potential stock offering. The corporate officers have provided Chris with a value for the existing stock. Chris has made the extraordinary assumption that the value provided is credible and will use that value as part of the analysis before making final recommendations. Which parts of USPAP apply to this assignment?

> Answer: Chris must comply with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE for this assignment.
>
> Because this assignment does not include an appraisal or appraisal review, neither the SCOPE OF WORK RULE nor the RECORD KEEPING RULE applies. In addition, there are no development or reporting standards applicable to this assignment.

5d. Jane Doe is a real estate practitioner who offers a variety of services to her clients. She is a licensed real estate broker and is also a certified appraiser. Jane has been asked by a client to perform a service that is viewed by Jane and her client as a consulting service that relates to value but is to be undertaken by her in the role of a broker/consultant, not as an appraiser. Which parts of USPAP apply to Jane in this assignment?

> Answer: Individuals may fulfill different roles in different assignments. In general, USPAP applies only when an individual is acting as an appraiser. As long as it is clear that Jane is not performing as an appraiser, Jane's only obligation when acting as a broker/consultant is stated in Conduct section of the ETHICS RULE, which states:
>
> *an appraiser:*
>
> > *must not misrepresent his or her role when providing valuation services that are outside of appraisal practice;*

# ADVISORY OPINION 22 (AO-22)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Scope of Work in Market Value Appraisal Assignments for Real Property**
**APPLICATION: Real Property**

## THE ISSUE:

How does "market value" affect the scope of work in a real property appraisal assignment?

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References**

- COMPETENCY RULE
- SCOPE OF WORK RULE
- DEFINITIONS section: "Appraisal," "Intended Use," "Market Value," and "Scope of Work"
- STANDARD 1
- Advisory Opinion 35 and 36

**Scope of Work in a Market Value Appraisal**

This Advisory Opinion provides guidance that appraisers, users of appraisals, and enforcement bodies can use when making decisions about the scope of work in market value appraisal assignments (called a "market value assignment" or a "market value appraisal" in this Advisory Opinion).

Competently determining the scope of work is an essential step in all assignments performed under USPAP. In a real property appraisal assignment, Standards Rules 1-2(a)–(h) set forth eight identification actions or steps that an appraiser must understand and complete in performing any appraisal assignment. Completing the first seven action steps provides support for the eighth step, the appraiser's scope of work decision.

GO BACK

**The Sequence and Relationship of Action Steps Required by Standards Rule 1-2 in a Real Property Appraisal –** The following table illustrates the sequence and relationship of the action steps leading to the appraiser's scope of work decision and the steps taken after that decision through to completion of the appraisal process.



It is important to recognize that the action of identifying the client and intended users, the intended use, the type and definition of value, and the effective date (Standards Rule 1-2(a)-(d)) affects the appraiser's decisions as to the subject's relevant characteristics, the scope of work, and extraordinary assumptions or hypothetical conditions (Standards Rule 1-2(e)–(h)). The appraiser's decisions about the last four elements to be identified follow from, and must be consistent with, factual information identified in the first four elements shown in the table.

The sequence illustrated in the table requires the appraiser to begin the decision-making process in the early stages of an assignment. It also means the appraiser has a burden of proof for conclusions about which property characteristics are relevant and which are not.

GO BACK

**Sequence and Relationship of Action Steps Required by Standards Rule 1-2 in a Real Property Appraisal Competency and the Scope of Work Decision —** Accomplishing the first four action steps (Standards Rule 1-2(a) through (d)) illustrated in the table provides the basis for deciding which of the property's characteristics are relevant in the assignment. This information, together with the appraiser's competency (knowledge and expertise) in appraising the specific type of property involved, permits the appraiser to determine whether any extraordinary assumptions or hypothetical conditions are necessary to complete the assignment and to make a reasonable and supportable scope of work decision.

It is important to note here that the appraiser's competency in performing similar assignments is a key factor in the scope of work decision. Without competency, the appraiser is not prepared to correctly interpret the information gathered in response to Standards Rule 1-2(a)–(e) or to make well-reasoned decisions based on that information in response to the requirements set forth in Standards Rule 1-2(f)–(h). Moreover, without competency, the appraiser is not aware of or capable of understanding how the information gathered in compliance with Standards Rule 1-2(a)–(e) and the conclusions formed in compliance with Standards Rule 1-2(f) and (g) affect the decision about which of the analyses steps set forth in Standards Rules 1-3 and 1-4 are necessary in an assignment.

Understanding which analyses, methods and techniques are necessary and what data are necessary to correctly complete the analyses is an integral part of the scope of work decision. This decision cannot be made competently without understanding how the "conditions" in a market value definition work together with the other factors identified in compliance with Standards Rule 1-2 to determine what kind of data are relevant and which types of analyses are applicable and necessary in the assignment.

**General Comment on Market Value Definitions**

Market value appraisals are distinct from appraisals using other types of value because market value appraisals are based on a market perspective and on a normal or typical premise. These criteria are illustrated in the following definition of Market Value,[1] provided here only as an example.

> "**Market value** means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:
>
> 1.    Buyer and seller are typically motivated;
>
> 2.    Both parties are well informed or well advised and acting in what they consider their own best interests;
>
> 3.    A reasonable time is allowed for exposure in the open market;
>
> 4.    Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
>
> 5.    The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

The market perspective replaces a user's (e.g., buyer, seller, lender, agent, etc.) perspective that might apply in other appraisals, such as for investment value or insurable value. This market perspective directly affects the scope of work necessary to develop credible opinions and conclusions in market value appraisals. The public's expectation that a market value appraisal reflects only the perspective of the marketplace, and is not affected by such other criteria as an intended user's objectives, is important. Meeting this expectation serves to foster and promote public trust in professional appraisal practice, a fundamental purpose of the *Uniform Standards of Professional Appraisal Practice* and one that applies to all work performed under USPAP.

---

1    This example definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, FRS, and FDIC on June 7, 1994, and in the *Interagency Appraisal and Evaluation Guidelines*, as revised and updated December 2010.

**GO BACK**

A market value appraisal is also based on whatever the "normal" or "typical" conditions are in the marketplace for the property appraised in a time frame that is consistent with the date of value in the appraisal. If the definition of value used in an appraisal contains criteria that are different from those that are "normal" or "typical," the use of the term "Market Value," alone, to characterize the assignment result is not appropriate. For example, a value opinion developed to reflect the most probable price in a sale under forced conditions is a forced-sale value and not consistent with the "normal" or "typical" premise to be reflected in a market value appraisal.

**Importance of Identifying the Specific Definition of Market Value—**The definition of the value to be developed in an appraisal establishes specific conditions. These conditions impose parameters on the appraisal assignment that are necessary to ensure that the results of the assignment are meaningful in the context of that definition of value.

There are many definitions of value, some of which are market value definitions. Other definitions of value appear to be related to market value but are not called market value. For example, it is common practice in appraisals for intended use in employee relocation assignments to use a value definition based on "anticipated sales price" rather than "market value." The "anticipated sales price" definition contains very specific marketing, property condition, and terms of sale requirements that replace normal or typical market conditions. Thus, while the development process under the specific conditions may appear similar to market value assignments, the result is a value to the property user—the relocation company—under that client's specific criteria and is not market value.

**Importance of Identifying the Source of a Market Value Definition—**Definitions of market value from different sources contain different conditions. Those differences can directly affect the scope of work that is necessary to develop credible assignment results. Each definition is unique, with authority only in a specific jurisdiction or to a specific client group. Therefore, identification of the source for the definition of value to be applied in an assignment is essential.

The source must be consistent with the jurisdiction having authority over the transaction in which the appraisal is to be used. For example, using a definition of market value other than the definition specified in regulations published pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) may invalidate that appraisal for use in a federally related transaction. Likewise, if an appraisal is prepared for use in litigation, using a definition of value other than the definition specified by the court having jurisdiction over the matter being litigated may disqualify that appraisal for use in that court.

### How the "Conditions" in a Market Value Definition Affect the Scope of Work Decision

*Market Value* is defined in USPAP as a general concept. But in an appraisal assignment, *Market Value* is defined by a specific jurisdiction (e.g., a court, a regulatory body or public agency with legal authority), or by a client group (e.g., Fannie Mae or Freddie Mac).

In a market value appraisal, the appraiser's conclusions about how best to analyze the market and what data are necessary for the development of credible results must be consistent with the conditions set forth in the specific definition of market value applicable in the assignment. The definition of market value included in this Advisory Opinion as an example illustrates the type of conditions that might be part of a specific market value definition used in an assignment.

Market value always presumes the transfer of a property as of a certain date, under specific conditions. The "Conditions" stated in market value definitions generally fall into three categories:

1. the relationship, knowledge, and motivation of the parties (i.e., seller and buyer);

2. the terms of sale (e.g., cash, cash equivalent, or other terms); and

3. the conditions of sale (e.g., exposure in a competitive market for a reasonable time prior to sale).

Market value appraisals focus on understanding how buyers and sellers are most likely to respond to a subject property under the conditions stated in a specific value definition. Not all market value definitions contain the same conditions, though most contain a common subset of elements. Experienced appraisers understand the nuances in the various definitions and develop their assignments using data and analyses that match the conditions required by the specific definition used in an appraisal.

The "knowledge" referred to in a market value definition is knowledge about the property appraised, about the market for that property, and about alternatives available in the marketplace that the appraiser concludes are reasonable competition for the property appraised.[2]

An appraiser is expected to be at least as knowledgeable as the typical market participant is about the market for the type of property to be appraised. By completing research and verification steps while performing the assignment, the appraiser is expected to become as knowledgeable about the subject property and its comparables as the typical market participants.

**Knowledge of the Subject Property—**Of the three areas typical market participants are presumed to be knowledgeable about (subject, market, and competition), the first area that the appraiser must address is knowledge of the subject property, which is accomplished by gathering and verifying information about the subject property. This action step may or may not require a personal inspection.

In a market value assignment, the relevant characteristics are those that have a significant impact on the property's marketability (see Standard Rules 1-2(e)). These features include legal, economic and physical characteristics. The decision as to which characteristics are relevant cannot be made without knowledge of the market in which the property is sold. This is why competency in appraising a specific type of property and knowledge of the subject property's market are essential in an assignment.

Knowing the property's relevant characteristics also provides the basis for deciding the applicability of an approach to value.

**Knowledge of the Market—**The scope of work necessary to ensure an adequate knowledge of the market for the subject property may range from very little (in addition to what the appraiser already knows) to extensive new research. If the subject property is of a type frequently appraised and in a locality where the appraiser regularly provides services, there may be little need for extensive market research beyond confirmation that the data available for analysis is current, adequate, relevant, and credible.

However, if the property involved is not of a type regularly appraised by the appraiser or if the market area is not familiar to the appraiser, the extent of research needs to be sufficient for the appraiser to acquire competency. As stated in the COMPETENCY RULE, this can be achieved in several ways (self-study, association with a locally knowledgeable and competent appraiser, etc.).

The critically important aspect of this factor in the scope of work decision is to recognize when additional research is necessary. A competent, professional appraiser will not assume knowledge merely for the sake of convenience. Even though the appraiser might be actively involved in appraising a particular type of property in a given locality, self-imposed professional discipline will prompt that individual to ensure that the scope of work includes verification that the market data used in the analyses is credible, relevant, appropriate, adequate, and as current as possible.

This is consistent with the requirement stated in Standards Rule 1-1(b), which is designed to ensure that the scope of work completed in an appraisal is sufficient to produce credible opinions and conclusions, given the intended use of the appraisal.

**Knowledge of Alternatives—**An understanding of market behavior requires a scope of work that includes research and analyses that is sufficient to ensure competent knowledge of the supply and demand relationships that are relevant to the time frame and the type of property involved in the appraisal. In a market value appraisal, this means gathering, verifying, and evaluating data about sales, listings, and failed efforts to sell "competitive" property, as well as more generalized market data.

---

2    See Advisory Opinion 35, *Reasonable Exposure Time in Real Property and Personal Property Opinion of Value.*

---

**GO BACK**

**Conditions of Sale—**A market value appraisal requires research and analysis of market data sufficient to develop a reasonable opinion of exposure time (see the <u>Comment</u> to Standards Rule 1-2(c) and Advisory Opinion 35) with the property marketed in whatever manner is typical for that type of property in its locality. An appraiser working in different market areas should guard against presuming that a marketing process common in one area is typical in all areas. For example, in some markets, property is customarily sold through an auction arrangement, while in others professional brokerage is the norm, and in still others so called "for sale by owner" is the typical process. Each process, in a given time period and locality for the type of property involved, can be "normal." The identification of the marketing process and exposure time requires an understanding of the subject's market.

Market value definitions imply a sale of the property wherein the buyer and seller are "typically motivated." This condition requires that the level of research in a market value assignment is sufficient to understand the motivations of the buyers and sellers for the sales used in the approaches to value. The motivations that lead to a sale play a critical role in establishing the relevancy or irrelevancy of a sale as a comparable one in an assignment.

Analysis of sales data can yield numeric results, but the numbers lack real meaning without an understanding of the market conditions that generated the sales involved. Without an understanding of what the market conditions were at the time of a sale, as well as the conditions of a particular sale, an appraiser cannot reasonably conclude that the sale price, or any element of comparison based on that price, is a reliable indicator of market value.

**Subject's Marketing and Sale History, and Reconciliation**
The appraiser's scope of work decision in a market value appraisal needs to recognize the research and analyses steps that are necessary to comply with the requirements stated in Standards Rule 1-5 and Standards Rule 1-6. Those requirements have two objectives, both of which are especially important in a market value appraisal.

The first is to ensure that the appraiser makes the effort to obtain relevant information about current and recent market activity involving the subject property (Standards Rule 1-5(a) and (b)). This due diligence effort is consistent with the requirement stated in Standards Rule 1-1(b). It also serves as a safeguard against confusing the price in a contract (agreement of sale or option) or an offering with market value and as a safeguard against the appraiser being inadvertently involved in an effort to conceal the facts in regard to one or more recent sale transactions.

The second is to ensure that the appraiser reconciles the indications of value resulting from the various approaches utilized to arrive at the value conclusion (Standards Rule 1-6).

## SUMMARY:
The scope of work decision is a critical step in any appraisal. That decision must result in a match between the extent of the research and analyses completed in an assignment with the conditions specified in the definition of value used in that assignment.

In a market value appraisal, the appraiser's scope of work decision carries a burden of proof to support the appraiser's conclusion about how he or she addresses each "condition" in the market value definition used in the appraisal. The definition includes conditions that often require a high degree of knowledge, competency, and judgment, which are necessary to effectively develop the appraisal process. An appraiser cannot meet his or her obligations in a market value assignment without having competently identified and then completed a scope of work that enables development of credible opinions and conclusions.

GO BACK

# ADVISORY OPINION 23 (AO-23)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment**
**APPLICATION: Real Property**

## THE ISSUE:

How does an appraiser determine which characteristics of a real property are relevant to its appraisal?

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References**

- DEFINITIONS, specifically the definitions of

  - APPRAISAL: *(noun) the act or process of developing an opinion of value; an opinion of value....*

    *Comment: An appraisal is numerically expressed as a specific amount, as a range of numbers, or as a relationship (e.g., not more than, not less than) to a previous value opinion or numerical benchmark (e.g., assessed value, collateral value).*

  - ASSIGNMENT: *a valuation service that is provided by an appraiser as a consequence of an agreement with a client.*

  - REAL ESTATE: *an identified parcel or tract of land, including improvements if any.*

  - REAL PROPERTY: *the interests, benefits, and rights inherent in the ownership of real estate.*

- VALUE: *the monetary relationship between properties and those who buy, sell, or use those properties, expressed as an opinion of the worth of a property at a given time.*

    *Comment: In appraisal practice, value will always be qualified—for example, market value, liquidation value, or investment value.*

- *Standards Rule 1-2(e): An appraiser must identify, from sources the appraiser reasonably believes to be reliable, characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including:*

  *(i) its location and physical, legal, and economic characteristics;*

  *(ii) the real property interest to be valued;*

  *(iii) any personal property, trade fixtures, or intangible assets that are not real property but are included in the appraisal;*

  *(iv) any known easements, restrictions, encumbrances, leases, reservations, covenants, contracts, declarations, special assessments, ordinances, or other items of a similar nature; and*

  *(v) whether the subject property is a fractional interest, physical segment, or partial holding.*

**The Subject of a Real Property Appraisal Assignment**

The subject of a real property appraisal has both physical and legal characteristics. In combination, these characteristics define the subject property and, together with the type and definition of value and intended use of the assignment results, provide the basis for deciding what data and analyses should be included in the scope of work.

Appraisers and property owners often discuss a subject property in physical terms, such as *my home, the residence, my land, or the building*. However, a physical object, alone, is not what is being appraised.

Taken together, the definitions of *real property* and *real estate* provided in USPAP require that the subject of a real property appraisal is a specific ownership of a right (or rights) in identified real estate.

The right or rights might be owned in part, as a fractional interest, or in full. Further, real estate can take many forms, such as land, land and improvements, improvements without the underlying land, or an infinite variety that involve one or more of the physical aspects of real estate. Alternatively, a type of property, such as Class A Office Space, does not signify specific ownership rights in identifiable real estate. Consequently, surveys or studies relating to a class of property do not constitute the "subject" of a real property appraisal under STANDARD 1. In such situations, the service provided by completing the survey or study is not an appraisal assignment because there is no "subject property."

Understanding these different characteristics is essential for correct identification of the subject of a real property appraisal and for determining which characteristics of the property are relevant in the assignment.

**How the Characteristics of the Subject Affect the Scope of Work Decision**

As discussed above, real property can have many different characteristics, each of which can significantly affect the scope of work in an assignment. Consider the following illustrations:

1. The subject is the fee simple interest owned in a single-family residence situated on an improved site. These components (the land, the improvements, and the ownership) are, together, the subject property of the appraisal assignment. In this assignment the appraiser is developing and reporting a market value opinion.

   The scope of work in this assignment should include gathering data about the characteristics of the subject that are significant in the market for this type of property under its highest and best use. Given the characteristics of the subject property, the analysis should include sales of other properties held in fee simple ownership situated in the subject's market area that are similar to the subject in as many other respects as possible.

2. If all of the same characteristics of the property in Illustration No. 1 apply, except that the land is a leased site, the subject property becomes:

   - leasehold interest, if the intended user needs to know the value of the rights in the real estate owned by the lessee in the lease, or

   - leased fee interest, if the intended user needs to know the value of the rights in the real estate owned by the lessor in the lease.

   Note that the subject real estate (physical asset) was the same, but the ownership interest of the subject changed. The impact of this change on the scope of work and on the relevant data in each assignment is significant. For example, in a market value appraisal:

   - If the subject property is the leasehold interest, the relevant analysis should include sales of leasehold interest properties that are as similar to the subject as possible, both physically and in terms of its lease (cash flow) characteristics.

   - If the subject is the leased fee interest, the relevant data should include sales of leased fee interest properties with similar physical and cash flow characteristics. The subject lease terms determine whether the improvements' characteristics are significant in this type of assignment. If the lease ends before the improvements reach the end of their economic life, the improvements' characteristics can be important to the appraisal problem. If the tenant must remove the improvements upon termination of the lease, the improvements' characteristics likely have little significance in the assignment.

3. Next, assume the same subject property characteristics as in Illustration No. 1 but change the ownership to an undivided one-third interest in the fee simple title. The scope of work in this Illustration is significantly different than that in either Illustration No. 1 or No. 2.[1]

   If available, the most relevant analysis would be of sales of similar fractional interests in similar real estate. In the absence of such sales, the research might extend to secondary sources or other less direct analyses to develop, test, and support the fractional interest value conclusion.

4. A prospective client is considering a loan secured by a portfolio of properties owned in fee simple by a loan applicant. The real property offered as loan security is an ownership, held by one party, of several nearly identical properties in different locations.

   In this situation, the appraiser must pay particular attention to the intended use of the assignment results and how that use affects the property configuration that will be relevant in the analyses. This is essential because assignment results must be meaningful to the client and analyses of the market for the subject must reflect the intended use.

   If the client intends to use the appraisal to secure a single loan secured with all of the properties held by the client's loan applicant, the subject property is the entire holding (i.e., the portfolio). In this situation, the appraiser must include research and analyses to address the impact of all of the subject's individual parts appearing in the market at the same time, to be sold by one owner to one buyer. The intended use drives this configuration of the subject's characteristics.

   Alternatively, if the same client intended to use the appraisal to secure one loan under loan conditions that would allow each property in the holding to be released (sold) on its own, the assignment is actually for several appraisals communicated in one report or possibly in several reports. In this configuration, each individual property is a subject property to be sold by one seller in the same time frame to (potentially) different buyers. The analyses must still address the potential impact, if any, of having all of the properties in the loan applicant's portfolio on the market at one time but without the necessity of selling to one buyer in one transaction.

   The intended use of the assignment results alters the characteristics of the subject that are relevant to the appraisal and clearly alters the appropriate scope of work. In the first instance, the relevant data about the subject and about its market must reflect the subject's characteristics as a property portfolio rather than as an individual property within a community. In the latter case, the relevant data must address the relevant characteristics and market conditions for each individual property. Analyzing a portfolio of properties as if each property were a separate element or increment of value when the subject of the assignment is the portfolio fails to recognize distinct differences between the markets for individual properties and portfolios. Specifically, the value of the subject, as a portfolio, is not necessarily the sum of the values for each of the properties in that portfolio; it could be less or it could be more.

5. A prospective client finances real estate development projects and requests an appraisal for use in a single-family residential tract development financing package. The client needs an opinion of value for the project and values for each of four individual floor plans as if each was a finished property on a typical or so-called "base" lot within the development. The project involves acquisition of finished sites and the construction and sale of finished homes in phases over a period of years. All of the values are to be market value and the effective date of value is to be a current date, all for the intended use of securing the development loan and the take-out loan commitment.

   It is important to recognize that in this illustration the assignment actually involves five properties: the entire project plus each of the four floor plans. In this case, the subject that is the project includes the land and the entitlements that allow development of the residential tract on the land. Each of the four floor plans becomes a subject under the hypothetical condition that the finished home on the typical or base lot actually exists as a finished property as of a current date of value The appraiser must then develop and report five appraisals of five different subject properties.

---

1    In USPAP publication see the Comment to Standards Rule 1-4(e).

---

66

GO BACK

For the development loan, the subject's relevant characteristics are those of the project, not the homes, and the scope of work to analyze the market for the project must address the entire project's characteristics.

For each take-out loan, the relevant subject property is an individual finished home, not the project, and the summation of the value for those individual homes is not meaningful in terms of the value of the project. Indeed, summation of the value of the individual homes to indicate the market value of the project is incorrect development, and reporting such a summation as market value of the project is misleading.

The scope of work necessary to analyze the market for an individual home as a subject property is significantly different from that necessary to analyze the market for the project as a subject property.

## SUMMARY:

Identifying the relevant subject property characteristics, together with the other information gathered in response to Standards Rule 1-2, enables an appraiser to make a sound scope of work decision.

Agreeing to perform a prospective assignment on the basis of incomplete information can result in a significant mismatch between the scope of work and the valuation problem to be solved in the appraisal assignment. The lack of clear communication with the client before deciding whether to perform an assignment can lead to an excessive or deficient scope of work. When the scope of work is excessive, appraisers might unnecessarily forego valuation service opportunities. When the scope of work is inadequate or the subject property characteristics are not appropriately analyzed given the intended use of the assignment results, the results are not likely to be credible or meaningful.

An appraiser should, by communicating with a prospective client, gather information about the type and definition of value, the intended use, and the effective date of the appraisal, as well as characteristics of the subject of a real property appraisal assignment, before deciding which characteristics are relevant and the appropriate scope of work.

GO BACK

# ADVISORY OPINION 24 (AO-24)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Normal Course of Business**
**APPLICATION: Real Property, Personal Property**

## THE ISSUE:

Standards Rules 1-5 and 7-5 require an appraiser to analyze certain information about the subject property if the information is *available to the appraiser in the normal course of business*. How does one determine the "normal course of business" for a given assignment?

## BACKGROUND:

The analysis that is required in Standards Rule 1-5 and 7-5 promotes a certain degree of due diligence on the part of the appraiser. Appropriate due diligence increases public trust in the appraisal profession. The intent is to ensure that the research of current listings, options, agreements of sale, or past sales and any other transfers of the subject property is sufficient to promote public trust, without creating undue hardship on the appraiser.

The availability of the data necessary to comply with the requirements in Standards Rule 1-5 and 7-5 varies greatly. In some situations, this data is available from multiple sources. In other instances, sales and listing data is not readily available.

The "normal course of business" is controlled to a large degree by the scope of work in a specific assignment. Differences in intended use, intended users, the type and definition of value, or other factors can dramatically alter the scope of work. Therefore, the "normal course of business" for one assignment might not be the "normal course of business" for a seemingly similar assignment.

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References**

- The following USPAP references are applicable when ascertaining the "normal course of business" in an assignment:
    — Standards Rules 1-2(h) and 7-2(h);
    — Standards Rules 1-5 and 7-5.

- For additional advice, refer to Advisory Opinion 1, *Sale and Transfer History*.

**General Comments**

The "normal course of business" is determined by the actions of an appraiser's peers and by the expectations of parties who are regularly intended users for similar assignments; it is not any one appraiser's practices or any one appraisal firm's policies.

To fully understand this concept one must examine the definitions of "Scope of Work" and "Appraiser's Peers."

"Scope of Work" is addressed in the SCOPE OF WORK RULE, Standards Rules 1-2(h) and 7-2(h), and is defined in USPAP as:

> *the type and extent of research and analyses in an appraisal or appraisal review assignment.*

---

68

**GO BACK**

USPAP Guidance: Advisory Opinions
© The Appraisal Foundation

Researching the subject's prior sales and all other transfers is an aspect of the scope of work. The <u>Comment</u> to the <u>Scope of Work Acceptability</u> section in the SCOPE OF WORK RULE states:

> *The scope of work is acceptable when it meets or exceeds:*
>
> - *the expectations of parties who are regularly intended users for similar assignments; and*
> - *what an appraiser's peers' actions would be in performing the same or a similar assignment.*

Therefore, it is not the work habits of an individual appraiser that define the "normal course of business" in an assignment. Rather, it is the requirements of the Standards Rules measured against the actions of the appraiser's peers and the expectations of parties who are regularly intended users for similar assignments.

"Appraisers Peers" is defined as:

> *other appraisers who have expertise and competency in a similar type of assignment.*

In addition to the concept of "normal course of business" in an assignment, an appraiser has the obligation to perform research and analysis appropriate to the intended use of the assignment. Standards Rules 1-1(b) and 7-1(b) state:

> *In developing a[n]...appraisal, an appraiser must:*
>
> *not commit a substantial error of omission or commission that significantly affects an appraisal...*

The <u>Comments</u> to these Standards Rules state, in part:

> *Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.*

**Illustrations:**

1. A reviewer noted that a real property appraisal report did not include an analysis of a sale of the subject real property that had occurred six months prior to the effective date of the appraisal. The sale was reported in the local Multiple Listing Service (MLS), which is available to appraisers in the area and to which most area appraisers subscribe. When contacted about the matter, the appraiser stated that he did not subscribe to the MLS, and checking that data source was not within his normal course of business. Is this an appropriate response?

   <u>Answer</u>: No. The fact that the individual appraiser does not subscribe to this data source does not excuse the lack of analysis. Since most appraisers in the market area do subscribe, and informed market participants would be aware of this and expect this level of diligence, the appraiser's lack of research and analysis did not reflect the normal course of business in *this* market.

2. A real property appraiser is engaged to appraise a property that is located in a rural area. Sales prices are a matter of public record, but the records are not computerized, and personal analysis of the public records requires a trip to the municipal building and a great deal of time searching records. Local officials will not provide this information over the telephone. Most appraisers in the area analyze sales data by using information provided by a local on-line data provider and quarterly sales reports that are mailed out by the local jurisdiction. In this situation, what action is necessary by the appraiser to comply with the requirement to analyze the subject's sales history?

   <u>Answer</u>: In this case, the normal course of business is to use the information from the local data provider and the quarterly sales reports. If a trip to the municipal building does not reflect the typical actions of most other appraisers in this market for this property type, or the expectations of clients for this specific type of assignment, then it is not required as part of the research and analysis in this assignment.

GO BACK

3. A personal property appraiser is engaged to appraise a painting by a well-known artist for estate tax purposes. Neither the heirs nor the executor of the estate could locate the documentation for the purchase by the decedent, even though the painting had been bought less than six months before the appraisal was ordered. However, the sale was widely reported, both in newspapers and trade publications, since the painting had been purchased at public auction and at a price that set a new high for that artist's work. The appraiser used sales of other paintings by the same artist to support the final opinion of value, but not the recent sale of the subject property, stating in the report that the documentation was not available. Does this comply with the sales history requirements of Standards Rule 7-5?

> Answer: No. This would not comply with the requirements of Standards Rule 7-5. Competent fine art appraisers would research relevant sections of newspapers and trade magazines and likely keep files or create databases of significant transactions. Therefore, this appraiser should have known at least the details of the sale that had been made public in the press.

4. During an appraisal assignment, the appraiser was informed by the owner that the subject property was listed for sale on a prominent Internet site. The appraiser did no additional research, and in the appraisal report indicated only that the property was listed for sale. Does this comply with the requirements of USPAP?

> Answer: No. The appraiser must analyze the current listing and report the findings within the appraisal report. Since the listing was placed on the Internet, where it would be available to the general public, it would be available to the appraiser in the normal course of business.

# ADVISORY OPINION 25 (AO-25)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Clarification of the Client in a Federally Related Transaction**
**APPLICATION: Real Property**

## THE ISSUE:

The appraisal rules adopted by the Federal Financial Institutions Regulatory Agencies in August 1990 to comply with Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) impose a requirement on regulated institutions that "if an appraisal is prepared by a fee appraiser, the appraiser shall be directly engaged by the regulated institution or its agent."[1]

In some cases, however, a property owner might directly engage the services of an appraiser for one intended use, but later desire to use the appraisal report in a federally related loan transaction. This and other similar scenarios lead to the question: "Does an appraiser have an obligation to ensure that his or her services are directly engaged by a federally regulated financial institution?"

## ADVICE FROM THE ASB ON THE ISSUE:

### Relevant USPAP & Advisory References

- DEFINITIONS, specifically "client," "intended user," and "intended use"
- The ETHICS RULE
- SCOPE OF WORK RULE, which requires an appraiser to determine an appropriate scope of work to produce credible assignment results including all assignment conditions
- Standards Rules 1-2(a) and 1-2(b), which require an appraiser to identify the client, intended user(s), and intended use
- Standards Rule 2-1(a), which requires an appraiser to clearly and accurately set forth the appraisal in a manner that is not misleading
- Advisory Opinion 26, *Readdressing (Transferring) a Report to Another Party*
- Advisory Opinion 27, *Appraising the Same Property for a New Client*
- Advisory Opinion 30, *Appraisals for Use by a Federally Regulated Financial Institution*
- Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*

### Comments

USPAP requires an appraiser to identify the intended use and intended users in an appraisal assignment. USPAP also requires that appraisers not be misleading in the marketing of their services (see <u>Management</u> section of the ETHICS RULE).[2] Advisory Opinion 30 provides guidance on the applicability of federal regulations and USPAP obligations when performing appraisals for use by a federally regulated financial institution.

---

1   National Credit Union Administration – 2 CFR 722.5(b)
     Federal Reserve System – 12 CFR 225.65(b)
     Federal Deposit Insurance Corporation – 12 CFR 323.5(b)
     Office of the Comptroller of the Currency – 12 CFR 34.45(b)
2   In USPAP publication see <u>Management</u> section of the ETHICS RULE

---

In order to not be misleading when contacted by a prospective client, the appraiser's obligation is one of proper disclosure. If an appraiser knows that intended use of the appraisal is, or may be, for a federally related transaction by a federally regulated financial institution, it is that appraiser's responsibility to disclose to the prospective client prior to agreeing to perform the assignment that the lender or its agent is required to directly engage the appraiser. The appraiser should also disclose to the prospective client prior to agreeing to perform the assignment that it is unethical for the appraiser to later "readdress" or otherwise change the report to indicate a federally regulated financial institution was the client when the appraisal was performed for another party. (See Advisory Opinion 26, *Readdressing [Transferring] a Report to Another Party* and Advisory Opinion 27, *Appraising the Same Property for Another Client for related advice on this issue.)* If the client still wishes to proceed with the appraisal after the appraiser has properly fulfilled these disclosure obligations the appraiser can agree to perform the assignment. It would be prudent to recite disclosures in the engagement letter and in the report.[3] (Also refer to Advisory Opinion 36 for additional information relating to intended use and intended users.)

**Illustrations:**

1. Homeowner Susan Daly contacts appraiser John Hunt to perform an appraisal of her residence. She is considering refinancing and wants to determine the amount of equity in the residence before completing a loan application. Assuming the refinancing would be a federally related transaction at a federally regulated financial institution, what is John's responsibility to this potential client?

   Answer: Before John agrees to perform this assignment, it is his responsibility to disclose to Susan that a lender or its agent is required to directly engage the services of an appraiser in a federally related transaction and should not accept his appraisal report. If Susan still wants to engage John, his disclosure allows him to perform the assignment.

2. A buyer of a commercial building contacts appraiser Jane Johnson about appraising the property for financing. The buyer explains that he will likely be providing the report to an insurance company that is interested in financing the property. The insurance company has no problem with the buyer being the client, as long as the insurance company is identified as an intended user in this assignment. However, the buyer says that he may also make application to his local bank, a federally regulated financial institution. Can Jane agree to perform this assignment? If so, does she have any disclosure obligations?

   Answer: Jane has an obligation to disclose to the buyer that the federally regulated financial institution should not accept her appraisal report because a lender or its agent is required to directly engage the services of an appraiser in a federally related transaction. If the buyer still wants to engage Jane, her disclosure allows her to perform the assignment.

---

3    See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*

**GO BACK**

# ADVISORY OPINION 26 (AO-26)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Readdressing (Transferring) a Report to Another Party**
**APPLICATION: Real Property, Personal Property, and Intangible Property**

## THE ISSUE:

After an assignment has been completed and the report has been delivered, an appraiser may be asked to "readdress" (transfer) the report to another party. Does USPAP allow an appraiser to "readdress" (transfer) a report by altering it to indicate a new recipient as the client or additional Intended user when the original report was completed for another party?

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References**

- The <u>Confidentiality</u> and <u>Conduct</u> sections of the ETHICS RULE
- Standards Rules such as 1-2(a) and 1-2(b); 7-2(a) and 7-2(b); and 9-2(a) and 9-2(b), which require an appraiser to identify the client, intended users, and intended use
- Standards Rules such as 2-1(a), 8-1(a), 10-1(a), which require an appraiser to clearly and accurately set forth the appraisal in a manner that is not misleading
- SCOPE OF WORK RULE, which requires an appraiser to ascertain whether other laws or regulations apply to the assignment in addition to USPAP
- Advisory Opinion 25, which covers clarification of the client in a federally related transaction
- Advisory Opinion 27, which addresses appraising the same property for a new client
- Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*

**Comments**

The answer to the question posed above is No. Once a report has been prepared for a named client(s) and any other identified intended users and for an identified intended use, the appraiser cannot "readdress" (transfer) the report to another party.

USPAP defines Client as:

> *the party or parties (i.e., individual, group, or entity) who engage an appraiser by employment or contract **in a specific assignment**, whether directly or through an agent* (bold added for emphasis).

Assignment is defined as:

> *a valuation service that is provided by an appraiser as **a consequence of an agreement with a client*** (bold added for emphasis).

Intended Use is defined as:

> *the use(s) of an appraiser's reported appraisal or appraisal review assignment results, as identified by the appraiser based on communication with the client **at the time of the assignment*** (bold added for emphasis).

Intended User is defined as:

*the client and any other party as identified, by name or type, as users of the appraisal or appraisal review report by the appraiser based on communication with the client **at the time of the assignment** (bold added for emphasis).*

Identification of the client, any other intended users, and the intended use are key elements in all assignments. Because these identifications drive the appraiser's scope of work decision, as well as other elements of the assignment, they must be determined **at the time of the assignment**. They cannot be modified after an assignment has been completed. See Advisory Opinion 36 for further clarification.

**Illustrations:**

Question #1

An appraiser was engaged by Client A to appraise a property. The appraiser delivered the appraisal report to Client A. The client has decided not to pursue the transaction that generated the need for the appraisal report. The appraiser is contacted by Client B. Client B requests that the original report be readdressed (transferred) by replacing Client A's name with Client B's name in the report. Is this acceptable?

Answer: No. Simply changing the client name on the report cannot change or replace the original appraiser-client relationship that was established with Client A. Therefore, this action is misleading.

Question #2

How can this circumstance be handled according to Standards?

Answer: The appraiser can consider Client B's request as a new assignment. In so doing, the appraiser may establish a new appraiser-client relationship with Client B and appraise the property for this new client. Important considerations, i.e., confidential information and other factors, are further addressed in AO-27, *Appraising the Same Property for a New Client*.

Question #3

Why might Client B want their name on the report that was completed for Client A?

Answer: Client B may want to establish an appraiser-client relationship because it provides all the rights, obligations and liabilities such a relationship places on the appraiser.

A prudent method to establish an appraiser-client relationship is to have a written engagement letter or contract with any client at the time of the assignment.

# ADVISORY OPINION 27 (AO-27)

This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.

**SUBJECT: Appraising the Same Property for a New Client**
**APPLICATION: Real Property, Personal Property, and Intangible Property**

## THE ISSUE:

Situations often arise in which appraisers who have previously appraised a property are asked by a different party to appraise the same property. In some instances this request arises very soon after the first appraisal; in others, it may be months or years later. Under what circumstances can an appraiser agree to perform an assignment to appraise a property for a prospective client when that appraiser has previously completed an appraisal of the same property for another client?

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References:**

- <u>Conduct</u> section of the ETHICS RULE

- <u>Confidentiality</u> section of the ETHICS RULE

- Advisory Opinion 25 which covers clarification of the client in a federally related transaction

- Advisory Opinion 26 which addresses reappraising/transferring a report to another party

- Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*

**Comments:**

Agreeing to perform the assignment from the subsequent prospective client is not prohibited by USPAP, assuming appropriate disclosure is made to the client before being engaged and any existing confidential information is handled properly.

The part of the <u>Conduct</u> section of the ETHICS RULE that is pertinent to this matter includes the following:

***If known prior to agreeing to perform an assignment, and/or if discovered at any time during the assignment, an appraiser must disclose to the client, and in the subsequent report certification:***

> *any services regarding the subject property performed by the appraiser, as an appraiser or in any other capacity, within the three year period immediately preceding the agreement to perform the assignment.*

> <u>*Comment*</u>*: Disclosing the fact that the appraiser has previously appraised the property is permitted except in the case when an appraiser has agreed with the client to keep the mere occurrence of a prior assignment confidential. If an appraiser has agreed with a client not to disclose that he or she has appraised a property, the appraiser must decline all subsequent assignments that fall within the three year period.*

Several parts of the <u>Confidentiality</u> section of the ETHICS RULE are pertinent to this matter.

> *An appraiser must not disclose: (1) confidential information or (2) assignment result: to anyone other than the client;*

An appraiser cannot disclose the results of a particular assignment, performed for a particular client, to anyone other than those designated by that client. However, an understanding of the definitions of *assignment, assignment results,* and *client* are key to a complete understanding of this requirement.

> Assignment – *a valuation service that is provided by the appraiser as a consequence of an agreement with the client*

GO BACK

Client – *the party or parties (i.e., individual, group, or entity) who engage an appraiser by employment or contract in a specific assignment, whether directly or through an agent.*

Assignment Results – *An appraiser's opinions or conclusions, not limited to value, that were developed when performing an appraisal assignment, an appraisal review assignment, or a valuation service other than an appraisal or appraisal review.*

Comment: *Physical characteristics are not assignment results.*

As can be seen in the definitions, both the client and the assignment results are specific to an assignment. If there is a new potential client, valuation services performed for that new client would constitute a new assignment and the assignment results would be specific to that new assignment. Therefore, engagement for and performance of the new assignment to appraise the same property would not be considered revealing the first client's assignment results to the second client, even if the value conclusions were the same. It should be noted that the value conclusion could easily be different if the effective date or the scope of work changed in any manner. It should also be noted that USPAP requires the appraiser to provide an unbiased opinion of value to each client.

**Obtaining a Release:**

As a matter of business practice, some appraisers request a release from a prior client before agreeing to perform an assignment to appraise the same property for a new client or to disclose the assignment for the second client to the first client. However, USPAP does not require this. Also, appraisers should be aware that, in some cases, informing a client about the existence of another client and the fact that the property was appraised for that other client may not be compliant with the portion of the Confidentiality section of the ETHICS RULE, which states:

*An appraiser must protect the confidential nature of the appraiser-client relationship.*

**Confidential Information:**

In all assignments the appraiser must comply with the Confidentiality section of the ETHICS RULE with respect to the handling of confidential information. Confidential information is defined in USPAP as:

*information that is either:*

- *identified by the client as confidential when providing it to an appraiser and that is not available from any other source; or*
- *classified as confidential or private by applicable law or regulation.*

The Confidentiality section of the ETHICS RULE states:

*An appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment.*

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than the client, parties specifically authorized by the client, state appraiser regulatory agencies, third parties as may be authorized by due process of law, and a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.*

If a prior assignment included any confidential information, its disclosure to a different client or intended user would violate the ETHICS RULE if the information were still classified as confidential information. This includes the requirement to comply with all confidentiality and privacy laws and regulations.

GO BACK

**Client Expectations:**

At times, an appraiser's client may believe that his or her legitimate business interest could be harmed by that appraiser providing an appraisal of the subject property of that assignment to another client. In such cases, the client and the appraiser may stipulate in their service agreement the conditions under which the appraiser may or may not appraise the same subject property. A client involved in litigation may stipulate that the appraiser cannot appraise a subject property for the opposing party in that litigation. As another example, if an appraiser is providing the value of a property to a client who is planning to sell that property in an auction, the appraiser and client may agree that the appraiser will not appraise the same property for a party planning to participate in the bidding process.

**Illustrations:**

**Example A – Litigation**

An appraiser performs an appraisal for a client involved in litigation and then is requested to appraise the same property for the opposing party. Is agreeing to perform the assignment for the second client prohibited by USPAP?

No, assuming appropriate disclosure is made to the client and confidential information is handled correctly. However, there are common business practices in such circumstances. Often, the opposing parties each hire an appraiser to appraise the subject property. If the opposing parties do not plan to hire one appraiser jointly, each party could make it a part of the agreement between the appraiser and the client (the engagement letter or contract) that the appraiser is not to appraise the property for anyone representing the opposing side of the legal action.

In the absence of such an agreement between the client and the appraiser, the appraiser should make appropriate disclosure to the client and consider the presence of confidential information. The knowledge of confidential information may prevent the appraiser from agreeing to perform the second assignment. The appraiser must decline the second assignment if:

1. the appraiser used confidential information in performing the first assignment;
2. that information would not be available from any other source; and
3. credible results cannot be derived without the use of this confidential information.

However, the appraiser may agree to perform the second assignment, making sure to not disclose any confidential information from the original assignment to the second client, if:

1. the information is available from another source (meaning it is not *confidential information*, as defined); or
2. the *confidential information* is not material to deriving credible assignment results, and
3. the client agrees to engage the appraiser after the appraiser makes the appropriate disclosure.

However, the appraiser must ensure that confidential information is not disclosed, even if it has no impact on the assignment results (such as the litigation strategy of attorneys representing the first client).

**Example B – Competing Banks**

If an appraiser has appraised a property for Bank A and then is approached by Bank B to appraise the same property, does USPAP prohibit agreement to perform the second assignment?

No, assuming disclosure is made to the client and confidential information is handled correctly. This constitutes a second assignment, a new client and a new agreement between a client and an appraiser.

GO BACK

# ADVISORY OPINION 28 (AO-28)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Scope of Work Decision, Performance, and Disclosure**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

The SCOPE OF WORK RULE states:

*For each appraisal and appraisal review assignment, an appraiser must:*

1. *identify the problem to be solved;*

2. *determine and perform the scope of work necessary to develop credible assignment results; and*

3. *disclose the scope of work in the report.*

How are the requirements in the SCOPE OF WORK RULE incorporated into the process of developing and reporting assignment results?

## ADVICE FROM THE ASB ON THE ISSUE:

**Problem Identification**

Problem identification is the beginning point of every assignment. The appraiser must gather and analyze the information needed to properly recognize the appraisal or appraisal review problem to be solved. The information necessary for problem identification is presented in each Standard that addresses the development process for an appraisal or appraisal review assignment. For example, Standards Rules 1-2, 5-2, 7-2 and 9-2 provide the assignment elements that must be defined and analyzed in order to identify the problem to be solved in an appraisal assignment. These assignment elements include the:

- client and any other intended users;

- intended use of the appraiser's opinions and conclusions;

- type and definition of value;

- effective date of the appraiser's opinions and conclusions;

- subject of the assignment and its relevant characteristics; and

- assignment conditions.

Identifying the problem to be solved is required in order to make critical judgments in determining the appropriate scope of work. Therefore, the assignment elements necessary for problem identification in an appraisal or appraisal review assignment also serve as reference points in determining whether the scope of work performed was appropriate to provide credible assignment results.[1]

---

1    See Advisory Opinion 29, *An Acceptable Scope of Work.*

GO BACK

Additionally, proper identification of the problem to be solved is required for compliance with the COMPETENCY RULE, which states:

> *An appraiser must determine, prior to agreeing to perform an assignment, that he or she can perform the assignment competently. Competency requires (1) the ability to properly identify the problem to be addressed; (2) the knowledge and experience to complete the assignment competently; and (3) recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.*

One of the assignment elements that affects the scope of work is assignment conditions.[2] Some assignment conditions are not a matter of choice, such as an inability to inspect a property because it has been destroyed. Other assignment conditions are a matter of choice, such as a client's request to perform a desktop appraisal of machinery and equipment to reduce fees.

### Determining and Performing the Scope of Work

USPAP recognizes that the appropriate scope of work may differ significantly for different assignments; the SCOPE OF WORK RULE provides flexibility in determining the scope of work. The competency necessary to determine an appropriate scope of work within the allowed flexibility resides with the appraiser. Therefore, while it is common and reasonable for the client to provide input to the appraiser regarding a desired scope of work, the responsibility for determining the appropriate scope of work resides with the appraiser.

The flexibility and responsibility are linked in the SCOPE OF WORK RULE when it states:

> *Appraisers have broad flexibility and significant responsibility in determining the appropriate scope of work for an appraisal or appraisal review assignment.*

This responsibility is described when the SCOPE OF WORK RULE states:

> *The appraiser must be prepared to demonstrate that the scope of work is sufficient to produce credible assignment results.*

The client, for example, might request that the appraiser include, or exclude, specific inspections, data collection, or analysis in the scope of work. The appraiser may agree to perform an assignment with these types of assignment conditions provided that the assignment results are credible in the context of the intended use. The SCOPE OF WORK RULE addresses this issue in the <u>Scope of Work Acceptability</u> section:

> *An appraiser must not allow assignment conditions to limit the scope of work to such a degree that the assignment results are not credible in the context of the intended use.*

> *An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.*

Determining the appropriate scope of work requires judgment. This judgment rests on the appraiser's identification of the assignment elements and understanding of what is required to solve the identified problem. In many assignments, experienced appraisers are able to make this judgment about the appropriate scope of work quickly because they have performed many assignments addressing a similar problem to be solved (assignment with similar assignment elements). In other assignments, the determination of the appropriate scope of work may require more analysis by the appraiser because the problem to be solved has certain unusual characteristics. In yet other assignments, the appraiser may begin with a planned scope of work but in the course of the assignment find that the planned scope of work must be modified in order to produce credible assignment results.

The SCOPE OF WORK RULE recognizes that the scope of work actually performed may differ from the scope of work initially planned, when it states:

> *Determining the scope of work is an ongoing process in an assignment. Information or conditions discovered during the course of an assignment might cause the appraiser to reconsider the scope of work.*

---

2    In USPAP publication see <u>DEFINITIONS</u>, Assignment Conditions

**Disclosing the Scope of Work Performed**

The SCOPE OF WORK RULE explains that proper disclosure of the scope of work:

*...is required because clients and other intended users rely on the assignment results.*

The Rule also states that:

*The report must contain sufficient information to allow the client and other intended users to understand the scope of work performed. The information disclosed must be appropriate for the intended use of the assignment results.*

An appraiser must disclose research and analyses not performed when such disclosure is necessary for intended users to understand the report properly and not be misled.

These disclosure requirements apply to the scope of work performed, rather than the scope of work initially planned by the appraiser. The appraiser must disclose the type and extent of research and analyses that were actually completed in the development process. Additionally, the information required to allow intended users to understand the scope of work may include disclosure of research and analyses not performed. The appraiser has broad flexibility and significant responsibility in the level of detail and manner of disclosing the scope of work in the appraisal report or appraisal review report. The appraiser may, but is not required to, consolidate the disclosure in a specific section or sections of the report, or use a particular label, heading or subheading. An appraiser may choose to disclose the scope of work as necessary throughout the report.

**Illustrations:**

1. A real property appraiser is engaged to appraise the market value of a twelve-unit apartment building. The appraiser initially decided that the scope of work should include a personal inspection of two of each of the three unit types (studio, one- and two-bedroom). In the course of conducting the personal inspection, the property manager had a key for only one of the two-bedroom units; thus the appraiser was not able to personally inspect one of the two-bedroom units as planned.

   The scope of work, which includes the degree of the personal inspection, was affected in this assignment because of lack of access. If the appraiser decides that she has sufficient information to produce credible assignment results, the appraiser can complete the appraisal based on the degree of the personal inspection completed. The report would include a description of the scope of work performed, stating that five units had been inspected.

2. A personal property appraiser was engaged to appraise four sets of china. The intended use of the report was for litigation regarding an estate. The client requested that all pieces of each set of china be inspected, since one cause of action claimed that several pieces were damaged.

   When the appraiser contacted the estate's administrator to arrange for a personal inspection, he was told that one set of china was in storage and could not be retrieved until after the Court's deadline for the submission of expert reports.

   In this case, assignment conditions have changed the appraiser's scope of work. the appraiser may not have sufficient information to produce credible assignment results in the context of the intended use. The appraiser should consult with the client on the proper course of action. The appraiser may alter the scope of work to include the appraisal of only the three sets of china available for personal inspection or use an extraordinary assumption regarding the condition of the fourth set.

3. A business appraiser is appraising a closely held business enterprise with real property and personal property assets. In the course of the assignment, the appraiser's research indicates that the market for the company's product is declining and management's projections are not supported. Therefore, the appraiser believes the company might be worth more in liquidation than as a going concern, which would make performance of the work addressed in Standards Rule 9-3 necessary for credible assignment results.

   The scope of work must be modified because of what the appraiser learned in the course of performing research and analyses.

80

GO BACK

4. A real property appraiser is contacted by a potential client to appraise an occupied manufacturing facility. The client requests that the occupants not be disturbed and that the appraiser not personally inspect the property. Additionally, the client requests that the cost approach be performed in the appraisal of the building. These requests are assignment conditions and will be part of the appraiser's identification of the problem to be solved and determination of the appropriate scope of work.

To perform this assignment, the appraiser is required to:

- Determine that the client's assignment conditions do not limit the scope of work to such a degree that assignment results are not credible in the context of the intended use;

- Gather information on relevant characteristics by means other than a personal inspection and/or use extraordinary assumptions;

- Include a cost approach in the scope of work, even if this approach is not otherwise necessary for credible assignment results; and

- Properly reconcile the applicability or suitability of the cost approach in arriving at the value conclusion

5. A real property appraiser agreed to perform an assignment to appraise a three-unit residential property. The intended use of the appraisal was for mortgage financing. The client requested that the appraiser not verify the legal status (e.g., compliance with zoning, building codes, use permits) of the three units with municipal officials.

The appraiser withdrew from the assignment because she concluded that the client's assignment condition limited the scope of work to such a degree that assignment results would not be credible in the context of the intended use. The use of an extraordinary assumption about the legal use of the property would not produce credible assignment results in the context of the mortgage financing use.

6. An appraiser was engaged to appraise a one-unit residence. Based on the appraiser's identification of the appraisal problem, the appropriate scope of work was determined to include development of the sales comparison approach and cost approach. However, at the time of the personal inspection the appraiser discovered that the property was not a one-unit, but instead a three-unit property.

Based on this new information, the appraiser reconsidered the appraisal problem and the appropriate scope of work. The change in relevant property characteristics for the subject property significantly changed the appropriate scope of work; the initially planned scope of work was no longer suitable and would not produce credible assignment results. The type of data to be researched and the type of analysis to be applied changed when the property type changed from a single-unit to a three-unit.

A new appraisal problem requires reexamination of the scope of work. The appropriate scope of work for the new appraisal problem includes an income approach, and the cost approach is not necessary for credible assignment results.

The appraiser should consult with the client since the appraisal problem has changed.

GO BACK

# ADVISORY OPINION 29 (AO-29)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: An Acceptable Scope of Work**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

The SCOPE OF WORK RULE states that an appraiser's scope of work is acceptable when it meets or exceeds:

- *the expectations of parties who are regularly intended users for similar assignments; and*

- *what an appraiser's peers' actions would be in performing the same or a similar assignment.*

What makes an assignment similar?

Who are an appraiser's peers?

Must an acceptable scope of work satisfy both benchmarks?

## ADVICE FROM THE ASB ON THE ISSUE:

**Similar Assignments**

Assignment elements define and characterize the problem to be solved in appraisal and appraisal review assignments. The assignment elements necessary for proper identification of the appraisal problem are addressed in the applicable Standards Rules (i.e., SR 1-2, 3-2, 5-2, 7-2 and 9-2). The applicability of Standards Rules depends on the type of asset being appraised (real property, personal property, or intangible property including business interests) and the type of assignment (appraisal or appraisal review).

Assignments are similar when the assignment elements used to identify the appraisal problem are comparable. Assignment elements include such things as the intended use, intended users, type and definition of value, effective date, relevant characteristics of the subject property, and assignment conditions.

The information gathered about the assignment elements is used by the appraiser to identify the problem to be solved and determine an acceptable scope of work. The greater the commonality among assignment elements, the more similarity there is between assignments.

**An Appraiser's Peers**

USPAP defines Appraiser's Peers as:

*other appraisers who have expertise and competency in a similar type of assignment.*

To be an appraiser's peer for a particular assignment, one must have the competency to address the appraisal problem presented in that assignment. This includes the knowledge and experience to:

- properly identify the appraisal or appraisal review problem to be solved;

- determine the type and extent of research and analyses to include in the development process; and

- perform the required research and analyses properly.

Because assignments can require different types of expertise and competency, it is possible to be considered an appraiser's peer for some assignments, but not for others. Identifying an appraiser's peer is always done in the context of a particular assignment.





Within appraisal practice there are three disciplines (real property, personal property, and intangible property including business interests), and within those disciplines there are many areas of specific expertise. An appraiser can have a focused area of expertise and competency or a wide variety of expertise and competency. Merely holding the same type or level of credential does not make one an appraiser's peer.

Determining if an individual is an appraiser's peer requires examining the individual's expertise regarding each of the elements that define the assignment. For example, solely having expertise in appraising the same type of property is not sufficient to make someone an appraiser's peer.

### Application

The scope of work is acceptable when it leads to credible assignment results. The SCOPE OF WORK RULE establishes two benchmarks for measuring the acceptability of the scope of work, both of which need to be met. The scope of work is acceptable when it meets or exceeds **both** (1) the expectations of parties who are regularly intended users for similar assignments; and (2) what an appraiser's peers' actions would be in performing the same or a similar assignment. An acceptable scope of work must satisfy both benchmarks.

### Illustrations:

1. An appraiser has been engaged to perform an "exterior only" appraisal of a single-family property for a potential home equity loan. Another appraiser has been asked to appraise a single-family property in the same development for an FHA loan. Since the subject properties are similar, would the assignments require the same scope of work?

   No. The subject of the assignment and its relevant characteristics is just one of several assignment elements that define an appraisal problem. Because of critical differences in the intended use and the appraisal problem to be solved, the scope of work that is acceptable for the first assignment would not be acceptable for the second assignment. For example, an appraisal performed for an FHA loan is subject to a personal inspection that is more extensive than one that consisted of viewing the "exterior only."

2. A state certified general appraiser is appraising a highly specialized industrial facility, and is concerned that the assignment is so complex that many appraisers who are knowledgeable about industrial property would not be qualified to judge whether or not the scope of work was appropriate. Who would be considered the appraiser's peers in this assignment?

   The appraiser's peers for this assignment would be other appraisers competent to complete a similar assignment. If special expertise is required, other state certified general appraisers without the required expertise and knowledge would not be the appraiser's peers for this assignment. Identifying appraisers with expertise and competency in appraising similar complex property types or unusual intended uses may require seeking appraisers from other geographic areas.

3. A business appraiser is engaged to value a 25% minority interest in the equity of a small privately held company for estate tax reporting purposes. The standard of value is fair market value as defined in the tax regulations. The engagement requires that a second appraiser, meeting the definition of an appraiser's peer, be retained to review the work and to opine on the value of the subject interest. Another appraiser is experienced in valuing companies in the same industry, but typically appraises them for purposes of sale, valuing 100% of the equity and has never performed appraisals of minority interests for estate tax reporting purposes. Is this other appraiser an appraiser's peer for this assignment?

   No. Part of problem identification for a business appraisal includes identification of the extent to which the subject interest contains elements of ownership control. Part of the appraisal process includes analyzing the effect on value, if any, of the extent to which the interest appraised contains elements of ownership control. Individuals who meet the definition of appraiser's peers would need to have expertise and competency in valuing minority interests. Additionally, the fact that the second appraiser has not performed appraisals for the same intended use could also render him or her to not be a peer in this assignment.

4. An appraiser has agreed to complete an assignment in the next two days. While conducting research, the appraiser discovers that the primary data source for the assignment, a regional computer database, is off-line and will not be available for three days. What is the appropriate course of action?

> If an appraiser is unable to perform research that the appraiser's peers would conduct and intended users would expect, the appraiser must modify the assignment to allow time for the research to be conducted, or withdraw from the assignment.

**GO BACK**

# ADVISORY OPINION 30 (AO-30)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Appraisals for Use by a Federally Regulated Financial Institution**
**APPLICATION: Real Property**

## THE ISSUE:

In order to comply with Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), the federal financial institutions regulatory agencies ("agencies")[1] of the United States have adopted appraisal regulations and guidelines. These laws, regulations and guidelines are established to protect federally insured depository institutions and include the requirement that appraisals be prepared in compliance with the *Uniform Standards of Professional Appraisal Practice* (USPAP).

What are an appraiser's obligations when performing a real property appraisal for use by a federally regulated financial institution?

## ADVICE FROM THE ASB ON THE ISSUE:

### Recognition of Assignment Conditions

USPAP creates an obligation for appraisers to recognize and adhere to applicable assignment conditions. The appraiser's identification of the intended use and intended users drives the applicable assignment conditions. The relevant laws and agencies' appraisal regulations and guidelines are assignment conditions for real property appraisals for use by a federally regulated financial institution. These assignment conditions include, but are not limited to, the following:

- Laws, principally Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA);
- Regulations, primarily the following agency appraisal regulations:
    - Office of the Comptroller of the Currency (OCC) 12 CFR 34, Subpart C;
    - Federal Reserve Board (FRB) 12 CFR 225, Subpart G;
    - Federal Deposit Insurance Corporation (FDIC) 12 CFR 323;
    - National Credit Union Administration (NCUA) 12 CFR 722.
- Guidelines provided in the agencies' bulletins and issuances, including documents such as:
    - *Interagency Appraisal and Evaluation Guidelines;*
    - *Independent Appraisal And Evaluation Function;*
    - *Frequently Asked Questions on Residential Tract Development Lending;*
    - *Frequently Asked Questions on the Appraisal Regulations and the Interagency Statement on Independent Appraisal and Evaluation Functions.*

The guidelines identified in this Advisory Opinion are subject to change. Appraisers are cautioned to communicate with their client on the current guidance that is applicable in a given assignment. Reference can be made to the website of the applicable federal financial institutions regulatory agency for these documents and more information on current bulletins and applicable issuances.

---

1   Office of the Comptroller of the Currency (OCC), Federal Reserve Board (FRB), Federal Deposit Insurance Corporation (FDIC),  and the National Credit Union Administration (NCUA).

---

GO BACK

**USPAP Applicability**

A client that is a federally regulated financial institution expects compliance with the applicable regulations and guidelines. An appraiser's obligations are established in the course of considering and agreeing to perform an assignment. Appraisers must recognize and adhere to assignment conditions that apply in an assignment to satisfy the following USPAP requirements:

1.  The PREAMBLE requires that appraisers develop and communicate assignment results in a manner that is meaningful and not misleading.

2.  The ETHICS RULE requires that appraisers perform assignments ethically and competently.

3.  The COMPETENCY RULE requires appraisers to provide competent service, including the specific requirement to recognize and comply with applicable laws and regulations.

4.  In developing assignment results, the SCOPE OF WORK RULE requires appraisers to determine, perform, and disclose the scope of work necessary to produce credible assignment results. Determining the appropriate scope of work requires identification of the problem to be solved, which includes identification of assignment conditions.

    The scope of work is acceptable when it meets or exceeds the expectations of parties who are regularly intended users for similar assignments. Upon agreeing to perform an assignment, an appraiser is obligated to competently satisfy the applicable assignment conditions.

5.  Standards Rule 1-1(a) is an extension of the COMPETENCY RULE that specifically requires that *the appraiser be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal*.

6.  Standards Rules 2-1(a) and 2-1(b) require that each written appraisal report (a) *clearly and accurately set forth the appraisal in a manner that will not be misleading;* and *(b) contain sufficient information to enable intended users of the appraisal to understand the report properly*.

7.  STANDARD 2 also requires that report content be appropriate for the intended use of the appraisal.

Use of the JURISDICTIONAL EXCEPTION RULE is not appropriate because none of the requirements in the agencies' appraisal laws and regulations preclude compliance with USPAP.

Appraisers must identify and consider the intended use and intended users in an assignment to understand their USPAP development and reporting obligations.  The agencies' appraisal regulations and guidelines contain assignment conditions that are part of competent performance when they apply in an assignment. Therefore, compliance with USPAP requirements for proper development and reporting require adherence to those assignment conditions that apply in an assignment.

**Failure to Adhere to Assignment Conditions**

Failure to recognize and adhere to applicable assignment conditions violates one or more of the USPAP requirements previously identified.

*   An appraiser who represents that an assignment is or will be completed in compliance with applicable assignment conditions and who then knowingly fails to comply with those assignment conditions violates the ETHICS RULE.

*   An appraiser who unintentionally fails to comply with or fails to recognize those assignment conditions violates the COMPETENCY RULE.

*   An appraiser who fails to develop assignment results in accordance with the assignment conditions necessary for credible assignment results violates the Scope of Work Rule and STANDARD 1.

*   An appraiser who fails to report assignment results in accordance with the assignment conditions that are necessary to enable intended users to understand the report properly violates STANDARD 2.

GO BACK

**Obligations for Appraisers Performing Appraisals for Use by a Federally Regulated Financial Institution**

Note: All quotations in this section are from the agencies' appraisal regulations.[2]  The quoted text is only a portion of the complete regulations, and the applicable regulations should be reviewed in their entirety.

**Appraiser Independence[3]**

The agencies' appraisal regulations state, in part:

"If an appraisal is prepared by a staff appraiser, that appraiser must be independent of the lending, investment, and collection functions and not involved, except as an appraiser, in the federally related transaction, and have no direct or indirect interest, financial or otherwise, in the property. If the only qualified persons available to perform an appraisal are involved in the lending, investment, or collection functions of the regulated institution, the regulated institution shall take appropriate steps to ensure that the appraisers exercise independent judgment. Such steps include, but are not limited to, prohibiting an individual from performing an appraisal in connection with federally related transactions in which the appraiser is otherwise involved and prohibiting directors and officers from participating in any vote or approval involving assets on which they performed an appraisal."

"If an appraisal is prepared by a fee appraiser, the appraiser shall be engaged directly by the regulated institution or its agent, and have no direct or indirect interest, financial or otherwise, in the property or the transaction."

"A regulated institution also may accept an appraisal that was prepared by an appraiser engaged directly by another financial services institution, if:

(i) The appraiser has no direct or indirect interest, financial or otherwise, in the property or the transaction; and

(ii) The regulated institution determines that the appraisal conforms to the requirements of this subpart and is otherwise acceptable."

For more information on these requirements and related USPAP obligations see Advisory Opinion 25, *Clarification of the Client in a Federally Related, Transaction* and Advisory Opinion 26, *Readdressing (Transferring) a Report to Another Party*.

**Appraisal Development and Reporting**

The agencies' appraisal regulations state, in part:

"For federally related transactions, all appraisals shall, at a minimum:

(a) Conform to generally accepted appraisal standards as evidenced by the *Uniform Standards of Professional Appraisal Practice* (USPAP) promulgated by the Appraisal Standards Board of the Appraisal Foundation (1155 15th Street, Suite 1111, NW., Washington, DC 20005), unless principles of safe and sound banking require compliance with stricter standards;

(b) Be written and contain sufficient information and analysis to support the institution's decision to engage in the transaction;

(c) Analyze and report appropriate deductions and discounts for proposed construction or renovation, partially leased buildings, nonmarket lease terms, and tract developments with unsold units;

(d) Be based upon the definition of market value as set forth in this subpart; and

(e) Be performed by State licensed or certified appraisers in accordance with requirements set forth in this subpart."

---

2    Office of the Comptroller of the Currency – 12 CFR 34.45(b), Federal Reserve Board – 12 CFR225.65(b), Federal Deposit Insurance Corporation – 12 CFR 323.5(b), National Credit Union Administration - 12 CFR 722.5(b).

3    See Advisory Opinion 25, *Clarification of the Client in a Federally Related, Transaction* and Advisory Opinion 26, *Readdressing (Transferring) a Report to Another Party.*

---

**Market Value Definition**

The agencies' appraisal regulations state, in part:

"*Market value* means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(1)    Buyer and seller are typically motivated;

(2)    Both parties are well informed or well advised, and acting in what they consider their own best interests;

(3)    A reasonable time is allowed for exposure in the open market;

(4)    Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

(5)    The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

**Commonly Asked Questions**

1.  How do the assignment conditions that apply to appraisals for use by a federally regulated financial institution affect the appraiser's scope of work and report content?

    An appraiser agreeing to perform an assignment under the agencies' appraisal regulations and guidelines is obligated to complete that assignment in a manner that adheres to the applicable appraisal regulations and guidelines.

2.  What is a "real estate-related financial transaction"?

    The term is defined in Title XI of FIRREA and the agencies' appraisal regulations as "any transaction involving —

    (1)    The sale, lease, purchase, investment in or exchange of real property, including interests in property, or the financing thereof; or

    (2)    The refinancing of real property or interests in real property; or

    (3)    The use of real property or interests in property as security for a loan or investment, including mortgage-backed securities."

3.  What is a "federally related transaction"?

    The term is defined in Title XI of FIRREA as "any real estate-related financial transaction which —

    (A)  a federal financial institutions regulatory agency or the Resolution Trust Corporation engages in, contracts for, or regulates; and

    (B)  requires the services of an appraiser."

    The agencies' appraisal regulations define when the services of an appraiser are required. The agencies' appraisal regulations also list specific categories of transactions that do not require the services of an appraiser.

4.  Do the agencies' appraisal regulations apply to FHA, VA, Fannie Mae, Freddie Mac, Farmer Mac, or Sallie Mae?

    FHA, VA, Fannie Mae, Freddie Mac, Farmer Mac and Sallie Mae are not under the supervision of the federal financial institutions regulatory agencies and therefore are not subject to their appraisal regulations.

GO BACK

# ADVISORY OPINION 31 (AO-31)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Assignments Involving More than One Appraiser**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

What are the specific USPAP obligations when an appraisal or appraisal review assignment involves more than one appraiser?

## BACKGROUND:

Many appraisal assignments involve participation by more than one appraiser. Typical scenarios include, but are not limited to:

- Two appraisers working together as equals on an assignment.
- A staff appraiser whose work is reviewed and/or directed by a more senior appraiser.
- A person who is being trained as an appraiser ("trainee") and requires supervision and direction by an appraiser already fully qualified to complete the assignment.
- An independent appraiser/contractor performing work for an appraisal firm.
- Two or more appraisers from different appraisal disciplines working on an assignment.

When assignments involve more than one appraiser there are often questions about the proper way to deal with USPAP requirements relating to record keeping, signatures and certifications.

It is important to realize that USPAP does not define an "appraiser" in terms of state licensing or certification requirements. USPAP defines an appraiser as one who is expected to perform valuation services competently and in a manner that is independent, impartial, and objective. Expectation is the crucial element in determining when one is acting as an appraiser. As a result, one could be a trainee by state licensing requirements and also identified as an appraiser by USPAP definition. To clarify the specific definition of appraiser and trainee in a jurisdiction, reference to applicable state law can be made in an appraisal report.

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP References**
- SCOPE OF WORK RULE, which requires that the appraiser disclose the scope of work performed
- RECORD KEEPING RULE
- Standards Rules 2-2(a)(ix), 2-2(b)(xi), 4-2(h), 6-2(h), 8-2(a)(ix), 8-2(b)(xi), 10-2(a)(x) and 10-2(b)(xii), which specify the reporting requirements when any portion of the work involves significant appraisal or appraisal review assistance
- Standards Rules 2-3, 4-3, 6-3, 8-3 and 10-3, which identify the requirements for an appraiser who is signing a certification and also for instances when appraisers provide significant assistance but do not sign a certification

**Record Keeping Requirements**
The RECORD KEEPING RULE requires:

*An appraiser must prepare a workfile for each appraisal or appraisal review assignment. A workfile must be in existence prior to the issuance of any report or other communication of assignment results.*

---

The Rule also mandates that workfiles be retained for a specified time, and states,

*An appraiser must have custody of the workfile, or make appropriate workfile retention, access and retrieval arrangements with the party having custody of the workfile.*

*An appraiser having custody of a workfile must allow other appraisers with workfile obligations related to an assignment appropriate access and retrieval for the purpose of:*

- *submission to state appraiser regulatory agencies;*
- *compliance with due process of law;*
- *submission to a duly authorized professional peer review committee; or*
- *compliance with retrieval arrangements.*

When an assignment is performed by more than one appraiser, each appraiser is subject to the same obligations regarding the workfile for the assignment, whether or not the appraiser signs a certification. These obligations may be met by creating a copy of the workfile for every appraiser involved in the assignment. Alternatively, the appraisers might agree to an access arrangement whereby the workfile is stored in a single location but access is provided to all appraisers involved. In whatever manner this USPAP requirement is met, all appraisers involved with the assignment must meet it.

### Certifications/Signatures

A signed certification is required for all appraisal and appraisal review reports. An appraiser who signs any part of a report, including a letter of transmittal, must also sign a certification.

A signed certification provides important disclosures about aspects of the assignment. It provides evidence that the appraiser is aware of the ethical obligations of acting as an appraiser. In single-discipline appraisals, a certification also attests that the analyses, opinions, and conclusions expressed are those of the signatory. A certification is also where significant appraisal assistance from others not signing a certification must be acknowledged. Any appraiser who provides significant appraisal or appraisal review assistance in the assignment must sign a certification or be identified in a certification. When more than one appraiser is involved in an assignment, USPAP allows for certification in a variety of ways, including:

- all appraisers could sign a certification accepting responsibility for the entirety of the analyses and the report if they are all competent to do so; or
- one appraiser could sign a certification and provide the name of each individual who provided significant appraisal or appraisal review assistance. In such a case, the exact nature of the assistance must be reported, but this need not be in a certification; or
- for assignments involving multiple disciplines (e.g., real property appraisal and personal property appraisal), an appraiser could sign a certification accepting responsibility only for the elements of the certification, assignment results and report contents applicable to the appraiser's discipline; or
- for personal property assignments involving multiple appraisers with different specialties (e.g., antiques, fine art, gems and jewelry, machinery and equipment) an appraiser could sign a certification accepting responsibility only for the elements of the certification, assignment results, and report contents specific to the appraiser's specialty.

### Significant Appraisal Assistance

USPAP does not define what constitutes significant appraisal assistance in an appraisal or appraisal review assignment. To be significant, the assistance (provided by an individual acting as an appraiser) must be substantial enough to have affected the development of the assignment results. Significant appraisal assistance is related to the appraisal process and requires appraisal competency. Therefore, only those acting as an appraiser sign a certification, or are identified as providing significant appraisal assistance in a certification. Examples of significant appraisal assistance may include:

- research and selection of comparable properties and data;
- estimating depreciation; or

GO BACK

- forecasting income and expenses.

An appraiser often uses assistance that does not constitute significant appraisal assistance. Although it is the responsibility of the appraiser to determine the role of any individual providing assistance, tasks such as, but not limited to, writing down measurements the appraiser provides when measuring a structure, taking photographs of the subject property, and providing clerical duties are not considered significant appraisal assistance.

An appraiser providing assistance must comply with those parts of USPAP that apply to the assistance that he or she provides. So, for example, if an appraiser's assistance includes only developing a cost approach in a real property appraisal assignment, that appraiser must comply with the applicable Rules (i.e., the ETHICS RULE, etc.), and Standards Rules 1-1, 1-3, 1-4(b), any other applicable sections of Standards Rule 1-4, and Standards Rule 1-6(a).

**Illustrations:**

*Workfile Obligations When Trainee Signs a Certification in the Report*

1. Jennifer is currently being trained as an appraiser (a trainee) working toward her state license as a real property appraiser. Her work includes completing and co-signing appraisal reports with her supervising appraiser. Must she keep a copy of the workfile for every assignment she works on?

   If Jennifer acted as an appraiser in the assignment, USPAP provides two options: 1) she can maintain custody of the workfile, either the original or a copy; or 2) she can make appropriate access arrangements for the retention period, for example, with her employer or supervising appraiser.

   Some common scenarios in such an assignment may include the trainee appraiser and the supervising appraiser each keeping a copy of the workfile. Or, the supervising appraiser may retain custody of the workfile and provide for access by the trainee appraiser. Both of these arrangements meet the record keeping requirements.

*Certification Requirements When Trainee Does Not Sign a Certification in the Report*

2. Using the same scenario from Illustration 1 except only the senior appraiser signs the report and **not** the trainee appraiser, what certification requirements must each appraiser meet to comply with USPAP?

   USPAP states that when a signing appraiser relies on work done by others who do not sign a certification, the signing appraiser is responsible for the decision to rely on the trainee appraiser's work.

   The name of the trainee appraiser who provided significant assistance, but does not sign a certification, must be stated in a certification. It is not required that the description of the assistance appear in a certification, but the extent of the assistance must be set forth in the report as required in STANDARDS 2, 4, 6, 8 and 10. The degree of this description is identified by the applicable reporting option for the assignment. For example, in an Appraisal Report the extent of the significant assistance must be summarized.

*Possession of Workfiles*

3. An appraiser is an employee of an appraisal firm. The firm has announced that the office is moving to another city. All appraisers not moving to the new location have been asked to turn over their workfiles to the company. The appraiser believes that he is required to keep the workfiles. Who is correct?

   The RECORD KEEPING RULE does not mandate that an appraiser have possession of assignment workfiles. Employment contracts and other employment arrangements often require appraisers to leave their workfiles with an employer should the appraiser leave that firm, or in other situations. However, if an appraiser must relinquish actual possession of the workfiles, the appraiser must establish appropriate access arrangements for the length of the retention period. In the circumstances described, another solution may be for the appraiser to obtain permission from the employer to make copies of his or her workfiles.

4. Jonathan is a trainee appraiser who has been working with the same supervising appraiser for some time. Recently, his supervising appraiser told him that since he was only a trainee, he had no right to access workfiles on appraisals where he had provided significant appraisal assistance. Is the supervising appraiser correct? Do trainees have any rights regarding access to workfiles?

   The supervising appraiser is not correct. USPAP places workfile retention requirements on the **appraiser**.

GO BACK

Jonathan, since he is acting as an appraiser, is an appraiser as defined in USPAP. In assignments where more than one appraiser is involved (e.g. a trainee appraiser and a supervising appraiser) each appraiser shares responsibility for complying with the RECORD KEEPING RULE.

Supervising appraisers should be aware that all appraisers, including trainee appraisers, must maintain access to workfiles for a minimum of five years. A supervising appraiser must not impede a trainee appraiser's ability to access a workfile under the following conditions:

- submission to state appraiser regulatory agencies;

- compliance with due process of law;

- submission to a duly authorized professional peer review committee; or

- compliance with retrieval arrangements.

Denying access to a workfile that the trainee worked on is a violation of the ETHICS RULE.

> *An individual appraiser employed by a group or organization that conducts itself in a manner that does not conform to these Standards should take steps that are appropriate under the circumstances to ensure compliance with the Standards.*

*Acknowledging Significant Appraisal Assistance*

5. Matthew, an appraiser, is working with a more senior appraiser on a complex appraisal assignment. His only task has been to develop the income approach based on information provided by the senior appraiser. What is the appropriate way to acknowledge Matthew's role in the assignment?

> Since Matthew's work is limited to part of the assignment, signing a certification accepting responsibility for the entire assignment would not be appropriate. USPAP requires that Matthew be named in a certification, and the extent of his significant appraisal assistance be reported.

6. Margaret is performing a specific portion of a complex appraisal assignment, but is not competent to complete the entire assignment. As part of her training, she read the report and discussed it with the senior appraiser. Having now expanded her knowledge of the assignment, she wants to sign a certification along with the senior appraiser on the project. Is this appropriate?

> No. By signing a certification, she would be accepting full responsibility for all elements of a certification, for the assignment results, and for the contents of the appraisal report. Although she was competent to perform her assigned task, reading the report and discussing it with the senior appraiser does not confer competence. Therefore, she cannot accept full responsibility for the assignment results or sign a certification.

7. I am an appraiser trainee in a large firm. We recently transmitted a report to a client for an appraisal in which I provided significant professional assistance. The report stated that I assisted in all aspects of the process and I was named in the certification. The client's reviewer sent me a request that said, "If you assisted in all aspects of the appraisal you should sign it because you are an appraiser." The principal appraiser who signed the report feels it looks better if only he signs because I am unlicensed. For this assignment, there is no law or regulation that prohibits me from signing a certification. What should I do?

> The unlicensed appraiser should discuss the situation with the principal appraiser in this instance as USPAP allows for certification in a variety of ways. The principal appraiser elected to acknowledge the significant appraisal assistance of the appraiser trainee in a certification rather than allowing her to sign. The exact extent of the significant appraisal assistance must also be reported but it does not have to be stated in a certification. The specific portions of the assignment that the appraiser trainee completed should have been summarized in the report, rather than just a statement simply indicating the appraiser trainee assisted in all aspects of the assignment.

**GO BACK**



# ADVISORY OPINION 32 (AO-32)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Ad Valorem Property Tax Appraisal and Mass Appraisal Assignments**
**APPLICATION: Real Property, Personal Property**

## THE ISSUE:

*Ad valorem* is Latin for "according to value." In ad valorem taxation assignments, the appraisal or mass appraisal is used to establish a value basis for a political subdivision's tax burden. This guidance is provided to address the application of USPAP to appraisal and mass appraisal assignments for ad valorem taxation.

As used in this Advisory Opinion, "appraisal assignments" are those covered by STANDARDS 1 and 2 or STANDARDS 7 and 8. "Mass appraisal assignments" are those covered by STANDARDS 5 and 6.

## ADVICE FROM THE ASB ON THE ISSUE:

### Application of Standards

Ad valorem taxation assignments include both appraisal assignments and mass appraisal assignments.

- STANDARDS 1 and 2 address the requirements for development of an appraisal and reporting of appraisal results for a particular real property interest as of a given date.
- STANDARDS 5 and 6 address the requirements for the development of a mass appraisal and reporting of mass appraisal results for real property and personal property. Mass appraisal is the valuation of a universe of properties (many properties) as of a given date using standard methodology, employing common data, and allowing for statistical testing. Mass appraisal provides for a systematic approach and uniform application of appraisal methods and techniques to obtain estimates of values that allow for statistical review and analysis of results.
- STANDARDS 7 and 8 address the requirements for development of an appraisal and reporting of appraisal results for a particular personal property interest as of a given date.

The keys to distinguishing a mass appraisal are: 1) the subject of the appraisal is a "universe" of properties, meaning more than one property; and 2) the assignment involves standard methodology employing common data that allows for statistical testing. These models may be based on the cost approach, the income approach, the sales comparison approach or any combination of these approaches to value.

### Identification of Intended Users

In ad valorem taxation assignments, the client is typically the government or taxing authority that engages the appraiser. As defined in USPAP, the client is an intended user. Through communication with the client, the appraiser may identify other intended users. A party receiving a copy of a report in order to satisfy disclosure requirements does not become an intended user of the appraisal or mass appraisal unless the appraiser identifies such party as an intended user.

### Scope of Work

The determination of an appropriate scope of work in all appraisal and mass appraisal assignments, including ad valorem taxation assignments, is based on problem identification. The assignment elements necessary for problem identification are identified in Standards Rule 1-2 (real property appraisal), Standards Rule 5-2 (real property and personal property mass appraisal) and Standards Rule 7-2 (personal property appraisal). This information provides the appraiser with the basis for determining the scope of work necessary to develop credible assignment results.

In ad valorem taxation assignments, applicable laws and regulations of an assessing jurisdiction may define the assignment elements needed for problem identification. For example, the type and definition of value is usually established by statute, as is the effective date of the appraiser's opinions and conclusions (tax year, levy year, valuation date, etc.). Whatever the source of the assignment elements needed for problem identification, the appraiser must identify the problem to be solved, and determine and perform the scope of work necessary to develop credible assignment results.

In the interests of equity, the scope of work in mass appraisal assignments for ad valorem taxation can include consideration of appraisal level (the overall proximity between appraised values and actual prices) and the uniformity of property values (equity within groups of like properties). Standard Rule 5-1 (a) states:

> In developing a mass appraisal, an appraiser must: (a) be aware of, understand, and correctly employ those recognized methods and techniques necessary to produce a credible mass appraisal;

The appraiser is responsible for recognizing when the concepts of appraisal level and appraisal uniformity are necessary for credible assignment results in a mass appraisal assignment for ad valorem taxation.

### Reporting

Standards Rules 6-1 and 6-2 address the requirements for reporting mass appraisal results for real property and personal property. The Mass Appraisal Report must clearly communicate the elements, results, opinions, and value conclusions of the mass appraisal. In mass appraisals for ad valorem taxation, local statutes may prescribe additional reporting requirements and procedures for the delivery of the assignment results.

In mass appraisal, the value opinion for each property is developed using the standard methods applied in the mass appraisal model for a universe of properties. There may be many mass appraisal models used to value an entire universe of properties. An individual property record or worksheet may describe the valuation of the specific property after the application of the mass appraisal model. A written report of the mass appraisal as described in Standards Rule 6-2 is not provided for each individual property. To understand the individual property result developed in a mass appraisal requires the examination of all the information and analysis required by Standards Rule 6-2.

STANDARDS 2 and 8 address the requirements for reporting of appraisal results for real property and personal property (respectively). The written report must be presented in an Appraisal Report or Restricted Appraisal Report.

An appraiser may be asked to communicate the assignment results for a single property that was appraised as part of a mass appraisal assignment. USPAP does not address this specific circumstance. The reporting requirements of STANDARD 2 apply to appraisal assignments developed under STANDARD 1 and do not apply to mass appraisal assignments prepared under STANDARD 6. However, the second sentence of the PREAMBLE states: *It is essential that appraisers develop and communicate their analyses, opinions, and conclusions to intended users of their services in a manner that is meaningful and not misleading.* Additionally, the ETHICS RULE states: *An appraiser must not communicate assignment results with the intent to mislead or defraud.* The ETHICS RULE also states: *An appraiser must not use or communicate a report that is known by the appraiser to be misleading or fraudulent.* Therefore, if an appraiser communicates mass appraisal or assignment results for a single property, the communication must be meaningful and must not be misleading.

In assignments for ad valorem taxation, public policy may direct property owner notification of the property values rendered as a result of a mass appraisal. Notifications are commonly required within the jurisdiction to meet due process requirements. These property owner notifications are not "reports" as defined in USPAP. Further, a party receiving a notification in order to satisfy disclosure requirements does not become an intended user unless the appraiser identifies such party as an intended user as part of the assignment.

### Workfile Requirements

The RECORD KEEPING RULE requirement to prepare a workfile applies to appraisals and mass appraisals performed for ad valorem taxation assignments. An appraiser's assignment workfile preserves the documentation necessary to support an appraiser's analyses, opinions, and conclusions.

For a mass appraisal assignment, compliance with the RECORD KEEPING RULE requires a workfile for the mass appraisal assignment, not a workfile for each property in the mass appraisal. The workfile for a mass appraisal

94

contains the information to support the valuation of all properties in the mass appraisal. This supporting material may be documented in any form of media, including electronic files, and includes such items as property records, market data, sales ratios and other statistical studies, appraisal manuals and documentation, market studies, model building documentation, regulations, statutes, property photos, sketches, aerial imagery, maps, automated mapping and geographic information systems, worksheets, spreadsheets, and analysis reports. USPAP does not dictate the form or format of workfile documentation. There is no requirement that the contents of the workfile be held in a single location.

The retention of the workfile in support of an assignment for ad valorem taxation is governed by USPAP and may also be subject to retention schedules in the jurisdictions. The record retention time frames referenced in the RECORD KEEPING RULE are minimums. Retention beyond the USPAP requirements is permitted. Unless compelled by law or regulation, USPAP does not permit appraisers to destroy records prior to five years after preparation **for any reason**.

## JURISDICTIONAL EXCEPTION RULE

The JURISDICTIONAL EXCEPTION RULE exempts appraisers from the part or parts of USPAP that are precluded by the law or regulation of a particular jurisdiction. If compliance with a part of USPAP is precluded by any applicable federal, state, or local law or regulation, only that part shall be of no force and effect in that assignment. Appraisers using the JURISDICTIONAL EXCEPTION RULE must properly disclose the legal authority justifying the exemption of part or parts of USPAP that are precluded by law.

Use of the JURISDICTIONAL EXCEPTION RULE is triggered by a contradiction between the requirements of USPAP and the law or regulations of a jurisdiction, not by client or appraiser discretion.

USPAP does not establish who or which assignments must comply. Therefore, the JURISDICTIONAL EXCEPTION RULE cannot be applied to the decision to comply with USPAP.

An individual's identification as an appraiser is the basis for determining who should comply with USPAP. This is because an individual's public identification as an appraiser establishes an expectation that valuation services will be performed in compliance with USPAP. An individual must comply with USPAP when required by law, regulation, or agreement. Even if the governing authority's policy does not require USPAP compliance, other applicable law or regulation might require compliance.

**Illustrations:**

1. An appraiser is in the process of developing appraisals for the next year's tax roll. The residential properties, condominiums, and general commercial and major commercial properties will be valued with a mass appraisal model. Which development standards apply?

    Because the subject of the appraisal is a universe of properties, and because they are being appraised with a mass appraisal model, STANDARD 5 applies to the development portion of a mass appraisal assignment and STANDARD 6 applies to the reporting portion.

2. An appraiser has completed a mass appraisal for ad valorem taxation using a mass appraisal model. There is a special use property for which it has been determined that the mass appraisal model is not appropriate. This property will be appraised as an individual property. Which development standard applies to the appraisal of the special use property?

    Even though the special use property is being appraised for ad valorem taxation, STANDARD 1 would apply because the subject is an individual property, not a universe of properties.

3. An assessment appeal is in process, and an appraisal of an individual property is being conducted as part of that appeal. Which development standards apply?

    STANDARD 1 or STANDARD 7 would apply because an individual property is being appraised rather than a universe of properties.

4. An appraiser is conducting a mass appraisal for ad valorem taxation. A property record card is produced for each property. Is each property record card considered a report under STANDARD 6?

    No. The property record card is not the mass appraisal report; it is only a portion of the information and analysis supporting the mass appraisal.

# ADVISORY OPINION 33 (AO-33)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Discounted Cash Flow Analysis**
**APPLICATION: Real Property**

## THE ISSUE:

Discounted cash flow (DCF) analysis is an accepted analytical tool and method of valuation within the income approach to value. DCF analysis is typically utilized to identify the potential for profit or return on an investment. Because it is dependent on the analysis of uncertain future events, it is vulnerable to misuse or misapplication. What steps can the appraiser take to comply with USPAP in completing a DCF analysis?

## BACKGROUND:

DCF analysis can be employed when valuing a variety of asset types. DCF techniques may be applied in the valuation or analysis of proposed construction, land development, condominium development or conversion, rehabilitation development, and income-producing assets of various types. DCF analysis has become a requirement of many real property clients and other intended users. These users of appraisal services favor the inclusion of DCF analysis as a management tool in projecting cash flow and return expectations, capital requirements, refinancing opportunities, and timing of future property dispositions. DCF analysis is regarded as one of the best methods of replicating steps taken to reach many investor buy/sell/hold decisions and is often a part of the exercise of due diligence in the evaluation of an asset.

DCF methodology is based on the principle of anticipation—i.e., value is created by the anticipation of future benefits. DCF analysis reflects investment criteria and requires the appraiser to make rational and supportable assumptions. DCF analysis can be used for investment value and market value appraisals, as well as for other purposes such as sensitivity tests.

DCF analysis is a tool available to the appraiser and is often applied in developing value opinions in concert with one or more other approaches. However, in certain circumstances it may be the most credible method to solve the valuation problem. This Advisory Opinion focuses on the criteria for proper DCF analysis and does not imply that DCF analysis is or should necessarily be the only method employed.

The COMPETENCY RULE specifically states that competency may apply to an analytical method.  Discounted cash flow analysis is complex and requires specialized education and experience to achieve competency in its application.  In addition, due to the complexity and the potential for misuse of technology, it also requires a high degree of care and diligence.

## ADVICE FROM THE ASB ON THE ISSUE:

To avoid misuse or misunderstanding when DCF analysis is used in an appraisal assignment to develop an opinion of market value, it is the responsibility of the appraiser to ensure that the controlling input is consistent with market evidence and prevailing market attitudes. Market value DCF analyses should be supported by market derived data, and the assumptions should be both market and property specific. Appraisal assignments that require the appraiser to employ assumptions that are not based on market data, or to use assumptions provided by the client do not reflect market value but rather investment value.

**GO BACK**

Market value DCF analyses, along with available factual data, are intended to reflect the expectations and perceptions of market participants. They should be judged on the support for the forecasts that existed when made, not on whether specific items in the forecasts are realized at a later date. An appraisal report that includes the results of DCF analysis must clearly state and accurately disclose the assumptions on which the analysis is based (per Standards Rule 2-1) and must set forth the relevant data used in the analysis.

Standards Rule 1-1 states that the appraiser must not commit a substantial error of omission or commission that significantly affects an appraisal. Standards Rule 1-1 states that the appraiser must not render appraisal services in a careless or negligent manner, such as making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate would affect the credibility of those results. These Standards Rules are significant for DCF analysis because of the potential for the compounding effect of errors in the input, unrealistic assumptions, or possible programming errors.

Computer printouts showing the results of DCF analysis may be generated by readily available means such as an appraiser's own spreadsheet, a commercially available spreadsheet template, or specialized DCF software. Regardless of the method chosen the appraiser is responsible for the entire analysis including the controlling input, the calculations, and the resulting output. If using commercial DCF software the appraiser should cite the name and version of the software and provide a brief description of any assumptions and/or methodology unique to that software, if any. Standards Rule 1-4 requires that projections of anticipated future rent and/or income potential and expenses be based on reasonably clear and appropriate evidence.

DCF accounts for and reflects those items and forces that affect the revenue, expenses, and ultimate earning capacity of an asset and represents a forecast of events that would be considered likely within a specific market. For example, in the appraisal of a multi-tenant property, a lease-by-lease analysis addresses contract and market rents, specific escalations, operating expenses, pass-through provisions, market-derived or specific concessions, capital expenditures, and any other measurable specific provisions applicable. Revenue growth rate or decline rate assumptions are premised on analysis of supply/demand factors and other economic conditions and trends within the market area of the subject. Operating expense change rates should reflect both overall expense trends and the specific trend of significant expense items.

Discount rates applied to cash flows and estimates of reversion should be derived from data and information in the real estate and capital markets. Surveys of investor opinion and yield indices are also useful in the rate selection process, but only when the type of and market for the asset being appraised is consistent with the type of and market for the asset typically acquired by the investors interviewed in the survey. Primary considerations used in the selection of rates are risk, inflation, and real rates of return.

When reversion capitalization rates are used, they should reflect investor expectations considering the asset type, physical characteristics, age and condition, cash flow projections, and related factors. The projection or forecast period is a variable and should be based upon the same factors that typical market participants are using. The results of DCF analysis should be tested and checked for errors and reasonableness. Because of the compounding effects in the projection of income and expenses, even slight input errors can be magnified and can produce unreasonable results. For example, it is good practice to test whether cash flows are changing at reasonable rates and to compare the reversion capitalization rate with the inferred going-in capitalization rate to see if the relationship between these rates is reasonable.

Standard 2 requires the appraiser to communicate each analysis, opinion, and conclusion in a manner that is not misleading. Appraisals using the DCF method in the income capitalization approach may contain computerized projections of itemized future cash flow supported by exhaustive printouts that can be misleading. The seeming precision of computer-generated projections may give the appearance of certainty to projections and forecasts that are actually variable within a wide range. In DCF analysis, all of the assumptions (growth rates, decline rates, rental rates, discount rates, financing terms, expense trends, capitalization rates, etc.) directly affect the conclusion and must be clearly and accurately disclosed in the appraisal report.

## SUMMARY:

- Use of DCF analysis requires specialized knowledge and experience. Its application requires a high degree of diligence.

- DCF analysis is a tool available to the appraiser and is often applied in developing value opinions in concert with one or more other approaches. It is the responsibility of the appraiser to ensure that the controlling input is consistent with market evidence and prevailing market attitudes. The appraiser is also responsible for the resulting output.

- Market value DCF analyses should be supported by market-derived data and the assumptions should be both market- and property-specific.

- Appraisal assignments that require the appraiser to employ assumptions that are not based on market data or assumptions provided by the client, are not market value but rather investment value.

- If using commercial DCF software the appraiser should cite the name and version of the software and provide a brief description of any assumptions and/or methodology unique to that software, if any.

- DCF accounts for and reflects those items and forces that impact the revenue, expenses, and ultimate earning capacity of an asset and represents a forecast of events that would be considered likely within a specific market.

- The results of DCF analysis should be tested and checked for errors and reasonableness.

**GO BACK**

© The Appraisal Foundation

# ADVISORY OPINION 34 (AO-34)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Retrospective and Prospective Value Opinions**
**APPLICATION: Real Property, Personal Property**

## THE ISSUE:

Two dates are essential to an appraisal report. Standards Rules 2-2(a)(vii) and (b)(ix), 6-2(d), 8-2(a)(vii) and (b)(ix) require that each appraisal report state the effective date of the appraisal and the date of the report. The date of the report indicates the perspective from which the appraiser is examining the market. The effective date of the appraisal establishes the context for the value opinion. Three categories of effective dates—retrospective, current, or prospective—may be used, according to the intended use of the appraisal assignment.

How should the appraisal be communicated when either a retrospective or prospective date is used so that the report is not misleading?

## BACKGROUND:

Current appraisals occur when the effective date of the appraisal is contemporaneous with the date of the report. Because most appraisals require current value opinions, the importance of specifying both the date of the report and the effective date of the analysis is sometimes lost.

Retrospective appraisals (effective date of the appraisal prior to the date of the report) may be required for property tax matters, estate or inheritance tax matters, condemnation proceedings, suits to recover damages, and other similar situations.

Prospective appraisals (effective date of the appraisal subsequent to the date of the report) may be required for valuations of property interests related to proposed developments, as the basis for value at the end of a cash flow projection, and for other reasons.

## ADVICE FROM THE ASB ON THE ISSUE:

### Relevant USPAP References

Standards Rules 2-1, 6-1, and 8-1 state that each written or oral appraisal report must: "clearly and accurately set forth the appraisal in a manner that will not be misleading…"  In order to accomplish this, appraisers must use care when developing the appraisal to analyze appropriate market data when retrospective or prospective opinions of value are a part of the assignment.

### Retrospective Appraisals

The use of clear and concise language and appropriate terminology in appraisal reports helps to eliminate misleading reports. To avoid confusion, the appraiser must clearly establish the date to which the value opinion applies. In retrospective value opinions, use of a modifier for the term market value and past verb tenses increases clarity. If a report written in 2017 states, "On August 19, 2009 the value was $X", the retrospective perspective is clear from the context.  It would also be correct to state that "the retrospective value as of August 19, 2009 is $X" because on August 19, 2009, the value opinion would not have been retrospective—it is retrospective because it has been developed now and looks back. The use of an appropriate qualifier is necessary for clear understanding.

A retrospective appraisal is complicated by the fact that the appraiser already knows what occurred in the market after the effective date of the appraisal. Data subsequent to the effective date may be considered in developing a retrospective value as a confirmation of trends that would reasonably be considered by a buyer or seller as of that date. The appraiser should determine a logical cut-off for the data to be used in the analysis because at some point distant from the effective date, the subsequent data will no longer provide an accurate representation of market conditions as of the effective date. This is a difficult determination to make. Studying the market conditions as of the date of the appraisal assists the appraiser in judging where he or she should make this cut-off. With market evidence that data subsequent to the effective date was consistent with market expectations as of the effective date, the subsequent data should be used. In the absence of such evidence, the effective date should be used as the cut-off date for data considered by the appraiser.

When direct excerpts from then-current appraisal reports prepared at the time of the retrospective effective date are available and appropriate, they may help the appraiser and the intended users understand market conditions as of the retrospective effective date.

### Prospective Appraisals

The use of clear and concise language and appropriate terminology in appraisal reports helps to eliminate misleading reports.  To avoid confusion, the appraiser must clearly establish the date to which the value opinion applies. In prospective value opinions, use of the term "market value" without a modifier such as "forecasted" or "prospective" and without future verb tenses is improper (i.e., "...the prospective market value is expected to be..." and not "...the market value is...").

Prospective value opinions, along with available factual data, are intended to reflect the current expectations and perceptions of market participants. They should be judged on the support for the forecasts that existed when made, not on whether specific items in the forecasts are realized at a later date.

When prospective value opinions are required with regard to proposed improvements to real property, the <u>Comment</u> to Standards Rule 1-2(e) regarding identification of the extent and character of the proposed improvements and Standards Rule 1-4(c)(iv) regarding the basis for anticipated future rent and expenses are relevant. Evidence that proposed improvements can be completed by the effective date of the appraisal is important. Support for projected income and expenses at the time of completion of proposed improvements and during the rent-up or sell-out period require the incorporation of sufficient market research in the appraisal and the consideration of existing and future competition. It is appropriate to study comparable projects for evidence of construction periods, development costs, income and expense levels, and absorption. Items such as rental concessions, commissions, tenant finish allowances, add-on factors, and expense pass-throughs must be studied to develop realistic income expectancy.

With regard to proposed developments of real property, two prospective value opinions may be required: one as of the time the development is to be completed and one as of the time the development is projected to achieve stabilized occupancy. These prospective values form a basis for investment decisions and loan underwriting.

In a prospective appraisal, the appraiser analyzes market trends to provide support for forecasted income and expense or sell-out opinions, absorption periods, capitalization rates, and discount rates as of the effective date of the appraisal. Economic trends such as growth in population, employment, and future competition are also analyzed. The overall economic climate and variations in the business cycle should be considered and weighed in the performance of the appraisal process. All value conclusions should include reference to the time frame when the analysis was prepared to clearly delineate the market conditions and the point of reference from which the appraiser developed the prospective value opinion. It is essential to clearly and accurately disclose any appropriate assumptions, extraordinary assumptions, and/or limiting conditions when citing the market conditions from which the prospective value opinion was made.

# ADVISORY OPINION 35 (AO-35)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Reasonable Exposure Time in Real Property and Personal Property Opinions of Value**
**APPLICATION: Real Property, Personal Property**

## THE ISSUE:

The concept of exposure time has an important role in the appraisal process. When reasonable exposure time is a component of the definition of value, appraisers must develop an opinion of the reasonable exposure time linked to the value opinion.

## BACKGROUND:

Reasonable exposure time is one of a series of conditions in most market value definitions. Exposure time is always presumed to precede the effective date of the appraisal.

**Relevant USPAP and Advisory References**
- DEFINITIONS, specifically the definition of EXPOSURE TIME: *an opinion, based on supporting market data, of the length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.*
- The <u>Comments</u> to Standards Rules 1-2(c) and 7-2(c) which states: *When reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion.*
- The <u>Comments</u> to Standards Rules 2-2(a)(vi) and 2-2(b)(viii) which states: *When an opinion of reasonable exposure time has been developed in compliance with Standards Rule 1-2(c), the opinion must be stated in the report*
- Similar <u>Comments</u> appear in Standards Rules 8-2(a)(vi) and 8-2(b)(viii).

How is the opinion of reasonable exposure time developed? Is it presumed to occur prior to or starting from the effective date of the appraisal?

## ADVICE FROM THE ASB ON THE ISSUE:

Exposure time is different for various types of property and under various market conditions. It is noted that the overall concept of reasonable exposure encompasses not only adequate, sufficient, and reasonable time but also adequate, sufficient, and reasonable effort.

The fact that exposure time is always presumed to occur prior to the effective date of the appraisal is substantiated by related facts in the appraisal process: supply/demand conditions as of the effective date of the appraisal; the use of current cost information; the analysis of historical sales information (sold after exposure and after completion of negotiations between the seller and buyer); and the analysis of future income expectancy projected from the effective date of the appraisal.

**The Importance of Exposure Time**
The answer to the question "what is reasonable exposure time," should always incorporate the answers to the question "for what kind of property at what value range," rather than appear as a statement of an isolated time period.

GO BACK

Take for example an appraisal of a mountainside second home. In this immediate resort neighborhood, these homes often sell for upwards of $1,000,000 and average 120 to 180 days to sell. Research reveals that overall the community generally has an average exposure time of 60 to 90 days and that home values are typically below $300,000. The appraiser must be certain that research is based upon locations, price ranges and overall appeal similar to the subject property. Failure to do so may impact the appraiser's ability to deliver credible results.

An analysis of exposure time also impacts comparable selection. If a particular property sold faster than one would expect, the appraiser must investigate whether this property was underpriced or if the buyer or seller were highly motivated. The opposite is true when it took much longer than market evidence would suggest. Apparent inconsistencies such as these may also provide vital insight into changes in the market, neighborhood, and the subject property's appeal within the market in general.

These sales may not reflect the conditions requisite to the requirement of the definition of market value. Failure of the appraiser to investigate these circumstances may impact the appraiser's ability to deliver credible results. It is possible these sales can still be used with the application of appropriate adjustments. Nonetheless, this determination cannot be made without market research.

### Rationale and Method for Developing an Opinion of Reasonable Exposure Time

The opinion of the time period for reasonable exposure is not intended to be a prediction of a date of sale. Instead, it is an integral part of the analyses conducted during the appraisal assignment. Sources that may be relied upon include one or more of the following:

- statistical information about days on market;

- information gathered through sales verification;

- interviews of market participants; and

- information from data collection services

Related information garnered through this process may include the identification of typical buyers and sellers for the type of property involved and typical equity investment levels and/or financing terms.

The opinion of reasonable exposure time may be expressed as a range (e.g., the appraiser's opinion of reasonable exposure time for the subject property is 90 to 120 days) or a specific number (e.g., the appraiser's opinion of reasonable exposure time for the subject property is 6 months).

The reasonable exposure period is a function of price, time, and use, not an isolated opinion of time alone. As an example, an office building, an important work of art, a fine jewel, a process facility, or an aircraft could have been on the market for two years at a price of $2,000,000, which informed market participants considered unreasonable. Then the owner lowered the price to $1,600,000 and started to receive offers, culminating in a transaction at $1,400,000 six months later. Although the actual exposure time was 2.5 years, the reasonable exposure time at a value range of $1,400,000 to $1,600,000 would be six months. The answer to the question, "what is reasonable exposure time," should always incorporate the answers to the question, "for what kind of property at what value range," rather than appear as a statement of an isolated time period.

### Applications to Client Uses of an Appraisal

When an appraisal is commissioned as the result of a mortgage application after a potential seller and buyer enter into a Contract for Sale, no conflict exists between the presumption in the appraisal process that exposure time occurs prior to the effective date of the appraisal and the intended use of the appraisal.

**GO BACK**

ADVISORY OPINION 35

Appraisers need to be aware that clients and other intended users often confuse exposure time with marketing time. A key difference is that exposure time is assumed to occur before the effective date, and marketing time occurs after the effective date. The misconception is easily understood because most sources of market information report historical information about days on market as "marketing time."[1]

When the value opinion developed is not predicated on reasonable exposure time, the appraiser's opinion of reasonable exposure time is not required. For example, many appraisals commissioned for employee relocation, asset evaluation, foreclosure, or asset management purposes require a value based on a client imposed limited marketing period.  In these cases, the resulting opinion of value is usually not market value. Problems may arise when clients attempt to make business decisions or account for assets without understanding the difference between reasonable exposure time and marketing time (see related Advisory Opinion 7, *Marketing Time Opinions*).

Most residential appraisal report forms have a field in which the appraiser must enter an opinion of the neighborhood marketing time. However, most residential appraisal report forms do not have a field for which the appraiser must report the reasonable exposure time.  In these cases, the appraiser must supplement the form to comply with USPAP.

## SUMMARY:

- The reasonable exposure time inherent in the market value concept is always presumed to precede the effective date of the appraisal.

- Exposure time is different for various types of property and under various market conditions.

- Exposure time may be a single period of time or a range.

- Exposure time is dependent on the characteristics of the subject property and the market conditions as of the effective date.

- When the client specifies a time period upon which the appraiser is to base the opinion of value, and that period differs from the appraiser's opinion of a reasonable exposure time, the final opinion of value may not be market value as typically defined.

---

1    See Advisory Opinion 7, *Marketing Time Opinions*

**GO BACK**

# ADVISORY OPINION 36 (AO-36)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT:  Identification and Disclosure of Client, Intended Use, and Intended Users**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

An appraiser must identify and consider the client, any other intended users, and the intended use of the appraiser's reported opinions and conclusions in order to identify the problem to be solved and to understand his or her development and reporting responsibilities in an appraisal or appraisal review assignment. An appraiser must state the intended use and intended users of the opinions and conclusions in a report.

What kind of information must an appraiser identify and consider regarding the intended use and intended users in the course of accepting and completing an assignment, and how much of that information must an appraiser include in the report?

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP and Advisory References**

The term "Client" is defined in the DEFINITIONS section of USPAP as:

> *the party or parties (i.e., individual, group, or entity) who engage an appraiser by employment or contract in a specific assignment, whether directly or through an agent.*

The term "Intended Use" is defined as:

> *the use(s) of an appraiser's reported appraisal or appraisal review assignment results, as identified by the appraiser based on communication with the client at the time of the assignment.*

The term "Intended User" is defined as:

> *The client and any other party as identified, by name or type, as users of the appraisal or appraisal review report by the appraiser, based on communication with the client at the time of the assignment.*

**Specific Issue to be Addressed**

In order to properly define the problem and to understand his or her responsibilities in an assignment, an appraiser must identify the client and any other intended users. This is accomplished by communication with the client at the time of the engagement.

An appraiser should use care when identifying the client to avoid violations of the <u>Confidentiality</u> section of the ETHICS RULE. In instances where the client wishes to remain anonymous, the appraiser must still document the identity of the client in the workfile but may omit the client's identity in the appraisal or appraisal review report. The client may be identified as a person or entity, or as an agent of an intended user. When the identity of the client is withheld from the report, the report must state that the client's identity has been withheld at the client's request.

An appraiser's obligations to the client are established in the course of considering and accepting an engagement. If, during the assignment, an appraiser becomes aware of a change in the intended use, the appraiser must consider whether the extent of the development process and report content initially planned are still appropriate. If they are not, the appraiser must make the necessary changes.

**GO BACK**

An appraiser's obligations to other intended users may impose additional development and reporting requirements in the assignment. Because an appraiser's obligations to other intended users may impose additional development and reporting requirements in the assignment, it is essential to establish a clear understanding of the needs of all intended users.

A party receiving a report copy from the client does not, as a consequence, become a party to the appraiser-client relationship. Parties who receive a copy of an appraisal or appraisal review report as a consequence of disclosure requirements applicable to an appraiser's client do not become intended users of the report unless they were specifically identified as intended users by the appraiser at the time of the assignment.

### Disclosure of Client and Other Intended User(s) in an Appraisal or Appraisal Review Report

Except when specifically requested by the client not to do so, an appraiser must state the identity of the client in the report. Within an Appraisal Report, other intended users, if any, may be identified by name or type. However, for a Restricted Appraisal Report the appraiser must identify any additional intended users by name.

The purpose of these reporting requirements is (1) to ensure that the client and other intended users can recognize their relationship to the assignment and report, (2) to ensure that parties other than intended users will not mistakenly assume that they are the client or an intended user, and (3) in a Restricted Appraisal Report, it is clear who the appraiser has exactly identified as additional intended users. For example, a statement similar to the following may be appropriate in an Appraisal Report:

> *This report is intended for use only by (identify the client) and (identify any other intended users by name or type). Use of this report by others is not intended by the appraiser.*

While a statement similar to the following may be appropriate in a Restricted Appraisal Report:

> *This report is intended for use only by (identify the client) and (identify any other intended users by name). Use of this report by others is not intended by the appraiser.*

If the client's identity is omitted from a report, the appraiser must (1) identify the client in the workfile, and (2) provide a notice in the report that the identity of the client has been omitted in accordance with the client's request and that the report is intended for use only by the client and any other identified intended users. In such cases, a statement similar to the following may be appropriate in an Appraisal Report:

> *This report is intended for use only by the client and (identify any other intended users by name or type). Use of this report by others is not intended by the appraiser.*

While a statement similar to the following may be appropriate in a Restricted Appraisal Report:

> *This report is intended for use only by the client and (identify any other intended users by name). Use of this report by others is not intended by the appraiser.*

### Identification of the Intended Use in an Appraisal or Appraisal Review Assignment

Identification of the intended use is one of the assignment elements necessary to properly identify the appraisal or appraisal review problem. Identification of the intended use helps the appraiser and the client make two important decisions about the assignment:

- the appropriate scope of work for the appraisal or appraisal review development process; and

- the level of detail to provide in the appraisal or appraisal review report.

### Disclosure of the Intended Use in an Appraisal or Appraisal Review Report

An appraiser can avoid misleading parties in possession of an appraisal or appraisal review report by clearly identifying the intended use in the report and stating that other uses are not intended. For example, a statement similar to the following may be appropriate:

> *This report is intended only for use in (state the use). This report is not intended for any other use.*

The intended use description provided in the statement must be specific to the assignment. Each of the following assignments involves the same subject property and the same type and definition of value.  What changes are the intended use and intended users.

**Illustrations:**

1. A homeowner calls an appraiser and asks for an appraisal of the owner's home.  The owner wants to determine how much equity is in the property.  The owner is content to know the market value of his home in the form of a range of value.  He does not want to pay for a written report or the time involved in a property inspection. The owner does not intend to give the appraisal to the lender because the owner knows the lender will order a new appraisal when a loan application is submitted.

2. The next week a lender calls the appraiser for a "drive-by appraisal" on the same property in connection with a home equity loan. The lender is happy with the owner's credit rating and plans to keep the loan in their portfolio. The lender sees very little risk in the transaction and seeks the appraiser's opinion of the property's market value based on an exterior personal inspection only.

3. Several months later an attorney for the wife asks the appraiser for an appraisal on the same property because the owners are getting a divorce. The attorney needs the appraiser to conduct a thorough personal inspection of the home and to provide an in-depth study of the sales of comparable homes in the market area making sure to verify the sales information with the buyers, real estate agents and the county recorder's office. The attorney wants the appraiser's report to contain a complete and exhaustive description of the subject property, the comparable sales, and of the analysis leading to the appraiser's opinion.

**What is the impact of the different intended users on the scope of work in the three assignments?**
In the first assignment, the client was the only intended user. In the second assignment, the lending institution that engaged the appraiser may not be the only intended user. In the third assignment, the attorney is the intended user.  In the third assignment the intended use entails scrutiny of the report by the court and/or opposing counsel. When additional intended users are identified, the scope of work may increase. This is because the assignment results typically need to satisfy more objectives as the number of intended users increase.

**What is the impact of the different intended use on the scope of work in the three assignments?**
The objective of the appraisal in the first assignment was to establish a range of value so the owner could resolve a question about his equity. The owner was only interested in the appraiser's opinion and had no intention of reviewing the evidence or reasoning used to support the appraiser's opinion. In this case, the appraiser could develop an opinion of value without a personal inspection, relying on an interview with the owner, assessment records, or other data to identify the property's relevant characteristics. As such, this assignment may result in the appraiser using an extraordinary assumption about, for example, the condition of the property.

In the second assignment, the intended use requires a personal inspection by the appraiser to gather some key information, though it also permits assumptions with respect to interior components of the subject property. The development process in this assignment is likely to be expanded by the lender's appraisal guidelines as well.

In the third assignment, the intended use requires a higher degree of personal inspection of the subject property and a more thorough verification and analysis of the comparable sales. The information gathered during these investigations may affect the analysis and may extend the development process beyond what is required in the other assignments.

**GO BACK**

## PERSONAL PROPERTY AND INTANGIBLE PROPERTY

Changing the above illustrations' subject property from real property to an item or group of items of personal property (works of art, machinery, jewelry, etc.) or an interest in a business would not change the assignment's results, i.e., the impact of the different intended use and different intended users on the scope of work would still be the same, with possible differences of discipline-specific terminology. Therefore, Illustration #1 would involve an owner of the property seeking a range of value for the owner's own knowledge. Illustration #2 would involve some form of loan against the property, but at an amount that did not exceed some percentage of the value.  Illustration #3 would involve a lawsuit in which the value of the property, or the value of the owner's interest in the business, is an important issue.

### Illustration Conclusions

There are two important points to be made here. First, the needs of the client and other intended users established the type of information and analysis required in the development and reporting process. Second, the intended use provided the context for the depth of the analysis required in development and the level of detail required in reporting.

## SUMMARY:

- An appraiser must identify the client and other intended users as part of the process of identifying the intended use of an appraisal or appraisal review report, based on communication with the client.

- Identification of the intended use and intended users are necessary steps in determining the appropriate scope of work.

- Whether or not assignment results are credible is measured in the context of the intended use of the opinions and conclusions.

- An appraiser should use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.

- The appraiser's obligations to the client are established in the course of considering and accepting an engagement.

- The appraiser's obligation to intended users other than the client is limited to addressing their requirements as identified by the appraiser at the time of the assignment.

- Appraisers can avoid misleading parties in possession of a report by clearly identifying the intended use and any intended users in the report and stating that other uses and/or users are not intended.

- Except when specifically requested not to do so as part of the agreement with the client, an appraiser must disclose the identity of the client in the report.

- If the client's identity is withheld from a report, the appraiser must (1) document the identity of the client in the workfile, and (2) provide a notice in the appraisal report that the identity of the client has been omitted in accordance with the client's request.

- The report must state the intended use of the appraisal or appraisal review.

- If there are any other intended user(s) besides the client, an Appraisal Report must state the identity of those additional Intended users either by name or by type.

- If there are any other intended user(s) besides the client, a Restricted Appraisal Report must state the identity of those additional Intended users by name.

GO BACK

# ADVISORY OPINION 37 (AO-37)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Computer Assisted Valuation Tools**
**APPLICATION: Real Property**

## THE ISSUE:

Appraisers rely upon market data as the basis for their opinions and conclusions. This data is used by appraisers to analyze and report on market trend information (e.g., median sale prices, rent trends, marketing time, etc.), or the impact different features have on their subject's value (i.e., appropriate adjustments).

Appraisers have access to technology that enables them to automate some aspects of the appraisal process. Regression analysis is a common example, but there are others as well. These tools generate information that once had to be calculated by hand. The information generated by this technology can enable appraisers to produce appraisals and appraisal reviews with greater credibility, but its misuse can have the opposite effect. What steps should an appraiser take to comply with USPAP when using information generated by these types of resources?

## BACKGROUND:

This Advisory Opinion addresses an appraiser's obligations when relying upon adjustments, trend analyses, or other information generated by software or various online services. Two such examples of these tools are:

- Regression Analysis Tools: A regression analysis tool is a computer software program that analyzes data using an automated process. It is a statistical process used for determining relationships among variables. For example, an appraiser may wish to determine if the market recognizes a relationship between the size of a property and its price per square foot.

- Multiple Listing Services: These services publish listings of properties for sale in a given marketplace. Typically, these services have a function that can provide subscribers with an analysis of past sale trends, such as average prices, sales volume, days on market, etc.

Automated Valuation Models (AVMs) and Discounted Cash Flow Analysis (DCF) are addressed separately in other advisory opinions, AO-18 and AO-33, respectively. The output of an AVM or DCF may become a basis for appraisal or appraisal review if the appraiser believes the output to be credible for use in a specific assignment. The output of computer assisted valuation tools are most often used as analytical tools within one or more approaches to value.

Stand-alone software or various online services can be useful tools that allow appraisers to enhance their appraisals. Some residential lenders are increasingly requiring appraisers to provide additional support for their adjustments. In the past, these forms of analysis would have been prohibitively difficult for an appraiser to provide in the normal course of business. Appraisers sometimes meet this request by providing a regression analysis, or a software generated matched-pair analysis. There are software packages available to appraisers that make this relatively simple. Some residential form software vendors include these functions as an integral part of their product. Many modern Multiple Listing Services now have integrated analytical tools to accommodate the needs of their appraiser members. Some appraisers create their own tools using commercially available spreadsheet software.

**GO BACK**

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP and Advisory References**

- The <u>Conduct</u> section of the ETHICS RULE states, in part:

  - *An appraiser must not communicate assignment results with the intent to mislead or to defraud.*

  - *An appraiser must not use or communicate a report or assignment results known by the appraiser to be misleading or fraudulent.*

- The RECORD KEEPING RULE states, in part:

  *The workfile must include all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other data, information, and documentation.*

- The COMPETENCY RULE states, in part:

  *Competency requires: (1) the ability to properly identify the problem to be addressed; (2) the knowledge and experience to complete the assignment competently; and (3) recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.*

- The <u>Comment</u> to the COMPETENCY RULE states, in part:

  *Competency may apply to factors such as, but not limited to, an appraiser's familiarity with a specific type of property or asset, a market, a geographic area, an intended use, specific laws and regulations, or an analytical method.*

- The SCOPE OF WORK RULE includes:

  - *The scope of work must include the research and analyses that are necessary to develop credible assignment results.*

  - *Appraisers have broad flexibility and significant responsibility in determining the appropriate scope of work for an appraisal or appraisal review assignment.*

  - *An appraiser must be prepared to demonstrate that the scope of work is sufficient to produce credible assignment results*

  - *An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.*

- Standards Rule 1-1(a):

  *An appraiser must be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal.*

- Standards Rule 1-1(b):

  *An appraiser must not commit a substantial error of omission or commission that significantly affects an appraisal.*

- Standards Rule 1-1(c):

  *An appraiser must not render appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affect the credibility of those results.*

- Standards Rule 1-6(a):

  *An appraiser must reconcile the quality and quantity of data available and analyzed within the approaches used;*

- Standards Rule 1-6(b):

  *An appraiser must reconcile the applicability and relevance of the approaches, methods and techniques used to arrive at the value conclusion(s).*

- STANDARD 2:

  *In reporting the results of a real property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.*

- STANDARDS 3 and 4:

  *In developing an appraisal review, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal review. In reporting the results of an appraisal review assignment, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.*

- Advisory Opinion 18, *Use of an Automated Valuation Model.*

- Advisory Opinion 33, *Discounted Cash Flow Analysis.*

### Competency

The COMPETENCY RULE specifically states that competency may apply to an analytical method. Technology that performs statistical analyses is simple to use but still requires competence. When using computer assisted valuation tools in an appraisal or appraisal review assignment, an appraiser should have a basic understanding of how it analyzes data to determine whether the computer assisted valuation tool measures and reflects market activity for the property that is being analyzed.

The appraiser does not need to know, or be able to explain, the tool's algorithm, or the intricacies of its statistical or mathematical formulae. However, the appraiser should be able to describe the overall process and verify that the computer assisted valuation tool is consistent in producing results that accurately reflect prevailing market behavior for the property that is being analyzed.

For example, a calculation of both the mean (average) and median of a given data sometimes yield different results. Either may be appropriate for use but it is the appraiser's responsibility to make that determination. Proper application of these results must also be consistent. For example, it would not be appropriate to compare the mean sale price of office space in one year to the median sale price of office space from a different year. Likewise, an appraiser should not employ terminology (e.g., standard deviation, coefficient of variation, etc.) without understanding what that terminology means.

### Data

The credibility of any analysis that incorporates output from computer assisted valuation tools depends on the quality of its data and how well the tool is designed to analyze that data. When using one of the tools in an appraisal or appraisal review assignment, the appraiser must have reason to believe it appropriately uses data that is relevant.

The size of the database does not necessarily mean that the output is directly applicable. A sample of dozens of sales may appear to yield a well-supported correlation between size and price per acre. But if the sales would not otherwise be deemed comparable, they should not be included as part of the sample. The sales may be credible comparisons if the analysis takes into account the differences, but it is the appraiser's responsibility to determine if the source data is comparable as is, or if some adjustments are necessary prior to generating a relationship.

### Use of Computer Assisted Valuation Tools

Standards Rule 1-1(b) states that the appraiser must not commit a substantial error of omission or commission that significantly affects an appraisal. Output from computer assisted valuation tools is typically used only as a portion of the analysis the appraiser relies upon to develop assignment results. A single error, which on the surface may appear minor, could have a compounding effect that could have a noteworthy impact on the results of the assignment.

When using computer assisted valuation tools, the appraiser is responsible both for selecting the appropriate input parameters and also for being proficient in the use of the technology to ensure the correct input of those parameters. The calculations performed by a computer assisted valuation tool may always be mathematically correct and easily duplicated. But if either of these criteria is not met, reliance upon the output of the computer

GO BACK

assisted valuation tool's calculation may not provide credible results. Depending on how the appraiser relies upon this data, inappropriate information may impact the results of the assignment.

Statistical tools may be employed to support adjustments. Because of the number of independent variables required for analysis of both residential and non-residential properties, a useful statistical tool is multiple linear regression. The number of variables requires the utilization of an adequate sample size. Multiple linear regression may also be a valuable analytical tool in quantifying and supporting adjustments.

Appraisers must also have at least a basic understanding of statistics. For example, regression analysis is based upon complex calculations. Appraisers do not need to be able to duplicate those calculations but must understand how to use the output. They must be able to recognize a graph that shows a strong relationship between the variables and one that does not. Reliance on a weak correlation of the data will directly impact the credibility of the conclusion drawn using that information.

The appraiser must also be aware of what information is used as the input and how to properly apply the output. The appraiser may have developed a credible adjustment for market conditions in one appraisal, but the appraiser must consider whether or not the data upon which that adjustment was supported is based upon data that is suitable for comparison to the subject of another appraisal.

A regression analysis that correlates the sale prices per acre of land sales to the size of each lot may either be based upon the unadjusted or adjusted sale prices. If unadjusted, the appraiser may need to perform additional analysis before applying the result to the subject.

When using any of these analytical tools, the appraiser is responsible for the accuracy of the output. Thus, the appraiser must have confidence that the technology uses data that is relevant and that the output is mathematically correct and sufficiently reliable for use in the assignment.

Regardless of the tool chosen, the appraiser is responsible for the entire analysis, including selection of the source data, the calculations, and the resulting output. Appraisers should use sufficient care to avoid errors that would significantly affect their opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

When using a computer assisted valuation tool, an appraiser must not simply rely on the output of data programs which claim to give support for adjustments without an understanding that the output is credible. Reliance on this data without understanding the output could place credibility of assignment results in doubt.

### Additional Considerations

Appraisers may rely upon forms of technology other than computer assisted valuation tools. The advice provided in this Advisory Opinion can, in large part, be applied to those tools as well. One such example is software that calculates the size of the subject property (CAD, or computer-aided design software). Appraisers use these programs to illustrate the floor plan of the subject and, by including dimensions, calculate building size. As with valuation tools, the appraiser is responsible for the accuracy of the measurements, correctly identifying how each area is to be classified (e.g., living area, basement, garage, etc.), and that the resulting calculation is accurate and appropriate for use in producing credible assignment results.

### Reporting Requirements

Standards Rule 2-2(a)(x) states, in part:

> *The content of an Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum: provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by: (1) summarizing the appraisal methods and techniques employed, and ... (5) stating the information analyzed and the reasoning that supports the analyses, opinions, and conclusions, including reconciliation of the data and approaches.*

This could be accomplished by summarizing the input parameters and the analysis in the report and the rationale for selecting those parameters. The summary might also be supported by graphs, tables, charts, screen captures, etc. that are generated by the tools.



GO BACK

This may include all of the input parameters, how the source data was obtained, the resulting output, the software used, including the version number, or the online service relied upon, and the date of the analysis. Events beyond the appraiser's control may make it impossible to reproduce the exact same output results at a later date. For example, a software vendor might refine the algorithm, or there may be a different vendor altogether. The information retained in the workfile must be sufficient to support the analyses that were the basis for the report.

**Illustrations:**

1. Q:  A stand-alone program will calculate the replacement cost of the office building that is being appraised. The software's output is notably different from the actual costs submitted by the builder. On which cost estimate should the appraiser rely?

   A:  Standard Rule 1-4(b)(ii) requires that the appraiser "analyze such comparable cost data as are available to estimate the cost new of the improvements (if any)." Therefore, the appraiser should not simply accept one cost calculation or another without careful analysis.

       The appraiser should double-check and reconsider the factual data being input. Likewise, the appraiser should review the cost contract submitted to verify that it also is based upon the same assumptions (e.g., all items included, any personal property included, arm's-length transaction, etc.) and that the calculations are correct. After doing so, the appraiser can determine whether the proposed cost or the software's output is more credible.

2. Q:  An appraiser has purchased a software package that has multiple functions, such as market analysis, deriving adjustments for physical characteristics, automatically inputting information from the local MLS, and more. He uses the program to develop an adjustment for an in-ground pool. The program provides that amount and reports the standard deviation. The appraiser is not familiar with this term. He assumes that a large standard deviation is better so he decides to employ that adjustment. Is the appraiser correct in deciding that the output was credible?

   A:  No. The COMPETENCY RULE requires that an appraiser have the knowledge to complete the assignment competently. An appraiser must have at least a basic understanding of statistics in order to rely upon the output. By relying upon unfamiliar terminology, the appraiser is not complying with the COMPETENCY RULE.

## SUMMARY:

- Computer assisted valuation tools that are available to the appraiser are often used in developing value opinions in concert within one or more approaches.
- The output of computer assisted valuation tools is most often used as an analytical tool within one or more approaches to value.
- The information generated by these types of valuation tools is merely a calculation that once had to be calculated by hand; it is not a substitute for an appraiser's judgment.
- Appraisers may find analytic tools useful for supporting their adjustments.
- Regardless of the tool chosen, the appraiser is responsible for the entire analysis including the controlling input, the calculations, and the resulting output.
- Appraisers must be proficient in the use of their chosen technology to ensure that they have correctly selected and input appropriate parameters.
- If the appropriate parameters are not correctly entered into the program, the information provided may neither meet the requirements of the assignment nor provide credible assignment results.
- Appraisers must have an understanding of statistical analysis and not employ terminology and/or methodology with which they are not familiar.
- It is the responsibility of the appraiser to ensure that the controlling input is consistent with market evidence and prevailing market attitudes.
- Output should be tested and checked for errors and reasonableness.
- Information retained in the workfile must be sufficient to support the analyses.

**GO BACK**

# ADVISORY OPINION 38 (AO-38)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Content of an Appraisal Report and Restricted Appraisal Report**
**APPLICATION: Real Property, Personal Property, Intangible Property**

## THE ISSUE:

Standards Rules 2-2, 8-2, and 10-2 contain the minimum content requirements for an Appraisal Report and for a Restricted Appraisal Report.

This Advisory Opinion addresses the following questions about the required content of a report.

- Since USPAP allows flexibility in reporting assignment results, does this mean that for some assignments an appraiser is permitted to be less thorough in developing an appraisal?
- If there are only two written reporting options (Appraisal Report and Restricted Appraisal Report), does this mean that USPAP allows only two ways to report an appraisal?
- Does USPAP require appraisal reports to have a specific label?
- Under what conditions does USPAP permit a Restricted Appraisal Report?
- When may it be appropriate to issue a Restricted Appraisal Report?
- What are the differences between the required content of an Appraisal Report and Restricted Appraisal Report?
- What is an example of the difference between "state" and "summarize" in the context of a real property appraisal report?
- How must the appraiser disclose restrictions on the use of a Restricted Appraisal Report?
- When might an appraiser need to exceed the minimum requirements for an Appraisal Report or Restricted Appraisal Report?
- Is it permitted to issue an Appraisal Report if an appraiser exceeds some of the minimum reporting requirements for a Restricted Appraisal Report but does not meet all of the requirements for an Appraisal Report?
- Is the appraiser required to make workfile retrieval arrangements with the client?
- What if the report is sufficient for the needs of the client, but a reviewer requests more information from the workfile?
- For oral reports, what is meant by *substantive matters*?

**Relevant USPAP References**

According to the SCOPE OF WORK RULE <u>Disclosure Obligations</u>:

> *The report must contain sufficient information to allow the client and other intended users to understand the scope of work performed. The information disclosed must be appropriate for the intended use of the assignment results.*

According to the General Reporting Requirements in Standards Rules 2-1, 8-1, and 10-1, each written or oral appraisal report must:

> (a) *clearly and accurately set forth the appraisal in a manner that will not be misleading;*

---

*(b) contain sufficient information to enable the intended user(s) of the appraisal to understand the report properly; and*

*(c) clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.*

## ADVICE FROM THE ASB ON THE ISSUE:

**Since USPAP allows flexibility in *reporting* assignment results, does this mean that for some assignments an appraiser is permitted to be less thorough in *developing* an appraisal?**
STANDARDS 1, 7, and 9 set requirements for developing an appraisal. These *development* requirements apply to all appraisals along with the ETHICS RULE, the RECORD KEEPING RULE, the COMPETENCY RULE, the SCOPE OF WORK RULE, and the JURISDICTIONAL EXCEPTION RULE. Thus, regardless of whether a *report* contains only the minimum contents, the SCOPE OF WORK RULE still requires an appraiser to "determine and perform the scope of work necessary to *develop* credible assignment results."

Since the development process for an appraisal is separate from the reporting process, the choice of different reporting options does not affect the USPAP requirements for development. The appraiser must comply with STANDARDS 1, 7, or 9 to *develop* credible assignment results, regardless of the length or type of form or format used to *report* the appraisal.

**If there are only two written reporting options (Appraisal Report and Restricted Appraisal Report), does this mean that USPAP allows only two ways to report an appraisal?**
No. USPAP sets minimum requirements but does not limit the ways in which opinions of value may be reported. STANDARDS 2, 8 AND 10 state that "the substantive content of a report determines its compliance."

**Does USPAP require appraisal reports to have a specific label?**
Yes. However, Standards Rules 2-2, 8-2, and 10-2 explicitly permit an appraiser to use other labels *in addition to* "Appraisal Report" and "Restricted Appraisal Report." It is not required that either "Appraisal Report" or "Restricted Appraisal Report" be the only label.

**Under what conditions does USPAP permit a Restricted Appraisal Report?**
According to Standards Rules 2-2(b), 8-2(b), and 10-2(b) "A Restricted Appraisal Report may be provided when the client is the only intended user; or, when additional intended users are identified by name." For a Restricted Appraisal Report, other intended users are permitted only if they are identified by name in the report.

**When may it be appropriate to issue a Restricted Appraisal Report?**
According to Standards Rules 2-2(b), 8-2(b), and 10-2(b), the content of a Restricted Appraisal Report must be "appropriate for its intended use." Thus it is not appropriate to issue a Restricted Appraisal Report solely because the client is the only intended user.

Further, an appraiser should carefully consider the obligation for a report to "contain sufficient information to enable the intended user(s) of the appraisal to understand the report properly" when considering whether it is appropriate to have other intended users.

It may be appropriate to issue a Restricted Appraisal Report if:

- the client understands the limited utility of this option;

- the intended use of the appraisal is appropriate for a report which may not contain supporting rationale for all of the opinions and conclusions set forth in the report; and

- the client (and, if applicable, named other intended users) does not need the level of information required in an Appraisal Report.

Some examples of situations in which a Restricted Appraisal Report may be appropriate are:

GO BACK

- The intended use is consultation for acquisition or disposition by a collector who is knowledgeable about the subject property.
- A real property owner wants to know the market value of their property, but does not need to know details as to how the appraiser arrived at that conclusion.
- A business orders a yearly or quarterly appraisal of property that the appraiser has appraised many times in the past.
- The appraisal is for a preliminary hearing to dispute property taxes at the assessor's office.

**What are the differences between the required content of an Appraisal Report and Restricted Appraisal Report?**
The comparison chart below shows the required contents of an Appraisal Report and Restricted Appraisal Report in Standards Rule 2-2. The requirements in Standards Rules 8-2 and 10-2 are similar. In most cases the difference between an Appraisal Report and Restricted Appraisal Report is whether the information must be summarized or whether it may be stated. Bold type is used to highlight some of the other differences.

**What is an example of the difference between "state" and "summarize" in the context of a real property appraisal report?**
The following presentations of the zoning section of a commercial appraisal report are used to exemplify the content differences in the two appraisal report options. These examples show a relative illustration of depth and detail of presentation and are not intended to characterize the format for an entire appraisal report. The examples are not intended to imply that information on zoning is necessary in all appraisal reports. Furthermore, an appraiser may need to provide additional information in the valuation of a complex property wherein the issues of what is physically possible, legally permissible, financially feasible, and maximally productive are explored in much greater detail, to enable the client and intended users to understand the report properly.

| Appraisal Report | Restricted Appraisal Report |
|---|---|
| (i) state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request; | (i) state the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request; |
| (ii) state the identity of any other intended users by name **or type**; | (ii) state the identity of any other intended user(s) **by name**; |
| n/a | (iii) clearly and conspicuously **state a restriction** that limits use of the report to the client and the named intended user(s); |
| n/a | (iv) clearly and conspicuously **warn that the report may not contain supporting rationale** for all of the opinions and conclusions set forth in the report |
| (iii) state the intended use of the appraisal; | (v) state the intended use of the appraisal; |
| (iv) **contain information, documents, and/or exhibits** sufficient to identify the real estate involved in the appraisal, including the physical, legal, and economic property characteristics relevant to the assignment | (vi) state information sufficient to identify the real estate involved in the appraisal; |
| (v) state the real property interest appraised; | (vii) state the real property interest appraised; |
| (vi) state the type **and definition** of value and cite the source of the definition; | (viii) state the type of value and cite the source of its definition; |
| (vii) state the effective date of the appraisal and the date of the report; | (ix) state the effective date of the appraisal and the date of the report; |
| (viii) **summarize** the scope of work used to develop the appraisal | (x) state the scope of work used to develop the appraisal |
| (ix) **summarize** the extent of any significant real property appraisal assistance; | (xi) state the extent of any significant real property appraisal assistance; |

GO BACK

| Appraisal Report | Restricted Appraisal Report |
|---|---|
| (x) provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by:<br><br>1. **summarizing** the appraisal methods and techniques employed<br><br>2. stating the reasons for excluding the sales comparison, cost, or income approach(es) if any have not been developed;<br><br>3. summarizing the results of analyzing the subject sales and other sales, agreements of sale, options, and listings in accordance with Standards Rule 1-5; and<br><br>4. stating the value opinion(s) and conclusion(s); and<br><br>5. **summarizing the information analyzed and the reasoning that supports the analyses, opinions, and conclusions, including reconciliation of the data and approaches.** | (xii) provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by:<br><br>1. **stating** the appraisal methods and techniques employed<br><br>2. stating the reasons for excluding the sales comparison, cost, or income approach(es) if any have not been developed;<br><br>3. summarizing the results of analyzing the subject sales and other transfers, agreements of sale, options, and listings in accordance with Standards Rule 1-5; and<br><br>4. stating the value opinion(s) and conclusion(s).<br><br>Comment: An appraiser must maintain a workfile that includes **sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 and for the appraiser to produce an Appraisal Report.** |
| (xi) state the use of the real estate existing as of the effective date and the use of the real estate reflected in the appraisal; | (xiii) state the use of the real estate existing as of the effective date and the use of the real estate reflected in the appraisal; |
| (xii) when an opinion of highest and best use was developed by the appraiser, state that opinion and **summarize the support and rationale for that opinion**; | (xiv) when an opinion of highest and best use was developed by the appraiser, state that opinion; |
| (xiii) clearly and conspicuously:<br><br>• state all extraordinary assumptions and hypothetical conditions; and<br><br>• state that their use might have affected the assignment results; | (xv) clearly and conspicuously:<br><br>• state all extraordinary assumptions and hypothetical conditions; and<br><br>• state that their use might have affected the assignment results; |
| (xiv) include a signed certification in accordance with Standards Rule 2-3. | (xvi) include a signed certification in accordance with Standards Rule 2-3. |

Example of "summarize"—zoning

*The General Business B-4 zoning classification applies. Its purpose is to encourage local commercial development of banking facilities, retail stores, and service establishments along arterial streets on minimum lots of 10,000 sq. ft. with a width of 100 feet. Building coverage is limited to 50% of the lot, and building height is limited to two stories or 20 feet. John N. Forcer of the Anytown planning and zoning office indicates that the existing use and subject improvements conform.*

Example of "state"—zoning

*General Business, B-4; existing use and subject improvements conform.*

The purpose of the above examples is to show one view of the differences between the application of the terms "summarize" and "state." The examples should not be extended beyond this Advisory Opinion to every section of an appraisal report.

**How must the appraiser disclose restrictions on the use of a Restricted Appraisal Report?**
Standards Rules 2-2(b), 8-2(b) and 10-2(b) state that restrictions on the use of a Restricted Appraisal Report must be disclosed clearly and conspicuously:

> … clearly and conspicuously state a restriction that limits use of the report to the client and the named intended user(s);

> … clearly and conspicuously warn that the report may not contain supporting rationale for all of the opinions and conclusions set forth in the report.

**When might an appraiser need to exceed the minimum requirements for an Appraisal Report or Restricted Appraisal Report?**
USPAP does not prescribe a one-size-fits-all level of information regardless of the required minimum contents of a report. An appraiser will need to exercise judgment and may need to exceed the minimum requirements to ensure that a report is meaningful and not misleading to the intended user(s).

The minimum content requirements do not prohibit an appraiser from providing more extensive explanation and background. In some cases, for example, if a client is not a knowledgeable user of valuation services, an appraiser may need to exceed the requirements in order to ensure that an Appraisal Report is meaningful and not misleading to the intended user(s). In other cases, the intended use of an appraisal may require an appraiser to exceed the minimum report content requirements.

Some examples of intended uses when the appraiser might need to summarize information even if USPAP only requires a statement are:

- Charitable contribution for which IRS reporting requirements apply

- Litigation matter

- A financing transaction in the primary or secondary mortgage market, such as when VA, FHA, or Fannie Mae report content requirements apply

**Is it permitted to issue an Appraisal Report if an appraiser exceeds some of the minimum reporting requirements for a Restricted Appraisal Report but does not meet all of the requirements for an Appraisal Report?**
No.

**Is the appraiser required to make workfile retrieval arrangements with the client?**
No. This is not required by USPAP. However, an appraiser may make these arrangements with a client.

**What if the report is sufficient for the needs of the client, but a reviewer requests more information from the workfile?**

As long as the client gives the appraiser approval to share assignment results with the reviewer, USPAP neither requires nor prohibits sharing workfile information with a reviewer.

**For oral reports, what is meant by *substantive matters*?**
Standards Rules 2-4, 8-4, and 10-4 specify that an oral appraisal report must "to the extent that it is both possible and appropriate" address the *substantive matters* set forth in Standards Rules 2-2, 8-2 and 10-2.

The flexibility in this requirement reflects the varied circumstances in which oral appraisal reports are delivered. The appraiser is expected to use judgment about which elements of Standards Rules 2-2, 8-2 and 10-2 are "substantive" or, as defined in the Merriam-Webster dictionary, "matters of major or practical importance to all concerned."

In many cases it is critically important to state (and explain) the type and definition of value, but it may not be necessary in an oral report to cite the source of the definition. Similarly, it may be very important to summarize information sufficient to identify the property involved in the appraisal, but it may not be necessary in every oral presentation to state the property interest appraised or to state the reasons for the exclusion of some approaches to value.

# ADVISORY OPINION 39 (AO-39)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Antidiscrimination Laws and Nondiscrimination**
**APPLICATION: Real Property, Personal Property, Intangible Property (ALL)**

## THE ISSUE:

How do federal antidiscrimination laws such as the Fair Housing Act (FHAct), the Equal Credit Opportunity Act (ECOA), and the Civil Rights Act of 1866 affect appraisal practice?

Whether or not a particular antidiscrimination law or regulation applies, how can an appraiser comply with the Nondiscrimination section of the ETHICS RULE?

## BACKGROUND:

USPAP requires an appraiser to be, or become, knowledgeable about and to fully comply with all laws applicable to the appraiser or to the assignment, including antidiscrimination laws. The three key U.S. federal antidiscrimination laws most relevant to appraisal practice are noted in the Nondiscrimination section of the ETHICS RULE:

- The Fair Housing Act (FHAct);
- The Equal Credit Opportunity Act (ECOA); and
- Sections 1981 and 1982 of the Civil Rights Act of 1866.

In addition to mentioning these federal antidiscrimination laws, the Nondiscrimination section also references the long-established legal concepts of "disparate treatment" and "disparate impact," which are integral to the cited laws and explained below.

The ETHICS RULE requires that an appraiser not act in a manner that violates antidiscrimination laws or regulations, and further, not act in a manner that contributes to a violation of those laws. For any given assignment, this might require compliance with one or more federal antidiscrimination laws and their implementing regulations, as well as state and local antidiscrimination laws and regulations.[1] For example, where the intended use of residential real property appraisal assignment results is to facilitate a mortgage-related transaction, the FHAct, ECOA, the Civil Rights Act of 1866, and state and local laws have provisions that may apply to the appraiser or the assignment, which the appraiser will need to follow in order not to violate or contribute to violations of antidiscrimination law.

**The Fair Housing Act**
The Fair Housing Act (FHAct), also known as Title VIII of the 1968 Civil Rights Act (subsequently amended in 1988 by the Fair Housing Amendments Act), addresses housing discrimination and is a key component of the antidiscrimination framework of the U.S. legal system.

The FHAct prohibits discrimination in a number of activities relating to housing, including the renting or buying of a home and obtaining a mortgage.[2] The FHAct prohibits discrimination in residential real estate-related transactions, which the FHAct defines to include "the appraising of residential real property."[3] The Department of Housing and Urban

---

[1]   USPAP also requires an appraiser to comply with all other federal, state, or local laws and regulations that are applicable to the assignment as a matter of competency.

[2]   42 U.S.C. §§ 3601—3619; Housing Discrimination Under the Fair Housing Act, https://www.hud.gov/program_offices/fair_housing_equal_opp/fair_housing_act_overview; 42 U.S.C. § 3605(b).

[3]   42 U.S.C. § 3605(b).

Development (HUD) provides the regulations through which the FHAct is enforced. HUD regulations contain information that applies to appraisers, so appraisers should look to HUD regulations when determining how to comply with the FHAct.[4]

Key concepts in the FHAct and its implementing HUD regulations include:

- FHAct-covered activities may not be based either in whole or in part on information involving race, color, religion, sex, handicap, familial status, or national origin,[5] unless there is an applicable exception in the FHAct (for example, exceptions for housing for older persons). For purposes of the FHAct, "sex" includes gender identity and sexual orientation.[6]
- Under the FHAct, protected characteristics include the demographic characteristics of the neighborhood where the property is located.[7]
- Disparate treatment and disparate impact can establish a basis for liability under the FHAct.

*Disparate treatment* occurs when an appraiser intentionally treats a person differently from others, either in whole or in part, because of a protected characteristic.[8] Disparate treatment can occur even if the appraiser is not motivated by malice or prejudice.[9] Additionally, in an appraisal, using or relying on a non-protected characteristic as a pretext to conceal using or relying upon a protected characteristic is a form of disparate treatment. Disparate treatment is discriminatory and violates applicable laws and USPAP even if the appraiser believes that statistics or other data might support the differential treatment.

*Disparate impact* involves neutral policies or practices—that is, policies or practices that do not on their face reference or rely upon protected characteristics—that have an effect that is disproportionately adverse to individuals with a particular protected characteristic.[10] *Disparate impact discrimination* or liability does not occur every time there is a disparate impact—some neutral policies and practices with a disparate impact may be permissible. A policy or practice that has a disparate impact is permissible if the policy or practice is justified by a business need, and there is no alternative policy or practice that would meet that need but have less of a disparate impact. A person or entity is not required to go to all lengths to minimize a disparate impact, but if an alternative policy or practice is reasonably available and does not impose a material burden, the law will generally require adoption of that alternative. In other words, if the need underpinning a policy or practice that causes a disparate impact could be met by an alternative policy or practice with less of an adverse impact on a protected group, then not adopting that alternative could give rise to disparate impact discrimination. As with disparate treatment, disparate impact discrimination does not require an appraiser to be motivated by malice or prejudice. Disparate impact does not require a showing of intent to treat members of a protected class differently from other persons.[11]

---

4    Some terms common to appraisers may be defined differently in the FHAct and HUD regulations than in USPAP. Definitions found in laws and regulations are used in the application of the law, whereas defined terms within USPAP are intended to clarify the meaning of words or phrases in USPAP that differ from or are not found in popular English dictionaries, or in a few instances meant to clarify the intended use of the term within USPAP. To ensure compliance with the ETHICS RULE, appraisers should understand any USPAP terms as well as any legal terms relevant to their practice, and how those terms might differ. For example, HUD regulations use the term "appraisal" to mean "an estimate or opinion of the value of a specified residential real property made in a business context in connection with the sale, rental, financing or refinancing of a dwelling or in connection with any activity that otherwise affects the availability of a residential real estate-related transaction." 24 C.F.R. § 100.135(b).

5    42 U.S.C. § 3605(a).

6    See U.S. Department of Housing and Urban Development, Memorandum re: Implementation of Executive Order 13988 on the Enforcement of the Fair Housing Act, https://www.hud.gov/sites/dfiles/PA/documents/HUD_Memo_EO13988.pdf.

7    See Advisory Opinion 40, *Antidiscrimination and the Research, Analysis, and Reporting of Location Data, including Demographics, for Residential Real Property Appraisal Assignments.*

8    See also *Sanghvi v. City of Claremont*, 328 F.3d 532, 536–38 (9th Cir. 2003); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48–52 (2d Cir. 2002); *Kormoczy v. HUD*, 53 F.3d 821, 823–24 (7th Cir. 1995) (all describing and applying a disparate treatment analysis to claims brought under the FHAct).

9    See *Cmty. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005)* (stating that a plaintiff bringing a disparate treatment claim under the FHAct is not required to show "an evil or hostile motive," instead only "that a protected characteristic played a role in the defendant's decision to treat her differently") (internal citations omitted).

10   See 24 C.F.R. § 100.500; see also *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 533 (2015).

11   See *de Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 421 (4th Cir. 2018) (citing Inclusive Communities, 576 U.S. at 524).

HUD regulations provide additional details about what is considered an unlawful practice related to the appraisal of residential real property, including "[u]sing an appraisal of residential real property in connection with the sale, rental, or financing of any dwelling where the person knows or reasonably should know that the appraisal improperly takes into consideration race, color, religion, sex, handicap, familial status, or national origin."[12]

**The Equal Credit Opportunity Act**

The Equal Credit Opportunity Act (ECOA) was originally passed by Congress in 1974. ECOA prohibits discrimination by "creditors"[13] in any aspect of a credit transaction on the basis of race, color, religion, national origin, sex, marital status, age, an applicant's receipt of public assistance, or the good faith exercise of an applicant's rights under the Consumer Credit Protection Act.[14] ECOA applies to "any extension of credit, including extensions of credit to small businesses, corporations, partnerships, and trusts."[15] Like the FHAct, ECOA has been interpreted to prohibit discrimination on the basis of sexual orientation and gender identity.[16] Also, as under the FHAct, both disparate treatment and disparate impact can give rise to a violation of ECOA.[17] The Consumer Financial Protection Bureau (CFPB) provides the regulations through which ECOA is enforced, known as Regulation B.[18]

An appraisal that is used in connection with a credit transaction is an aspect of that credit transaction. Therefore, if an appraisal report is used in the course of a credit transaction, and the appraisal is inconsistent with the antidiscrimination provisions of ECOA, the appraiser likely has contributed to a legal violation on the part of the creditor in the transaction. A creditor cannot take a protected characteristic into account in any system of evaluating the creditworthiness of applicants.[19] A creditor cannot rely on a discriminatory appraisal to deny a loan. Consistent with these requirements, courts have held that creditors can be held liable under both the FHAct and ECOA in relying on discriminatory appraisals.

**The Civil Rights Act of 1866**

The Civil Rights Act of 1866 is foundational to U.S. antidiscrimination law and applies in many contexts. Among its provisions are Section 1981 and Section 1982. Section 1981 guarantees the right of all persons to "make and enforce contracts." This includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Section 1982 guarantees all citizens the right to "inherit, purchase, lease, sell, hold, and convey real and personal property." The Civil Rights Act of 1866 prohibits disparate treatment on the basis of race, ethnicity, national origin, and religion.[20]

The provisions of Sections 1981 and 1982 of the Civil Rights Act of 1866 are applicable to appraisers, regardless of an individual appraiser's discipline, and they have implications for how appraisers choose to accept or refuse assignments, treat clients, and how appraisers determine the appropriate scope of work for each assignment the appraiser agrees to perform. The results of the assignment in an appraisal report can directly affect a person's ability to purchase, sell, hold, and convey real or personal property. Additionally, a refusal to accept certain assignments for discriminatory reasons (e.g., refusing to accept assignments from potential clients of a particular race, or refusing to accept assignments to appraise property with owners who are of a particular national origin) could violate Section 1981. Finally, courts often

---

12    24 C.F.R. § 100.135(d)(1).

13    The term "creditor" is defined in ECOA's implementing regulations as "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." Entities such as banks or lenders are commonly treated as creditors subject to ECOA, but any person who, "in the ordinary course of business, regularly participates in a credit decision" also qualifies as a creditor subject to ECOA. 12 C.F.R § 1002.2(l).

14    15 U.S.C. § 1691(a).

15    59 Fed. Reg. 18267 (Apr. 15, 1994).

16    See, e.g., CFPB Clarifies That Discrimination by Lenders on the Basis of Sexual Orientation and Gender Identity Is Illegal, https://www.consumerfinance.gov/about-us/newsroom/cfpb-clarifies-discrimination-by-lenders-on-basis-of-sexual-orientation-and-gender-identity-is-illegal/.

17    12 CFR Part 1002 Supp. I Sec. 1002.4(a)-1; 12 CFR Part 1002 Supp. I Sec. 1002.6(a)-2.

18    12 C.F.R. Part 1002 et seq.

19    See 12 CFR § 1002.6(b)(1).

20    *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987); *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987).

consider Section 1982 in conjunction with the FHAct to analyze housing-related discrimination claims.[21] Accordingly, discriminatory conduct that violates the FHAct could also be found to violate Section 1982.[22]

## ADVICE FROM THE ASB ON THE ISSUE:

### Relevant USPAP & Advisory References

- The Nondiscrimination section of the ETHICS RULE, particularly regarding the requirement that "An appraiser must not act in a manner that violates or contributes to a violation of federal, state, or local antidiscrimination laws or regulations."

- The COMPETENCY RULE, in the following ways:

  - As it requires "recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment."

  - As it provides for acquiring competency by "1. disclos[ing] the lack of knowledge and/or experience to the client before agreeing to perform an assignment; 2. tak[ing] all steps necessary or appropriate to complete the assignment competently; and 3. describ[ing], in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently."

- DEFINITIONS,[23] specifically the following:

  - APPRAISER: One who is expected to perform valuation services competently and in a manner that is independent, impartial, and objective.

  Comment: Such expectation occurs when individuals, either by choice or by requirement placed upon them or upon the service they provide by law, regulation, or agreement with the client or intended users, represent that they comply.

  - ASSIGNMENT CONDITIONS: Assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions, and other conditions that affect the scope of work.

  - BIAS: A preference or inclination that precludes an appraiser's impartiality, independence, or objectivity in an assignment.

### Requirements to Comply with Antidiscrimination Laws

The opening lines of the Nondiscrimination section of the ETHICS RULE require that an appraiser not act in a manner that violates or contributes to a violation of antidiscrimination law, including the FHAct, ECOA, and the Civil Rights Act of 1866. The Nondiscrimination section further states that an appraiser must have knowledge of antidiscrimination laws and regulations and when they apply to the appraiser or to the assignment, in addition to the requirement to comply with the law. The Nondiscrimination section then provides two more specific requirements for appraisers conducting assignments (1) related to residential real property or (2) where the intended use is in connection with a credit transaction. As used in the ETHICS RULE and this guidance, "residential real property" includes any dwelling under the FHAct or ECOA, and property that is part of a "residential real estate-related transaction" under the FHAct.[24] The Nondiscrimination section then provides a third requirement to

---

21    See, *e.g., Watts v. Boyd Properties, Inc.*, 758 F.2d 1482, 1484 (11th Cir. 1985) ("...many of the cases arising under the Fair Housing Act also involve claims arising under § 1982, courts have often decided the cases without distinguishing between the two statutes.").

22    *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968); *City of Memphis v. Greene*, 451 U.S. 100, 122–23 (1981).

23    In USPAP publication see USPAP Definitions Section.

24    See 42 U.S.C § 3602(b) (dwelling defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof"); 42 U.S.C. § 3605(b) (defining "residential real estate-related transaction" as the "making or purchasing of loans or providing other financial assistance" "for purchasing, constructing, improving, repairing, or maintaining a dwelling" or "secured by residential real estate," as well as "the selling, brokering, or appraising of residential real property" (emphasis added)); 12 CFR § 1002.14(b)(2) (defining "dwelling" as "a residential structure that contains one to four units whether or not that structure is attached to real property. The term includes, but is not limited to, an individual condominium or cooperative unit, and a mobile or other manufactured home"). An appraiser should be knowledgeable about any applicable definitions and understand the conditions that trigger nondiscrimination requirements under applicable law, including state law.

follow applicable antidiscrimination laws and regulations of other jurisdictions, such as states and localities. State and local laws and regulations can protect additional personal characteristics and/or prohibit additional business practices and appraisal-related activities beyond the federal laws highlighted in the ETHICS RULE.

Understanding when an antidiscrimination law or regulation is applicable to an appraiser or an assignment is a component of both acting ethically and performing competently. A law is applicable to an appraiser where an appraiser's actions could directly violate that law. For example, an appraiser who has agreed to develop an opinion of value for residential real property that will be used in connection with a mortgage transaction would violate the FHAct if the appraiser bases the opinion of value on information about race. Additionally, an appraiser could contribute to a violation of law by another person or entity (such as a lender or client) if a law is applicable to the appraisal report, even if it is not directly applicable to the appraiser. For example, an appraiser who has agreed to provide an opinion of value for collateral in connection with a business loan would contribute to a violation of ECOA if the appraiser bases the opinion of value on race, leading to an ECOA violation on the part of the lender. Knowledge of antidiscrimination laws and their application can be gained in multiple ways, including by taking education courses or undertaking personal study of the laws and regulations. An appraiser who does not recognize when an antidiscrimination law or regulation applies to the appraiser or to their assignment, and therefore does not comply with it, will violate both the COMPETENCY RULE and the ETHICS RULE. Competency is not limited to any one set of applicable laws or regulations, but to all laws and regulations that may be applicable to the appraiser or the assignment. [25]

**General Principles of Nondiscrimination, Regardless of Applicable Law**

Where an antidiscrimination law or regulation applies to an appraiser or to the appraiser's assignment, the appraiser could violate the ETHICS RULE in two ways. As discussed above, the first part of the Nondiscrimination section of the ETHICS RULE (starting at "An appraiser must not act in a manner that violates" and continuing through the comment about state and local antidiscrimination laws) prohibits conduct that violates or contributes to a violation of antidiscrimination laws or regulations. The remainder of the Nondiscrimination section (starting at "Whether or not any antidiscrimination law or regulation applies") extends nondiscrimination obligations to all appraisal disciplines and all appraisers, regardless of the valuation service provided by an individual appraiser and whether any antidiscrimination laws would apply to that appraiser or that appraiser's assignments.

These requirements and prohibitions, which are in addition to the requirements to not violate or contribute to violations of antidiscrimination laws, prohibit an appraiser from developing and/or reporting an opinion of value on the basis of specified characteristics; basing an opinion of value upon the premise that homogeneity of the inhabitants of a geographic area is relevant for the appraisal; performing an assignment with bias with respect to specified characteristics; and pretextually concealing the use of or reliance upon specified characteristics through reference to any other characteristic. Although these requirements and prohibitions are independent of any law, they reflect core prohibitions of antidiscrimination laws. Following these requirements helps an appraiser comply with antidiscrimination laws and regulations and preserve public trust in appraisal practice.

---

25  This is consistent with the SCOPE OF WORK RULE, which states: "Laws include constitutions, legislative and court-made law, administrative rules, and ordinances. Regulations include rules or orders, having legal force, issued by an administrative agency."

---

**GO BACK**

**Developing or Reporting an Opinion of Value Based on Certain Personal Characteristics**

The Nondiscrimination section prohibits an appraiser from developing or reporting an opinion of value that, in whole or in part, is based on:

> the actual or perceived race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s).

The list of characteristics are personal characteristics that are protected by the FHAct, ECOA, and/or the Civil Rights Act of 1866. These are personal characteristics that are broadly protected by many antidiscrimination laws. As a matter of ethics, appraisers cannot use or rely upon these characteristics in developing or reporting an opinion of value, except in the limited circumstances discussed below. The words "actual or perceived" mean, for example, a person could either be Hispanic or just be perceived (by the appraiser) as Hispanic because he or she has a last name that is believed by the appraiser to be a Hispanic name.

**Irrelevance of Homogeneity of the Inhabitants of a Geographic Area**

The Nondiscrimination section also prohibits an appraiser from basing an opinion of value upon the premise that homogeneity of the inhabitants of a geographic area is relevant for an appraisal. The homogeneity—or diversity—of the inhabitants of an area is not relevant when appraising residential real property.

**Bias with Respect to Certain Personal Characteristics**

An appraiser also must not "perform an assignment" with bias with respect to the actual or perceived race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s).

"Bias" is defined in USPAP as:

> a preference or inclination that precludes an appraiser's impartiality, independence, or objectivity in an assignment.

The Conduct section of the ETHICS RULE prohibits an appraiser from performing an assignment with bias. Performing an assignment with bias with respect to any of the personal characteristics listed is a violation of both the Conduct section and the Nondiscrimination section of the ETHICS RULE. Although this prohibition relates to bias, bias is not required for a violation of any other portion of the Nondiscrimination section.

**Pretext**

An appraiser must not conceal the use of or reliance upon any of the personal characteristics enumerated in the ETHICS RULE by pretextually referring to some other characteristic as though that other characteristic were the reason for the appraiser's opinions or conclusions. Misrepresentation of an appraiser's reasoning is misleading, in violation of USPAP's Standards Rules, and concealment by using pretext in this way also is a violation of the ETHICS RULE. Although it can be acceptable for an appraiser to use data that may have a correlation with a protected characteristic, it is never acceptable to use correlated data *because of* its correlation with one of these personal characteristics. This would constitute a pretext.

**The Limited Circumstances When Use of a Protected Characteristic in an Assignment is Permissible**

The ETHICS RULE recognizes that, in very limited circumstances, an appraiser may use or rely upon a protected characteristic in an assignment. A footnote to the Rule defines "protected characteristic" here as "race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s), or any other characteristic protected by applicable antidiscrimination law."

GO BACK

Any use of or reliance upon a protected characteristic in a manner that violates applicable antidiscrimination laws is necessarily a violation of USPAP.[26] Where the FHAct and ECOA do not apply, and no other law or regulation prohibits the use of or reliance upon a protected characteristic, "then the use of or reliance upon that characteristic is permitted only to the extent that it is essential to the assignment and necessary for credible assignment results." This limitation applies regardless of when during the assignment the appraiser concludes a protected characteristic may be necessary for a valid solution to the assignment problem.

These conditions are intentionally stringent. Any use of or reliance upon protected characteristics in an assignment should be approached with the utmost care. As the comment to this part of the <u>Nondiscrimination</u> section states, where the FHAct, ECOA, or any other applicable antidiscrimination law or regulation prohibits the use of or reliance upon a protected characteristic, any use of or reliance upon that characteristic must be "expressly permitted." An appraiser who is developing or reporting an opinion of value for residential real property, however, is never permitted to use or rely upon race, ethnicity, or national origin, or the racial, ethnic, or national origin demographics of a geographic area.

To determine whether it is ethical to use or rely upon a protected characteristic in an assignment, the appraiser should ask (1) whether applicable law prohibits consideration of that characteristic, and (2) whether consideration of the characteristic is essential to the assignment and necessary for credible assignment results.

**Is consideration of the characteristic prohibited by law?**
Use of or reliance upon a protected characteristic is permitted only where applicable laws and regulations expressly permit such use or reliance, or no antidiscrimination law or regulation applies.

If no antidiscrimination law or regulation applies, then use of or reliance upon a protected characteristic is not prohibited. If an assignment does not involve residential real property and the intended use is not in connection with a credit transaction, the FHAct and ECOA do not apply. For example, assuming the appraisal is not part of a credit transaction, when appraising a piece of turquoise jewelry, the FHAct and ECOA do not apply or prohibit an appraiser from taking into account whether that jewelry was authenticated as having been made by a Navajo artisan.

However, when the FHAct, ECOA, or another antidiscrimination law or regulation applies, use of or reliance upon a characteristic protected by applicable law is prohibited unless it is expressly permitted. Such express permission can occur in two circumstances. First, "expressly permit" means a law that otherwise prohibits basing an opinion of value on a protected characteristic also has a stated exception that, in specified circumstances, allows basing an opinion of value on the otherwise protected characteristic. For example, the FHAct prohibits discrimination based on familial status, but also contains an exception for housing for older persons.

Second, "expressly permit" can also mean that there are other laws and regulations that authorize consideration of a particular protected characteristic in applicable circumstances, such that it would be illogical for the appraiser to be prohibited from similarly considering that protected characteristic. For example, Congress has authorized a Disadvantaged Business Enterprise (DBE) program. Under this program, businesses owned and controlled by "socially and economically disadvantaged individual(s)," such as women, are certified as DBEs and become eligible for certain federally funded contracts. Thus, when conducting a business valuation of a woman-owned DBE, the appraiser's reliance on the fact that the business is certified as a woman-owned business to complete the assignment would likely not be prohibited by law. It is important to note that there are relatively few instances when basing an opinion of value on a protected characteristic in a manner that would otherwise be prohibited by law, is nevertheless expressly permitted by law.

---

26  "Use" and "reliance" require more than simply coming into contact with information during the course of the assignment. For example, an appraiser might come across demographic information for a geographic area during the course of research. Simply being aware of that information does not violate the Nondiscrimination provision. However, the prohibition regarding pretext still applies: an appraiser must not use information about a nonprotected characteristic to conceal use of or reliance upon information that would be prohibited under the ETHICS RULE or antidiscrimination laws or regulations.

---

**GO BACK**

If applicable law prohibits basing an opinion of value on a protected characteristic, and there is no express permission to use or rely upon that characteristic, that ends the analysis: the characteristic may not be used or relied upon by the appraiser to develop their opinions and conclusions. However, if an appraiser knows that laws and regulations do not prohibit an appraiser from basing their opinions and conclusions on a protected characteristic, this is not the end of the analysis, because the appraiser must still ensure that doing so is essential to the assignment and necessary for credible assignment results.

**Is use of or reliance upon the characteristic "essential to an assignment" and "necessary for credible assignment results"?**

Use of or reliance upon a protected characteristic must also be both essential to the assignment—in other words, inherently part of the appraisal problem to be solved—and necessary for credible assignment results, meaning that the evidence and logic required to credibly support an appraiser's opinions and conclusions requires it. It is not enough for an appraiser to believe information related to a protected characteristic is somehow helpful to the analysis, or that use of the information is supportable. It must be essential to the assignment and necessary for credible assignment results.

For example, relevant characteristics of a piece of turquoise jewelry that is claimed to be of Navajo origin may be its provenance and authenticity. If, in the context of the assignment and in light of the scope of work for the assignment, it is essential to consider whether the jewelry is, in fact, Navajo-crafted, and information about provenance and authenticity is necessary for credible assignment results, it is appropriate under the ETHICS RULE for an appraiser to use and/or rely upon such information. On the other hand, in most circumstances it would be neither essential to the assignment nor necessary for credible assignment results to consider any other protected characteristic, such as the race or ethnicity of the jewelry's current owner.

**Public Trust**

Individuals who act as appraisers[27] often perform other roles as well, including as real estate brokers, auctioneers, property managers, or even advocates or consultants for various types of valuation services. However, once there is an expectation that the individual is acting as an appraiser in a context where the appraiser must comply with USPAP, the appraiser must promote and preserve public trust in appraisal practice by observing the highest standards of professional ethics as embodied in the ETHICS RULE, including the Nondiscrimination section.

Additionally, some antidiscrimination laws may apply to appraisers outside of the requirements of USPAP, such as when deciding whether an appraiser will agree to perform an assignment or not. Complying with all applicable antidiscrimination laws and regulations is critical to protecting the public trust.

**Illustrations:**

1. An appraiser based in the U.S. is requested to appraise a house by an appraisal management company that contracts with a mortgage lender. How should the appraiser determine which antidiscrimination laws must be followed in connection with this assignment?

    Answer: USPAP does not prescribe which laws and regulations apply in any given circumstance. Instead, it is the duty of the appraiser under the COMPETENCY RULE to recognize and comply with laws and regulations that apply to the appraiser or to the assignment. This includes antidiscrimination laws and regulations that must be followed as a matter of both competency and of ethics. The appraiser's evaluation of applicable law should be informed by adequate training, information, and knowledge, which can be acquired in multiple ways, including through self-study, training on these laws, or working with another appraiser who has knowledge of how to comply with these laws.

    Under USPAP, the appraiser must not act in a manner that violates or contributes to a violation of antidiscrimination laws or regulations. In this situation, the appraiser has been asked to perform an assignment that likely involves residential real property and a residential mortgage loan. As such, the

---

27    See Advisory Opinion 21, *USPAP Compliance.*

appraisal is likely to constitute a real estate-related transaction under the FHAct, meaning that law's provisions would then apply. Additionally, if the intended use of the appraisal is to provide a mortgage (which is a type of credit transaction), ECOA likely would apply to the appraisal report. As such, the appraiser's failure to follow the requirements in ECOA could contribute to a violation of ECOA.

In addition to the FHAct and ECOA, other federal, state, and local laws, such as the Civil Rights Act of 1866 and state and local antidiscrimination laws, might also apply or be otherwise relevant to the assignment. The appraiser is required to be knowledgeable about and follow applicable laws and regulations.

2. An appraiser is employed by a major bank to conduct appraisal reviews for the bank's commercial loan division. How should the Nondiscrimination section of the ETHICS RULE guide this appraiser's work?

Answer: USPAP prohibits an appraiser from engaging in any conduct that violates or contributes to a violation of antidiscrimination laws or regulations. An appraiser working for a bank should know that banks typically are considered "creditors" subject to ECOA.

The ETHICS RULE prohibits an appraiser from developing or reporting an opinion of value that is based on specified personal characteristics, and from performing the assignment with bias. However, these requirements and prohibitions do not prevent an appraiser from, in an appraisal review assignment, identifying or reporting potential discrimination or other instances of bias.

3. An appraiser advertises appraisal services in a U.S. city through a variety of different media. However, the appraiser maintains a practice of declining offers to perform assignments from potential clients of one particular race. Does this policy violate antidiscrimination laws or USPAP?

Answer: Section 1981 of the Civil Rights Act of 1866 prohibits discrimination in contracting on the basis of race. Refusing to enter into an appraisal assignment—a contractual relationship—with particular individuals because of their race would violate this law.

USPAP does not state how an appraiser must decide which assignments to agree to perform and which ones they can legally turn down. However, USPAP does prohibit an appraiser from acting in a manner that violates applicable antidiscrimination laws or regulations and from advertising for or soliciting assignments "in a manner that is false, misleading, or exaggerated."[28] The practice of refusing to enter into an appraisal assignment because of a potential client's race thus violates USPAP.

---

28    In USPAP publication see Management section of the ETHICS RULE.

**GO BACK**

# ADVISORY OPINION 40 (AO-40)

*This communication by the Appraisal Standards Board (ASB) does not establish new standards or interpret existing standards. Advisory Opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems.*

**SUBJECT: Antidiscrimination and the Research, Analysis, and Reporting of Location Data, including Demographics, for Residential Real Property Appraisal Assignments**
**APPLICATION: Real Property**

## THE ISSUE:

There are antidiscrimination laws and ethical standards that prohibit an appraiser from using or relying upon data or information about protected characteristics when developing and/or reporting an opinion of value for residential real property.

In a residential real property appraisal assignment, to develop a credible opinion of value, an appraiser must identify the characteristics of the property that are relevant to the type and definition of value and the intended use of the appraisal. This includes the property's location and its physical, legal, and economic characteristics. After the appraisal is developed, the appraiser must communicate the appraisal, including the property characteristics relevant to the assignment, in a manner that is not misleading.

When performing an appraisal assignment for residential real property, what requirements and prohibitions in USPAP address researching, analyzing, and reporting the appraiser's opinions and conclusions related to the property's location, including using or relying upon demographic data about inhabitants of a geographic area?

## ADVICE FROM THE ASB ON THE ISSUE:

**Relevant USPAP & Advisory References:**
- The PREAMBLE states, in part:

   *The appraiser's responsibility is to protect the overall public trust and it is the importance of the role of the appraiser that places ethical obligations on those who serve in this capacity [as an appraiser who is complying with USPAP].*

- The Nondiscrimination section of the ETHICS RULE states, in part:
  - *An appraiser must not act in a manner that violates or contributes to a violation of federal, state, or local antidiscrimination laws or regulations.*
  - *An appraiser, when completing a residential real property assignment, must not base their opinion of value in whole or in part on race, color, religion, national origin, sex, disability, or familial status.*
  - *An appraiser must not develop and/or report an opinion of value that, in whole or in part, is based on the actual or perceived race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s).*
  - *An appraiser must not base an opinion of value upon the premise that homogeneity of the inhabitants of a geographic area is relevant for the appraisal.*
  - *An appraiser must not use or rely upon another characteristic as a pretext to conceal the use of or reliance upon race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s), when performing an assignment.*

- A <u>Comment</u> in the <u>Nondiscrimination</u> section of the ETHICS RULE states that in this context:

   *"any person(s)"* includes the *"inhabitants of a geographic area."*

- A <u>Comment</u> in the <u>Nondiscrimination</u> section of the ETHICS RULE states that:

   *Where the FHAct, ECOA, or another antidiscrimination law or regulation applies, any use of or reliance upon a protected characteristic must be expressly permitted by applicable laws or regulations.*

- The COMPETENCY RULE requires:

   *...recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.*

- The <u>Comment</u> to the COMPETENCY RULE states, in part:

   *Competency may apply to factors such as, but not limited to, an appraiser's familiarity with a specific type of property or asset, a market, a geographic area, an intended use, specific laws and regulations, or an analytical method.*

- The SCOPE OF WORK RULE states, in part:

   *In an appraisal assignment, for example, identification of the problem to be solved requires the appraiser to identify the...subject of the assignment and its relevant characteristics...*

- The <u>Comment</u> to Standards Rule 1-2 states, in part:

   *In developing a real property appraisal, an appraiser must:...(e) identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including: (i) its location...*

- Standards Rule 2, states, in part:

   *In reporting the results of a real property appraisal, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.*

**USPAP's Prohibitions and Requirements Regarding Use of or Reliance Upon Protected Characteristics[1]**

As discussed more fully in Advisory Opinion 39 (AO-39), USPAP requires knowledge of and compliance with applicable antidiscrimination laws and regulations as a matter of both ethics and competency.[2] The <u>Nondiscrimination</u> section of the ETHICS RULE states: "[a]n appraiser must not act in a manner that violates or contributes to a violation of federal, state, or local antidiscrimination laws or regulations." When completing an assignment involving residential real property,[3] appraisers must be aware that federal antidiscrimination laws, including the Fair Housing Act (FHAct), prohibit an appraiser from relying on certain types of data and information when developing and reporting an opinion of value. Under the FHAct, it is not permissible for an appraiser to base an opinion of value on race, color, religion, national origin, sex, disability, or familial status ("FHAct protected

---

1    "Protected characteristics" refers to race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s). Additionally, when an antidiscrimination law or regulation applies, "protected characteristics" include any additional characteristics protected under applicable law.

2    See <u>Advisory Opinion 39</u>, *Antidiscrimination Laws and Nondiscrimination*.

3    Different laws may have different definitions defining the scope of what constitutes residential real property for purposes of a specific law. As used in the ETHICS RULE and this guidance, and as discussed in Advisory Opinion 39, "residential real property" includes any "dwelling" as defined under the FHAct, see 42 U.S.C § 3602(b) (dwelling defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof"); property that is part of a "residential real estate-related transaction" under the FHAct, see 42 U.S.C. § 3605(b) (defining "residential real estate-related transaction" as the "making or purchasing of loans or providing other financial assistance" "for purchasing, constructing, improving, repairing, or maintaining a dwelling" or "secured by residential real estate," as well as "the selling, brokering, or *appraising* of residential real property" (emphasis added)); and property that is a "dwelling" under ECOA, see 12 CFR § 1002.14(b)(2) (defining "dwelling" as "a residential structure that contains one to four units whether or not that structure is attached to real property. The term includes, but is not limited to, an individual condominium or cooperative unit, and a mobile or other manufactured home"). An appraiser should be knowledgeable about any applicable definitions and understand the conditions that trigger nondiscrimination requirements under applicable law.

---

**GO BACK**

characteristics"). This prohibition includes not only the FHAct protected characteristics[4] of individual people, but also the protected characteristic demographics of geographic areas such as neighborhoods. The prohibition also extends to reliance upon the homogeneity, or lack thereof, of the inhabitants of a geographic area.

In addition to the prohibitions of applicable antidiscrimination law, the ETHICS RULE prohibits an appraiser from developing and/or reporting an opinion of value that, in whole or in part, is based on the race, ethnicity, color, religion, national origin, sex, sexual orientation, gender, gender identity, gender expression, marital status, familial status, age, receipt of public assistance income, or disability of any person(s). The prohibition on using or relying upon these protected characteristics is properly understood to include a prohibition on using or relying upon demographic information about such characteristics.

There are some limited circumstances under law and USPAP where use of or reliance upon particular characteristics is permitted—i.e., when such use and/or reliance is not prohibited by applicable laws or regulations, and it is essential to the assignment and necessary for credible assignment results.[5]  However, an appraiser who is developing or reporting an opinion of value for residential real property is never permitted to use or rely upon race, ethnicity, or national origin, or the racial, ethnic, or national origin demographics of a geographic area. Such use and/or reliance is prohibited by the FHAct.

A 1977 settlement between the United States Department of Justice (DOJ) and the American Institute of Real Estate Appraisers (AIREA) underscores the importance of this prohibition.[6] The settlement made clear that it is impermissible to "base a conclusion or opinion of value upon the premise that the racial, ethnic or religious homogeneity of the inhabitants of an area or of a property is necessary for maximum value." This same settlement made it clear that, when evaluating neighborhood trends, "racial, religious, and ethnic factors are deemed unreliable predictors of value trends or price variance." This demonstrates that the ETHICS RULE is consistent with antidiscrimination law.

Additional laws such as state and local laws could apply to the appraiser or the appraiser's assignment and expand upon federal prohibitions. It is the appraiser's responsibility to be or become knowledgeable about and comply with all applicable law as a matter of both ethics and competency.[7]

**Researching and Relying on Location and Demographic Data**

When developing an opinion of value for residential real property, appraisers may have many sources of data and information available to them. The information available could include general population trends for a subject property's location, including density and distribution of the population, and could also include demographic information that in some cases provides the ethnicity, race, gender, or sex of the person(s) in a geographic area. However, the simple fact that particular information is available to an appraiser does not mean the information can be used or relied upon when the appraiser is developing and/or reporting their opinion of value. The COMPETENCY RULE requires appraisers to know and follow applicable law, which might prohibit use of certain types of data. Competency also requires that appraisers know which information is needed to develop credible assignment results. Demographic data related to race, ethnicity, and national origin of a subject property's neighborhood is never necessary for credible assignment results when developing or reporting an opinion of value for residential real property.

**Demographic Data and Developing an Appraisal**

When developing an opinion of value for residential real property, a relevant characteristic of the subject property is often its location. Relevant characteristics of a property's location may include the physical, legal, and economic characteristics of the subject property. Standards Rule 1-2(e)(i) states that appraisers are to *"identify... the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including...its location and physical, legal, and economic characteristics..."*

---

4    The FHAct also covers discrimination on the basis of gender identity and sexual orientation in addition to the characteristics listed above. See U.S. Department of Housing and Urban Development, Memorandum re: Implementation of Executive Order 13988 on the Enforcement of the Fair Housing Act, https://www.hud.gov/sites/dfiles/PA/documents/HUD_Memo_EO13988.pdf.

5    See Advisory Opinion 39, *Antidiscrimination Laws and Nondiscrimination*.

6    *United States v. American Institute of Real Estate Appraisers*, 442 F. Supp. 1072 (N.D. Ill. 1977).

7    See Advisory Opinion 39, *Antidiscrimination Laws and Nondiscrimination*.

---

Relevant characteristics of a property's location do not include the protected characteristics of any person or group of persons who may be associated with the property or the appraisal. This includes the property owner, occupants of the property, occupants of any of the nearby properties, potential buyers, the client of the report, etc. Any data or information related to the protected characteristics of individuals or groups may not be used or relied upon when developing an opinion of value, unless the limited exception as set forth in the Nondiscrimination section of the ETHICS RULE applies.[8]

**Pretext and Use of Code Words**

An appraiser violates USPAP's prohibition on pretext when the appraiser refers to something other than a protected characteristic to conceal use of or reliance upon a protected characteristic.[9]  The use of code words in an appraisal report can indicate that an appraiser has engaged in disparate treatment, and pretextually referred to a non-protected characteristic as a way to conceal the appraiser's use of or reliance upon a protected characteristic.

Examples of phrases that can constitute code word evidence of disparate treatment include, but are not limited to, "ghetto," "crime" or "crime-ridden," "inner city," and "blight;" references to "shared values" or "undesirables;" concerns about "personal safety due to 'new people'"; or statements that an area is lacking "pride of ownership."[10] References to public assistance income and Section 8 vouchers can also have a coded meaning.[11]  Whether a code word indicates discrimination depends on the context in which it is used.

**Illustrations:**

1.  An appraiser agrees to perform an assignment to develop an opinion of the market value of a residential property for a financial institution where the intended use is in connection with a mortgage loan. The resulting Appraisal Report states that the subject property is located in a "predominantly Black neighborhood." What concerns could be raised by the appraiser's inclusion of this information in the Appraisal Report?

    Answer: USPAP requires the appraiser to understand which factors are relevant in developing an opinion of value and which are permitted to be used under USPAP and under applicable law, including the FHAct, ECOA, and the Civil Rights Act of 1866. The appraiser may not use factors related to actual or perceived protected characteristics of a geographically defined area to develop an opinion of value, unless permitted under the law and under the exception in the Nondiscrimination section of the ETHICS RULE. The use of or reliance upon race and information about race is never permitted when developing or reporting an opinion of value for residential real property. Therefore, a discussion of race should not be included in the Appraisal Report.[12]

2.  An appraiser agrees to perform an assignment to develop an opinion of the market value of a residential property for a financial institution where the intended use is in connection with a mortgage loan. The resulting Appraisal Report states that the subject property is located in an "ethnically diverse neighborhood." What concerns could be raised by the appraiser's inclusion of this information in the Appraisal Report?

---

8    id.

9    id

10   See FHFA Advisory Bulletin AB 2021-04 - Enterprise Fair Lending and Housing Compliance, https://www.fhfa.gov/SupervisionRegulation/AdvisoryBulletins/AdvisoryBulletinDocuments/AB%202021-04%20Enterprise%20Fair%20Lending%20and%20Fair%20Housing%20Compliance.pdf; *New Orleans Fair Hous. Ctr. v. St. Bernard Parish*, 641 F. Supp. 2d 563, 571-72 (E.D. La. 2009).

11   See Emily Badger, *Time Magazine*, "How Section 8 became a 'racial slur'" (June 15, 2015), https://www.washingtonpost.com/news/wonk/wp/2015/06/15/how-section-8-became-a-racial-slur/; Abby Vesoulis, *Time Magazine*, "'A Mask for Racial Discrimination.' How Housing Voucher Programs Can Hurt the Low-Income Families They're Designed to Help" (Feb. 20, 2020), https://time.com/5783945/housing-vouchers-discrimination/; Antonia Fasanelli & Philip Tegeler, American Bar Association, "Your Money's No Good Here: Combatting Source of Income Discrimination in Housing" (Nov. 30, 2019), https://www.americanbar.org/groups/crsj/publications/human_rights_magazine_home/economic-justice/your-money-s-no-good-here--combatting-source-of-income-discrimin/.

12   In a review of millions of appraisals, the Federal Housing Finance Agency noted, "[t]he racial and ethnic composition of the neighborhood should never be a factor that influences the value of a family's home. Our observation of appraisals suggest that racial and ethnic compositions of a neighborhood are still sometimes included in commentary, clearly indicating the writer thought it was important to establishing value." FHFA, "Reducing Valuation Bias by Addressing Appraiser and Property Valuation Commentary," Dec. 14, 2021, https://www.fhfa.gov/Media/Blog/Pages/Reducing-Valuation-Bias-by-Addressing-Appraiser-and-Property-Valuation-Commentary.aspx.

---

Answer: USPAP requires the appraiser to understand which factors are relevant in developing an opinion of value and which are permitted to be used under USPAP and under applicable law, including the FHAct, ECOA, and the Civil Rights Act of 1866. The appraiser may not use factors related to actual or perceived protected characteristics of a geographically defined area to develop the opinion of value, unless permitted under the law and under the exception in the Nondiscrimination section of the ETHICS RULE. Similar to race and information about race, the use of or reliance upon ethnicity and information about ethnicity is never permitted when developing or reporting an opinion of value for residential real property. Discussion of the ethnicity of the neighborhood, therefore, should not be included in the Appraisal Report.

3. An appraiser agrees to perform an assignment to develop an opinion of the market value of a residential property for a financial institution where the intended use is in connection with a mortgage loan. The resulting Appraisal Report states that the subject property is located in a "crime-ridden area" and is "lacking pride of ownership." What concerns could be raised by the appraiser's inclusion of this language in the Appraisal Report?

Answer: USPAP requires the appraiser to understand which factors are relevant in developing an opinion of value and which are permitted to be used under USPAP and under applicable law, including the FHAct, ECOA, and the Civil Rights Act of 1866. The FHAct does not permit using or relying upon race, ethnicity, or national origin, or racial, ethnic, or national origin demographic information in residential real property appraisal assignments, and such use or reliance therefore is also prohibited by USPAP. USPAP also prohibits the appraiser from using code words as pretext to refer to a protected characteristic. Crime and pride of ownership are not themselves protected characteristics, but here, the language of the Appraisal Report could indicate that the appraiser used these phrases as code words for a protected characteristic such as race. Courts have concluded that certain terms or references may be "nothing more than camouflaged racial expressions."[13]  Both "crime-ridden area" and "pride of ownership" can be understood as coded language that is intended to stand in for protected characteristics such as race and ethnicity. This is especially the case because both the phrase "crime-ridden area" and the idea of "pride of ownership" are subjective, not the type of objective information that should form the basis of an opinion of value. This potentially coded language could be evidence of discriminatory treatment in violation of the FHAct and USPAP.[14]

4. An appraiser agrees to perform an assignment to develop an opinion of the market value of a residential property for a financial institution where the intended use is in connection with a mortgage loan. The resulting Appraisal Report states that the subject property is located in a district named "Little Cuba," which is then described as a "spicy" area. The Appraisal Report also notes that "the businesses located near the residential properties in the subject's neighborhood predominantly serve clients who appear to be immigrants." What concerns could be raised by the appraiser's inclusion of this information in the Appraisal Report?

Answer: USPAP requires the appraiser to understand which factors are relevant in developing an opinion of value and which are permitted to be used under USPAP and under applicable law. The appraiser may not use factors related to actual or perceived protected characteristics of a geographically defined area to develop their opinion of value, unless permitted under the exception in the Nondiscrimination section of the ETHICS RULE.

Some neighborhoods or even towns have legally recorded names that contain words or phrases that refer to a protected characteristic. These include neighborhoods such as "Chinatown," "Greektown," etc. Describing a designated area as "Little Cuba" could be appropriate if it is the legal name of an area, and "Little Cuba" is not being used by the appraiser in order to describe or otherwise communicate the racial or ethnic makeup of the area.[15]

---

13  *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*, 641 F. Supp. 2d. 563, 571 (E.D. La. 2009) (internal quotation marks omitted).

14  FHFA Advisory Bulletin AB 2021-04 - Enterprise Fair Lending and Housing Compliance, https://www.fhfa.gov/SupervisionRegulation/AdvisoryBulletins/AdvisoryBulletinDocuments/AB%202021-04%20Enterprise%20Fair%20Lending%20and%20Fair%20Housing%20Compliance.pdf.

15  The FHFA has explained that factors such as "context" and "historical usage" are relevant to "[w]hether a code word is evidence of disparate treatment." FHFA Advisory Bulletin AB 2021-04 - Enterprise Fair Lending and Housing Compliance, at fn. 21, https://www.fhfa.gov/SupervisionRegulation/AdvisoryBulletins/Pages/Enterprise-Fair-Lending-and-Fair-Housing-Compliance.aspx#footnote21.

Using an adjective such as "spicy" to describe a neighborhood, however, could indicate that the appraiser violated USPAP and applicable antidiscrimination laws and regulations. A word like "spicy" can be understood to serve as a pretext or code word for the racial and/or ethnic makeup of an area. In the context of the other statements in the Appraisal Report, the use of "spicy" can indicate that the appraiser used or relied upon racial or ethnic information in developing and reporting the opinion of value.

Stating the fact that a residential property is located near particular businesses may have been relevant when developing an opinion of value; however, the race and ethnicity of the clients that such businesses serve would be irrelevant. The mention of "immigrants" can reasonably be understood to refer to the national origin, race, and/or ethnicity of individuals, and could indicate that the appraiser inappropriately considered one or more of these protected characteristics in their appraisal in violation of USPAP and applicable laws and regulations.

**GO BACK**

# USPAP FREQUENTLY ASKED QUESTIONS

Case 3:21-cv-00232-DWD    Document 279-5    Filed 03/05/25    Page 221 of 439    Page
ID #15460

# INTRODUCTION

The USPAP Frequently Asked Questions (FAQs) are guidance issued by the Appraisal Standards Board (ASB) to respond to questions raised by appraisers, enforcement officials, users of appraisal services, and the public to illustrate the applicability of USPAP in specific situations and to offer advice from the ASB to help resolve appraisal issues and problems. The advice presented may not represent the only possible solution to the issues discussed and may not be applied equally to seemingly similar situations. USPAP FAQs do not establish new standards or interpret existing standards. The FAQs are not part of USPAP and are approved by the ASB without public exposure and comment.

The ASB periodically issues USPAP Q&As, which are posted on The Appraisal Foundation website (www. appraisalfoundation.org). The USPAP Q&As are issued to inform appraisers, enforcement officials, and users of appraisal services of the ASB responses to questions it receives. The ASB compiles some of the USPAP Q&As into the USPAP FAQs for publication. In addition to incorporating the most recent questions and responses issued by the ASB, the USPAP FAQs are reviewed and updated to ensure that they represent the most recent guidance from the ASB.

GO BACK

# TABLE OF CONTENTS FOR FAQs

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .135

**USPAP COMPOSITION, STRUCTURE, AND COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . .145

1.  Applicable Edition of USPAP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145
2.  Complying with USPAP by Choice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145
3.  USPAP Applicabililty in Valuation for Financial Reporting . . . . . . . . . . . . . . . . . . . . . . . . . 145
4.  Assignment Involving Analysis of Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146
5.  USPAP Compliance as an Instructor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146
6.  Personal Property Appraisal Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 147
7.  USPAP Compliance with Other Valuation Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 147
8.  Differences Between Appraisal and Appraisal Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148
9.  Public Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148

**ETHICS RULE – CONDUCT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .149

10. Don't Agree to Perform the Assignment Unless You Can Appraise for $XXX,000 . . . . . . . . . . . . . . 149
11. Appraiser Coercion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 149
12. Plagiarism . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 149
13. Use of Qualitative Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150
14. Conflicts of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150
15. Disclosing Prior Appraisal of a Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150
16. Appraising a Property More Than Once in Three Years . . . . . . . . . . . . . . . . . . . . . . . . . . . .151
17. Disclosure Requirements When an Appraiser Has Not Performed Services Regarding a Property
    in the Prior Three Years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .151
18. Disclosure of Any Prior Services Regarding the Subject Property, When an Appraiser Has Appraised
    the Property Multiple Times . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 152
19. Disclosure of No Prior Services Performed in Previous Three Years . . . . . . . . . . . . . . . . . . . . 152
20. Disclosure of Any Prior Services Regarding the Subject Property Before Agreeing to Perform
    an Assignment, When the Appraiser Only Works for One Client . . . . . . . . . . . . . . . . . . . . . . . 153
21. Disclosure of Any Prior Services Regarding Services Other Than Appraisal Practice . . . . . . . . . . . . 153
22. Disclosing Prior Services Provided by My Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 153
23. Disclosing Prospective Interest in a Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 154
24. Disclosing Prior Services on Pre-Printed Forms for an Appraisal Report. . . . . . . . . . . . . . . . . . 154
25. Does a Request for a "Final Inspection" Require Disclosure of Prior Services? . . . . . . . . . . . . . . 154
26. Does Using a Property as a Comparable Sale Require Disclosure of Prior Services? . . . . . . . . . . . . . 154
27. Format for Disclosing Prior Services at the Time of Assignment . . . . . . . . . . . . . . . . . . . . . . 154
28. Are Condition and Marketablity Reports Covered by USPAP? . . . . . . . . . . . . . . . . . . . . . . . . . 155
29. Are Condition and Marketablity Reports Covered by USPAP? . . . . . . . . . . . . . . . . . . . . . . . . . 156
30. Unacceptable Assignment Conditions – Nondisclosure of Facts . . . . . . . . . . . . . . . . . . . . . . . 156
31. Does Disclosure of Prior Services Apply to Appraiser or Property? . . . . . . . . . . . . . . . . . . . . 156
32. Disclosure of Prior Services Involving a Partnership . . . . . . . . . . . . . . . . . . . . . . . . . . . 157

**GO BACK**

33.    Disclosure of Prior Services for Multiple Assignments on a Property . . . . . . . . . . . . 157

**ETHICS RULE – MANAGEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .158

34.    Coupons for Price Discounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . 158
35.    Payment of Fees to Be Included on Approved Appraisers List . . . . . . . . . . . . . . 158
36.    Conducting Drawings to Procure Appraisal Assignments . . . . . . . . . . . . . . . . 158
37.    Reducing Appraisal Fees When Transactions Fail to Close . . . . . . . . . . . . . . . 159
38.    Appraisal Fees as Percentages of Value Conclusions . . . . . . . . . . . . . . . . . 159
39.    Appraisal Fee is Contingent on the Appraised Value . . . . . . . . . . . . . . . . . 159
40.    Appraisal Fee Based on Outcome of Assignment . . . . . . . . . . . . . . . . . . . 160
41.    Acting As an Appraiser  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 160
42.    "USPAP Certified" Advertisement . . . . . . . . . . . . . . . . . . . . . . . . . .161
43.    Appraiser's Fees Based on Pending Sale Price . . . . . . . . . . . . . . . . . . . .161
44.    Discounted Appraisal Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . .161
45.    Disclosure of Referral Fee Amounts . . . . . . . . . . . . . . . . . . . . . . . .161
46.    Reciprocal Business Arrangements. . . . . . . . . . . . . . . . . . . . . . . . . 162
47.    Does USPAP Apply If There is No Assignment Fee? . . . . . . . . . . . . . . . . . . 162
48.    Is Disclosure of a Free Comp Check Assignment Required? . . . . . . . . . . . . . . . 162
49.    Appraisal Fee Paid at Close of Financing Transaction . . . . . . . . . . . . . . . . 163
50.    Payment of a Portal Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163
51.    Can Appraisers Perform Comp Check Assignments? . . . . . . . . . . . . . . . . . . 164

**ETHICS RULE – CONFIDENTIALITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . .165

52.    Reporting of Adverse Conditions . . . . . . . . . . . . . . . . . . . . . . . . . 165
53.    Due Process of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165
54.    Disclosing Results of Appraisal Assignments . . . . . . . . . . . . . . . . . . . . 165
55.    "Verifying" Completion of an Appraisal . . . . . . . . . . . . . . . . . . . . . . 166
56.    Appraisal Report Received by Others . . . . . . . . . . . . . . . . . . . . . . . 166
57.    Disclosure of a Prior Assignment . . . . . . . . . . . . . . . . . . . . . . . . . 166
58.    Sample Appraisal Reports and the Ethics Rule . . . . . . . . . . . . . . . . . . . 167
59.    Providing Sample Appraisal Reports . . . . . . . . . . . . . . . . . . . . . . . . 168
60.    Confidentiality and Sample Appraisal Reports . . . . . . . . . . . . . . . . . . . 168
61.    Delivering a Report by Email to a Client . . . . . . . . . . . . . . . . . . . . . 169
62.    Confidentiality and Intended Users. . . . . . . . . . . . . . . . . . . . . . . . 169
63.    Confidentiality and Review Appraisers. . . . . . . . . . . . . . . . . . . . . . . 169
64.    Due Process Under Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . 170
65.    Communicating Confidential Information to a Sworn Peace Officer . . . . . . . . . . . 170
66.    Confidentiality and Peer Review Committees . . . . . . . . . . . . . . . . . . . .171
67.    Confidentiality and Privacy Regulations . . . . . . . . . . . . . . . . . . . . . .171
68.    When Does Appraiser-Client Confidentiality End? . . . . . . . . . . . . . . . . . .171
69.    Copyrighting an Appraisal Report. . . . . . . . . . . . . . . . . . . . . . . . . 172
70.    Selling an Appraisal Firm and Ethical Obligations. . . . . . . . . . . . . . . . . . 172
71.    Purchasing an Appraisal Firm and Ethical Obligations . . . . . . . . . . . . . . . . 173
72.    Providing a Copy of a Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . 173

73.  Physical Characteristics or Assignment Results? . . . . . . . . . . . . . . . . . . . . . . . . . . 173
74.  Physical Characteristics or Assignment Results – Residential Real Property Example . . . . . . . . . . . 174
75.  Physical Characteristics or Assignment Results – Non-Residential Real Property Example . . . . . . . . . 174
76.  Physical Characteristics or Assignment Results – Machinery and Equipment Example . . . . . . . . . . . 175
77.  Physical Characteristics or Assignment Results – Fine Art Example . . . . . . . . . . . . . . . . . . 175
78.  What Are "Reasonable Steps"? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 176

**RECORD KEEPING RULE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **177**
79.  Contents of a Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 177
80.  Disposal of Workfiles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 177
81.  Photocopies of Appraisal Reports in Workfiles . . . . . . . . . . . . . . . . . . . . . . . . . 178
82.  Workfiles for Appraisal Review Assignments . . . . . . . . . . . . . . . . . . . . . . . . . 178
83.  Purging Workfiles at a Client's Request . . . . . . . . . . . . . . . . . . . . . . . . . . . . 178
84.  Workfile Retention with More Than One Appraiser . . . . . . . . . . . . . . . . . . . . . . . 179
85.  Responsibility for Workfile Retention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 179
86.  Trainee Access to Workfiles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 180
87.  Appropriate Workfile Retention and Access Arrangements . . . . . . . . . . . . . . . . . . . . 180
88.  May Access to a Workfile Be Denied? . . . . . . . . . . . . . . . . . . . . . . . . . . . . .181
89.  Access and Retrieval of Workfiles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .181
90.  Signed Certification in True Copies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .181
91.  Creating a Workfile after Report Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . 182
92.  Is a Transcript Required for Oral Report and Testimony? . . . . . . . . . . . . . . . . . . . . . 182
93.  Is a Transcript Required If a Written Appraisal Report Was Prepared? . . . . . . . . . . . . . . . . 182
94.  Record Keeping Requirements for Oral Reports and Testimony . . . . . . . . . . . . . . . . . . 182
95.  Is a Separate Certification Required If a Written Appraisal Report Was Prepared? . . . . . . . . . . . 182
96.  Is a Transcript of the Entire Proceeding Required? . . . . . . . . . . . . . . . . . . . . . . . 182
97.  Electronic Workfile Storage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 183
98.  Adequacy of Workfile Documentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 183
99.  Jurisdictional Exception and Workfile Retention . . . . . . . . . . . . . . . . . . . . . . . . 184
100. Minimum Workfile Retention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 184
101. Workfile Requirements When Communicating Assignment Results . . . . . . . . . . . . . . . . . 184
102. Workfiles Affected by a Natural Disaster . . . . . . . . . . . . . . . . . . . . . . . . . . . 184
103. Maintaining Records for a Deceased Appraiser . . . . . . . . . . . . . . . . . . . . . . . . . 185
104. Government Agency Workfile Retention . . . . . . . . . . . . . . . . . . . . . . . . . . . . 185
105. Workfile Retention for a Judicial Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . 185
106. Retention Requirements for Preliminary Communications after Completion of the Assignment . . . . . . 186

**COMPETENCY RULE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **187**
107. Acquiring Knowledge and Experience to Comply with the Competency Rule . . . . . . . . . . . . . 187
108. Assignment Conditions, Scope of Work Acceptability, and Geographic Competency . . . . . . . . . . 187
109. Continuing Education Courses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 188
110. Competency Statement in the Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 188
111. Errors and Omissions Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 188
112. Appraising after a Natural Disaster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 189

**GO BACK**

**JURISDICTIONAL EXCEPTION RULE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .190

113.   Application of the Jurisdictional Exception Rule  . . . . . . . . . . . . . . . . . . . . 190

114.   USPAP Compliance and Jurisdictional Exception . . . . . . . . . . . . . . . . . . . . 190

115.   When Compliance with USPAP is Precluded by Law or Regulation  . . . . . . . . .191

116.   Probate Court Statute Basing the Appraisal Fee on the Appraised Value . . . . . . . . . . . . . . . . . .191

117.   Appropriate Sources for Jurisdictional Exception  . . . . . . . . . . . . . . . . . . .191

118.   Valuation Methods and Jurisdictional Exception Rule  . . . . . . . . . . . . . . . . . 192

119.   Client Requirement to Disregard Market Value Changes Prior to Effective Date . . . . . . . . . . . 192

120.   Client Requirement to Disregard Linking Opinion of Value to a Specific Exposure Time . . . . . . . . . . 193

121.   Is a "Waiver Valuation" a Jurisdictional Exception? . . . . . . . . . . . . . . . . . . 193

122.   Client Requirement to Assume No Contamination Exists  . . . . . . . . . . . . . . . 194

123.   Jurisdictional Exception and Confidentiality . . . . . . . . . . . . . . . . . . . . . . 194

**APPRAISAL DEVELOPMENT – CLIENT ISSUES.** . . . . . . . . . . . . . . . . . . . . . . .195

124.   Payment by a Party Other Than the Client  . . . . . . . . . . . . . . . . . . . . . . . 195

125.   Difference Between Clients and Intended Users . . . . . . . . . . . . . . . . . . . . 195

126.   Appraisal Management Company as Authorized Agent for a Client . . . . . . . . . . . 195

127.   Can an Appraisal Management Company Be the Client? . . . . . . . . . . . . . . . . 196

128.   Client Cannot Be Identified  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 196

129.   Subsequent User Requests a Reliance Letter . . . . . . . . . . . . . . . . . . . . . . 196

130.   Readdress or Transfer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

131.   Readdressing with Lender Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

132.   Identification of Intended Users  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 197

133.   Client is the Only Intended User . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 198

134.   Appraising Without Knowing the Intended Use or Intended User  . . . . . . . . . . . 198

135.   Are Borrowers Intended Users? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 198

136.   Identifying Intended Users by Type. . . . . . . . . . . . . . . . . . . . . . . . . . . . 199

137.   Engaged Directly by the Homeowner  . . . . . . . . . . . . . . . . . . . . . . . . . . 199

138.   Client Approval for Future Assignments . . . . . . . . . . . . . . . . . . . . . . . . . 199

139.   Request to Modify a Completed Appraisal Report . . . . . . . . . . . . . . . . . . . .200

140.   Shelf Life of an Appraisal or Appraisal Report  . . . . . . . . . . . . . . . . . . . . . .200

141.   Use of Distress Sales in Real Property Market Value Appraisals . . . . . . . . . . . . . 201

142.   Assignment Conditions Versus Client Conditions. . . . . . . . . . . . . . . . . . . . 201

**APPRAISAL DEVELOPMENT – APPRAISAL DATES** . . . . . . . . . . . . . . . . . . . . . **202**

143.   Effective Date of the Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .202

144.   Appraisal Dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .202

145.   Citation of Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .202

146.   Changing the Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .202

147.   Date of Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .203

148.   Date of Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .203

149.   Revision to the Contract Price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .203

150.   Proposed Improvements – Current and Prospective Value Opinions . . . . . . . . . .204

151.   Effective Date and Date of the Report . . . . . . . . . . . . . . . . . . . . . . . . . .204

152.  Competency as of Effective Date of the Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .205
153.  Current and Retrospective Value Opinions within One Report . . . . . . . . . . . . . . . . . . . . . .205
154.  Post-Value Date Information in Retrospective Appraisals . . . . . . . . . . . . . . . . . . . . . . . . .205
155.  Appraisal Based on Current and Prospective Dates of Value . . . . . . . . . . . . . . . . . . . . . . .206
156.  USPAP Compliance in Retrospective Appraisals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .206
157.  Retrospective Appraisal Assignments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .207

**APPRAISAL DEVELOPMENT – SCOPE OF WORK ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 208**

158.  What is Scope of Work? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .208
159.  Applicability of Scope of Work Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .208
160.  Responsibility for the Scope of Work Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .208
161.  Client Specifies Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .208
162.  Alternative Valuation Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .208
163.  Client Request to Limit Scope of Work to New Client Name . . . . . . . . . . . . . . . . . . . . . . . .209
164.  The Impact of Different Clients on Assignment Results with Otherwise Identical Assignment Elements and Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .209
165.  How Credible Assignment Results Are Measured . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 210
166.  Errors of Commission and Omission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .211
167.  Making a Series of Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .211
168.  Changing the Scope of Work after the Report Has Been Submitted . . . . . . . . . . . . . . . . . . . .211
169.  Differing Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .211
170.  Judging the Actions of an Appraiser's Peers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 212
171.  Type and Definition of Value, and Citation of Source . . . . . . . . . . . . . . . . . . . . . . . . . . 212
172.  Market Rent Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 213
173.  Using the Definition of Value Provided . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 213
174.  Sales or Financing Concessions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 213
175.  Intentionally Deflating or Inflating Opinions of Value . . . . . . . . . . . . . . . . . . . . . . . . . . . 214
176.  Measuring Single Family Residences Using the Ansi Standard . . . . . . . . . . . . . . . . . . . . . 214
177.  Exposure Time and Marketing Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214
178.  Marketing Time on Appraisal Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 215
179.  Exposure Time Value Range . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 215
180.  Checking "Stable" vs. "Declining" Property Values . . . . . . . . . . . . . . . . . . . . . . . . . . . . 215
181.  Range of Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 216
182.  More Than One Intended Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 216
183.  Value in Use Request from Federally Regulated Lender . . . . . . . . . . . . . . . . . . . . . . . . . . 216
184.  Inspection of Subject Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 216
185.  Does Inspecting Photographs Constitute a Personal Inspection of a Subject Property? . . . . . . . . . 217
186.  Is it Permissible to Use MLS Photos of Active Listings? . . . . . . . . . . . . . . . . . . . . . . . . . . 217
187.  Is the Cost Approach Necessary for Appraisal of Vacant Land? . . . . . . . . . . . . . . . . . . . . . 217
188.  Improvement Only Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 218
189.  Appraising Only the Underlying Land of an Improved Property . . . . . . . . . . . . . . . . . . . . . . 218
190.  Appraising Physical Segments (5-Acre Portion) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 219
191.  Proposed Improvements – Plans and Specifications Required . . . . . . . . . . . . . . . . . . . . . . 219

**GO BACK**

192. Is an AVM an Appraisal? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 220

193. Appraiser's USPAP Obligations When Using an AVM . . . . . . . . . . . . . . . . . . . 220

194. Uniform Act and Scope of Work. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 220

195. Appraising Large Groups of Similar or Like Items. . . . . . . . . . . . . . . . . . . . . . 221

196. Blockage Discount and Standard 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 221

197. Calculating Blockage Discount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 221

198. Business Valuation Using Asset-Based (Cost) Approach . . . . . . . . . . . . . . . . . 222

199. Allocation of Value Opinions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 222

200. Leased Fee Interest When Intangible Assets Exist . . . . . . . . . . . . . . . . . . . . . 223

201. Purchase Contract is Not Provided to the Appraiser . . . . . . . . . . . . . . . . . . . . 224

202. Availability of Current Agreement of Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . 225

203. Reconciliation of the Approaches to Value . . . . . . . . . . . . . . . . . . . . . . . . . . . 225

204. Adjustments in Sales Comparison Approach . . . . . . . . . . . . . . . . . . . . . . . . . 225

205. Using Predetermined Rules for Market Adjustments (NEW). . . . . . . . . . . . . . . . 226

206. Updating a Prior Assignment with a Different Scope of Work. . . . . . . . . . . . . . . 226

207. Appraisal Update with No Change in Value . . . . . . . . . . . . . . . . . . . . . . . . . . . 226

208. Update of an Appraisal Completed by Another Appraiser. . . . . . . . . . . . . . . . . 227

209. Does a New Assignment Require Starting Over?. . . . . . . . . . . . . . . . . . . . . . . . 227

210. Recertification of Value. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 228

211. Recertification of Value and Appraisal Update . . . . . . . . . . . . . . . . . . . . . . . . 228

212. Appraisers Providing Comps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 228

213. Can Appraisers Perform Comp Check Assignments? . . . . . . . . . . . . . . . . . . . 229

214. Sudden Market Changes Related to Catastrophic Events . . . . . . . . . . . . . . . . . 229

215. Restrictions or Encumbrances on Personal Property . . . . . . . . . . . . . . . . . . . . 230

216. Liens on Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 230

217. Appraising Two Lots as One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 230

218. Impact on Values of Surrounding Properties . . . . . . . . . . . . . . . . . . . . . . . . . . 231

219. Is Turnaround Time an Assignment Condition . . . . . . . . . . . . . . . . . . . . . . . . . 231

220. Inspection Using a Drone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 231

**APPRAISAL DEVELOPMENT − EXTRAORDINARY ASSUMPTIONS AND HYPOTHETICAL CONDITIONS** . . . .**232**

221. Extraordinary Assumptions Compared to Hypothetical Conditions . . . . . . . . . . . 232

222. Hypothetical Conditions Described . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 233

223. When a Hypothetical Condition May Be Used . . . . . . . . . . . . . . . . . . . . . . . . . 233

224. Before Acquisition Value and Standards Rule 1-4(F) . . . . . . . . . . . . . . . . . . . . 233

225. Reporting Use of Extraordinary Assumptions and Hypothetical Conditions . . . . . 234

226. Must a Hypothetical Condition or Extraordinary Assumption Be Labeled? . . . . . . 235

227. Value as If Completed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 235

228. Appraising a Property Not in As-Is Condition . . . . . . . . . . . . . . . . . . . . . . . . . 236

229. Analyzing the Lease When Appraising Fee Simple Interest . . . . . . . . . . . . . . . . 236

230. Definition of Extraordinary Assumption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 237

231. Proposed Construction Employing an Extraordinary Assumption . . . . . . . . . . . . 237

**APPRAISAL DEVELOPMENT – SUBJECT PROPERTY SALES HISTORY** . . . . . . . . . . . . . . . . . . . . . **238**

232.  Multiple Sales or Transfers of the Subject Property   . . . . . . . . . . . . . . . . . . . . . 238

233.  Offers to Purchase Subject Property  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 238

234.  Current Sales Contract is Not Provided   . . . . . . . . . . . . . . . . . . . . . . . . . . . . 239

235.  Pending Sales as Comparables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 239

236.  Subject Property as a Comparable Sale  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 239

237.  Five-Year Sales History as an Assignment Condition . . . . . . . . . . . . . . . . . . . . . 240

238.  Sale and Transfer History for Part of a Property . . . . . . . . . . . . . . . . . . . . . . . . 240

239.  Appraisal Without Knowing Contract Price   . . . . . . . . . . . . . . . . . . . . . . . . . . 241

240.  Analysis of Sale and Transfer History for Comparable Sales  . . . . . . . . . . . . . . . . 241

241.  Transfer History Analysis for Deed in Lieu of Foreclosure . . . . . . . . . . . . . . . . . 241

242.  Obligation to Analyze Prior Listings of Subject Property . . . . . . . . . . . . . . . . . . 242

243.  Proper Analysis of Agreement of Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 242

244.  Value Conclusion Below Contract Price  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 242

245.  Obligation to Analyze Withdrawn or Expired Listings   . . . . . . . . . . . . . . . . . . . 243

246.  Listing History in a Retrospective Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . 243

247.  Sales History Analysis for Condition and Marketability Reports . . . . . . . . . . . . . . 244

248.  Subject Property Sales History and Standards Rule 1-5(B) . . . . . . . . . . . . . . . . . . 244

249.  Sale and Transfer History in Machinery and Equipment Appraisal Assignment   . . . . 244

250.  Changes in Composition of Partnerships or Corporations  . . . . . . . . . . . . . . . . . . 245

**APPRAISAL REPORTING – CERTIFICATION AND SIGNATURES** . . . . . . . . . . . . . . . . . . . . . . **246**

251.  Reason for Signed Certification   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 246

252.  Use of Certification with Form 1004d/442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 247

253.  Changing the Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 247

254.  Revising Appraisal Form Certification to Disclose Prior Services . . . . . . . . . . . . . . 247

255.  Requirement for Signing Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 247

256.  Signature on Letter of Transmittal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248

257.  Multiple Signatures on Appraisal Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248

258.  Signature Authorization  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 248

259.  Providing Signature to Create a Signature File . . . . . . . . . . . . . . . . . . . . . . . . . 249

260.  Losing Control of a Digital Signature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 249

261.  Responsibility of an Appraiser Signing as a Supervisor  . . . . . . . . . . . . . . . . . . . 249

262.  Affixing Another Appraiser's Signature (NEW) . . . . . . . . . . . . . . . . . . . . . . . . . 250

263.  Signing Digital (Electronic) Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 250

264.  Business Entity Signing an Appraisal Report  . . . . . . . . . . . . . . . . . . . . . . . . . . 250

265.  Significant Appraisal Assistance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 250

266.  Using a Data Entry Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 251

267.  Have I Provided Significant Appraisal Assistance? . . . . . . . . . . . . . . . . . . . . . . . 251

268.  Reporting Significant Appraisal Assistance in an Oral Report   . . . . . . . . . . . . . . . 252

269.  Does USPAP Define Supervisory Appraiser? . . . . . . . . . . . . . . . . . . . . . . . . . . . 253

270.  Reporting Significant Real Property Appraisal Assistance . . . . . . . . . . . . . . . . . . . 253

271.  Relying on the Reports of Others . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 253

**GO BACK**

272.  Disagree with Supervisor on Value Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . .254

273.  Does the Certification on the Uniform Residential Appraisal Report (URAR) Form Also Extend
       to the Market Conditions Addendum? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .254

274.  Multi-Discipline Certification – Real Property Appraiser . . . . . . . . . . . . . . . . . . . .255

275.  Significant Appraisal Assistance – Personal Property Appraiser . . . . . . . . . . . . . . . .256

276.  Use of Certification with Form 1004d/442 – Appraisal Update . . . . . . . . . . . . . . . . .256

277.  Certification with Multiple Appraisers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .257

278.  Personal Property Appraisal Assignment Involving Multiple Appraisers  . . . . . . . . . . . .257

279.  Does USPAP Require Disclosure by a Non-Appraiser? . . . . . . . . . . . . . . . . . . . . .257

280.  Signing and Labeling of Supplemental Certifications . . . . . . . . . . . . . . . . . . . . . .258

281.  Labeling Supplemental Certifications  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .258

282.  Prior Services by Staff Appraisers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .258

283.  Significant Appraisal Assistance by Staff Appraisers . . . . . . . . . . . . . . . . . . . . . .259

**APPRAISAL DEVELOPMENT – USE AND FORMAT ISSUES** . . . . . . . . . . . . . . . . . . . . . . . **260**

284.  Ownership of Appraisal Reports  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .260

285.  Electronic Report Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .260

286.  Label Different from Reporting Options  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .261

287.  Fannie Mae Form 1004  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .261

288.  Is a Letter of Transmittal Part of an Appraisal Report? . . . . . . . . . . . . . . . . . . . . .261

289.  Copy of License in Appraisal Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .262

290.  Does USPAP Require Identifying Appraisal Credentials? . . . . . . . . . . . . . . . . . . . .262

291.  Are Instant Messages or Text Messages Appraisal Reports? . . . . . . . . . . . . . . . . . .262

292.  Reporting Appraisal Updates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .262

293.  Fannie Mae Update Report Form 1004d/Freddie Mac Form 442 . . . . . . . . . . . . . . . .262

294.  Citing the Source of the Value Definition and Fannie Mae Form 1004/Freddie Mac Form 70. . . . . . . . . .263

295.  Legal Description . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .263

296.  Property Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .263

297.  Why Report Scope of Work?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .264

298.  Reporting Work Not Done in an Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . .264

299.  Explaining the Exclusion of Approaches  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .264

300.  Separate Scope of Work Section in the Report . . . . . . . . . . . . . . . . . . . . . . . . . .265

301.  Identification of the Client in Appraisal Reports  . . . . . . . . . . . . . . . . . . . . . . . . .265

302.  Disclosure of the Intended User in a Report. . . . . . . . . . . . . . . . . . . . . . . . . . . .265

303.  Disclosure of the Intended Use in a Report . . . . . . . . . . . . . . . . . . . . . . . . . . . .266

304.  Multiple Intended Uses in the Same Appraisal Report . . . . . . . . . . . . . . . . . . . . . .266

305.  Oral Reports and Record Keeping  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .267

306.  Oral Appraisal Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .267

307.  Appraisal Report Form Software . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .268

308.  Paper Copies of Electronically Transmitted Reports . . . . . . . . . . . . . . . . . . . . . . .268

309.  Appraisal Report Forms Compliance with USPAP. . . . . . . . . . . . . . . . . . . . . . . . .268

310.  Application of Appraisal Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . .268

311.  Discounted Cash Flow (DCF) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .269

312. Content of Restricted Appraisal Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 270
313. Appraiser Qualifications in Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 270
314. Providing a Draft of a Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 270
315. Developing an Unnecessary Valuation Approach  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 271
316. Altering Appraisal Report Photographs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 271
317. Communicating Assignment Results without an Appraisal Report . . . . . . . . . . . . . . . . . 271
318. Identifying Intended Users by Name in a Restricted Appraisal Report  . . . . . . . . . . . . . . 272

**APPRAISAL REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **273**
319. When do Standards 3 and 4 Apply? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 273
320. Geographic Competency in Appraisal Reviews . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 273
321. Post-Valuation Date Information in Appraisal Reviews  . . . . . . . . . . . . . . . . . . . . . . . . . 273
322. Reviewer Disagrees with Value Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 274
323. Reviewer Concurs with Value Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 274
324. Appraisal Review and State Appraiser Boards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 275
325. Reading Appraisal Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276
326. Reviewing Two Appraisals on the Same Property  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276
327. Review Report on Multiple Appraisal Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276
328. Appraisal Review for a State Appraiser Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276
329. Reviewing an Appraisal Review Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 277
330. Scope of Work in Appraisal Review Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 277
331. Reviewing a Portion of an Appraisal Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 277
332. Changing the Value Opinion without the Appraiser's Consent . . . . . . . . . . . . . . . . . . . . 277
333. Reviewer's Own Opinion of Value and Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . . 278
334. Discrediting the Original Appraiser's Work  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 278
335. Reviewer Citation of USPAP Non-Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 278
336. Review Appraiser Bias . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 279
337. "Rebuttals" and Appraisal Reviews . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 279
338. Is Compliance with Standards 3 and 4 Required When Submitting a Complaint? . . . . . . . 280
339. Uniform Act and the Review of Low Value Acquisition Appraisal Reports  . . . . . . . . . . . . 280
340. Effective Date That Differs from the Work Under Review . . . . . . . . . . . . . . . . . . . . . . . . 281
341. Additional Certification in an Appraisal Review Report . . . . . . . . . . . . . . . . . . . . . . . . . 281
342. Review for an Ethics Committee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282
343. Definition of Value in Appraisal Review Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282
344. Reviewer Highlighting the Positive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 282
345. May Reviewer Say an Appraisal Lacks Analysis? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 283
346. Developing an Opinion of Reasonable Exposure Time . . . . . . . . . . . . . . . . . . . . . . . . . 283

**OTHER SERVICES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **284**
347. Valuation Service Involving Advocacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 284
348. Feasibility Studies and Appraisal Practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 284
349. Replacement Cost Estimate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 285

**GO BACK**

# USPAP COMPOSITION, STRUCTURE, AND COMPLIANCE

## 1. APPLICABLE EDITION OF USPAP

**Question:** The new edition of USPAP became effective January 1, 2024. I prepared an appraisal with an effective date in December 2023; however, my date of report was in January 2024. Which edition of USPAP applies – the 2020-23 edition or the edition with an effective date of January 1, 2024?

**Response:** Appraisers must comply with the USPAP edition that is in effect as of the date of the report. The USPAP edition with an effective date of January 1, 2024, applies because the date of the report was on or after January 1, 2024. The effective date of the appraisal has no bearing on which edition of USPAP applies.

## 2. COMPLYING WITH USPAP BY CHOICE

**Question:** I have been asked to complete an appraisal assignment for a client who has no policy regarding compliance with USPAP. As an appraiser, may I still comply with USPAP on this particular assignment?

**Response:** Yes. The PREAMBLE states:

> *USPAP does not establish who or which assignments must comply.*

In addition, the ETHICS RULE states:

> *An appraiser must comply with USPAP when obligated by law or regulation, or by agreement with the client or intended users. In addition to these requirements, an individual should comply any time that individual represents that he or she is performing the service as an appraiser.*

So, it is clear that even in an assignment where compliance is not required of an individual who is acting as an appraiser, not only may the appraiser comply, the appraiser should comply.

Refer to Advisory Opinion 21, *USPAP Compliance*, for further guidance.

## 3. USPAP APPLICABILILTY IN VALUATION FOR FINANCIAL REPORTING

**Question:** I am an appraiser in a firm that performs valuations of business interests and assets (both tangible and intangible) for financial reporting purposes in accordance with Financial Accounting Standards Board (FASB) standards. Does USPAP apply to valuations for financial reporting purposes?

**Response:** USPAP does not establish who or what assignments must comply with USPAP. Such requirements are established by law, regulation, or agreement with the client. Additionally, certain professional organizations require that their members comply with USPAP.

Therefore, regarding **who** must comply: Individuals providing appraisals (defined in USPAP as an opinion of value) who fall under one of the above requirements must comply with USPAP in valuations for financial reporting.

And, regarding **what assignments** must comply: Appraisals that are required by law to comply with USPAP must comply regardless of whether the individual performing the appraisal would otherwise be required to comply. In some states, it is mandatory for real estate appraisals (an opinion of value of real estate) to comply with USPAP, no matter what the intended use.

Additionally, regardless of the intended use of the appraisal, individuals who hold themselves out as appraisers should comply.

It is important to note that, Fair Value assignments performed in compliance with Accounting Standards Codification (ASC) 805, *Business Combinations* issued by the Financial Accounting Standards Board, are often referred to as allocations. However, the asset values determined in these assignments are appraisals as defined in USPAP because they are opinions of value. Therefore, these allocations must comply when the appraiser, or the assignment, is required by law, regulation, agreement of the client, or when the appraiser belongs to a professional organization that requires compliance. In addition, any individuals holding themselves out to be appraisers should comply, even when not required to do so.

### 4.   ASSIGNMENT INVOLVING ANALYSIS OF LEASES

**Question:**   **An investment firm hired an appraiser to abstract leases, input the data into a lease-by-lease analysis software program, estimate market rents and expenses, estimate the discount rate, run ten discounted cash flows, and provide a value using the Income Capitalization Approach. The appraiser completed the assignment, including providing a conclusion of market value, and delivered the electronic lease-by-lease analysis file to the client. Does USPAP apply to this service?**

**Response:**   Yes. This service is an appraisal. In order to be in compliance with USPAP, the appraiser must observe the development and reporting requirements applicable to a real property appraisal assignment (STANDARDS 1 and 2). It is not possible to determine from the information provided whether the appraiser properly developed his or her assignment results. However, it does appear that the reporting of the assignment results fails to comply with STANDARD 2. USPAP prescribes the minimum content requirements for two real property appraisal reporting options: Appraisal Report and Restricted Appraisal Report. The communication of solely a lease-by-lease analysis file does not satisfy the reporting requirements of USPAP.

### 5.   USPAP COMPLIANCE AS AN INSTRUCTOR

**Question:**   **In addition to my job as an appraiser, I spend a significant amount of my professional time as an instructor of appraisal courses and seminars. One of the prerequisites for my teaching position is that I must also be a practicing appraiser. Am I subject to USPAP when I am teaching appraisal courses?**

**Response:**   Yes. Since you are acting in the role of an appraiser in these teaching assignments, you are engaged in appraisal practice, which is defined in USPAP as:

> *Valuation services performed by an individual acting as an appraiser, including **but not limited to** appraisal and appraisal review.* (Bold added for emphasis)

While USPAP does not include Standards Rules for teaching assignments, all services performed as part of appraisal practice must comply with USPAP. The portions of USPAP that apply generally to appraisal practice include the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

See Advisory Opinion 21, *USPAP Compliance*, for discussion of the application of USPAP in valuation services.

**6.    PERSONAL PROPERTY APPRAISAL REQUIREMENTS**

**Question:**  **I'm a personal property appraiser, and I've been asked to donate my professional services to help raise funds for a charitable organization. The charity wants to hold an event where individuals can bring in their personal property items and, for a nominal fee that is paid to the charity, receive an oral report of my opinion as to the value of their item(s). This appears to be similar to television shows where people bring in their personal items to be valued. If I decide to participate, would my opinions be considered appraisals and if so, how could I comply with USPAP in performing these assignments?**

**Response:**  USPAP defines appraisal as:

*the act or process of developing an opinion of value; an opinion of value.*

Therefore, the opinions you describe would be appraisals.

To comply with USPAP, a personal property appraiser would have to comply with the requirements of STANDARD 7 and STANDARD 8, in addition to the applicable Rules (e.g., the ETHICS RULE, the COMPETENCY RULE, and the SCOPE OF WORK RULE). This means the appraiser would have to perform the level of research and analyses required to produce credible assignment results (given the intended use). Since the appraiser would be communicating the appraisal as an oral report, the report must address (to the extent that it is both possible and appropriate) the substantive matters of an Appraisal Report. In addition, the appraiser would have to prepare a workfile as required by the RECORD KEEPING RULE.

These television shows may make it appear that the appraiser is providing his or her appraisal off the cuff and not in compliance with USPAP. However, it is more likely the appraiser has been provided with the personal property item to be appraised prior to the actual taping of the show. The appraiser may also be providing the property owner with a written appraisal report, although it may not be discussed during the television show.

Therefore, it is possible the appraiser is rendering a USPAP-compliant appraisal and report, even if it does not appear that way during the airing of the show.

See Advisory Opinion 21, *USPAP Compliance,* for further guidance.

**7.    USPAP COMPLIANCE WITH OTHER VALUATION STANDARDS**

**Question:**  **I have been asked to perform an appraisal that complies with USPAP and with valuation standards from an international appraisal organization. If my appraisal complies with USPAP, will it automatically comply with other valuation standards as well?**

**Response:**  No. Although there are similarities among all major appraisal standards, it is impossible to say that compliance with USPAP ensures compliance with any other standards. It would be necessary to review the actual content of the valuation standards in question to determine whether different actions would be necessary to comply with those standards.

The ASB worked with the International Valuation Standards Council (IVSC) to create a "bridge document" that provides guidance to appraisers performing USPAP-compliant appraisals on how to comply with the International Valuation Standards at the same time. This document is available free of charge at www.appraisalfoundation.org.

### 8.    DIFFERENCES BETWEEN APPRAISAL AND APPRAISAL REPORT

**Question:**    **I have heard some very experienced appraisers and appraisal clients use the terms appraisal and appraisal report interchangeably. I know they are each defined separately in USPAP; what is the difference between the two?**

**Response:**    It is important to understand that USPAP distinguishes an appraisal from an appraisal report. An appraisal is an opinion of value. An appraisal report is the communication of an appraisal, which is transmitted to the client upon completion of an assignment. In other words, the appraisal is the opinion itself, while the appraisal report is the communication of that opinion to the client.

### 9.    PUBLIC TRUST

**Question:**    **The expression "public trust" is used in USPAP. What is public trust and who or what is the public in the USPAP context?**

**Response:**    USPAP mentions public trust three times. The PREAMBLE states that the purpose of USPAP is to "... promote and maintain a high level of public trust in appraisal practice by establishing requirements for appraisers." The PREAMBLE also states "The appraiser's responsibility is to protect the overall public trust and it is the importance of the role of the appraiser that places ethical obligations on those who serve in this capacity." Lastly, the ETHICS RULE reinforces this concept with "An appraiser must promote and preserve the public trust inherent in appraisal practice by observing the highest standards of professional ethics."

While USPAP does not define public trust, it is clear from the context that it refers to the need for the public to be able to have confidence that services provided by an appraiser are performed competently and in a manner that is independent, impartial, and objective.

The public, whose trust the appraiser must promote and preserve, exists on several levels. The most direct is the appraiser's client. In addition to the client, any additional intended users would be part of the appraiser's public. Finally, it could be said that the general public is also part of that public. If the general public cannot depend on appraisers to act as independent professionals and provide credible results, the economy could suffer. There is a distinct ethical obligation to act on behalf of the public interest, not out of self-interest.

**GO BACK**

# ETHICS RULE – CONDUCT

### 10. DON'T AGREE TO PERFORM THE ASSIGNMENT UNLESS YOU CAN APPRAISE FOR $XXX,000

**Question:** I received an appraisal request that says: "If you can't appraise the property for $XXX,000, you must not agree to perform the appraisal assignment." How should I respond to this appraisal request?

**Response:** This request would be seen as an attempt to violate the appraiser's independence, and the request itself may be illegal. Agreeing to perform such an assignment would violate the <u>Management</u> section of the ETHICS RULE, which states, in part:

> *An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*
>
> 1. **the reporting of a predetermined result (e.g., opinion of value);**
> 2. *a direction in assignment results that favors the cause of the client;*
> 3. *the amount of a value opinion;*
> 4. *the attainment of a stipulated result (e.g., that the loan closes or taxes are reduced); or*
> 5. *the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.* (Bold added for emphasis)

You could respond to this request with the following statement: "I cannot perform the assignment with this condition because it violates professional ethics. You should be aware that I must develop the appraisal before I will know the results. I can only perform the assignment if you remove the predetermined value requirement."

See Advisory Opinion 19, *Unacceptable Assignment Conditions in Real Property Appraisal Assignments*, for additional guidance on appraisal requests with conditions.

### 11. APPRAISER COERCION

**Question:** Does USPAP require an appraiser to certify in the appraisal report that he or she has not been coerced to provide predetermined results?

**Response:** No. However, such a statement would not be inconsistent with the requirements of USPAP. Standards Rule 2-3 essentially requires the appraiser to certify that he or she has not been coerced, without specifically using that term. For example, Standards Rule 2-3 requires the appraiser to certify, among other things, that:

> *my engagement in this assignment was not contingent upon developing or reporting predetermined results.*

It would be unethical to affirm this statement in the certification if the appraiser had been coerced into providing predetermined assignment results.

### 12. PLAGIARISM

**Question:** Is plagiarism considered unethical or improper?

**Response:** Yes. Plagiarism is unethical. The <u>Conduct </u>section of the ETHICS RULE states that an appraiser must not use or communicate a report known by the appraiser to be misleading or fraudulent. Presenting an appraisal report as yours when all or part is the work of someone else is clearly misleading.

### 13. USE OF QUALITATIVE TERMS

**Question:** **Does USPAP permit appraisers to use terms that reflect a scale, such as high, low, good, or the like?**

**Response:** Yes. USPAP does not prohibit the use of such qualitative terms in an appraisal report. However, appraisers should exercise care to avoid comments in a report that may be perceived as biased or illegally discriminatory. Factual descriptions and qualitative terms allow the users of a report to draw their own conclusions. The use of terms that reflect a scale such as high, low, good, fair, poor, strong, weak, rapid, slow, average or the like should also provide contextual information that properly explains the frame of reference and relative position of the subject property on the scale. For example, if absorption is stated as "rapid," the context of the rating should also be cited ("rapid" relative to what?).

Additional guidance is provided in Advisory Opinion 40, *Antidiscrimination and the Research, Analysis, and Reporting of Location Data, including Demographics, for Residential Real Property Appraisal Assignments*.

### 14. CONFLICTS OF INTEREST

**Question:** **The principals of a local mortgage company propose to acquire an appraisal firm and have the appraisal firm complete assignments for the mortgage company. Is this a conflict of interest for the appraisers completing assignments for the mortgage company?**

**Response:** An appraiser should review the ETHICS RULE and Standards Rule 2-3 when completing appraisal assignments in situations where the appraisal company that engages (by employment or contract) the appraiser is owned by the client.

It is important to note that USPAP does not prohibit the agreement to perform an assignment in this specific situation. In an appraisal assignment developed under STANDARD 1 and reported under STANDARD 2, an appraiser must specify the particulars in a situation where he or she has any present or prospective interest with respect to the parties involved in the property that is the subject of the report.

The engagement of an appraiser by an appraisal company that is owned by the client or by owners of the client does not, in and of itself, mean that the appraiser has an interest or bias with respect to the property or parties involved. If the appraiser has an interest but can provide the service in an ethical, unbiased manner, then the appraiser can agree to perform the assignment as long as the appraiser is competent and properly discloses the interest in accordance with Standards Rule 2-3.

If the appraiser's interest in the property or the parties involved in the assignment prevents the appraiser from providing an unbiased service, then the appraiser must not perform the assignment because it would be in violation of the ETHICS RULE and parts of the appraiser's certification in Standards Rule 2-3.

### 15. DISCLOSING PRIOR APPRAISAL OF A PROPERTY

**Question:** **I occasionally receive requests to appraise a property that I have appraised in the past. Since the ETHICS RULE requires me to disclose, if known prior to agreeing to perform the assignment, or upon discovery, all prior services that I performed within the three years immediately preceding the agreement to perform the assignment. Isn't disclosing that I previously performed an appraisal on the property a violation of an appraiser's responsibility under the <u>Confidentiality</u> section of the ETHICS RULE?**

**Response:** Generally, no. The <u>Confidentiality</u> section of the ETHICS RULE prohibits, with some exceptions, the disclosure of confidential information or assignment results prepared for a client. The mere fact that an appraiser appraised a property is not confidential information as defined in USPAP. However, the appraiser must be careful not to disclose confidential information from a previous assignment in the new assignment.

### 16.  APPRAISING A PROPERTY MORE THAN ONCE IN THREE YEARS

**Question:  I am aware of the USPAP requirements related to disclosing to a client for an assignment, any services I performed in the three years prior to agreeing to perform that assignment. I am also aware of the USPAP requirement for the certification in the report, to contain specific information about those prior services. However, I have been told that based on this requirement, USPAP prohibits me from appraising a property more than once within a three-year period. Is this true?**

Response:  No. The requirements in the <u>Conduct</u> section of the ETHICS RULE exist to inform the client of services that the appraiser has performed within the three years prior to agreeing to perform the assignment USPAP places no restrictions on how many times an appraiser can appraise a specific property.

It should be noted that some appraisers may contractually agree with a client not to appraise a property for another client within a specified time frame, but agreements of this type are business decisions made by appraisers and are not USPAP requirements.

### 17.  DISCLOSURE REQUIREMENTS WHEN AN APPRAISER HAS NOT PERFORMED SERVICES REGARDING A PROPERTY IN THE PRIOR THREE YEARS

**Question:  I am aware of the disclosure requirements in the <u>Conduct</u> section of the ETHICS RULE to disclose any services I performed regarding the subject property (or the work under review) within the prior three years. If I have not performed any such services, am I required to make that disclosure to the client at any time during the assignment, and, in any resulting written appraisal or appraisal review report?**

**Response:  The ETHICS RULE requirement is related to a communication with the client (about prior services the appraiser did perform), that will occur before or during the assignment, as well as in a certification for a resulting appraisal or appraisal review report. If no service was performed, the minimum USPAP requirement is that the client be made aware of the appraiser not having performed any prior services based on the disclosure in the certification of the resulting appraisal or appraisal review report.**

Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3 require the signed certification to include a statement indicating one of two things. The appraiser must state if they have or have not performed prior services. Therefore, if no services were performed, the appraiser would state this in the certification.

Examples of appropriate disclosures for (1) an appraisal and (2) an appraisal review when the appraiser has performed no services within the past three years are, as follows:

(1) I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

(2) I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of the work under review within the three-year period immediately preceding the agreement to perform this assignment.

18. **DISCLOSURE OF ANY PRIOR SERVICES REGARDING THE SUBJECT PROPERTY, WHEN AN APPRAISER HAS APPRAISED THE PROPERTY MULTIPLE TIMES**

**Question:** **If I have appraised a property multiple times within the previous three years, do I have to disclose the number of appraisal services? (e.g., "I have appraised the subject property three times during the previous three years immediately preceding the agreement to perform this assignment.")**

**Response:** In most cases the answer is yes. However, there are some situations, particularly for mass appraisals and appraisals of inventory or large quantities of machinery and equipment, when enumerating prior services for each item may be unreasonable.

According to the Conduct section of the ETHICS RULE any prior services regarding the subject property must be disclosed to the client. And according to Standards Rules 2-3(a), 4-3(a), 6-3(a), 8-3(a), and 10-3(a) the prior services must also be specified in the certification. Thus, in most cases the appraiser must both disclose the number of prior services and specify the nature of the service (e.g., as an appraiser, or in some other capacity such as a broker, mortgage broker, builder, etc.).

An example of a certification disclosure when there have been three prior appraisals is as follows:

> *I have performed three appraisals of the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.*

Below is an example of an appropriate certification disclosure of all prior services when there are so many assets with prior services when it is unreasonable, in the context of the assignment, to enumerate them. The example shows how disclosure of prior services can be accomplished with a description:

> *I have previously performed appraisals of most of the 200 aircraft that are the subject of this report twice per year during the three-year period immediately preceding my agreement to perform this assignment. The exceptions are approximately 85 that I have appraised more frequently than twice per year due to refinancing, and approximately 10 which have never been appraised because they were acquired this year.*

19. **DISCLOSURE OF NO PRIOR SERVICES PERFORMED IN PREVIOUS THREE YEARS**

**Question:** **I know USPAP requires an appraiser, prior to agreeing to perform an assignment (or if discovered at any time during the assignment), to disclose to the client, any prior services performed on a property within the last three years. Then, regarding the disclosure of prior services USPAP requires, a certification in appraisal reports that contains the following statement, "I have performed no prior services regarding the subject property within three years of the effective date of this report." Is it acceptable to base the three years from the effective date of the appraisal?**

**Response:** No. The Conduct section of the ETHICS RULE specifies the three-year time frame to be immediately preceding the agreement to perform the assignment:

> *If known prior to agreeing to perform an assignment, and/or if discovered at any time during the assignment, an appraiser must disclose to the client, and in each subsequent report certification:*
>
> *any services regarding the subject property performed by the appraiser, as an appraiser or in any other capacity,* **within the three-year period immediately preceding the agreement to perform the assignment**. (Bold added for emphasis)

If the effective date of the appraisal and the three-year period immediately preceding the agreement to perform the assignment are identical, this statement may be technically accurate.

However, if an appraiser indicates they have performed no services, the USPAP requirement is this statement must be a reflection of (and be identified as such) the time period that is the three-years immediately preceding the agreement to perform the assignment.

### 20. DISCLOSURE OF ANY PRIOR SERVICES REGARDING THE SUBJECT PROPERTY BEFORE AGREEING TO PERFORM AN ASSIGNMENT, WHEN THE APPRAISER ONLY WORKS FOR ONE CLIENT

**Question:** **I am a staff appraiser for a company and only complete appraisals for my employer's (the company's) internal use. Am I required to inform the company that I have previously completed an appraisal within the three-year period when the company is already aware of it?**

**Response:** If you consistently correspond with the same person in the company when completing subsequent assignments regarding the same property, the risk of misleading that person is probably minimal. However, the USPAP requirement for disclosure both to the client and in any subsequent certification is the same, regardless of the working relationship with any individual or client.

While it is not included in your question, there is also the possibility that within that three-year period, you may have performed appraisal services regarding that property for a different client, or you may have performed services while acting in some other capacity.

### 21. DISCLOSURE OF ANY PRIOR SERVICES REGARDING SERVICES OTHER THAN APPRAISAL PRACTICE

**Question:** **If I have performed a service other than appraisal practice, for example, if I was a general contractor on a property within the three years prior to agree to perform an appraisal on the same property, do I have to describe this specific service or merely state a prior service was performed?**

**Response:** You must disclose to the client specifics about the prior service you performed regarding the property, and this information must be included in the report certification. This disclosure is not limited to just services provided as part of appraisal practice. Therefore, each service must be disclosed to the client and information about that service must appear in the certification.

Examples of appropriate disclosures in these cases are as follows:

*I was a general contractor for the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.*

OR

*I have performed a brokerage service regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.*

If you have provided both of these services, an example of the appropriate disclosure is as follows:

*I have performed a general contracting service and a brokerage service regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.*

### 22. DISCLOSING PRIOR SERVICES PROVIDED BY MY COMPANY

**Question:** **If the firm that employs me as an appraiser has provided leasing or property management services in the past three years for the subject property, must this be disclosed?**

**Response:** Not necessarily. The ETHICS RULE requires disclosure of services "provided by the appraiser." However, if an appraiser believes that the provision of a service by the appraiser's firm or other related entity may be relevant, he or she *should* disclose that information to a potential client.

### 23.  DISCLOSING PROSPECTIVE INTEREST IN A PROPERTY

**Question:**  **If I will be conducting an auction of the subject property after the appraisal, does this have to be disclosed?**

**Response:**  Yes. This is an example of a "current or prospective interest in the subject property." USPAP requires that such an interest be disclosed in the certification and prior to agreement to perform an assignment or upon discovery during the assignment.

### 24.  DISCLOSING PRIOR SERVICES ON PRE-PRINTED FORMS FOR AN APPRAISAL REPORT

**Question:**  **Most of my assignments are completed using common residential appraisal report forms. I am concerned that my clients do <u>not</u> allow changes to the certification on the report forms. The <u>Conduct</u> section of the ETHICS RULE requires that I disclose prior to agreeing to perform the assignment and in the report certification whether prior services were performed regarding the subject property. Does this mean that I will not be allowed to appraise a property for these clients if I have performed a service regarding that property in the previous three years?**

**Response:**  USPAP compliance is the appraiser's responsibility. While deletion or modification of client-imposed certifications may not always be allowed, most clients allow *additional* certifications that do not constitute material alterations to the appraisal report. In the circumstances where a USPAP required certification element is missing from the client-imposed certifications, it would be necessary for the appraisal report to contain a supplemental certification which includes the remaining required certification element. Adding supplemental certifications in these circumstances will be necessary unless and until such forms are revised to reflect the requirements of Standards Rule 2-3.

### 25.  DOES A REQUEST FOR A "FINAL INSPECTION" REQUIRE DISCLOSURE OF PRIOR SERVICES?

**Question:**  **If I performed an appraisal that was "subject" to completion of repairs, and subsequently received a request to perform a "final inspection" confirming that the work had been completed, am I required to disclose that I previously appraised the property even if it is obvious to the client that I've done so?**

**Response:**  A "final inspection" is **not** an extension of the original assignment unless it is part of the original agreement for services. A subsequent request would be a *new assignment* and as such requires disclosure in accordance with the <u>Conduct</u> section of the ETHICS RULE. This holds true even if it may be obvious to the client that you've already previously performed an appraisal on the property.

### 26.  DOES USING A PROPERTY AS A COMPARABLE SALE REQUIRE DISCLOSURE OF PRIOR SERVICES?

**Question:**  **If I perform an appraisal and use a property as one of my comparable sales, and later receive a request to appraise the property that was used as a comparable sale, must I disclose I "performed a service" on that property because I used it as a comparable sale?**

**Response:**  No. Using a property as a comparable sale in an appraisal does not constitute "performing a service" regarding that property. Therefore, a subsequent request to appraise the comparable sale would not require disclosure under the <u>Conduct</u> section of the ETHICS RULE.

### 27.  FORMAT FOR DISCLOSING PRIOR SERVICES AT THE TIME OF ASSIGNMENT

**Question:**  **May the appraiser make an oral disclosure to the client of prior services performed on the property prior to agreeing to perform an assignment? May it be made in an email to the client?**

GO BACK

**Response:**   USPAP does not specify how the disclosure upon acceptance or discovery must be made. It may be appropriate in some cases to provide an initial oral disclosure. If the client decides to proceed, it may be appropriate that the appraiser's disclosure be restated in writing. One way to accomplish this is by including it in a letter of engagement. In other cases, an email would be appropriate.

The RECORD KEEPING RULE requires that the appraiser's workfile include "all other data, information, and documentation necessary to…show compliance with USPAP." So, the disclosure prior to the agreement or upon discovery must be documented in the appraiser's workfile.

### 28.   ARE CONDITION AND MARKETABLITY REPORTS COVERED BY USPAP?

**Question:**   **I know appraisers who consistently conclude that the market value of any property they appraise is equal to the contract sale price. In doing so, they facilitate sales and financing of sales, which is apparently what keeps their clients happy. Is this a violation of USPAP?**

**Response:**   A contract sale price can be a good indicator of a property's market value, and it may be logical and reasonable for the appraiser to conclude that they are the same. However, this is not always the case. In some situations, a contract price will exceed what is typical in a market. In other situations, a contract price will be less than what is typical. A contract sale price, while a significant piece of market data, must not become a target in an appraisal assignment. Rather, competent analysis of relevant and credible market data must be the appraiser's basis for a market value conclusion.

If an appraiser purposefully concludes the contract sale price of every appraised property equals market value, particularly when a competent analysis of credible market data indicates otherwise, the appraiser's impartiality, objectivity and independence would appear to be compromised. The ETHICS RULE clearly prohibits such a practice. The <u>Conduct</u> section of the ETHICS RULE includes the following statements:

*An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests.*

*An appraiser must not perform an assignment with bias.*

*An appraiser must not advocate the cause or interest of any party or issue.*

*An appraiser must not agree to perform an assignment that includes the reporting of predetermined opinions and conclusions.*

*An appraiser must not use or communicate a report or assignment results known by the appraiser to be misleading or fraudulent.*

*An appraiser must not knowingly permit an employee or other person to communicate a report or assignment results that are misleading or fraudulent.*

The <u>Management</u> section of the **ETHICS RULE** also states that:

*An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*

1.   **the reporting of a predetermined result (e.g., opinion of value);**
2.   **a direction in assignment results that favors the cause of the client;**
3.   *the amount of a value opinion;*
4.   *the attainment of a stipulated result (e.g., that the loan closes or taxes are reduced); or*
5.   *the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.* (Bold added for emphasis)

An appraiser must develop an opinion of market value impartially and objectively. An appraiser purposefully support a contract sale price violates the ETHICS RULE.

### 29. ARE CONDITION AND MARKETABLITY REPORTS COVERED BY USPAP?

**Question:** **I am a state certified appraiser and was recently asked by a client to perform a condition and marketability report. A value conclusion is not requested as part of the assignment; however, I must sign the report as an appraiser. Is this assignment covered by USPAP?**

**Response:** Yes. Since the condition and marketability of a property directly pertain to its value, this is a valuation service. Furthermore, because you are being asked to perform the service as an appraiser, the assignment involves appraisal practice. USPAP defines appraisal practice as:

> *valuation services performed by an individual acting **as an appraiser**, including but not limited to appraisal and appraisal review.*

> Comment: *Appraisal practice is provided only by appraisers, while valuation services are provided by a variety of professionals and others. The terms appraisal and appraisal review are intentionally generic and are not mutually exclusive. For example, an opinion of value may be required as part of an appraisal review assignment.* (Bold added for emphasis)

All services performed as part of appraisal practice must comply with USPAP. The portions of USPAP that apply generally to appraisal practice include the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE (See Advisory Opinion 21, *USPAP Complianc*e for further advice.)

### 30. UNACCEPTABLE ASSIGNMENT CONDITIONS – NONDISCLOSURE OF FACTS

**Question:** **I have an assignment that involves a tract of land that is improved with two structures. However, the client has requested that I appraise the underlying land and only one of the two structures, without mentioning the other structure. Is it ethical to not disclose the presence of the second structure?**

**Response:** No. The Conduct section of the ETHICS RULE states:

> *An appraiser must not use or communicate a report or assignment results known by the appraiser to be misleading or fraudulent.*

> *An appraiser must not knowingly permit an employee or other person to communicate a report or assignment results that are misleading or fraudulent.*

In the situation described, performing an appraisal without disclosing the existence of both structures in the report would be misleading.

### 31. DOES DISCLOSURE OF PRIOR SERVICES APPLY TO APPRAISER OR PROPERTY?

**Question:** **An appraiser performed a review of an appraisal report for 123 Main Street. Seven months later, he was asked to review another appraisal report regarding the same property prepared by the same appraiser. The appraiser is unsure if he must disclose to the client that he provided a prior service regarding the subject property. He knows an appraisal review is the development and communication regarding the quality of another appraiser's work. He thinks a review assignment is not about a property, it is about an appraiser. Is the reviewer correct that the subject of an appraisal review is the appraiser and no disclosure of any prior services is necessary?**

**Response:** No. An appraisal review assignment is not about an appraiser, but the work of the appraiser. As such, an appraisal review is a prior service. Parts of Standards Rule 3-2 provides additional insight into developing an appraisal review. In developing an appraisal review, the reviewer must:

GO BACK

(c) identify the purpose of the appraisal review, including whether the assignment includes the development of the reviewer's own opinion of value or review opinion related to the work under review.

(d) identify the work under review and the characteristics of that work which are relevant to the intended use and purpose of the appraisal review, including:

(iv) the physical, legal, and economic characteristics of the property, properties, property type(s), or market area in the work under review.

Comment: The subject of an appraisal review assignment may be all or part of a report, a workfile, or a combination of these, and may be related to an appraisal or appraisal review assignment.

### 32. DISCLOSURE OF PRIOR SERVICES INVOLVING A PARTNERSHIP

**Question:** **I am a business appraiser. Two years ago I appraised a 5% limited partnership interest for Estate A. Now I am appraising a 7% limited partnership interest for Giftor B. Estate A and Giftor B are brothers. Estate A and Giftor B are founding partners of the partnership and have not moved interests in the partnership amongst themselves.**

**Since interest A and interest B have never been owned by the same person within the partnership, am I required to disclose any prior services since I did not previously value the Giftor B interest? Although it is the same partnership, I believe they are different interests; therefore, is there a requirement to disclose my previous appraisal as a prior service?**

**Response:** Yes. By definition, a Limited Partnership interest is "property." A common definition of property includes "something tangible or intangible to which the owner has legal title." Therefore, if any services performed within the past three years regarding the *Partnership* (including any interest in the Partnership) must be disclosed in accordance with the Conduct section of the ETHICS Rule and Standards Rule 10-3.

### 33. DISCLOSURE OF PRIOR SERVICES FOR MULTIPLE ASSIGNMENTS ON A PROPERTY

**Question:** **A lender contracts with AMC A for an appraisal. The subject property is currently under contract for over $3,000,000. Given the price and the lender's high-dollar policy, the lender also orders a second appraisal from AMC B. Each AMC unknowingly engages the same appraiser on the same day. The appraiser subsequently completes and delivers two reports, one for AMC A and one for AMC B. The reports are identical except for the AMC name.**

**The lender receives both reports and is very upset because neither report discloses any prior services had been performed. When contacted, the appraiser states that since both orders were received on the same day, his statements in each report that there had been no prior services were both correct. Is the appraiser correct?**

**Response:** No. One assignment was performed prior to the other. Therefore, in the second assignment the appraiser would have to comply with the USPAP requirements to disclose the first assignment as a prior service.

 

# ETHICS RULE – MANAGEMENT

### 34.  COUPONS FOR PRICE DISCOUNTS

**Question:**   **Is it a violation of USPAP for an appraiser to offer a 10% discount coupon as a marketing tool to attract potential clients?**

**Response:**   No. The use of a coupon as a marketing tool would not be a violation of the ETHICS RULE. However, a coupon for a reduced fee would be a thing of value connected to the procurement of an assignment. Therefore, proper disclosure must be made in the certification of the report and in any transmittal letter in which value conclusions are stated.

The <u>Management</u> section of the ETHICS RULE states:

> *An appraiser must disclose that he or she paid a fee or commission, or gave a thing of value in connection with the procurement of an assignment.*

> <u>*Comment*</u>*: The disclosure must appear in the certification and in any transmittal letter in which conclusions are stated; however, disclosure of the amount paid is not required. In groups or organizations engaged in appraisal practice, intra-company payments to employees for business development do not require disclosure.*

### 35.  PAYMENT OF FEES TO BE INCLUDED ON APPROVED APPRAISERS LIST

**Question:**   **Is it ethical for an appraiser to pay a fee to be included on a lender's approved appraiser list?**

**Response:**   Yes. It is ethical for appraisers to pay a fee to be included on a lender's approved appraiser list provided the appraiser discloses payment of a fee in his or her appraisal reports.

The <u>Management</u> section of the ETHICS RULE states that:

> *An appraiser must disclose that he or she paid a fee or commission, or gave a thing of value in connection with the procurement of an assignment.*

> <u>*Comment*</u>*: The **disclosure must appear in the certification and in any transmittal letter in which conclusions are stated;** however, disclosure of the amount paid is not required. In groups or organizations engaged in appraisal practice, intra-company payments to employees for business development do not require disclosure.* (Bold added for emphasis)

### 36.  CONDUCTING DRAWINGS TO PROCURE APPRAISAL ASSIGNMENTS

**Question:**   **Is it a violation of USPAP for an appraisal firm to conduct a random drawing with prizes and allow clients a certain number of entries in the drawing that is based on the number of appraisals ordered within a certain period of time?**

**Response:**   This is not a violation if proper disclosure is made. The payment of **undisclosed** fees, commissions or things of value in the procurement of appraisal assignments is unethical, as stated in the <u>Management</u> section of the ETHICS RULE:

> *An appraiser must disclose that he or she paid a fee or commission, or gave a thing of value in connection with the procurement of an assignment.*

---

**GO BACK**   USPAP Guidance: Frequently Asked Questions
© The Appraisal Foundation

REFERENCES    INTRODUCTION    Standards

An entry into a drawing would be considered a thing of value. The Comment further states that:

*The disclosure must appear in the certification and in any transmittal letter in which conclusions are stated; however, disclosure of the amount paid is not required.*

### 37.  REDUCING APPRAISAL FEES WHEN TRANSACTIONS FAIL TO CLOSE

**Question:**  **Is it ethical for an appraiser to offer a client a reduced fee on an appraisal if the client's loan does not close?**

**Would the result be different if the client agreed to pay extra for other assignments?**

**Response:**  Neither practice would be ethical. Offering a client a reduced fee on an appraisal if the client's loan does not close is a violation of the ETHICS RULE. The Management section of the ETHICS RULE states:

*An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*

1. *the reporting of a predetermined result (e.g., opinion of value);*
2. *a direction in assignment results that favors the cause of the client;*
3. *the amount of a value opinion;*
4. ***the attainment of a stipulated result (e.g., that the loan closes or taxes are reduced); or***
5. ***the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.*** (Bold added for emphasis)

Standards Rule 2-3(a), 4-3(a), 6-3(a), 8-3(a), or 10-3(a), as applicable, also requires an appraiser to state that their compensation for completing the assignment is not contingent upon a subsequent event. Being paid an extra amount for other assignments does not change this result.

### 38.  APPRAISAL FEES AS PERCENTAGES OF VALUE CONCLUSIONS

**Question:**  **Is it acceptable for an appraisal fee to be based on a percentage of the value conclusion?**

**Response:**  No. The Management section of the ETHICS RULE states:

*An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*

1. *the reporting of a predetermined result (e.g., opinion of value);*
2. *a direction in assignment results that favors the cause of the client;*
3. ***the amount of a value opinion;***
4. *the attainment of a stipulated result (e.g., that the loan closes or taxes are reduced); or*
5. *the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.* (Bold added for emphasis)

This is reiterated in the signed certification (Standards Rule 2-3, 4-3, 6-3, 8-3, and 10-3) that must be included in each appraisal or appraisal review report.

### 39.  APPRAISAL FEE IS CONTINGENT ON THE APPRAISED VALUE

**Question:**  **A potential client has asked me to complete a form indicating what my appraisal fees would be for different assignments. The form asks me to indicate my appraisal fees according to appraised value, e.g., to list the fee for assignments with appraised values between $100,000 and $299,000, $300,000 to $499,000, etc. Is it a violation of USPAP to quote fees in this manner?**

**Response:**  Yes. This is in violation of USPAP. Completing and submitting such a form to a potential client establishes a compensation arrangement for assignments that is contingent on the amount of the value opinion. This is prohibited by the Management section of the ETHICS RULE, which states, in part:

> *An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*
>
> *1. the reporting of a predetermined result (e.g., opinion of value);*
> *2. a direction in assignment results that favors the cause of the client;*
> ***3. the amount of a value opinion;***
> *4. the attainment of a stipulated result (e.g., that the loan closes or taxes are reduced); or*
> *5. the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.* (Bold added for emphasis)

### 40.  APPRAISAL FEE BASED ON OUTCOME OF ASSIGNMENT

**Question:**  **I am aware of some appraisers who perform property tax assessment appeal assignments where their fee is based on a percentage of the tax savings to the property owner. Doesn't USPAP prohibit appraisers from agreeing to perform assignments where the fee is based on a specific outcome?**

**Response:**  Yes. The Management section of the ETHICS RULE states, in part:

> *An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*
>
> *1. the reporting of a predetermined result (e.g., opinion of value);*
> *2. a direction in assignment results that favors the cause of the client;*
> *3. the amount of a value opinion;*
> ***4. the attainment of a stipulated result*** *(e.g., that the loan closes, or taxes are reduced); or*
> *5. the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.* (Bold added for emphasis)

### 41.  ACTING AS AN APPRAISER

**Question:**  **I know that appraisers are prohibited from agreeing to perform appraisal assignments in which the fee is contingent upon the attainment of a stipulated result, such as a reduction in property taxes. However, I've heard of some appraisers who believe that they are able to perform such assignments, claiming that they are not "acting as an appraiser." Are these appraisers correct?**

**Response:**  USPAP only applies to individuals when they are performing as an appraiser. If an individual is providing this service in some other role, the individual's USPAP obligation would be to not misrepresent his or her role. If an individual performs a *valuation service* which is outside of appraisal practice, he or she may be able to perform such a service without complying with USPAP, subject to applicable laws and regulations. It is extremely important, however, for all state licensed or certified appraisers to fully understand the laws and regulations related to their state appraiser credentials; **most states require their credentialed appraisers to comply with USPAP when engaged in appraisal practice**, which would prohibit the appraiser from agreeing to perform assignments where the fee is contingent upon attainment of a stipulated result.

GO BACK

### 42. "USPAP CERTIFIED" ADVERTISEMENT

**Question:** **Recently I have seen numerous advertisements from individuals who may have completed a USPAP course and describe themselves as "USPAP Certified Appraisers," or their reports as "USPAP Certified Appraisals." Is this an actual credential, and if not, is that wording misleading?**

**Response:** There is no such credential. The use of the expression "USPAP Certified Appraiser" is misleading. Completing a USPAP course does not entitle one to call oneself a USPAP Certified Appraiser.

One requirement for an appraisal or appraisal review is that the report include the appraiser's certification that: to the best of his or her knowledge and belief the work was performed *"in conformity with the Uniform Standards of Professional Appraisal Practice."* The use of language such as "USPAP Certified Appraisal" could be taken by intended users to mean that there was some independent certification of compliance. If that could be inferred from the language used, this would also be misleading.

### 43. APPRAISER'S FEES BASED ON PENDING SALE PRICE

**Question:** **I'm aware that an appraiser's fee cannot be based on the amount of the appraiser's value conclusion. However, does USPAP allow an appraiser's fee to be based on the amount of the owner's estimate or a pending sale price of the subject property?**

**Response:** USPAP does not prohibit an appraiser's fee from being based on an owner's estimate, a pending sale price of the subject property, loan amount, or any other factor outside the appraiser's control.

This is in contrast to a fee based on the amount of the appraiser's opinion of value, which is within the appraiser's control. A fee arrangement based on the appraiser's opinion of value violates the ETHICS RULE.

### 44. DISCOUNTED APPRAISAL FEES

**Question:** **Is it a violation of USPAP to offer reduced appraisal fees for clients that send me a large volume of business? Could I also offer a discount for the method of payment, such as collecting the fee from the borrower at the time of inspection?**

**Response:** An appraiser may establish his or her fees based on a number of factors, including the amount of business received, business relationships, method of payment, and client-specific requirements. However, appraisers must ensure that they comply with the Management section of the ETHICS RULE.

### 45. DISCLOSURE OF REFERRAL FEE AMOUNTS

**Question:** **The Management section of the ETHICS RULE requires an appraiser to disclose *fees or commissions paid, or things of value given* in connection with the procurement of an assignment. If a referral fee was paid in conjunction with an assignment, must the amount of the fee be disclosed, or is it sufficient to simply disclose that a fee was paid?**

**Response:** Disclosing the fact that a payment was made in the appraisal certification and any transmittal letter where the conclusions are stated is sufficient to meet the requirement. However, this is a minimum requirement and does not prohibit full disclosure of the amount of the fee.

## 46.  RECIPROCAL BUSINESS ARRANGEMENTS

**Question:**  **A new bank client recently sent me a letter acknowledging that my firm is approved to perform appraisal assignments for their company. It goes on to state that we are now preferred providers and expresses the bank's desire to embark on a mutually beneficial long-term relationship. The letter ends with a solicitation for my firm's banking business as part of this mutually beneficial relationship. I would like to make them happy because they could provide my firm a great deal of business. If I bring my banking business to this company, while I'm engaged as an appraiser, would I be violating USPAP?**

**Response:**  The answer to this question depends on whether the bank's approval of your firm as a preferred provider is conditional on you moving your banking business to that bank. The <u>Management</u> section of the ETHICS RULE states:

> *An appraiser must disclose that he or she paid a fee or commission, or gave a thing of value in connection with the procurement of an assignment.*

> <u>*Comment:*</u> *The disclosure must appear in the certification and in any transmittal letter in which conclusions are stated; however, disclosure of the amount paid is not required. In groups or organizations engaged in appraisal practice, intra-company payments to employees for business development do not require disclosure.*

If the lender has stated that your firm can only have their appraisal business if you bank with them, this relationship must be disclosed as described in the ETHICS RULE.

However, if the client is merely soliciting your business as it would any other potential customer, and you subsequently moved your banking business to that bank, there is no requirement in USPAP to disclose your banking relationship.

## 47.  DOES USPAP APPLY IF THERE IS NO ASSIGNMENT FEE?

**Question:**  **I am an appraiser who performs appraisal and appraisal review assignments, and I am required to comply with USPAP. I have been asked to perform one such assignment without charging a fee. Is my requirement to comply with USPAP impacted if I do not charge a fee?**

**Response:**  No. The applicability of USPAP is not affected by the amount of the fee, or lack of a fee.

## 48.  IS DISCLOSURE OF A FREE COMP CHECK ASSIGNMENT REQUIRED?

**Question 1:**  **If I perform a free comp check assignment and my client subsequently asks me to perform a full (or traditional) assignment on the same property, do I have to disclose the free comp check assignment as having provided a thing of value to procure the new assignment?**

**Response:**  No. The <u>Management</u> section of the ETHICS RULE states, in part:

> *An appraiser must disclose that he or she paid a fee or commission, or gave a thing of value in connection with the procurement of an assignment.*

Since USPAP prohibits the second assignment from being contingent upon the first, the free comp check could not be considered part of procuring the second assignment. Disclosure of the free comp check assignment would not be required as a "thing of value." However, the <u>Conduct</u> section of the ETHICS RULE requires disclosure of all prior services performed related to the subject property within the prior three years.

GO BACK

An appraiser may provide a free comp check. However, an appraiser must not provide a free comp check and the pursuant appraisal if the engagement was contingent upon developing or reporting predetermined results.

**Question 2:** **Must I also disclose that this comp check was a prior service in the subsequent assignment?**

**Response:** Yes. The comp check was a prior service and must be disclosed to the client at the time the appraiser agrees to perform the new assignment. The prior service must also be disclosed in the report certification.

## 49. APPRAISAL FEE PAID AT CLOSE OF FINANCING TRANSACTION

**Question:** **I have a potential lending client that wants to arrange for my appraisal fees to be paid at the closing of each financing transaction. Does USPAP permit this fee arrangement?**

**Response:** USPAP does not address the time frame for payment of fees. In the situation described there must be a clear agreement that the fee cannot depend on the closing of the financing transaction. Agreeing to perform an assignment where the appraisal fee is paid *only* upon successful closing of the transaction is a violation of the <u>Management</u> section of the ETHICS RULE:

> *An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*
>
> *1.  the reporting of a predetermined result (e.g., opinion of value);*
> *2.  a direction in assignment results that favors the cause of the client;*
> *3.  the amount of a value opinion;*
> **4.  the attainment of a stipulated result (e.g., that the loan closes or taxes are reduced); or**
> **5.  the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.** (Bold added for emphasis)

One way appraisers can avoid any ambiguity is by having a written agreement with the client detailing the manner in which the appraisal fee will be paid if the transaction does not close.

## 50. PAYMENT OF A PORTAL FEE

**Question:** **For an appraisal assignment, the client requires me to deliver the appraisal report using a portal delivery system. The system requires me to pay a fee to transmit the appraisal report. Does USPAP require the portal fee to be disclosed in the report?**

**Response:** No. The payment of a fee to use a portal is not connected to the procurement of an assignment. Payment of a portal fee is not an inducement. The client who uses the portal typically indicates that they require delivery of the assignment via a portal when offering the assignment to the appraiser in the engagement process. This agreed-upon delivery method is similar to other conditions such as fee, due date and appraisal form type.

The obligation to use a portal is similar to requiring the appraiser to deliver the report via overnight delivery with a specified number of hard copies, or requiring that the appraiser deliver the file electronically in XML format via email. In both examples the cost of overnight shipping, printing, paper, etc. or the cost of buying a software solution that can produce a file in XML format would not require disclosure.

There are many examples of obligations or contractual terms that are part of an assignment but do not require disclosure, such as:

- Electronic delivery in a specified method or format (computer, internet, software)
- Fees associated with receiving electronic payment
- Number of hard copies of color printed photographs of the subject property (requires a camera, film, photo-processing/printing costs)
- Report delivery via an overnight courier

### 51. CAN APPRAISERS PERFORM COMP CHECK ASSIGNMENTS?

**Question:** **Does USPAP allow appraisers to perform comp check assignments?**

**Response:** Yes. However, the appraiser would have to ensure that receiving a full appraisal assignment is not contingent upon the result of the comp check assignment. The <u>Management</u> section of the ETHICS RULE states, in part:

*An appraiser must not agree to perform an assignment, or have a compensation arrangement for an assignment, that is contingent on any of the following:*

1. *the reporting of a predetermined result (e.g., opinion of value);*
2. *a direction in assignment results that favors the cause of the client;*
3. *the amount of a value opinion;*
4. *the attainment of a stipulated result (e.g., that the loan closes, or taxes are reduced) ; or*
5. ***the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose.*** (Bold added for emphasis)

**GO BACK**

# ETHICS RULE – CONFIDENTIALITY

### 52. REPORTING OF ADVERSE CONDITIONS

**Question:** **I just inspected a property and found an adverse condition. I informed my client (a bank) and was told not to proceed because the client cannot lend on such property. Under USPAP, am I obligated to inform any other party, such as the city or county health department?**

**Response:** No. USPAP does not contain a specific requirement to report the existence of the adverse condition. However, there may be some state or local law or regulation that applies.

### 53. DUE PROCESS OF LAW

**Question:** **I am a personal property appraiser that specializes in the appraisal of coins and currency. I am required, by federal law, to report United States counterfeit coins and currency to the U.S. Secret Service. In reporting these counterfeit coins and currency, I am also required under federal law to provide them with the name and contact information of my client. Would disclosing my client's name under these circumstances be a jurisdictional exception under USPAP?**

**Response:** No, this issue does not constitute a jurisdictional exception. The <u>Confidentiality</u> section of the ETHICS RULE in USPAP prohibits an appraiser from *disclosing confidential information* (as defined in USPAP). However, it is not a violation of USPAP to disclose the name of the appraiser's client. Exceptions would be if the client's name qualified as *confidential information* (as defined in USPAP), or if the appraiser contractually agreed with the client <u>not</u> to disclose the client's name.

Even if the appraiser agreed not to disclose the name of the client, the <u>Confidentiality</u> section of the ETHICS RULE permits the appraiser to disclose the client's name to "such third parties as may be authorized by due process of law." If federal law mandates an appraiser to communicate confidential information, the appraiser must comply with that law.

### 54. DISCLOSING RESULTS OF APPRAISAL ASSIGNMENTS

**Question:** **I have been asked by my client's business associate for information relating to an appraisal report I prepared for my client. Can I disclose the results of an appraisal assignment to parties other than the client?**

**Response:** You can, but *only* if you receive authorization from the client before sharing assignment results with the client's associate. The <u>Confidentiality</u> section of the ETHICS RULE states, in part:

*An appraiser must protect the confidential nature of the appraiser-client relationship.*

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

- *the client;*
- ***parties specifically authorized by the client;***
- *state appraiser regulatory agencies;*
- *third parties as may be authorized by due process of law; or*
- *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.* (Bold added for emphasis)



## 55.  "VERIFYING" COMPLETION OF AN APPRAISAL

**Question:**  **I have received inquiries from various companies regarding appraisals I have completed for others. Typically, I receive a letter that includes the address of a property I previously appraised, along with the effective date of my appraisal, and my appraised value. The letter asks me to confirm that the information agrees with my records, and also asks me to confirm that my appraisal was performed without violating any appraiser independence requirements. Since the company requesting the information was not my client, does USPAP allow me to comply with such requests for information?**

**Response:**  No. Unless you have received permission from your client, you may not communicate assignment results or confidential information (both, as defined in USPAP) to this third party (or any other entity that your client did not authorize).

Acknowledging the fact that you performed an appraisal on a property is not prohibited by USPAP. However, in this instance, acknowledging assignment results or confidential information without permission from the client is prohibited.

There are also instances where appraisers contractually agree with some clients to not disclose the fact that an appraisal was performed; in such cases the appraiser's contractual obligation would preclude the appraiser from disclosing even the fact that an appraisal was performed.

## 56.  APPRAISAL REPORT RECEIVED BY OTHERS

**Question:**  **I was recently contacted by a lender regarding an appraisal I had performed for another client. The lender had somehow obtained a copy of my appraisal report and wanted me to answer some questions. However, this lender was not my original client and was not named as an intended user. Are there any USPAP prohibitions against discussing my appraisal with this lender?**

**Response:**  Yes. USPAP prohibits the appraiser from communicating *assignment results or confidential information* (as defined in USPAP) to anyone other than the client and parties specifically authorized by the client (with the exception of those authorized by due process of law, state appraiser regulatory agencies, and a duly authorized professional peer review committee under certain conditions). Even if the lender who had contacted the appraiser was identified as an intended user in the original appraisal report, that lender is not part of the appraiser-client relationship. Therefore, authorization from the client would be needed if that lender wanted to discuss *assignment results or confidential information*.

Barring an agreement between the appraiser and the original client prohibiting disclosure of any information pertaining to the assignment, the appraiser may confirm that he or she performed an appraisal on the subject property, and may communicate anything other than *assignment results* (which include the appraiser's opinions and conclusions, in addition to the value conclusion) or *confidential information* (as defined in USPAP).

## 57.  DISCLOSURE OF A PRIOR ASSIGNMENT

**Question:**  **As a condition of engagement, a financial institution requires that I disclose any prior appraisals I have completed on the subject property. If I disclose that I have previously appraised the subject property, am I violating USPAP?**

**Response:**  Disclosing the fact that you have previously appraised the property is permitted, **and required by USPAP as explained in the following paragraph**, except in the case when an appraiser has agreed to keep the mere occurrence of a prior assignment confidential.

GO BACK

The <u>Conduct</u> section of the ETHICS RULE states, in part:

> **If known prior to agreeing to perform an assignment, and/or if discovered at any time during the assignment, an appraiser must disclose to the client, and in each subsequent report certification:**
>
> *any current or prospective interest in the subject property or parties involved; and any services regarding the subject property performed by the appraiser, as an appraiser or in any other capacity, within the **three-year period immediately preceding the agreement to perform the assignment**. (Bold added for emphasis)*

There are some cases in which the appraiser is asked by the client not to reveal that he or she has appraised that particular property. In such cases, the fact that the appraiser previously appraised the property is confidential information.

If the occurrence of a prior appraisal is confidential, and disclosure of prior appraisals is a condition of a potential new assignment or a requirement of USPAP, the appraiser must decline the new assignment because the appraiser could not make the requested disclosure.

## 58.  SAMPLE APPRAISAL REPORTS AND THE ETHICS RULE

**Question:**  **I am a fee appraiser currently seeking to get on the approved list for a prospective client. In order to be considered for approval, this lender requires appraisers to provide sample appraisal reports performed within the past year. Is there a way that I can accomplish this without violating USPAP?**

**Response:**  In order to provide this information an appraiser must satisfy the <u>Confidentiality</u> section of the ETHICS RULE. This section states:

> *An appraiser must protect the confidential nature of the appraiser-client relationship.*
>
> *An appraiser must act in good faith with regard to the legitimate interests of the client in the use of confidential information and in the communication of assignment results.*
>
> *An appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment.*
>
> *An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*
>
> * *the client;*
> * *parties specifically authorized by the client;*
> * *state appraiser regulatory agencies;*
> * *third parties as may be authorized by due process of law; or*
> * *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.*

The <u>Comment</u> further explains that if all essential elements of confidential information are removed through redaction or the process of aggregation, client authorization is not required for the disclosure of the remaining information, as modified.

The appraiser in this case has three options:

1.  Decline the request to provide the information, or
2.  Obtain authorization from the client of each sample appraisal report, or
3.  Provide sample reports, but redact all information that should not be provided to anyone other than the client, such as confidential information or assignment results.

### 59. PROVIDING SAMPLE APPRAISAL REPORTS

**Question:** **Recently I've heard that some appraisers are using a questionable technique to provide sample appraisal reports for prospective clients. These appraisers will redact all confidential information from the report (as required to comply with the** Confidentiality **section of the ETHICS RULE in USPAP) and send the redacted sample report to a prospective client, but then will follow-up with an additional e-mail that provides the client with all of the information that had been redacted from the sample report. Is this practice acceptable?**

**Response:** No. Although the confidential information and assignment results are not being communicated simultaneously with the initial submission of the sample report, they are nonetheless being communicated in the subsequent e-mail transmission.

The Confidentiality section of the ETHICS RULE does not permit communicating confidential information and assignment results without the client's consent, even if that information is provided in a separate communication.

### 60. CONFIDENTIALITY AND SAMPLE APPRAISAL REPORTS

**Question:** **I have found that many prospective clients request samples of my appraisal reports. I'm concerned that I would be in violation of appraiser-client confidentiality by providing them. To alleviate this problem, I'm considering including the following disclaimer in the fine print of my reports:**

**"The appraiser reserves the right to use this report in its entirety as sample work for the purpose of soliciting prospective clients unless written refusal is received from the client."**

**Does USPAP allow me to do this?**

**Response:** No. The client, not the appraiser, determines who may receive the appraisal report. The Confidentiality section of the ETHICS RULE states, in part:

*An appraiser must protect the confidential nature of the appraiser-client relationship.*

*An appraiser must act in good faith with regard to the legitimate interests of the client in the use of confidential information and in the communication of assignment results.*

*An appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment.*

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

- *the client;*
- *parties specifically authorized by the client;*
- *state appraiser regulatory agencies;*
- *third parties as may be authorized by due process of law; or*
- *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.*

Including a statement indicating that the report may be used as a sample does not constitute client authorization to distribute copies of the report.

One solution is to obtain client authorization to use each report as a work sample. An alternative solution may be to redact all confidential information from the report before providing it as a sample. The Comment to the Rule states:

GO BACK

*When all confidential elements of confidential information, and assignment results are removed through redaction or the process of aggregation, client authorization is not required for the disclosure of the remaining information, as modified.*

## 61. DELIVERING A REPORT BY EMAIL TO A CLIENT

**Question:** **I have been told that since email is not secure, delivering reports to my clients by email violates the confidentiality requirements of USPAP. Does emailing a report violate USPAP?**

**Response:** No. It is the opinion of the Appraisal Standards Board that sending reports via email does not violate the confidentiality requirements in USPAP.

In all assignments the appraiser and the client should agree to a delivery method, and should understand any security risks associated with the delivery method. Whether a report is sent by government mail service, private mail service, email, courier or some other mechanism, there is always some risk that the security of the original document may be compromised.

## 62. CONFIDENTIALITY AND INTENDED USERS

**Question:** **I recently performed an appraisal. Yesterday, an intended user who is not the client contacted me to discuss the appraisal. Do I need the client's authorization to discuss the appraisal with this intended user?**

**Response:** The appraiser-client relationship is distinct from the appraiser's relationship to intended users. Although intended users have an important role in the appraiser's decisions about the appropriate scope of work and the content of the report, there are some aspects of the appraisal the appraiser cannot disclose to an intended user without the client's authorization. The <u>Confidentiality</u> section of the ETHICS RULE states, in part:

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

- ***the client;***
- ***parties specifically authorized by the client...*** (Bold added for emphasis)

To be able to comply with this section of the ETHICS RULE, the appraiser must also understand how confidential information is defined in USPAP.

## 63. CONFIDENTIALITY AND REVIEW APPRAISERS

**Question:** **A few weeks ago I performed an appraisal for a lender client. I was recently contacted by an individual who claimed to be a review appraiser hired by the lender. She wanted to ask me some questions about my appraisal. Can I discuss my appraisal with her?**

**Response:** Yes; but *only* if you receive authorization from the client. The <u>Confidentiality</u> section of the ETHICS RULE states, in part:

*An appraiser must protect the confidential nature of the appraiser-client relationship.*

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

- *the client;*
- *parties specifically authorized by the client;*
- *state appraiser regulatory agencies;*

- **third parties as may be authorized by due process of law**; *or*
- *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.*

## 64.  DUE PROCESS UNDER CONFIDENTIALITY

**Question:**  **I received a request from my state attorney general's office to turn over some appraisal reports I had prepared. Can I comply with this simple request or must it be in the form of a subpoena?**

**Response:**  The <u>Confidentiality</u> section of the ETHICS RULE states, in part:

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

- *the client;*
- *parties specifically authorized by the client;*
- *state appraiser regulatory agencies;*
- **third parties as may be authorized by due process of law; or**
- *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.* (Bold added for emphasis)

USPAP does not identify what constitutes due process of law. While a subpoena or court order might clearly constitute due process, a simple verbal or written request might not. Therefore, for requests of this type, it may be necessary to seek legal counsel to determine what constitutes due process.

## 65.  COMMUNICATING CONFIDENTIAL INFORMATION TO A SWORN PEACE OFFICER

**Question:**  **I was contacted by a sworn peace officer who simply requested the workfile of an assignment I had previously completed. The officer made this request without a subpoena or any form of court order. If the workfile contains confidential information, does USPAP allow me to comply with the officer's request?**

**Response:**  The answer to the question depends on whether or not the officer's request qualifies as due process of law.

The <u>Confidentiality</u> section of the ETHICS RULE states, in part:

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

- *the client;*
- *parties specifically authorized by the client;*
- *state appraiser regulatory agencies;*
- **third parties as may be authorized by due process of law; or**
- *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.* (Bold added for emphasis)

It is likely that this determination would need to be made by a court or other legal body, since USPAP does not define what due process of law constitutes. You may want to seek legal advice to determine an appropriate response.

It is also important to note that if the officer made the request on behalf of a state enforcement agency, the portion of the <u>Confidentiality</u> section of the ETHICS RULE quoted above allows the appraiser to communicate confidential information.

GO BACK

**66.  CONFIDENTIALITY AND PEER REVIEW COMMITTEES**

**Question:**  **Is it ethical to disclose confidential information to a duly authorized professional peer review committee?**

**Response:**  Yes. However, the appraiser must be aware of and comply with applicable laws or regulations that would pertain to such disclosure. The Confidentiality section of the ETHICS RULE states, in part:

*An appraiser must protect the confidential nature of the appraiser-client relationship.*

*An appraiser must act in good faith with regard to the legitimate interests of the client in the use of confidential information and in the communication of assignment results.*

*An appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment.*

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

- *the client;*
- *parties specifically authorized by the client;*
- *state appraiser regulatory agencies;*
- *third parties as may be authorized by due process of law; or*
- ***a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.*** (Bold added for emphasis)

A member of a duly authorized professional peer review committee must not disclose confidential information presented to the committee.

*Comment: When all confidential elements of confidential information, and assignment results are removed through redaction or the process of aggregation, client authorization is not required for the disclosure of the remaining information, as modified.*

**67.  CONFIDENTIALITY AND PRIVACY REGULATIONS**

**Question:**  **Does USPAP address the federal privacy laws? And, if it does, where does it address them?**

**Response:**  Yes. USPAP takes into account 16 CFR Part 313 both in the definition of confidential information and in the Confidentiality section of the ETHICS RULE, which states that "an appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment."

USPAP defines confidential information as:

*information that is either:*

- *identified by the client as confidential when providing it to an appraiser and that is not available from any other source; or*
- *classified as confidential or private by applicable law or regulation.*

A footnote regarding the federal privacy regulations is also included in this definition.

**68.  WHEN DOES APPRAISER-CLIENT CONFIDENTIALITY END?**

**Question:**  **I performed an appraisal assignment for a lender client who has subsequently gone out of business. Now the borrower is requesting a copy of the appraisal report from me since the company is defunct, and there is no way to contact them. Does my obligation for appraiser-client confidentiality end since the client no longer exists?**

GO BACK

**Response:** No. USPAP has no provision for terminating appraiser-client confidentiality. An appraiser is required to comply with the requirements of the <u>Confidentiality</u> section of the ETHICS RULE, regardless of the status of the client.

### 69. COPYRIGHTING AN APPRAISAL REPORT

**Question:** **Does registration of a copyright on an appraisal report with the U.S. Copyright Office violate the confidentiality provisions of USPAP?**

**Response:** The ASB is taking no position as to whether an appraisal report is copyrightable, and this response does not constitute a legal opinion of the ASB.

If an appraisal report is copyrightable, and if the process of registration with the U.S. Copyright Office includes public disclosure of the appraisal report, such registration would disclose assignment results. Such disclosure would, therefore, result in a breach of the <u>Confidentiality</u> section of the ETHICS RULE of USPAP, unless the appraiser/registrant had the prior approval of the client for such registration.

### 70. SELLING AN APPRAISAL FIRM AND ETHICAL OBLIGATIONS

**Question:** **I am considering the sale of my appraisal practice. What are my USPAP obligations regarding confidentiality and record keeping?**

**Response:** In the sale of an appraisal practice, the selling appraiser must comply with the <u>Confidentiality</u> section of the ETHICS RULE and the RECORD KEEPING RULE.

The <u>Confidentiality</u> section of the ETHICS RULE states, in part:

*An appraiser must protect the confidential nature of the appraiser-client relationship.*

*An appraiser must act in good faith with regard to the legitimate interests of the client in the use of confidential information and in the communication of assignment results.*

*An appraiser must be aware of, and comply with, all confidentiality and privacy laws and regulations applicable in an assignment.*

The RECORD KEEPING RULE states, in part:

*An appraiser must have custody of the workfile, or make appropriate workfile retention, access, and retrieval arrangements with the party having custody of the workfile.*

The selling appraiser can retain possession of the workfiles to satisfy confidentiality and record keeping obligations. This would also satisfy any client <u>confidentiality</u> agreements and applicable privacy laws and regulations.

The selling appraiser must adhere to the requirement to (1) protect the appraiser-client relationship and (2) not disclose assignment results and confidential information to anyone other than the client and persons specifically authorized by the client. This can be accomplished by seeking client authorization to disclose assignment results and confidential information that would be part of the workfile. Providing the acquiring appraiser with access to the selling appraiser's workfiles without client authorization is a violation of the <u>Confidentiality</u> section of the ETHICS RULE.

With client authorization, the selling appraiser can provide the acquiring appraiser with access to the selling appraiser's workfiles. However, the selling appraiser should also consider the impact of applicable privacy laws and regulations.

To comply with the RECORD KEEPING RULE, the selling appraiser should make appropriate workfile retention, access, and retrieval arrangements as part of the sale terms.

GO BACK

## 71.  PURCHASING AN APPRAISAL FIRM AND ETHICAL OBLIGATIONS

**Question:**  **I am considering the purchase of another appraiser's appraisal practice. What are my USPAP obligations regarding record keeping and confidentiality?**

**Response:**  The acquiring appraiser has general USPAP obligations to protect public trust in appraisal practice. The PREAMBLE, in part:

*The appraiser's responsibility is to protect the overall public trust and it is the importance of the role of the appraiser that places ethical obligations on those who serve in this capacity.*

The ETHICS RULE states, in part:

*An appraiser must promote and preserve the public trust inherent in appraisal practice, observing the highest standards of professional ethics.*

In the sale of an appraisal practice, the acquiring appraiser should respect the selling appraiser's obligations under the Confidentiality section of the ETHICS RULE and the RECORD KEEPING RULE.

The acquiring appraiser does not have an appraiser-client relationship with the clients of the selling appraiser, but the acquiring appraiser's obligation to protect public trust creates a responsibility when access is provided to another appraiser's workfile. The acquiring appraiser should treat the acquired assignment results and confidential information in the workfiles in compliance with USPAP.

The acquiring appraiser should honor the workfile retention, access, and retrieval arrangements made by the selling appraiser in compliance with the following RECORD KEEPING RULE.

*An appraiser having custody of a workfile must allow other appraisers with workfile obligations related to an assignment appropriate access and retrieval for the purpose of:*

- *submission to state appraiser regulatory agencies;*
- *compliance with due process of law;*
- *submission to a duly authorized professional peer review committee; or*
- *compliance with retrieval arrangements.*

## 72.  PROVIDING A COPY OF A WORKFILE

**Question:**  **I recently received a notice from an Appraisal Management Company (AMC) asking that I provide a copy of my complete workfile upon their request. What steps should I take to comply with this request without violating USPAP?**

**Response:**  Providing the AMC with a copy of the workfile is not prohibited by USPAP. However, the appraiser must comply with the Confidentiality section of the ETHICS RULE. The workfile might contain assignment results from another assignment, or confidential information obtained from another client. If so, the appraiser must have authorization from that other client to disclose assignment results or any confidential information related to that assignment.

In addition, the appraiser must be aware of any other laws or regulations applicable to those past assignments, including privacy requirements such as those contained in the Gramm-Leach-Bliley Act (GLBA).

## 73.  PHYSICAL CHARACTERISTICS OR ASSIGNMENT RESULTS?

**Question:**  **I read an appraisal report that included the paragraph below regarding the subject property's improvements. The paragraph appears to include both a description of the physical characteristics, as well as the appraiser's opinions (i.e., assignment results). I would like clarification on which items are physical characteristics and which are assignment results.**

GO BACK

*The subject property is located at 245 Broad Street. The improvements were constructed in 1985 and were renovated in 2010 with all new appliances, bathroom fixtures, and heat/AC. The house, however, has functional problems. There are two bedrooms on the second floor with no bathroom on that floor. The interior decor is dated, and some of the walls are pink, yellow, and purple.*

**Response:** Items that fall under the category of physical characteristics include: the address (245 Broad Street); the age of the improvements (constructed in 1985); the appliances, bathroom fixtures, and heat/AC; the number of bedrooms and baths on the second floor; and the color of the walls (pink, yellow, and purple).

Assignment results (the appraiser's analyses, opinions, and conclusions) include: identifying "functional problems;" and the "interior décor is dated."

## 74. PHYSICAL CHARACTERISTICS OR ASSIGNMENT RESULTS – RESIDENTIAL REAL PROPERTY EXAMPLE

**Question:** I am trying to distinguish between physical characteristics and assignment results in a residential appraisal assignment. Which of the following ten terms are physical characteristics and which are assignment results?

1. *Living area is 2,000 SF*
2. *Property is in good condition*
3. *The property has functional problems*
4. *The improvements were constructed in 2005*
5. *The carpet is new*
6. *2nd floor has 2 bedrooms, no baths*
7. *Well landscaped*
8. *Poor floor plan*
9. *Carpet needs replacing*
10. *Walls are painted pink, yellow, and purple*

**Response:** Physical characteristics do not include an appraiser's opinions. The items listed above shown as #1, 4, 5, 6 & 10 are examples of physical characteristics.

Assignment results include an appraiser's opinions. The items listed above shown as #2, 3, 7, 8 & 9 are examples of an appraiser's opinions, and therefore, are assignment results.

## 75. PHYSICAL CHARACTERISTICS OR ASSIGNMENT RESULTS – NON-RESIDENTIAL REAL PROPERTY EXAMPLE

**Question:** I am trying to distinguish between physical characteristics and assignment results in a non-residential appraisal assignment. Which of the following ten terms are physical characteristics and which are assignment results?

1. *Building contains 10,316 SF*
2. *There is a low land to building ratio*
3. *The mechanicals are in fair condition*
4. *The heat/AC equipment is 20 years old*
5. *Parking access is poor*
6. *There is 2,000 SF of mezzanine office space*
7. *There are 4 parking spaces per 1,000 SF of office area*
8. *The warehouse ceiling height is 14 feet*
9. *The building has functional problems*
10. *The building is Class A construction according to Marshall & Swift description*

GO BACK

**Response:** Physical characteristics do not include an appraiser's opinions. The items listed above shown as #1, 4, 6, 7, 8 & 10 are examples of physical characteristics.

Assignment results include an appraiser's opinions. The items listed above shown as #2, 3, 5 & 9 are examples of an appraiser's opinions, and therefore, are assignment results.

## 76. PHYSICAL CHARACTERISTICS OR ASSIGNMENT RESULTS – MACHINERY AND EQUIPMENT EXAMPLE

**Question:** **I recently completed a personal property appraisal of a group of machinery and equipment. My client was the business owner and the intended use was to appeal the tax value established by the local assessor. My client provided a copy of the appraisal to the assessor. I was authorized by my client to share information with the assessor about his machinery and equipment but I was not authorized to share any assignment results.**

**The assessor sent me a list of questions via email. Which questions can I answer without violating the <u>Confidentiality</u> section of the ETHICS RULE by disclosing assignment results or confidential information?**

**Response:** Without client authorization, you may not share any assignment results (i.e., opinions or conclusions that you formed as part of the assignment). You may disclose physical characteristics.

The following are examples of questions that you could answer (assuming you know the answer), as they address physical characteristics or other factual information. The answers to the questions would not include opinions or conclusions formed during the assignment.

- *What is the age of Machine A?*
- *Machine A is noted as being rebuilt; when was it rebuilt?*
- *What, specifically, was replaced when Machine A was rebuilt?*
- *The photograph for Machine B shows a larger collection of fluid next to the machine; is that coming from the machine?*
- *If so, what would the cost to repair the leak be?*
- *According to the description for Machine C, it is stored outside. How long has it been outside?*

Conversely, the answers to the following questions would be your opinions, and therefore could not be answered.

- *Immediately after Machine A was rebuilt, on a percentage basis, how would it compare in value to a brand new machine of the same make and model?*
- *What would the value of Machine B be if it was repaired and no longer leaking fluid?*
- *What is the condition of Machine C?*

## 77. PHYSICAL CHARACTERISTICS OR ASSIGNMENT RESULTS – FINE ART EXAMPLE

**Question:** **Last year I appraised a painting that was subsequently sold by an auction house. My client was the owner of the painting. A fellow appraiser, who is now appraising a similar painting by the same artist, recently contacted me. This other appraiser is using the painting I appraised as a comparable example and has asked me several questions about its physical condition.**

**I would like to help this colleague but want to be sure that I am not violating the <u>Confidentiality</u> section of the ETHICS RULE. My client did not request that I keep the condition report prepared by the auction house confidential, and I still have it in my workfile.**

**May I share the auction house condition report?**

**Response:**   Yes. Even though the condition report includes opinions about the subject painting's condition, they are the opinions of the auction house, not of the appraiser. Therefore, they are not assignment results as defined in USPAP.

To meet the USPAP definition of confidential information, the information must be both identified by the client as confidential, and not available from another source. The auction house condition report was not identified by the client as confidential, and it also may still be available from another source (directly from the auction house). So, sharing the auction house's condition report is not a violation.

It should be noted that an appraiser's own opinion as to the condition of the painting would qualify as assignment results under USPAP and, therefore, could not be disclosed without permission from the appraiser's client.

### 78. WHAT ARE "REASONABLE STEPS"?

**Question:**   **USPAP requires that an appraiser "take reasonable steps to safeguard access to confidential information." What are reasonable steps?**

**Response:**   The Confidentiality section of the ETHICS RULE stipulates that except in certain circumstances, the appraiser must not disclose confidential information or assignment results (both as defined in USPAP). Safeguarding confidential information and assignment results requires the appraiser to make a decision as to what is reasonable.

One dictionary defines reasonable as being based in sound judgment. Sound judgment is not a one-size-fits-all proposition. For example, what are reasonable steps for an appraiser who is working in a public space where others might be able to see the work papers or computer screen? The reasonable steps necessary to safeguard private documents from public view could vary.

The same judgment extends to the appraiser's office. It is up to the appraiser to determine when confidential information and assignment results should be kept under lock and key or in a closed folder. The answer could vary depending on the office environment; reasonable steps for an appraiser working from a home office might be different from those required in a large firm with appraisers and others having access to the workspace. USPAP requires an appraiser to exercise good judgment; it does not list steps the appraiser should take to comply.

Confidential information and assignment results can also be stored electronically. This information kept in desktop computers can be safeguarded in the same manner as physical files. The information can also be kept on an array of portable devices (e.g., laptops, external disk drives, small flash drives, smart phones, etc.). These devices may be easily misplaced, lost or stolen. The loss of one of these devices carries the same risk as orally disclosing confidential information or misplacing printed copies of reports.

USPAP cannot specify the steps an appraiser should take to prevent losing these devices or documents, nor can it specify what to do if that happens. Over time, new data storage and security technologies will evolve. USPAP does not specify whether these devices must be encrypted or password protected, nor the level of protection. USPAP cannot specify whether the appraiser must have the ability to remotely erase confidential information.

USPAP can only require the appraiser to exercise sound judgment. Therefore, relying on best professional practices, individual appraisers must seek "reasonable" and practical solutions to maintaining client confidentiality.

GO BACK

# RECORD KEEPING RULE

### 79.   CONTENTS OF A WORKFILE

**Question:**   **What information must be retained in an appraiser's workfile?**

**Response:**   An appraiser must prepare a workfile for each appraisal or appraisal review assignment. The RECORD KEEPING RULE states:

*The workfile must include:*

- *the name of the client and the identity, by name or type, of any other intended users;*
- *true copies of all written reports, documented on any type of media (A true copy is a replica of the report transmitted to the client. A photocopy or an electronic copy of the entire report transmitted to the client satisfies the requirement of a true copy.);*
- *summaries of all oral reports or testimony, or a transcript of testimony, including the appraiser's signed and dated certification; and*
- *all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other data, information, and documentation.*

*A workfile in support of a Restricted Appraisal Report or an oral appraisal report must be sufficient for the appraiser to produce an Appraisal Report. A workfile in support of an oral appraisal review report must be sufficient for the appraiser to produce an Appraisal Review Report.*

The appraiser's assignment workfile serves several purposes. As in many other professions, the discipline of enforcement by public agencies and peer review, together with one's self-discipline and dedication of effort, serves to ensure performance of assignments in compliance with professional standards. In addition to facilitating enforcement, a workfile aids the appraiser in handling questions from the client or an intended user subsequent to the date of the report.

An appraiser's assignment workfile preserves evidence of the appraiser's compliance with USPAP and other information as may be required to support the appraiser's opinions and conclusions.

### 80.   DISPOSAL OF WORKFILES

**Question:**   **I am aware of and comply with the workfile retention requirements in the RECORD KEEPING RULE in USPAP. However, once the required retention period has passed, does USPAP dictate a method I must employ to dispose of the workfiles?**

**Response:**   No, USPAP does not dictate a particular method for disposal of workfiles. However, because there are no provisions in USPAP for termination of the appraiser-client relationship and the appraiser's respective confidentiality obligations, appraisers must ensure that they do not violate the <u>Confidentiality</u> section of the ETHICS RULE even when disposing of workfiles.

This means that appraisers must ensure that whatever method they employ to dispose of workfiles does not allow for the communication of *assignment results or confidential information* (both, as defined in USPAP) in the disposal process.




## 81.   PHOTOCOPIES OF APPRAISAL REPORTS IN WORKFILES

**Question:**   **In order to satisfy the RECORD KEEPING RULE, must an appraiser retain a complete photocopy of the finished appraisal report that was sent to the client?**

**Response:**   The workfile must contain a true copy of all reports. A photocopy or an electronic copy of the entire appraisal report transmitted to the client satisfies the USPAP requirement of a true copy.

## 82.   WORKFILES FOR APPRAISAL REVIEW ASSIGNMENTS

**Question:**   **I am a manager for an Appraisal Management Company that performs commercial and residential appraisals in various parts of the country. Our company acts as the agent for our clients who consist of numerous regional and national lenders. In that capacity, we take in appraisal orders from our clients and order those appraisals from fee appraisers on our approved list of appraisers. We also perform USPAP compliant reviews on those appraisals. We forward the appraisal and appraisal review reports to our client. Are we required to keep a file of the appraisal reviews?**

**Response:**   Yes. The RECORD KEEPING RULE requires, in part:

*An appraiser must prepare a workfile for each appraisal or **appraisal review** assignment.*

*The workfile must include:*

- *the name of the client and the identity, by name or type, of any other intended users;*
- **true copies of all written reports** *documented on any type of media (A true copy is a replica of the report transmitted to the client. A photocopy or an electronic copy of the entire report transmitted to the client satisfies the requirement of a true copy.);*
- *summaries of all oral reports or testimony or a transcript of testimony, including the appraiser's signed and dated certification; and*
- *all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other data, information, and documentation.*

*A workfile in support of a Restricted Appraisal Report or an oral appraisal report must be sufficient for the appraiser to produce an Appraisal Report. A workfile in support of an oral appraisal review report must be sufficient for the appraiser to produce an Appraisal Review Report.*

Further, it is important to note that USPAP requires the **appraiser** to retain a copy of:

*the workfile for a period of at least five (5) years after preparation or at least two (2) years after final disposition of any judicial proceeding in which the appraiser provided testimony related to the assignment, whichever period expires last.*

Therefore, it is incumbent upon the appraiser, not his or her employer, to ensure that a copy of the workfile is available for the time periods stipulated.

## 83.   PURGING WORKFILES AT A CLIENT'S REQUEST

**Question:**   **If requested by a client, can I purge my appraisal files and records of an appraisal that was not used in loan underwriting or in any other manner by the client?**

**Response:**   No. USPAP does not permit appraisers to destroy records prior to five years after preparation **for any reason**, including a client's request to do so or the fact that an appraisal was not used by the client. The RECORD KEEPING RULE states, in part:

GO BACK

*An appraiser must prepare a workfile for each appraisal or appraisal review assignment.*

*An appraiser must retain the workfile for a period of at least five years after preparation or at least two years after final disposition of any judicial proceeding in which the appraiser provided testimony related to the assignment, whichever period expires last.*

In addition, the <u>Conduct</u> section of the ETHICS RULE states, in part, that an appraiser:

*must not willfully or knowingly violate the requirements of the RECORD KEEPING RULE.*

## 84. WORKFILE RETENTION WITH MORE THAN ONE APPRAISER

**Question:** **If two appraisers sign an appraisal report, what are the obligations related to record keeping? Specifically, must both appraisers keep a copy of the workfile?**

**Response:** No. It is not necessary for both appraisers to have a copy of the workfile.

The RECORD KEEPING RULE states, in part:

*An appraiser must have custody of the workfile, or make appropriate workfile retention, access, and retrieval arrangements with the party having custody of the workfile.*

Neither appraiser is required to have custody of the workfile. However, an appraiser who does not have custody must make appropriate arrangements for retention, access, and retrieval.

See Advisory Opinion 31, *Assignments Involving More than One Appraiser*, for further guidance

## 85. RESPONSIBILITY FOR WORKFILE RETENTION

**Question:** **(1.)  Jim, an independent contractor, works for my appraisal company on a regular basis. I have always kept all appraisal file documentation (including hard copies of appraisal reports, field notes, drawings, photographs, and data) at my office. Now Jim wants to keep the files relating to his work in his own possession. Under USPAP, which appraiser should keep the workfile?**

**Question:** **(2.)  Is the RECORD KEEPING RULE upheld if an institutionally-employed appraiser ensures that his or her organization retains copies of his or her appraisal work for five years? Or, must the appraiser also maintain a personal file of all work performed?**

**Question:** **(3.)  A client's attorney requested that I supply all of my files/records regarding an assignment. Can I do this and still be in compliance with the record keeping requirements for USPAP? Also, what must I retain in my files as proof that the files are now the responsibility of the attorney? Will a simple letter from the client be sufficient?**

**Response:** In responding to each of the three preceding questions, what should be considered is that, according to USPAP, **the appraiser,** not the appraiser's employer or client, is ultimately responsible for the retention of the workfile for the prescribed period. (Bold added for emphasis) (See RECORD KEEPING RULE)

When workfiles will be retained by an employer, client, co-appraiser or any other party, the appraiser must make arrangements with that party to protect and preserve the workfile, and to allow the appraiser to make the workfile available to other parties such as state appraiser regulatory agencies, professional peer review committees, or when required by due process of law.

There are a number of ways an appraiser who works for or with another party can ensure that files are retained so that the appraiser can have access to the files to meet the requirements of the RECORD KEEPING RULE. For example, an appraiser and his or her employer or colleague may agree that the files will remain in the employer's or colleague's custody for the duration of the requisite retention period and that the appraiser will have access to those files, if needed.

USPAP does not dictate the form or format of workfile documentation. It is not necessary to include original documents in the file; photocopies and electronic copies are acceptable as true copies. Because there have been cases where employers and others have denied appraisers access to workfiles, an appraiser may wish to make and retain copies of workfiles. However, USPAP does not address any specific manner by which an employer or contractor and appraiser should handle record retention. This is a business matter which should be arranged in the context of the employer- or contractor-appraiser relationship.

By the same token, providing the workfile to a duly authorized party, such as a client's attorney, is permitted by USPAP. However, this does not relieve the appraiser of the responsibility for that workfile. At no time may an appraiser abdicate his or her responsibility for a workfile. Therefore, when an appraiser relinquishes possession of a file to a client or the client's representative, the appraiser should retain either a copy of the workfile or a written reference to an agreement with the client that the appraiser will have access to the workfile, if the need arises.

### 86.  TRAINEE ACCESS TO WORKFILES

**Question:**  **I am a trainee appraiser and have been working with the same supervising appraiser for some time. Recently, my supervising appraiser told me that since I was only a trainee, I had no right to access workfiles on appraisals where I provided significant appraisal assistance. Is my supervising appraiser correct? Do trainees have no rights regarding access to workfiles?**

**Response:**  As background, USPAP places workfile retention requirements on the appraiser. In assignments where more than one appraiser is involved (e.g., a trainee appraiser and a supervising appraiser) each appraiser shares responsibility for complying with the RECORD KEEPING RULE.

Supervising appraisers should be aware that all appraisers, including trainee appraisers, must maintain access to workfiles for a minimum of five years. A supervising appraiser must not impede a trainee appraiser's ability to access workfiles. Denying access to workfiles is a violation of the RECORD KEEPING RULE.

> *An appraiser having custody of a workfile must allow other appraisers with workfile obligations related to an assignment appropriate access and retrieval for the purpose of:*
>
> - *submission to state appraiser regulatory agencies;*
> - *compliance with due process of law;*
> - *submission to a duly authorized professional peer review committee; or*
> - *compliance with retrieval arrangements.*
>
> *An appraiser who willfully or knowingly fails to comply with the obligations of this RECORD KEEPING RULE is in violation of the ETHICS RULE.*

See Advisory Opinion 31, *Assignments Involving More than One Appraiser*, for further guidance.

### 87.  APPROPRIATE WORKFILE RETENTION AND ACCESS ARRANGEMENTS

**Question:**  **USPAP requires an appraiser who does not have custody of his or her workfile to make appropriate retention and access arrangements. What does this mean?**

**Response:**  The RECORD KEEPING RULE states, in part:

> *An appraiser must have custody of the workfile, or **make appropriate workfile retention, access, and retrieval arrangements with the party having custody of the workfile**.*
> (Bold added for emphasis)

**GO BACK**

There are a number of ways an appraiser who works for or with another party can ensure that the assignment workfile is retained so that the appraiser may access the workfile. The following is a common example: an appraiser and his employer or colleague agree that the workfile will remain in the employer's or colleague's custody for the duration of the requisite retention period and that the appraiser will have access to the workfile. In practice, having such an agreement in writing could prove beneficial to all parties if access and retrieval arrangements are subsequently called into question.

## 88. MAY ACCESS TO A WORKFILE BE DENIED?

**Question:** **Two appraisers perform an appraisal assignment together. Appraiser A retains the workfile, and Appraiser B has made access and retrieval arrangements. Are there any conditions under which USPAP allows Appraiser A to deny Appraiser B access to the workfile?**

**Response:** Yes. USPAP does not set conditions for workfile access and retrieval. However, the RECORD KEEPING RULE states:

*An appraiser having custody of a workfile **must allow other appraisers with workfile obligations** related to an assignment appropriate access and retrieval for the purpose of:*

- *submission to state appraiser regulatory agencies;*
- *compliance with due process of law;*
- *submission to a duly authorized professional peer review committee; or*
- *compliance with retrieval arrangements.* (Bold added for emphasis)

In this scenario, if Appraiser B is seeking access for purposes outside those specified, access may be denied.

## 89. ACCESS AND RETRIEVAL OF WORKFILES

**Question:** **I am an appraiser in a large firm and assist several of the senior appraisers in appraisal research, analysis and report preparation. In a recent USPAP class, the instructor said that associates must have either copies of their workfiles, or an agreement with their employer regarding access to the workfiles, for appraisals on which they provided significant assistance. Does that agreement have to be in writing?**

**Response:** No. USPAP does not specify whether the access and retrieval arrangements you make must be in writing. The RECORD KEEPING RULE states:

*An appraiser must have custody of the workfile, or make appropriate workfile retention, access, and retrieval arrangements with the party having custody of the workfile.*

This agreement can be either written or oral. However, there is less chance for a misunderstanding about the agreement if it is in writing.

## 90. SIGNED CERTIFICATION IN TRUE COPIES

**Question:** **The RECORD KEEPING RULE states, in part:**

*The workfile must include...true copies of all written reports...*

**Does a true copy have to include a signature on the certification?**

**Response:** Yes. A true copy is a replica of the report sent to the client. Any signatures that were affixed to the original report must also exist on the copy for the workfile.

### 91.  CREATING A WORKFILE AFTER REPORT DELIVERY

**Question:**  **I was recently told that USPAP allows appraisers to wait and create a workfile after the report has been delivered to the client for an appraisal or appraisal review assignment. Is this true?**

**Response:**  No. The RECORD KEEPING RULE states:

> A workfile must be in existence **prior to** the issuance of any report or other communication of assignment results. A written summary of an oral report must be added to the workfile within a reasonable time after the issuance of the oral report. (Bold added for emphasis)

It is advisable to create a workfile as soon as an agreement between an appraiser and a client results in an assignment.

### 92.  IS A TRANSCRIPT REQUIRED FOR ORAL REPORT AND TESTIMONY?

**Question:**  **Is a transcript of an oral report or testimony required for the workfile when an appraiser testifies about an appraisal assignment?**

**Response:**  No. There is no absolute requirement to have a transcript of the appraisal oral report testimony. The RECORD KEEPING RULE requirement is for the workfile to contain summaries (which are typically prepared by the appraiser) or a transcript. In cases where summaries are retained, a transcript is not required.

### 93.  IS A TRANSCRIPT REQUIRED IF A WRITTEN APPRAISAL REPORT WAS PREPARED?

**Question:**  **Does the requirement to have a transcript or summary of testimony apply if the appraiser has a written appraisal report and testifies only to the information contained in that report?**

**Response:**  Yes. A transcript or summary of the testimony must be included in the workfile when the appraiser testifies about a written report. While the report that is the subject of the appraiser's testimony must also be included in the assignment workfile, it does not replace a summary of the testimony.

### 94.  RECORD KEEPING REQUIREMENTS FOR ORAL REPORTS AND TESTIMONY

**Question:**  **Does the requirement to have a transcript or a summary of the appraiser's testimony apply only in assignments when an appraiser provides an oral report?**

**Response:**  No. The requirements identified in the RECORD KEEPING RULE apply to both oral reports and testimony in an appraisal or appraisal review assignment.

### 95.  IS A SEPARATE CERTIFICATION REQUIRED IF A WRITTEN APPRAISAL REPORT WAS PREPARED?

**Question:**  **If an appraiser prepares a written appraisal report, is the workfile required to contain a separate signed certification for any testimony the appraiser provided in support of that report?**

**Response:**  In cases where testimony is provided about information contained in a written appraisal report or appraisal review report, a signed certification is required to be included in the written report. The requirement to include a signed certification is satisfied by including a true copy of the report in the workfile, consistent with the RECORD KEEPING RULE.

### 96.  IS A TRANSCRIPT OF THE ENTIRE PROCEEDING REQUIRED?

**Question:**  **Must the workfile contain a transcript or summary of an appraiser's testimony for the entire proceeding, or only for that portion that contains the appraiser's testimony?**

**GO BACK**

**Response:** The appraiser's workfile must contain a summary or a transcript of the appraiser's testimony in an appraisal or appraisal review assignment. The appraiser is not obligated to retain summaries or transcripts for other segments of the proceedings in which testimony was provided by individuals other than the appraiser.

## 97.  ELECTRONIC WORKFILE STORAGE

**Question:** **Recently I have considered maintaining only electronic workfiles (i.e., saving only electronic versions of my reports and supporting data, and scanning any paper documents used so that copies may be stored on electronic media). Is this prohibited by USPAP?**

**Response:** No. There is nothing in USPAP that would prohibit an appraiser from maintaining only electronic versions of workfiles.

The RECORD KEEPING RULE states, in part:

*An appraiser must prepare a workfile for each appraisal or appraisal review assignment.*

*The workfile must include:*

- *the name of the client and the identity, by name or type, of any other intended users;*
- *true copies of all written reports documented on any type of media (A true copy is a replica of the report transmitted to the client. A photocopy or **an electronic copy of the entire report transmitted to the client satisfies the requirement of a true copy**.);*
- *summaries of all oral reports or testimony, or a transcript of testimony, including the appraiser's signed and dated certification; and*
- *all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other data, information, and documentation.* (Bold added for emphasis)

*A workfile in support of a Restricted Appraisal Report or an oral appraisal report must be sufficient for the appraiser to produce an Appraisal Report. A workfile in support of an oral appraisal review report must be sufficient for the appraiser to produce an Appraisal Review Report.*

As long as an electronic workfile contained these items, it would be sufficient.

Care should be exercised in the selection of the form, style, and type of medium for records to ensure that they are retrievable by the appraiser throughout the prescribed record retention period. The appraiser must ensure that the proper software is maintained to allow access to the electronic files.

## 98.  ADEQUACY OF WORKFILE DOCUMENTATION

**Question:** **In the course of preparing my appraisals, I often research Multiple Listing Service (MLS) and other data sources. I use this information to develop conclusions regarding neighborhood value ranges and market trends. Is it necessary for me to include copies of this information in my workfile? Alternatively, can I simply reference the data sources in my workfile?**

**Response:** References in the workfile to the location of documentation used to support an appraiser's analyses, opinions, and conclusions can be adequate. It is not always necessary for the appraisal workfile to include all the documentation provided the referenced material is retrievable by the appraiser throughout the workfile retention period. Care should be exercised in the selection of the format and location of documentation.

The RECORD KEEPING RULE states that the workfile must include:

*all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, **or r**eferences to the location(s) of such other data, information, and documentation*. (Bold added for emphasis)

### 99. JURISDICTIONAL EXCEPTION AND WORKFILE RETENTION

**Question:** **My state law requires an appraiser to retain workfiles for three years after the valuation date. Is this an example of a jurisdictional exception?**

**Response:** No. The JURISDICTIONAL EXCEPTION RULE states:

*If any applicable law or regulation precludes compliance with any part of USPAP, only that part of USPAP becomes void for that assignment.*

In the scenario described in this question, complying with the RECORD KEEPING RULE would exceed the requirements of the law, but it would not be precluded by the law.

By retaining access to workfiles for the longer period required by USPAP, the appraiser would also be in compliance with the law. Therefore, this would not be a jurisdictional exception.

### 100. MINIMUM WORKFILE RETENTION

**Question:** **My state appraisal board is asking me to send a copy of the workfile for an appraisal I performed eight years ago. Since I provided no testimony in the assignment, I was only required to maintain access to the workfile for five years. Given that this time period has expired, can the state board still take action in this case?**

**Response:** Yes. The time frames referenced in the RECORD KEEPING RULE are only minimums. Enforcement proceedings by individual State Boards are independent of the USPAP RECORD KEEPING RULE. Nothing in USPAP would prevent an enforcement proceeding from taking place after the applicable time period had expired. An appraiser should always be aware of state laws which may exceed the minimum USPAP requirements.

### 101. WORKFILE REQUIREMENTS WHEN COMMUNICATING ASSIGNMENT RESULTS

**Question:** **I was engaged to perform an appraisal of a single-unit residential property for a mortgage lending transaction. After inspecting the property and collecting the necessary data, I concluded that the highest and best use was as a two-unit dwelling. I informed the client of this conclusion prior to completing the appraisal, and the client then canceled the assignment. Since there was no appraisal performed and no appraisal report transmitted, must a workfile be kept for the prescribed timeframes?**

**Response:** Yes. The RECORD KEEPING RULE states, "An appraiser must prepare a workfile for each appraisal or appraisal review assignment." The Rule is not limited to completed assignments or to assignments in which a report was transmitted. In fact, it specifies that the workfile "must be in existence prior to the issuance of any report or other communication of assignment results."

### 102. WORKFILES AFFECTED BY A NATURAL DISASTER

**Question:** **My appraisal workfiles were recently damaged due to a natural disaster. I am salvaging what I can but will likely have to discard many. What does USPAP require in this situation?**

**Response:** USPAP requires that workfiles be retained "for a period of at least five years after preparation or at least two years after final disposition of any judicial proceeding in which the appraiser provided

GO BACK

testimony related to the assignment, whichever period expires last." If the workfiles are older than the prescribed period, then there is no USPAP violation in discarding them.

However, if the natural disaster has destroyed workfiles that must be retained, a real property appraiser is advised to contact the applicable state appraiser regulatory agency to see if they have any guidance on what steps to take to document the loss.

Storing workfiles and electronic copies off site, and implementing a system of regular backups may serve to minimize future risk.

### 103. MAINTAINING RECORDS FOR A DECEASED APPRAISER

**Question:** **I have worked with another appraiser for many years, starting with simply sharing office space and most recently as members of a limited liability company (LLC). Unfortunately, this appraiser recently passed away unexpectedly. All of our appraisal assignments were performed independently, so I never signed certifications for any of his appraisal reports.**

**Am I required to maintain his records in accordance with the record keeping requirements in USPAP?**

**Response:** No. USPAP places the record keeping obligations on the appraiser, not the appraiser's firm, family, or other party. Therefore, the obligation to comply with the RECORD KEEPING RULE in USPAP ceases to apply if an appraiser is no longer living. Some business associates or family members may be required to maintain a deceased appraiser's workfiles for other reasons, but there is no such requirement in USPAP.

### 104. GOVERNMENT AGENCY WORKFILE RETENTION

**Question:** **I am a review appraiser employed by a federal government agency. The agency's record retention policies for appraisal and appraisal review reports meet or exceed the requirements of the RECORD KEEPING RULE in USPAP. My workfile is considered a government record, which I have access to throughout the USPAP retention period. Am I required to keep a separate workfile in my personal custody?**

**Response:** No. The RECORD KEEPING RULE states that an "appraiser must have custody of the workfile, or make appropriate workfile retention, access, and retrieval arrangements with the party having custody of the workfile." Since your employer's record retention policies meet or exceed the requirements of USPAP and you have access to the workfile during that retention period, you are not required to maintain a separate copy of your workfile.

### 105. WORKFILE RETENTION FOR A JUDICIAL PROCEEDING

**Question:** **I completed an appraisal report that was used by my client in litigation. My report was entered into evidence, but I did not provide a deposition and did not testify at the trial. How long must I retain my workfile since there was a judicial proceeding?**

**Response:** The RECORD KEEPING RULE states:

*"An appraiser must retain the workfile for a period of at least five years after preparation or at least two years after final disposition of any judicial proceeding **in which the appraiser provided testimony** related to the assignment, whichever period expires last."* (Bold added for emphasis)

In this scenario, the appraiser did not provide testimony, therefore the workfile must be retained for a minimum of five years after preparation.

GO BACK

### 106. RETENTION REQUIREMENTS FOR PRELIMINARY COMMUNICATIONS AFTER COMPLETION OF THE ASSIGNMENT

**Question:** **During the course of the assignment, my client has asked me to provide the sale comparables I plan to use, as well as information on my rent and expense conclusions, prior to the completion of my Appraisal Report. If I subsequently provide an Appraisal Report, does my workfile need to contain a written copy or summary of the communication previously transmitted to the client?**

**Response:** No. Upon completion of the assignment, the assignment results are communicated to the client within the Appraisal Report. The RECORD KEEPING RULE requires the workfile to contain a true copy of the report as well as all data, other information and documentation necessary to support the appraiser's opinions and conclusions. State requirements may add to USPAP obligations therefore appraisers should check with their state to see if additional requirements apply.

GO BACK

# COMPETENCY RULE

### 107. ACQUIRING KNOWLEDGE AND EXPERIENCE TO COMPLY WITH THE COMPETENCY RULE

**Question:** **How does an appraiser gain the knowledge and experience required by the COMPETENCY RULE if he or she lacks the knowledge and experience to complete an assignment competently?**

**Response:** The COMPETENCY RULE requires an appraiser who lacks the knowledge and experience to complete an assignment competently to (1) disclose the lack of knowledge and/or experience to the client before agreeing to perform the assignment, or (2) disclose the lack of knowledge and/or experience to the client during the assignment if discovered by the appraiser during the assignment. In either instance, the appraiser must then take all steps necessary to appropriately complete the assignment competently and document the steps in the appraisal report. An appraiser may gain the knowledge and experience required through any or all of the following: personal study by the appraiser; association with an appraiser reasonably believed to have the necessary knowledge or experience; or, retention of others who possess the required knowledge or experience.

In addition, the COMPETENCY RULE requires an appraiser to withdraw from the assignment if competency cannot be achieved prior to completion of the assignment.

Refer to the COMPETENCY RULE for further guidance.

### 108. ASSIGNMENT CONDITIONS, SCOPE OF WORK ACCEPTABILITY, AND GEOGRAPHIC COMPETENCY

**Question:** **I am a residential appraiser performing work for several Appraisal Management Companies. Often, I am asked to perform an appraisal assignment outside the areas I am most familiar with. The assignments come with a requirement that it be completed, and the appraisal report be transmitted within 48 hours or less. This time frame does not permit me to adequately research the subject property market. Is it permissible for me to agree to perform an assignment under these conditions?**

**Response:** The COMPETENCY RULE in USPAP requires an appraiser to notify the client that he or she does not have the necessary competency to complete an assignment prior to agreeing to perform an assignment. Because your statement in the question states that the "time frame does not permit me to adequately research the subject property market," you have already made the determination that becoming geographically competent for this assignment is a concern. The client must be notified, appropriate steps must be taken to become competent, and the lack of competency, plus the steps taken to become competent, must be disclosed in the appraisal report. If an appraiser is not in a position to spend the necessary time in a market area to attain geographic competency, affiliation with a qualified local appraiser may be an appropriate response to ensure development of credible assignment results. Alternatively, the appraiser must decline the assignment.

This situation is also addressed by the SCOPE OF WORK RULE in USPAP:

*For each appraisal and appraisal review assignment, an appraiser must:*

1. *identify the problem to be solved;*
2. ***determine and perform the scope of work necessary to develop credible assignment results; and***
3. *disclose the scope of work in the report.* (Bold added for emphasis)

---



## 109. CONTINUING EDUCATION COURSES

**Question:** **Does USPAP require appraisers to take continuing education courses?**

**Response:** Not directly; however, it is implied in the development Standards. For example, Standards Rule 1-1(a), states the following:

> *In developing a real property appraisal, an appraiser must:*
>
> > *(a) be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal;*
>
> <u>*Comment*</u>*: This Standards Rule recognizes that the principle of change continues to affect the manner in which appraisers perform appraisal services. Changes and developments in the real estate field have a substantial impact on the appraisal profession. Important changes in the cost and manner of constructing and marketing commercial, industrial, and residential real estate as well as changes in the legal framework in which real property rights and interests are created, conveyed, and mortgaged have resulted in corresponding changes in appraisal theory and practice. Social change has also had an effect on appraisal theory and practice. To keep abreast of these changes and developments, the appraisal profession is constantly reviewing and revising appraisal methods and techniques and devising new methods and techniques to meet new circumstances.* ***For this reason, it is not sufficient for appraisers to simply maintain the skills and the knowledge they possess when they become appraisers. Each appraiser must continuously improve his or her skills to remain proficient in real property appraisal****.* (Bold added for emphasis)

The last sentence of the <u>Comment</u> to Standard Rule 1-1(a) clearly indicates that appraisers must continuously improve their knowledge and skills. Therefore, some form of continuing education is required, although not explicitly stated in the USPAP document

## 110. COMPETENCY STATEMENT IN THE REPORT

**Question:** **Does USPAP require an appraiser to include a competency statement in all reports?**

**Response:** No. USPAP does not require that an appraiser provide a statement of competency in all reports. Only when the appraiser agrees to perform an assignment with a lack of knowledge and/or experience does the COMPETENCY RULE require the report to contain a description of the appraiser's lack of knowledge and/or experience and the steps taken to complete the assignment competently.

## 111. ERRORS AND OMISSIONS INSURANCE

**Question:** **Does USPAP require appraisers to be covered by errors and omissions (E&O) insurance?**

**Response:** USPAP does not address E&O insurance. However, if an appraiser is required to have E&O insurance as a matter of law or regulation, he or she must comply with that requirement under the COMPETENCY RULE which requires recognition of, and compliance with, laws and regulations that apply to the appraiser or the assignment.

**GO BACK**

### 112. APPRAISING AFTER A NATURAL DISASTER

**Question:** **A client has asked me to complete an appraisal of a property that was damaged in a recent natural disaster, but I have no experience with appraisals of this type. What are my USPAP obligations in this situation?**

**Response:** USPAP requires appraisers to perform competently when completing assignments. However, USPAP allows appraisers to acquire the necessary competency during the assignment. The COMPETENCY RULE states, in part:

> *If an appraiser determines he or she is not competent prior to agreeing to perform an assignment, the appraiser must:*
>
> 1. *disclose the lack of knowledge and/or experience to the client before agreeing to perform the assignment;*
> 2. *take all steps necessary or appropriate to complete the assignment competently; and*
> 3. *describe, in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently*

In addition, being competent includes the requirement to recognize and comply with laws and regulations applicable to the appraiser and the assignment. In the aftermath of a natural disaster some clients, particularly lenders, may include additional assignment conditions for developing and reporting an appraisal, and may waive others. In order to perform competently, appraisers involved in such assignments must remain current on these topics.

GO BACK

# JURISDICTIONAL EXCEPTION RULE

### 113. APPLICATION OF THE JURISDICTIONAL EXCEPTION RULE

**Question:**  When does the JURISDICTIONAL EXCEPTION RULE apply in an assignment?

**Response:**  The JURISDICTIONAL EXCEPTION RULE exempts appraisers from the part or parts of USPAP for which compliance is precluded by law or regulation. The Rule applies anytime there is a conflict between the requirements of USPAP and the applicable law or regulation of a jurisdiction.

An appraiser using the JURISDICTIONAL EXCEPTION RULE must properly identify and comply with the law or regulation that precludes compliance with USPAP. In addition, the appraiser must disclose in the report the part of USPAP that is voided by that law or regulation, and also cite in the report the specific law or regulation that precludes compliance with USPAP.

The Comment to the JURISDICTIONAL EXCEPTION RULE includes language that helps appraisers recognize laws and regulations. However, in every case, it is ultimately the responsibility of the appraiser, and not the client or other intended users, to determine whether the use of the JURISDICTIONAL EXCEPTION RULE is appropriate.

### 114. USPAP COMPLIANCE AND JURISDICTIONAL EXCEPTION

**Question:**  I am a real property appraiser and a government employee. The agency I work for wants me to provide a preliminary estimate of value. The agency policy states that this work is not an appraisal and is not covered by USPAP because of a jurisdictional exception. Should I comply with USPAP when I prepare a preliminary estimate of value?

**Response:**  This question raises a number of issues related to USPAP compliance and the application of the JURISDICTIONAL EXCEPTION RULE.

Based on your identification as an appraiser, you should comply with USPAP. This is because an individual's public identification as an appraiser establishes an expectation that valuation services will be performed in compliance with USPAP. You must comply with USPAP when required by law, regulation, or agreement. Even if the agency policy does not require USPAP compliance, other applicable law or regulation might require compliance.

The JURISDICTIONAL EXCEPTION RULE cannot be used to resolve this type of USPAP compliance question unless the agency policy is determined to be law or regulation. USPAP does not establish who or which assignments must comply; thus, the JURISDICTIONAL EXCEPTION RULE cannot be applied to a decision to comply with USPAP. To the contrary, a jurisdictional exception occurs when an applicable law or regulation precludes compliance with USPAP; therefore, no decision is necessary.

Another issue raised by this question relates to the USPAP requirements that apply to a preliminary estimate of value. USPAP does not define preliminary estimate of value. However, it is the nature of the service, not the label applied, that defines the service. An appraisal is defined as *the act or process of developing an opinion of value; an opinion of value*. If the service is an *appraisal* as defined in USPAP, then STANDARDS 1 and 2 apply to the preliminary estimate of value.




### 115. WHEN COMPLIANCE WITH USPAP IS PRECLUDED BY LAW OR REGULATION

**Question:**   **Can a jurisdictional exception take away from the requirements of USPAP?**

**Response:**   Yes. The JURISDICTIONAL EXCEPTION RULE provides for the situation in which compliance with parts of USPAP may be precluded by law or regulation in certain jurisdictions. It states:

> *If any applicable law or regulation precludes compliance with any part of USPAP, only that part of USPAP becomes void for that assignment.*

As stated in the Comment to the JURISDICTIONAL EXCEPTION RULE:

> *The JURISDICTIONAL EXCEPTION RULE provides a saving or severability clause intended to preserve the balance of USPAP if compliance with one or more of its parts is precluded by the law or regulation of a jurisdiction. When an appraiser properly follows this Rule in disregarding a part of USPAP, there is no violation of USPAP.*

The Comment to the JURISDICTIONAL EXCEPTION RULE also includes language that helps appraisers recognize laws and regulations.

### 116. PROBATE COURT STATUTE BASING THE APPRAISAL FEE ON THE APPRAISED VALUE

**Question:**   **A property is being appraised for a probate court in a state which has a statute stipulating that appraisal fees for these assignments shall be based on the appraised value of the property. Does USPAP allow me to appraise the property under this compensation arrangement?**

**Response:**   Yes. This is an example where the JURISDICTIONAL EXCEPTION RULE applies. In order to comply with the requirements of the JURISDICTIONAL EXCEPTION RULE, the appraiser must disclose in the appraisal report the reason(s) that prohibit compliance with USPAP, and cite the basis for the jurisdictional exception.

### 117. APPROPRIATE SOURCES FOR JURISDICTIONAL EXCEPTION

**Question:**   **My client's attorney has told me to invoke the JURISDICTIONAL EXCEPTION RULE to avoid mentioning in my appraisal report an underground storage tank that I know exists in the property. The attorney did not provide any reference or citation of law or regulation justifying this action. Can I follow the instruction from this attorney, who is representing my client?**

**Response**:   No. Use of the JURISDICTIONAL EXCEPTION RULE is triggered by a conflict between the requirements of USPAP and the law or regulation of a jurisdiction, not by client discretion.

The JURISDICTIONAL EXCEPTION RULE states:

> *If any applicable law or regulation precludes compliance with any part of USPAP, only that part of USPAP becomes void for that assignment.*

This Rule provides a saving or severability clause when compliance with a part or parts of USPAP is precluded by law or regulation. The first sentence of the Comment to the Rule states:

> *The JURISDICTIONAL EXCEPTION RULE provides a saving or severability clause intended to preserve the balance of USPAP if compliance with one or more of its parts is precluded by the law or regulation of a jurisdiction. When an appraiser properly follows this Rule in disregarding a part of USPAP, there is no violation of USPAP.*

The second paragraph in the Comment also provides explicit descriptions of laws and regulations that appraisers can use to determine when use of the JURISDICTIONAL EXCEPTION RULE is acceptable. It is important to note that the parameters described in the Comment apply regardless of the intended use of the assignment, whether it is an appraisal or

GO BACK

appraisal review, or whether the type and definition of value is market value or if it is some other type of value.

An attorney's instruction, without specific citation of law or regulation, is not the equivalent of law or regulation. Attorneys may offer legal opinions, but legislative bodies and courts make laws, and administrative agencies establish regulations. While an attorney is an expert in the practice of law, it is the court that decides if the facts in a matter support an attorney's representation of how established law applies to a specific set of facts.

Absent the citation of law or regulation, which should be cited in the report together with the part or parts of USPAP from which compliance is precluded in the assignment, the attorney's instruction is not acceptable as a basis to disregard a part or parts of USPAP applicable in the assignment.

### 118. VALUATION METHODS AND JURISDICTIONAL EXCEPTION RULE

**Question:** **I am doing an appraisal assignment for a government agency that is subject to the provisions of _The Uniform Relocation Assistance and Real Property Acquisitions Act of 1970_, as Amended (commonly known as, the Uniform Act), and its implementing regulation, 49 CFR Part 24. The agency has provided me with a reference to a State Court of Appeals ruling which indicates that standing timber and landscaping impacted by a public project must be appraised based on the value it contributes to the subject property as a whole, and not as individual items. They have informed me that this appeals case is frequently cited in condemnation cases and almost always upheld by trial courts in this state. Based on this court decision, the agency has adopted a policy that all standing timber and landscaping be valued in this manner.**

**On this issue of landscaping, does using contributory value versus replacement value constitute a jurisdictional exception?**

**Response:** No. The JURISDICTIONAL EXCEPTION RULE does not apply in this circumstance since there are no requirements in USPAP addressing the proper valuation techniques for standing timber and landscaping. The Rule only applies when there is a conflict between the requirements of USPAP and the applicable law or regulation of a jurisdiction.

USPAP requires that in the development of an appraisal, an appraiser must be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal. Further, the COMPETENCY RULE requires recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

The agency policy on the valuation of standing timber and landscaping is an assignment condition and must be considered in the scope of work decision. However, an appraiser cannot perform an assignment with a condition that would produce assignment results which are not credible in the context of the intended use.

### 119. CLIENT REQUIREMENT TO DISREGARD MARKET VALUE CHANGES PRIOR TO EFFECTIVE DATE

**Question:** **I have a question related to the implementing regulation, 49 CFR Part 24, for _The Uniform Relocation Assistance and Real Property Acquisitions Act of 1970_, as Amended (the Uniform Act). The issue is the relationship of Standard Rule 1-4(f) and "Before Acquisition Value." The ASB has pointed out that such a situation does not create a jurisdictional exception under USPAP but is rather an assignment condition.**

**My state has a similar law that requires the appraiser to disregard any decrease or increase in market value of the property prior to the effective date of value caused by the public improvement for which the property is being acquired. Does this state law cause a jurisdictional exception under USPAP?**

**GO BACK**

**Response:** No. The state law does not cause a jurisdictional exception in this case. USPAP Standards Rule 1-4(f) becomes applicable in an assignment only if the scope of work includes the analysis of anticipated improvements:

> ***When*** *analyzing anticipated public or private improvements, located on or off the site, an appraiser must analyze the effect on value, if any, of such anticipated improvements to the extent they are reflected in market actions.* (Bold added for emphasis)

The key word in Standards Rule 1-4(f) is ***"When."*** Your state law does not conflict with USPAP because the word ***When*** indicates that Standards Rule 1-4(f) is only applicable in the circumstance that public or private improvements must be analyzed in order to develop credible assignment results.

The JURISDICTIONAL EXCEPTION RULE states, in part:

> *In an assignment involving a jurisdictional exception, an appraiser must:*
>
> 1. *identify the law or regulation that precludes compliance with USPAP;*
> 2. *comply with that law or regulation;*
> 3. *clearly and conspicuously disclose in the report the part of USPAP that is voided by that law or regulation; and*
> 4. *cite in the report the law or regulation requiring this exception to USPAP compliance.*

## 120. CLIENT REQUIREMENT TO DISREGARD LINKING OPINION OF VALUE TO A SPECIFIC EXPOSURE TIME

**Question:** **I am aware that in the development of an opinion of value in which reasonable exposure time is a component of the definition, I am required by USPAP to develop an opinion of reasonable exposure time linked to that value opinion. The assignment I am working on must, by regulation, comply with the *Uniform Appraisal Standards for Federal Land Acquisitions* (the Yellow Book). Those standards require that the market value opinion be based on a reasonable exposure time, but also prohibit the appraiser from linking the value to a specific exposure time. Does this prohibition represent a jurisdictional exception since compliance with the Yellow Book is required by regulation?**

**Response:** Yes. In this case, the Yellow Book requirement imposed by the implementing regulation applicable to your assignment ***precludes*** you from complying with the USPAP requirement stated in the Comment to USPAP Standards Rule 1-2(c), which requires an appraiser to develop an opinion of reasonable exposure time linked to the value opinion, when reasonable exposure time is a component of the definition of value. In contrast, the Yellow Book provides that "the appraiser shall not link an estimate of market value for federal land acquisitions to a specific exposure time."

In accordance with the JURISDICTIONAL EXCEPTION RULE the appraisal report must clearly and conspicuously disclose the part or parts of USPAP that are voided by law or regulation and cite the law or regulation which requires compliance with the *Uniform Appraisal Standards for Federal Land Acquisitions*.

## 121. IS A "WAIVER VALUATION" A JURISDICTIONAL EXCEPTION?

**Question:** **The Federal Highway Administration (FHWA) permits a "waiver valuation." To quote, 49 CFR § 24.2 (33) "The term waiver valuation means the valuation process used and the product produced when the Agency determines that an appraisal is not required, pursuant to § 24.102(c)(2) appraisal waiver provisions." Is this an application of the JURISDICTIONAL EXCEPTION RULE?**

**Response:** No. There is no jurisdictional exception in the situation described. USPAP does not establish who or which assignments must comply. An agency may determine that an appraisal is not required for a specific situation and may elect to rely on a waiver valuation.

GO BACK

Nothing in the definition of waiver valuation *precludes the appraiser from complying with USPAP*. Compliance with USPAP sometimes requires an appraiser to develop an expanded level of analyses, or to communicate results with a different minimum set of requirements, distinct from what might be desired by a particular intended use or user. These additional obligations may impact an appraiser's decision whether they *choose* to agree to perform the assignment.

It is important that an appraiser take the time and effort to clearly understand all the assignment elements, and make an appropriate scope of work decision that complies with the appraiser's obligation to be able to demonstrate that the scope of work is sufficient to produce credible assignment results.

### 122. CLIENT REQUIREMENT TO ASSUME NO CONTAMINATION EXISTS

**Question:**  **The Federal Highway Administration (FHWA) publishes a "Guide for Preparing an Appraisal Scope of Work." One of the items listed is that the property being acquired should be "appraised as if free and clear of contamination," unless otherwise specified. Is this a jurisdictional exception, extraordinary assumption, or hypothetical condition?**

**Response:**  This situation is not an application of the JURISDICTIONAL EXCEPTION RULE. Rather, if contamination is an aspect of the valuation, the situation calls for either an extraordinary assumption or a hypothetical condition. In the DEFINITIONS section, an extraordinary assumption is defined as:

> *An assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions.*

A hypothetical condition is defined as:

> *a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.*

If the contamination status of the property is uncertain and cannot be determined, an extraordinary assumption is appropriate. If the property is known to be contaminated, a hypothetical condition to the contrary would be required.

### 123. JURISDICTIONAL EXCEPTION AND CONFIDENTIALITY

**Question:**  **I was recently hired to perform an appraisal assignment for a government agency. The agency has a regulation that requires me to provide the appraisal report to other government agencies if requested. Does this regulation create a jurisdictional exception to the <u>Confidentiality</u> section of the ETHICS RULE?**

**Response:**  No. The <u>Confidentiality</u> section of the ETHICS RULE reads, in part:

> *An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

> - *the client;*
> - ***parties specifically authorized by the client;***
> - *state appraiser regulatory agencies;*
> - ***third parties as may be authorized by due process of law;*** *or*
> - *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.* (Bold added for emphasis)

Since the <u>Confidentiality</u> section of the ETHICS RULE allows for the disclosure of confidential information to *persons specifically authorized by the client* and *third parties as may be authorized by due process of law*, the JURISDICTIONAL EXCEPTION RULE would not apply.

GO BACK

# APPRAISAL DEVELOPMENT –
## CLIENT ISSUES

### 124. PAYMENT BY A PARTY OTHER THAN THE CLIENT

**Question:** **Some clients require me to pick up the check for the appraisal fee from the property owner. Since I am being paid directly by the property owner, does the property owner become the client?**

**Response:** No. USPAP defines the client as:

> *the party or parties (i.e., individual, group, or entity) who engage an appraiser by employment or contract in a specific assignment, whether directly or through an agent.*

The act of the property owner or any other entity paying the appraiser does not make them the client under USPAP. However, state law could take precedence over USPAP in this situation. Therefore, you should contact the pertinent jurisdictions to ensure that there is not a conflict between applicable law and USPAP.

Situations may arise, especially in certain mortgage lending related assignments, in which this payment arrangement is not permitted.

### 125. DIFFERENCE BETWEEN CLIENTS AND INTENDED USERS

**Question:** **What is the difference between a client and an intended user?**

**Response:** The client is the party or parties that engage an appraiser in an assignment. There are special obligations and responsibilities (e.g., confidentiality, required disclosures by the appraiser, etc.) as a result of an appraiser-client relationship.

An intended user is a party identified by the appraiser, based on communication with the client at the time of the assignment. The appraiser is obligated to ensure the appraisal report is appropriate for the intended use, and can be properly understood by the intended user(s).

A party receiving a copy of an appraisal or appraisal review report is not "automatically" an intended user. To be an intended user the recipient must have been identified as such in the appraisal report by the appraiser.

### 126. APPRAISAL MANAGEMENT COMPANY AS AUTHORIZED AGENT FOR A CLIENT

**Question:** **I perform assignments for an Appraisal Management Company (AMC) that has informed me they are an authorized agent for the lenders they represent. As the AMC is not my client, they have requested that I only identify the lender they are representing as the client. USPAP says the appraiser's client is the party who engages the appraiser. Is it ethical to omit the AMC's name as the client on my reports?**

**Response:** Yes. If the AMC is acting as a duly authorized agent for a lender, identifying only the lender as your client is acceptable. However, the appraiser must be aware of situations where disclosure of the AMC might be required by law, regulation, or the secondary market.

### 127. CAN AN APPRAISAL MANAGEMENT COMPANY BE THE CLIENT?

**Question:** **I received an appraisal order from an Appraisal Management Company (AMC) that has requested to be identified as the client in the appraisal report. The AMC will not provide its client's name. Does USPAP allow me to identify the AMC as the client if the AMC will not disclose the name of its client?**

**Response:** There is nothing in USPAP that precludes an AMC from being a client; however, appraisers must comply with all applicable assignment conditions. Assignment conditions required by some users of appraisal services, including those prepared for federally-regulated financial institutions, specify who the client must be.

Therefore, the AMC may be the client under USPAP, but there could be additional applicable assignment conditions depending on the intended use and intended users.

Having an AMC as the client can be similar to the situation in which an appraiser is engaged by an attorney. The identity of the party that engaged the attorney might not be made available to the appraiser, but USPAP does not preclude the appraiser from naming the attorney as the client.

### 128. CLIENT CANNOT BE IDENTIFIED

**Question:** **I was recently asked to perform a real property appraisal assignment, but the individual that contacted my firm was not the client and indicated that the client could not be identified. Can I agree to perform this assignment and comply with USPAP?**

**Response:** No. Standards Rule 1-2 states, in part:

*In developing a real property appraisal, an appraiser must:*

*(a) identify the client and other intended users;*

This does not preclude a third party, acting as an agent for the client, from ordering the appraisal. In all assignments, the appraiser must know the identity of the client in order to proceed; however, the appraiser is not required to disclose the identity of the client in the appraisal report. See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use and Intended Users*, for further clarification.

### 129. SUBSEQUENT USER REQUESTS A RELIANCE LETTER

**Question:** **I delivered an appraisal report to my client. A week later, an entity other than one of the identified intended users contacted me and asked that I provide a reliance letter, enabling them to rely on the appraisal report for their own investment use. My client says they have no problem with me doing that. Can I provide this entity with such a letter, even though I had not originally identified them as an intended user?**

**Response:** No. You cannot add what is in effect a new intended user after the completion of an assignment, no matter what terminology you use.

USPAP defines Intended User as:

*The client and any other party as identified, by name or type, as users of the appraisal or appraisal review report by the appraiser based on communication with the client* **at the time of the assignment***.* (Bold added for emphasis)

The proper way to handle this is to initiate a new assignment with this entity as the client and provide them an appraisal, being careful to develop an appropriate scope of work consistent with the intended use of the new intended user(s).

---

GO BACK

This new assignment could be based on virtually the same data and analysis, and the value conclusion might be the same. However, in the new assignment you must consider the assignment elements most appropriate to the scope of work for the new client, intended users, and intended use for the assignment results, which could well be different from those of your original client.

## 130. READDRESS OR TRANSFER

Question:   Is it acceptable to readdress or transfer a completed appraisal report?

Response:   No. Once a report has been prepared for a named client or clients, the appraiser cannot readdress or transfer the report to another party. Simply changing the client name on the report cannot change or replace the original appraiser-client relationship. Therefore, this action is misleading.

However, you can consider the request as a new assignment. In so doing, you may establish a new appraiser-client relationship and appraise the property for this new client.

Additional information can be found in Advisory Opinion 26, *Readdressing (Transferring) a Report to Another Party*. Important considerations, such as the handling of confidential information and other factors, are addressed in Advisory Opinion 27, *Appraising the Same Property for a New Client*.

## 131. READDRESSING WITH LENDER RELEASE

Question:   I am aware of two advisory opinions, AO-26, *Readdressing (Transferring) a Report to Another Party*, and AO-27, *Appraising the Same Property for a New Client*. Does that guidance still apply if Lender A releases me to perform another assignment, or can I just readdress the report to Lender B since I have obtained a release?

Response:   Yes; the guidance still applies. It is never permissible to readdress a report by simply changing the client's name on a completed report, regardless of whether the first client gave a release. The request from Lender B must be treated as a new assignment.

Further guidance can be found in the Obtaining a Release section of AO-27, *Appraising the Same Property for a New Client*.

## 132. IDENTIFICATION OF INTENDED USERS

I know that it is my responsibility to identify the intended users when I perform an assignment, and that USPAP defines intended user as the client and any other party as identified, by name or type, as users of the appraisal or appraisal review report by the appraiser based on communication with the client.

However, I need clarification regarding whether certain parties should automatically be considered intended users in certain circumstances described below.

Question:   (1.) If I perform an appraisal for estate tax purposes and the client will provide my report to the IRS with her tax return, must the IRS be identified as an intended user in this situation?

Question:   (2.) I have been hired by an attorney representing a husband in a divorce to appraise certain assets held in the marital estate and to appear as an expert witness. I know my report will go to the court as well as to the parties on the other side of the litigation. Must the court and/or the parties on the other side of the litigation be identified as intended users?

Question:   (3.) I frequently perform appraisals for purposes of purchase price allocation. The corporation that is my client will use the values for financial reporting purposes. My reports are provided to the auditors of the corporations for their review as part of the audit process. In such cases, must the auditors be identified as intended users?

GO BACK

**Question:** **(4.) I am appraising a property for a regulated lender. I know that my appraisal will be reviewed by the bank's outside auditors and the OCC reviewers. Must the auditors and OCC reviewers be identified as intended users?**

**Response:** **The answer** for each of the four questions is no. Intended users are identified by the appraiser through communication with client and are not established based on who might receive or use the report.

The definition of intended user has a specific meaning in USPAP. In the context of the USPAP definition of intended user, the fact that the IRS, the court, an independent auditor, or the OCC in the above cases will use your report for review, audit, or other purposes does not automatically make them intended users. These parties receive the report through established processes of disclosure or regulation.

One way to understand the concept is to think about what the *intended use* is for each party. The appraiser must identify both the intended users and the intended use of the appraisal, because these two factors affect many aspects of the appraisal assignment, such as the appropriate scope of work and the appropriate type of report.

In each case, the use of the report by these other parties is different from the intended use the appraiser identified, which was related to the client's use. Such other parties may be evaluating the decision made by the appraiser's client to obtain an appraisal, as well as the appraisal results, and other matters of which the appraiser may not be aware. As an example, the client filing the estate tax return is using the appraisal as an indication of the amount to state on the tax form. However, the IRS may use the appraisal report to determine whether the value reported on the tax return is adequately supported, whether the IRS agrees with the value, and/or whether the IRS should challenge the taxpayer because they disagree with the value.

See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use and Intended User*:

### 133. CLIENT IS THE ONLY INTENDED USER

**Question:** **When the client, who has not requested their identity remain confidential, is the only intended user of a real property report, does USPAP require the report to identify the client as an intended user?**

**Response:** Yes. The <u>Comment</u> to Standards Rule 2-2(a) does require the appraiser to identify, in the report, the client as an intended user. USPAP does not dictate how this should be done.

### 134. APPRAISING WITHOUT KNOWING THE INTENDED USE OR INTENDED USER

**Question:** **Does USPAP allow me to appraise a property without knowing the intended use or user(s) if there is an agreed upon scope of work?**

**Response:** No. USPAP requires an appraiser to *identify* the intended use and any intended users by name *or* type prior to determining the scope of work in an appraisal assignment.

### 135. ARE BORROWERS INTENDED USERS?

**Question:** **Frequently, the borrower in a mortgage finance transaction is provided with a copy of the appraisal report; and in most cases, the appraiser knows that the borrower will be receiving a copy of the appraisal report. When the appraiser is aware that the borrower or any other third party will receive a copy of the appraisal, does this make that third party an intended user?**

**Response:** No. The fact that a borrower or anyone else receives a copy of the appraisal report does not make them an intended user. The concept of an intended user in USPAP is framed within the context of the appraiser-client relationship. An intended user is defined in USPAP as:

**GO BACK**

> *the client and any other party as identified, by name or type, as users of the appraisal or appraisal review report by the appraiser, based on communication with the client at the time of the assignment.*

There are several things to note in this definition. First, intended users of the appraisal report must be identified by the appraiser. Secondly, this identification is made at the time of the assignment so the appraiser can make a prudent judgment about the scope of work to apply in the assignment and the level of detail to include in the report.

It is also worth noting that the concepts of intended use and intended users are related to the type and definition of value in an assignment. Appraisal reports for loan transactions are typically used to substantiate the real property's market value as underlying collateral for a particular loan. The fact that the lending institution is required by law or regulation to make certain disclosures to the borrower about the loan and the basis for the loan decision does not alter the intended use, intended users, or type and definition of value in the appraisal assignment.

The <u>Comments</u> to Standards Rule 2-2(a)(ii) and 2-2(b)(ii) further clarify this issue by stating:

> *A party receiving a copy of an Appraisal Report [or, in Standards Rule 2-2(b)(ii), a Restricted Appraisal Report] in order to satisfy disclosure requirements does not become an intended user of the appraisal unless the appraiser identifies such party as an intended user as part of the assignment.*

### 136. IDENTIFYING INTENDED USERS BY TYPE

**Question:** **I recently received a request for an appraisal assignment. The potential client has indicated that there will be other intended users, but has not identified the intended users specifically. Is it acceptable to state the identity of the intended users just by type in the resulting appraisal report?**

**Response:** Standards Rules 2-2(a), 8-2(a), and 10-2(a) allow for the identification of intended users by type (or by name) for both an Appraisal Report or an oral report. However, if the reporting option used is a Restricted Appraisal Report, you must identify the other intended users specifically by name.

See Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use and Intended Users* for more information.

### 137. ENGAGED DIRECTLY BY THE HOMEOWNER

**Question:** **I was contacted by homeowners who want me to perform an appraisal of their home to be used for a loan at a federally regulated financial institution. What are my responsibilities in this potential assignment?**

**Response:** It is an appraiser's responsibility to disclose to the homeowners that a lender or its agent is required by Title XI of FIRREA to directly engage the services of an appraiser in a federally related transaction. If the homeowners still want to engage you, your disclosure allows you to perform the assignment.

Additional information can be found in Advisory Opinion 25, *Clarification of the Client in a Federally Related Transaction*.

### 138. CLIENT APPROVAL FOR FUTURE ASSIGNMENTS

**Question:** **Some of my clients include a condition in engagement correspondence that addresses future assignments for the same subject property. Specifically, my agreement to perform the assignment requires that I obtain client approval before I perform future assignments related to the subject from another party. Advisory Opinion 27, *Appraising the Same Property for a New Client*, states that USPAP does not require a release to perform the new assignment. Can I agree to perform assignments where the client requires a release for future assignments related to the subject?**

**GO BACK**

**Response:** Yes. Appraisers are often subject to agreements that exceed the requirements of USPAP. These additional client requirements are permissible so long as they do not conflict with the requirements of USPAP. Although USPAP does not require obtaining approval from a prior client before agreeing to perform an assignment to appraise the same property for a new client, a client can establish such a requirement.

**139. REQUEST TO MODIFY A COMPLETED APPRAISAL REPORT**

**Question:** **I have completed an appraisal assignment for a client. The report was completed using the 2005 version of the Uniform Residential Appraisal Report (URAR). The client has requested that I remove one of the comparable properties from the report because, in the underwriter's opinion, it is not sufficiently similar to the subject property. If I do this, will my action comply with USPAP?**

**Response:** Such an action has the potential to be misleading. Certification item #15 of the 2005 URAR states the following:

> *"**I have not knowingly withheld any significant information from this appraisal report** and, to the best of my knowledge, all statements and information in this appraisal report are true and correct."* (Bold added for emphasis)

You initially concluded that the comparable you are being asked to remove was relevant in developing and communicating the assignment results. If this opinion has not changed, and you subsequently remove a comparable listing or sale from the appraisal report and sign the certification for this specific report format, it would likely be misleading because information you consider to be significant is being knowingly withheld.

In addition, Standards Rule 2-2(a)(x)(5) requires that at a minimum an Appraisal Report provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by:

> ***summarizing the information analyzed and the reasoning that supports the analyses, opinions, and conclusions, including reconciliation of the data and approaches*** (Bold added for emphasis)

If the comparable is removed as requested by the client, information that was analyzed would no longer be summarized in the report as required by this Standards Rule.

**140. SHELF LIFE OF AN APPRAISAL OR APPRAISAL REPORT**

**Question:** **I've received inquiries from some of my clients asking me how long my appraisal reports are valid. Is this addressed in USPAP?**

**Response:** USPAP does not determine the length of time for which an appraisal or appraisal report is valid. Various users of appraisal services may establish their own requirements or guidelines for the validity period of an appraisal or appraisal report.

It is also important to note that USPAP distinguishes an appraisal from an appraisal report. An appraisal is an opinion of value while an appraisal report is any communication, written or oral, of an appraisal that is transmitted to the client upon completion of an assignment.

Two dates are essential to an appraisal report: the effective date of the appraisal and the date of the report. The effective date of the appraisal establishes the context for the value opinion, while the date of the report indicates whether the perspective of the appraiser on the market and property as of the effective date of the appraisal was prospective, current, or retrospective.

As such, the effective date of the appraisal, the date of report, or both may be important reference points when determining when a new appraisal or appraisal report is required.

GO BACK

### 141.  USE OF DISTRESS SALES IN REAL PROPERTY MARKET VALUE APPRAISALS

**Question:**  **A client has asked me to disregard any foreclosure, real estate owned (REO), or short sales when performing market value appraisal assignments. Is this an acceptable assignment condition?**

**Response:**  No. USPAP does not specifically address which sales should or should not be considered in an appraisal assignment. However, in real property appraisal assignments, Standards Rule 1-4(a) requires:

*When a sales comparison approach is necessary for credible assignment results, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion.*

So, the appraiser must determine what data is relevant.

There are many appraisal assignments where, in order to achieve credible results, it is necessary to use "distress" (e.g., REO or Short Sales) properties as comparable sales. However, foreclosure sales, defined by *Black's Law Dictionary* as "the sale of mortgaged property, authorized by a court decree or a power-of-sale clause, to satisfy the debt" are seldom based on market expectations. When there is a glut of distress sales in the marketplace, and those properties are truly comparable to the subject, it would be misleading not to use them as part (or in some cases all) of the basis for a value conclusion.

A client-imposed requirement to disregard data that may be relevant and necessary for credible assignment results would be an unacceptable assignment condition.

### 142.  ASSIGNMENT CONDITIONS VERSUS CLIENT CONDITIONS

**Question:**  **I agreed to perform two market value appraisals of a property with proposed improvements under the following client-imposed conditions:**

**a.   The appraiser must develop at least two approaches to value for each appraisal;**
**b.   The property must be appraised as-if it had been completed per plans;**
**c.   The report must include photographs of abutting properties;**
**d.   The property must also be appraised as-is as of the date of the inspection; and**
**e.   The report must be transmitted to the client within 30 days of the agreement to perform the appraisal.**

**I am unsure whether all of these are actual assignment conditions as defined in USPAP, and which may be client conditions only. Which, if any, of these conditions are assignment conditions?**

**Response:**  Assignment conditions include assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions and other conditions that affect the scope of work. Items (a), (b) and (d) are the only items which affect the appraiser's scope of work and therefore are assignment conditions. Assuming items (c) and item (e) are not requirements of law or regulation, and are merely conditions the client requested of the appraiser, then items (c) and (e) would not be assignment conditions as they do not impact the appraiser's scope of work.

GO BACK

# APPRAISAL DEVELOPMENT –
## APPRAISAL DATES

**143.  EFFECTIVE DATE OF THE APPRAISAL**

**Question:**  **The Standards Rules require all appraisal reports to disclose the effective date of the appraisal. Must the date be reported as a specific day, month, and year, or is it sufficient to simply provide the month and year?**

**Response:**  The effective date of an appraisal is determined by the intended use and the intended user. In most cases the intended use and/or the intended user dictates that the date provided is a specific day, month, and year. However, in some circumstances it may be acceptable to be less specific, (e.g., in a prospective appraisal assignment when an exact date cannot be accurately determined at the time the assignment is completed).

**144.  APPRAISAL DATES**

**Question:**  **I hear various terms used with respect to appraisal dates. In addition to the effective date of appraisal and date of report, I've heard terms such as "date of appraisal" and "signature date." Do these terms have different meanings?**

**Response:**  Date of appraisal is an ambiguous term. The appropriate terminology is the effective date of value or the effective date of the appraisal, which is the date upon which the assignment results are based.

Signature date is sometimes used to signify when the report was transmitted to the client, but the appropriate terminology is the date of the report or report date.

**145.  CITATION OF EFFECTIVE DATE**

**Question:**  **I've been engaged to perform a real property appraisal review assignment and have a question about the appraisal report under review. Does USPAP require the effective date of value to be cited each time the opinion of value is stated in the appraisal report?**

**Response:**  No. USPAP does not require the appraiser to state the effective date of the appraisal with each statement of the value opinion. In a real property appraisal report, the requirements that apply to reporting the effective date can be found in Standards Rules 2-2(a)(vi) for an Appraisal Report, and 2-2(b)(vi) for a Restricted Appraisal Report. Each of these appraisal reporting options simply requires the appraisal report to "state the effective date of the appraisal and the date of the report."

However, you should take care to ensure that intended users are not misled, such as by stating the effective date of value in a manner which does not clearly establish the context for the value opinion. In most instances, reporting the value opinion with the effective date of the appraisal, especially when the effective date is significantly different (retrospective or prospective) from the date of the report, assists intended users to clearly understand the context for the value opinion.

**146.  CHANGING THE EFFECTIVE DATE**

**Question:**  **I recently had a client ask me to change the effective date of my appraisal, to make it one week after the effective date shown in my report. Does USPAP permit me to simply change the effective date without taking additional steps?**

GO BACK

**Response:** No. As indicated in the SCOPE OF WORK RULE, the effective date of the appraiser's opinions and conclusions is an assignment element.

If the client is asking for an appraisal with a different effective date, the appraiser needs to determine the appropriate scope of work to produce credible assignment results for this request. Such a request would need to be considered a new assignment, but that does not necessarily require starting from scratch. As with all new assignments, the appraiser must decide the appropriate scope of work to produce credible assignment results. This would include a decision as to whether or not it was necessary to perform another inspection, as well as the extent of any additional research and analyses that might be required. The scope of work for the new assignment can be different from the scope of work completed in the earlier assignment. As with any assignment, the appraiser might be able to use information and analyses developed for a previous assignment.

### 147. DATE OF REPORT

**Question:.** **In my appraisal reports, I have always identified the date of report as the date I began writing the report. A current client asked me to make sure my appraisal reports identify the date of report as the date I transmitted the completed appraisal report. Is my client correct?**

**Response:** Yes. The date of the report is the date that it is completed and transmitted to the client. According to USPAP, a report is a communication "transmitted to the client upon completion of the assignment." Given that language, the appraiser's document is not a "report" until it is transmitted to the client, at the completion of the assignment.

### 148. DATE OF REPORT

**Question:** **In response to a client request, I recently made some minor edits to a report. The assignment results were unchanged, but I corrected a few minor typographical errors and entered the census tract number which had been omitted from the original report. Because the results did not change, this was essentially the same report, so I did not change either the effective date or the date of the report. My client now wants me to resubmit the report with the current report and certification date. Should the new report be dated as of the date revised?**

**Response:** The date of the report should be the date that it is completed and transmitted to the client. According to USPAP, a report is a communication "transmitted to the client... upon completion of an assignment." In this case, the report containing the corrections should be dated on the day it was transmitted. This is true even when the only changes in the communication are minor corrections, and the assignment results are unchanged.

In addition, while USPAP does not require a certification to be dated, if the certification is dated, that date should also be based on the date the report is transmitted. The appraiser is certifying the content of the report, so any certification date cannot precede any revisions to the communication.

### 149. REVISION TO THE CONTRACT PRICE

**Question:** **I recently completed an appraisal for mortgage financing purposes in a purchase transaction and delivered the report to my client. My opinion of value was less than the pending sale price. One week later, the buyer and seller renegotiated the contract agreeing to a price equal to my appraised value. My client asked if I can provide a revised report wherein I replace the prior sale price with the newly agreed-upon sale price. How can I do this and comply with the requirements of USPAP?**

**Response:** The appraiser may not simply replace the pending sale price information in the appraisal report and resubmit the report to the client, as this would be misleading.

Under Standards Rule 1-5(a) the appraiser is required to *"analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal."*

If the new contract information is stated in a revised report, the appraiser should note that the second contract was provided after the effective date, and the information regarding the contract that was in place as of the effective date must remain in the report. Further, the revised report must have a new report date, as of the date the revised report is transmitted to the client.

If the client does require a more current effective date, the request must be treated as a new assignment.

Additional related guidance may be found in Advisory Opinion 1, *Sale and Transfer History*, and Advisory Opinion 3, *Update of a Prior Appraisal*.

### 150. PROPOSED IMPROVEMENTS – CURRENT AND PROSPECTIVE VALUE OPINIONS

**The real property that I am appraising involves proposed improvements, and the client needs to know my opinion of market value as if the proposed improvements were complete, both as of the current date and as of a future date. I have two questions.**

**Question:** **(1.) When the date of value is a current date, is my opinion developed on the basis of a hypothetical condition or an extraordinary assumption?**

**Response:** When the date of value is a current date, and the appraisal is of a property with proposed improvements as if those improvements were complete on a current date of value, the value opinion is developed on the basis of a hypothetical condition.

This is because the appraiser knows the proposed improvements do not, in fact, exist on that current date of value. Completing an analysis on the condition that something the appraiser knows to be contrary to what exists, but is supposed for purposes of reasonable analysis, is using a hypothetical condition in that analysis. (See Standards Rule 1-2(g).)

**Question:** **(2.) When the date of value is a future date, when the proposed improvements will be complete, is my opinion developed on the basis of a hypothetical condition or an extraordinary assumption?**

**Response:** When the date of value is a future date and the appraisal is of a property with proposed improvements that are expected to be complete on or before that future date, the value opinion is developed on the basis of an extraordinary assumption.

This is because the appraiser presumes the proposed improvements will, in fact, exist as of that future date of value. Completing the analysis on the condition that something the appraiser reasonably believes will exist as of a future date is using an extraordinary assumption in that analysis. (See Standards Rule 1-2(f)).

### 151. EFFECTIVE DATE AND DATE OF THE REPORT

**Question:** **I have been engaged to perform a valuation assignment. The assignment is to develop an opinion of the market value of the subject property in its current "as-is" condition. AO34 states, "Current appraisals occur when the effective date of the appraisal is contemporaneous with the date of the report." In this context, what defines contemporaneous with the date of the report?**

**Response:** In USPAP, there are three different types of appraisals: retrospective, current, and prospective. As explained in Advisory Opinion 34, *Retrospective and Prospective Value Opinions:*

*Current appraisals occur when the effective date of the appraisal is contemporaneous with the date of the report. Because most appraisals require current value opinions, the importance of specifying both the date of the report and the effective date of the analysis is sometimes lost.*

"Current" appraisal assignments are based on the effective date of the appraisal being contemporaneous with the date of the report. Contemporaneous means arising, existing or occurring during the same time period. In this context contemporaneous is not intended to mean simultaneous. Because the "same time period" may very well differ from assignment to assignment, one single specific time period cannot be provided that can be used for all assignments.

### 152. COMPETENCY AS OF EFFECTIVE DATE OF THE APPRAISAL

**Question:** **Can an appraiser prepare a retrospective appraisal, with an effective date of appraisal as of five years ago, if that appraiser wasn't even an appraiser five years ago?**

**Response:** Yes. The appraiser must comply with the COMPETENCY RULE at the time the appraiser develops the appraisal, regardless of the effective date of the appraisal (date of value). If the appraiser is to develop a value opinion, be it retrospective, prospective, or current, the appraiser must be able to deal with the nuances of such an assignment at the time he or she is performing the assignment (e.g., to research data associated with the retrospective, prospective, or current effective date of the appraisal and to analyze the data in light of market conditions as of that date). It is not necessary for the appraiser to be, or to have been, a competent appraiser as of the effective date of the appraisal.

An appraiser could develop a retrospective appraisal with an effective date of the appraisal that is prior to the appraiser's own date of birth. Likewise, an appraiser could develop a prospective appraisal with an effective date of the appraisal that occurs after the date of his or her own death. These would be legitimate assignments that could be completed according to USPAP. In such cases the appraiser could not be considered to be a competent appraiser as of the effective dates of those appraisals.

### 153. CURRENT AND RETROSPECTIVE VALUE OPINIONS WITHIN ONE REPORT

**Question:** **I have been asked to perform an appraisal assignment that includes providing both a retrospective and a current opinion of value. Can I report both value opinions within one appraisal report?**

**Response:** Yes; you can communicate both opinions of value within one appraisal report. Since two opinions of value (appraisals) are included in the report, both opinions must be developed in conformance with the appropriate STANDARD (1, 5, 7, or 9).

### 154. POST-VALUE DATE INFORMATION IN RETROSPECTIVE APPRAISALS

**Question:** **The real property that I am appraising is in a market that was impacted by the major regional employer's closing of its facility three years ago. My client needs an opinion of value as of a date that preceded any knowledge of the facility being closed. Is it appropriate to include the fact that the facility closed in my retrospective appraisal?**

**Response:** A thorough review of Advisory Opinion 34, *Retrospective and Prospective Value Opinions* is necessary to properly deal with the problem the appraiser faces in this question.

*A retrospective appraisal is complicated by the fact that the appraiser already knows what occurred in the market after the effective date of the appraisal. Data subsequent to the effective date may be considered in developing a retrospective value as a confirmation of trends that would reasonably be considered by a buyer or seller as of that date. The appraiser should determine a logical cut-off for the data to be used in the analysis because at some point distant from the effective date, the subsequent data will no longer provide an accurate representation of market conditions as of the effective date. This is a difficult determination to make. Studying the market conditions as of the date of the appraisal assists the appraiser in*

*judging where he or she should make this cut-off. With market evidence that data subsequent to the effective date was consistent with market expectations as of the effective date, the subsequent data should be used. In the absence of such evidence, the effective date should be used as the cut-off date for data considered by the appraiser.*

The appraiser cannot include in the analyses the fact that an event subsequent to the date of value in a retrospective appraisal changed the market conditions that existed as of the date of value. Using such information is not consistent with the intended use of the appraisal because buyers and sellers had no knowledge or expectation of that subsequent event as of the date of value.

However, an appraiser may disclose facts in an appraisal report about events that occurred subsequent to the date of value in an appraisal. Such a disclosure is particularly appropriate when the appraiser has reason to believe the intended users of the report could be misled by not knowing those facts in the current time frame, when the appraisal is being used.

## 155. APPRAISAL BASED ON CURRENT AND PROSPECTIVE DATES OF VALUE

**Question:**  **My client, a federally regulated lender, has requested a market value appraisal for use in financing a commercial property development project. The client's stated loan conditions include a requirement that the property be leased before the onset of its development. The client stated they need (1) an opinion of market value for the property that actually exists as of a current date, which is the site with its entitlements and under the zoning in effect as of the current date, and (2) an opinion of market value as of the future date (a prospective value opinion) when the property will be physically completed and occupied under the pre-leasing terms and conditions. Must I develop both of these opinions of value and, if so, why?**

**Response:** Yes; the client needs both opinions to aid in identifying its project development loan risk and respond to regulatory requirements and guidelines.

The client's project development loan decision would typically be based, in part, on your analysis of highest and best use (See Standards Rule 1-3(b)) and the feasibility of the development project. (See Standards Rules 1-2[e], Comment on [i]-[v]).

The value of the site, with its entitlements and under the zoning in effect as of a current date (i.e., without use of a hypothetical condition), is an important component in your analysis; and it provides the client with information necessary to identify development risk and determine appropriate loan terms and conditions. Absent other factors, this value opinion could be developed without use of either an extraordinary assumption or a hypothetical condition. The subject in the current appraisal is the site that actually exists with the zoning (including any entitlements) in effect as of that date.

The value of the property as of the prospective date, when it has been physically completed and leased under the pre-leasing terms and conditions, is also significant information the client would typically use in making its project development loan decision. Developing this value opinion typically requires the use of an extraordinary assumption because the subject in the prospective appraisal is the property as it is expected to exist as of that future date when physical development is complete and the property is leased in accordance with the lease terms and conditions.

## 156. USPAP COMPLIANCE IN RETROSPECTIVE APPRAISALS

**Question:**  **When preparing an assignment with a retrospective date of value, should the appraiser comply with the USPAP in effect as of the date of value or as of the date of report?**

**Response:** Appraisers must comply with the USPAP edition in effect as of the date of the report.

GO BACK

### 157. RETROSPECTIVE APPRAISAL ASSIGNMENTS

**Question:**  **I was recently asked to complete a retrospective market value appraisal for which the effective date of the appraisal is two years prior to the date of the report. In researching this assignment I discovered several comparable sales that were listed and placed under contract prior to the effective date of the appraisal, but actually sold well after the effective date. Would it be appropriate to use only these sales in my sales comparison approach to value?**

**Response:**  In a retrospective appraisal the analysis should reflect the market conditions that existed on the effective date of the appraisal. Using only comparable sales information that was **not** available to the marketplace or did not exist as of the effective date of the appraisal could be misleading because it would not reflect information available to the marketplace during that time period.

Retrospective appraisals and the use of data from the time period after the effective date are addressed in Advisory Opinion 34, *Retrospective and Prospective Value Opinions*. AO-34 states, in part:

> *A retrospective appraisal is complicated by the fact that the appraiser already knows what occurred in the market after the effective date of the appraisal. Data subsequent to the effective date may be considered in developing a retrospective value as a confirmation of trends that would reasonably be considered by a buyer or seller as of that date. The appraiser should determine a logical cut-off for the data to be used in the analysis because at some point distant from the effective date, the subsequent data will no longer provide an accurate representation of market conditions as of the effective date. This is a difficult determination to make. Studying the market conditions as of the date of the appraisal assists the appraiser in judging where he or she should make this cut-off. With market evidence that data subsequent to the effective date was consistent with market expectations as of the effective date, the subsequent data should be used. In the absence of such evidence, the effective date should be used as the cut-off date for data considered by the appraiser.*

While the effective date is not an absolute cut-off point for market data, the appraiser must use particular caution in applying it in these assignments.

Refer to AO-34 for additional information.

GO BACK

# APPRAISAL DEVELOPMENT –
## SCOPE OF WORK ISSUES

### 158. WHAT IS SCOPE OF WORK?

**Question:** What is scope of work?

**Response:** In basic terms, the scope of work is the work an appraiser performs to develop assignment results. USPAP defines scope of work as *the type and extent of research and analyses in an appraisal or appraisal review assignment*. Note that this definition does not include reporting.

### 159. APPLICABILITY OF SCOPE OF WORK RULE

**Question:** In my role as an appraiser, I perform many assignments that are not appraisal or appraisal review. Does the SCOPE OF WORK RULE apply to these assignments?

**Response:** No. The SCOPE OF WORK RULE applies only to appraisal and appraisal review assignments.

Assignments other than appraisal and appraisal review (for example, teaching appraisal courses, providing sales data, collecting market data, analyzing reproduction costs, developing educational texts) still require an appraiser to comply with those portions of USPAP that apply to appraisal practice. The portions of USPAP that apply generally to appraisal practice include the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

### 160. RESPONSIBILITY FOR THE SCOPE OF WORK DECISION

**Question:** Who determines the scope of work?

**Response:** It is the appraiser's responsibility to determine and perform the appropriate scope of work.

### 161. CLIENT SPECIFIES SCOPE OF WORK

**Question:** Is a scope of work specified by the client acceptable?

**Response:** The scope of work specified by the client is acceptable only if it allows the appraiser to develop credible assignment results. If the scope of work specified by the client does not permit development of credible assignment results, the appraiser must either change the scope of work to what the appraiser determines is necessary to develop credible assignment results or withdraw from the assignment.

### 162. ALTERNATIVE VALUATION PRODUCTS

**Question:** I am a state certified appraiser and as such, perform real property appraisals in compliance with USPAP. However, I have recently been asked by a client to provide them with an "alternative valuation product" that they have designed. This product, as designed, does not appear to comply with USPAP. Am I allowed to perform such an assignment as an appraiser?

**Response:** First, it is important to understand that appraisers, not report forms, must comply with USPAP.

If you are able to perform an acceptable scope of work and make modifications and/or additions to the report that would result in USPAP compliance, then you may perform such an assignment as an appraiser.

Otherwise, you must decline or withdraw from the assignment.

GO BACK

### 163.  CLIENT REQUEST TO LIMIT SCOPE OF WORK TO NEW CLIENT NAME

**Question:**  **An appraiser completed an appraisal for Client A. Client B received a copy of the appraisal from Client A and finds it acceptable for their purposes, but wants to be identified as the client in the appraisal report. Client B is aware that appraisers are prohibited from readdressing (or transferring) a completed report to a different client's name. As a result, Client B would like to engage the appraiser in a new assignment, directing the appraiser to limit the scope of work to the same scope of work performed for the prior assignment and to only to change the name of the client. Can the appraiser complete the assignment from Client B under these terms?**

**Response:**  No. Regardless of how similar two assignments may seem, determining the scope of work is unique to each assignment and is an ongoing process. Information discovered during the assignment may result in the appraiser needing to reconsider the scope of work. If a client's instructions (i.e., assignment conditions) direct the appraiser to perform a specific scope of work in a new assignment and to only change the name of the client, then it would be the client, not the appraiser, who has made the scope of work decision and it would not allow the appraiser to consider new information.

In addition, even if the appraiser accepted the client's proposed scope of work as his or her own, that scope of work may not be adequate to produce credible assignment results as required by USPAP. Assignment elements need to be concluded for the new assignment and not assumed.

As is the case with all assignments, when a client's assignment conditions are too restrictive to produce credible assignment results, an appraiser must decline or withdraw from an assignment, unless the appraiser can modify those assignment conditions to allow for credible assignment results.

### 164.  THE IMPACT OF DIFFERENT CLIENTS ON ASSIGNMENT RESULTS WITH OTHERWISE IDENTICAL ASSIGNMENT ELEMENTS AND SCOPE OF WORK

**Question:**  **Assuming otherwise identical assignment elements and scope of work, will an appraiser's value opinion for an assignment be the same regardless of the appraiser's client?**

**Examples:**  **Assuming otherwise identical assignment elements and scope of work, will an appraiser's value opinion for an eminent domain assignment be the same regardless of whether the assignment is for the condemnee or the condemnor?**

**In a litigation assignment with otherwise identical assignment elements and scope of work, will the appraiser's value opinion be the same regardless of whether the appraiser was hired by the defendant or the plaintiff or a third-party?**

**In an appraisal prepared for a tax assessment appeal with otherwise identical assignment elements and scope of work, will the appraiser's value opinion be the same regardless of whether the appraiser was hired by the government or the taxpayer?**

**In an appraisal prepared for a gift donation for tax filing purposes with otherwise identical assignment elements and scope of work, will the appraiser's value opinion be the same regardless of whether the appraiser was hired by the IRS or the taxpayer?**

**Assuming otherwise identical assignment elements and scope of work, will an appraiser's value opinion be the same independent of the client and other intended user(s)?**

**Response:**  Before answering these questions, we first need to review portions of the SCOPE OF WORK RULE.

In any appraisal or appraisal review assignment, the appraiser must identify the problem to be solved, then determine and perform the scope of work necessary to develop credible assignment results in the context of the intended use. Appraisers have broad flexibility and significant

responsibility in determining the appropriate scope of work for an assignment. It is the appraiser's responsibility, with input from the client, to identify the assignment elements. Assignment elements are the:

- *client and any other intended users;*
- *intended use of the appraiser's opinions and conclusions;*
- *type and definition of value;*
- *effective date of the appraiser's opinions and conclusions;*
- *subject of the assignment and its relevant characteristics; and*
- *assignment conditions.*

Assignment conditions include assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions and other conditions that affect scope of work.

The answer to each of the above questions is yes. Providing the other assignment elements (except the client) and the scope of work are the same, the appraiser's value opinion will be the same.

As an example, suppose an appraiser is requested to provide an opinion of the market value of a property for a specific intended use, such as for a potential sale or acquisition. Unless other assignment elements are different, and the appraiser establishes and follows a different scope of work as a result of differing assignment elements, there will be no difference in the value opinion regardless of whether the intended user is the buyer, seller, or a third party.

In all assignments, the appraiser must comply with the Management section of the ETHICS RULE, which prohibits compensation that is based on *a direction in assignment results that favors the cause of the client*. In all assignments, the appraiser must comply with the Conduct section of the ETHICS RULE which states, *an appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests*. In addition, *an appraiser must not advocate the cause or interest of any party or issue*. If an appraiser's results vary solely depending on whether the client is a buyer or seller, the appraiser would be acting as an advocate for the cause of the client.

There are times, however, when assignments involving the same property will have different assignment elements. These could include different effective dates, types and definitions of value (market value, as opposed to insurable value, for example) or assignment conditions. As a result of a change in assignment elements, the value conclusion may be different; but the value conclusion will not differ simply because the client changed. The value conclusion differs because one or more of the other assignment elements changed; as a result, the appraiser established and followed a different scope of work.

### 165. HOW CREDIBLE ASSIGNMENT RESULTS ARE MEASURED

**Question:** **What's important to know about measuring credible assignment results?**

**Response:** To understand what is needed when considering the measure of credible assignment results an appraiser should consider the definition of Credible:

*CREDIBLE: worthy of belief.*

> Comment: *Credible assignment results require support, by relevant evidence and logic, to the degree necessary for the intended use.*

It is important to note that assignment results are the appraiser's opinions and conclusions, not limited to value, and an appraiser is one that is objective and not subjective. Assignment results require support by relevant evidence and logic as supported by the necessary research and

analyses, but it is recognized that the data used in developing the opinions and conclusions is a relative determination made based on the intended use. For example, if a property inspection is not required for the intended use, the exclusion of the inspection is not a measure of credibility of the assignment results, so long as the scope of work is acceptable. And, in the context of this example, the measure of the credibility is research and analyses that support the evidence and logic concluding aspects of the property condition relied upon by the appraiser.

## 166. ERRORS OF COMMISSION AND OMISSION

**Question:** **A reviewer recently told me that my appraisal did not comply with USPAP because of errors of omission and commission and cited Standards Rule 1-1(b). What is the difference between these errors?**

**Response:** An error of *commission* is doing something incorrectly. For example, incorrectly identifying the subject property's relevant characteristics is an error of commission. In a residential appraisal assignment, this could be inaccurately measuring the property.

An error of *omission* is neglecting to do something that is necessary. For example, failing to identify the subject property's relevant characteristic is an error of omission. In a residential appraisal assignment, this could be neglecting to measure the second level of a two-story house.

## 167. MAKING A SERIES OF ERRORS

**Question:** **A reviewer told me that my appraisal did not comply with USPAP because I made several minor calculation and analytical errors. Does USPAP address this issue?**

**Response:** Yes. Standards Rules 1-1(c), 7-1(c), and 9-1(c) address when small errors affect the credibility of the assignment results. For example, in a residential appraisal (Standards Rule 1-1(c)), making small errors in determining the property size, not recognizing minor deferred maintenance items, and making a small negative adjustment when it should have been a positive adjustment, could affect credibility.

An appraiser may not make a number of errors that, while not individually significant to the assignment results, would, when taken together, affect the credibility of those results.

## 168. CHANGING THE SCOPE OF WORK AFTER THE REPORT HAS BEEN SUBMITTED

**Question:** **Sometimes after I have reported the results of my appraisal to my client, my client will often ask me to perform additional work. This can mean looking at more or different comparables or developing another approach. Do these requests for additional work create a new assignment?**

**Response:** No. Requests to perform additional research or analysis change the scope of work, but do not create a new assignment. The additional work can be performed as part of the original assignment. The appraiser may decide, as a business decision, to treat the request for additional research and analysis as a new assignment, but it is not required.

## 169. DIFFERING SCOPE OF WORK

**Question:** **I recently completed an appraisal that complied with FHA guidelines, including a more detailed physical inspection of the subject property than is normally performed for conventional loans. The borrowers changed their minds and are now opting for a conventional loan. Can I simply remove any references to FHA guidelines and resubmit the appraisal for conventional loan purposes? What if I had named FHA/HUD as an intended user in my original appraisal report, can I remove them as an intended user as well?**

GO BACK

**Response:** Because FHA/HUD was named as an intended user in your original report, USPAP requires you to treat the request as a *new assignment*, since the intended user(s) are an assignment element, and as such, cannot be changed once the assignment is complete.

However, for the *new assignment*, recognize that if you obtained any information as a result of your inspection of the subject property for FHA purposes, you would have to disclose the results of that inspection, even if it were a more thorough inspection than would be required for conventional financing. For example, if you noted roof problems because you entered the attic when performing your inspection for FHA, you would be obligated to disclose those same results, even if you wouldn't typically access an attic when inspecting the subject property for conventional financing.

Also, USPAP would not preclude you from removed references to any FHA guidelines in the appraisal report.

See Advisory Opinion 26, *Readdressing (Transferring) a Report to Another Party*, and Advisory Opinion 27, *Appraising the Same Property for a New Client*, for additional guidance.

## 170. JUDGING THE ACTIONS OF AN APPRAISER'S PEERS

**Question:** **In the SCOPE OF WORK RULE, one of the two tests regarding the acceptability of an appraiser's scope of work is what the appraiser's peers would do. There are many appraisers that do things differently, so how would I know what they would do in an assignment?**

**Response:** The SCOPE OF WORK RULE states that the acceptability of an appraiser's work is judged based on two tests:

- *the expectations of parties who are regularly intended users for similar assignments;* <u>*and*</u>
- *what an appraiser's peers' actions would be in performing the same or a similar assignment.*

The first step in knowing what your peers would do is to identify your peers. In USPAP, the term appraiser's peers has a specific meaning. It is defined as:

> *other appraisers who have expertise and competency in a similar type of assignment.*

This definition illustrates that an appraiser's peers are assignment specific and may change from assignment to assignment. This is because appraisers have varying levels of expertise and competency in specific property types, geographic locations, or other important areas of appraisal. For more information on appraiser's peers, please see Advisory Opinion 29, *An Acceptable Scope of Work*.

Knowledge about what an appraiser's peers would do in a similar assignment comes through being a participant in the profession. Typical forums that allow appraisal professionals to share information about practice include appraisal journals and publications, professional meetings and conferences, education though courses and seminars, and appraisal discussion groups.

## 171. TYPE AND DEFINITION OF VALUE, AND CITATION OF SOURCE

**Question:** **USPAP requires Appraisal Reports to state the type and definition of value and cite the source of the definition. What is the type of value? What sources can be used to comply with the requirement to cite the source of the definition of value?**

**Response:** STANDARDS 2, 6, 8 and 10 require that Appraisal Reports state the type and definition of value and cite the source of the definition. The exact wording varies slightly for STANDARD 10.

The type of value is the general class or category of value. Examples include market value or fair value.

GO BACK

The definition of value provides a specific description of the characteristics and conditions of the type of value. Examples include definitions provided on a form report, in FIRREA, in U.S. accounting regulations, U.S. tax regulations, and various court rulings.

USPAP does not provide any specific definition of value or endorse any particular source; it merely defines the general components required to establish a market value definition.

Sources of value definitions could include, for example, a regulatory agency, a legal jurisdiction, an engagement letter, or a textbook.

### 172. MARKET RENT OPINION

**Question:** **A client asked me to provide an opinion of the market rent for a commercial property. Is such an assignment considered an appraisal?**

**Response:** Yes. USPAP defines an appraisal as an opinion of value, and market rent is an expression of value for the right to use a property. Therefore, to comply with USPAP in this assignment, an appraiser would have to follow STANDARD 1 to develop the opinion of the market rent, and STANDARD 2 to report the assignment results.

### 173. USING THE DEFINITION OF VALUE PROVIDED

**Question:** **A client has asked me to use a definition of value included in an engagement letter for the assignment. Is this permitted?**

**Response:** Yes. As part of identifying the problem to be solved, the appraiser must identify the type and definition of value, but USPAP does not require the use of any specific type or definition of value. For example, in a real property appraisal assignment Standards Rule 1-2(c) requires the appraiser to:

> *identify the type and definition of the value ...*

In addition, for an Appraisal Report, Standards Rules 2-2 (a)(vi) require, in part, that the report:

> *state the type and definition of value and cite the source of the definition;*

> <u>*Comment*</u>: *Stating the definition of value also requires any comments needed to clearly indicate to intended users how the definition is being applied.*

The source of the definition of value could be as simple as "provided in the engagement letter."

The requirements for identifying and reporting the definition of value are the same for personal property and business and intangible asset appraisals.

### 174. SALES OR FINANCING CONCESSIONS

**Question:** **The real estate market I appraise in has slowed down over the last 12 to 18 months, and it is now extremely common to see seller concessions as part of a purchase transaction. What are the USPAP requirements regarding proper treatment of sales/financing concessions?**

**Response:** Sales or financing concessions may have an effect on the price paid for a property. As such, it is important for the appraiser to recognize this and analyze their impact. Sales or financing concessions should be considered in light of the type and definition of value used in an assignment. If the value opinion to be developed in a real property appraisal assignment is market value, then Standards Rule 1-2(c) requires the appraiser to ascertain whether the value is to be the most probable price:

> *(i)  in terms of cash; or*
> *(ii)  in terms of financial arrangements equivalent to cash; or*
> *(iii)  in other precisely defined terms; and*

GO BACK

*(iv) If the opinion of value is to be based on non-market financing or financing with unusual conditions or incentives, identify the terms of such financing and any influences on value;*

It should be noted that some assignment conditions, such as Fannie Mae appraisal guidelines, specify how sales or financing concessions are to be addressed in assignments that are subject to their guidelines. Appraisers performing assignments of this type should become familiar with all applicable guidelines in order to satisfy the requirements of the COMPETENCY RULE.

### 175. INTENTIONALLY DEFLATING OR INFLATING OPINIONS OF VALUE

**Question:**  **I think that both intentionally inflating a value opinion or intentionally deflating a value opinion, is unethical. Am I correct?**

**Response:**  Yes. The ETHICS RULE requires an appraiser to be independent, impartial, and objective, and to perform assignments without bias. An appraiser who intentionally inflates or deflates an opinion of value would be in violation, at a minimum, of the Conduct section of that Rule.

### 176. MEASURING SINGLE FAMILY RESIDENCES USING THE ANSI STANDARD

**Question:**  **Are appraisers bound by USPAP required to comply with ANSI Z765-2021, the Standards Method for Measuring Square Footage in Detached and Attached Single Family Houses?**

**Response:**  No. Appraisers are not required by USPAP to comply with ANSI Z765-2021, which is a voluntary standard. However, use of the ANSI standards may be an assignment condition in some assignments.

Although appraisers are not required by USPAP to adhere to a specific standard of square footage measurement, appraisers are required by Standards Rule 1-1(b) to *not commit a substantial error of omission or commission that significantly affects an appraisal*. This rule requires the appraiser to gather factual information in a manner that is sufficiently diligent. Standards Rule 1-1(c) requires appraisers to *not render appraisal services in a careless or negligent manner*. Appraisers must use due diligence and due care in performing appraisal services, including gathering factual data such as square footage.

### 177. EXPOSURE TIME AND MARKETING TIME

**Question:**  **What is the difference between exposure time and marketing time?**

**Response:**  Both the DEFINITIONS and Advisory Opinion 35, *Reasonable Exposure Time in Real Property and Personal Property Market Value Opinions of Value*, define exposure time as:

*an opinion, based on supporting market data, of the length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.*

In contrast, Advisory Opinion 7, *Marketing Time Opinions*, identifies reasonable marketing time as:

*an opinion of the amount of time it might take to sell a real or personal property interest at the concluded market value or at a benchmark price during the period immediately after the effective date of an appraisal.*

In other words, exposure time occurs **before** the effective date of the appraisal, whereas marketing time occurs **after** the effective date. An estimate of reasonable exposure time is required by USPAP for most market value appraisal assignments (see Standards Rule 1-2(c)). An estimate of marketing time is not required by USPAP but may be required by the client. For additional guidance, see AO-35 and AO-7.

GO BACK

**APPRAISAL DEVELOPMENT – SCOPE OF WORK ISSUES**

### 178. MARKETING TIME ON APPRAISAL FORMS

**Question:** I am completing a market value appraisal. I use standard residential report forms that ask for a neighborhood marketing time. Does *marketing time* on these forms mean the same thing as *exposure time* as it is used in USPAP?

**Response:** No. Although the two may be the same length of time, the meanings are different. The exposure time opinion required by USPAP is specific to the subject property and represents the length of time the subject would likely have been listed for sale prior to a hypothetical sale of the subject property on the effective date of the appraisal. Marketing time, in this context, is the typical length of time the *properties in that neighborhood* would be expected to be on the market prior to a sales agreement.

As explained in Advisory Opinion 35, *Reasonable Exposure Time in Real Property and Personal Property Opinions of Value*, exposure time is dependent on the characteristics of the subject property and the market conditions as of the effective date.

Most residential appraisal report forms have a field in which the appraiser must enter an opinion of the neighborhood *marketing time*. However, most residential appraisal report forms do <u>not</u> have a field for which the appraiser must report the reasonable *exposure time*.

The <u>Comment</u> to Standards Rule 1-2(c)(iv) requires the appraiser to *develop* an opinion of reasonable exposure time whenever developing an opinion of value where exposure time is a component of the definition for the value opinion being developed. The <u>Comments</u> to Standards Rules 2-2(a)(vi) and (b)(viii) require the appraiser to *communicate* the opinion of reasonable exposure time in the appraisal report.

### 179. EXPOSURE TIME VALUE RANGE

**Question:** I understand that reasonable exposure time needs to be developed and reported in cases when it is a component of the definition of the value opinion being developed. However, Advisory Opinion 35, *Reasonable Exposure Time in Real Property and Personal Property Opinions of Value* seems to suggest that a *range of values* is required when reporting exposure time. Does this mean I must reference a range of values when I report my opinion of reasonable exposure time?

**Response:** No, a *range of values* is not required when reporting an opinion of reasonable exposure time. However, the appraiser's opinion of reasonable exposure time must be linked to *an* opinion of value, whether it is a specific value or a range of values.

As stated in AO-35:

> *"The reasonable exposure period is a function of price, time, and use, not an isolated opinion of time alone."*

### 180. CHECKING "STABLE" VS. "DECLINING" PROPERTY VALUES

**Question:** When performing residential appraisal assignments I use standard appraisal software forms. The forms ask me to identify whether neighborhood property values are increasing, stable, or declining. I have been told that lenders won't accept appraisal reports where declining is checked (even when this is an accurate analysis), so I usually check stable to accommodate the underwriting process. Is this a violation of USPAP?

**Response:** Yes. If the appraiser is aware that a market is declining and either intentionally or due to gross negligence, reports it as being otherwise, he or she is in violation of the ETHICS RULE.

If an appraisal report indicates that property values are stable when they are actually declining and the appraiser's data supports the conclusion of declining values, the report is misleading and in violation of Standards Rule 2-1(a).

**GO BACK**

In addition, if the appraiser does not properly recognize that a market is declining, he or she may also be in violation of other requirements in STANDARD 1, as well as the COMPETENCY RULE.

### 181. RANGE OF VALUE

**Question:** **Is a range of value considered an appraisal?**

**Response:** Yes. The Comment to the definition of appraisal states:

> An appraisal is numerically expressed as a specific amount, as a **range of numbers**, or as a relationship (e.g., not more than, not less than) to a previous value opinion or numerical benchmark (e.g., assessed value, collateral value). (Bold added for emphasis)

### 182. MORE THAN ONE INTENDED USE

**Question:** **Can an appraisal or appraisal review assignment include more than one intended use?**

**Response:** Yes. USPAP requires appraisers to *identify the intended use of the appraiser's opinions and conclusions.* There is no prohibition against having more than one intended use. However, when performing an appraisal or appraisal review assignment with multiple intended uses, the appraiser must be very careful to clearly identify each of the intended uses in the report to limit the possibility of confusion.

Additionally, the appraiser must comply with all assignment conditions that are applicable to the intended uses. The appraiser must also recognize that the scope of work may need to be expanded in order to provide credible results for all of the intended uses.

### 183. VALUE IN USE REQUEST FROM FEDERALLY REGULATED LENDER

**Question:** **My client, a federally insured financial institution, has asked me to provide a value in use appraisal instead of a market value appraisal. May I do this?**

**Response:** USPAP does not dictate the use of any specific type or definition of value. The type and definition of value must be appropriate for the intended use and intended users.

For federally related transactions, federally insured financial institutions require an opinion of market value, as defined by regulations. Therefore, if you provide a value in use, you may also have to provide a market value, depending on the intended use.

### 184. INSPECTION OF SUBJECT PROPERTY

**Question:** **Have I violated USPAP if I don't inspect the interior of the subject property?**

**Response:** USPAP has no requirement to inspect a subject property's interior. Standards Rule 1-1(b) requires that an *appraiser not commit a substantial error of omission or commission that significantly affects an appraisal.* The Comment to that Standards Rule states, in part:

> Diligence is required to identify and analyze the factors, conditions, data, and other information that would have a significant effect on the credibility of the assignment results.

Standards Rule 1-2(e)(i) requires that an appraiser identify a subject property's physical characteristics, and its legal and economic attributes. But note that the required identification must be *relevant to the type and definition of value and intended use of the appraisal.* If an interior inspection is not relevant, it is not required. Determining whether an interior inspection is relevant is a scope of work decision. The SCOPE OF WORK RULE states:

> An appraiser must not allow assignment conditions to limit the scope of work to such a degree that the assignment results are not credible in the context of the intended use.

GO BACK

Advisory Opinion 2, *Inspection of the Subject Property* advises that the appraiser's personal inspection, and the extent of that inspection, is an aspect of the scope of work and may be required as an assignment condition and/or be necessary for the intended use of the assignment results. The extent of any personal inspection can be quite comprehensive, or very limited in scope. Regardless of the level of detail of a personal inspection, it is always possible to perform a personal inspection that is even more thorough. It is the appraiser's responsibility to determine the appropriate scope of work, including the extent of a personal inspection (when one is performed, required or necessary to produce credible assignment results given the intended use of the assignment results). An appraiser must withdraw from the assignment unless the appraiser can:

- *modify the assignment conditions to expand the scope of work to include gathering the necessary information; or*
- *use an extraordinary assumption about such information, if credible assignment results can still be developed*

Additional guidance about inspecting properties can be found in Advisory Opinion 23, *Identifying the Relevant Characteristics of the Subject Property of a Real Property Appraisal Assignment*, and Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*.

### 185. DOES INSPECTING PHOTOGRAPHS CONSTITUTE A PERSONAL INSPECTION OF A SUBJECT PROPERTY?

**Question:** **I am a licensed trainee with approximately six months of experience. My supervisory appraiser recently determined that I am competent to perform inspections on my own; however, many of our clients require the supervisory appraiser to personally inspect the property as well. If I do the inspection by myself, but take numerous representative photos of the subject property, may my supervisory appraiser indicate in the certification for the report that he also personally inspected the property?**

**Response:** A personal inspection of the property is not the same as viewing photographs of the property. If the supervisor did not personally inspect the property, he may not indicate otherwise in the report, including in the certification. Any appraiser signing the certification is indicating they recognize their ethical obligations, including as it relates to correctly stating if they did or did not personally inspect the property.

### 186. IS IT PERMISSIBLE TO USE MLS PHOTOS OF ACTIVE LISTINGS?

**Question:** **I use a standard non-editable appraisal report form that contains a statement saying I personally inspected the exterior of the comparable sales from the street, but it does not address active listings. One of my clients now requires two active listing comparable properties to be included with every appraisal report, and, that, if available, I should include the MLS photos of the active listings in the appraisal report instead of inspecting the exterior of the active listings from the street and taking my own photos. Am I compliant with USPAP if I do not physically inspect the exterior of the active listing properties from the street and only use the MLS photos?**

**Response:** Yes; USPAP does not require inspections or photographs. However, both are often required by clients. If an inspection of the active listing comparables is not required for credible assignment results, and if it is not contrary to assignment conditions or specific statements in the report, then using an MLS photo and not performing an exterior inspection would be acceptable.

### 187. IS THE COST APPROACH NECESSARY FOR APPRAISAL OF VACANT LAND?

**Question:** **The property I am appraising is land without improvements, to be valued as is without foreseeable change in zoning or use. Does Standards Rule 1-4(b)(i) mean that I must complete a cost approach for my market value opinion to be credible?**

**Response:** No. In the assignment you describe, the land is the subject of the appraisal. Since there are no improvements and testing the economic feasibility of a change in use is not part of the appraisal problem, a cost approach is not necessary in this assignment. The methods and techniques that are necessary in solving the appraisal problem will depend on the type and definition of value and intended use of the appraisal, and on the relevant characteristics of the property.

As required by Standards Rule 1-1(a):

> *an appraiser must be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal.*

An appraiser's decision about which methods and techniques are necessary to solve the appraisal problem is largely shaped by the information gathered in response to Standards Rule 1-2(e), which requires an appraiser to *identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal*.

If the value opinion to be developed is market value, and when necessary for credible assignment results, Standards Rule 1-3 requires an appraiser to identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations, economic supply and demand, the physical adaptability of the real estate, and market area trends, and develop an opinion of the highest and best use of the real estate.

Having completed the actions required by Standards Rule 1-2 and, when applicable, Standards Rule 1-3, an appraiser can reasonably determine which methods and techniques are necessary in solving the appraisal problem. While there are exceptions, land without improvements is often appraised by using the sales comparison approach or income approach, or both.

### 188. IMPROVEMENT ONLY APPRAISAL

**Question:** **In a real estate appraisal is it permissible to appraise only the improvements?**

**Response:** Yes. Standards Rule 1-2(e)(v) states that the subject of an assignment may be a physical segment of a property.

The subject of a real property appraisal is not required to include all of the physical parts of an identified parcel or tract of real estate. The subject of a real property appraisal can be all or any part of an improved or unimproved parcel or tract of identified real estate. For example, the subject of a real property appraisal could be a part of the land, the improvements on or to the land, or some other configuration within a parcel or tract of identified real estate.

Use of a hypothetical condition or extraordinary assumption is not necessary in the specific case of appraising the building component of an improved property, although one or both may be necessary in other specific cases. However, to avoid communicating a misleading appraisal report, the report would have to disclose the *existence* of the land as part of the property, but the land does not have to be included in the valuation.

### 189. APPRAISING ONLY THE UNDERLYING LAND OF AN IMPROVED PROPERTY

**Question:** **I have been asked by my client to appraise the underlying land of an existing shopping center. Can I perform such an assignment under USPAP and if so, would this require the use of a hypothetical condition?**

**Response:** Yes, you can perform this type of assignment in compliance with USPAP. Standards Rule 1-2(e) states, in part, the appraiser must:

GO BACK

> *identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including:*
>
> *(i)   its location and physical, legal, and economic characteristics;*
>
> *(ii)  the real property interest to be valued;*
>
> *(v)   whether the subject property is a fractional interest, physical segment, or partial holding.*

In addition, the <u>Comment</u> to this Rule states, in part:

> *An appraiser is not required to value the whole when the subject of the appraisal is a fractional interest, a physical segment, or a partial holding.*

The subject of a real property appraisal is not required to include all of the physical parts of an identified parcel or tract of real estate. The subject of a real property appraisal can be a full or fractional ownership interest in all or any part of an improved or unimproved parcel or tract of identified real estate. For example, the subject of a real property appraisal could be a partial-interest in the land, all or part of the land, the improvements only, the fee simple interest of a fully leased or otherwise encumbered property or some other configuration within a parcel or tract of identified real estate.

Use of a hypothetical condition or extraordinary assumption is not necessary in the specific case of appraising the land component of an improved property, although one or both may be necessary in other specific cases. The same is true whenever appraising any other portion of the subject. To avoid communicating a misleading appraisal report, the report should disclose the *existence* of the improvements as part of the property, but the improvements do not have to be included in the valuation.

### 190.  APPRAISING PHYSICAL SEGMENTS (5-ACRE PORTION)

**Question:**  **A local lender has asked me to appraise only a 5-acre portion of a 62-acre parcel. Am I permitted to comply with this request?**

**Response:**  Standards Rule 1-2(e)(v) states that the subject of an assignment may be a physical segment of a property. However, appraisers must also comply with any laws, regulations, guidelines or other assignment conditions that might apply.

If the assignment requires compliance with published assignment conditions, the appraiser must be aware of the current guidelines (or regulations, if applicable).

Failure to recognize applicable assignment conditions would be a violation of the ETHICS RULE or COMPETENCY RULE.

### 191.  PROPOSED IMPROVEMENTS – PLANS AND SPECIFICATIONS REQUIRED

**Question:**  **I have been asked to perform an appraisal involving proposed improvements. The client has indicated that plans and specs have not been finalized. Does USPAP require me to review the plans and specifications prior to completing this assignment?**

**Response:**  No. The <u>Comment</u> to the Standards Rule 1-2(e)(i)-(v) states, in part:

> *When appraising proposed improvements, an appraiser must examine and have available for future examination, plans, specifications, **or other documentation sufficient to identify the extent and character of the proposed improvements**.* (Bold added for emphasis)

Hence, the appraisal can be based on other documentation if that documentation provides sufficient information to properly identify the relevant characteristics of the subject property.

Additional guidance on appraising proposed improvements can be found in Advisory Opinion 17, *Appraisals of Real Property with Proposed Improvements*.

## 192. IS AN AVM AN APPRAISAL?

**Question:** Are the results from an Automated Valuation Model (AVM) an appraisal?

**Response:** No. Advisory Opinion 18, *Use of an Automated Valuation Model (AVM)*, states:

> *An AVM's output is not, by itself, an appraisal, and communication of an AVM's output is not, in itself, an appraisal report.*

An AVM is a tool that delivers an estimation or calculation, whereas an appraiser arrives at a value opinion by applying his or her judgment and experience. An appraisal is defined as an opinion of value, which is distinctly different from an estimate or calculation of value. An AVM uses automated processes and cannot produce an opinion of value because only individuals can exercise judgment and form opinions. An AVM is just one tool among many that an appraiser might use to arrive at an opinion of value.

Appraisers are cautioned that this response is based on the USPAP definition of appraisal. Jurisdictions that use a different definition of appraisal may reach a different conclusion.

## 193. APPRAISER'S USPAP OBLIGATIONS WHEN USING AN AVM

**Question:** What are an appraiser's USPAP obligations when using an Automated Valuation Model (AVM)?

**Response:** Many appraisers use calculators, spreadsheets, analytic software, and similar tools to analyze market data and calculate assignment results. The nature of the appraiser's service and how these tools are used are important factors in recognizing USPAP obligations. When appraisers use an AVM, it can be as part of an appraisal assignment that provides value opinions to the client, or it may be for an assignment to run the AVM and provide the output to the client.

Advisory Opinion 18, *Use of an Automated Valuation Model (AVM)*, provides advice to help appraisers properly distinguish among the uses of an AVM. Additional guidance can be found in Advisory Opinion 37, *Computer Assisted Valuation Tools*.

An appraiser who uses an AVM for any purpose must comply with USPAP. The portions of USPAP that apply generally to appraisal practice include the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

When the assignment includes providing an opinion of value for real property, the assignment is an appraisal and the RECORD KEEPING RULE, the SCOPE OF WORK RULE, and STANDARDS 1 and 2 also apply.

## 194. UNIFORM ACT AND SCOPE OF WORK

**I'm doing an appraisal assignment for a government agency that is subject to the jurisdiction of The Uniform Relocation Assistance and Real Property Acquisitions Act of 1970, as Amended (commonly known as, the Uniform Act), and its implementing regulation, 49 CFR Part 24. The regulation requires the acquiring agency to develop the scope of work and define the appraisal problem cooperatively with the appraiser. This is somewhat different from USPAP's SCOPE OF WORK RULE which places that responsibility primarily on the appraiser. The agency is providing a draft scope of work and asking me to comply with that as a minimum assignment condition. This raises two possible scenarios.**

**Question:** **(1.) If the agency scope of work seems appropriate, do I need to state somewhere in my report that the scope of work was developed by the agency with my concurrence?**

GO BACK

**Question:** **(2.) Assume that I believe the agency scope of work is inappropriate or inadequate. I discuss this with the agency and they insist that the scope of work they have developed is appropriate for their program needs. Can I complete the assignment and be in USPAP compliance?**

**Response:** The answer to both questions is the same. It is the appraiser's responsibility to determine and perform the appropriate scope of work.

The scope of work performed in the assignment must be disclosed in the report. However, USPAP does not address disclosure of the client's role in determining the scope of work.

Direction from the client on the scope of work is acceptable only if the appraiser is able to develop credible assignment results. If the scope of work specified by the client does not allow the development of credible assignment results, the appraiser must either (a) obtain the client's agreement for an appropriate scope of work, or (b) withdraw from the assignment.

## 195. APPRAISING LARGE GROUPS OF SIMILAR OR LIKE ITEMS

**Question:** **When an appraiser is asked to value a significantly large group of similar or like items does USPAP require that the appraiser follow STANDARD 5 for mass appraisals?**

**Response:** No. USPAP does not require that STANDARD 5 be followed in such cases. Mass appraisal, for which performance standards are addressed in STANDARD 5, is an appraisal method. USPAP does not dictate the use of any particular method or technique in any particular assignment or under any particular set of circumstances. While mass appraisal methods may be helpful in the appraisal of large numbers of similar assets, whether its use is appropriate in a particular assignment would depend on such things as assignment conditions, the intended use of the appraisal results, and, at times, agreement with the client.

## 196. BLOCKAGE DISCOUNT AND STANDARD 5

**Question:** Is there any connection between the application of STANDARD 5 for mass appraisals and the application of a blockage discount?

**Response:** No. There is no connection between the application of mass appraisal methods, as addressed in STANDARD 5, and the application of a blockage discount. A blockage discount may be applicable when the appraisal problem being addressed indicates an assumption that a large number of similar assets would be offered for sale on the market at once. Under some circumstances, this would create an oversupply, which would depress the value of the assets.

Whether the application of a blockage discount is appropriate depends on many factors, including the intended use of the appraisal, the type and definition of value, the conditions of the assignment, and the relevant characteristics of the assets. Relevant characteristics include the nature of the assets, their market and other factors.

## 197. CALCULATING BLOCKAGE DISCOUNT

**Question:** **Does USPAP offer guidance in how to calculate an appropriate blockage discount?**

**Response:** No. USPAP focuses on appraisal standards, not appraisal methodology or how to perform calculations. USPAP does require that an appraiser be competent (see the COMPETENCY RULE) and states, in Standards Rule 1-1(a) and the other development Standards, that an appraiser must:

*be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal.*

GO BACK

## 198. BUSINESS VALUATION USING ASSET-BASED (COST) APPROACH

**Question:** **I am valuing a controlling interest in a business enterprise by use of an asset-based (cost) approach, and that business owns real property. Am I required to have an appraisal of the real property or may I use other indications of the real property value?**

**Response:** An appraisal of the real property would not always be required. Whether or not an appraisal is necessary is based on whether credible assignment results can be developed for the business interest without such an appraisal, and whether or not assignment results are credible is measured in the context of the intended use of those assignment results. The decision is part of the scope of work determination the business appraiser must make.

For some intended uses, a business appraiser may determine that a real property appraisal, performed by an appraiser competent to perform the appraisal in compliance with USPAP. For other intended uses, the business appraiser may determine that an indication of the real property value other than a real property appraisal may be appropriate. Such indications could be a management estimate, a recent transaction of the property, or tax assessment values.

## 199. ALLOCATION OF VALUE OPINIONS

**I often perform real property appraisal assignments that include not only real property but also personal property and/or intangible assets (examples include property types such as hotels and restaurants).**

**Often times, my clients will request that I separate or allocate a portion of the defined value opinion to these non-real property components. These requests raise the following four questions.**

**Question:** **(1.)  What exactly are the appraiser's USPAP obligations in performing this separation of value?**

**Question:** **(2.)  May this allocation be accomplished without the appraiser developing an opinion of value in compliance with STANDARD 7 or 9?**

**Question:** **(3.)  Is an allocation considered to be synonymous with an opinion of value or is it the result of a mathematical calculation?**

**Question:** **(4.)  There are also occasions when the client does not specifically request separate valuations of non-real property assets, even though they may be present. Is the appraiser still required to value those assets separately?**

**Response:** Standards Rule 1-2(e) requires an appraiser to:

*Identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including:*

*(iii) any personal property, trade fixtures, or intangible assets that are not real property but are included in the appraisal;…*

Standards Rule 1-4(g) states:

*When personal property, trade fixtures, or intangible assets are included in the appraisal, the appraiser must analyze the effect on value of such non-real property assets.*

And the Comment to Standards Rule 1-4(g) further states:

*When the scope of work includes an appraisal of personal property, trade fixtures or intangible assets, competency in personal property appraisal (see STANDARD 7) or business appraisal (see STANDARD 9) is required.*

Given this background, each of the questions can be answered as follows.

GO BACK



**Question:** **(1.)  What exactly are the appraiser's USPAP obligations in performing this separation of value?**

**Response:** Whether this is labeled a separation or an allocation, it is an appraisal as defined in USPAP.

**Question:** **(2.) May this allocation be accomplished without the appraiser developing an opinion of value in compliance with STANDARD 7 or 9?**

**Response:** No. Once it is understood that performing this separation of value is synonymous with performing this appraisal, compliance with the applicable Standards Rules is required, as is appropriate competency.

**Question:** **(3.) Is an allocation considered to be synonymous with an opinion of value or is it the result of a mathematical calculation?**

**Response:** As stated in the response to Question #1, an allocation is synonymous with an appraisal.

**Question:** **(4.) There are also occasions when the client does not specifically request separate valuations of non-real property assets, even though they may be present. Is the appraiser still required to value those assets separately?**

**Response:** No. This is a scope of work decision to be made by the appraiser; Standards Rule 1-4(g) does not require separate appraisals of these different types of assets. Standards Rule 1-4 (g) states:

> *When personal property, trade fixtures, or intangible assets are included in the appraisal, the appraiser must analyze the effect on value of such non-real property assets.*
>
> <u>Comment</u>: *When the scope of work includes an appraisal of personal property, trade fixtures or intangible assets, competency in personal property appraisal (see STANDARD 7) or business appraisal (see STANDARD 9) is required.*

Some appraisers and users of appraisals believe the requirement that *the appraiser must analyze the effect on value of such non-real property assets* in Standards Rule 1-4(g) is a requirement for the separate appraisal of those items in all assignments. That is incorrect. Analyzing the effect on value might be appropriately made through the selection of comparable properties used in the sales comparison approach or the deduction of certain line items of expense for management fees, maintenance or replacements in the income approach, for example.

## 200. LEASED FEE INTEREST WHEN INTANGIBLE ASSETS EXIST

**Question:** **I am appraising a single tenant retail property that is being sold with financing by my client, which is a bank. The property was developed by XYZ Company and just completed last month for a total development cost (land and improvements) of $1,500,000. The developer is part of a large retail chain that will occupy the building at an above-market lease rate. The property is being sold to an investor on a sale-leaseback basis for over $2,000,000. This sale price is supported by several other sales that also have above-market leases that were also created by the same type of sale-leaseback arrangements.**

**When I questioned the seller/tenant's representative, they said that *both parties recognized the lease rate was above-market* and that the price was well above replacement cost. They noted that the lease supported the sale price and that the credit strength of the XYZ Company warranted using the above-market lease rate for the valuation. Should I allocate the portion of above-market rent to the real estate or treat it as an intangible? My client insists that I attribute the entire rent to real property value. What does USPAP require in this situation?**

**Response:** The subject of this appraisal is real property, not intangibles, specifically the leased fee estate; therefore, Standards Rule 1-2(e) applies. The characteristics of the lease must be identified in accordance with Standards Rule 1-2(e)(iv). In developing a real property appraisal, Standards Rule 1-2(e) states an appraiser must:

*identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including:*

*(i)   its location and physical, legal, and economic characteristics;*

*(ii)  the real property interest to be valued;*

*(iii) any personal property, trade fixtures, or intangible assets that are not real property but are included in the appraisal;*

*(iv) **any known** easements, restrictions, encumbrances, **leases**, reservations, covenants, **contracts**, declarations, special assessments, ordinances, or other items of a similar nature; and*

*(v)  whether the subject property is a fractional interest, physical segment, or partial holding.*
(Bold added for emphasis)

Further, the valuation in this assignment must address the effect of the lease on value in accordance with Standards Rule 1-4(d) that states:

*When developing an opinion of the value of a leased fee estate or a leasehold estate, an appraiser must analyze the effect on value, if any, of the terms and conditions of the lease(s).*

In this situation you are required to analyze the effect on value of the above-market lease. The result of the analyses must be reported in accordance with Standards Rule 2-2, for example 2-2(a)(x)(5) which states, in part:

*summarizing the information analyzed and the reasoning that supports the analyses, opinions, and conclusions;...*

## 201.  PURCHASE CONTRACT IS NOT PROVIDED TO THE APPRAISER

**Question:**  **I was recently engaged to conduct a market value appraisal of a one-to-four unit residential property. The intended use of this appraisal is to assist the client in analyzing the loan collateral associated with the property's purchase. I requested a copy of the purchase contract from the client, but they refused to provide it although they acknowledged that a contract for purchase of the property in fee simple exists. They did, however, provide the contract price orally. Can I continue this assignment, without the purchase contract, and comply with USPAP?**

**Response:**  Yes. You can complete the assignment in compliance with USPAP; however, you will need to ensure compliance with Standards Rule 1-5(a) in developing the appraisal, and with Standards Rule 2-2(a)(viii) or (b)(x), as applicable to the type of appraisal report determined most appropriate, given the intended users, in reporting the assignment results.

Standards Rule 1-5(a) states:

*When the value opinion to be developed is market value, an appraiser must, **if such information is available to the appraiser in the normal course of business**: (Bold added for emphasis)*

*(a) analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal;*

*The <u>Comment</u> to the corresponding reporting requirements in Standards Rules 2-2(a)(x)(3) and 2-2(b)(xii)(3) states in part:*

*If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required.*

The appraiser has an obligation to make an effort to obtain a copy of the purchase contract, and the report must state what efforts were made. In addition, if a copy of the contract cannot be

**GO BACK**

obtained, the appraiser must perform the analysis and report the results of the analysis based on the information provided.

Complying with these Standards Rules ensures that the existence and unavailability of the purchase contract is appropriately disclosed, and intended users will not be misled as to how this situation was handled in the analysis and report.

### 202. AVAILABILITY OF CURRENT AGREEMENT OF SALE

**Question:** **When developing a real property appraisal, what is an appraiser's responsibility under USPAP if a lender refuses to provide a copy of the current agreement of sale of the subject property?**

**Response:** Standards Rule 1-5(a) requires an appraiser developing a real property appraisal, if such information is available to the appraiser in the normal course of business, to:

> *analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal.*

The normal course of business for an appraiser when the property is known to be the subject of a pending transaction is to ask the client for the terms of the agreement. If this request is denied, then the appraiser should make reasonable attempts to obtain this information from other sources through legal means commonly available to and practiced by the appraiser's peers. The <u>Comment</u> to Standards Rules 2-2(a)(x)(3) and (b)(xii)(3) also includes the requirement that:

> *If such information is unobtainable, a statement on the efforts undertaken by the appraiser to obtain the information is required. If such information is irrelevant, a statement acknowledging the existence of the information and citing its lack of relevance is required.*

Refer to Standards Rules 2-2(a)(x) and (b)(xii) for related reporting requirements, and to Advisory Opinion 1, *Sale and Transfer History* for additional information.

### 203. RECONCILIATION OF THE APPROACHES TO VALUE

**Question:** **For a real property appraisal, I know that USPAP requires an appraiser to develop a reconciliation of the approaches to value that are used in an assignment. Does USPAP require the appraiser to reconcile the data utilized within each approach to value?**

**Response:** Yes. Standards Rule 1-6 states:

> *In developing a real property appraisal, an appraiser must:*
>
> *(a) reconcile the quality and quantity of data available **and analyzed within the approaches used;** and*
>
> *(b) reconcile the applicability and relevance of the approaches, methods and techniques used to arrive at the value conclusion(s).* (Bold added for emphasis)

### 204. ADJUSTMENTS IN SALES COMPARISON APPROACH

**Question:** **Does USPAP place any limitation on the size of adjustments made to comparable sales in the sales comparison approach to value?**

**Response:** No. USPAP places no limitations on the size of adjustments made in the sales comparison approach. However, it should be noted that certain clients and other intended users may have assignment conditions addressing this topic.

GO BACK

## 205. USING PREDETERMINED RULES FOR MARKET ADJUSTMENTS (NEW)

**Question:** **In my Appraisal Reports prepared on a Fannie Mae 1004 form, I often need to conclude whether adjustments for changes in market conditions are necessary. To make that conclusion, I use the following three rules:**

1. **I do not adjust for market conditions if a comparable sale sold within three months of the effective date of the appraisal;**
2. **I do not adjust for market conditions when the percentage change is low, such as 3% annually;**
3. **I limit my market conditions adjustments to 1% per month, even if the market is changing at a rate greater than 1% per month.**

**Is it acceptable under USPAP to use predetermined rules as the reasoning for my conclusions associated with market condition adjustments?**

**Response:** No. A predetermined rule does not meet the appraisal development requirements. Standards Rule 1-3(a) requires an appraiser to identify and analyze market data and to draw supported conclusions:

> *When necessary for credible assignment results in developing a market value opinion, an appraiser must:*
>
> *(a) **identify and analyze** the effect on use and value of:*
> *(i) existing land use regulations;*
> *(ii) reasonably probable modifications of such land use regulations;*
> *(iii) **economic supply and demand**;*
> *(iv) the physical adaptability of the real estate; and*
> *(v) **market area trends**; and*
>
> <u>Comment</u>: *An appraiser must avoid making an **unsupported assumption or premise about market area trends**, effective age, and remaining life.* (Bold added for emphasis)

Simply applying a predetermined rule to determine whether to make an adjustment for market conditions without analyzing market data and concluding what it indicates results in an unsupported conclusion and may result in misleading assignment results.

## 206. UPDATING A PRIOR ASSIGNMENT WITH A DIFFERENT SCOPE OF WORK

**Question:** **Several months ago I appraised a property using only a sales comparison approach. My client is now asking that I perform an update of my prior appraisal, but they now want me to include a cost approach. Does USPAP allow me to do this?**

**Response**: Yes. Update is a business term; under USPAP, the second assignment from the same client is a new assignment with its own scope of work and the requirement to produce credible assignment results. Advisory Opinion 3, *Update of a Prior Appraisal*, states, in part:

> *When developing an opinion regarding a property that was the subject of a previous assignment, the scope of work in the **new assignment** may be different from the scope of work in the prior one.* (Bold added for emphasis)

Therefore, the new assignment can be performed with a scope of work greater than that performed in the original assignment.

## 207. APPRAISAL UPDATE WITH NO CHANGE IN VALUE

**Question:** **I was recently contacted by a client for whom I had previously completed an appraisal. The client asked if I could simply tell them whether there have been changes in the market since**

**GO BACK**

the time of my appraisal, and whether the value of the property remains the same. Am I permitted to do this under USPAP?

**Response:**  Yes. However, it must also be understood that an appraiser making a determination that the value of a property has not changed is performing an appraisal as defined in USPAP. The <u>Comment</u> to The USPAP definition of APPRAISAL states:

> *An appraisal is numerically expressed as a specific amount, as a range of numbers, **or as a relationship (e.g., not more than, not less than) to a previous value opinion** or numerical benchmark (e.g., assessed value, collateral value).* (Bold added for emphasis)

In addition, the appraiser is obligated to comply with the reporting requirements of USPAP. The request from the client should be treated as a new assignment, which could be completed in accordance with Advisory Opinion 3, *Update of a Prior Appraisal*.

### 208. UPDATE OF AN APPRAISAL COMPLETED BY ANOTHER APPRAISER

**Question:**  **I was recently asked to update an appraisal performed by another appraiser who works for a different appraisal company. Can I prepare an update if the original appraisal was performed by another appraiser?**

**Response:**  Yes. Advisory Opinion 3, *Update to a Prior Appraisal*, provides advice on how such an assignment can be performed in conformance with USPAP.

### 209. DOES A NEW ASSIGNMENT REQUIRE STARTING OVER?

**Question:**  **Advisory Opinion 26, *Readdressing (Transferring) a Report to Another Party*, and Advisory Opinion 27, *Appraising the Same Property for a New Client*, clarify that I cannot readdress an appraisal, and I must treat a subsequent request as a new assignment. Does that mean I must start from scratch since I would be performing a new assignment for a different client? Must I re-inspect the property?**

**Response:**  A new assignment does not mean that you must start from scratch. You must decide the appropriate scope of work for the new assignment. This would include a decision as to whether or not it is necessary to perform another inspection. The scope of work for the new assignment can be different from the scope of work completed in the earlier assignment.

As with any assignment, you might be able to use information and analyses developed for a previous assignment. Appraisers are often selected for subsequent assignments specifically because of experience and demonstrated competency in a prior assignment.

One must be mindful of obligations relating to the use of confidential information. The <u>Confidentiality</u> section of the ETHICS RULE states, in part:

> *An appraiser must not disclose: (1) confidential information; or (2) assignment results prepared for a client to anyone other than:*

> - *the client;*
> - *parties specifically authorized by the client;*
> - *state appraiser regulatory agencies;*
> - *third parties as authorized by due process of law; or*
> - *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.*

GO BACK

## 210. RECERTIFICATION OF VALUE

**Question:** **I heard that a recertification of value is no longer permitted. Is this true?**

**Response:** No. This is not true; however, there is confusion surrounding this question because the term recertification of value is often mistakenly used by some clients in place of the term update.

Appraisers may perform a recertification of value to confirm whether or not the conditions of a prior appraisal have been met. However, if a client wants to know whether the value of a property has changed (or remained the same) since a prior appraisal, this is an update.

Regardless of the label used, an appraisal of a property that was the subject of a prior assignment is not an extension of the prior assignment – it is a new appraisal assignment. Information about an appraiser's obligations in this situation can be found in Advisory Opinion 3, *Update of a Prior Appraisal*.

## 211. RECERTIFICATION OF VALUE AND APPRAISAL UPDATE

**Question:** **The terms recertification of value and appraisal update are often used interchangeably. Do they have the same meaning?**

**Response:** No, these terms do not have the same meaning. The terms update and recertification of value are discussed in Advisory Opinion 3, *Update of a Prior Appraisal*.

An update is a new appraisal assignment involving a property that was previously appraised. An update is subject to the same USPAP requirements as any other appraisal assignment.

A recertification of value is performed to confirm whether or not the conditions of a prior assignment have been met. One example of a recertification of value is a final inspection. When an appraiser is asked to complete a final inspection, the appraiser is confirming that conditions established in an assignment have, or have not, been met.

Final inspections are commonly used in the case of proposed construction where an appraisal is completed subject to completion per plans and specifications.

See AO-3 for additional information.

## 212. APPRAISERS PROVIDING COMPS

**Question:** **I have a client that just wants me to provide sales data from a neighborhood. Are there any USPAP development or reporting standards I must comply with to perform this task?**

**Response:** To answer this question, it is important to identify exactly what the appraiser is being asked to do. If the appraiser is asked to exercise his or her own judgment to determine which sales are most comparable to the subject property, then they would be engaged in appraisal practice. If the appraiser, for example, communicates a range of value based on the comparable data for a subject property, this would be an appraisal and the appraiser would need to comply with Standards 1 and 2.

This should be contrasted to a request for an appraiser to provide just data. For example, if an appraiser is asked by a client to provide sales data of all homes located within a one-mile radius of a specific address, the appraiser is just providing raw sales data pursuant to the client's defined parameters and is not performing an appraisal. The appraiser would not need to comply with any development or reporting standards.

For related guidance on this topic, please see Advisory Opinion 19, *Unacceptable Assignment Conditions in Real Property Appraisal Assignments*.

GO BACK

### 213. CAN APPRAISERS PERFORM COMP CHECK ASSIGNMENTS?

**Question:** **I'm a residential appraiser and have been asked to perform a comp check (or pre-comp) assignment, where a client wants to get an idea of the value of a home prior to proceeding with a mortgage financing transaction. Does USPAP allow me to perform this type of assignment?**

**Response:** Yes. These types of assignments are allowed under USPAP. To understand the USPAP requirements, it is important to identify exactly what the appraiser is being asked to do. If the appraiser is asked to provide comps, that would typically mean the appraiser would be exercising his or her own judgment to determine which sales are most comparable to the subject property. The appraiser may choose to include only those sales that he or she deems are most similar to the subject in size, location, quality, or other characteristics, which could mean that certain sales may be omitted. In this case, the resulting data would have been filtered by the appraiser's judgment, which would have the net effect of providing a range of value to the client. This range of value is defined as an appraisal under USPAP; therefore, the appraiser would be obligated to comply with STANDARDS 1 and 2.

But, comp check assignments should be contrasted to requests for an appraiser to simply provide data. For example, an appraiser asked by a client to provide sales data of all homes located within a one-mile radius of a specific address could comply with the client's request without needing to comply with STANDARDS 1 and 2, because the appraiser would just be providing sales data pursuant to the client's defined parameters. In this example, the appraiser must be careful not to communicate any opinions or conclusions regarding the data provided.

For additional related guidance on this topic, please refer to Advisory Opinion 19, *Unacceptable Assignment Conditions in Real Property Appraisal Assignments*.

### 214. SUDDEN MARKET CHANGES RELATED TO CATASTROPHIC EVENTS

**Question:** **I live and work just outside an area that was devastated by a catastrophic weather event. My market area experienced sudden changes in supply and demand, and real estate sales prices climbed rapidly for a period of time following the disaster. Does USPAP provide advice to real estate appraisers on how to handle sudden market changes brought about by such catastrophic events?**

**Response:** Although USPAP does not directly address the appraisal issues associated with catastrophic events, the following passages may be especially important in appraisals involving properties in markets that are changing rapidly, for any reason.

Standards Rule 1-2(e) requires an appraiser to identify economic characteristics relevant to the subject property, and Standards Rule 1-3(a)(iii) specifically requires analysis of economic supply and demand.

Standards Rule 2-2(a)(iv) requires an Appraisal Report to *contain information, documents, and/or exhibits sufficient to identify the real estate involved in the appraisal, including the physical, legal, and economic property characteristics relevant to the assignment*. (Bold added for emphasis) Market conditions (including sudden market changes related to catastrophic events) are economic property characteristics, and, as such, should be identified in the development of an appraisal and disclosed in the appraisal report.

Standards Rules 2-2(a)(vi) addresses the type and definition of value used in an assignment. The Comment to this Standards Rule states, in part:

> *Stating the definition of value also requires any comments needed to clearly indicate to the intended users how the definition is being applied.*

In cases of sudden market change, it would be necessary to specifically disclose such things as how the appraisal has addressed the motivation of buyers and sellers, supply and demand, the conditions of the sale (e.g., exposure in a competitive market), and other important related

influences on the property.

As noted in STANDARD 2, the content of all real property appraisal reports, ...*must be consistent with the intended use of the appraisal*. In the case of a rapidly changing market, the report must have enough information to allow intended users to understand the market conditions and to use that information in their decision making.

### 215. RESTRICTIONS OR ENCUMBRANCES ON PERSONAL PROPERTY

**Question:**  **What are some examples of a restriction or encumbrance that could have an effect on the value of personal property?**

**Response:**  A restriction or encumbrance exists when the owner of a property is prohibited from exercising one of the traditional rights of ownership (i.e., when one of the "sticks" in the bundle of rights is removed). Examples include: constraints on the exhibition of a work of art; a prohibition or limit on the breeding of an animal; a prohibition on the use of a machine in a particular location; or the prohibition or limit on the sale of the item produced by a particular machine.

Each of these examples shows a restriction or encumbrance that prohibits a particular action, and in each case, that prohibition may have an effect on value.

### 216. LIENS ON PERSONAL PROPERTY

**Question:**  **I am appraising an asset that is encumbered by a lien. Does the term encumbrances in Standards Rule 7-4(d) mean that when providing an opinion of the value of an asset that is being used as collateral, an appraiser would conclude a value based on the portion of the asset that is not encumbered by the lien (i.e., taking into consideration the remaining balance outstanding on a loan secured by the asset)? Also, must it then be stated in the report which particular asset(s) being appraised is encumbered by this lien?**

**Response:**  Standards Rule 7-4 states, in part:

*In developing a personal property appraisal, an appraiser must collect, verify, and analyze all information necessary for credible assignment results.*

Standards Rule 7-4 (d) further states:

*When developing an opinion of value of a lease, leased, or encumbered property, an appraiser must analyze the effect on value, **if any**, of the terms and conditions of the lease(s) or encumbrances.* (Bold added for emphasis)

The mere existence of a lien or other encumbrance does not necessarily affect value, even though the owner's equity in the property may be greatly impacted. The USPAP requirement is to analyze the effect on value; if there is no effect on value then no further analysis is required.

### 217. APPRAISING TWO LOTS AS ONE

**Question:**  **I have a lender client that wants a market value appraisal completed. The property consists of two separate legal lots. The highest and best use for each of these lots is as a separate one-unit residential site. However, the client wants them appraised as though they were one legal lot. The intended use is for mortgage lending.**

**May this assignment be completed treating these two lots as if they were one legal lot with the highest and best use as one legal lot?**

**Response:**  Yes. However, complying with the lender's request will require use of a hypothetical condition. If the client is a federally regulated financial institution, the client may also need an "as-is" appraisal.

**GO BACK**

If the appraisal were based on a hypothetical condition (i.e., market value of the subject as if it were a single lot), and if necessary for credible results, the appraiser would have to develop an opinion of highest and best use of the hypothetical parcel. If this leads to the conclusion that the highest and best use would be subdivision into two or more lots, the appraiser must perform the appraisal recognizing that potential use and may need to perform a subdivision analysis to reach a credible opinion of the highest and best use of the hypothetical parcel.

### 218. IMPACT ON VALUES OF SURROUNDING PROPERTIES

**Question:** **A municipality requires that when property owners seek an exception to a zoning requirement they demonstrate that the exception will not diminish the value of surrounding properties. I am occasionally engaged to render an opinion in these matters. Is the service that I am providing an appraisal?**

**Response:** Yes. USPAP defines *appraisal*, in part, as *"the act or process of developing an opinion of value."* The Comment to this definition goes on to explain that the opinion of value does not necessarily have to be a number, but that it can be a relationship (e.g., not more than, not less than) to a numerical benchmark (e.g., market value, assessed value, collateral value).

In this example, question could be stated as: If an exception were granted, will the market value of each of these surrounding properties be less because of the exception? The resulting response is an appraisal.

### 219. IS TURNAROUND TIME AN ASSIGNMENT CONDITION

**Question:** **My state's appraiser regulatory agency sent out a newsletter that says a due date is an *assignment condition*, and that failing to adhere is a violation of USPAP. Is this true?**

**Response:** Assignment due dates are contractual obligations, but are not assignment conditions under USPAP. Turnaround times and similar items are business practice issues, and are outside the scope of USPAP.

Assignment conditions are addressed in the Problem Identification section of the SCOPE OF WORK RULE. The Rule states in part:

> *Assignment conditions include assumptions, extraordinary assumptions, hypothetical conditions, laws and regulations, jurisdictional exceptions, and other conditions that affect the scope of work. Laws include constitutions, legislative and court-made law, administrative rules, and ordinances. Regulations include rules or orders, having legal force, issued by an administrative agency.*

However, an appraiser failing to comply with contractual obligations could potentially be subject to civil penalties.

### 220. INSPECTION USING A DRONE

**Question:** **Does viewing live or recorded video footage filmed using a drone constitute a "personal inspection"?**

**Response:** The use of unmanned aerial vehicles, or drones, now allows appraisers, in some instances, to view much more of a subject or comparables and with greater detail. Drones are tools that can be used to amplify vision like binoculars or a jeweler's loupe.

The use of a drone may be a critical tool in the assignment, however, just as viewing photographs of a house does not constitute a personal inspection by the appraiser, neither does viewing live streaming or recordings of aerial photography. In order for a real property appraiser to include the statement, "I have made a personal inspection of the subject property" in the certification, the appraiser must have physically visited the subject property.

GO BACK

# APPRAISAL DEVELOPMENT – EXTRAORDINARY ASSUMPTIONS AND HYPOTHETICAL CONDITIONS

### 221. EXTRAORDINARY ASSUMPTIONS COMPARED TO HYPOTHETICAL CONDITIONS

**Question:** How does an extraordinary assumption differ from a hypothetical condition? Can you give some examples of extraordinary assumptions that might apply in a real property appraisal?

**Response:** An extraordinary assumption is defined as:

> *an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions.*
>
> *Comment: Uncertain information might include physical, legal, or economic characteristics of the subject property; or conditions external to the property, such as market conditions or trends; or the integrity of data used in an analysis.*

A hypothetical condition is defined as:

> *a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.*
>
> *Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.*

Appraisers may need to use extraordinary assumptions or hypothetical conditions in performing an assignment. When used in an assignment they become part of the givens in that assignment and have a significant effect on the appraiser's opinions and conclusions.

The difference between whether a condition is an extraordinary assumption or a hypothetical condition rests on what the appraiser knows about the condition in question.

If an appraiser cannot verify a certain condition that is critical to the valuation but which the appraiser has a reasonable basis to accept as true, then the condition is an extraordinary assumption. The appraiser must comply with appropriate Standards having to do with both the development and reporting of the condition as an extraordinary assumption.

If, on the other hand, an appraiser is asked to use a condition he knows to be false, but which is necessary for the analysis, a hypothetical condition can be used. Appraisers must clearly distinguish false conditions from those other assumptions or conditions that are believed or taken to be true. If, as of the effective date of the appraisal, the condition is known to be false, then it is a hypothetical condition. If, as of the effective date of the appraisal, the fact of the condition is unknown and it is reasonable to believe that the condition is true, then the condition is an extraordinary assumption.

The following assumptions would be extraordinary if their use had a significant effect on the appraiser's opinions and conclusions:

1. Appraising proposed improvements, such as new construction or additions, as of the date of completion (a prospective effective date).
2. Appraising a property as if it were free of environmental contamination when it is not known to be contaminated.
3. Appraising a site as if sewer were available when the fact is unknown and there is no apparent evidence that the sewer is not available.

**GO BACK**

4.  Appraising a site under an assumed zoning when the zoning is not known and there is no evidence that the assumed zoning is not possible.

5.  Appraising irrigated farmland on the premise that the water supply is adequate for irrigated crop production, absent any evidence that the supply is not adequate.

## 222. HYPOTHETICAL CONDITIONS DESCRIBED

**Question:** **What is a hypothetical condition? Can you give me some examples that might apply in a real property appraisal?**

**Response:** A hypothetical condition is defined as:

*a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.*

<u>Comment</u>: *Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.*

Examples of hypothetical conditions that might be necessary in a real property appraisal assignment include:

1.  Appraising proposed improvements such as new construction or additions, as if they existed as of a current date, when they do not.

2.  Appraising a property as if it were free of any contamination when it is known to be contaminated.

3.  Appraising a site as if sewer were available when the sewer is not available.

4.  Appraising a site as if the zoning were different.

5.  Appraising irrigated farmland on the premise that the water supply is adequate for irrigated crop production, knowing that the existing supply is not adequate.

## 223. WHEN A HYPOTHETICAL CONDITION MAY BE USED

**Question:** **May an appraiser use any type of hypothetical condition in developing an appraisal?**

**Response:** No. Standards Rule 1-2(g) states, in part:

*A hypothetical condition may be used in an assignment **only if**:*

*(i)  use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and*

*(ii)  use of the hypothetical condition results in a credible analysis;*

Standards Rules 3-2(f), 5-2(j), 7-2(g) and 9-2(g) contain similar wording.

## 224. BEFORE ACQUISITION VALUE AND STANDARDS RULE 1-4(F)

**Question:** **I'm doing an appraisal assignment for a government agency that is subject to the provisions of The Uniform Relocation Assistance and Real Property Acquisitions Act of 1970, as Amended (commonly known as, the Uniform Act), and its implementing regulation, 49 CFR Part 24. In the before acquisition value appraisal, the regulation requires appraisers to disregard any decrease or increase in the market value of the property that has been caused directly by the project. This regulation appears to conflict with USPAP, Standards Rule 1-4(f), which addresses the analysis of the effect on value of anticipated public or private improvements.**

**Obviously, I must comply with the Federal law and regulations, but I am unsure how to reconcile this with the requirements of USPAP, Standards Rule 1-4(f). Does this situation create a USPAP jurisdictional exception or is this simply an assignment condition?**

**Response:** When it applies, 49 CFR Part 24 is an assignment condition. The 49 CFR Part 24 regulation that requires appraisers to disregard any decrease or increase in the market value of the property that has been caused directly by the project in the before acquisition value appraisal is not a jurisdictional exception because the regulation does not conflict with the requirements of USPAP. A jurisdictional exception is only created where USPAP compliance is precluded by a requirement of law or regulation. Standards Rule 1-4(f) becomes applicable in an assignment only when the scope of work includes the analysis of anticipated improvements.

*When analyzing anticipated public or private improvements, located on or off the site, an appraiser must analyze the effect on value, if any, of such anticipated improvements to the extent they are reflected in market actions.*

The intended use of the assignment drives the appraiser's decisions in identifying relevant property characteristics and assignment conditions. The decision to analyze the effect on value of an anticipated off-site improvement is part of the scope of work decision. The scope of work in before acquisition value assignments prepared under the Uniform Act is based on a condition that anticipated project improvement will not be recognized; therefore Standards Rule 1-4(f) does not apply.

In an appraisal with an assumed condition that is contrary to known fact, the assumed condition is a hypothetical condition. A before acquisition value appraisal assignment that does not include recognition of the project would require the use of a hypothetical condition because this is contrary to a known fact. Standards Rule 1-2(g) states, in part:

*A hypothetical condition may be used in an assignment **only if**: (i) use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison; and (ii) use of the hypothetical condition results in a credible analysis.* (Bold added for emphasis)

In the reporting of a real property appraisal report, USPAP Standards Rule 2-1(c) states that the real property appraisal report must:

*clearly and accurately disclose all assumptions, extraordinary assumptions, **hypothetical conditions**, and limiting conditions used in the assignment.* (Bold added for emphasis)

This requirement creates an obligation to disclose all hypothetical conditions used in the assignment. USPAP real property appraisal report requirements state that the report must, at a minimum:

clearly and conspicuously:

- **state** *all extraordinary assumptions and* **hypothetical conditions**; *and*
- **state** *that their use might have affected the assignment results;* (Bold added for emphasis)

This requirement directs the appraiser to provide a clear and conspicuous statement of the hypothetical conditions. The form and location of the statement is left to the discretion of the appraiser, but it must be clear and conspicuous to intended users.

### 225. REPORTING USE OF EXTRAORDINARY ASSUMPTIONS AND HYPOTHETICAL CONDITIONS

**Question:** **What are the USPAP reporting requirements relating to the use of extraordinary assumptions and hypothetical conditions in an appraisal assignment?**

GO BACK

**Response:** The report must clearly disclose the use of extraordinary assumptions and hypothetical conditions and notify intended users that the extraordinary assumptions and hypothetical conditions might have affected the assignment results.

For example, Standards Rule 2-1(c) states that each written or oral real property appraisal report must:

*clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions* **used** *in the assignment.* (Bold added for emphasis)

This requirement creates an obligation to disclose all extraordinary assumptions and hypothetical conditions <u>used</u> in the assignment.

For example, Standards Rule 2-2(a)(xiii) states that an Appraisal Report must, at a minimum:

*clearly and conspicuously:*

- ***state*** *all extraordinary assumptions and hypothetical conditions; and*
- ***state*** *that their use might have affected the assignment results;* (Bold added for emphasis)

This requirement directs the appraiser to provide a <u>clear and conspicuous</u> statement of the extraordinary assumptions and hypothetical conditions. The form and location of the statement is left to the discretion of the appraiser, but it must be clear and conspicuous to intended users.

The requirement further directs the appraiser to provide notice to intended users that the use of the extraordinary assumptions and hypothetical conditions might have affected the assignment results. The appraiser is not required to report on the impact of the extraordinary assumptions and hypothetical conditions on assignment results.

Note: The requirements for other report types are similar.

### 226. MUST A HYPOTHETICAL CONDITION OR EXTRAORDINARY ASSUMPTION BE LABELED?

**Question:** **If I employ a hypothetical condition or an extraordinary assumption in an assignment, does USPAP require me to label it as such?**

**Response:** No. USPAP does not require use of the specific terms hypothetical condition or extraordinary assumption. USPAP requires that all hypothetical conditions and extraordinary assumptions be disclosed clearly and conspicuously, and it must be disclosed that their use might affect the assignment results.

### 227. VALUE AS IF COMPLETED

**Question:** **My client, a federally regulated lender, has requested a market value appraisal as of the current date of a site that has all necessary approvals for development of a multi-family project with 30 units. My client intends to use the appraisal in underwriting the credit in a land acquisition loan. Must I develop an opinion of value for the completed project?**

**Response:** No. As long as the intended use is as you described, the appraisal assignment does not require a current value of the project with the hypothetical condition of it being completed. This is because the subject of your assignment is the site with the existing entitlement to develop the multi-family project, and presumes those entitlements are consistent with the highest and best use of the site.

Since your appraisal is as of a current date, and the property that is the subject of your appraisal is a property that actually exists under the zoning and entitlements in place as of that date, there is no need to use a hypothetical condition, nor to develop an opinion of value of the property after, or as though, it has been developed.

GO BACK

## 228. APPRAISING A PROPERTY NOT IN AS-IS CONDITION

**Question:** **Our local community public works department has declared a parcel of land surplus and asked me to appraise the real property at market value with an effective date of the appraisal prior to its advertisement for sale. However, the public works director said there will be a covenant placed on the land immediately prior to the sale that will restrict its use to open space or recreation, and the value in my appraisal is to reflect that title condition. Currently, the property is in use by the public works department and does not have such a use limitation.**

**Since I know the as-is condition of the property title is not as the director described it, can I do the appraisal as if the covenant was in place?**

**If so, would this covenant be an extraordinary assumption or a hypothetical condition in the appraisal?**

**Response:** (a) Given the type and definition of value (market value with the title conditioned as the director described), and intended use of the assignment results (to provide the client with information for use in deciding an asking price), the appraisal must reflect an analysis as if the covenant were in place.

(b) The appraisal of the property as though it had the covenant in place requires a hypothetical condition in the appraisal, because, as of the effective date of the appraisal, the property did not have the covenant in place (i.e., the covenant is that which is contrary to what is known by the appraiser to exist on the effective date, but is used for purpose of analysis).

If instead you did not know whether the covenant was or was not in place as of the effective date of the appraisal, but you based the appraisal on the covenant being in place, the appraisal would be based on an extraordinary assumption. This is because you would be presuming as fact otherwise uncertain information about the condition of title which, if found to be false, could alter your opinions or conclusions.

If, instead of saying there would be a covenant recorded after the effective date of the appraisal, the director provided a title document that said the covenant was already in place, the appraisal would not require either a hypothetical condition or an extraordinary assumption about that land use limitation. This is because the title condition used in the appraisal would have been the actual condition in place on the effective date of the appraisal.

## 229. ANALYZING THE LEASE WHEN APPRAISING FEE SIMPLE INTEREST

**Question:** **I am performing an appraisal of a single-family dwelling that is in use as a rental property. The type of value to be developed is an opinion of market value for the fee simple interest. The current lease on the property is significantly below market and runs for another 24 months past the date of value in my appraisal. Furthermore, the lease would survive a transfer of ownership.**

**Does USPAP require that I analyze and reflect the presence of the lease in the valuation?**

**Response:** No; the subject of your assignment is the fee simple interest, not the leased fee interest. The appraisal report must provide adequate disclosures to any intended user of the appraisal that there is a lease in effect, and that the value of the leased fee interest in the property has not been reflected in the appraisal.

GO BACK

### 230. DEFINITION OF EXTRAORDINARY ASSUMPTION

**Question:** **I recently agreed to perform an appraisal assignment for a property that had an affirmative surface easement granted in perpetuity. The client was also the property owner. She did not have a copy of the easement and stated that it had never been recorded. What are my development and reporting obligations under USPAP?**

**Response:** You should do whatever research is possible to see if the easement was recorded and consider the facts you discover in your analysis. If you cannot confirm the facts, you may use an extraordinary assumption in your analysis. The particulars of the use of the extraordinary assumption must be clearly and accurately disclosed.

The definition of an extraordinary assumption is:

*an assignment-specific assumption as of the effective date regarding uncertain information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions.*

<u>Comment</u>: *Uncertain information might include physical, **legal**, or economic characteristics of the subject property; or conditions external to the property, such as market conditions or trends; or the integrity of data used in an analysis.* (Bold added for emphasis)

Standards Rule 2-1(c) states, in part:

*Each written or oral real property appraisal report must:*

*(c) clearly and accurately disclose all assumptions, extraordinary assumptions, hypothetical conditions, and limiting conditions used in the assignment.*

### 231. PROPOSED CONSTRUCTION EMPLOYING AN EXTRAORDINARY ASSUMPTION

**Question:** **I have agreed to perform a market value appraisal of a property with proposed improvements. The assignment calls for a prospective appraisal with an effective date that is 120 days after the date the appraisal report is submitted.**

**The client and I believe that the construction will have been completed and a certificate of occupancy issued prior to the effective date. What assumptions, extraordinary assumptions, or hypothetical conditions might apply to this assignment?**

**Response:** In this case, there are extraordinary assumptions, but no hypothetical conditions. The extraordinary assumptions include the assumption that the construction will be complete and the certificate of occupancy issued on or before the effective date and the assumption that the construction will be completed in accordance with the plans and specifications that were provided to the appraiser.

# APPRAISAL DEVELOPMENT –
## SUBJECT PROPERTY SALES HISTORY

### 232. MULTIPLE SALES OR TRANSFERS OF THE SUBJECT PROPERTY

**Question:** If the subject property, such as a single-family dwelling, has sold more than once in the three (3) years prior to the effective date of the appraisal, am I required to analyze all of the sales, or just the most recent sale? Also, what am I required to do if a transfer of ownership is due to a foreclosure sale, or is a sale between family members or other related parties?

**Response:** Standards Rule 1-5 states:

*When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business;*

*(a) analyze all agreements of sale, options, or listings of the subject property current as of the effective date of the appraisal; and*

*(b) analyze all sales and other transfers of the subject property that occurred within three (3) years prior to the effective date of the appraisal.*

Therefore, you must analyze all of the sales, not just the most recent one. This would also include any type of sale or transfer, whether it was arm's length or not. If a transfer of ownership was the result of a sale between family members or otherwise related parties, or involved a foreclosure sale, or transfer of the deed in lieu of foreclosure, the appraiser is still obligated to analyze it.

In addition, if a sale, or any other transfer, goes beyond the minimum three-year period, or options and listings that may not be current are identified and relevant to the appraisal of the subject property, they should also be analyzed.

After the analysis is complete, Standards Rule 2-2 contains the reporting requirements related to the results of the analysis.

Refer to Advisory Opinion 1, *Sale and Transfer History*, for further guidance.

### 233. OFFERS TO PURCHASE SUBJECT PROPERTY

**Question:** Are offers to purchase the subject property, prior to the effective date of the appraisal, pertinent information required to be considered under Standards Rule 1-5?

**Response:** Standards Rule 1-5(a) states:

*When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:*

*analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal;…*

Standards Rule 1-5(a) does not require that an offer to purchase the subject property that is prior to the effective date of the appraisal be considered and analyzed. Agreements of sale and options are generally significant to solving an appraisal problem because they involve a meeting of the minds about the property's value between the potential buyer and seller. A listing of the subject property is likewise significant in that it indicates the property's availability in the market. A mere offer to purchase by a potential buyer, however, does not necessarily correlate to the property's value or even to the owner's desire to sell. Furthermore, information about a purchase offer is often confidential and sometimes may not be available to the appraiser in the normal course of business.

**GO BACK**

Nevertheless, the appraiser is required by Standards Rule 1-1(b) to *not commit a substantial error of omission or commission that significantly affects an appraisal*. If information about a purchase offer is available to the appraiser, even if the offer is not current, and that information is relevant to solving the appraisal problem, it must be considered. In some cases, an offer would be relevant to the appraisal problem only because it points to other information concerning the property or the market about which the appraiser should know. For example, if the appraiser learns of an offer that seems out of character with market trends, additional research might lead the appraiser to discover property or market characteristics that support that offering price.

## 234. CURRENT SALES CONTRACT IS NOT PROVIDED

**Question:** **I am an appraiser with several clients that do not provide a copy of the current sales contract as a part of their standard appraisal ordering procedures. In addition, the parties to the transaction have been requested by the client not to provide either the contract or information contained in the sales contract to the appraiser. If the client withholds the current pending sale contract, can I still perform the assignment in compliance with USPAP?**

**Response:** Yes. Standards Rules 1-5 and 7-5 require real and personal property appraisers to analyze all agreements of sale that are current as of the effective date of the appraisal *if such information is available to the appraiser in the normal course of business*. Since these contracts are not available to you, you can complete the assignment and still be in compliance with USPAP.

However, the reporting Standards (STANDARDS 2 and 7) require the appraiser to include a statement on the efforts of the appraiser to obtain the information in the report. Therefore, if you have attempted to obtain the current contract and could not, you must disclose how you attempted to obtain the contract in your report.

For more information regarding the meaning of normal course of business, see Advisory Opinion 24, *Normal Course of Business*, which is applicable to both real and personal property.

## 235. PENDING SALES AS COMPARABLES

**Question:** **Can a pending sale be used as a comparable if the fact that the sale is pending is disclosed in the appraisal report?**

**Response:** Yes. USPAP does not require the use of a pending sale as a comparable, nor does USPAP prohibit such use.

In addition, Standards Rule 1-1(b) requires that an appraiser:

> *not commit a substantial error of omission or commission that significantly affects an appraisal;*

Not considering a pending sale of a property highly similar to the subject property could constitute an omission that would significantly affect the appraisal. USPAP requires appraisers to be complete in their analysis and convey that analysis in a way that is not misleading. Pending sale details, by their very nature, are often confidential. Appraisers must take care not to disclose information that they know is confidential.

## 236. SUBJECT PROPERTY AS A COMPARABLE SALE

**Question:** **Is it a violation of USPAP to use a recent sale of the subject property as a comparable in the sales comparison approach to value?**

**Response:** No. Standards Rule 1-4, states:

GO BACK

*In developing a real property appraisal, an appraiser must collect, verify, and analyze all information necessary for credible assignment results.*

*(a) When a sales comparison approach is necessary for credible assignment results, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion.*

Additionally, Standards Rule 1-5(b), states:

*When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:*

*(b) analyze all sales and other transfers of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.*

Therefore, not only could the subject property potentially be used as a comparable sale, but an analysis of the prior sale must be made in accordance with Standards Rule 1-5 if it occurred within the prior three years. However, appraisers are cautioned to be aware of possible assignment conditions that require minimum numbers of comparable sales to be reported in addition to the sale of the subject property.

### 237. FIVE-YEAR SALES HISTORY AS AN ASSIGNMENT CONDITION

**Question:** **My state appraisal board has adopted a regulation requiring appraisers to provide a five-year sales history for the subject property in all assignments. Is this situation addressed in USPAP?**

**Response:** Yes. In the scenario described, an administrative agency (the state appraisal board) has a regulation that adds to the requirements in USPAP. Therefore, failure to comply with the regulation would be a violation of the <u>Being Competent</u> section of the COMPETENCY RULE which states in part:

*Competency requires: ...*

*3. recognition of, and compliance with, laws and regulations that apply to the appraiser or the assignment.*

### 238. SALE AND TRANSFER HISTORY FOR PART OF A PROPERTY

**Question:** **I have received an assignment to appraise a property with newly constructed improvements. Because the property includes new construction, there is no prior sales history of the property as it now exists. However, I do have information pertaining to a prior sale of the site (without the improvements). Does Standards Rule 1-5(b) require me to analyze this prior sale of the site?**

**Response:** Yes. The goal of USPAP is to promote public trust in the appraisal profession. Standards Rule 1-5 provides a research and analysis requirement for information that is judged to be important to the credibility of the appraisal process. To be consistent with the purpose of USPAP as well as with the intent of Standards Rule 1-5, an appraiser is required to analyze (if such information is available in the normal course of business) all sales and other transfers of the subject property that occurred within the three (3) years prior to the effective date of the appraisal. This includes: 1) prior sales of a property that includes the subject property; and 2) prior sales of a portion of the subject property.

In this case, the analysis of the prior sale of the unimproved site would be necessary to comply with Standards Rule 1-5(b). The site in this instance is a component of the subject property.

Another example might be the appraisal of a leased fee interest in a property. The appraiser must research and analyze prior sales and other transfers of the subject, even if these sales include a fee simple interest in the property.

GO BACK

An additional example might be the appraisal of 20 acres subdivided from a 200-acre parcel. The appraiser must research and analyze prior sales and other transfers of the subject, even if these sales (or transfers) include the 200-acre site in its entirety.

### 239. APPRAISAL WITHOUT KNOWING CONTRACT PRICE

**Question:** **I have been asked to perform an appraisal of a residential dwelling that I know is under contract. No lender is involved and the buyer and seller do not want the appraiser to know the amount of the sales contract. Can I agree to perform this assignment, knowing it will not be possible for me to know the pending sales price of the property?**

**Response:** Yes. USPAP does not contain a requirement for the appraiser to know the pending sale price of a subject property. Standards Rule 1-5(a) does require the appraiser to analyze all current agreements of sale and options to purchase or listings of the subject property, when available during the normal course of business.

> *When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser **in the normal course of business**, analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal;* (Bold added for emphasis)

However, if the appraiser's scope of work and the normal course of business render the subject property's pending transaction details unavailable, the appraiser may be able to comply with USPAP without obtaining the information. For more information on the normal course of business, please see Advisory Opinion 24, *Normal Course of Business*.

It should be noted that when the amount of the sale contract is unknown, this does not eliminate the appraiser's responsibility to analyze other information that is available related to the pending sale. This can include information such as marketing history and other details of the pending sale that may be available.

### 240. ANALYSIS OF SALE AND TRANSFER HISTORY FOR COMPARABLE SALES

**Question:** **I was told that USPAP now requires real property and personal property appraisers to analyze previous sales of comparable properties used in the sales comparison approach to value. Is this true?**

**Response:** No. However, there may be applicable laws, regulations or other assignment conditions in certain appraisal assignments that require the appraiser to provide a more detailed analysis than otherwise required by USPAP.

### 241. TRANSFER HISTORY ANALYSIS FOR DEED IN LIEU OF FORECLOSURE

**Question:** **I am currently appraising an office building that was transferred 18 months ago via a deed in lieu of foreclosure. Am I required to analyze this transaction?**

**Response:** Standards Rule 1-5(b) requires, in part, the appraiser to analyze all sales and other transfers of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.

A deed in lieu of foreclosure is a transfer of ownership of real property. Therefore, if the opinion of value to be developed is market value, the appraiser is required to analyze this transaction because it is a transfer of the subject property.

### 242. OBLIGATION TO ANALYZE PRIOR LISTINGS OF SUBJECT PROPERTY

**Question:** **I know that Standards Rule 1-5(a) requires an appraiser to analyze all current listings of the subject property. Does it also require analysis of *prior* listings of the subject property?**

**Response:** No. However, in the development of an appraisal, an appraiser is required under Standards Rule 1-1(b), to *not commit a substantial error of omission or commission that significantly affects an appraisal*. If information about a prior listing is known by the appraiser, and that information is relevant to solving the appraisal problem, it must be considered.

Appraisers are cautioned to be aware that an analysis of the subject's prior listing history may be required by assignment conditions that apply to some assignments.

### 243. PROPER ANALYSIS OF AGREEMENT OF SALE

**Question:** **I understand that Standards Rule 1-5(a) requires the appraiser to analyze an agreement of sale (if available in the normal course of business). What constitutes proper analysis?**

**Response:** The term analyze is not defined in USPAP because it does not have a special meaning within the document or in Standards Rule 1-5. The term is used based on its English language meaning as found in common dictionaries.

The extent of the analysis performed to comply with the requirements of Standards Rule 1-5(a) is part of the scope of work decision. The acceptability of the appraiser's analysis is judged in the same way that any other scope of work decision is judged. For more information, see the SCOPE OF WORK RULE, Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.

### 244. VALUE CONCLUSION BELOW CONTRACT PRICE

**Question:** **I recently submitted an appraisal report to an Appraisal Management Company (AMC). The value conclusion in the report was below the contract sale price. The AMC, acting on behalf of the client, sent me the following request:**

**"Discuss the lack of support for the contract price, considering the subject's features, any changes in market conditions between the contract and effective dates, the details of the contract, etc., which you believe may have contributed to the issue. If there is no apparent reason for the lack of support of the contract price, state that within your report."**

**Do I have to respond to this request to comply with USPAP?**

**Response:** USPAP compliance does not specifically require the appraiser to respond to this particular request, but it does require that the appraiser analyze the pending sale and summarize the results of that analysis in the appraisal report.

An appraiser is not engaged for the purpose of supporting a contract price, but rather to form an opinion of, in this instance, the market value of the subject property. The appraiser must comply with the <u>Conduct</u> section of the ETHICS RULE, which states, in part:

*An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests.*

Standards Rule 1-5(a) requires, in part, that the appraiser analyze all agreements of sale (if available in the normal course of business). In addition, Standards Rules 2-2(a)(x) and 2-2(b)(xii) state, in part, the resulting appraisal report must:

GO BACK

*provide sufficient information to indicate that the appraiser complied with the requirements of STANDARD 1 by...summarizing the results of analyzing the subject sales, agreements of sale, options, and listings in accordance with Standards Rule 1-5.*

## 245. OBLIGATION TO ANALYZE WITHDRAWN OR EXPIRED LISTINGS

**Question:** **I was asked to appraise a single-family residence for refinancing. I am aware that the property had been previously listed but did not sell. During my data investigation and analysis, I noted that the owner's estimate of value was $375,000. When I looked up the listing history, I found it had been withdrawn from the market at the asking price of $325,000. What are my obligations under USPAP regarding a withdrawn or expired listing of the subject property?**

**Response:** Standards Rule 1-5(a) states:

*When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:*

*(a) analyze all agreements of sale, options, and listings of the subject property current* **as of the effective date of the appraisal.** (Bold added for emphasis)

Therefore, there is not a specific requirement in Standards Rule 1-5(a) to consider and analyze a withdrawn or expired listing of the subject property, prior to the date of the appraisal.

However, any listing of the subject property prior to the effective date of the appraisal might be significant in that it indicates the property's previous availability in the market and the market's reaction to that availability. Likewise, agreements of sale and options are generally significant to the appraisal problem in that they involve a meeting of the minds relating to the property's value between a potential buyer and the seller.

In the development of an appraisal, an appraiser is required under Standards Rule 1-1(b), to *not commit a substantial error of omission or commission that significantly affects an appraisal.* If information about a withdrawn or expired listing is known by the appraiser, and that information is relevant to the appraisal problem, it must be considered.

## 246. LISTING HISTORY IN A RETROSPECTIVE APPRAISAL

**Question:** **I have been asked to perform a retrospective appraisal on the fee simple interest in a real property. The effective date of the appraisal is September 1, 1995. Must I analyze listings of the subject that were current at that time and/or the sales history of the subject?**

**Response:** Yes. Standards Rule 1-5 states:

*When the value opinion to be developed is market value, an appraiser must, if such information is available to the appraiser in the normal course of business:*

*(a) analyze all agreements of sale, options, and listings of the subject property current as of the effective date of the appraisal; and*

*(b) analyze all sales and other transfers of the subject property that occurred within the three (3) years prior to the effective date of the appraisal.*

If this information is available in the normal course of business, it must be analyzed and reported in conformance with Standards Rules 2-2(a)(x)(3) or 2-2(b)(xii)(3), whichever is applicable.

### 247. SALES HISTORY ANALYSIS FOR CONDITION AND MARKETABILITY REPORTS

**Question:** **I have been asked to provide a client with a condition and marketability report on a residential property. I am to complete a form used by some lenders and secondary market participants. Since this assignment is part of appraisal practice (because I am providing this service as an appraiser), must I conform with the requirements in Standards Rule 1-5(a), to** *analyze all agreements of sale, options, and listings of the subject current as of the effective date of the appraisal; and (b) analyze all sales of the subject property that occurred within the three (3) years prior to the effective date of the appraisal?*

**Response:** No. Standards Rule 1-5 only applies to the development of a real property appraisal. The assignment described in this question is not an appraisal since developing an opinion of value is not part of the assignment. While the requirements of STANDARD 1 are not applicable, all services performed as part of appraisal practice must comply with USPAP. The portions of USPAP that apply generally to appraisal practice include the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

### 248. SUBJECT PROPERTY SALES HISTORY AND STANDARDS RULE 1-5(B)

**We often receive appraisal reports where a prior sale of the subject property is addressed. However, the reports do not include an affirmative statement that there have been no other sales within the three years prior to the effective date of the assignment. The appraisers believe they are in compliance with USPAP as they have appropriately addressed a prior sale. As the client, I do not agree.**

**Question:** **(1.) If, in fact, there was only one sale within the 3-year period, must the appraisal report state that there were no additional sales?**

**Response:** No, USPAP does not require an appraiser to state in the report that there were no additional sales. This same answer is also true regarding any other transfers.

**Question:** **(2.) Must the appraisal report include a statement that there were no sales of the subject within the 3-year period if, in fact, there were none?**

**Response:** No. USPAP does not require an appraiser to state in the report that there have been no sales within the 3-year period. This same answer is also true regarding any other transfers.

As the client you may, of course, require that the appraiser exceed USPAP requirements by including an affirmative statement about the absence of other sales.

### 249. SALE AND TRANSFER HISTORY IN MACHINERY AND EQUIPMENT APPRAISAL ASSIGNMENT

**Question:** **A personal property appraiser has been engaged to perform an orderly liquidation value appraisal of the inventory of a used farm equipment dealership that owns 50 vehicles. There are no agreements of sale, validated offers or third-party offers to sell, or options related to any of the subject properties current as of the effective date of the appraisal. The appraiser determines it is not necessary for credible assignment results to research and analyze the prior sales of each of the properties. What are the appraiser's obligations under USPAP regarding the prior sales?**

**Response:** Standards Rule 7-5(a) requires the appraiser to consider whether the analysis of information about prior sales and other transfers is necessary for credible assignment results. Because the analyses of the prior sales are not necessary for credible assignment results, analyses are not required to be performed or reported.

---

**GO BACK**

## 250. CHANGES IN COMPOSITION OF PARTNERSHIPS OR CORPORATIONS

**Question:**  **USPAP requires appraisers to analyze prior sales and other transfers of the subject property. Are appraisers required to analyze and report changes related to ownership interests (e.g., partnerships, corporations, LLCs, etc.) of a property, as well as actual property transfers?**

**Response:**  For real property appraisal assignments, appraisers are required to analyze prior sales and transfers of the property being appraised and report the results of that analysis. Appraisers are not required to analyze and report changes related to a partnership or corporation that owns a property.

If the subject of an appraisal assignment is a partnership or corporation (as opposed to real property owned by a partnership or corporation), then the analysis of prior sales and transfers of ownership interests would be required when necessary for credible assignment results. Standards Rule 9-4(b)(vi) states, in part:

*An appraiser must, when necessary for credible assignment results, analyze the effect upon value, if any, of...*

*(vi) prices, terms, and conditions affecting past sales and other transfers of similar **ownership interests in the asset being appraised** or a similar asset;* (Bold added for emphasis)

GO BACK

# APPRAISAL REPORTING –
## CERTIFICATION AND SIGNATURES

### 251. REASON FOR SIGNED CERTIFICATION

**Question:** Why does USPAP require an appraiser to include a signed certification in the workfile for oral reports and in all written reports?

**Response:** A signed certification provides important disclosures about aspects of the assignment and its main purpose is to provide evidence that the appraiser recognizes his or her ethical obligations related to general conduct, development and communication.

The elements that must be addressed in the certification that apply to development are as listed as follows (as taken from Standards Rule 2-3 for real property appraisals, as an example):

- *the statements of fact contained in this report are true and correct.*
- *the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.*
- *I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.*
- *I have performed no (or the specified) services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.*
- *I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.*
- *my engagement in this assignment was not contingent upon developing or reporting predetermined results.*
- *my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.*

The element that must be addressed in the certification that applies to development and reporting is:

- *my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.*

The remaining elements to address in the certification, for example in Standards Rule 2-3, have to do with disclosures relative to inspections and significant assistance:

- *I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)*
- *no one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)*

The difference between Standards Rule 2-3 and the other reporting standards is the wording will be different for the discipline-specific items related to significant appraisal assistance and STANDARD 10 does not require comment on personal inspection):

**GO BACK**

### 252. USE OF CERTIFICATION WITH FORM 1004D/442

**Question:** **My client has asked me to re-inspect the property and provide them with a certification of completion for an appraisal that I completed for them eight months ago and submit the report on the Fannie Mae Form 1004D/Freddie Mac Form 442. The assignment does not include an updated value opinion. Does this assignment require a certification regarding the prior service?**

**Response:** No. Because this is neither an appraisal nor appraisal review assignment, USPAP does not require a certification. Although a disclosure of the prior service is required at the time of agreeing to perform this assignment, no certification is required. The <u>Conduct</u> section of the ETHICS RULE states in part:

> *In assignments in which there is no appraisal or appraisal review report, only the initial disclosure to the client is required.*

### 253. CHANGING THE CERTIFICATION

**Question:** **Must the certification in the reporting standard (i.e. Standards Rules 2-3, 4-3, 6-3, 8-3 and 10-3) be exactly the same as that presented in USPAP?**

**Response:** The wording of a certification for each appraisal report does not have to match the exact wording of the applicable reporting standard (i.e., Standards Rules 2-3, 4-3, 6-3, 8-3 or 10-3) verbatim. The reporting standards only require that, at a minimum, each element addressed in the report's signed certification must be the same elements noted in the applicable reporting standard (i.e., Standards Rule 2-4, 4-3, 6-3, 8-3 or 10-3).

If necessary, an appraiser may choose to address additional elements in their certification or include an additional supplemental certification (or certifications) to the report. For example, some jurisdictions or some clients require additional elements to be addressed in the certification.

Real property appraisers using preprinted appraisal forms should be aware that clients and client groups may prohibit altering the preprinted certification used in assignments performed for them, but any such prohibition is not contained in USPAP.

### 254. REVISING APPRAISAL FORM CERTIFICATION TO DISCLOSE PRIOR SERVICES

**Question:** **I perform residential real estate appraisals using "standard" appraisal forms, such as those developed by Fannie Mae. I've heard that Fannie Mae does not allow any changes to their certifications, so how can I comply with the USPAP requirement to disclose, in the certification, any prior services I have or have not performed on the property within the prior three years?**

**Response:** Fannie Mae does **not** prohibit additional certifications to their appraisal forms, as long as those additional certifications do not conflict with or diminish the "standard" certification items appearing on their forms. Therefore, appraisers may create a supplemental certification to comply with the obligations of the <u>Conduct</u> section of the ETHICS RULE as well as the requirements of Standards Rules 2-3(d) and 4-3(d).

### 255. REQUIREMENT FOR SIGNING REPORTS

**Question:** **What is the USPAP requirement regarding signing a report?**

**Response:** USPAP requires that each written report include a signed certification. Although many written reports include the appraiser's signature on the report or a letter of transmittal, this is not required by USPAP. However, an appraiser who signs any part of the report must also sign the certification. For an oral report, USPAP requires that a signed and dated certification be part of the workfile.

### 256. SIGNATURE ON LETTER OF TRANSMITTAL

**Question:** **Does USPAP require an appraiser to sign the letter of transmittal?**

**Response:** No. USPAP does not require that any report include a letter of transmittal. However, USPAP does require that an appraiser who signs a letter of transmittal must also sign the certification required in Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3.

For example, Standards Rule 2-3(b) states:

> ***An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign a certification.*** (Bold added for emphasis)

### 257. MULTIPLE SIGNATURES ON APPRAISAL REPORTS

**Question:** **I am a review appraiser for a national mortgage company. I recently received a residential appraisal reported on a commonly used form that has two signatures on the appraiser line (left hand side of the form). Both appraisers also signed the certification. Does this violate *Uniform Standards of Professional Appraisal Practice* (USPAP)?**

**Response:** This does not violate USPAP. Standards Rule 2-3 states, in part:

> *An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign a certification.*

Therefore, if both real property appraisers signed the appraisal report, then both must sign the certification. The Comment to Standards Rule 2-3(b) goes on to say:

> *any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report.*

In this scenario, both real property appraisers will have complete responsibility for the appraisal in its entirety.

### 258. SIGNATURE AUTHORIZATION

**Question:** **Can I authorize someone else to sign an appraisal report for me, using my signature? If so, could you identify what steps I must take to do this correctly?**

**Response:** USPAP does not specifically state that the appraiser can only personally sign a report. It does state, in the definition of signature, that the signature be *personalized evidence indicating authentication*. The ETHICS RULE of USPAP also states, in part:

> *An appraiser may authorize the use of his or her signature only on an assignment-by-assignment basis.*
>
> *An appraiser must not affix the signature of another appraiser without his or her consent.*

The USPAP reporting standards (for example, Standards Rules 2-2(a)(xiv) and 2-2(b)(xvi)) specify that a report must, at a minimum, include a signed certification in accordance with Standards Rule 2-2.

In the DEFINITIONS section, a signature is defined as:

> *personalized evidence indicating authentication of the work performed by the appraiser and the acceptance of the responsibility for content, analyses, and the conclusions in the report.*

Unless specifically contrary to the law of a particular jurisdiction, USPAP allows another person to sign for an appraiser, as long as it is with the appraiser's specific authorization and is clear and does not result in a misleading report.

**GO BACK**

## 259. PROVIDING SIGNATURE TO CREATE A SIGNATURE FILE

**Question:** **I am a residential appraiser and I use software to generate my appraisal reports. The software company requires me to provide a copy of my signature to create an electronic signature file for use with the software. Does this action violate USPAP?**

**Response:** No. This situation is similar to providing a copy of your signature to a rubber stamp company for purposes of creating a signature stamp. Common business agreements in these situations limit use of the signature to creating the signature image. In providing a signature to a software company or rubber stamp company, the appraiser is not authorizing use of the signature.

## 260. LOSING CONTROL OF A DIGITAL SIGNATURE

**Question:** **If my digital signature is stolen and applied to reports without my knowledge or consent, am I in violation of USPAP?**

**Response:** No. Unauthorized use of the appraiser's signature is not a violation of USPAP. If the appraiser's digital signature is stolen, the appraiser is the victim of a crime. Any such use of the appraiser's signature is not authorized, and that use is beyond the appraiser's control. However, an appraiser must use due care to prevent unauthorized use of his/her signature. The <u>Management</u> section of the ETHICS RULE states, in part:

> *An appraiser may authorize the use of his or her signature only on an assignment-by-assignment basis.*

> *An appraiser must not affix the signature of another appraiser without his or her consent.*

> <u>*Comment*</u>*: An appraiser must exercise due care to prevent unauthorized use of his or her signature. An appraiser exercising such care is not responsible for unauthorized use of his or her signature.*

This is similar to a party who uses an appraiser's rubber signature stamp without permission from the appraiser, or a party who simply puts pen and ink to paper and forges an appraiser's signature. In these cases, the appraiser did not give permission for use of his or her signature.

## 261. RESPONSIBILITY OF AN APPRAISER SIGNING AS A SUPERVISOR

**Question:** **I have been told that a supervisor or employer who signs a report is not as responsible as the individual preparing the appraisal and that using a conditional label next to the signature of the supervisor or employer exempts that individual from adherence to USPAP. Is this true?**

**Response:** No, it is not true if the supervisor or employer is an appraiser. Standards Rule 2-3(b) (as well as similar language in Standards Rules 4-3(b), 6-3(b), 8-3(b) and 10-3(b)) specifically states:

> *An appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign a certification.*

Additionally, the <u>Comment</u> to 2-3(b) states, in part:

> *In an assignment that includes only assignment results developed by the real property appraiser(s), any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report.*

### 262. AFFIXING ANOTHER APPRAISER'S SIGNATURE (NEW)

**Question:** As a trainee appraiser, my supervisory appraiser requires me to keep my digital signature in a file we can both access by using one password. For appraisal assignments she applies both our signatures to the certification, then transmits the written report to the client. I do not know what changes she makes before transmitting the report. Are we following USPAP requirements for applying signatures?

**Response:** No. The Management Section of the ETHICS RULE includes a prohibition that an appraiser must not affix the signature of another appraiser without his or her consent, which must only be given on an assignment-by-assignment basis.

Additionally, a signed certification in a written report is evidence you recognize your ethical obligations. The signature itself serves as your personalized evidence that you are not only authenticating the work performed, but that you accept responsibility for the content, analyses, and conclusions in the report. If changes were made to the report without your knowledge, you, as the appraiser cannot meet these USPAP responsibilities.

### 263. SIGNING DIGITAL (ELECTRONIC) REPORTS

**Question:** What is the USPAP requirement for signing a digitally created (electronic) report?

**Response:** The requirement for paper (hard copy) and digital (electronic) reports is the same. The appraiser must include a signed certification with each report.

### 264. BUSINESS ENTITY SIGNING AN APPRAISAL REPORT

**Question:** Can a business entity, such as a corporation, sign an appraisal report?

**Response:** Yes. There is no prohibition against an entity signing a transmittal letter or the page stating the value conclusion of a report. However, USPAP does require that an individual appraiser(s) sign a certification, see Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3

These Standards Rules refer to an appraiser(s), a signing appraiser(s), and any appraiser(s). Clearly, this language refers to an individual or individuals, not a corporate or business entity.

### 265. SIGNIFICANT APPRAISAL ASSISTANCE

**Question:** In preparing an appraisal assignment, I talk with many different people. I know the report certification must identify individuals who provide significant real property appraisal assistance. What is significant appraisal assistance?

**Response:** USPAP does not include a definition of significant appraisal assistance. However, aspects of this phrase can be explored to clarify its meaning.

First, the adjective significant means that the contribution must be of substance to the development of the assignment results. In other words, the individual must contribute to the valuation analysis in a noteworthy way. An individual who merely collects or provides data for use in the analysis does not provide significant appraisal assistance.

Second, the reference to the term appraisal assistance means that the contribution is related to the appraisal process or requires appraiser competency. One misconception is that non-appraisers who provide assistance should be identified in the certification. This is incorrect because the certification requirements in USPAP apply only to appraisers. Thus, only appraisers sign the certification or are identified as providing significant appraisal assistance. For example, the use of an environmental expert to determine wetland boundaries would not be considered significant real property appraisal assistance.

GO BACK

Examples of contributions made by appraisers that constitute significant real property appraisal assistance include the identification of comparable properties and data, estimating accrued depreciation, or forecasting income and expenses.

## 266. USING A DATA ENTRY SERVICE

**Question:** **I primarily perform residential appraisal assignments for mortgage finance purposes. I recently received a solicitation from a company that is offering to enter all the data into my appraisal software program for me at a very low cost. Is this something that is allowed under USPAP?**

**Response:** There are two primary concerns. The first concern is whether the service provider is performing significant real property appraisal assistance. If the service provider simply performs clerical tasks, such as entering information provided by the appraiser, USPAP does not require disclosure; this would be a clerical service, not significant real property appraisal assistance. However, if the service includes performing tasks that require appraisal competency, the name of each individual performing that service must be stated in the certification as having provided significant real property appraisal assistance, and the extent of the assistance must be addressed within the appraisal report. Tasks that require appraisal competency include, but are not limited to, rating a property's quality or condition, estimating remaining economic life, and selecting comparable data.

The second concern deals with the issue of appraiser-client confidentiality. The <u>Confidentiality</u> section of the ETHICS RULE states, in part:

*An appraiser must not disclose: (1) confidential information; or (2) assignment results to anyone other than:*

- *the client;*
- *parties specifically authorized by the client*
- *state appraiser regulatory agencies;*
- *third parties as may be authorized by due process of law; or*
- *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.*

*An appraiser must take reasonable steps to safeguard access to confidential information and assignment results by unauthorized individuals, whether such information or results are in physical or electronic form.*

*An appraiser must ensure that employees, co-workers, sub-contractors, or others who may have access to confidential information or assignment results, are aware of the prohibitions on disclosure of such information or results.*

Therefore, the appraiser is prohibited from disclosing *confidential information* or *assignment results* (both, as defined in USPAP) to anyone other than the parties identified in the ETHICS RULE without the client's permission.

## 267. HAVE I PROVIDED SIGNIFICANT APPRAISAL ASSISTANCE?

**Question:** **I am a research assistant with an appraisal firm that has three state certified or licensed real property appraisers. My responsibilities include preparing an appraisal file on each new assignment, researching past sales of the subject, obtaining zoning information, tax data, market information and sales research (including confirming the sales) for the three associates. The licensed or certified appraisers usually inspect the property and prepare the appraisal themselves. Currently, they do not recognize me in these reports, and I am not permitted to sign them.**


GO BACK

**I also sometimes go with them on inspections and write portions of the reports. In these cases they do recognize me, as required by USPAP. I am concerned about receiving experience credit for all my appraisal assistance from my state's appraiser licensing board or a professional association if I apply for a designation. Should my participation be referenced in all the reports when I provide assistance, or only when I inspect the property and write portions of the report?**

Response: USPAP does not address the specific experience requirements of state appraiser licensing agencies or professional appraisal organizations. You will have to contact those entities directly to obtain that information.

USPAP *does* specifically address what to do when an individual provides significant appraisal assistance in the development of appraisal and appraisal review assignments. Each of the Standards that address reporting requires that such significant assistance be addressed in any report. For example, in real property appraising, Standards Rule 2-2(a) (ix) requires the content of an Appraisal Report to, at a minimum:

> *summarize the extent of any significant real property appraisal assistance;*

Clerical responsibilities such as file preparation, typing reports, and similar activities are not considered significant appraisal assistance. However, the participation you described could go beyond clerical duties. If, as part of the work you perform, you decide what, where, or how to research, you have applied judgment. Applying judgment or performing analysis for an assignment would likely be considered significant appraisal or appraisal review assistance. You can obtain more guidance on how to decide on whether your contributions to an assignment should be considered significant within USPAP by reviewing Advisory Opinion 31, *Assignments Involving More than One Appraiser*.

### 268. REPORTING SIGNIFICANT APPRAISAL ASSISTANCE IN AN ORAL REPORT

Question: **How must recognition of my significant appraisal assistance be included when there is no written report, but significant assistance was provided and documentation of my work is in the workfile?**

Response: The RECORD KEEPING RULE states that the workfile must include:

> *summaries of all oral reports or testimony, or a transcript of testimony, including the appraiser's signed and dated certification*

Standards Rule 2-4 states:

> *To the extent that it is both possible and appropriate, an oral real property appraisal report must address the substantive matters set forth in Standards Rule 2-2(a).*

Therefore, based on the requirements in USPAP, the workfile of an oral report must include a **signed certification stating the name of the person or persons providing significant appraisal assistance**. The oral report must also include a summary of the extent of that assistance because Standards Rule 2-4 requires that oral reports address the substantive matters set forth in Standards Rule 2-2(a), which are the requirements for an Appraisal Report. (Bold added for emphasis)

NOTE: This FAQ focuses on significant real property appraisal assistance. The same type of disclosure is also required in Standards 4, 6, 8, and 10 as they relate to the appraisal of other types of property, appraisal review, and mass appraisal.

**GO BACK**

### 269. DOES USPAP DEFINE SUPERVISORY APPRAISER?

**Question:** The term supervisory appraiser is used in many appraisal reports, particularly residential appraisal reports. Does USPAP define supervisory appraiser?

**Response:** No. USPAP does not define or otherwise address this term. The term supervisory appraiser was introduced by the authors of several widely used residential appraisal report forms.

However, it should be noted that an appraiser who signs any part of the appraisal report, including a letter of transmittal, must also sign the certification.

### 270. REPORTING SIGNIFICANT REAL PROPERTY APPRAISAL ASSISTANCE

**Question:** I am currently working in an appraisal firm as a trainee. As part of my training I contribute significant real property appraisal assistance in appraisal assignments performed by other appraisers in the firm, but I do not sign the appraisal report or the certification. I understand that my name must be stated in the certification. Must the certification include a description of my assistance?

**Response:** A description of your assistance or contribution to the assignment is not required in the certification. However, in accordance with Standards Rule 2-2(a)(ix) the extent of the assistance must be summarized (or stated, in accordance with Standards Rule 2-2(b)(xi)) within the report. This required disclosure could be included within the certification, but it could also be included in some other section of the report.

See Advisory Opinion 31, Assignments Involving *More than One Appraiser*, for further guidance.

### 271. RELYING ON THE REPORTS OF OTHERS

**Question:** I am a business appraiser and do not perform real property appraisal assignments. As a result, I sometimes rely on the results of a real property appraisal to determine the value of business equity. The real property appraisal report is not contained in my business valuation report; however, the real property value conclusion (the dollar amount) is indicated in my report. An example of this would be a real property holding company in which the value of the equity may be significantly dependent on the value of the owned real property. What is the appropriate way to address such reliance on the real property appraisal within my business appraisal report?

**Response:** Standards Rule 10-3(c) states:

> When a signing appraiser has relied on work done by appraisers and others who do not sign the certification, the signing appraiser is responsible for the decision to rely on their work.
>
> (i)   The signing appraiser is required to have a reasonable basis for believing that those individuals performing the work are competent; and
>
> (ii)  The signing appraiser must have no reason to doubt that the work of those individuals is credible.

Additionally, the Conduct section of the ETHICS RULE states, in part:

> An appraiser must not use or communicate a report or assignment results known by the appraiser to be misleading or fraudulent.

The business valuation report should specifically reference the source of the real property value and may incorporate that value conclusion by use of an extraordinary assumption. Disclosure of the extraordinary assumption could be similar to the following:

> "The fair market value of the subject interest in XYZ Company is dependent on the market value of the real property owned by the Company, as provided to us. We have not verified the

GO BACK

validity of this asset value, which we assume to be reliable. The use of this assumption might have affected our assignment results."

The business appraisal report must contain a certification by the business appraiser(s). A signed certification related to the real property appraisal will be in the report provided by the real property appraiser (or in the workfile in the case of an oral report.)

The business appraiser must rely on a real property appraiser because the business appraiser in this scenario is not competent to perform a real property appraisal or to review the real property appraisal.

In deciding that the individual providing the real property appraisal is competent, the business appraiser might note such things as the real property appraiser's:

- declaration in a signed certification that the analyses, opinions and conclusions were developed, and the report was prepared, in conformance with USPAP;
- relevant experience, education, or references; or
- evidence of professional status, such as license, professional designation, or other recognition of professional or academic achievement.

It is important to note that the determination of another appraiser's competency may not be established by a single factor, but instead may require a combination of factors. Ultimately, it would be the business appraiser's decision as to whether the real property appraiser is competent, and that decision must be based on reasonable criteria. In addition, it is of paramount importance that the business appraiser has no reason to doubt that the work of the real property appraiser is credible.

## 272. DISAGREE WITH SUPERVISOR ON VALUE CONCLUSION

**Question:** **I am employed at a firm where my reports are reviewed by a supervisory appraiser. The supervisory appraiser recently asked me to make changes to a report that resulted in a value opinion with which I do not agree. I am not comfortable signing the amended report. What are my obligations under USPAP?**

**Response:** If the report does not represent your own opinions and conclusions, then you must not sign the report or the certification.

Standards Rule 2-3(b) states: *An appraiser who signs any part of an appraisal report, including a letter of transmittal, must also sign a certification.*

The certification must then also include a statement that addresses the following element:

*I certify that, to the best of my knowledge and belief, the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are **my personal**, impartial, and unbiased professional analyses, opinions, and conclusions.*
(Bold added for emphasis)

An appraiser required to make changes that he or she does not agree with would not be reporting his or her own personal analyses, opinions, or conclusions.

## 273. DOES THE CERTIFICATION ON THE UNIFORM RESIDENTIAL APPRAISAL REPORT (URAR) FORM ALSO EXTEND TO THE MARKET CONDITIONS ADDENDUM?

**Question:** **When I complete the Market Conditions form (i.e., Fannie Mae 1004MC/Freddie Mac 71) and include it within my report, does the certification contained in the URAR form apply to the Market Conditions form as well?**

**Response:** Yes. The name of the form in question is the *Market Conditions Addendum to the Appraisal*

*Report*. Any addendum is part of a larger report (in this case, a URAR form). In addition, the Market Conditions form is clearly identified as an addendum, as evidenced by the following language at the top of the form:

> *The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.*

The Comment to Standards Rule 2-3(b) states:

> *In an assignment that includes only assignment results developed by the real property appraiser(s), any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report.*

Thus, the certification applies to the entire appraisal and report, including any addenda.

### 274. MULTI-DISCIPLINE CERTIFICATION – REAL PROPERTY APPRAISER

**Question:** **I am a real property appraiser who sometimes participates in assignments that include the appraisal of real property, personal property (machinery and equipment), and intangible assets. The value conclusions for each asset type are separately prepared by an appraiser with competency in the asset type. A single report is jointly issued that communicates the assignment results for all of the assets. What is the appropriate wording for the certification in these situations?**

**Response:** Standards Rule 2-3(a) states, in part:

> The wording of a certification *does not have to match the following verbatim, but each of the elements must be addressed:*
>
> *I certify that, to the best of my knowledge and belief:*
>
> - *the reported analyses, opinions, and conclusions ... are my personal, impartial, and unbiased professional analyses, opinions, and conclusions...*
> - *my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice...*

The Comment to Standards Rule 2-3(b) states, in part:

> *In an assignment that includes only assignment results developed by the real property appraiser(s), any appraiser who signs a certification accepts full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report.* ***In an assignment that includes personal property, business or intangible asset assignment results not developed by the real property appraiser(s), any real property appraiser who signs a certification accepts full responsibility for the real property elements of the certification, for the real property assignment results, and for the real property contents of the appraisal report.*** (Bold added for emphasis)

When reporting assignment results that are separately prepared by appraisers from different disciplines, the certification must clearly define responsibility for all assignment results and report content. The certification language may be altered to indicate which reported conclusions each appraiser is certifying to. The certification language is not required to be exactly as presented in USPAP.

One solution would be for each appraiser to sign a separate certification that identifies the assignment results and report content for which they take responsibility. Another solution to this circumstance would be to include a single certification altered to indicate the assignment results and report content certified to by each appraiser.

GO BACK

Whatever solution is adopted, the certification language must identify the assignment results and report content for which the real property appraiser takes responsibility. One example of such language would be:

- the reported **real property** analyses, opinions, and conclusions ... are my personal, impartial, and unbiased professional analyses, opinions, and conclusions...
- my **real property** analyses, opinions, and conclusions were developed, and the **real property content** of this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*. (Bold added for emphasis)

Each personal property appraiser must take responsibility for the personal property assignment results and report content. Each business and/or intangible asset appraiser must take responsibility for the business and/or intangible asset assignment results and report content.

### 275. SIGNIFICANT APPRAISAL ASSISTANCE – PERSONAL PROPERTY APPRAISER

**Question:** **I am a personal property appraiser specializing in machinery and equipment. My value opinions are sometimes influenced by analysis performed by a business appraiser, such as in determining whether the earnings of the business are sufficient to justify the otherwise-determined value of the machinery and equipment. What are the certification requirements in this scenario?**

**Response:** The key to the disclosure requirement is the significance of the assistance that is provided by the business appraiser. In cases where the earnings of the business support a value that greatly exceeds the value that you have otherwise determined, the information from the business appraiser does not appear to be significant.

In a case where your otherwise determined value is impacted or influenced by the information that you receive from the business appraiser, this appears to be assistance that is significant and disclosure of that assistance is required.

Standards Rule 8-2(a)(viii) requires that an Appraisal Report must, at a minimum:

*summarize the scope of work used to develop the appraisal;*

<u>Comment</u>: *Summarizing the scope of work includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.*

(NOTE: If reporting assignment results in a Restricted Appraisal Report format, the appraiser must state the scope of work used to develop the appraisal, per Standards Rule 8-2(b)(x).)

When any portion of the work involves significant personal property appraisal assistance, the appraiser must summarize (or state) the extent of that assistance. The name(s) of those providing the significant personal property appraisal assistance must be stated in the certification, in accordance with Standards Rule 8-3.

Therefore, if the assistance provided by the business appraiser is significant, the extent of the assistance must be summarized in an Appraisal Report or stated in a Restricted Appraisal Report, and the business appraiser must be named in the certification.

For additional guidance, refer to Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, and Advisory Opinion 29, *An Acceptable Scope of Work*.

### 276. USE OF CERTIFICATION WITH FORM 1004D/442 – APPRAISAL UPDATE

**Question:** **My client has asked me to update an appraisal that I completed for them eight months ago and submit the report on the Fannie Mae Form 1004D/Freddie Mac Form 442. Does this assignment require a certification regarding the prior service?**

GO BACK

**Response:** Yes. Because an appraisal update is a new appraisal assignment, regardless of the form used to report the results, the report must include a certification disclosing whether you have provided a service regarding the subject property in the three years prior to agreeing to perform the new assignment.

Each real property appraisal report, including those for update assignments, must include a signed certification that, at a minimum, addresses the items specified in Standards Rule 2-3(a). The certification in the prior report cannot be incorporated by reference, since it would not be possible to have certified in the past that the work done in the present meets all of the requirements to which the appraiser must certify.

### 277. CERTIFICATION WITH MULTIPLE APPRAISERS

**Question:** When the certification for a commercial appraisal report is signed by two certified general appraisers, does USPAP require each appraiser to specify which part of the appraisal the appraiser performed?

**Response:** No. If both appraisers sign the certification, they both accept full responsibility for all elements of the certification, for the assignment results, and for the contents of the appraisal report. When more than one person signs the certification, USPAP requires only that that they disclose which individuals did and which individuals did not inspect the subject property.

According to Standards Rule 2-3(a):

> If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.

For additional guidance, see Advisory Opinion 31: *Assignments Involving More than One Appraiser.*

### 278. PERSONAL PROPERTY APPRAISAL ASSIGNMENT INVOLVING MULTIPLE APPRAISERS

**Question:** I have been hired to coordinate the appraisal of personal property for a large estate. The project will involve four different appraisers. I will appraise the furniture, decorative arts, and residential contents but will subcontract with three other specialty appraisers to appraise the gems and jewelry, fine arts, and automobiles. What is the correct way to prepare the signed certification?

**Response:** The Comment to Standards Rule 8-3(b) states that appraisers with different specialties may accept responsibility for the parts of the appraisal that are specific to their specialty. USPAP does not prescribe a single correct way to prepare the certification. If the terms of the certification are identical (i.e., if all appraisers have inspected and if none have performed any services within the prior three years), one way to accomplish this would be to state a limitation by each appraiser's signature (e.g., John Doe for furniture, David Jones for automobiles). Another way to address this would be to include separate certifications from each of the appraisers beginning with language such as, "For the furniture in this appraisal, I certify that, to the best of my knowledge and belief…" Another option is for all appraisers to sign the certification and state in the report who worked on what.

Appraisers must remember that in addition to the certification requirement, the Comment to Standards Rule 8-3(b) states, "the role of each appraiser signing a certification must be disclosed in the report." Clear disclosure of each appraiser's role helps to ensure that the report is not misleading.

### 279. DOES USPAP REQUIRE DISCLOSURE BY A NON-APPRAISER?

**Question:** A client has asked me to perform an appraisal, but instead of requiring me to personally inspect the subject, they will provide me with the results of an inspection of the property done by someone else. Does USPAP require me to disclose this person's name as having provided significant appraisal assistance and describe the assistance they provided?

**Response:** No. The information provided in the inspection is only data and the inspection performed was not part of the appraiser's scope of work in the assignment.

For additional guidance, see Advisory Opinion 2, *Inspection of the Subject Property*.

### 280. SIGNING AND LABELING OF SUPPLEMENTAL CERTIFICATIONS

**Question:** **I use appraisal reporting software that includes a fixed certification which cannot be altered. The certification does not include USPAP's required disclosure certifying whether I performed any services on the property in the three years prior to agreeing to perform the assignment. May I add this or other certification elements required by USPAP elsewhere in the report, outside of the provided certification?**

**Response:** Yes. Standards Rule 2-3(d) states:

*When an assignment requires the use of a certification that does not include all of the certification elements in this Standards Rule, the appraisal report must contain a supplemental certification, which includes the remaining required certification elements.*

### 281. LABELING SUPPLEMENTAL CERTIFICATIONS

**Question:** **I use appraisal reporting software that includes a fixed certification which does not include all of the certification elements required by USPAP, and the form cannot be altered. Therefore, I need to add a supplemental certification to ensure all of the disclosures required by USPAP are included in the report. Must I label these certification elements as a "Supplemental Certification," and am I required to sign a supplemental certification?**

**Response:** It is not a requirement to label a supplemental certification, however, to avoid being misleading, a label such as that may be necessary for the intended users to properly understand the report. Standards Rule 2-3(d) states, in part, that under these circumstances "...the appraisal report must contain a supplemental certification, which includes the remaining required certification elements." One way to meet this requirement is to group the missing required certification elements in a single location under this heading.

USPAP does not require that a supplemental certification be signed. However, nothing would prohibit an appraiser from signing a supplemental certification.

### 282. PRIOR SERVICES BY STAFF APPRAISERS

**Question:** **I work for "Large National Appraisal Firm," which has multiple offices. In situations where appraisers on staff have valued properties within the prior three years, the firm's management recommends its appraisers utilize the following language in the certification to disclose prior services: "Large National Appraisal Firm has provided a prior service, as appraisers, but has provided no other services, as appraisers or in any other capacity." Per USPAP, is this an adequate disclosure for the signed certification?**

**Response:** No. Firms do not sign certifications. Appraisers sign certifications. The disclosure in the certification must clarify whether the individual appraiser who signs the certification has provided prior services. The same requirements apply if the certification is signed by appraisers who have different records of prior services. The certification must indicate which appraisers provided prior services (and what services) and which appraisers have not provided any services, as an appraiser or in any other capacity, during the three-year period immediately preceding engagement to complete the assignment.

GO BACK

### 283. SIGNIFICANT APPRAISAL ASSISTANCE BY STAFF APPRAISERS

**Question:** **I work for the multi-office "Large National Appraisal Firm." The firm's management recommends staff appraisers include the following generic disclosure language in the certification to identify instances where staff members have provided significant real property appraisal assistance: "Staff members of Large National Appraisal Firm have provided significant appraisal assistance to the persons signing this certification." Per USPAP, is this an adequate disclosure for the signed certification?**

**Response:** No, this is not an adequate disclosure. The names of individuals providing significant appraisal assistance must be stated in the certification. It is not required that the description of their assistance be contained in the certification, but the extent of their assistance must be stated or summarized within the appraisal report in accordance with Standards Rule 2-2(a)(ix) or 2-2(b)(xi) as applicable.

GO BACK

# APPRAISAL DEVELOPMENT –
## USE AND FORMAT ISSUES

### 284. OWNERSHIP OF APPRAISAL REPORTS

**Question:**  **A property owner has requested a copy of an appraisal report I prepared for a lender. Who owns an appraisal report, its associated research and supporting documentation?**

**Response:**  USPAP does not specifically address who owns an appraisal report, the research necessary to produce that report and the report's supporting documentation.

Appraisal reports of all kinds are, by definition ...*transmitted to the client...* As indicated in Standards Rules 2-2, 8-2, and 10-2, the decision as to which reporting option is appropriate for any given assignment is reached by both the appraiser and the client. However, once that decision has been competently made, USPAP does not place further responsibility upon the appraiser for the client's use of that report.

An appraiser who receives a request from any party for a copy of an appraisal report must comply with the Confidentiality section of the ETHICS RULE which states, in part:

> *An appraiser must protect the confidential nature of the appraiser-client relationship.*

> *An appraiser must act in good faith with regard to the legitimate interests of the client in the use of confidential information and in the communication of assignment results.*

The Confidentiality section of the ETHICS RULE further states:

> *An appraiser must not disclose; (1) confidential information; or (2) assignment results to anyone other than:*

> - *the client;*
> - *parties specifically authorized by the client;*
> - *state appraiser regulatory agencies;*
> - *third parties as may be authorized by due process of law; or*
> - *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.*

### 285. ELECTRONIC REPORT DELIVERY

**Question:**  **I am an appraiser who has been asked by my client to submit my appraisal reports to them electronically. Assuming that I have satisfied the reporting obligations in the creation of the report, what are my obligations in the use of electronic delivery systems?**

**Response:**  USPAP does not specifically address this issue, but there are general ethical obligations that are relevant. The Conduct section of the ETHICS RULE states, in part,

> *An appraiser:*

> - *must not communicate assignment results with the intent to mislead or to defraud;*
> - *must not use or communicate a report or assignment results known* **by the appraiser** *to be misleading or fraudulent;*
> - *must not knowingly permit an employee or other person to communicate a report or assignment results that are misleading or fraudulent;* (Bold added for emphasis)

GO BACK

Communication in this instance means transmission of the report or assignment results, which can occur through such mechanisms as U.S. mail, private courier service, fax, e-mail, or web portal. The appraiser's obligation is to not transmit a misleading or fraudulent report.

In the transmission of electronic reports, the appraiser's obligation is to ensure that the report that is transmitted is not misleading or fraudulent. Therefore, the appraiser needs to be familiar with the electronic report created by the software used in the assignment. The appraiser must have a sufficient understanding of the report generating software used in an assignment to avoid the communication of misleading reports. In order to comply with USPAP, the electronic report that will be sent to the client must be examined by the appraiser prior to transmission to ensure that it is not misleading or fraudulent.

An appraiser cannot control what a client or intended user does with the appraisal report. USPAP establishes requirements only for appraisers, not clients, intended users, or others. Once an appraisal report has been transmitted to the client, USPAP places no further responsibility on the appraiser for the client's use of that report.

## 286. LABEL DIFFERENT FROM REPORTING OPTIONS

**Question:** **May I label an appraisal report using another term in place of Appraisal Report or Restricted Appraisal Report?**

**Response:** No. Standards Rules 2-2, 8-2, and 10-2 state, in part:

> *An appraiser may use any other label in addition to, but not in place of, the labels set forth in this Standards Rule for the type of report provided.*

## 287. FANNIE MAE FORM 1004

**Question:** **I appraise residential properties and use the Fannie Mae 1004 (URAR appraisal report form). I'm aware USPAP requires me to label my reports as an "Appraisal Report" or "Restricted Appraisal Report." But my appraisal software program won't let me change either the report title from "Uniform Residential Appraisal Report" or the words "summary appraisal report" to "Appraisal Report." Does that mean my reports do not comply with USPAP?**

**Response:** No. The <u>Comment</u> to Standards Rule 2-2 states, in part:

> *An appraiser may use any other label* **in addition to***, but not in place of, the labels set forth in this Standards Rule for the type of report provided.* (Bold added for emphasis)

Therefore, use of the label <u>*"Uniform Residential Appraisal Report" or "summary appraisal report"*</u> does not violate USPAP, unless use of that label in a specific report result in that report being misleading.

## 288. IS A LETTER OF TRANSMITTAL PART OF AN APPRAISAL REPORT?

**Question:** **I recently completed an appraisal report that included a letter of transmittal as part of my report. Some of the items required to comply with the reporting requirements of USPAP appear <u>only</u> in the letter of transmittal. My client states that a letter of transmittal is not part of the appraisal report, and these items must appear within the body of the report to comply with USPAP. Is my client correct?**

**Response:** No; the client is not correct. Although a letter of transmittal is not required by USPAP, there is nothing in USPAP that prohibits making a letter of transmittal part of the appraisal report. It should be noted that USPAP does require an appraiser signing any part of an appraisal report, including a letter of transmittal, to also sign the certification.

### 289. COPY OF LICENSE IN APPRAISAL REPORT

**Question:** I have several clients that request I include a copy of my state appraisal license in each appraisal report I perform. Does USPAP permit me to do this?

**Response:** USPAP does not directly address issues of appraiser licensing or credentials. However, some licensing jurisdictions have laws that govern the circumstances under which a licensee may provide a copy of his or her license. If so, appraisers are required to comply with such laws in order to comply with USPAP.

### 290. DOES USPAP REQUIRE IDENTIFYING APPRAISAL CREDENTIALS?

**Question:** I am a state certified real estate appraiser and typically list my state license number directly below my signature on appraisal reports. I spoke with an appraiser in another state who said USPAP has certain requirements pertaining to identification of credentials in an appraisal report. Is this correct, does USPAP address how appraiser credentials must appear in an appraisal report?

**Response:** No. There are no requirements in USPAP specifying how an appraiser must identify his or her credentials in an appraisal report. That is a matter of individual state laws for state licensed or certified appraisers. There may also be specific requirements from professional appraiser organizations for appraisers who possess designations from those organizations.

### 291. ARE INSTANT MESSAGES OR TEXT MESSAGES APPRAISAL REPORTS?

**Question:** I perform appraisal assignments for a client who asks to be notified of my final value conclusion via text message or text message. Is this communication to the client an appraisal report that must comply with USPAP?

**Response:** Yes; this communication of assignment results is considered an appraisal report. Instant messages or text messages are written communications and, for assignments involving real property, are subject to the requirements of Standards Rules 2-2.

Oral appraisal reports of real property (where assignment results are communicated by the spoken word) are subject to the requirements of Standards Rule 2-4.

### 292. REPORTING APPRAISAL UPDATES

**Question:** I recently received an assignment for an update of an appraisal. The original appraisal was reported on a commonly used single-family residential report form. Must I use this same form to report the results of the update assignment?

**Response:** No. Using the same form as the original report is not required for an update appraisal report. The update is a new appraisal assignment, and it may be reported in any format that is acceptable for the intended use and complies with the applicable reporting Standard (STANDARD 2 for a real property assignment). The report must contain sufficient information to be meaningful and not misleading to the intended users, but it is not required to have the same level of detail as the original report.

For additional information, refer to Advisory Opinion 3, *Update of a Prior Appraisal*.

### 293. FANNIE MAE UPDATE REPORT FORM 1004D/FREDDIE MAC FORM 442

I have been asked to provide an update of a previous appraisal assignment and to report the results on Fannie Mae Form 1004D/Freddie Mac Form 442. The form asks me to check yes or no in response to the question "Has the subject's market value declined since the original appraisal date?" I have the following two questions.

GO BACK

**Question:** **(1.) Does this constitute a new appraisal of the property?**

**Response:** Yes; this is a new appraisal with a new effective date. Additional guidance can be found in Advisory Opinion 3, *Update of a Prior Appraisal*.

**Question:** **(2.) How much of my analysis must I include in the report?**

**Response:** The analysis will vary from assignment to assignment, so the information required in the report will also vary. In some cases, it might be possible to summarize the analysis using the three lines provided on the form itself. If the space provided is insufficient, then the appraiser must supplement the form.

As with any written appraisal report, the appraiser is also required to include a signed certification. For Fannie Mae Form 1004D, which would be used for a real property appraisal assignment, the signed certification must be similar in content to that required in Standards Rule 2-3(a). If the certification included on the form does not cover all of the elements required in Standards Rule 2-3(a), then in accordance with Standards Rule 2-3(d), the appraisal report must contain a supplemental certification, which includes the remaining required certification elements.

## 294. CITING THE SOURCE OF THE VALUE DEFINITION AND FANNIE MAE FORM 1004/FREDDIE MAC FORM 70

**Question:** **USPAP requires an appraisal report to include a citation of the source of the value definition used for the appraisal. Is this information adequately addressed on Fannie Mae Form 1004/ Freddie Mac Form 70?**

**Response:** Yes. The value definition is provided on the Fannie Mae Form 1004/Freddie Mac Form 70, and there are several references indicating that Fannie Mae and Freddie Mac are the sources for the form. No additional citation is required for USPAP compliance.

## 295. LEGAL DESCRIPTION

**Question:** **I've been told that I have to report a complete legal description for the subject property in every appraisal I perform. Is this required by USPAP?**

**Response:** No. USPAP does not require a complete legal description for the subject property to be included in every report, since it is recognized that it is not always possible to do so. However, the reporting standards for real property, personal property, and business appraisals do have similar minimum identification requirements.

In the reporting standards for real property, Standards Rule 2-2(a), for example, the content of an Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:

> *Contain information, documents, and/or exhibits sufficient to identify the real estate involved in the appraisal, including the physical, legal, and economic property characteristics relevant to the assignment;*

For personal property and business or intangible asset appraisals, the requirements include similar language to present information sufficient to identify the property or assets (refer to Standards Rule 8-2(a)(iv) for personal property appraisals and to Standards Rule 10-2(a)(iv) for business appraisals).

## 296. PROPERTY ADDRESS

**Question:** **Does USPAP require that an address for the subject property be reported in every real property Appraisal Report?**

**Response:** No. Standards Rule 1-2(e) states, in part:

*In developing a real property appraisal, an appraiser must:*

*(e) identify, from sources the appraiser reasonably believes to be reliable, the characteristics of the property that are relevant to the type and definition of value and intended use of the appraisal, including:*

*(i)  its location and physical, legal, and economic characteristics; ...*

Additionally, Standards Rule 2-2(a) states, in part:

*The content of an Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum:*

*(iv) contain information, documents, and/or exhibits sufficient to identify the real estate involved in the appraisal, including the physical, legal, and economic property characteristics relevant to the assignment;*

The appraiser must provide information sufficient to *identify the real estate involved in the appraisal*. In some cases an address, particularly a post office box or other rural address may be misleading if no other identifying information such as a legal description is provided. In other cases, an address is sufficient to meet USPAP requirements.

### 297. WHY REPORT SCOPE OF WORK?

**Question:** **Why are appraisers required to report the scope of work in an appraisal and/or appraisal review report?**

**Response:** Documenting the scope of work provides the intended users with a clear understanding of the extent of the research and analyses performed. It also serves as protection for both the client and the appraiser by detailing things that were, and were not, done in the assignment.

In the SCOPE OF WORK RULE, a <u>Comment</u> states:

*Proper disclosure is required because clients and other intended users rely on the assignment results. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.*

(Note: other professions, such as engineering, have a long history of requiring the development and reporting of the scope of work in their assignments.)

### 298. REPORTING WORK NOT DONE IN AN ASSIGNMENT

**Question:** **Does the report need to explain what wasn't done in an assignment?**

**Response:** Possibly; in addition to the disclosure of research and analyses performed, disclosure of research and analyses not performed might be needed to allow intended users of the report to understand your scope of work. The report must explain why the cost approach, sales comparison approach or income approach was not developed. It may also be necessary to disclose other research and analysis not performed.

### 299. EXPLAINING THE EXCLUSION OF APPROACHES

**Question:** **An Appraisal Report that I am reviewing states "The cost approach was considered, but not developed." Does this meet the requirement of Standards Rule 2-2(a)(x)(2)?**

**Response:** Simply stating an approach was not developed does not communicate the specific reason or reasons why it was not developed. The requirement of this Standards Rule is:

**GO BACK**

*The content of an Appraisal Report must be appropriate for the intended use of the appraisal and, at a minimum, provide sufficient information to indicate that the appraiser complies with the requirements of STANDARD 1 by...***stating the reasons for excluding** *the sales comparison, cost, or income approach(es) if any have not been developed.* (Bold added for emphasis)

The reason the cost approach was not developed was the result of the appraiser's research and analysis that led to this conclusion. Therefore, stating the reason provides the cause or justification for the exclusion of an approach.

### 300. SEPARATE SCOPE OF WORK SECTION IN THE REPORT

**Question:**  **Am I required to have a separate section in my reports describing my scope of work?**

**Response:**  No. USPAP does not dictate where information must be included in reports, and the description of the scope of work performed is no exception.

The Disclosure Obligations section of the SCOPE OF WORK RULE states:

*The report must contain sufficient information to allow the client and other intended users to understand the scope of work performed. The information disclosed must be appropriate for the intended use of the assignment results.*

*Comment: Proper disclosure is required because clients and other intended users rely on the assignment results. Sufficient information includes disclosure of research and analyses performed and might also include disclosure of research and analyses not performed.*

*The appraiser has broad flexibility and significant responsibility in the level of detail and manner of disclosing the scope of work in the appraisal report or appraisal review report. The appraiser may, but is not required to, consolidate the disclosure in a specific section or sections of the report, or use a particular label, heading, or subheading. An appraiser may choose to disclose the scope of work as necessary throughout the report.*

The scope of work performed may be described in one section, or throughout the report.

### 301. IDENTIFICATION OF THE CLIENT IN APPRAISAL REPORTS

**Question:**  **Is an appraiser required to disclose the identity of the client in an appraisal report?**

**Response:**  A client must be identified as required by Standards Rules 2-2(a) and (b), 4-2(a), 6-2(a), 8-2(a) and (b), and 10-2(a) and (b) (as applicable). For example, the Comment in Standards Rule 2-2(a)(i) states, in part:

*State the identity of the client, or if the client requested anonymity, state that the identity is withheld at the client's request but is retained in the appraiser's workfile;*

*Comment: Because the client is an intended user, they must be identified in the report as such. However, if the client has requested anonymity the appraiser must use care when identifying the client to avoid violations of the Confidentiality section of the ETHICS RULE.*

Refer to Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*, for additional guidance.

### 302. DISCLOSURE OF THE INTENDED USER IN A REPORT

**Question:**  **When a client has not requested anonymity, the USPAP requirement is for an Appraisal Report or a Restricted Appraisal Report to state the identity of the client and of any other intended user(s). An Appraisal Report I am reviewing identifies the client as XYZ Bank and further stated "The only intended user of this report is the client". Is this an adequate disclosure of the identity of the intended user and why is this disclosure required?**

**Response:** USPAP requires disclosure of the intended users in order to ensure that:

1. The client and any other intended users can recognize their relationship to the assignment and report; and
2. Parties other than the intended users will not be misled by putting them on notice that they are neither the client nor an intended user.

If identification by name is not appropriate or practical, the appraiser may identify an intended user by type only for an Appraisal Report. Therefore, the statement "The only intended user of this report is the client" meets that requirement.

However, for a Restricted Appraisal Report any other intended users besides the client, must be identified specifically by name.

Refer to Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*, for additional guidance.

### 303. DISCLOSURE OF THE INTENDED USE IN A REPORT

**Question:** **USPAP requires that each appraisal or appraisal review report state the intended use of the assignment results. How can one determine if the intended use statement in a report is adequate?**

**Response:** USPAP requires disclosure of the intended use to avoid misleading parties in possession of an appraisal or appraisal review report. For additional clarity, one might also state that other uses are not intended. The use description provided in the statement must be specific to the assignment.

Advisory Opinion 36, *Identification and Disclosure of Client, Intended Use, and Intended Users*, provides an example of a statement that may be appropriate for inclusion in a report:

This report is intended only for use in (state the use). This report is not intended for any other use.

### 304. MULTIPLE INTENDED USES IN THE SAME APPRAISAL REPORT

**Question:** **May I perform an appraisal with multiple intended uses and communicate the results in a single report with a single valuation and be in compliance with USPAP? All of the intended uses have the same type and definition of value and were performed with the same scope of work.**

**Response:** Yes. USPAP requires the appraiser to identify the intended use of the appraisal opinions and conclusions. USPAP requires that the report state the intended use of the appraisal. Intended use is defined as:

*The **use(s)** of an appraiser's reported appraisal or appraisal review assignment results, as identified by the appraiser based on communication with the client at the time of the assignment.* (Bold added for emphasis)

Therefore, an assignment may have multiple intended uses with a single value opinion in the same report as long as the uses have the same definition of value and the same scope of work.

An example with multiple intended uses with the same type and definition of value and same scope of work could include a market value appraisal being prepared for a possible donation and being prepared for a possible sale.

It should be noted that there are many circumstances when appraisers provide multiple value opinions in a single report with multiple intended uses (such as for market value, liquidation value and insurable value all in the same report). In this example, each intended use has a different type and definition of value, different scope of work, and likely will have differing conclusions.

GO BACK

## 305. ORAL REPORTS AND RECORD KEEPING

**Question:** **An attorney hired me to prepare an appraisal. He asked that I not prepare a report but rather discuss my conclusions with him orally. I have done that, and he concluded that my opinion will not be helpful to his client and therefore does not want a written report. What are my obligations under USPAP in this situation?**

**Response:** Under the RECORD KEEPING RULE:

> *An appraiser must prepare a workfile for each appraisal or appraisal review assignment. A workfile must be in existence prior to the issuance of any report or other communication of assignment results. A written summary of an oral report must be added to the workfile within a reasonable time after the issuance of the oral report.*
>
> *The workfile must include:*
> * *the name of the client and identity, by name or type, of any intended users;*
> * *true copies of all written reports, documented on any type of media;*
> * ***summaries of all oral reports or testimony,** or a transcript of testimony, **including the appraiser's signed and dated certification**; and*
> * *all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other data, information, and documentation.* (Bold added for emphasis)
>
> *A workfile in support of a Restricted Appraisal Report or an oral appraisal report must be sufficient for the appraiser to produce an Appraisal Report. A workfile in support of an oral appraisal review report must be sufficient for the appraiser to produce an Appraisal Review Report.*

The reporting of the appraisal conclusions to the attorney is an oral report. A summary of such a report, along with the appraiser's signed and dated certification needs to be included in the workfile.

## 306. ORAL APPRAISAL REPORTING REQUIREMENTS

**Question:** **A client has asked me to complete an appraisal of a property but does not want me to prepare a written report. Instead, the client has asked that I communicate the results of my appraisal orally. Is this allowed under USPAP? If so, what requirements would I have to follow?**

**Response:** Yes; USPAP allows an appraiser to provide an oral report. Standards Rules 2-4, 4-4, 8-4, and 10-4 address the reporting requirements for oral reports. However, every appraisal or appraisal review report must be clearly and accurately set forth in a manner that is not misleading and contain sufficient information to enable intended users to understand the report properly. Thus, the responsibility is on the appraiser to not limit the reporting to such a degree that it would be misleading.

The RECORD KEEPING RULE also has requirements related to oral appraisal reports; specifically, the requirement to include in the appraiser's workfile:

> *summaries of all oral reports or testimony, or a transcript of testimony, including the appraiser's signed and dated certification.*

In addition, the RECORD KEEPING RULE states, in part:

> *A workfile must be in existence prior to the issuance of any report or other communication of assignment results. A written summary of an oral report must be added to the workfile within a reasonable time after the issuance of the oral report.*

GO BACK

### 307. APPRAISAL REPORT FORM SOFTWARE

**Question:** **What should I do if my appraisal form software does not address the most recent changes to USPAP?**

**Response:** Appraisers have been required to supplement an appraisal form when the form lacks required elements. Standards Rule 2-2 states:

> *The report content and level of information requirements in this Standards Rule are minimums for each type of report. An appraiser must supplement a report form, when necessary, to ensure that any intended user of the appraisal is not misled and that the report complies with the applicable content requirements.*

Appraisers must take the appropriate steps to ensure that their reports comply with the current version of USPAP.

### 308. PAPER COPIES OF ELECTRONICALLY TRANSMITTED REPORTS

**Question:** **Are appraisers required by USPAP to retain a paper copy of electronically transmitted appraisal reports?**

**Response:** No. The RECORD KEEPING RULE requires appraisers to prepare and retain a workfile for each appraisal and appraisal review assignment.

> *The workfile must include:*
>
> - *true copies of all written reports documented on any type of media (A true copy is a replica of the report transmitted to the client. A photocopy or an electronic copy of the entire report transmitted to the client satisfies the requirement of a true copy.);*
> - *A photocopy or an electronic copy of the entire report transmitted client satisfies the requirement of a true copy.*

Therefore, a paper copy is not required.

### 309. APPRAISAL REPORT FORMS COMPLIANCE WITH USPAP

**Question:** **Fannie Mae, Freddie Mac, and other governmental and private entities issue appraisal report forms. Do these forms comply with USPAP?**

**Response:** It is the position of the ASB that appraisers, not forms, comply with USPAP. Each assignment is different, and no form could cover all USPAP requirements for all assignments. Appraisal report forms are simply tools to assist in organizing the reporting of assignment results.

It is the responsibility of the appraiser to properly *develop* an appraisal, and to properly *report* the assignment results. A template or form may or may not adequately report the assignment results. It may be necessary for the appraiser to supplement a form with addenda to comply with USPAP requirements.

### 310. APPLICATION OF APPRAISAL REPORTING REQUIREMENTS

**Question:** **If an appraiser is bound by USPAP for a particular assignment, when must the appraiser comply with the USPAP appraisal reporting requirements?**

**Response:** Whenever a value opinion is communicated, compliance with USPAP's appraisal reporting requirements is required.

It may seem obvious in many cases that an appraiser must abide by the appraisal reporting requirements. However, in other cases it is not as obvious, such as the following examples, all of which require compliance with USPAP reporting requirements:

- Selecting and providing a client with comparable sales for a known property is an appraisal assignment as defined by USPAP.
- Informing a property owner that their property tax assessment is too high is an appraisal report as defined in USPAP.
- Providing an opinion of market rent is an appraisal report as defined in USPAP.
- Providing an opinion of the most probable selling price for a homeowner is an appraisal report as defined in USPAP.
- Preparing, analyzing and communicating the results of an automated valuation model (AVM) for a property as part of an appraisal assignment, is an appraisal report as defined in USPAP.

It is important to remember that the applicability of USPAP is not affected by the amount or the lack of a fee.

### 311. DISCOUNTED CASH FLOW (DCF)

**Question:** **I am appraising a property that will require a discounted cash flow (DCF) analysis. Are there any special requirements in USPAP for this?**

**Response:** Advisory Opinion 33, Discounted Cash Flow Analysis, contains guidance related to performing a DCF in the appraisal of real property. The following outlines the conclusions at the end of this Advisory Opinion:

*Use of DCF analysis requires specialized knowledge and experience. Its application requires a high degree of diligence.*

*DCF analysis is a tool available to the appraiser and is often applied in developing value opinions in concert with one or more other approaches.*

*It is the responsibility of the appraiser to ensure that the controlling input is consistent with market evidence and prevailing market attitudes. The appraiser is also responsible for the resulting output.*

*Market value DCF analyses should be supported by market-derived data and the assumptions should be both market- and property-specific.*

*Appraisal assignments that require the appraiser to employ assumptions that are not based on market data or to employ assumptions provided by the client, are not market value but rather investment value.*

*If using commercial DCF software, the appraiser should cite the name and version of the software and provide a brief description of any assumptions and/or methodology unique to that software, if any.*

*DCF accounts for and reflects those items and forces that impact the revenue, expenses, and ultimate earning capacity of an asset and represents a forecast of events that would be considered likely within a specific market.*

*The results of DCF analysis should be tested and checked for errors and reasonableness.*

### 312. CONTENT OF RESTRICTED APPRAISAL REPORTS

**Question:** **I have been asked to provide a Restricted Appraisal Report, but I would like to be very descriptive in parts of the report. Does USPAP preclude an appraiser from including a more detailed analysis in a Restricted Appraisal Report?**

**Response:** No. USPAP prescribes the minimum content requirements for the two written report options, Appraisal Report and Restricted Appraisal Report. An appraiser is not prohibited from adding to the minimum requirements. The information or analysis included in the report that exceeds the minimum requirements must still be meaningful relative to the intended use of the assignment results.

### 313. APPRAISER QUALIFICATIONS IN REPORT

**Question:** **I've seen several appraisal reports that include a copy of the appraiser's résumé, professional qualifications, or curriculum vitae (CV). Does USPAP require an appraisal report to include the appraiser's qualifications?**

**Response:** No. Although certain professional appraiser organizations or users of appraisal services might require the report to include the appraiser's qualifications, it is not a USPAP requirement.

### 314. PROVIDING A DRAFT OF A REPORT

**Question:** **My client has asked that I provide a draft of my appraisal report prior to issuing the report in final form. Is this permitted under USPAP?**

**Response:** USPAP does not explicitly define or address drafts of reports. When clients, other intended users, and appraisers use the term draft, they may mean many different things, from a preliminary spreadsheet to a written document that is identical to the final report except that it is labeled a draft and does not contain signatures. Report drafts have traditionally been part of certain types of appraisal practice but have never been considered acceptable in other types of appraisal practice.

State-regulated appraisers should be aware of applicable state laws and regulations. Many laws define a report as *"any communication, written or oral, of an appraisal."*

Whatever a draft may be in a particular context, it would always be part of appraisal practice because it is a valuation service provided by an appraiser. All services performed as part of appraisal practice must comply with USPAP. The portions of USPAP that apply generally to appraisal practice include the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

The second sentence of the PREAMBLE states: *It is essential that appraisers develop and communicate their analyses, opinions, and conclusions to intended users of their services in a manner that is meaningful and not misleading.* Additionally, the Conduct section of the ETHICS RULE states, in part:

*An appraiser:*

- *must not communicate assignment results with the intent to mislead or to defraud;*
- *must not use or communicate a report or assignment results known by the appraiser to be misleading or fraudulent;*

Therefore, if an appraiser communicates with intended users prior to completion of an assignment, the communication must not be misleading.

The purpose of issuing a draft cannot be to allow the client to improperly influence the appraiser.

**GO BACK**

Appraisers must also comply with appropriate record keeping requirements. The RECORD KEEPING RULE states, in part:

> An appraiser must prepare a workfile for each appraisal or appraisal review assignment. A workfile must be in existence prior to the issuance of any report or other communication of assignment results.

## 315. DEVELOPING AN UNNECESSARY VALUATION APPROACH

**Question:**  **I have a client that requests the cost approach be included in every appraisal assignment, including those where I feel the cost approach may not yield meaningful results. I am concerned that by complying with the client's request I may be providing a misleading appraisal report. How can I comply with USPAP and satisfy the client at the same time?**

**Response:**  Performing a cost approach that may not yield a meaningful indication of value does not result in a misleading appraisal report if the appraiser properly addresses the applicability and suitability of the approach in the report. Many appraisers address this in the reconciliation by including statements such as, "The cost approach was included solely at the request of the client; it has been given no weight in arriving at the final opinion of value because …."

See Advisory Opinion 28, *Scope of Work Decision, Performance, and Disclosure*, for further guidance.

## 316. ALTERING APPRAISAL REPORT PHOTOGRAPHS

**Question:**  **I recently submitted an appraisal report to my client and was subsequently asked to alter the photographs I included in my report. Am I permitted to alter photographs per a client's request?**

**Response:**  As with virtually every appraisal assignment, there are assignment conditions and contractual obligations with which the appraiser is expected to comply (provided the appraiser can produce credible assignment results and produce a report that is not misleading).

Clients sometimes request that photographs do not include certain items or entities that do not affect value. An appraiser may comply with such requests, except when doing so would result in a misleading appraisal report. For example, a photograph may include a person off to the side of the subject of the photo, and the appraiser may be able to crop the photo in a manner that would eliminate the person, but maintain a clear image of the subject of the photo. In this simple example, this would not be misleading and the appraiser could comply with the client's request.

On the other hand, a photograph depicting a relevant physical characteristic (e.g., physical defect) cannot be altered or deleted simply because of a client's request.

## 317. COMMUNICATING ASSIGNMENT RESULTS WITHOUT AN APPRAISAL REPORT

**Question:**  **I was engaged to perform an appraisal of a single-unit residential property for a mortgage lending transaction. After inspecting the property and collecting the necessary data, I concluded that the highest and best use was as a two-unit dwelling. I informed the client of this conclusion prior to completing the appraisal and the client then canceled the assignment. Does USPAP allow an appraiser to convey an opinion of highest and best use prior to transmitting an appraisal report?**

**Response:**  Yes. Nothing in USPAP prohibits communication with the client during an assignment. However, highest and best use opinions are assignment results, and any such communications are subject to specific prohibitions stated in the Conduct section of the ETHICS RULE and are also subject to the workfile requirements of the RECORD KEEPING RULE.

GO BACK

### 318. IDENTIFYING INTENDED USERS BY NAME IN A RESTRICTED APPRAISAL REPORT

**Question:** I understand that Standards Rules 2-2(b), 8-2(b), and 10-2(b) permit additional intended users other than the client for appraisals communicated in a Restricted Appraisal Report. Does the reporting requirement to state the identity of these other intended users "by name" not just "by type" mean that each intended user must be a specific individual, or may they be an entity or firm?

**Response:** Just as a client may be an individual, group, or entity, other intended users may also be an individual, group or entity. In a Restricted Appraisal Report the identity of other intended users must be stated by name, for example: "Bank of Main Street," or "Smith & Johnson Accounting, LLC." In a Restricted Appraisal Report it is not permitted to state the identity of the other intended users without a name, for example: "other banks involved in the syndication," or "accounting professionals," or "family members."

GO BACK

# APPRAISAL REVIEW

### 319. WHEN DO STANDARDS 3 AND 4 APPLY?

**Question:** **I am an appraiser and my practice includes requests to comment on a wide range of valuation work performed by others. At various times this work is presented as an Appraisal Report, appraisal review report, market data summary, or even as a broker's price opinion. When do STANDARDS 3 and 4 apply?**

**Response**: The answer to this question lies in the definition of appraisal review:

> *(noun) the act or process of developing an opinion about the quality of another appraiser's work (i.e., a report, part of a report, a workfile, or some combination of these) that was performed as part of an appraisal or appraisal review assignment; (adjective) of or pertaining to an opinion about the quality of another appraiser's work that was performed as part of an appraisal or appraisal review assignment.*

For this question, the key features of an appraisal review are:

- *the work under review was performed by an appraiser, and*
- *the work under review was performed as part of an appraisal or appraisal review assignment.*

Assignments related to market data summaries and broker's price opinions are not appraisal reviews. Even when the work under examination was performed by an appraiser, evaluating these types of work is not part of an appraisal review.

However, even if the service is not an appraisal review, all services performed as part of appraisal practice must comply with USPAP. The portions of USPAP that apply generally to appraisal practice include the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE. These do apply in this instance because you are acting as an appraiser. (See Advisory Opinion 21, *USPAP Compliance*, for further guidance.)

### 320. GEOGRAPHIC COMPETENCY IN APPRAISAL REVIEWS

**Question:** **I have a client who has asked me to perform a desk review on an appraisal report for a property located in a different state. I have no knowledge of the real estate market in that state and have never even been there. Can I perform a USPAP-compliant appraisal review on this report?**

**Response:** Yes. If you are engaged to determine whether or not the appraisal report under review complies with certain guidelines or standards, geographic competence is not typically relevant. Alternatively, review assignments that include evaluating the selection and adjustment of comparable sales typically require geographic competence. As in all assignments, an appraiser must identify the scope of work required for the assignment and determine if he or she has the knowledge and experience to complete the assignment competently.

### 321. POST-VALUATION DATE INFORMATION IN APPRAISAL REVIEWS

**Question:** **Can post-valuation date information be used to impeach or impugn appraisals and appraisers?**

**Response:** No. The <u>Comment</u> to Standards Rule 3-2(g) states:

> *Information that should have been considered by the original appraiser can be used by the reviewer in developing an opinion as to the quality of the work under review.*


**GO BACK**

*Information that was not available to the original appraiser in the normal course of business may also be used by the reviewer; however, the reviewer must not use such information in the reviewer's development of an opinion as to the quality of the work under review.*

For additional guidance, see STANDARD 3 and Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value.*

### 322. REVIEWER DISAGREES WITH VALUE CONCLUSION

**Question:** **In performing an appraisal review, a reviewer disagrees with the value conclusion in the original appraisal. What is the correct action the reviewer should take according to USPAP?**

**Response:** STANDARD 3 addresses the development of an appraisal review. The <u>Comment</u> to Standards Rule 3-2(c) states that the reviewer may express his or her own opinion of value. When disagreeing with the value conclusion in the work under review, the reviewer is required to develop a value opinion under the applicable development Standard (STANDARD 1, 3, 5, 7, or 9) and clearly set forth the basis for his or her conclusions. Standards Rule 4-2 addresses the reporting of the reviewer's opinion of value, (i.e., an appraisal) within the appraisal review report. The reporting requirements of STANDARD 2, 6, 8, or 10 do not apply.

However, the <u>Comment</u> to Standards Rule 3-3(c) states, in part:

*When the assignment includes the reviewer developing his or her own opinion of value or review opinion, the following apply:*

- *The reviewer's scope of work in developing his or her own opinion of value or review opinion may be different from that of the work under review.*
- *The effective date of the reviewer's opinion of value may be the same or different from the effective date of the work under review.*
- *The reviewer is not required to replicate the steps completed by the original appraiser. Those items in the work under review that the reviewer concludes are credible can be extended to the reviewer's development process on the basis of an extraordinary assumption. Those items not deemed to be credible must be replaced with information or analysis developed in conformance with STANDARD 1, 3, 5, 7, or 9, as applicable, to produce credible assignment results.*

And, the <u>Comment</u> to Standards Rule 3-2(g) states:

*Information that should have been considered by the original appraiser can be used by the reviewer in developing an opinion as to the quality of the work under review.*

*Information that was not available to the original appraiser in the normal course of business may also be used by the reviewer; however, the reviewer must not use such information in the reviewer's development of an opinion as to the quality of the work under review.*

Refer to Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value*, for additional guidance.

### 323. REVIEWER CONCURS WITH VALUE CONCLUSION

**Question:** **I am performing a review of a real property appraisal and my client has asked me to give my opinion of value, even if I agree with the value in the appraisal. Does my concurrence constitute an appraisal? If so, what do I need to do to comply with USPAP?**

**Response:** Yes. If you concur with the value in the report, it does constitute an appraisal by the reviewer.

Standards Rule 3-3(c) states, in part:

**GO BACK**

- *The reviewer's scope of work in developing his or her own opinion of value or review opinion may be different from that of the work under review.*
- *The effective date of the reviewer's opinion of value may be the same or different from the effective date of the work under review.*
- *The reviewer is not required to replicate the steps completed by the original appraiser. Those items in the work under review that the reviewer concludes are credible can be extended to the reviewer's development process on the basis of an extraordinary assumption. Those items not deemed to be credible must be replaced with information or analysis developed in conformance with STANDARD 1, 3, 5, 7, or 9, as applicable, to produce credible assignment results.*

You should be sure that your scope of work clearly includes the requirement to develop your own opinion of value (i.e., develop an appraisal).

The Comment to Standards Rule 3-3(c) shows the steps that must be taken when the assignment includes the reviewer expressing his or her own opinion of value. One of these requirements is that you must satisfy the applicable development standard. Specifically, whether you concur or disagree with the value in the appraisal being reviewed, you would extend to your development process those items in that appraisal that you conclude are credible and in compliance with STANDARD 1, in this case. This is accomplished on the basis of an extraordinary assumption. Those items not deemed to be credible or in compliance must be replaced with information or analysis by the reviewer.

Additional guidance is contained in Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value.*

## 324. APPRAISAL REVIEW AND STATE APPRAISER BOARDS

**Question:** **Is a reviewer permitted by USPAP to file a complaint with a state appraiser board without the consent of his or her client?**

**Response:** It is the opinion of the ASB that a reviewer may, absent any higher precedent law or regulation, file a complaint with a state appraiser board without the consent of his or her client.

The Confidentiality section of the ETHICS RULE states:

*An appraiser must protect the confidential nature of the appraiser-client relationship.*

The Confidentiality section continues:

*An appraiser must not disclose; (1) confidential information; or (2) assignment results to anyone other than:*

- *the client;*
- *parties specifically authorized by the client;*
- **state appraiser regulatory agencies;**
- *third parties as may be authorized by due process of law; and*
- *a duly authorized professional peer review committee except when such disclosure to a committee would violate applicable law or regulation.* (Bold added for emphasis)

### 325. READING APPRAISAL REPORTS

**Question:** **I recently completed an appraisal and forwarded the report to the client. After receiving the report the client called and stated that they have another appraisal that was recently completed and the values differ significantly. They asked if I would look over the other report and point out the primary differences. Does this assignment constitute an appraisal review?**

**Response:** No. In this case the client is not asking you to assess the quality of the other appraisal or your opinion of its conclusions. Since you are only noting the differences in the two appraisals you are not performing an appraisal, or appraisal review.

### 326. REVIEWING TWO APPRAISALS ON THE SAME PROPERTY

**Question:** **My client has obtained two appraisals of the same real property, and has asked me to perform an appraisal review on each and develop my own opinion of value, which may differ from the value opinions expressed in either appraisal. Can I perform this assignment under USPAP?**

**Response:** Yes; you can perform this assignment under USPAP. The situation you describe constitutes a real property appraisal review assignment. STANDARD 3 addresses the development and STANDARD 4 the reporting of a real property appraisal review assignment. In this case, you would apply the specific appraisal review requirements of Standards Rule 3-1 and Standards Rule 3-2 to both appraisals being reviewed, and provide your own opinion of value in accordance with Standards Rule 3-3(c) and Standards Rule 4-2(i).

In this situation, it would be appropriate to include the result of your review of both appraisals and your own appraisal opinion within the same appraisal review report. You would provide a single signed certification in accordance with Standards Rule 4-3.

For additional guidance, refer to Advisory Opinion 20, *An Appraisal Review Assignment That Includes the Reviewer's Own Opinion of Value*.

### 327. REVIEW REPORT ON MULTIPLE APPRAISAL REPORTS

**Question:** **I have been asked to review multiple appraisal reports and to report my findings in one appraisal review report. Does USPAP permit this?**

**Response:** Yes. A single appraisal review assignment can include the review of several appraisal reports, with the assignment results presented in one appraisal review report.

### 328. APPRAISAL REVIEW FOR A STATE APPRAISER BOARD

**Question:** **I am a state-certified appraiser who serves on the appraisal review panel for our state's appraisal licensure and certification board. The state administrator has asked me to review an appraisal report. The appraiser that prepared the report is the subject of a complaint that was recently filed. The purpose of the review is to develop and state my opinion as to the quality of the work in comparison to the applicable requirements in USPAP, state law, and regulations. My state does not exempt reviewers who are state licensed or certified appraisers from compliance with USPAP when performing such reviews. Do I have to follow STANDARDS 3 and 4 in this assignment?**

**Response:** Yes. Under the circumstances you describe, you must follow all the applicable requirements of STANDARDS 3 and 4. In this specific situation, just because the intended user and intended use are related to enforcement does not mean such a review assignment would be treated or accomplished any differently.

However, some states have laws or regulations that exempt appraisal review work of this type from USPAP. An appraiser performing such an assignment should discuss the assignment with the client and

**GO BACK**

carefully review the applicable state law and regulation to ensure no misunderstanding about whether the appraiser's compliance with a part or parts of USPAP is, in fact, precluded; or whether a jurisdictional exception results in a part or parts of USPAP, such as STANDARDS 3 and 4, not being applicable.

## 329. REVIEWING AN APPRAISAL REVIEW REPORT

**Question:** **An appraiser was recently asked to complete an appraisal review of an appraiser's appraisal review report. Must the appraiser comply with STANDARDS 3 and 4 in completing this assignment?**

**Response:** Yes; the appraiser must comply with STANDARDS 3 and 4 in this assignment. STANDARD 3 states:

> *In developing an appraisal review, an appraiser must identify the problem to be solved, determine the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal review.*

STANDARD 4 states, in part:

> *In reporting the results of an appraisal review assignment, an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.*

Appraisal review encompasses more than just the review of another appraiser's appraisal. It is *the act or process of developing an opinion about the quality of another appraiser's work*. (See the definition of 'appraisal review')

## 330. SCOPE OF WORK IN APPRAISAL REVIEW REPORTS

**Question:** **USPAP requires appraisers to include a description of the scope of work in each appraisal report, the detail of which varies by reporting option. Is there a similar requirement for appraisal review reports?**

**Response:** Yes. Standards Rule 4-2, states, in part:

> *The content of an appraisal review report must be appropriate for the intended use of the appraisal review and, at a minimum:*
>
> *(g) state the scope of work used to develop the appraisal review.*

## 331. REVIEWING A PORTION OF AN APPRAISAL REPORT

**Question:** **I was recently asked to review an appraisal report and limit my review to the income approach to value. Is such a limitation acceptable?**

**Response:** Yes. USPAP does not require the reviewer to review the entire report. The Comment to Standards Rule 3-2(d) states:

> *The subject of an appraisal review assignment may be all or part of a report, a workfile, or a combination of these.*

## 332. CHANGING THE VALUE OPINION WITHOUT THE APPRAISER'S CONSENT

**Question:** **Is it ethical for an appraiser, acting as a reviewer, to change the reported value opinion in the original appraiser's work without the knowledge or consent of the original appraiser?**

**Response:** No. Standards Rule 4-1 states, in part:

> *Each written or oral appraisal review report **must be separate from the work under review*** (Bold added for emphasis)

In addition, simply changing the original appraisal report, in any way, without the consent of the original appraiser would be a violation of the <u>Conduct</u> section of the ETHICS RULE that states, in part:

*An appraiser:*

- *must not use or communicate a report or assignment results known **by the appraiser** to be misleading or fraudulent;*
- *must not knowingly permit an employee or other person to communicate a report or assignment results that are misleading or fraudulent.* (Bold added for emphasis)

### 333. REVIEWER'S OWN OPINION OF VALUE AND SCOPE OF WORK

**Question:** **In an appraisal review assignment that includes the reviewer's own opinion of value, is the reviewer required to use the same scope of work as the original appraiser?**

**Response:** No. The <u>Comment</u> to Standards Rule 3-3(c) states, in part:

*When the assignment includes the reviewer developing his or her own opinion of value or review opinion the following apply:*

- *The reviewer's scope of work in developing his or her own opinion of value or review opinion may be different from that of the work under review.*
- *The effective date of the reviewer's opinion of value may be the same or different from the effective date of the work under review.*
- *The reviewer is not required to replicate the steps completed by the original appraiser. Those items in the work under review that the reviewer concludes are credible can be extended to the reviewer's development process on the basis of an extraordinary assumption. Those items not deemed to be credible must be replaced with information or analysis developed in conformance with STANDARD 1, 3, 5, 7, or 9, as applicable, to produce credible assignment results.*

For example, the scope of work in the original appraisal may have included an interior and exterior inspection of the subject property, and the scope of work for the appraisal review may include only an exterior inspection or no inspection at all.

### 334. DISCREDITING THE ORIGINAL APPRAISER'S WORK

**Question:** **Recently one of my appraisal reports was reviewed. The review report contained information that could not have been available to me at the time I completed my appraisal report. The reviewer used this additional information to discredit my opinion of value. Is this appropriate?**

**Response:** No. The <u>Comment</u> to Standards Rule 3-2(g) allows a reviewer to use additional information.

*Information that was not available to the original appraiser in the normal course of business may also be used by the reviewer; **however, the reviewer must not use such information in the reviewer's development of an opinion as to the quality of the work under review**.* (Bold added for emphasis)

### 335. REVIEWER CITATION OF USPAP NON-COMPLIANCE

**Question:** **If a review appraiser concludes that an appraisal report is unacceptable, does the reviewer need to cite specific requirements in USPAP that were not fulfilled appropriately?**

GO BACK

**Response:** No, but the review appraisal report must include the reasons for the reviewer's conclusion. When the scope of work requires the review appraiser to evaluate compliance with relevant USPAP requirements, it is appropriate to analyze compliance or non-compliance with USPAP. However, USPAP does not require a reviewer to determine that the subject of an appraisal review complies with USPAP.

### 336. REVIEW APPRAISER BIAS

**Question:** **An appraiser receives a request to review an appraisal; however, the reviewer has previously appraised the same property. Does the reviewer's prior experience with the property create a bias that then precludes an objective review?**

**Response:** No. Prior appraisal experience with the subject of the work under review might be considered an asset and may have contributed to the reviewer being selected for the assignment. Before agreeing to perform any assignment, an appraiser must be certain that he or she will be able to attest in the certification that the assignment results are impartial and unbiased. If the performance of the prior appraisal assignment creates a predisposition regarding appropriate and reasonable assignment results, the appraiser should decline the appraisal review assignment.

In addition, a reviewer with prior experience with the property should be aware that the <u>Conduct</u> section of the ETHICS RULE states:

> *If known prior to agreeing to perform an assignment, and/or if discovered at any time during the assignment, an appraiser must disclose to the client, and in each subsequent report certification:*
>
> * *any current or prospective interest in the subject property or parties involved; and*
> * *any services regarding the subject property performed by the appraiser, as an appraiser or in any other capacity, within the three-year period immediately preceding the agreement to perform the assignment.*

### 337. "REBUTTALS" AND APPRAISAL REVIEWS

**Question:** **I am a state certified appraiser and recently performed an appraisal assignment for a client. The client subsequently had an appraisal review performed on my appraisal and the reviewer brought up some issues that I do not agree with. My client has asked me to provide a written "rebuttal" explaining why I believe I'm correct.**

**In "defending" my appraisal, I am concerned that I would be, at least indirectly, offering an "opinion on the quality of another appraiser's work that was performed as part of an ... appraisal review," which could mean that I would be required to comply with STANDARDS 3 and 4. Furthermore, I am concerned that in this "rebuttal" I may not be able to be objective and unbiased, since I have an interest in defending my original appraisal. How can I perform this "rebuttal" without violating USPAP?**

**Response:** USPAP does not prohibit an appraiser from "defending" (or explaining) his or her appraisal. However, there is a fine line between defending one's own appraisal and offering an opinion on the quality of another appraiser's work.

A "rebuttal" where an appraiser simply provides additional rationale or support for his or her analyses, opinions, and conclusions is not a new assignment under USPAP, and there are no Standards that apply. However, if the appraiser agrees to also examine the appraisal review and critique what the reviewer has done, it becomes an appraisal review and the appraiser must comply with STANDARDS 3 and 4.

### 338. IS COMPLIANCE WITH STANDARDS 3 AND 4 REQUIRED WHEN SUBMITTING A COMPLAINT?

**Question:** I am a real property appraiser. I want to submit a complaint regarding an appraisal report to my state appraiser regulatory agency. I would like to express my opinions and comments about the quality of the appraisal report in a cover letter. Am I obligated to comply with STANDARDS 3 and 4 regarding my opinions and comments regarding the appraisal? If so, who is my client?

**Response:** No, you are not required to comply with STANDARDS 3 and 4. Because the individual filing the complaint is acting as an appraiser, USPAP applies. However, because there is no client, there is no assignment and so STANDARDS 3 and 4 do not apply. All services performed as part of appraisal practice must comply with USPAP. Therefore, the appraiser making the complaint would be obligated to comply with the portions of USPAP that apply generally to appraisal practice including the PREAMBLE, the DEFINITIONS, the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

### 339. UNIFORM ACT AND THE REVIEW OF LOW VALUE ACQUISITION APPRAISAL REPORTS

**Question:** I am a review appraiser for a government agency that is subject to the provisions of The Uniform Relocation Assistance and Real Property Acquisitions Act of 1970, as Amended (commonly known as, the Uniform Act), and its implementing regulation, 49 CFR Part 24. There is a provision in this Federal regulation that allows an acquiring agency to adopt an appraisal review reporting process, in cases of low value acquisitions, that may be as simple as the review appraiser stamping such an appraisal report as "Approved," and signing and dating that action.

This process is intended to be used only in certain acquisitions, such as a partial acquisition for a highway project – and then only in those that are very minor in their impact to the subject properties and which clearly do not result in legally compensable damages to the remainders or any change in highest and best use. Examples of these appraisal reports might be those performed to value easement areas and/or very minor fee simple acquisitions.

In these cases, this federal regulation obviously requires much less than is typically required in STANDARDS 3 and 4 of USPAP.

How does the ASB characterize a review appraiser's simple approval in these instances, as a jurisdictional exception or an assignment condition?

**Response:** When it applies, 49 CFR Part 24 is an assignment condition. There is no jurisdictional exception because the Uniform Act and its implementing regulation (49 CFR Part 24) allows the use of this simplified review process in cases of low value acquisitions but does not require it. A jurisdictional exception is created only when compliance with USPAP is precluded by a requirement of law or regulation. The Uniform Act does not mandate the use of this simplified review process in cases of low value acquisitions, therefore it is not a requirement of law or regulation, consequently, the simplified review process does not preclude compliance with USPAP.

USPAP STANDARDS 3 and 4 apply to appraisal review assignments and provides for flexibility in the scope of work for the review. Based on the intended use and purpose of the appraisal review, the reviewer can determine an appropriate scope of work necessary to develop credible assignment results.

In the review of low value acquisition appraisal reports under the Uniform Act, the simplified appraisal review process must produce credible assignment results in light of the intended use. If this USPAP requirement is satisfied, the appraisal review process is acceptable.

The USPAP requirements for an appraisal review assignment also allow flexibility in reporting the results of an appraisal review assignment. The format of the appraisal review report is not addressed by USPAP, but Standards Rule 4-1, in part, states:

GO BACK

*Each written or oral appraisal review report **must be separate from the work under review...*** (Bold added for emphasis)

The application of a stamp to the appraisal report under review does not comply with this reporting requirement. The review appraiser must ensure that the content of the review report complies with the requirements of Standards Rule 4-2.

## 340. EFFECTIVE DATE THAT DIFFERS FROM THE WORK UNDER REVIEW

**Question:** **In an appraisal review assignment for which the reviewer develops his or her own opinion of value, is it permissible for the reviewer to use an effective date that differs from the work under review?**

**Response:** Yes. The <u>Comment</u> to Standards Rule 3-3(c) states, in part:

When the assignment includes the reviewer developing his or her own opinion of value or review opinion the following apply:

- *The reviewer's scope of work in developing his or her own opinion of value or review opinion may be different from that of the work under review.*

- ***The effective date of the reviewer's opinion of value may be the same or different from the effective date of the work under review.*** (Bold added for emphasis)

## 341. ADDITIONAL CERTIFICATION IN AN APPRAISAL REVIEW REPORT

**Question:** **I recently reviewed an appraisal report. As part of the assignment I developed an opinion of value that was different from the value in the appraisal report. I understand that I must provide a signed certification for the review pursuant to Standards Rule 4-3. However, the language in Standards Rule 4-2 seems to suggest that I am also required to prepare an additional certification to comply with Standards Rule 2-3. Are two certifications necessary?**

**Response:** No, you are not required to provide two certifications in an appraisal review assignment that includes reporting your own value opinion.

This is addressed in the <u>Comment</u> to Standards Rule 4-2(j), which states:

*The reviewer may include his or her own opinion of value or review opinion related to the work under review within the appraisal review report itself without preparing a separate report. However, data and analyses provided by the reviewer to support a different opinion or conclusion must match, at a minimum, **except for the certification requirements**, the reporting requirements for an:*

- *Appraisal Report for a real property appraisal (Standards Rule 2-2(a));*
- *Appraisal Report for a personal property appraisal (Standards Rule 8-(a));*
- *Appraisal Review Report for an appraisal review (Standards Rule 4-2);*
- *Mass Appraisal Report for mass appraisal (Standards Rule 6-2); and*
- *Appraisal Report for business appraisal (Standards Rule 10-2(a)).*
  (Bold added for emphasis)

The <u>Comment</u> underscores that whenever a reviewer provides a value conclusion different from the value opinion in the report under review, it is only the data and analyses provided by the reviewer that must be consistent with the applicable reporting Standard.

GO BACK

### 342. REVIEW FOR AN ETHICS COMMITTEE

**Question:** **Do STANDARDS 3 and 4 apply to a review of an appraisal report performed by an Ethics Committee or a Board of Examiners of a professional appraisal organization?**

**Response:** STANDARDS 3 and 4 apply to appraisal review in general, but unlike the other Standards its application is only in the context of an assignment. STANDARD 3 begins:

*In developing an appraisal review assignment, an appraiser must …*

So, if the service provided is an appraisal review (as defined in USPAP) and is part of an assignment (as defined in USPAP), STANDARD 3 applies to development and STANDARD 4 to reporting. Even when STANDARDS 3 and 4 do not apply, other parts of USPAP will apply if the service falls within the scope of USPAP's definition of appraisal practice.

Whether compliance with USPAP is required in any given situation is different question. The PREAMBLE states, in part:

*An appraiser must comply with USPAP when either the service or the appraiser is required by law, regulation, or agreement with the client.*

Therefore, questions relating to reviews by an Ethics Committee, Board of Examiners, or similar body must be analyzed on a case-by-case basis in the context of the various definitions and the applicable laws, regulations, or agreements.

### 343. DEFINITION OF VALUE IN APPRAISAL REVIEW REPORTS

**Question:** **USPAP is clear with regard to the rules reviewers must follow when developing their own opinions of value. In assignments like this, are review appraisers required to provide their own definitions of value in the appraisal review reports?**

**A commonly used residential review form does not provide this information nor have a field for reviewers to provide this information in those cases when reviewers provide their own opinions of value. I recognize that the onus is on the appraiser for USPAP compliance rather than form.**

**I'm not clear on whether the market value definition used in the original appraisal is implied, should be clarified with an extraordinary assumption, or simply defined in the appraisal review report.**

**Response:** USPAP does not specifically address this issue in STANDARDS 3 and 4. Absent a statement otherwise by the reviewer, it would be assumed that the reviewer's opinion of value would be based upon the definition of value in the appraisal report being reviewed.

Neither does USPAP prohibit the reviewer from utilizing another value definition. The reviewer, when rendering his or her own opinion of value, must comply with STANDARD 1 (see S.R. 1-2 (c)), which states an appraiser must "identify the type and definition of value…

### 344. REVIEWER HIGHLIGHTING THE POSITIVE

**Question:** **Should the reviewer try to apply USPAP so that the appraiser whose work is under review is presented in the best light?**

**Response:** No. USPAP prohibits bias, which is defined as "a preference or inclination that precludes an appraiser's impartiality, independence, or objectivity in an assignment." Furthermore, the reviewer should focus on the work under review, not upon the appraiser.

GO BACK

### 345. MAY REVIEWER SAY AN APPRAISAL LACKS ANALYSIS?

**Question:** **If no analysis is presented in an Appraisal Report, may a reviewer conclude that no analysis was performed in the appraisal?**

**Response:** Yes. If no analysis is reported, there is a deficiency in the appraisal, the Appraisal Report, or both. An Appraisal Report is required to provide sufficient information to indicate that the appraiser complied with the requirements of (the applicable) STANDARD. For example, for Standard 2-2(a)(x)(5), states that, at a minimum, the appraisal report must contain a "summary of the information analyzed...". If an Appraisal Report does not provide this required summary, it is reasonable for a reviewer to conclude that no analysis was performed in developing the appraisal.

### 346. DEVELOPING AN OPINION OF REASONABLE EXPOSURE TIME

**Question:** **Is it true that developing an opinion of reasonable exposure time is required only in market value appraisals?**

**Response:** No. This is not limited to market value appraisals. The appraiser is required to develop an opinion of reasonable exposure time when reasonable exposure time is a component of the value definition being applied. See Standards Rules 1-2(c) and 7-2(c). In addition, if required to develop the opinion, the appraiser must also state the opinion of reasonable exposure time in the Appraisal Report or Restricted Appraisal Report. See Standards Rules 2-2(a)(vi), 2-2(b)(viii), 8-2(a)(vi), and 8-2(b)(viii).

GO BACK

# OTHER SERVICES

## 347. VALUATION SERVICE INVOLVING ADVOCACY

**Question:** A client feels that her property is over assessed by the county. She's asked me to perform a tax consulting service that involves advocacy for her position and I'd like to charge her on a contingency fee basis. This assignment would not include an appraisal. I have two questions: Is this service allowed under USPAP? If not, can I perform this assignment outside of USPAP?

**Response:** You may not perform this assignment under USPAP. An appraiser, in appraisal practice, may not be an advocate. The <u>Conduct</u> section of the ETHICS RULE states:

*An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests.*

*An appraiser:*

- *must not perform an assignment with bias;*
- *must not advocate* **the cause or interest** *of any party or issue;* (Bold added for emphasis)

Appraisal practice is defined as:

*valuation services performed by an individual acting as an appraiser, including but not limited to appraisal and appraisal review.*

Furthermore, none of the certifications in USPAP allow any bias, contingent compensation related to assignment results, or direction in value that favors the cause of the client.

Absent any law or regulation to the contrary, you may complete this assignment outside of USPAP, as long as you are very clear about your role. The ETHICS RULE also states,

*An appraiser:*

*must not misrepresent his or her role when providing valuation services that are outside of appraisal practice.*

Refer to Advisory Opinion 21, *USPAP Compliance*, for further guidance.

## 348. FEASIBILITY STUDIES AND APPRAISAL PRACTICE

**Question:** A client recently requested that I perform a feasibility study on a potential retail development. No value conclusions are included in the scope of the work agreed upon with the client, but they have requested that I provide many of the components of what could lead to a value conclusion, such as potential income streams, capitalization rates, cost estimates, and similar information. I have completed numerous appraisal assignments for this client and I am certain that I was chosen, in large part, because I am an appraiser. Does this assignment fall within appraisal practice? And, must I comply with USPAP in completing the assignment?

**Response:** Yes. This assignment falls under appraisal practice because it is a valuation service performed by an individual acting as an appraiser.

The appraiser needs to carefully and clearly identify the appropriate valuation services required to complete this assignment competently and ensure that they comply with the applicable sections of USPAP.

**GO BACK**

Any valuation service that requires an opinion of value requires adherence to both STANDARDS 1 and 2. For example, the portion of the assignment that analyzes "components of what could lead to a value conclusion such as potential income streams" suggests the appraiser might need to provide an opinion of market rent. Market rent represents an opinion of value. So too could the inclusion of recent sales, if analyzed for their comparability to the subject.

For portions of the analysis that are not an appraisal or an appraisal review and do not require an opinion of value, the appraiser must, at a minimum, comply with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE. (The PREAMBLE and the DEFINITIONS apply generally to all appraisal practice.) Refer to Advisory Opinion 21, *USPAP Compliance*, for further guidance.

## 349. REPLACEMENT COST ESTIMATE

**Question:** **Is an estimate of replacement cost new (RCN) considered an appraisal?**

**Response:** No. An appraisal is defined in USPAP as "an opinion of value." USPAP also defines value and cost.

Value is defined as:

*VALUE: the monetary relationship between properties and those who buy, sell, or use those properties, expressed as an opinion of the worth of a property at a given time.*

*Comment: In appraisal practice, value will always be qualified – for example, market value, liquidation value, or investment value.*

Cost is defined as:

*COST: the actual or estimated amount required to create, reproduce, replace, or obtain a property.*

Replacement cost may be a major component used in developing an opinion of some types of value, such as insurable value, but an estimate of RCN by itself is not a value, thus this estimate is not an appraisal.

GO BACK

# REFERENCE INDEX

# INTRODUCTION

The Reference Index (introduced as the *USPAP Reference Manual* in late 2021) is designed to provide appraisers with another resource to help navigate USPAP as well as the Advisory Opinions (AOs) and Frequently Asked Questions (FAQs) found earlier in this publication.

The Reference Index is designed to help you navigate complex USPAP questions by providing you with an organized list of topics. The topics are arranged to follow the typical appraisal process. In other words, issues you would typically encounter before you agree to perform an assignment are at the beginning of the index, and issues you typically encounter after you have completed an appraisal are at the end of the index.

**It is important to note that this Reference Index is not an interpretation of the *Uniform Standards of Professional Appraisal Practice*, AOs, or FAQs.** Rather, its purpose is to direct you to what may be the most applicable sections in the USPAP publication as you seek to solve your USPAP-related questions that come up in your day-to-day practice.

Also note that the wording used in this document intentionally does not replicate USPAP, the AOs, or the FAQs.

# TABLE OF CONTENTS FOR REFERENCE INDEX

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **289**

**TOPICS APPLICABLE TO GENERAL PRACTICE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **297**

**GENERAL TOPICS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **297**

    Acting as an Appraiser . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 297

    Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 297

    "Appraisal Report" vs. "appraisal report" vs. "appraisal" vs. "report," etc. . . . . . . . . . . . . . . . . . 297

    Errors and Omissions Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 298

    Can This Service Be an Appraisal? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 298

    Complying with USPAP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 298

    Public Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 299

**USPAP, LAWS, AND REGULATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **300**

    Laws and Regulations (as defined by USPAP) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 300

    Jurisdictional Exceptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 300

    Examples of Laws That Can Impact Appraisal Practice . . . . . . . . . . . . . . . . . . . . . . . . .301

    Requirements Related to Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 302

**CONFIDENTIALITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **302**

    Confidential Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 302

**FEES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **303**

    The Appraiser Giving a Thing of Value (or Paying a Fee) to Others . . . . . . . . . . . . . . . . . . . 303

    Fees Based on Other Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 304

    Disclosure of Fees (Requirements) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 305

    Disclosure of Fees (Not required) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 305

    Paying the Appraisal Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 305

**COMPETENCY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **305**

    Being Competent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 305

    Lack of Competency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 305

    Geographic Competency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 306

    Disclosing Competency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 306

**PRESENT OR PROSPECTIVE INTEREST AND PRIOR SERVICE** . . . . . . . . . . . . . . . . . . . . . **306**

    Present (Current) or Prospective Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 306

    Prior Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 306

    Disclosing Present (Current) or Prospective Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . 307

    Disclosing Prior Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 307

**PRIOR TO AGREEING TO PERFORM AN ASSIGNMENT** . . . . . . . . . . . . . . . . . . . . . . . . . **308**

    Predetermined Result . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 308

    Unacceptable Assignment Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 308

GO BACK

**TOPICS TO CONSIDER WHEN AGREEING TO PERFORM AN ASSIGNMENT** . . . . . . . . . . . . . . . . **309**

**ASSIGNMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **309**

    Examples of Assignments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 309

    Physical Segment, Partial Holding, or Fractional Interest . . . . . . . . . . . . . . . . 309

    "Comp Check" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 309

**ASSIGNMENT ELEMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**310**

    When They Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .310

    What They Are . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .310

**APPRAISAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**310**

    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .310

    The Subject of a Real Property Appraisal . . . . . . . . . . . . . . . . . . . . . . . . 311

    "Subject Property". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 311

    Physical Segment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 311

    The Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 311

    Appraiser-Client Relationship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .312

    Client's Impact on Value Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . .312

**INTENDED USER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**312**

    Who the User Is . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .312

**INTENDED USE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**313**

    Who Determines? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .313

    Identification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .314

    Intended Use and Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . .314

    Adding Intended Users . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .314

    Unintended Uses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .314

**DEFINITION OF VALUE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**314**

    "Market Value". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .314

    Source . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .314

    Type . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .314

**TOPICS RELATED TO AN ASSIGNMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**315**

**ASSIGNMENT CONDITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**315**

    General Examples of Assignment Conditions . . . . . . . . . . . . . . . . . . . . . .315

    What They Are . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .315

    What They Are Not . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .315

    Hypothetical Condition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .316

    Extraordinary Assumption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .316

    Unacceptable Assignment Conditions . . . . . . . . . . . . . . . . . . . . . . . . . .317

    Recognize Applicable Assignment Conditions . . . . . . . . . . . . . . . . . . . . . .317

**SCOPE OF WORK** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**318**

    Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .318

    Who Determines the Scope of Work? . . . . . . . . . . . . . . . . . . . . . . . . . .318

    What Should the Scope of Work Include?. . . . . . . . . . . . . . . . . . . . . . . . .318

    Who Performs the Scope of Work? . . . . . . . . . . . . . . . . . . . . . . . . . . . .318

GO BACK

Who Can Specify the Scope of Work? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .318

Judging the Acceptability of the Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . .318

Same Scope of Work, Different Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .319

Examples of Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .319

Limiting the Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .319

The SCOPE OF WORK RULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .319

**TOPICS THAT RELATE TO APPRAISAL DEVELOPMENT** . . . . . . . . . . . . . . . . . . . . **320**

**APPRAISAL DEVELOPMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **320**

Assignment Results . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 320

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 320

Analyze Prior Listings of the Subject Property . . . . . . . . . . . . . . . . . . . . . . . . 320

Analyze Withdrawn or Expired Listings . . . . . . . . . . . . . . . . . . . . . . . . . . . . 320

Analyze Offers to Purchase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 320

Analyze Purchase Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .321

Analyze Prior Sales or Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .321

Analyze "Restrictions" or Encumbrances . . . . . . . . . . . . . . . . . . . . . . . . . . . 322

Analyze Supply and Demand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 322

Comparable Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 323

Data Necessary for Credible Assignment Results . . . . . . . . . . . . . . . . . . . . . . 323

Exposure Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 323

Highest and Best Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 323

Marketing Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 324

Tools, Methods, Techniques, and Approaches to Value . . . . . . . . . . . . . . . . . . . 324

Opinion of Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 325

Physical Characteristics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 325

Personal Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 325

Reasonable Steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 325

Relevant Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 326

Significant Appraisal Assistance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 326

**TOPICS RELATED TO APPRAISAL REPORTING** . . . . . . . . . . . . . . . . . . . . . . . . **327**

**ASSIGNMENT RESULTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **327**

"Preliminary Results" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 327

Without a Resulting Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 327

Sharing (or Reusing) Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 327

Communicating Assignment Results . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 327

Credible Assignment Results . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 327

**THE REPORT: HOW TO REPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **328**

Reporting and Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 328

Reporting and "Misleading" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 328

**GO BACK**

TABLE OF CONTENTS

**THE REPORT: CONTENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **329**

    Applicability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329

    Approaches to Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329

    Client . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329

    Confidential Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330

    Copy of an Appraiser's License, Resume, etc. . . . . . . . . . . . . . . . . . . . . . 330

    Data Input . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330

    Dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 330

    Information That May or May Not Be Necessary in the Report . . . . . . . . . . .331

    Intended Use. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 332

    Intended Users . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 332

    Photos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 332

    Reporting the Exclusion of Approaches . . . . . . . . . . . . . . . . . . . . . . . . . 332

    Reporting the Scope of Work. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 332

    Information That Was Analyzed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 333

    Negative Property Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 333

    Multiple Opinions of Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 333

    Signature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 333

    Significant Appraisal Assistance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 334

    Information for Others Who Read the Report. . . . . . . . . . . . . . . . . . . . . . 334

    Work Not Done . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 334

**THE REPORT: DRAFT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **334**

    Draft Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 334

**THE REPORT: FORMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **334**

    Forms (in general) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 334

    Alternate Valuation Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 334

    Condition and Marketability Reports . . . . . . . . . . . . . . . . . . . . . . . . . . 335

    Fannie Mae Form 1004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 335

    Fannie Mae Form 1004D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 335

    Fannie Mae Form 1004MC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 336

    Transmittal Letter (Letter of Transmittal) . . . . . . . . . . . . . . . . . . . . . . . 336

**THE REPORT: RESTRICTED APPRAISAL REPORT** . . . . . . . . . . . . . . . . . . . . . . . **336**

    Restricted Appraisal Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 336

**THE REPORT: THE DIGITAL OR HARDCOPY** . . . . . . . . . . . . . . . . . . . . . . . . . . . **337**

    How to Label the Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337

    Who Owns the Report? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337

    Sample Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337

    Security of the Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337

    Copy of the Written Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337

    "True Copy" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337

    Paper Copies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338

    Delivery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338

GO BACK

Plagiarism . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338

Copyrighting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338

Words an Appraiser Can Use. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338

**THE REPORT: THE ORAL REPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **338**

Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338

**THE REPORT: CERTIFICATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **339**

What Does the Certification Apply to?. . . . . . . . . . . . . . . . . . . . . . . . . 339

Who Is Required (or Not Required) to Sign? . . . . . . . . . . . . . . . . . . . . 339

Why Is It Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 340

When a Signed Certification Is Not Required . . . . . . . . . . . . . . . . . . . . 340

Content Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 340

Content Not Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 340

Content Not Allowed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .341

Signature on the Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .341

Date on Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .341


**ISSUES THAT TYPICALLY OCCUR AFTER THE REPORT HAS BEEN DELIVERED** . . . . . . . . . . . . . . . **342**

**COMPLETION OF AN ASSIGNMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . **342**

Modifying a Report after Completion . . . . . . . . . . . . . . . . . . . . . . . . . . 342

Adding Intended Users after Completion . . . . . . . . . . . . . . . . . . . . . . . 342

How Long Is the Report Valid for? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 342

**THE REPORT: AFTER DELIVERY TO THE CLIENT.** . . . . . . . . . . . . . . . . . **342**

Who Owns the Report? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 342

Adding an Intended User . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 342

Transferring a Report (which is not allowed) . . . . . . . . . . . . . . . . . . . . 342

**RECORD KEEPING: GENERAL CONCEPTS** . . . . . . . . . . . . . . . . . . . . . . **343**

When Selling an Appraisal Firm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 343


**TOPICS RELATED TO RECORD KEEPING** . . . . . . . . . . . . . . . . . . . . . . . . **344**

**RECORD KEEPING: THE WORKFILE** . . . . . . . . . . . . . . . . . . . . . . . . . . . **344**

Creating a Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 344

Access to the Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 344

Format of the Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 344

Contents of the Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 344

Existence of a Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 345

Custody of a Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 345

Number of Workfiles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 345

Purpose of the Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 345

Retention of the Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 346

Retrieval of the Workfile. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 346

Providing Copies of the Workfile. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 347

Purging . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 347

Disposal or Destroying . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 347

**GO BACK**



**SAME PROPERTY, NEW ASSIGNMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **347**

Confidential Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 347

When It May or May Not Be a New Assignment . . . . . . . . . . . . . . . . . . . . . 347

When It Is a New Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 347

"Starting Over" for a New Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . 348

Scope of Work for the New Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . 348

Client Prohibition on Agreeing to Perform Future Assignment . . . . . . . . . . . . . 348

Level of Detail in New Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 349

**APPRAISAL REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **349**

Geographic Competency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 349

Maintaining a Workfile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 349

Post-Valuation Date Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 349

"Reading" vs. "Reviewing" an Appraisal Report . . . . . . . . . . . . . . . . . . . . . 349

Reviewer Communicating with the Appraiser . . . . . . . . . . . . . . . . . . . . . . . 349

Which Standards Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 349

**OTHER TOPICS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **350**

**THE APPRAISAL FIRM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **350**

Selling the Appraisal Firm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 350

Buying the Appraisal Firm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 350

# TOPICS APPLICABLE TO GENERAL PRACTICE

## GENERAL TOPICS

| Acting as an Appraiser | Reference* |
|---|---|
| **USPAP instructor**<br>When acting as an appraiser in a teaching assignment, the instructor is engaged in appraisal practice and is acting as an appraiser. | FAQ 5, page 146 |
| **Appraisal practice**<br>The definition of appraisal practice includes all valuation services performed by an individual who is acting as an appraiser. | **DEFINITION of appraisal practice, page 3, lines 67-71** |
| **Services performed as part of appraisal practice**<br>These must all comply with USPAP. | FAQ 5, page 146 |
| Providing a "Condition and Marketability report" is a part of appraisal practice when the individual is providing the service as an appraiser. | FAQ 247, page 244 |
| **Claiming one is not "acting as an appraiser"**<br>The individual has an obligation not to misrepresent his or her role; however, it is also very important to understand that most states have laws that require an appraiser to comply with USPAP when engaged in appraisal practice. | FAQ 41, page 160 |
| **Publicly identifying oneself as an appraiser**<br>If an appraiser identifies themselves as an appraiser, then they should comply with USPAP. | FAQ 114, page 190 |
| Publicly identifying oneself as an appraiser establishes the expectation that a valuation service will be performed in compliance with USPAP. | FAQ 114, page 190 |
| **What is a "Supervisor Appraiser"?**<br>This is not defined in USPAP. | FAQ 269, page 253 |

| Advertising | |
|---|---|
| **Stating one is "USPAP Certified" in advertising**<br>There is no such credential, therefore, this claim is misleading. | FAQ 42, page 161 |

| "Appraisal Report" vs. "appraisal report" vs. "appraisal" vs. "report," etc. | |
|---|---|
| **Appraisal Report**<br>An Appraisal Report is labeled as such. | **Standards Rules 2-2(a), 8-2(a), and 10-2(a)** |
| **appraisal report**<br>An appraisal report is the communication of an opinion of value. | FAQ 8, page 148 |
| This can be either a written report ("Appraisal Report" or "Restricted Appraisal Report") or an oral report. | **DEFINITION of report, page 6, lines 159-160** |
| **appraisal review report**<br>An appraisal review report does not have to be labeled as such. | **STANDARD 4, page 29, lines 868-871** |

*Items in bold in Reference column refer to 2024 USPAP publication. Other items refer to this publication, USPAP GRM.

---

USPAP Guidance: Reference Index
© The Appraisal Foundation

 GO BACK

297

**appraisal**

An appraisal is an opinion of value.

FAQ 8, page 148

An appraisal is either the act of developing an opinion of value, or the opinion of value itself.

**DEFINITION of appraisal, page 6, lines 159-160;** FAQ 8, page 148

**report**

A report has a definition in USPAP.

**DEFINITION of report, page 6, lines 159-160**

## Errors and Omissions Insurance

**Is it required?**

USPAP does not require it, but a client or a law might.

FAQ 111, page 188

## Can This Service Be an Appraisal?

**Analysis of Leases**

When a client hires an appraiser to analyze leases and the appraiser provides a conclusion of market value, the service is an appraisal.

FAQ 4, page 146

**Personal Property Appraiser Giving Value Opinions on "Antiques Roadshow"**

Giving an opinion of value, even orally, is an appraisal and the appraiser must comply with all applicable sections of USPAP.

FAQ 6, page 147

## Complying with USPAP

**Comply by choice**

An appraiser can comply by choice.

FAQ 2, page 145

If not required to comply, an appraiser should comply when representing themselves an appraiser.

**ETHICS RULE, page 7, lines 173-175**

**Comply (who must comply)**

USPAP does not establish who must comply.

**PREAMBLE, page 1, line 35;** FAQ 113, page 190

Who must comply.

FAQ 3, page 145

USPAP instructors are subject to USPAP.

FAQ 5, page 146

**Comply (who does not have to comply)**

An agency can determine that an appraiser is not required to comply, but an appraiser can still choose to comply.

FAQ 121, page 193

**Comply (assignments must comply)**

USPAP does not establish which assignments must comply.

**PREAMBLE, page 1, line 35**

Which type of assignments must comply include those required by law, regulation, or agreement.

FAQ 3, page 145

**Comply (even if there is no fee paid)**

USPAP applies regardless of whether there is or is not a fee arrangement.

FAQ 47, page 162

**Comply by requirement**

An appraiser must comply with USPAP when required by law, regulation, or agreement with the client.

**PREAMBLE, page 1, lines 35-39; ETHICS RULE, page 7, lines 173-174**

GO BACK

| | |
|---|---|
| Some professional membership organizations may require the appraiser member to comply with USPAP. | FAQ 3, page 145 |
| **The appraiser can comply by meeting certain obligations for appraisal practice:** An appraiser must meet specific obligations to have complied with USPAP. | **PREAMBLE, page 1, lines 39-57** |
| **an opinion of value:** An appraiser must meet specific obligations when providing an opinion of value to have complied with USPAP. | **PREAMBLE, page 2, lines 46-48** |
| **an opinion about the quality of another appraiser's work:** An appraiser must meet specific obligations when providing an appraisal review. | **PREAMBLE, page 2, lines 49-52** |
| **opinions that are only one component of a larger assignment:** The appraisal and appraisal review opinions must comply with the appropriate standards and RULES and the other types of opinions must comply with the ETHICS, COMPETENCY, and JURISDICTION RULES. | **PREAMBLE, page 2, lines 53-57** |
| **Comply (which services must comply)**<br>All services performed as a part of appraisal practice must comply with USPAP. | FAQ 5, page 146 |
| **Comply with which edition**<br>Which edition is applicable is based on the date of the report, not the effective date of value. | FAQ 1, page 145; FAQ 156, page 206 |
| **Comply with USPAP and other valuation standards**<br>If an appraisal complies with USPAP it will not automatically comply with other valuation standards. | FAQ 7, page 147 |
| **Comply: how to demonstrate compliance**<br>A workfile preserves evidence of the appraiser's compliance. | **RECORD KEEPING RULE, page 12, line 342;** FAQ 79, page 177 |
| **Complying with USPAP vs. JURISDICTIONAL EXCEPTION**<br>If USPAP exceeds a law, then it is still possible to comply with USPAP. | **JURISDICTIONAL EXCEPTION RULE, page 17, lines 474-475;** FAQ 99, page 184 |
| An appraiser does not violate USPAP if something is required by USPAP but a law precludes adhering to that section of USPAP. | **JURISDICTIONAL EXCEPTION RULE, page 17, lines 484-487;** FAQ 115, page 191; |

## Public Trust

| | |
|---|---|
| **What is public trust**<br>It is not defined, but there is context for the term. | FAQ 9, page 148 |
| **Who is "the public"?**<br>The public includes the appraiser's client, intended users, other parties who rely on the work of the appraiser and the general public. | FAQ 9, page 148 |
| **Promote and maintain public trust**<br>The purpose of USPAP is to promote and maintain public trust through having requirements of appraisers. | **PREAMBLE, page 1, lines 1-2;** FAQ 9, page 148 |
| **Promote and preserve public trust**<br>An appraiser must promote and preserve the public trust. | **ETHICS RULE, page 7, lines 171-172;** FAQ 71, page 173 |

**An appraiser's responsibility to public trust**

| | |
|---|---|
| The appraiser has a responsibility to protect the public trust. | **PREAMBLE, page 1, lines 6-8** |
| When buying a firm, protect the public trust. | **PREAMBLE, page 1, lines 6-8;** FAQ 71, page 173 |

## USPAP, LAWS, AND REGULATIONS

### Laws and Regulations (as defined by USPAP)

| | |
|---|---|
| **What are laws?** They are constitutions, legislative and court-made law, and administrative rules and ordinances. | **JURISDICTIONAL EXCEPTION RULE, page 17, lines 488-490** |
| **What are regulations?** They are rules or orders having legal force, issued by an administrative agency. | **SCOPE OF WORK RULE, page 15, lines 443-444** |

### Jurisdictional Exceptions

| | |
|---|---|
| **What is it?** It is a law or regulation that takes away requirements of USPAP. | **JURISDICTIONAL EXCEPTION RULE, page 17, lines 474-475;** FAQ 115, page 191 |
| For example, a law that requires the fee of the appraisal to be based on the appraised value. | FAQ 116, page 191 |
| For example, the Yellow Book prohibits linking an estimate of market value to a specific exposure time. | FAQ 120, page 193 |
| It is only something that can apply to either a part of parts of USPAP, but it is not when an appraiser is exempt from complying with USPAP. | FAQ 328, page 276 |
| **What is it not?** It is not a choice: it either applies or it does not. | FAQ 114, page 190 |
| They are not instructions from a client or an attorney. | **JURISDICTIONAL EXCEPTION RULE, page 17, lines 489-490** |
| If a law has a requirement that is less stringent than USPAP, then USPAP could still be complied with. | **JURISDICTIONAL EXCEPTION RULE, page 17, lines 474-475;** FAQ 99, page 184; |
| Disclosing a client's name to a legal authority is not a jurisdictional exception. | FAQ 53, page 165 |
| It's not, for example, a requirement to use a certain valuation technique. | **COMPETENCY RULE, page 13, lines 374-375;** FAQ 118, page 192 |
| For example, regulation 49 CFR Part 24 is not a jurisdictional exception. | FAQ 121, page 193; FAQ 119, page 192 |
| For example, when a client requires the use of a hypothetical condition. | FAQ 122, page 194 |
| For example, a client requiring me to give a copy of the report to someone else. | **ETHICS RULE, Confidentiality, page 11, lines 315 and 317;** FAQ 123, page 194 |
| For example, 49 CFR Part 24 requires an appraiser to disregard certain issues related to market conditions, but it is not a jurisdictional exception, and it does not conflict with USPAP. | FAQ 224, page 233 |
| When a law or regulation exceeds USPAP requirements. | FAQ 237, page 240 |

### When does it apply?

| | |
|---|---|
| The rule applies anytime there is a conflict between the law and USPAP. | FAQ 113, page 190 |
| It might apply if a policy of, for example, a government agency is law or regulation. | FAQ 114, page 190 |
| It applies regardless of intended use, definition of value, type of assignment, etc. | **JURISDICTIONAL EXCEPTION RULE, page 17, lines 484-487;** FAQ 117, page 191 |

### Who is responsible to determine if it should be used?

| | |
|---|---|
| The appraiser is responsible, and not the client, intended user or anyone else. | FAQ 113, page 190; FAQ 117, page 191 |
| The appraiser must be aware of any laws or regulations that apply. | **COMPETENCY RULE, page 13, lines 374-475** |

### What are the sources of a jurisdictional exception?

| | |
|---|---|
| They are not clients, or attorneys; they are the actual law or regulation themselves. | **JURISDICTIONAL EXCEPTION RULE, page 17, lines 474-475;** FAQ 117, page 191; |

### Requirement to identify the law or regulation

| | |
|---|---|
| The appraiser must not just comply with the law or regulation, the appraiser must identify that specific law or regulation. | FAQ 113, page 190 |
| The law or regulation must be stated and not an attorney's instruction. | FAQ 117, page 191 |

### Requirement to disclose the law

| | |
|---|---|
| Disclose in the report that part of USPAP that is voided by law. | FAQ 113, page 190 |

## Examples of Laws That Can Impact Appraisal Practice

### 16 CFR Part 313

| | |
|---|---|
| This is taken into consideration in the definition of confidential information. | **DEFINITION of confidential information, page 4, lines 97-100; ETHICS RULE,** <u>Confidentiality</u>**, page 11, lines 311-312;** FAQ 67, page 171 |

### 19 CFR Part 24

| | |
|---|---|
| This is an assignment condition, when applicable (and it does not create a jurisdictional exception). | FAQ 119, page 192 |

### 49 CFR Part 24

| | |
|---|---|
| The appraiser has the responsibility to determine and perform the scope of work in an appraisal assignment. | FAQ 194, page 220 |
| When it applies, it is an assignment condition. | FAQ 224, page 233 |

### Federal privacy laws

| | |
|---|---|
| These are addressed in the definition of confidential information. | **DEFINITION of confidential information, page 4, lines 98-101;** FAQ 67, page 171 |
| When selling an appraisal firm, be aware of the impact of privacy laws and regulations. | FAQ 70, page 172 |

### Yellow Book

| | |
|---|---|
| Prohibits the appraiser from linking an estimate of market value to a specific exposure time. | FAQ 120, page 193 |

### Title XI of FIRREA

| | |
|---|---|
| An appraiser may have responsibilities under Title XI. | FAQ 137, page 199; AO-25, pages 71-72 |

## Requirements Related to Laws

**Those to be aware of**

Laws related to confidentiality and privacy.

**ETHICS RULE, <u>Confidentiality</u>, page 11, lines 311-312;** FAQ 67, page 171

Laws related to fair housing and fair lending.

**ETHICS RULE, <u>Nondiscrimination</u>, pages 7 and 8**

## CONFIDENTIALITY

### Confidential Information

**What it is**

Acknowledging a prior service, in certain specific circumstances can be confidential information.

FAQ 57, page 166

16 CFR Part 313 is taken into consideration in the definition of confidential information.

**DEFINITION of confidential information, page 4, lines 97-100;** FAQ 67, page 171

**What it is not**

If a written appraisal report is redacted of just the assignment results and the confidential information, the resulting "sample report" is not confidential information.

FAQ 58, page 167

**When it can be disclosed**

When required by law.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 317;** FAQ 53, page 165

**To whom it can be disclosed (or discussed)**

To someone other than the client only when the client gives their authority to do so.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 315;** FAQ 54, page 165

Someone that the client authorizes: not someone the appraiser chooses.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 314;** FAQ 60, page 168

Only the client, not the intended user, unless the client authorizes as such.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 314;** FAQ 62, page 169

Only the client, not a review appraiser, unless the client authorizes as such.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 314;** FAQ 63, page 169

Those authorized by law.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 317;** FAQ 64, page 170

A sworn peace officer if they qualify as having the authority by law to do so.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 317;** FAQ 65, page 170

Peer review committees.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 317;** FAQ 66, page 171

To a copyright agency but only if the client authorizes such disclosure.

**ETHICS RULE, <u>Confidentiality</u>, page 11, line 317;** FAQ 69, page 172

**To whom it cannot be disclosed**

Data entry services (as one example) if the client did not give their permission.

FAQ 266, page 251

**To whom disclosure is not required**

Adverse property conditions do not have to be disclosed to city or county health departments.

FAQ 52, page 165

---

GO BACK

**What cannot be disclosed to others**

| | |
|---|---|
| Assignment results (which includes just stating the appraised value). | FAQ 55, page 166 |
| Assignment results, even if that person, who is not the client, has a copy of the appraisal report. | FAQ 57, page 166 |
| Assignment results, to an intended user (unless given authority to do so by the client). | FAQ 56, page 166 |
| Confidential information. | FAQ 56, page 166 |
| Confidential information in its own email communication. | FAQ 60, page 168 |
| All details (including the fact that an appraisal was performed) if the client and the appraiser have made this contractual agreement. | FAQ 55, page 166 |

**What can be disclosed to others**

| | |
|---|---|
| An appraiser can acknowledge to others that an appraisal has been performed. | FAQ 55, page 166 |

**When confidentiality requirements end**

| | |
|---|---|
| If a client goes out of business, the requirements of confidentiality still exist. | FAQ 68, page 171 |
| USPAP does not have a termination date for confidentiality requirements. | FAQ 68, page 171 |

**Example of complying with confidentiality requirements**

| | |
|---|---|
| When selling a firm, an appraiser must comply with confidentiality requirements. | **ETHICS RULE, <u>Confidentiality</u>, page 11, lines 307-312;** FAQ 70, page 172 |

**How to safeguard it**

| | |
|---|---|
| By taking reasonable steps (which consists of using sound judgment, taking reasonable steps, and having practical solutions). | FAQ 78, page 176 |
| When disposing of workfiles, take care to not communicate confidential information or assignment results. | **ETHICS RULE, <u>Confidentiality</u>, page 11, lines 320-321**; FAQ 80, page 177 |

## FEES

### The Appraiser Giving a Thing of Value (or Paying a Fee) to Others

**Paying a fee to procure an assignment**

| | |
|---|---|
| This is allowed; however, the appraiser must disclose this fact in the certification. | **ETHICS RULE, <u>Management</u>, page 10, lines 284-289** |

**Paying a fee to be on "approved appraisers list"**

| | |
|---|---|
| This is allowed; however, the appraiser must disclose this fact in the certification. | **ETHICS RULE, <u>Management</u>, page 10, lines 320-321;** FAQ 35, page 158 |

**Giving clients prizes or entries into prize drawings**

| | |
|---|---|
| This is allowed. However, this is considered a thing of value, thus the appraiser must disclose this fact in the certification. | **ETHICS RULE, <u>Management</u>, page 10, lines 320-321**; FAQ 36, page 158 |

**Appraiser not charging a fee**

| | |
|---|---|
| The applicability of USPAP is not affected by the amount of the fee, or lack of a fee. | FAQ 47, page 162 |

**Appraiser not charging a fee for a "comp check" assignment**
An appraiser can perform a comp check assignment for free.

**ETHICS RULE, Conduct, page 9, lines 271-275;** FAQ 48, page 162

**A "comp check" is not a "thing of value"**
A comp check assignment, as it relates to a second assignment which occurs after that, is not considered a "thing of value," rather, it is a prior service.

**ETHICS RULE, Conduct, page 9, lines 271-275;** FAQ 48, page 162

## Fees Based on Other Events

**Offering discount coupons on appraisal fees**
This is allowed; however, a coupon offering a reduced fee is a "thing of value," therefore, the appraiser must disclose this fact in the certification.

**ETHICS RULE, Management, page 10, lines 284-289;** FAQ 34, page 158

**Reducing the appraisal fee when a "deal falls through"**
This is not allowed. Fees cannot be based on the attainment of a stipulated result.

**ETHICS RULE, Management, page 10, lines 295-297; Certification statements in Standards Rule 2-3(a), 4-3(a), 6-3(a), 8-3(a) or 10-3(a) requirements to state compensation is not based on a subsequent event;** FAQ 37, page 159

**Basing the appraisal fee on a percentage of a value conclusion**
This is not allowed

**ETHICS RULE, Management, page 10, lines 294; Certification statements in Standards Rule 2-3(a), 4-3(a), 6-3(a), 8-3(a) or 10-3(a) requirements to state compensation is not based on a subsequent event;** FAQ 38, page 159

**Basing the appraisal fee on the appraised value**
This is not allowed.

**ETHICS RULE, Management, page 10, line 295;** FAQ 39, page 159

**Basing the appraisal fee on a specific outcome**
This is not allowed. The fee cannot be based on a stipulated result.

**ETHICS RULE, Management, page 10, line 295;** FAQ 40, page 160

**Basing the appraisal fee on a pending sale price**
This is not prohibited, because the "pending sale price" is considered a factor outside of the appraiser's control.

FAQ 43, page 161

**Basing the appraisal fee on volume of business a client orders**
This is not prohibited, as it is a client-specific arrangement, so long as the appraiser complies with the Management section of the ETHICS RULE.

**ETHICS RULE, Management, page 10, lines 285-297;** FAQ 44, page 161

**Basing the appraisal fee on value, as required by law**
If a law requires the fee of the appraisal to be based on the value conclusion, then this is a jurisdictional exception.

FAQ 116, page 191

**A client requesting a reciprocal business arrangement**
The intent of the request will determine if it is allowed under USPAP or not.

**ETHICS RULE, Management, page 10, lines 284-297;** FAQ 47, page 162

GO BACK

## Disclosure of Fees (Requirements)

### Payment made in the procurement of an assignment
If a payment was made in the procurement of an assignment, this must be disclosed in the certification.

**ETHICS RULE, <u>Management</u>, page 10, lines 284-289;** FAQ 45, page 161

### Paying a fee to be on "approved appraisers list"
The appraiser must disclose this fact in the certification.

**ETHICS RULE, <u>Management</u>, page 10, lines 284-289;** FAQ 35, page 158

### Giving clients prizes or entries into prize drawings
Because this is considered a thing of value, thus the appraiser must disclose this fact in the certification.

**ETHICS RULE, <u>Management</u>, page 10, lines 284-289;** FAQ 36, page 158

## Disclosure of Fees (Not required)

### Amount of a fee paid
If an appraiser paid a fee to procure an assignment, it is not a requirement that the amount of the fee be disclosed.

FAQ 45, page 161

## Paying the Appraisal Fee

### Who can pay the fee?
Anyone, including someone who is not a client or intended user.

FAQ 125, page 195

# COMPETENCY

## Being Competent

### When to have it
It is not based on the effective date of the appraisal, rather, it is based on when the appraiser is developing the appraisal.

FAQ 152, page 205

### Know how to determine the scope of work
Be competent to determine and perform the scope of work necessary. Therefore, if a client is trying to limit the time to complete the appraisal and more time is needed, you may need to turn down the assignment.

**SCOPE OF WORK RULE, page 11, line 409;** FAQ 108, page 187

### Be aware of (and correctly employ) methods and techniques
To complete an assignment, be aware of the correct method and technique to use for that assignment.

**Standards Rules 1-1(a), 3-1(a), 5-1(a), 7-1(a), 9-1(a)**; FAQ 118, page 192

### Taking continuing education classes
USPAP does not directly require continuing education, but continually improving skills is a must.

**Standards Rules 1-1(a), 3-1(a), 5-1(a), 7-1(a)**; FAQ 109, page 188

## Lack of Competency

### How to acquire competency
First disclose the lack of knowledge/experience to the client before agreeing to perform the assignment (or during assignment when it is discovered), then take the necessary steps to correct.

**COMPETENCY RULE, page 13, lines 384-390**; FAQ 107, page 187

GO BACK

| **Geographic Competency** | |
|---|---|
| **Have competency to determine the scope of work** An appraiser can realize they do not have geographic competency and need time to gain it. | FAQ 108, page 187 |

| **Disclosing Competency** | |
|---|---|
| **Is this required?** No. An appraiser does not have to disclose if they are competent in a report, only if they were not competent and what they did to remedy that. | **COMPETENCY RULE, page 13, lines 384-390;** FAQ 110, page 188 |

## PRESENT OR PROSPECTIVE INTEREST AND PRIOR SERVICE

| **Present (Current) or Prospective Interest** | |
|---|---|
| **May or may not be a conflict of interest** USPAP does not have a prohibition on agreeing to perform an assignment in any specific situation. | FAQ 14, page 150 |
| **Having one may create a bias in the appraiser** Having a present or prospective interest in the property could create a bias in the appraiser, and if it does, the appraiser must not agree to perform the assignment. | FAQ 14, page 150 |

| **Prior Service** | |
|---|---|
| **What is a prior "service"?** It is not just appraising. | FAQ 21, page 153 |
| Using a property as a comparable sale that later becomes a subject property, is not a prior service. | FAQ 26, page 153 |
| An appraisal review is a "prior service" of the subject property of a current appraisal assignment. | **Standards Rule 3-2(c) and (d), page 26, lines 742-8628;** FAQ 31, page 156 |
| A prior service can have occurred on the whole property, or just a fractional interest in a property. | FAQ 33, page 157 |
| A "comp check" can be a prior service. | **ETHICS RULE, <u>Conduct</u>, page 9, lines 271-275;** FAQ 48, page 162 |
| **Can a company "perform prior services"?** Only an appraiser is required to disclose having performed prior services. | FAQ 22, page 153 |
| **Have never performed a prior service** If an appraiser has never performed a prior service, they are required to disclose even that fact. | **Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3 certification statements about prior services;** FAQ 17, page 151 |
| **Sample disclosures of no prior services** Sample disclosures are presented in guidance. | FAQ 17, page 151 |
| **Can appraise the property again** If an appraiser has appraised a property more than once in the prior three years, USPAP does not prohibit the appraiser from appraising the property again. | FAQ 16, page 151 |

**GO BACK**

**Cannot appraise the property again**
If an appraiser contractually agrees with a client not to appraise the property for another client, that is a business decision of the appraiser.

FAQ 16, page 151

**Disclose any prior service from last three years**
The "three years" is not based on the effective date of the appraisal but is based on the three years immediately preceding the appraiser agreeing to perform the assignment.

**ETHICS RULE, Conduct, page 9, lines 274-275;** FAQ 19, page 152

**Disclose a prior service, but when it does not need to be reported**
When a current assignment is not an appraisal or appraisal review assignment, the appraiser only needs to make an initial disclosure to the client.

**ETHICS RULE, Conduct, page 10, lines 281-282;** FAQ 252, page 247

## Disclosing Present (Current) or Prospective Interest

**When they must be disclosed**
Prior to agreeing to perform the assignment (or when discovered during the assignment) and in the certification.

**ETHICS RULE, Conduct, page 9, line 273; Standards Rules 2-3, 4-3, 6-3, 8-3, 10-3 certification statement about present to prospective interests;** FAQ 23, page 154

## Disclosing Prior Services

**What is "disclose"?**
It is both informing the client (verbally or in writing) at any time between prior to agreeing to perform the assignment and as soon as it is discovered that a prior service has been performed and stating in the report if any prior service has or has not been performed on the subject in the certification.

**ETHICS RULE, Conduct, page 9, lines 271-272; Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3 certification statements about prior services;** FAQ 16, page 151

**There is a requirement to disclose a prior service**
Disclosing a prior service is required by the ETHICS RULE.

**ETHICS RULE, Conduct, page 9, lines 271-275;** FAQ 15, page 150

Since a prior service can have occurred on the whole property, or on any fractional interest in a property, an appraiser will need to disclose the prior service.

**ETHICS RULE, Conduct, page 9, lines 271-275; Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3 certification statements about prior services;** FAQ 32, page 157

It is not a violation of USPAP to disclose a prior service, rather, it is required.

**ETHICS RULE, Conduct, page 9, lines 271-275;** FAQ 57, page 166

**Who you would disclose the prior service to**
Even if an appraiser only works for one client, and the client is likely aware of a prior service, the appraiser is still required to disclose the prior service.

FAQ 20, page 153

**The disclosure of prior services applies to the appraiser**
It applies to the appraiser, not to the property.

FAQ 31, page 156

It applies to the appraiser, not the appraiser's company.

FAQ 282, page 258

**How to make the oral disclosure**
There is no prescribed format. It may be appropriate to make the disclosure orally, or in writing. However, when it is made, the disclosure must be documented in the workfile.

**RECORD KEEPING RULE, page 12, lines 341-343;** FAQ 27, page 154

**When not to disclose a prior service**
When the client has made it clear that the mere occurrence of an appraisal is confidential information.

**ETHICS RULE, <u>Conduct</u>, page 10, lines 276-280;** FAQ 15, page 150; FAQ 57, page 166

**When the standardized form does not include the required disclosure**
If a form that an appraiser is required to use in the reporting of the appraisal does not have the correct certification statements, it is still the responsibility of the appraiser to comply with USPAP.

**Standards Rule 2-3(a), page 25, lines 764-766**; FAQ 24, page 154

The disclosure of a prior service needs to be included when updating an appraisal using a 1004D form.

FAQ 276, page 256

**Disclose prior services for each new assignment**
The need to disclose a prior service is not just when an appraiser agrees to perform an appraisal, but when an appraiser agrees to perform an assignment.

FAQ 25, page 154

**Have performed multiple prior services**
Ways to disclose when the appraiser has appraised the property multiple times in the last three years.

FAQ 18, page 152

If two assignments on the property are ordered at the same time, one is a prior service.

FAQ 33, page 157

## PRIOR TO AGREEING TO PERFORM AN ASSIGNMENT

### Predetermined Result

**Agreeing to appraise the home for "at least $X"**
This is a predetermined result, and it is not allowed.

**ETHICS RULE, <u>Management</u>, page 10, lines 290-292;** FAQ 10, page 149

**Coercion and a predetermined result**
An appraiser does not have to certify they have not been coerced to provide a predetermined result.

FAQ 11, page 149

**Aiming the value conclusion at the under-contract price**
An appraiser cannot select data with the goal of supporting a contract price.

**ETHICS RULE, <u>Conduct</u>, page 9, lines 250-263; ETHICS RULE, <u>Management</u>, page 10, lines 292-295**; FAQ 28, page 155

**A "comp check" cannot serve as a predetermined value**
An engagement in a second assignment which occurs after a comp check assignment cannot occur if the engagement is contingent upon developing predetermined results.

**ETHICS RULE, <u>Conduct</u>, page 9, lines 271-275**; FAQ 48, page 137

### Unacceptable Assignment Conditions

**Agreeing to appraise the home for "at least $X"**
This is a predetermined result, and it is not allowed.

**ETHICS RULE, <u>Management</u>, page 10, lines 290-292;** FAQ 10, page 149

**Nondisclosure of facts**
Not disclosing pertinent facts would be misleading.

**ETHICS RULE, <u>Conduct</u>, page 9, lines 260-263;** FAQ 30, page 156

**GO BACK**

# TOPICS TO CONSIDER WHEN AGREEING TO PERFORM AN ASSIGNMENT

## ASSIGNMENTS

| Examples of Assignments | Reference* |
|---|---|
| **Non-appraisal or appraisal review assignments** <br> An assignment can be something other than an appraisal or appraisal review assignment. For example: providing sales data, collecting market data, analyzing reproduction costs, teaching appraisal classes. | FAQ 159, page 208 |
| **Appraisal or appraisal review assignments** <br> An assignment can include either an appraisal assignment or an appraisal review assignment. | FAQ 159, page 208 |

| Physical Segment, Partial Holding, or Fractional Interest | |
|---|---|
| **Appraising land and only one of the numerous buildings on the lot is allowed** <br> When doing so, do not be misleading about what exists on the property, versus what is being appraised. | FAQ 30, page 156 |
| **Allowed to appraise only the improvements?** <br> Yes, as the subject of an assignment may be a physical segment. | FAQ 188, page 218 |
| The subject of a real property appraisal does not have to include all of the physical parts identified as the real estate. | FAQ 188, page 218 |
| The subject of an appraisal can be any or all parts of an improved, or an unimproved parcel, which can be land, improvements on the land, or any other configuration. | FAQ 188, page 218 |
| Be sure to disclose the existence of any parts not being appraised, but that are part of the real property. | FAQ 188, page 218 |
| **Allowed to appraise only the land of an improved property?** <br> Yes, as the subject of an assignment may be a physical segment. | FAQ 189, page 218 |
| **Examples of a "physical segment"** <br> Any or all parts of an improved or unimproved parcel or tract of identified real estate. Including part of the land, the improvements on the land, a partial interest in the land, part of the land, the fee simple interest, a fully leased, or encumbered property, etc. | FAQ 188, page 218; FAQ 189, page 218 |
| Appraising only a 5-acre parcel of, for example, a 60-acre lot is allowed; however, the assignment may come with additional assignment conditions that the appraiser needs to be aware of. | **Standards Rule 1-2(e)(v), page 19, line 542**; FAQ 190, page 219 |

| "Comp Check" | |
|---|---|
| **A comp check is allowed under USPAP** <br> An appraiser can perform a comp check; however, be sure to clarify exactly what is being asked (i.e., is the appraiser "picking the comps" or just "providing data"). | FAQ 214, page 229 |

*Items in bold in Reference column refer to 2024 USPAP publication. Other items refer to this publication, USPAP GRM.

**GO BACK**

**A "comp check" is not a "thing of value"**
A second assignment which occurs after a "comp check" assignment, is not considered a "thing of value," rather, it is a prior service.

**ETHICS RULE, Conduct, page 9, lines 271-275**; FAQ 48, page 162

**A client wants me to provide them with comps from a neighborhood**
To do this and comply with USPAP, it depends on what, exactly the client is asking. If the appraiser is omitting and selecting comparables (they are using judgment), which, in effect, is supplying a range of value, which is an appraisal.

FAQ 212, page 228

If the client only means "send me all the sales in the last year in the whole subdivision," then the appraiser is just supplying data and not applying any judgment to the sales. This is not an appraisal.

FAQ 212, page 228

## ASSIGNMENT ELEMENTS

### When They Apply

**Appraisal assignments**
They are listed, by way of example, in the Scope of Work Rule.

**SCOPE OF WORK RULE, page 15, lines 429-434**; FAQ 164, page 209

**Appraisal review assignments**
They are not listed in the Scope of Work Rule, but they are those items that are needed to properly identity the appraisal review problem to be solved.

**SCOPE OF WORK RULE, page 15, lines 424-425**

### What They Are

**Appraisal assignments**
They are listed, by way of example, in the Scope of Work Rule.

**SCOPE OF WORK RULE, page 15, lines 429-434;** FAQ 164, page 209

**Appraisal review assignments**
They are not listed in the Scope of Work Rule, but there are those items that are needed to properly identity the appraisal review problem to be solved.

**SCOPE OF WORK RULE, page 15, lines 424-425**

## APPRAISAL

### Definition

**What is it?**
It is an opinion of value (which is distinct from an estimate or a calculation).

FAQ 192, page 220

It is a range of value, including one that is provided by picking the comparables for a subject property.

FAQ 212, page 228

If asked to answer the question "Will this diminish the property value?," that is an appraisal.

FAQ 218, page 231

If asked to answer the question "Will the market value of the surrounding properties be less than their current value if "X" happens?," then this is an appraisal.

FAQ 218, page 231

**What is it not?**
An Automated Valuation Model (AVM) is not an appraisal. An AVM is an estimate or a calculation: not an opinion of value arrived at by applying judgment and experience.

FAQ 192, page 220

GO BACK

USPAP Guidance: Reference Index
© The Appraisal Foundation

## The Subject of a Real Property Appraisal

**What is "the subject" of an appraisal?**

It is a specific ownership right (or rights) that are identified in real estate. — AO-23, page 65, lines 39-40

If the subject is the "fee simple" interest, there is no USPAP requirement to also appraise a leased fee interest. — FAQ 229, page 236

## "Subject Property"

**What is it not?**

It is not, for example, surveys or studies related to a class of property. — AO-23, page 65, lines 41-46

It is not a type of property, because it does not signify specific ownership rights in identifiable real estate. — AO-23, page 65, lines 43-44

**There must be at least one**

For there to be an appraisal assignment, there must be a subject property. — AO-23, page 65, lines 45-46

**There may be more than one**

Appraising multiple properties is allowed; however, that does not make it a "mass appraisal." Mass appraisal is an appraisal method. — FAQ 195, page 221

## Physical Segment

**What is it?**

It can take many forms, including land, land and improvements, improvements without the land, or an infinite variety that involve one or more of the physical aspects of real estate. — AO-23, page 64, lines 41-46

## The Client

**Who can be "the client"?**

Someone who engaged the appraiser. — **DEFINITION of client, page 4, lines 95-96;** FAQ 125, page 195

It's not necessarily the party that "orders" the appraisal. — FAQ 127, page 196

Can be more than one person. — **DEFINITION of client, page 4, lines 95-96**

Someone who engages the appraiser for a specific assignment. — **DEFINITION of client, page 4, lines 95-96**

**Can the borrower be the client?**

If the intended use is for a loan that is related to federally regulated financial institution, the appraiser, per Title XI of FIRREA, is responsible for telling the borrower the lender will need to engage the appraiser directly. — FAQ 137, page 199

**The client vs. the intended user**

An intended user does not have an appraiser-client relationship. — **DEFINITION of intended user, page 5, lines 127-128**; FAQ 125, page 195

**Who can "act" as the client?**

The client can hire an agent to act on their behalf. — **DEFINITION of client, page 4, lines 95-96;** FAQ 126, page 195

For example, an appraisal management company can be an agent acting on the client's behalf. — **DEFINITION of client, page 4, lines 95-96;** FAQ 126, page 195

**GO BACK**



| | |
|---|---|
| Someone can act on a client's behalf, but the appraiser must be able to identify the client. | **Standards Rule 1-2(a), 3-2(a), 5-2(a), 7-2(a), 9-2(a);** FAQ 128, page 196 |
| **Can an AMC be the client?** | |
| If the client hired an agent to act on their behalf, such as an AMC, that does not make the AMC the client. | **DEFINITION of client, page 4, lines 95-96;** FAQ 126, page 195 |
| Anyone can be a client, including an AMC. If the AMC is not acting as an agent, but is the one who engages the appraiser on their own behalf, then they are the client. | FAQ 127, page 196 |
| **Identity of the client** | |
| The appraiser must know the identity of the client, even if an agent is acting on their behalf. | FAQ 128, page 196 |

### Appraiser-Client Relationship

| | |
|---|---|
| **When it ends** | |
| Never. USPAP does not provide a provision for the termination of the relationship. | FAQ 68, page 171 |
| If a client goes out of business, the requirements of confidentiality still exist. | FAQ 68, page 171 |
| **Who has it?** | |
| For appraisals already completed: an appraiser selling an appraisal firm has the relationship, not the appraiser buying the firm. | FAQ 70, page 172; FAQ 71, page 173 |
| **When it can be replaced with another party** | |
| Never. Changing the client's name on a report is misleading. | FAQ 130, page 197 |

### Client's Impact on Value Opinion

| | |
|---|---|
| **No impact** | |
| All else being the same in an appraisal or appraisal review assignment, the type of client would have no impact on the appraiser's value opinion. | **ETHICS RULE, Management, page 10, line 293; ETHICS RULE, Conduct, page 9, lines 250-251;** FAQ 164, page 209 |

## INTENDED USER

### Who the User Is

| | |
|---|---|
| **Who can be the "intended user"?** | |
| The client is always an intended user. | **DEFINITION of intended user, page 5, lines 127-128;** FAQ 125, page 195 |
| **Who it might not be** | |
| In a lending assignment, a borrower is not typically an intended user. | **Standards Rule 2-2(a)(ii);** FAQ 135, page 198 |
| **Identifying the intended user** | |
| The appraiser is responsible for identifying the intended user. | FAQ 132, page 197 |
| The appraiser must identify the intended user. | **SCOPE OF WORK RULE, page 15, lines 424-425, 429;** FAQ 134, page 198 |

**GO BACK**



| | |
|---|---|
| No one is "automatically" an intended user except the client. | **DEFINITION of intended user, page 5, lines 127-128**; FAQ 132, page 197 |
| The intended user is not established by who may or may not receive a copy or use a copy of a report. | FAQ 132, page 197 |
| Even if a law or regulation requires a party to receive a copy of the report, this does not make them an intended user. | **Standards Rule 2-2(ii), page 22, lines 660-662; Standards Rule 8-2(a)(i), page 49, lines 1538-1540; Standards Rule 10-2(a)(ii), page 58, lines 1832-1833;** FAQ 132, page 197 |

### Stating the identity of the intended user

| | |
|---|---|
| The identity of the intended user must be stated in the report, even if the client is the only intended user. | FAQ 133, page 198 |
| In an Appraisal Report, the intended user must be identified by name or type. | **Standards Rule 2-2(a)(ii);** FAQ 133, page 198 |
| In a Restricted Appraisal Report, the intended user must be identified by name. | **Standards Rule 2-2(b)(ii)** |
| Intended users can be identified by type, but only for an Appraisal Report. | **Standards Rule 2-2(a);** FAQ 136, page 199 |

### When to not state the identity of an intended user

| | |
|---|---|
| When the client is the only intended user and has requested anonymity. | **ETHICS RULE, <u>Confidentiality</u>, page 11, lines 313-319**; FAQ 133, page 198 |

### "Adding" an intended user

| | |
|---|---|
| An intended user must be known at the time of the assignment, and not later. | **DEFINITION of intended user, page 5, lines 127-128;** FAQ 129, page 196 |
| After the report is delivered to the client, an intended user cannot be added to the report. | FAQ 129, page 196 |

### Multiple intended users

| | |
|---|---|
| Are allowed. | FAQ 136, page 199; FAQ 182, page 216 |

### Knowing but not stating the identity of an intended user in a report

| | |
|---|---|
| Is not allowed for a Restricted Appraisal Report. | FAQ 136, page 199 |
| Is allowed for an Appraisal Report, so long as the intended user is identified by type. | FAQ 136, page 199 |

### A subsequent user vs. an intended user

| | |
|---|---|
| A subsequent user is not defined in USPAP and is not an intended user. | FAQ 129, page 196 |

## INTENDED USE

### Who Determines?

#### The client

| | |
|---|---|
| The determination of the intended use is related to the client's use. | FAQ 132, page 197 |

#### Obligations of the appraiser

| | |
|---|---|
| If a borrower seeking to apply for a loan wants to use the appraisal in conjunction with a federally related transaction, the appraiser would need to inform the potential client (the future borrower) that they may not be able to use the appraisal for that purpose. | FAQ 137, page 199; AO-25, pages 71-72 |



## Identification

**Who identifies the intended use?**

The appraiser, in the problem identification, identifies the intended use.

**Standards Rule 1-2;** FAQ 134, page 198

## Intended Use and Scope of Work

**Why it matters**

During the assignment, it is what determines the appropriate scope of work.

FAQ 132, page 197

During the assignment, it is what helps determine the appropriate type of report.

FAQ 132, page 197

## Adding Intended Users

**Allowed**

Not after the assignment has been delivered to the client.

**DEFINITION of intended user, page 5, lines 127-128**

## Unintended Uses

**Parties who receive a copy of the report**

The appraiser cannot know what decisions another party is trying to make about value, so it would be impossible for an appraiser to develop and report an appraisal that can address the knowledge needs of some unknown person.

FAQ 132, page 197

# DEFINITION OF VALUE

## "Market Value"

**The definition in USPAP**

USPAP does not provide a specific definition of "value."

FAQ 171, page 212

The definition in USPAP contains the elements of a definition of "market value." If, in other words, the USPAP "definition" of market value is not one that could be cited to meet the requirement to identify and state the definition of value.

**DEFINITION of market value, page 5, lines 131-135**

The USPAP definition of market value contains a list of the specific characteristics and conditions needed to be identified to qualify as a type of value that is considered a "market value" definition.

FAQ 171, page 212

## Source

**What sources are acceptable?**

USPAP does not endorse any particular source, but sources would include a regulatory agency, a legal jurisdiction, an engagement letter, or a textbook.

FAQ 171, page 212

An engagement letter is an acceptable source for the type and definition of value.

FAQ 173, page 213

## Type

**What is a "type" of value?**

It is a general class or category of value, such as market value, fair value, etc.

FAQ 171, page 212

For example, "value in use" is a type of value and the appraiser may use this as a type of value for the assignment.

FAQ 183, page 216

**GO BACK**

# TOPICS RELATED TO AN ASSIGNMENT

## ASSIGNMENT CONDITIONS

| General Examples of Assignment Conditions | Reference* |
|---|---|
| **Laws and regulations**<br>Those related to confidentiality and privacy laws. | **ETHICS RULE, Confidentiality, page 11, lines 311-312**; FAQ 67, page 171 |
| **Those conditions that are required by some users of appraisal services**<br>Such as those assignment conditions required by federally regulated financial institutions. | FAQ 127, page 196 |
| **Those conditions required by Fannie Mae**<br>This includes assignment conditions about the treatment of seller concessions in an appraisal. | FAQ 174, page 213 |
| Fannie Mae, or others, may place limits on the size of adjustments. | FAQ 204, page 225 |
| **Measuring a home using ANSI standards**<br>This is not required by USPAP, but it may be an assignment condition. | FAQ 176, page 214 |
| **Minimum number of comparable sales**<br>A client may require a minimum number of comparable sales; however, USPAP does not have such a requirement. | FAQ 236, page 239 |
| **Analyses of the listing history of the subject property**<br>A client may require the appraiser to analyze and report on any listing history. | FAQ 242, page 242 |

| What They Are | |
|---|---|
| **Definition**<br>They would affect the scope of work. | **DEFINITION OF assignment conditions, page 3, lines 83-84;** FAQ 142, page 201 |
| **Examples include:** | |
| "The appraiser must develop two approaches to value." | FAQ 142, page 201 |
| "Appraise the property using plans and specifications." | FAQ 142, page 201 |
| "The report must include as-is market value." | FAQ 142, page 201 |

| What They Are Not | |
|---|---|
| **Client conditions.**<br>Client conditions do not affect the scope of work but are part of an appraiser's assignment. | FAQ 142, page 201 |
| **Examples of client conditions include:** | |
| "The report must include photographs of the street." | FAQ 142, page 201 |
| "The report must be emailed." | FAQ 142, page 201 |

*Items in bold in Reference column refer to 2024 USPAP publication. Other items refer to this publication, USPAP GRM.

**Turn times or due dates**
Are not assignment conditions, they are contractual obligations.

## Hypothetical Condition

### Definition

Something that is contrary to what is known.

**DEFINITION of hypothetical condition, page 4, lines 116-121;** FAQ 122, page 194

### Examples

Appraising a property with a different zoning, etc.

FAQ 222, page 233

Appraising a property as it if had a covenant in place, when in fact it does not.

FAQ 228, page 236

### When one can be used

Only if the use of one is for legal purposes, purposes of reasonable analysis or purposes of comparison, and if the use of one results in a credible analysis.

FAQ 223, page 233

### Is it the same as a jurisdictional exception?

No. Thus, the use of one is not an example of applying the JURISDICTIONAL EXCEPTION RULE.

FAQ 121, page 193

### As it relates to new construction

May be used if the opinion of value is a current effective date, and the appraisal is being done as if the construction were already complete.

**Standards Rule 1-2(g)**: FAQ 150, page 204

May not be used (instead, an extraordinary assumption should be used) if the opinion of value is based on a future date.

**Standards Rule 1-2(f):** FAQ 150, page 204

Not required if the assignment is to value the property as-is and not as-if-completed as of the current date.

FAQ 226, page 235

### As it relates to appraising only a physical segment

A hypothetical condition may or may not be necessary.

FAQ 188, page 218

Is likely not necessary when appraising only the underlying land of an improved property.

FAQ 189, page 218

### When appraising two lots as if they are one

If two lots exist as two legally separate lots, but the lender wants them appraised as one lot, this is a hypothetical condition

FAQ 217, page 230

### Reporting

The appraiser is to report any hypothetical conditions used and that their use may have affected assignment results.

**Standards Rules 2-1(c) and 2-2(a) (xiii);** FAQ 225, page 234

Be clear and conspicuous when reporting hypothetical conditions.

**Standards Rule 2(a)(xiii);** FAQ 225, page 234

Clearly and accurately disclose all hypothetical conditions.

FAQ 225, page 234

## Extraordinary Assumption

### Definition

Something that is uncertain.

**DEFINITION of extraordinary assumption, page 4, lines 110-114;** FAQ 221, page 232

GO BACK

USPAP Guidance: Reference Index
© The Appraisal Foundation

| | |
|---|---|
| If an appraiser cannot confirm facts (and it is appropriate to use the extraordinary assumptions). | FAQ 230, page 237 |
| **Examples of when to use** | |
| Appraising proposed improvements as of the date of completion, etc. | FAQ 221, page 232 |
| If an appraiser cannot confirm something that is uncertain, such as the existence of an easement that is not recorded. | FAQ 230, page 237 |
| **As it relates to proposed new construction** | |
| May be used if the opinion of value is a prospective date. | **Standards Rule 1-2(f);** FAQ 150, page 204 |
| Use an extraordinary assumption for proposed new construction if the assumption is the property will be complete in the future. | FAQ 231, page 237 |
| **As it relates to appraising only a physical segment** | |
| An extraordinary assumption may or may not be necessary. | FAQ 188, page 218 |
| Is likely not necessary when appraising only the underlying land of an improved property. | FAQ 189, page 218 |
| **Reporting** | |
| The appraiser is to report any extraordinary assumptions used and that their use may have affected assignment results. | **Standards Rules 2-1(c), 2-2(a)(xiii);** FAQ 225, page 234 |
| Be clear and conspicuous when reporting extraordinary assumptions. | **Standards Rule 2-2(a)(xiii);** FAQ 225, page 234 |
| Clearly and accurately disclose all extraordinary assumptions. | **Standards Rule 2-1(c);** FAQ 225, page 234 |
| **Labeling** | |
| USPAP does not require an extraordinary assumption to be labeled as such (or for the specific term "extraordinary assumption" to be used). | FAQ 226, page 235 |

## Unacceptable Assignment Conditions

| | |
|---|---|
| **Too short of a turnaround time** | |
| If the turnaround time is too short to complete the appropriate scope of work, this is an unacceptable assignment condition. | **SCOPE OF WORK RULE, page 16, lines 455-456;** FAQ 108, page 187 |
| **Client's request to disregard relevant comparables** | |
| Is not allowed. The appraiser must analyze comparable sales data. | **Standards Rule 1-4(a);** FAQ 141, page 201 |
| **The client making the scope of work decision** | |
| Is not allowed. The appraiser must make both the decision as to what the appropriate scope of work would be and the appraiser must also perform the scope of work. | FAQ 163, page 209 |

## Recognize Applicable Assignment Conditions

| | |
|---|---|
| **Failure to do so** | |
| Would be a violation of the ETHICS RULE or COMPETENCY RULE. | FAQ 190, page 219 |

GO BACK

## SCOPE OF WORK

### Defined

**What is it?**

It is the work the appraiser performs to develop assignment results.

FAQ 158, page 208

As defined, it is the type and extent of research and analysis in an appraisal or appraisal review assignment.

**DEFINITION of scope of work, page 6, line 161;** FAQ 158, page 208

**What is it not?**

It is not reporting.

**DEFINITION of scope of work, page 6, line 161**; FAQ 158, page 208

### Who Determines the Scope of Work?

**The appraiser**

Only the appraiser can determine the appropriate scope of work.

**DEFINITION of scope of work, page 6, line 161**; FAQ 160, page 208

### What Should the Scope of Work Include?

**Interior inspection**

An interior inspection should be made if the act of not conducting one would result in a substantial error of omission or commission that significantly affects an appraisal.

FAQ 184, page 216

If adequate information is not available about a property, the appraiser, who controls the scope of work, will either need to withdraw from the assignment, expand the scope of work to gather that information, or use an extraordinary assumption.

FAQ 184, page 216

### Who Performs the Scope of Work?

**The appraiser**

Only the appraiser can perform the scope of work.

FAQ 159, page 208

### Who Can Specify the Scope of Work?

**The client**

The client can specify the scope of work; however, the appraiser must approve it as one that will allow the appraiser to develop credible assignment results.

FAQ 161, page 208

### Judging the Acceptability of the Scope of Work

**Appraiser's peers**

An appraiser must know what his or her peers would do for a similar assignment.

**DEFINITION of appraiser's peers, page 3, line 81;** FAQ 170, page 212

The "appraiser's peers" are assignment specific.

**DEFINITION of appraiser's peers, page 3, line 81;** FAQ 170, page 212

Knowledge about what an appraiser's peers would do comes from being a participant in the profession.

FAQ 170, page 212

GO BACK

## Same Scope of Work, Different Client

**Does the client impact the value conclusion?**

If the scope of work and the assignment elements are identical, the client would not impact the appraiser's value conclusion.

FAQ 164, page 209

## Examples of Scope of Work

**Inspecting photos of a property (is that a personal inspection)?**

No. Thus, the appraiser cannot indicate, in the certification, that they personally inspected the property, if they only inspected photos of the property.

FAQ 185, page 217

**Using MLS photos in a report**

Depending on what scope of work is appropriate for the assignment, this either will or will not be ok.

FAQ 186, page 217

**For proposed construction**

An appraiser does not have to review, specifically, plans and specifications, they can view "other documentation sufficient to identify the extent and character of the proposed improvements."

**Standards Rule 1-2(e)(i)-(v);** FAQ 191, page 219

## Limiting the Scope of Work

**Limiting scope of work to a "new client name"**

Is not allowed. In this instance, the client would be the one who made the scope of work decision.

FAQ 163, page 209

## The SCOPE OF WORK RULE

**When does it apply?**

It only applies to appraisal or appraisal review assignments.

FAQ 159, page 208

Examples of assignments where it would not apply include teaching appraisal courses, providing sales data, collecting market data, analyzing reproduction costs, developing educational textbooks.

FAQ 159, page 208

◀ SECTIONS     ◀ DEFINITIONS     ◀ STANDARDS     ◀ ADVISORY OPINIONS     ◀ FAQs     ▶

# TOPICS THAT RELATE
# TO APPRAISAL DEVELOPMENT

## APPRAISAL DEVELOPMENT

| Assignment Results | Reference* |
|---|---|
| **What they are**<br>Examples include identifying "functional problems" or "the interior is dated." | FAQ 73, page 173 |
| **What they are not**<br>Examples of things that are not assignment results: property address, year of construction, number of bedrooms. | FAQ 73, page 173; FAQ 74, page 174; FAQ 75, page 174; FAQ 76, page 175; FAQ 77, page 175 |
| **Who they can be communicated to**<br>For one example: state regulatory agencies. | **ETHICS RULE, <u>Confidentiality</u>, page 11, line 316** |

| Analysis | |
|---|---|
| **What is it?**<br>"Analysis" is not defined in USPAP and thus, the common English language definition from any common dictionary applies. | FAQ 243, page 242 |
| Proper analysis, therefore, is a scope of work decision. | FAQ 243, page 242 |
| The acceptability of the analysis will then be judged in the same way that any other scope of work decision is judged. | **SCOPE OF WORK RULE, page 16, lines 445-463**; FAQ 243, page 242; AO-28, pages 78-81; AO-29, pages 82-84 |
| **When to perform an analysis**<br>If an analysis of some specific information is not necessary for credible assignment results, then the analysis is not required to be performed or reported. | **Standards Rule 7-5(a);** FAQ 249, page 244 |

| Analyze Prior Listings of the Subject Property | |
|---|---|
| **When is this required?**<br>USPAP does not require, specifically, that prior listings be analyzed. However, if the lack of analyzing the information results in committing a substantial error of omission or commission that significantly affects an appraisal, then those analyses should be completed. | **Standards Rule 1-1(b);** FAQ 242, page 242 |
| When it is an assignment condition. | FAQ 242, page 242 |

| Analyze Withdrawn or Expired Listings | |
|---|---|
| **Listings which have expired**<br>Are not required to be considered or analyzed, unless excluding that information would result in a substantial error of omission or commission. | **Standards Rule 1-1(b)**; FAQ 245, page 243 |

| Analyze Offers to Purchase | |
|---|---|
| **Offers made prior to the effective date of the appraisal**<br>Are not required to be considered or analyzed, unless excluding that information would result in a substantial error of omission or commission. | **Standards Rules 1-5(a)**, **1-5(b)**; FAQ 233, page 238 |

*Items in bold in Reference column refer to 2024 USPAP publication. Other items refer to this publication, USPAP GRM.

**GO BACK**

DEFINITIONS                    PRINCIPLES

**TOPICS THAT RELATE TO APPRAISAL DEVELOPMENT**

| Analyze Purchase Contract | |
|---|---|
| **How, if it is not provided?** | |
| If the contract is available to the appraiser, it must be analyzed. | **Standards Rule 1-5;** FAQ 201, page 224 |
| The appraiser has an obligation to make an effort to obtain a copy of the purchase contract. | **Standards Rule 1-5(a);** FAQ 201, page 224 |
| If a copy of the contract is withheld intentionally, the appraiser can still complete the assignment but must disclose what efforts were made to obtain the contract. | **Standards Rules 1-5, 2-2(a)(x)(3), 2-2(b)(xii)(3), 8-2(a)(x)(3), 8-2(b)(xii);** FAQ 234, page 239; AO-24 pages 68-70 |
| **How, if the purchase price is withheld from the appraiser?** | |
| The appraiser is not required to know the agreed upon sale price. The appraiser can still complete the assignment but must disclose the scope of work that was applicable for this assignment. | **Standards Rule 1-5(a);** FAQ 239, page 241; AO-24, pages 68-70 |
| **What does it mean to perform a "proper analysis"?** | |
| "Analysis" is not defined in USPAP and thus, the common English language definition from any common dictionary applies. | FAQ 243, page 242 |
| Proper analysis, therefore, is a scope of work decision. | FAQ 243, page 242 |
| The acceptability of the analysis will then be judged in the same way that any other scope of work decision is judged. | **SCOPE OF WORK RULE, page 16, lines 445-463;** FAQ 242, page 242; AO-28, pages 78-81; AO-29, pages 82-84 |
| **Relationship of sale price and appraised value** | |
| An appraiser is not engaged to support contract prices. The sales price and the appraised value may or may not relate to one another. | FAQ 244, page 242 |

| Analyze Prior Sales or Transfers | |
|---|---|
| **When this analysis is not specifically required** | |
| When the appraiser is not performing a real property appraisal. STANDARD 1 only applies to appraisal and appraisal review assignments. | FAQ 247, page 244 |
| If the analysis is not necessary for credible assignment results. | **Standards Rule 7-5(a);** FAQ 249, page 244; FAQ 238, page 240 |
| **What is being analyzed?** | |
| The prior sale of the subject property, including a sale of a portion of the subject property that sold. | **Standards Rule 9-4(b)(vi);** FAQ 250, page 245 |
| **What is considered a "sale"?** | |
| For example, a deed in lieu of foreclosure is a sale. | **Standards Rule 1-5(b);** FAQ 241, page 241 |
| **Multiple sales or transfers** | |
| The appraiser must analyze any and all types of sale in the past three years, not just the most recent one. | **Standards Rules 1-5, 2-2(a)(x)(3);** FAQ 232, page 238; AO-1 pages 5-8 |
| **What to disclose when there has only been one sale** | |
| An appraiser is not required to include a statement that "there have been no additional sales," though a client may make such a requirement as an assignment condition. | FAQ 248, page 244 |


GO BACK

| | |
|---|---|
| **What to disclose when there have been no sales in the last three years** | |
| There is no requirement stating "there have been no sales" in the three-year period. | FAQ 248, page 244 |
| The requirement is only to analyze any prior sales and to report on those prior sales. | **Standards Rules 1-5(b), 2-2(a)(x) (3);** FAQ 248, page 244 |
| **Of the subject property when the subject property is used as a comparable** | |
| If a prior sale of a subject property occurred within three years, that sale must be analyzed. | **Standards Rule 1-5(b);** FAQ 236, page 239 |
| **Of the comparable sales** | |
| USPAP does not have a specific requirement to analyze prior sales of comparable properties; however, there may be assignment conditions that require this. | FAQ 240, page 241 |
| **How far back in time to analyze prior sales (real property)** | |
| An assignment condition may include the need to analyze prior sales of the subject property more than three years prior to the effective date. Since this exceeds the minimum USPAP requirement for real property appraisals, this is allowed. | **COMPETENCY RULE, page 13, line 374;** FAQ 237, page 240 |
| **How far back in time to analyze prior sales (personal property)** | |
| USPAP does not prescribe a time period. The appraiser is only required to, if relevant, analyze all prior sales that occurred within a reasonable and applicable time period. | **Standard Rule 7-5(b)** |
| **Prior sales of a portion of the subject property** | |
| The appraiser is required to analyze all prior sales of a subject property, even if a prior sale was only a sale of a portion of the subject property. | **Standard Rule 1-5(b);** FAQ 238, page 240 |
| **Prior sales history for a retrospective appraisal** | |
| Analysis is required for listing that was "current as of the effective date" of the appraisal, not as of the date of the report. | **Standards Rules 1-5(a), 2-2(a)(x)(3)**; FAQ 246, page 243 |

## Analyze "Restrictions" or Encumbrances

| | |
|---|---|
| **What are these?** | |
| They are something that prohibits a property owner from exercising any of the traditional rights of ownership. | FAQ 215, page 230 |
| They may impact value. | FAQ 215, page 230 |
| **Examples** | |
| Constraints on the exhibition of a work of art, a prohibition or limit on the breeding of an animal, the limit on the sale of an item. | FAQ 215, page 230 |
| **How to handle** | |
| They may or may not impact value; however, the appraiser is required to analyze the effect on value, if any. | **Standards Rule 7-4(d);** FAQ 216, page 230 |

## Analyze Supply and Demand

| | |
|---|---|
| **Sudden market conditions changes** | |
| The appraiser is required to identify, analyze, and report economic property characteristics, regardless of if they are negative or positive. | **Standards Rule 1-2(e);** FAQ 214, page 229 |

GO BACK

## Comparable Sales

**Using the subject property as a comparable**

A prior sale of a subject property could be used as a comparable. — **Standards Rule 1-4(a)**; FAQ 236, page 239

**Using pending sales as comparables**

Pending sales are not required to be used as comparables. However, if the lack of not considering the pending sale would constitute an omission that would impact the appraisal, then the analysis of the pending sale would be required. — **Standards Rule 1-1(b);** FAQ 235, page 239

**Minimum number of comparable sales**

USPAP does not require a minimum number of comparable sales; however, assignment conditions may require a minimum number. — FAQ 236, page 239

## Data Necessary for Credible Assignment Results

**Who determines what data is necessary?**

The appraiser determines what data is necessary. — FAQ 141, page 201

Analyze data that has impacts on value. — FAQ 174, page 213

## Exposure Time

**What is it?**

It is the time period the property would have been offered for sale prior to the hypothetical consummation of a sale. — **DEFINITION of exposure time, page 4, lines 107-109**; FAQ 177, page 214

It relates to length of time it would have taken the subject property to sell (and not the neighborhood as a whole). — FAQ 178, page 215

It is dependent on the characteristics of the subject property and the market conditions as of the effective date. — FAQ 178, page 215

It is a function of price, time, and use, and not an isolated opinion of time alone. — AO-35, pages 101-103

**When it is a component of the definition of value**

It must be developed, unless precluded by law. — FAQ 119, page 192; FAQ 120, page 193

**When is it required?**

An opinion of reasonable exposure time is required whenever it is a component of the definition of value. — **Standards Rules 1-1(c)(iv), 7-2(c)(iv);** FAQ 177, page 214; FAQ 178, page 215

**Reported in conjunction with a range of values**

It is not required that the opinion of the exposure time be linked to a range of values, rather, it just needs to be linked to an opinion of value (which may be a specific value or a range of values). — FAQ 179, page 215

## Highest and Best Use

**Example**

Appraising two lots as if they existed as one legal lot, the appraiser may have to develop an opinion of highest and best use. — FAQ 217, page 230

## Marketing Time

**What is it?**

It is the time period the property will likely take to sell immediately following the effective date of value. | FAQ 177, page 214

It relates to the length of time the properties in the neighborhood would sell, not to the subject property. | FAQ 178, page 215

**When is it required?**

USPAP does not require it be developed, but a client might. | FAQ 177, page 214

## Tools, Methods, Techniques, and Approaches to Value

**Reconciliation of approaches to value**

Is required. | **Standards Rule 1-6;** FAQ 203, page 225

**Which ones are prescribed?**

The appraiser must be aware of, understand, and correctly employ the recognized methods and techniques that are necessary for credible assignment results. | **Standards Rule 1-1(a)**

**Does USPAP offer guidance on methods?**

No. USPAP focuses on standards, not methods. | FAQ 197, page 221

USPAP does not place limitations on the size of adjustments that may be made when using the sales comparison approach. | FAQ 204, page 225

USPAP only states the appraiser must be aware of, understand, and correctly employ the correct methods. | **COMPETENCY RULE, page 13, lines 370-380;** FAQ 197, page 221

USPAP requires an appraiser be competent. | FAQ 297, page 221

Discounted Cash Flow Analysis is discussed in AO-33. | FAQ 311, page 269

**Sales comparison approach**

USPAP does not have any limits on the size of adjustments for comparable sales, though some clients may address this issue. | FAQ 204, page 225

**Income approach**

An appraiser is required to analyze specific data related to an income approach if the client expects it or if an appraiser's peers would do as much. | **SCOPE OF WORK RULE, page 16, lines 448-450**

**Cost approach**

Only needs to be completed when it is necessary for credible assignment results. | **Standards Rule 1-4(b)**

The decision to use the cost approach is part of the scope of work decision. | FAQ 198, page 222

**Examples of tools**

An appraiser can use an Automated Valuation Model (AVM) as a tool. | FAQ 192, page 220

When an appraiser uses an AVM generated report as a tool, the appraisal report should be clear how the appraiser is using the tool (either as data that informs an appraisal assignment, or as output that the client wants the appraiser to run). | FAQ 193, page 220

**Examples of method**

Mass appraisal is a method. It is not a discipline. | **STANDARD 5;** FAQ 195, page 221

---

GO BACK

| Blockage discount is a method. | **STANDARD 5**; FAQ 196, page 221; FAQ 197, page 221 |

## Opinion of Value

### What is it?

| For example, an opinion of market rent is an opinion of value (as it is an expression of value for the right to use a property). | FAQ 172, page 213 |
| A range of values is an opinion of value. | **DEFINITION of appraisal, page 3, lines 62-66;** FAQ 181 |
| An opinion of value is an appraisal. | FAQ 181, page 216 |

### Intentionally inflating or deflating

| It is a violation of the ETHICS RULE to intentionally deflate an opinion of value. | **ETHICS RULE, <u>Conduct</u>, Page 9, lines 249-270**; FAQ 175, page 214 |

### Matching a contract price

| An appraiser's job is not to conclude an opinion of value that matches a contract price, rather it is to remain impartial, objective, and independent while forming an opinion of value. | **ETHICS RULE, <u>Conduct</u>, page 9, lines 250-251;** FAQ 244 |
| The appraiser is required to analyze any agreements of sale (that are available during the normal course of business), which is different than how an opinion of value is reached. The information informs the appraiser but does not drive the value conclusion. | **ETHICS RULE, <u>Conduct</u>, page 9, lines 250-251; Standards Rule 2-2(a)(x)(3)**; FAQ 244, page 242 |

## Physical Characteristics

### What they are

| They are attributes of a property that are observable as fact. | **DEFINITION of physical characteristics, page 5, lines 151-152** |
| Examples include a property address, year of construction, number of bedrooms. | FAQ 73, page 173; FAQ 74, page 174, FAQ 75, page 174; FAQ 76, page 175, FAQ 77, page 175 |

### What they are not

| Something that is the appraiser's opinion or conclusion such as identifying "functional problems" or a "dated décor." | FAQ 73, page 173 |

## Personal Inspection

### What is a personal inspection?

| It is not, for example, inspecting only photos of a property. | FAQ 185, page 217 |

### Can I use a drone to inspect a property?

| Yes, but it is not a personal inspection. | **DEFINITION of personal inspection, page 5, lines 139 to 141**; FAQ 220, page 231 |

## Reasonable Steps

### What they are

| Sound judgment, reasonable steps, and practical solutions in context of the issue. | FAQ 78, page 176 |

**Where they are referenced**

In relation to safeguarding access to confidential information.

**ETHICS RULE, Confidentiality, page 11, line 320-321**; FAQ 78, page 176

## Relevant Data

**Who determines what is relevant data?**

The appraiser determines what data is relevant.

FAQ 141, page 201

## Significant Appraisal Assistance

**What is it?**

The contribution is of substance to the development of assignment results and the contribution is related to the appraisal process or requires appraiser competency

FAQ 265, page 250

If the assistance includes deciding what, where, or how to research, then the appraiser has applied judgment, and applying judgment or performing analysis for an assignment would likely be considered significant appraisal assistance.

FAQ 267, page 251

If the service provided includes performing tasks that require appraisal competency, for example, rating a property's quality or condition, estimating remaining economic life, and selecting comparable data.

FAQ 266, page 251

For example, it has likely occurred when an appraiser has concluded value is impacted or influenced by the one who provided the significant appraisal assistance.

FAQ 275, page 256

**What is it not?**

For example, when an appraiser of a different discipline provides a result to another appraiser, and this receiving appraiser relies on the result, then uses an extraordinary assumption when referring to that first appraiser's conclusions.

FAQ 271, page 253

For example, when four personal property appraisers, with different specialties, work on one assignment.

**Standards Rule 8-3(b);** FAQ 278, page 257

**Trainee rights to workfile**

The trainee appraiser, who provided significant appraisal assistance must, like any appraiser, maintain access to workfiles.

FAQ 86, page 180

**How to give it recognition in an oral report**

To the extent that is possible, address the significant assistance in the oral report.

**Standards Rule 2-4;** FAQ 268, page 252

**GO BACK**

# TOPICS RELATED TO APPRAISAL REPORTING

## ASSIGNMENT RESULTS

| "Preliminary Results" | Reference* |
|---|---|
| **Are not defined**<br>USPAP does not define, for example, a "preliminary estimate of value," but it does define what an appraisal is. | FAQ 114, page 190 |
| **Without a Resulting Report** | |
| **The workfile**<br>A workfile still needs to exist, if assignment results were communicated but a report was not issued. | **RECORD KEEPING RULE, page 12, line 330**; FAQ 101, page 184 |
| **Sharing (or Reusing) Information** | |
| **Reusing information from a prior appraisal report**<br>An appraiser might be able to use information and analysis from a prior assignment for a new assignment; however, be aware of confidential information and the requirements around it. | **ETHICS RULE, <u>Confidentiality</u>, page 11, lines 313-319**; FAQ 209, page 227 |
| **Communicating Assignment Results** | |
| **Before completion of the assignment**<br>Is allowed. | FAQ 101, page 184; FAQ 285, page 260; FAQ 314, page 270 |
| **Before issuance of a report**<br>USPAP allows the appraiser to communicate results to a client prior to the issuance of a report. | FAQ 106, page 186; FAQ 317, page 271 |
| However, if a value opinion is communicated, then the appraiser must comply with the USPAP reporting requirements. | FAQ 310, page 268 |
| **Credible Assignment Results** | |
| **Data used to reach results**<br>The appraiser determines what data is relevant and necessary for credible assignment results. | FAQ 141, page 201 |
| **How to measure**<br>Credible assignment results are measured in the context of the intended use of the assignment. | FAQ 165, page 210 |
| They will depend on the assignment | FAQ 187, page 217 |
| **Relative, not absolute**<br>Credibility is relative, not absolute, because it is measured in the context of the intended use of the assignment. | FAQ 165, page 210 |
| **Require support**<br>Credible assignment results require support, by relevant evidence and logic, to the degree necessary for the intended use. | **DEFINITION of credible, page 4, lines 102-104** |

*Items in bold in Reference column refer to 2024 USPAP publication. Other items refer to this publication, USPAP GRM.

USPAP Guidance: Reference Index
© The Appraisal Foundation

 **GO BACK**

327

**Depend on the intended use**

Assignment results that are credible for one intended use may not be credible for another intended use.

FAQ 165, page 210

## THE REPORT: HOW TO REPORT

### Reporting and Errors

**Errors of commission**

An error of commission is doing something incorrectly.

**Standards Rule 1-1(b);** FAQ 166, page 211

An example is incorrectly identifying the subject property's relevant characteristics such as inaccurately measuring a home.

FAQ 166, page 211; FAQ 184, page 216

**Errors of omission**

An error of omission is neglecting to do something that is necessary.

**Standards Rule 1-1(b);** FAQ 166, page 211

An example is failing to identify a subject property's relevant characteristic.

FAQ 166, page 211: FAQ 184, page 216

**Making a series of errors**

The appraiser should not render appraisal services in a careless or negligent manner, such as making a series of errors.

**Standards Rules 1-1(c), 7-1(c), 9-1(c);** FAQ 167, page 211

### Reporting and "Misleading"

**Examples of "misleading"**

Changing the name of the client on the report.

FAQ 130, page 197

Communicating a report or assignment results in a way that is known by the appraiser to be misleading.

**ETHICS RULE, Conduct, page 9, lines 260-261**

Knowingly permitting someone else to communicate a report or assignment results in a way that is misleading.

**ETHICS RULE, Conduct, page 9, lines 262-263**

Advertising in a way that misleading.

**ETHICS RULE, Management, page 10, lines 298-299**

An appraiser's lack of knowledge and understanding could lead to misleading conclusions.

AO-14, page 27, lines 39-40

Failure to include specific required information.

AO-3, page 15, line 49

Failure to include information that is specific to the assignment.

AO-3, page 15, line 61

Removing data from a report that the appraiser considered relevant.

FAQ 139, page 200

Reporting stable values when the appraiser knows the market is declining.

FAQ 180, page 215

Certifying that a personal inspection was done when all that was done was to look at photos of the property.

FAQ 185, page 217

Appraising only a physical segment of a property and not communicating in the report the existence of the parts not included in the value.

FAQ 188, page 218

Not appropriately disclosing information about the unavailability of a sales contract.

FAQ 201, page 224

**Requirements to not be misleading**

Do not change the name of the client on the report.

FAQ 130, page 197

Do not knowingly communicate a report or assignment results in a way that is misleading.

**ETHICS RULE, Conduct, page 9, lines 260-261**



| | |
|---|---|
| Do not knowingly permit someone else to communicate a report or assignment results in a way that is misleading. | **ETHICS RULE, Conduct, page 9, lines 262-263** |
| Do not advertise in a way that is false, misleading, or exaggerated. | **ETHICS RULE, Management, page 10, lines 298-299** |
| Do not communicate any analysis, opinion, or conclusion in a manner that is misleading. | **STANDARD 2, page 22, lines 630-631; STANDARD 4, page 31, lines 928-929; STANDARD 6, page 41, lines 1239-1240; STANDARD 8, page 49, lines 1509-1510; STANDARD 10, page 59, lines 1801-1802** |
| Write the appraisal clearly and accurately. | **STANDARD 2, page 22, lines 630-631; STANDARD 4, page 31, lines 638; STANDARD 6, page 41, lines 1247; STANDARD 8, page 49, lines 1517; STANDARD 10, page 59, line 1810** |

**Misleading vs. competency**

| | |
|---|---|
| An appraiser who, for example, indicates a market is stable when they know it is declining, is being misleading. If the appraiser did not know how to properly recognize a market is declining, may also be in violation of other requirements in the development standard and in the COMPETENCY RULE. | FAQ 180, page 215 |

## THE REPORT: CONTENT

### Applicability

**When are reporting requirements applicable?**

| | |
|---|---|
| Whenever a value opinion is communicated. | FAQ 310, page 268 |
| For example: selecting and providing a client with comps for a known subject property. | FAQ 310, page 268 |
| For example: telling a property owner their tax assessment is too high. | FAQ 310, page 268 |
| For example: providing an opinion of market rent. | FAQ 310, page 268 |
| For example: analyzing and communicating the results of an AVM for a property in an appraisal assignment. | FAQ 310, page 268 |

### Approaches to Value

**Performing an unnecessary approach**

| | |
|---|---|
| Is allowed, so long as the appraiser properly addresses the applicability and suitability of the approach. | FAQ 315, page 271 |

### Client

**Identify the client**

| | |
|---|---|
| In the report, unless the client has requested anonymity, the name of the client must be stated. | **Standards Rules 2-2(a)(i), 2-2(b)(i), 4-2(a), 6-2(a), 8-2(a)(i), 8-2(b)(i), 10-2(a);** FAQ 301, page 265 |

**Why identify the client**

| | |
|---|---|
| It allows the client to recognize their relationship to the assignment and the report. | FAQ 302, page 265 |

 

## Confidential Information

**Pending sales comparable details**

These details are often confidential, and the appraiser must not disclose information they know is confidential (when the information is classified as confidential by law or regulation).

**DEFINITION of confidential information, page 4, lines 97-100; Standards Rule 1-1(b)** FAQ 235, page 239

## Copy of an Appraiser's License, Resume, etc.

**Not specifically required by USPAP**

There are no requirements in USPAP specifying that an appraiser's credentials be identified in an appraisal report; however, it may be an assignment condition to do so.

FAQ 289, page 262; FAQ 290, page 262; FAQ 313, page 270; FAQ 312, page 270

## Data Input

**Who can input data into the report?**

A data entry company can input data into a report; however, there are concerns about this the appraiser should be aware of.

FAQ 266, page 251

## Dates

**Appraisal date**

USPAP does not define this or use this term.

FAQ 144, page 202

**Date of report**

Is not defined in USPAP, but is referenced in the reporting standards.

**Standards Rule 2-2(a)(vii)**

It is the date when the report is completed and transmitted to the client and not the date the report was started.

FAQ 151, page 204

**"Current" date**

A current date means it is contemporaneous with the date of the report.

FAQ 151, page 204; AO-34, page 99, lines 15-17

**Date of "revised" report**

The date of the revised report should be the date it is completed and transmitted to the client.

FAQ 148, page 203

**Date of certification**

If there is a certification date, it should only be based on the date a report is completed and transmitted, because an appraiser cannot certify what they have done until they have done it.

FAQ 147, page 203

A signed and dated certification is required for all oral reports.

**RECORD KEEPING RULE, page 12, lines 339-340**

**Date of appraisal**

This is an ambiguous term and is not defined in USPAP.

FAQ 144, page 202

**Effective date**

Is defined in USPAP.

**DEFINITION of effective date, page 4, lines 105-106**

The date of the opinion of value.

FAQ 140, page 200

It establishes the context for the value opinion.

FAQ 140, page 200

USPAP does not dictate a format for stating the effective date.

FAQ 143, page 202

GO BACK



| | |
|---|---|
| The effective date does not have to be cited next to every value opinion. | FAQ 145, page 202 |
| The effective date can be changed, but additional steps must be taken (depending on where the assignment is in the process). | **SCOPE OF WORK RULE, page 13, line 431**; FAQ 146, page 202 |
| The appraiser does not have to have competency as of the effective date of the appraisal, rather, they have to have competency as of the time they are developing a value opinion. | **COMPETENCY RULE, page 13, lines 363-365**; FAQ 152, page 205 |

**Expiration date**

| | |
|---|---|
| An appraisal report does not have an expiration date. | FAQ 140, page 200 |

**Multiple effective dates**

| | |
|---|---|
| One assignment can require two opinions of value and one report can contain two value opinions. | FAQ 153, page 205; FAQ 155, page 206 |

**Post-value information**

| | |
|---|---|
| An appraiser cannot include in the analysis an event that happened subsequent to the effective date. | FAQ 154, page 205 |

**Prospective date**

| | |
|---|---|
| While not defined in USPAP, valuing a property based on a prospective date is allowed. | FAQ 150, page 204 |

**Report date**

| | |
|---|---|
| It means the same thing as "date of report." | FAQ 144, page 202 |
| Report date is not defined in USPAP, or used in USPAP, though it does appear in some guidance. | FAQ 149, page 203; FAQ 147, page 203; FAQ 144, page 202 |
| It indicates the perspective of the appraiser (as current, retrospective, or prospective). | FAQ 141, page 201 |

**Retrospective date**

| | |
|---|---|
| The appraiser does not have to have competency as of the retrospective date of the appraisal, rather, they have to have competency as of the time they are developing a value opinion. | **COMPETENCY RULE, page 13, lines 363-365;** FAQ 152, page 205 |
| Be aware of how to handle information which occurred after the effective date (that cannot be included in the analysis). | FAQ 154, page 205 |
| The appraiser would comply with the edition of USPAP effective as of the date of the report (not as of the effective date of the value opinion). | FAQ 156, page 206 |
| Using comparable sales after the effective date in a retrospective appraisal might be misleading. | FAQ 157, page 207 |

**Signature date**

| | |
|---|---|
| This is sometimes used by an appraiser to indicate when a report was transmitted to a client, but it is a term that is not used, or defined in USPAP. | FAQ 144, page 202 |

**Start date of report**

| | |
|---|---|
| USPAP has no requirements to state when a report was started. | FAQ 147, page 203 |

## Information That May or May Not Be Necessary in the Report

**Legal description**

| | |
|---|---|
| USPAP does not specifically require an appraisal report include a legal description; however, that information may be needed to convey the property characteristics relevant to the assignment. | **Standards Rules 2-2(a), 8-2(a)(iv);** FAQ 295, page 263 |

### Property address

USPAP does not specifically require an appraisal report include a property address, the requirement, rather, is that the appraiser provide sufficient information to identify the real estate involved in the appraisal.

**Standards Rule 2-2(a)**; FAQ 296, page 263

## Intended Use

### Identify the intended use

The disclosure of the intended use is to avoid misleading parties in possession of an appraisal.

FAQ 303, page 266

For clarity, one might state that other intended uses are not intended.

FAQ 303, page 266

### Multiple intended uses in one report

A report may be for more than one intended use.

FAQ 304, page 266

## Intended Users

### Identify the intended users

In the report, identify the intended users by name or type (depending on what type of reporting option is used).

AO-36, pages 104-107

If the report is a Restricted Appraisal Report, other intended users must be identified by name.

FAQ 318, page 272

## Photos

### Altering photos

An appraiser can alter photos so long as the action does not result in a misleading report.

FAQ 316, page 271

## Reporting the Exclusion of Approaches

### How to report the exclusion of an approach

Provide some basis for the opinion as to why the approach was not necessary, so that the intended users have insight into why the analysis was not performed.

FAQ 299, page 264

## Reporting the Scope of Work

### Why report it?

It gives the intended users a clear understanding of the extent of the research and analysis performed.

**SCOPE OF WORK RULE, page 16, lines 467-469**; FAQ 297, page 264

### The importance of proper disclosure of the scope of work

Proper disclosure of the scope of work is required because clients and other intended users rely on assignment results.

FAQ 297, page 264

It communicates the scope of work actually performed, not the scope of work planned.

AO-28, page 80, lines 83-86

### Where to include it in the report

USPAP does not say where it should be disclosed, thus, the scope of work disclosure can be throughout the report, or in one or more sections.

**SCOPE OF WORK RULE, page 16, lines 465-473**; FAQ 300, page 265

GO BACK



## Information That Was Analyzed

### Appraisal Report
The report must contain a summary of information that was analyzed.

**Standards Rule 2-2(a)(x)(5);** FAQ 139, page 200

### Restricted Appraisal Report
A summary of the information analyzed is not required.

**Standards Rule 2-2(b)(xii)(4)**

## Negative Property Issues

### Adverse issues
The appraiser is not required to report adverse conditions to other authorities, unless required by law.

FAQ 52, page 165; FAQ 53, page 165

If required by law to report the issue, it is not a jurisdictional exception.

FAQ 53, page 165

## Multiple Opinions of Value

### Contained in one report
Are allowed, and both (or more) opinions of value must be developed in conformance with the applicable development standard.

FAQ 153, page 205

## Signature

### What is it?
It is personalized evidence accepting the content in the report.

**DEFINITION of signature, page 6, lines 162-163;** FAQ 258

An appraiser signing the report, accepts responsibility for the assignment results related to their appraisal discipline.

**Standards Rule 2-3(b);** FAQ 261, page 249

### Who can sign
A business entity can sign an appraisal report, but only an individual appraiser can sign a certification.

**Standards Rule 2-3(b);** FAQ 264, page 250

### Who should not sign
An appraiser who provided significant appraisal assistance and who disagrees with the supervisor's opinions and conclusions stated in the report.

**Standards Rules 2-3(b);** FAQ 272, page 254

### Can the signature be stored in a digital file?
Yes, it can be stored in a digital file to be used with the appraiser's authorization.

FAQ 259, page 249

### Authorizing use of a signature
An appraiser may authorize the use of his or her signature.

**ETHICS RULE, Management, page 10, line 304;** FAQ 258, page 248

The authorization may only be given on a case-by-case basis.

**ETHICS RULE, Management, page 10, line 304;** FAQ 258, page 248

### Unauthorized use of a signature
An appraiser is not liable for unauthorized use of their signature.

**ETHICS RULE, Management, page 10, lines 305-306;** FAQ 260, page 249

### Required in the certification
USPAP requires a signed certification, not a signed report.

FAQ 255, page 247

If the report is electronic, the report must contain a signed certification.

FAQ 263, page 250



**If an appraiser signs a report, also sign the certification**
If an appraiser signs a report, they must sign the certification.

**Standards Rule 2-3(a);** FAQ 255, page 247

**If an appraiser signs a letter of transmittal in a report, also sign the certification**
USPAP only requires the appraiser to sign the certification; however, if they sign a letter of transmittal, they must sign the certification.

**Standards Rule 2-3(b);** FAQ 256, page 248

**If two appraisers sign a report, they must also sign the certification**
If an appraiser (or if multiple appraisers) signs any part of a report, then the appraiser must also sign the certification.

**Standards Rule 2-3(b);** FAQ 257, page 248

## Significant Appraisal Assistance

**Where to disclose**
Must be disclosed somewhere (anywhere) in the report.

FAQ 270, page 253

**Disclose that person's name in the certification**
The name of the person providing the significant appraisal assistance must be included in the certification.

FAQ 283, page 259

## Information for Others Who Read the Report

**They will not be misled since they are not identified as users or clients.**
Parties other than clients or intended users, when reading the report, will see they are not identified as a user and this "puts them on notice."

FAQ 302, page 265

## Work Not Done

**Is there a need to report work not done in an assignment?**
Sometimes there is, if it helps the intended users understand the scope of work.

**SCOPE OF WORK RULE, page 16, lines 468-469**; FAQ 298, page 264

# THE REPORT: DRAFT

## Draft Reports

**Are sometimes appropriate**
Draft reports are not defined in USPAP, though they are a part of some types of appraisal practice.

FAQ 314, page 270

# THE REPORT: FORMS

## Forms (in general)

**Forms that comply with USPAP**
Appraisers comply with USPAP, not forms.

FAQ 162, page 208; FAQ 309, page 268

## Alternate Valuation Products

**Do they comply with USPAP?**
An appraiser complies with USPAP, not forms.

FAQ 162, page 208

So long as the use of the form results in the appraiser being able to comply with USPAP, any type of form is acceptable.

FAQ 162, page 208

## Condition and Marketability Reports

**Reports about condition, even though they do not include a value opinion, are covered by USPAP.**

A condition report pertains to value, thus, filling out this form is a valuation service, and you are being asked to fill out the form as an appraiser.

**DEFINITION of valuation service, page 6, lines 164-165; DEFINITION of appraisal practice, page 4, lines 67-71;** FAQ 29, page 156

## Fannie Mae Form 1004

**Labeling the report**
If a report has the term "Summary Appraisal Report" written on it, then this can mean it is labeled correctly.

FAQ 287, page 261

**"Stable" and "Declining" boxes**
Check what box is correct, not one that the underwriter would like to see checked.

FAQ 180, page 215

**Certification statements**
If a form that an appraiser is required to use in the reporting of the appraisal does not have the correct certification statements, it is still the responsibility of the appraiser to comply with USPAP.

**Standards Rule 2-3(a);** FAQ 24, 154

If an appraiser has certified they have personally inspected the property, then that must be true (and just inspecting photos of the property is not a personal inspection).

FAQ 185, page 217

If an appraiser has certified they have personally inspected the exterior of the comparable sales, they must have done so.

FAQ 186, page 217

If an appraiser is required to certify they have personally inspected the exterior of the comparable sales, but are not required to (and do not need to, for the sake of credible assignment results) inspect the exterior of active listings.

FAQ 187, page 217

Fannie Mae allows the appraiser to add additional certification statements to their form, or may add a supplemental certification to the report.

**Standards Rule 2-3(a)**; FAQ 280, page 258; FAQ 281, page 258

## Fannie Mae Form 1004D

**"The property has not decreased in value"**
This is an appraisal and thus, the appraiser must comply with the development and reporting requirements of an appraisal.

**DEFINITION of appraisal, page 3, line 62-66;** FAQ 207, page 226

Making this statement is a new appraisal.

FAQ 293, page 262; AO-3, pages 14-15

**How much information to include in the report for an "update"**
The appraiser will need to supplement the form as necessary, so that the resulting appraisal report complies with Standards Rule 2-2 (a).

FAQ 293, page 262

**Does updating an appraisal require a certification?**
Yes. An appraisal update is a new assignment because an appraisal update is an appraisal.

FAQ 276, page 256

**Can a prior certification be incorporated by reference?**
No. One cannot certify past work for work that will be done in the future.

FAQ 276, page 256

**No need to REPORT a prior service in a certification if a value is not provided on this form.**

So long as the 1004D is the form that is used, and this is not an appraisal or an appraisal review assignment, then a certification is not required.

**ETHICS RULE, Conduct, page 10, lines 281-282**; FAQ 252, page 247

**Need to DISCLOSE a prior service**
Even if the 1004D form is not a part of an appraisal or appraisal review assignment (and thus, a certification statement is not required to be added to the form), the appraiser must still disclose to the client (either at the time of the assignment or upon discovery) if a prior service was performed.

**ETHICS RULE, Conduct, page 10, lines 281-282;** FAQ 252, page 247

### Fannie Mae Form 1004MC

**Does the certification apply to this addendum?**
Yes, since it is identified as part of the report, the certification does cover this form when it is included in the report.

FAQ 273, page 254

### Transmittal Letter (Letter of Transmittal)

**It is not required by USPAP to have one in a report**
However, if one is added, there are requirements that apply.

FAQ 288, page 261

**If one is included in a report, then the following requirements apply:**
Any applicable disclosure about fees paid (or a thing of value given) in connection with the procurement of an assignment.

**ETHICS RULE, Management, page 10, lines 284-289**; FAQ 34, page 158

An appraiser who signs a letter of transmittal, must also sign a certification.

**Standards Rules 2-3(b), 6-3(b), 8-3(b), 10-3(b)**

A reviewer who signs a letter of transmittal, must also sign a certification.

**Standards Rule 4-3(b)**

**If one is included in a report, the following are not requirements:**
The amount of a fee paid in the procurement of an assignment is not required to be disclosed.

FAQ 45, page 161

## THE REPORT: RESTRICTED APPRAISAL REPORT

### Restricted Appraisal Report

**When is it inappropriate?**
For example, when users are known and identified by type, because then an abbreviated report may not contain enough information.

**Standards Rule 2-2(b)**; FAQ 136, page 199

**When is it allowed?**
Can be used if there is an intended user other than the client.

**Standards Rule 2-2(b)(ii)**

**Required Content**
The required content is a minimum, and the appraiser can exceed this minimum.

FAQ 312, page 270

Unless the report meets the minimum content requirement for an Appraisal Report, it must still be labeled a Restricted Appraisal Report.

FAQ 312, page 270

**For multiple parties**
Intended users other than just the client are allowed.

FAQ 318, page 272

GO BACK

USPAP Guidance: Reference Index
© The Appraisal Foundation

## THE REPORT: THE DIGITAL OR HARDCOPY

### How to Label the Report

**Additional labels**
An appraiser can use a label in addition to "Appraisal Report" or "Restricted Appraisal Report," but they cannot use a label in place of one of these two labels.

**Standards Rules 2-2, 8-2, 10-2**; FAQ 286, page 261

**Mass appraisal is different**
Mass appraisal does not require a label on the report.

**Standards Rule 6-2**

### Who Owns the Report?

**Not specified**
USPAP does not specifically address this; however, USPAP does address the appraiser's obligation to protect the confidential information in that report.

**ETHICS RULE, Confidentiality, page 11, lines 307**; FAQ 284, page 260

### Sample Reports

**How to provide them**
If providing them, without client authorization, be sure to redact confidential information.

FAQ 58, page 167

Make certain to comply with the Confidentiality section of the ETHICS RULE.

**ETHICS RULE, Confidentiality, page 11, lines 307-329**; FAQ 58, page 167

**How not to provide them**
Do not send the redacted information to the potential client in a separate email in conjunction with a copy of the report that has been redacted.

FAQ 59, page 168

**Who the appraiser may provide a copy to**
Only someone that the client authorizes: not someone the appraiser chooses.

**ETHICS RULE, Confidentiality, page 11, line 315**; FAQ 60, page 168

### Security of the Reports

**Email, is it secure?**
Sending a report to a client via email does not violate confidentiality requirements.

FAQ 61, page 169

### Copy of the Written Report

**Who the appraiser may provide a copy to**
Someone that the client authorizes: not someone the appraiser chooses.

**ETHICS RULE, Confidentiality, page 11, line 315;** FAQ 60, page 168

Those parties authorized by law to receive a copy.

**ETHICS RULE, Confidentiality, page 11, line 316;** FAQ 64, page 170

A sworn peace officer who is qualified as having the authority by law to do so.

**ETHICS RULE, Confidentiality, page 11, line 317**; FAQ 65, page 170

Peer review committees.

**ETHICS RULE, Confidentiality, page 11, line 318**; FAQ 66, page 171

### "True Copy"

**What is a "true copy"?**
A photocopy or an electronic copy of the entire appraisal report transmitted to the client is a true copy.

**RECORD KEEPING RULE, page 12, line 337-338;** FAQ 81, page 178

A replica of what was sent to the client is a true copy.

FAQ 90, page 181

**Contents of a true copy**
Any signatures that were affixed to a report must exist on the true copy.

FAQ 90, page 181

**Is it possible to keep a true copy of an oral report?**
No. The requirement to keep a true copy only applies to the written report.

**RECORD KEEPING RULE, page 12, line 337-338**; FAQ 81, page 178

## Paper Copies

**A paper copy is not required to be retained**
Rather, only a "true copy" of the written report is required to be retained, and thus, that one copy can be digital.

FAQ 308, page 268

## Delivery

**Email or electronic delivery**
Sending a report to a client via email is an acceptable method of communicating the appraisal report.

FAQ 62, page 268

Communication of assignment results must be done in a way that is not misleading.

**ETHICS RULE, Conduct, page 8, line 260-261**; FAQ 285, page 260

The appraiser must know what exactly is being transmitted to the client; however, after the appraiser has transmitted the report, the appraiser cannot control what a client or intended user does with the report.

FAQ 285, page 260

**Text messages can be appraisal reports**
Text messages are written communications, and they can be the communication of assignment results and thus, they are subject to Standards Rule 2-2 (for real property).

FAQ 291, page 262

## Plagiarism

**It is unethical**
The appraiser cannot present an appraisal report and represent it as their work; that would be misleading.

**ETHICS RULE, Conduct, page 9, lines 262-263**; FAQ 12, page 149

## Copyrighting

**Is it allowed?**
The ASB takes no position of if an appraisal report can, cannot, should, or should not be copyrighted.

**ETHICS RULE, Confidentiality, page 11, line 315**; FAQ 69, page 172

## Words an Appraiser Can Use

**Using "high," "low," "good," etc.**
USPAP does not prohibit the use of qualitative terms, though contextual information is useful.

FAQ 13, page 150

## THE REPORT: THE ORAL REPORT

## Workfile

**Contents of workfile**
The workfile must contain a summary of the oral report.

FAQ 92, page 182; FAQ 94, page 182; FAQ 305, page 267

GO BACK



| | |
|---|---|
| The summary of the oral report must be added to workfile "within a reasonable time" after issuance. | **RECORD KEEPING RULE, page 12, lines 332-333** |
| The workfile must contain a signed and dated certification. | **RECORD KEEPING RULE, page 12, lines 339-340;** FAQ 305, page 267 |

**Transcript of any testimony**

| | |
|---|---|
| A transcript of testimony given is not required for the workfile, so long as a summary of the testimony is in the workfile. | **RECORD KEEPING RULE, page 12, lines 332-333;** FAQ 92, page 182 |
| When testimony is given, the workfile must contain either a transcript of the testimony or a summary of the testimony. | **RECORD KEEPING RULE, page 12, lines 339-340;** FAQ 93, page 182 |
| When giving testimony about a written report, the signed certification must be in the true copy of the report in the workfile. | FAQ 98, page 228 |
| The workfile, if it contains only a transcript, it need only be of the appraiser's testimony, not anyone else's testimony. | FAQ 96, page 182 |
| If there is no testimony given, and a report was entered into evidence in conjunction with a judicial proceeding, the requirement is still only five years maximum. | FAQ 105, page 185 |

## THE REPORT: CERTIFICATION

### What Does the Certification Apply to?

**The report**

| | |
|---|---|
| If signed by one appraiser, then it applies to the entire report, including any addenda. | **Standards Rule 2-3(b);** FAQ 273, page 254 |

**Parts of the report**

| | |
|---|---|
| It can also, if written as such, clearly indicate which discipline-specific assignment results and report content are being certified for each appraiser (when there are multiple appraisers who have competency in different assets). | FAQ 274, page 255 |

### Who Is Required (or Not Required) to Sign?

**Non-appraisers**

| | |
|---|---|
| Non-appraisers who provide assistance need not be identified in the certification. | FAQ 265, page 250 |

**Appraisers**

| | |
|---|---|
| Only appraisers can sign a certification. | FAQ 265, page 250 |
| If they sign a letter of transmittal, they must also sign the certification. | **Standards Rule 2-3(b);** FAQ 288, page 261 |

**Assistants**

| | |
|---|---|
| Only those who provide significant appraisal assistance can sign a certification, or, if not, then they must not be identified as having provided significant appraisal assistance. | FAQ 265, page 250 |

**"Supervisory" appraisers**

| | |
|---|---|
| Any appraiser who signs any part of an appraisal report, must sign the certification. | FAQ 269, page 253 |

### Appraisal firms
An individual appraiser signs a certification, not an appraisal firm.

FAQ 282, page 258; FAQ 264, page 250

## Why Is It Required

### Evidence of ethical obligations
It is evidence that an appraiser recognizes their ethical obligations.

FAQ 251, page 246

## When a Signed Certification Is Not Required

### When there is no appraisal or appraisal review report.
A signed certification is a part of a report, if there is no report, there need not be a signed certification.

**ETHICS RULE, <u>Conduct</u>, page 12, lines 281-282**; FAQ 252, page 247

## Content Required

### Present or prospective interest
Having a present or prospective interest in a property (or in the parties involved in a transaction) can prevent an appraiser from being unbiased, they must be able to certify they performed the service ethically.

FAQ 14, page 150

### Payment made in the procurement of an assignment
If a payment was made in the procurement of an assignment, this must be disclosed in the certification.

**ETHICS RULE, <u>Management</u>, page 10, lines 284-289;** FAQ 46, page 162;

### The exact names of any appraiser who provided significant appraisal assistance.
The certification must include the name, not, for example, the job role of the person providing the significant appraisal assistance.

FAQ 283, page 259

## Content Not Required

### Coercion and a predetermined result
An appraiser does not have to certify they have not been coerced to provide a predetermined result.

FAQ 11, page 149

### Prior services if there is no appraisal or appraisal review assignment
An appraiser only needs to disclose the prior service to the client, since there is no appraisal or appraisal review report.

FAQ 252, page 247

### A word for word reiteration of each statement
The wording of the certification statements in the reporting standards is not required to be stated word for word, rather the elements of each statement in the certification must be addressed.

**Standards Rule 2-3(a);** FAQ 253, page 247

### A description of any significant appraisal assistance
The information about significant appraisal assistance does not have to be in the certification, but it must be in the report. Only the name of the person who provided the significant appraisal assistance must be in the certification.

FAQ 270, page 253

| Content Not Allowed | |
|---|---|
| **Claiming one is "USPAP Certified"** | |
| Since there is no such credential, claiming as such would be misleading. Thus, the certification should only state that the conclusions were developed, and the report was prepared in conformity with USPAP. | FAQ 42, page 161 |

| Signature on the Certification | |
|---|---|
| **Reason for the signature** | |
| It is evidence that an appraiser recognizes his or her ethical obligations in USPAP. | FAQ 251, page 246 |
| **Workfile obligations** | |
| For any report, the workfile must contain a signed certification (a copy is fine). | **RECORD KEEPING RULE, page 12, line 336;** FAQ 90, page 181 |
| **When not to sign the certification** | |
| If an appraiser provides significant appraisal assistance and disagrees with the conclusions the supervisory appraiser reached, then the appraiser should not sign the certification (which says the opinions in the report are the appraiser's personal opinions). | FAQ 272, page 254 |
| **Multiple signatures** | |
| Are allowed, and if there is more than one signature, then each appraiser accepts responsibility for all elements in the certification. | FAQ 277, page 257 |

| Date on Certification | |
|---|---|
| **This is not required.** | |
| An appraiser is required to state the date of the report, not the date of the certification. | **Standards Rules 2-2(a)(vii), 2-2(b)(ix)**; FAQ 147, page 203 |
| **If it is stated** | |
| Then it must accurately be based on the report date, since one cannot certify something as of a certain date before the thing being certified to was done. | FAQ 147, page 203 |
| Then, if a report is revised, this date should reflect the same date as the date of the report. | FAQ 148, page 203 |

# ISSUES THAT TYPICALLY OCCUR AFTER THE REPORT HAS BEEN DELIVERED

## COMPLETION OF AN ASSIGNMENT

| Modifying a Report after Completion | Reference* |
|---|---|
| **Could be misleading** <br> An appraiser would be misleading if they removed a comp, at a client's request, if the appraiser concluded that comp was relevant. | **Standards Rule 2-2(a)(x)(5);** FAQ 139, page 200 |
| **Changing the scope of work** <br> The scope of work for the assignment can change after the report has been submitted, the report can then be revised and submitted. | FAQ 169, page 211 |
| **Changing the intended user** <br> This would then be a new assignment since it was a change to an assignment element. | FAQ 169, page 211 |

| Adding Intended Users after Completion | |
|---|---|
| **Is not allowed** <br> An intended user cannot be added to the report, but an appraiser can start a new assignment. | FAQ 129, page 196 |

| How Long Is the Report Valid for? | |
|---|---|
| **Expiration dates** <br> Do not exist for appraisal reports, only users of appraisal services can determine how long they will continue to rely on the report. | FAQ 140, page 200 |

## THE REPORT: AFTER DELIVERY TO THE CLIENT

| Who Owns the Report? | |
|---|---|
| **USPAP does not specifically address this** <br> USPAP, however, does address the appraiser's obligation to protect the confidential information in that report. | **ETHICS RULE, Confidentiality, page 11, line 308 and 313-319**; FAQ 276, page 256 |

| Adding an Intended User | |
|---|---|
| **"Reliance Letters"** <br> USPAP does not define what a reliance letter is, rather it specifies that an intended user cannot be added after the completion of an assignment (unless a new assignment is started). | **DEFINITION of intended user, page 5, lines 127-128**; FAQ 129, page 196 |

| Transferring a Report (which is not allowed) | |
|---|---|
| **What is not allowed** <br> A report can never be "transferred" to another party. | FAQ 130, page 197 |
| **"Release letters"** <br> USPAP does not define a release letter, rather, it just states the client's name on a report cannot be changed. | FAQ 131, page 197 |

*Items in bold in Reference column refer to 2024 USPAP publication. Other items refer to this publication, USPAP GRM.

**GO BACK**

USPAP Guidance: Reference Index <br> © The Appraisal Foundation

## RECORD KEEPING: GENERAL CONCEPTS

### When Selling an Appraisal Firm

**Ethical obligations**

When selling a firm, an appraiser must comply with confidentiality requirements.

**ETHICS RULE, Confidentiality, page 11, lines 308-312**; FAQ 70, page 172

**Record keeping obligations**

An appraiser must make access and retrieval arrangements to workfiles.

**RECORD KEEPING RULE, page 12, lines 350-352;** FAQ 70, page 172

**GO BACK**

# TOPICS RELATED TO RECORD KEEPING

## RECORD KEEPING: THE WORKFILE

| Creating a Workfile | Reference* |
|---|---|
| **When to create one** | |
| Not after the report was delivered. | **RECORD KEEPING RULE, page 12, lines 330-333**; FAQ 91, page 182 |
| It is advisable to start a workfile as soon as the appraiser agrees to perform the assignment. | FAQ 91, page 182 |

| Access to the Workfile | |
|---|---|
| **When access is provided to another appraiser** | |
| The person granted access has a responsibility to protect the public trust. | FAQ 71, page 173 |
| **When access is required** | |
| When a seller of an appraisal firm has workfile obligations. | **RECORD KEEPING RULE, page 12, lines 353-360;** FAQ 71, page 173 |
| If a party other than the appraiser retains the workfile, that party must allow the appraiser access to the workfile under certain scenarios. | **RECORD KEEPING RULE, page 12, lines 353-360**; FAQ 85, page 179 |
| **Can access be denied?** | |
| Yes, if an appraiser is seeking access to the workfile outside of the ones specified in the RECORD KEEPING RULE. | **RECORD KEEPING RULE, page 12, lines 353-360**; FAQ 88, page 181 |
| Because someone can deny access to the appraiser, the appraiser may wish to maintain a copy of a workfile. | FAQ 85, page 179 |
| Supervisory appraiser must not impede the trainee appraiser's ability to access workfiles. | FAQ 86, page 180 |
| **Does an agreement for access have to be in writing?** | |
| No. USPAP does not specify how to make access arrangements. | **RECORD KEEPING RULE, page 12, lines 350-352**; FAQ 89, page 181 |

| Format of the Workfile | |
|---|---|
| **Should the workfile have a specific format?** | |
| USPAP does not dictate the form or format of the workfile. | FAQ 85, page 179 |

| Contents of the Workfile | |
|---|---|
| **What must be in it** | |
| Items such as client information, copies of reports, and all other data to support the appraiser's opinions and conclusions. | **RECORD KEEPING RULE, page 12, lines 334-343**; FAQ 79, page 177 |
| A true copy of the entire report transmitted to the client. | FAQ 81, page 178 |
| Documents, or references in the workfile to the location of those documents. | **RECORD KEEPING RULE, page 12, lines 342-343;** FAQ 98, page 183 |

*Items in bold in Reference column refer to 2024 USPAP publication. Other items refer to this publication, USPAP GRM.

**GO BACK**

USPAP Guidance: Reference Index
© The Appraisal Foundation

**When a workfile must be prepared**

For each appraisal or appraisal review assignment.

**DEFINITION of assignment, page 3, line 82;** FAQ 82, page 178

**Are original documents required?**

No. Copies are acceptable.

FAQ 85, page 179

**What must be in it for an oral report**

The workfile must contain a summary of the oral report.

FAQ 92, page 182

The summary of the oral report must be added to workfile "within a reasonable time" after issuance.

**RECORD KEEPING RULE, page 12, lines 332-333**

A transcript of testimony given is not required for the workfile, so long as a summary of the testimony is in the workfile.

**RECORD KEEPING RULE, page 12, lines 332-333**; FAQ 92, page 182

When testimony is given, the workfile must contain either a transcript of the testimony or a summary of the testimony.

**RECORD KEEPING RULE, page 12, lines 339-340**; FAQ 93, page 182

**Must be kept even if assignment is canceled**

Regardless of whether a report is issued or not, the workfile must still be retained.

FAQ 101, page 184

## Existence of a Workfile

**When one is required**

For each appraisal or appraisal review assignment.

FAQ 101, page 184

Regardless of if the appraisal or appraisal review assignment was completed, or a report was issued, a workfile is required.

FAQ 101, page 184

## Custody of a Workfile

**Two appraisers: Who should have custody?**

If there are two appraisers, neither appraiser is specifically required to have custody of the workfile; however, the one without custody must have arrangements for retention, access, and retrieval.

**RECORD KEEPING RULE, page 12, lines 350-352**; FAQ 84, page 179

**If an appraiser does not have custody, what do they do?**

They must make appropriate workfile retention, access, and retrieval arrangements.

**RECORD KEEPING RULE, page 12, lines 350-352;** FAQ 87, page 180

## Number of Workfiles

**Multiple appraisers**

If two appraisers sign a report, there still need only be one workfile.

**RECORD KEEPING RULE, page 12, lines 350-352;** FAQ 87, page 180

If there are two appraisers for one appraisal assignment, both most maintain access to the workfile.

FAQ 86, page 180

## Purpose of the Workfile

**What the purpose of the workfile is**

To ensure performance, to facilitate enforcement, to preserve evidence of compliance with USPAP, preserve information that supports the appraiser's opinions and conclusions, and it aids the appraiser in handling questions from a client or intended user.

FAQ 79, page 177

## Retention of the Workfile

**Who should honor retention arrangements?**

When buying an appraisal firm, an appraiser should honor any retention arrangements.

**RECORD KEEPING RULE, page 12, lines 353-354**; FAQ 71, page 173

The appraiser, not their employer.

**RECORD KEEPING RULE, page 12, lines 347-349;** FAQ 82, page 178

**How long to retain a workfile?**

A minimum of five years and a maximum of two years after final deposition of a judicial proceeding.

**RECORD KEEPING RULE, page 12, lines 347-349;** FAQ 105, page 185

If a state law requires only a three-year retention period, USPAP would still apply and thus, five years minimum.

**JURISDICTIONAL EXCEPTION RULE, page 17, lines 474-475;** FAQ 99, page 184

There is no USPAP limit on a maximum amount of time to retain the workfile.

FAQ 100, page 184

**When to stop retention**

An appraiser cannot destroy records any time prior to five years after preparation.

**RECORD KEEPING RULE, page 12, lines 330, 347-349; ETHICS RULE, Conduct, page 9, line 265**; FAQ 83, page 178

**Can retention stop when the appraiser is deceased?**

The appraiser was responsible for retaining the workfiles, no one else.

FAQ 103, page 185

A state or other entity may require the files to be retained by someone else in this circumstance, but that is not a USPAP requirement.

FAQ 103, page 185

**Who should retain the workfile?**

If the appraiser does not have retention of the workfile, they must make arrangements with the party who has the workfile, to protect and preserve the file.

FAQ 85, page 179; FAQ 104, page 185

If the appraiser is an independent contractor, the appraiser is responsible for retention.

**RECORD KEEPING RULE, page 12, line 350;** FAQ 85, page 179

If the appraiser is an employee, the appraiser is responsible for retention.

**RECORD KEEPING RULE, page 12, line 350**; FAQ 85, page 179

Because someone can deny access to the workfile to the appraiser, the appraiser may wish to maintain a copy of a workfile.

FAQ 85, page 179

**Manner of workfile retention**

The arrangement for workfile retention is a business arrangement.

FAQ 85, page 179

**How to ensure the workfile is retained**

If an appraiser does not have custody of a workfile, the appraiser can come up with any number of ways to ensure the appraiser has access to the workfile.

FAQ 87, page 180

## Retrieval of the Workfile

**Who should honor retrieval arrangements?**

When buying an appraisal firm, an appraiser should honor any retrieval arrangements.

**RECORD KEEPING RULE, page 12, lines 353-358**; FAQ 71, page 173

| Providing Copies of the Workfile | |
|---|---|
| **AMC requests a copy of the workfile**<br>This is not prohibited; however, the appraiser must comply with confidentiality requirements. | FAQ 85, page 179 |
| **Attorney Client wants a copy of the workfile**<br>Providing the workfile to a duly authorized party is permitted. | FAQ 85, page 179 |

| Purging | |
|---|---|
| **Purging a workfile**<br>An appraiser cannot comply with a client request to purge a workfile. | **RECORD KEEPING RULE, page 12, line 330, 347-349; ETHICS RULE, Conduct, page 9, line 265**; FAQ 83, page 178 |

| Disposal or Destroying | |
|---|---|
| **How to dispose**<br>USPAP does not dictate a method; however, do not violate the ETHICS RULE when disposing of files. | **ETHICS RULE, Confidentiality, page 11, lines 320-321**; FAQ 80, page 1177 |
| **When to destroy**<br>An appraiser cannot destroy records any time prior to five years after preparation. | **RECORD KEEPING RULE, page 12, line 330, 347-349; ETHICS RULE, Conduct, page 9, line 265**; FAQ 83, page 178 |
| **Accidental destruction**<br>If workfiles are accidentally destroyed, there are no provisions in USPAP for this unfortunate situation. | **RECORD KEEPING RULE, page 12, lines 347-349**; FAQ 102, page 184 |

## SAME PROPERTY, NEW ASSIGNMENT[1]

| Confidential Information | |
|---|---|
| **Don't disclose in new assignment**<br>When appraising the same property, a second time, be careful not to disclose confidential information in the second assignment. | FAQ 15, page 150 |

| When It May or May Not Be a New Assignment | |
|---|---|
| **Change of effective date**<br>Depends where in the process the appraiser is. | FAQ 146, page 202 |

| When It Is a New Assignment | |
|---|---|
| **New intended user**<br>If an intended user wants to be "added to a report" after completion of an assignment, this cannot be done. This would need to be the start of a new assignment. | FAQ 129, page 196 |

---

1    Also see "Present or Prospective Interest and Prior Services"

---

### New client
An appraiser cannot simply change the client's name on an old report and issue a new report; that is misleading.

FAQ 130, page 197; FAQ 163, page 209

### "Update" of a prior assignment
"Update" is a new appraisal assignment that involves the same subject property as a prior assignment.

FAQ 211, page 228

"Update" is a business term. A second assignment for a client is a new assignment.

FAQ 206, page 226

Regardless of the label, an appraisal of a property that was the subject of a prior assignment is not an extension of a prior assignment, it is a new assignment.

FAQ 210, page 228

"Update" is a new assignment, and the appraiser can use any format that is acceptable for the intended use and that complies with the appropriate reporting standard.

FAQ 292, page 262; AO-3, page 14-15

### "Update" of an appraisal completed by another appraiser
This is just a new appraisal assignment.

FAQ 208, page 257; AO-3, page 14-15

Regardless of the label, an appraisal of a property that was the subject of a prior assignment is not an extension of a prior assignment, it is a new assignment.

FAQ 210, page 228

### "Update" with the appraiser indicating the property "has not decreased in value"
This is an appraisal, and it is a new assignment.

FAQ 207, page 226

Regardless of the label, an appraisal of a property that was the subject of a prior assignment is not an extension of a prior assignment, it is a new assignment.

FAQ 210, page 228

### "Recertification of value"
This is not a USPAP term, but it is discussed in AO-3.

FAQ 211, page 228

If, by "recertification of value" a client means, for example, that they want a final inspection, then this is not an appraisal.

FAQ 211, page 228

Regardless of the label, an appraisal of a property that was the subject of a prior assignment is not an extension of a prior assignment, it is a new assignment.

FAQ 210, page 228

## "Starting Over" for a New Assignment

### Does the appraiser have to start over?
No. The appraiser must decide the appropriate scope of work for the new assignment.

FAQ 209, page 227

## Scope of Work for the New Assignment

### New client
If the client is new, be careful to develop an appropriate scope of work consistent with the new intended use.

FAQ 129, page 196

### Similar data and analysis is possible
A new assignment can include virtually the same data and analysis as a prior, similar assignment on the same subject property.

FAQ 129, page 196

GO BACK

USPAP Guidance: Reference Index
© The Appraisal Foundation

| Client Prohibition on Agreeing to Perform Future Assignment | |
|---|---|
| **Client prohibitions** | |
| The client can, upon agreeing to perform the first assignment, prohibit the appraiser from appraising the property again in the future for someone else. | FAQ 128, page 199, AO-27, page 75-77 |

| Level of Detail in New Report | |
|---|---|
| **There is no minimum** | |
| An updated appraisal report is not required to have the same level of detail as the first appraisal report. | FAQ 292, page 262 |

## APPRAISAL REVIEW

| Geographic Competency | |
|---|---|
| **Is not required.** | |
| Geographic competency is not typically relevant, though it may be. Thus, it is assignment specific. | FAQ 320, page 273 |

| Maintaining a Workfile | |
|---|---|
| **When is it required?** | |
| When there is an appraisal review assignment. | **DEFINITION of assignment, page 3, line 82**; FAQ 82, page 178 |

| Post-Valuation Date Information | |
|---|---|
| **Can it be used by the reviewer?** | |
| The reviewer can use the information, but not to fault the original appraiser (who would not have access to that information). | **Standards Rule 3-2(g);** FAQ 321, page 273 |

| "Reading" vs. "Reviewing" an Appraisal Report | |
|---|---|
| **Client does not ask the appraiser about the quality of the work** | |
| If the client does not ask the appraiser to assess the quality of the work of an appraisal, this is not an appraisal review. | FAQ 325, page 276 |

| Reviewer Communicating with the Appraiser | |
|---|---|
| **When this is allowed** | |
| This is allowed, if the client has given their approval to the appraiser, to discuss the appraisal report with the reviewer. | **ETHICS RULE, <u>Confidentiality</u>, page 11, lines 307-329**; FAQ 63, page 159 |

| Which Standards Apply | |
|---|---|
| **Standards 3 & 4** | |
| When an appraiser is developing an opinion about the quality of another's work as part of an appraisal or appraisal review assignment. | FAQ 319, page 273 |
| These apply whenever the appraiser is, as part of an appraisal or appraisal review assignment, reviewing the work of another appraiser. | **DEFINITION of appraisal review, page 3, lines 72-75;** FAQ 319, page 273 |
| If a service is not an appraisal review, it must still comply with the parts of USPAP that apply to general practice. | FAQ 319, page 273 |

**GO BACK**

# OTHER TOPICS

## THE APPRAISAL FIRM

| Selling the Appraisal Firm | Reference* |
|---|---|
| **Ethical obligations**<br>When selling a firm, an appraiser must comply with confidentiality requirements. | **ETHICS RULE, Confidentiality, page 11, lines 308-312**; FAQ 70, page 172 |
| **Record keeping obligations**<br>An appraiser must make access and retrieval arrangements to workfiles. | **RECORD KEEPING RULE, page 12, lines 350-352**; FAQ 70, page 172 |

| Buying the Appraisal Firm | |
|---|---|
| **Ethical obligations**<br>When buying a firm, protect, promote, and preserve the public trust. | **PREAMBLE, page 1, lines 5-8; ETHICS RULE, page 7, lines 174-175**; FAQ 71, page 173 |
| **Record keeping obligations**<br>An appraiser must make access and retrieval arrangements to workfiles. | **RECORD KEEPING RULE, page 12, lines 350-352**; FAQ 70, page 172 |

*Items in bold in Reference column refer to 2024 USPAP publication. Other items refer to this publication, USPAP GRM.

**GO BACK**

© The Appraisal Foundation



Authorized by Congress as the Source of Appraisal
Standards and Appraiser Qualifications

APPRAISAL STANDARDS BOARD

1155 15th Street NW, Suite 1111
Washington, DC 20005–3517

tel 202 347 7722

www.appraisalfoundation.org

CONNECT WITH US ON





