# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CITY OF EAST ST. LOUIS,<br>Plaintiff,<br>vs.<br>MONSANTO COMPANY, et al.,<br>Defendants. | Case No. 3:21-cv-232-DWD |

VIDEOTAPED DEPOSITION OF

RANDALL BELL, Ph.D.

MAY 3, 2024

Reported by:
Brooke Silvas, CSR 10988
Job No. 1121619

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CITY OF EAST ST. LOUIS, )
)
Plaintiff, )
)
vs. ) Case No.
) 3:21-cv-232-DWD
MONSANTO COMPANY, et al., )
)
Defendants. )
_________________________________)

VIDEOTAPED DEPOSITION OF RANDALL BELL, Ph.D., taken on behalf of Defendants, commencing at 9:11 a.m., Friday, May 3, 2024, before Brooke Silvas, Certified Shorthand Reporter No. 10988.



APPEARANCES OF COUNSEL:

For Plaintiff:
ROY L. MASON, ESQ.
SMOUSE & MASON LLC
223 Duke of Gloucester Street
Annapolis, Maryland 21401
410-269-6620
rlm@smouseandmason.com

JOHN J. DRISCOLL, ESQ.
MATTHEW LIMOLI, ESQ.
THE DRISCOLL FIRM, P.C.
1311 Ponce de Leon, 5th Floor
San Juan, Puerto Rico 00907
618-444-6049
john@thedriscollfirm.com
(Appearing remotely)
PHILIP R. RICE, ESQ.
RICE LAW OFFICES
110 E. Lincoln Street
Belleville, Illinois 62220
618-277-6010
price@ricelawoffices.com
(Appearing remotely)
For Defendant Monsanto Company and Pharmacia:
ADAM E. MILLER, ESQ.
DIANA CHANG, ESQ.
TYLER SCHWETTMAN, ESQ. (Appearing remotely)
ABBY GREENE, ESQ. (Appearing remotely)
SHOOK, HARDY & BACON, LLP
190 Carondelet Plaza, Suite 1350
St. Louis, Missouri 63105
314-690-0201
amiller@shb.com



APPEARANCES OF COUNSEL (continued):
For Defendant Solutia:
CHARLES R. HOBBS, II, ESQ.
LATHROP GPM, LLP
7701 Forsyth Boulevard, Suite 500
St. Louis, Missouri 63105
314-613-2577
ron.hobbs@lathropgpm.com
(Appearing remotely)

Also Present:

ALONZO JANNIERE, Videographer

MICHAEL TACHOVSKY, Ph.D.
Landmark Research Group



I N D E X

WITNESS: RANDALL BELL, Ph.D.


| EXAMINATION BY | PAGE |
|---|---|
| MR. MILLER | 8, 244 |
| MR. MASON | 217, 260 |


E X H I B I T S


| DEFENDANT'S | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Defendants' Amended Notice of Videotaped Deposition to Randall Bell | 8 |
| 2 | Expert Report prepared by Randall Bell | 10 |
| 3 | Correspondence from Randall Bell, November 4, 2021 | 12 |
| 4 | Landmark Research Group LLC invoices | 13 |
| 5 | Reconciliation and Conclusion | 15 |
| 6 | Handwritten notes | 16 |
| 7 | St. Louis Metro News article, April 10, 2024 | 17 |
| 8 | Madison - St. Clair Record article | 17 |
| 9 | Conclusions | 23 |
| 10 | Photograph information | 36 |
| 11 | Photo Locations | 37 |
| 12 | Parcel information | 55 |




MAGNA LEGAL SERVICES

information concerning PCBs and the fact that they're cancer causing, some level of information was spread in through the neighborhood that indeed we see an exodus from the South End close to the Monsanto plant. And then to study that issue as an economist or as an appraiser, you look at literature that supports the idea that people avoid that. The principle of substitution and the case studies. And Anniston, Alabama specific -- specifically, which I worked on, and you see the same pattern over and over again, both within the literature at the subject property and within the case studies. It all reconciles to a consistent message.

Q Well, there -- I appreciate that.

Testing of a hypothesis under the scientific method requires the development of tests designed to falsify the null hypothesis; correct?

A That's one avenue, yes.

Q I took that from your book. Do you agree or disagree with it?

A I agree with it. I'm just saying that's one valid way of looking at it.

Q Sure. An example of a hypothesis -- and I know we're running at noon and the court reporter has been straining under the heat and the time. An



example of a hypothesis is that there's a correlation between, for example, high ice cream sales and summer months.

A Uh-huh.

Q That's a hypothesis; correct?

A It could be, yes.

Q And the expression of the null hypothesis could be stated as there's no difference in sales of ice cream in summer months as there are in winter months. That would be a statement of the null hypothesis; correct?

A It could be, yes.

Q And the objective of testing is designed to disprove the null hypothesis; correct? Not just take information, for example, in our hypothesis the way I stated it. Let's look at ice cream sales in summer months and say, there are a lot of ice cream sales in summer months, without comparing that to ice cream sales in other months; true? That would --

A In your ice cream example.

Q That would not be the scientific method, just to look at ice cream sales in summer. That wouldn't be disproving the null?

A If I followed all that in terms of ice cream, I think -- if I followed it right, that sounds



correct.

Q Okay. So what have you done to take into account in your analysis that PCBs and the environmental risk associated them with the South End is the cause of the exodus of people from the South End of the community and Rush City, as opposed to other factors that over that same period of time could have resulted in people choosing not to live in this particular area?

A That's a fair question, but it is a broad question. So there's a broad answer. You look at -- starting with today, you go there today. There's PCB testing currently that -- relatively recently I was made aware of because it was recently done, where you have PCB levels at an area -- at a level that are -- pose human health risks. And we also see that that corresponds a hundred percent with 273 properties that are vacant today. So start with today. And that's what we have today. Well, that paints a picture -- starts to paint a picture there. Then you go back in time and benchmark that or bookmark it. The other end of the book -- the bookend is the 1970s. Well, 1960s and '70s, where things are amping up. The writing is on the wall. PCBs, which are being produced in Anniston, Alabama and in East St. Louis



is -- there's a growth of an environmental -- environmental awareness in the late '60s and '70s that is translating to concerns over PCBs and their cancer-causing characteristics. The writing is on the wall that concern is growing. And sure enough, you see this concern that the plant is going to be shut down because it's involved in something that is polluting certainly the source site. And since things are being incinerated, that pollution is being spread to the neighbors. And sure enough, you go just right across 500 feet, you start getting into a neighborhood in East St. Louis where these 273 properties were predominantly occupied with houses that are today vacant. And then you look at the principle of substitution, where you are looking at -- from a buyer's perspective at a home with or without environment risks and health risks, that's consistent with the literature that you would avoid those homes. And then you look at other case studies where you have -- you don't have -- well, you have air deposition, whether it be PCBs or dioxins or lead or other number of dangerous constituents. And you typically see exactly what you see here in East St. Louis, where the number of the properties and certainly all of the subject properties are vacant.



MAGNA LEGAL SERVICES

I have read the foregoing deposition transcript and by signing hereafter, subject to any changes I have made, approve same.

Dated: ________________

______________________________
(Signature of Deponent)



DEPOSITION OFFICER'S CERTIFICATE

STATE OF CALIFORNIA )
) SS.
COUNTY OF RIVERSIDE )

I, BROOKE SILVAS, a certified shorthand reporter for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition solemnly stated to testify to the truth, the whole truth, and nothing but the truth;

That the said deposition was taken down by me remotely in stenotype at the time and place therein stated and thereafter reduced to typewriting under my direction, and that the deposition transcript is a true and correct record of the proceedings here held.

I further certify that I am not of counsel or attorney for any of the parties hereto or in any way interested in the event of this cause and that I am not related to any of the parties thereto.

Dated: May 6, 2024

______________________________
BROOKE SILVAS
CSR No. 10988



DEPOSITION OFFICER'S CERTIFICATE

STATE OF CALIFORNIA )
) SS.
COUNTY OF RIVERSIDE )

I, Brooke Silvas, hereby certify:

I am the deposition officer that stenographically recorded the testimony in the foregoing deposition.

Written notice pursuant to Code of Civil Procedure, Section 2025.520(a), having been sent, the deponent took the following action within the allotted period with respect to the transcript of the deposition:

( ) In person, at the office of the deposition officer, made the changes set forth on the original of the transcript. (The parties attending the deposition have been notified of said changes.)

( ) Approved the transcript by signing it.

( ) Refused to approve the transcript by not signing it.

( ) By means of a signed letter, made the changes and approved or refused to approve the transcript as set forth therein. (Said letter has been attached to the original transcript and copies thereof mailed to all parties attending the deposition.)



( ) Failed to approve the transcript within the allotted time period.

Dated: May 6, 2024

______________________________
BROOKE SILVAS
CSR NO. 10988



MAGNA LEGAL SERVICES