## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CITY OF EAST ST. LOUIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     Case No. 3:21-cv-232-DWD |
| | ) |
| MONSANTO CO., PHARMACIA LLC, | ) |
| and SOLUTIA, INC., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendants' Motion to Strike the New Affirmative Opinions in Dr. Randall Bell's January 28, 2025, Rebuttal Report. (Doc. 242). Plaintiff filed a Response in Opposition to, and Defendants filed a Reply in Support of, that Motion to Strike. (Docs. 272 & 284). For the reasons explained below, Defendants' Motion to Strike is **GRANTED**. Dr. Bell's opinions as to loss-of-use damages between 1955 and 1973 are **STRICKEN**.

### I. BACKGROUND

This case was removed from the Circuit Court of St. Clair County. (Doc. 1). On April 24, 2023, Plaintiff filed a Second Amended Complaint for Damages and Abatement (Doc. 129), alleging a public nuisance (Count I), violations of the Municipal Code (§ 50-71 (Nuisance)) (Count II), abatement under the Municipal Code (§§ 50-79 and 62-2) (Count III), a continuing trespass (Count IV), a design defect (Count V), a failure to warn and instruct (Count VI), and negligence (Count VII). (Doc. 129). Count II was dismissed, without prejudice, on March 12, 2024. (Doc. 171). Plaintiff's allegations relate to "the

contamination of vast swaths of its land with polychlorinated biphenyls…manufactured in Defendants' Monsanto Plant in adjacent Sauget, Illinois." (Doc. 129, pg. 1).[1]

Discovery in this case closed on February 7, 2025. (Doc. 222). Dispositive and *Daubert* motions were due by March 5, 2025. (Docs. 239 & 241). On February 19, 2025, however, Defendants filed the now-pending Motion to Strike. (Doc. 242). Plaintiff's Response in Opposition to, and Defendants' Reply in Support of, that Motion to Strike were filed on March 5 and 12, 2025, respectively. (Docs. 272 & 284). Defendants request a limited reopening of discovery as an alternative to striking Dr. Bell's "new" affirmative opinions, but neither party sought an extension of the dispositive motions deadline. (Doc. 242, pg. 13). Indeed, the parties' five Motions for Summary Judgment and thirteen Motions to Exclude under *Daubert*, which are fully briefed and ripe for a consideration, were timely filed on March 5, 2025. (Docs. 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 278, 283). The case is currently scheduled for a Final Pretrial Conference on January 22, 2026, and a Jury Trial on February 9, 2026. (Doc. 334).

## II. ANALYSIS

In their Motion to Strike, Defendants present the following argument:

Defendants…move to strike portions of the January 28, 2025 rebuttal expert report prepared by Dr. Randall Bell that disclose, for the first time, his calculation of alleged loss-of-use damages dating back to December 1, 1955. In his original report, Dr. Bell estimated loss-of-use damages, for each property at issue, going back to 1973. Calculating damages premised on eighteen additional years of alleged injury is a new affirmative opinion introduced at the close of expert discovery, only after the opportunity for

---

[1]Defendants filed a First Amended Counterclaim under 42 U.S.C. § 1983, stating an as-applied due process challenge to the enforcement of §§ 50-79 and 62-2 of the Municipal Code. (Doc. 179, generally).

Defendants to take discovery of the facts that underlie these new opinions and for Defendants' experts to serve reports has passed.

(Doc. 242).

Since Defendants' expert reports did not consider loss-of-use damages from 1955 to 1973, Defendants argue there was nothing for Dr. Bell's "rebuttal" opinion to contradict, impeach, or defuse. (Doc. 242, pgs. 1-2, 4, 9-10). In fact, Defendants suggest Plaintiff instructed Dr. Bell to include the 1955 to 1973 timeframe in a recalculation of the loss-of-use damages for the purposes of providing new supporting evidence for its case-in-chief and compensating for the Court's dismissal, without prejudice, of the municipal ordinance penalties in Count II. (Doc. 242, pgs. 2, 4, 7-9, 11). They also note that ruling was entered on March 12, 2024, and Dr. Bell was deposed on May 3, 2024, so the disclosure of Dr. Bell's recalculation of loss-of-use damages in late-January 2025 was still untimely. (Doc. 242, pgs. 2, 4, 10-12). Plaintiff's delay in disclosing that recalculation of loss-of-use damages, until near the end of discovery, allegedly deprived Defendants of an ability to defend against the claim for damages and gave rise to "a variety of new issues," including the circumstances leading to Plaintiff's acquisition of the parcels, the duration of Plaintiff's ownership of the parcels, the prices (if any) that Plaintiff paid for the parcels, the condition or existence of improvements (if any) on the parcels, the then-existing PCB levels on the parcels, and whether the PCB levels might have required corrective action under regulations existing at the time the parcels were obtained, sold, or given away by Plaintiff. (Doc. 242, pgs. 2, 12). Due to Plaintiff's "blatant violation" of Federal Rule of Civil Procedure 26(a)(2)(D), which Defendants state was neither justified

nor harmless under the above-described circumstances, Defendants seek to strike Dr. Bell's new opinion under Federal Rule of Civil Procedure 37(c) or, alternatively, to have the Court order a limited reopening of discovery. (Docs. 242, pgs. 2-3, 8-9, 11-13).

In Response, Plaintiff argues Defendants' Motion to Strike "relies on the false premise that" Dr. Bell's recalculation of loss-of-use damages, to include the period from 1955 to 1973, is a "new" opinion. (Doc. 272, pg. 1). Plaintiff explains that Dr. Bell "has employed the same 'use effect' theory of damages from the outset of his involvement in this case," and the "only difference" between his initial and rebuttal opinions is "the refinement of the starting year, which is based on new factual information furnished by Monsanto[] and its own expert…confirming PCB emissions commenced earlier than initially stated." (Doc. 272, pgs. 1, 5-7, 11). Plaintiff stresses that the underlying data, resulting in Dr. Bell's recalculation, is derived from Defendants' own disclosures, Defendants "exhaustively deposed" Dr. Bell on the "minor" recalculation on February 7, 2025, and there has been no showing of prejudice, delay to the trial schedule, or bad faith. (Doc. 272, pgs. 1-2, 5-8, 10-15). In sum, Plaintiff argues Dr. Bell could "refine or broaden the basis of the rebuttal analysis"—including with improved methods, new data, or additional logical steps—because it "remains squarely directed at 'the same subject matter identified by another party's expert' and is designed to 'contradict, impeach or defuse' the opposing expert's position." (Doc. 272, pgs. 3, 7-8, 10). That is, the rebuttal analysis was "necessary to overcome or disprove the conclusions of" Defendants' experts' "actual use" approach to damages, and its "focus remain[ed] on the key topics and claims that the opposing side has placed in issue" on "the competing models for real

4

estate damages." (Doc. 272, pgs. 3, 5, 7-8, 10). Plaintiff asserts Dr. Bell's "bottom-line numbers" changed, but his methodology did not; thus, the circumstances "exemplif[y] the kind of refinement courts expect when new facts emerge." (Doc. 272, pgs. 3-7).

In their Reply, Defendants claim "most of the supposedly 'new factual information' " is referenced by Plaintiff in its Second Amended Complaint for Damages and Abatement, which proves that factual information is not actually new. (Doc. 284, pgs. 1, 4-5). Other allegedly new factual information came into existence in August 2024, which was before Dr. Bell's first rebuttal report. (Doc. 284, pg. 4). However, even if Plaintiff can "shoehorn two additional decades of damages into Dr. Bell's critique of 'actual use,' " despite Defendants' experts not considering that timeframe, Defendants maintain Dr. Bell's rebuttal opinions would still be invalid because their expert's "actual use" opinion has not changed since the initial report on July 9, 2024. (Doc. 284, pg. 2 n. 1). And, importantly, Defendants note "Dr. Bell did not submit a formal rebuttal report regarding [their expert]'s [initial] opinion," and "nothing in [their expert]'s supplemental report…changed [the] actual use damages methodology." (Doc. 284, pgs. 2-3 n. 1). Finally, Defendants suggest Dr. Bell's deposition on February 7, 2025, failed to resolve the issues arising from his recalculation of loss-of-use damages, so reopening discovery would still be necessary if his new opinion were not stricken. (Doc. 284, pgs. 1-2, 5).

Now, under Rule 26(a)(2)(D), "[a] party must make the[] disclosures [of expert testimony] at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). In the absence of a stipulation or a court order, "the disclosures must be made: (i) at least 90 days before the date set for trial or for the case to be ready for trial;

or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject
matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the
other party's disclosure." *Id*. In the context of Rule 26(a)(2)(D)(ii), which is specifically at
issue in this case, it is worth emphasizing that "[t]he proper function of rebuttal evidence
is 'to contradict, impeach or defuse the impact of the evidence offered by an adverse
party.' " *U.S. v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001) (quoting *U.S. v. Papia,* 560 F.2d
827, 848 (7th Cir. 1977)). As a result, "[t]estimony offered only as additional support to an
argument made in a case in chief, if not offered 'to contradict, impeach or defuse the
impact of the evidence offered by an adverse party,' is improper on rebuttal." *Peals v.
Terre Haute Police Dept.*, 535 F.3d 621, 630 (7th Cir. 2008) (citing *Grintjes*, 237 F.3d at 879).

Importantly, though, "the measure of proper rebuttal is not whether it offers
support for arguments that could have been raised in the case-in-chief, but whether it
directly refutes arguments offered by the opposition." *Africano v. Atrium Med. Corp.*, No.
17-cv-7238, 2019 WL 5085338, *2 (N.D. Ill. Oct. 10, 2019) (citing *Pantaleo v. Hayes*, No. 8-
cv-6419, 2011 WL 2517265, *1 (N.D. Ill. June 23, 2011)); *accord O'Connor v. Ford Motor Co.*,
No. 19-cv-5045, 2025 WL 790240, *14 (N.D. Ill. March 12, 2025). For this reason, "the mere
fact that opinions offered in a rebuttal report touch upon the same subjects covered in an
initial expert report does not require that the rebuttal report be stricken." *Green v. Kubota
Tractor Corp.*, No. 9-cv-7290, 2012 WL 1416465, *5 (N.D. Ill. April 24, 2012); *accord Cage v.
City of Chicago*, No. 9-cv-3078, 2012 WL 5557410, *5 (N.D. Ill. Nov. 14, 2012). In fact, a
rebuttal report may cite new evidence and data if offered to directly contradict or rebut
the opposing party's expert. *Sonrai Sys. v. Romano*, No. 16-cv-3371, 2021 WL 1088314, *6

(N.D. Ill. March 22, 2021) (quoting *Withrow v. Spears,* 967 F. Supp. 2d 982, 1002 (D. Del. 2013); *Ernst v. City of Chicago,* No. 8-cv-4370, 2013 WL 4804837, *2 (N.D. Ill. Sept. 9, 2013). When determining whether a rebuttal report contains appropriate expert evidence, the Court focuses on whether the opinions rebut the same subject matter as the other party's initial expert report rather than on the sheer similarity between the initial and rebuttal reports. *O'Connor*, 2025 WL 790240 at *14 (quoting *Cage*, 2012 WL 5557410 at *5).

In *McCann v. Cullinan*, Magistrate Judge Iain D. Johnston, before his confirmation as a District Judge, provided the following illustration of the above-discussed principles:

> The sequence of disclosures of experts' opinions envisions a winnowing process, not an expansion. By way of example, a plaintiff's initial (sometimes referred to as "affirmative") expert report may identify opinions #1, #2, and #3. Subsequently, a defendant's expert report (sometimes referred to as "response reports") may rebut opinions #1, #2, and #3, but also add opinions #4, #5, and #6. That defendant's expert report is a proper rebuttal in that it contradicts the first three opinions. But that defendant's expert report may also be an appropriate initial expert report by presenting opinions #4, #5, and #6. Under these circumstances, Rule 26(a)(2)(D)(ii) envisions that the plaintiff be given the opportunity to provide – if it chooses – a rebuttal expert to contradict opinions #4, #5, and #6. But what is not permissible is allowing plaintiff to now—by way of a "rebuttal"—offer opinions #7, #8, and #9.

*See* No. 11-cv-50125, 2016 WL 4593835, *3 (N.D. Ill. Sept. 2, 2016), *Report and Recommendation adopted sub nom.*, 2016 WL 5807922 (N.D. Ill. Oct. 5, 2016).

Further, under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c); *see also* Advisory Committee Notes to the 1993 Amendment ("Limiting the automatic sanction to violations

7

'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations: *e.g.,* the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures."). Rule 37(c) is an "automatic" or "self-executing sanction," so it is not necessary for a party to file a motion for sanctions under Rule 26(a)(2)(A). Fed. R. Civ. P. 37(c), Advisory Committee Notes to the 1993 Amendment. It is also not necessary for the Court to make explicit findings on the existence of a substantial justification or the harmlessness of a party's failure to disclose; however, the following factors guide its discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability to cure the prejudice; (3) the likelihood of disrupting the trial; and (4) the bad faith or willfulness involved in failing to disclose the evidence sooner. *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003) (citing *Bronk v. Ineichen,* 54 F.3d 425, 428 (7th Cir. 1995); *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999)).

Here, while the parties' experts obviously disagree on the proper method for calculating loss-of-use damages, Plaintiff cannot escape the undisputed fact that Defendants' experts offered *no opinion* on the timeframe between 1955 and 1973. Therefore, even putting aside questions about Plaintiff's motivations when requesting that Dr. Bell recalculate his loss-of-use damages, including the fair suggestion that it was related to the Court's dismissal of Count II, that recalculation clearly was not "intended *solely*" to contradict, rebut, impeach, or defuse the impact of *any* "*evidence* on the same

8

subject matter identified" by Defendants' experts, as is "the proper function of rebuttal evidence." *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (Emphasis added); *Grintjes*, 237 F.3d at 879. Again, "the measure of proper rebuttal is…whether it directly refutes arguments offered by the opposition," and there was no evidence offered by Defendants' experts on loss-of-use damages between 1955 and 1973. *See Africano*, 2019 WL 5085338 at *2; *O'Connor*, 2025 WL 790240 at *14. Put another way, the parties' experts' opinions may have touched upon the same subject matter in the sense that they differ on the appropriate method for calculating loss-of-use damages, but Dr. Bell's rebuttal report cites new evidence and data in support of what is a new opinion, from an entirely different timeframe, that *does not* directly contradict or rebut Defendants' experts. *See Green*, 2012 WL 1416465 at *5; *Cage*, 2012 WL 5557410 at *5; *Sonrai Sys.*, 2021 WL 1088314 at *6; *see also Raab v. Wendel*, No. 16-cv-1396, 2019 WL 13155219, *3 (E.D. Wisc. Nov. 14, 2019) ("A rebuttal report is *not* a supplemental report used to supplement opinions or provide additional information that should have been disclosed in the original report.") (Emphasis in original); *Ernst*, 2013 WL 4804837 at *1 ("Experts must limit their reply reports to the scope of the issues raised in the rebuttal reports. The reply report is not the appropriate vehicle for presenting new opinions."); *Nipponkoa Ins. Co., Ltd. (U.S. Branch) v. NDK Crystal, Inc.*, No. 11-cv-S0205, 2014 WL 13117503, *2 (N.D. Ill. April 15, 2014) ("[T]he rebuttal testimony must explain, repel, counteract, or disprove evidence of the adverse party; courts will not allow parties to use rebuttal expert testimony to advance new arguments or new evidence."). It stands to reason, then, that Dr. Bell's recalculation, which was directed by Plaintiff, was intended only to bolster the claim for damages made in Plaintiff's case-in-chief without Defendants

having a full and fair opportunity to discover facts about that claim for damages. *See Peals*, 535 F.3d at 630. This constitutes improper rebuttal under the above-discussed authorities. *See id.*; *O'Connor*, 2025 WL 790240 at *14; *McCann*, 2016 WL 4593835 at *3.

In addition, the Court finds Plaintiff's failure to provide information in a manner consistent with Rule 26(a) was not substantially justified or harmless, resulting in Plaintiff's inability to use that information to supply evidence at trial. *See* Fed. R. Civ. P. 37(c). For one thing, the noncompliance at issue—namely, the presentation of improper rebuttal evidence—is wholly unlike the "variety of situations" contemplated by the Advisory Committee Notes to the 1993 Amendment to Rule 37(c). Further, even though Plaintiff argues it acquired "new factual information furnished by Monsanto[] and its own expert" in August 2024 to prompt Dr. Bell's recalculation of loss-of-use damages, the record still suggests the recalculation could have been disclosed sooner than January 28, 2025, in light of the scheduling and discovery orders and the allegations in the Second Amended Complaint for Damages and Abatement, filed on April 24, 2023, dating back to the 1950s. (Docs. 129, pgs. 10-12; 133; 167; 222; 272, pgs. 5-7, 11; 284, pgs. 1, 4-5).

Nevertheless, the presentation of the improper rebuttal evidence on January 28, 2025, which was only 10 days before the close of discovery on February 7, 2025, undoubtedly hindered Defendants' ability to fully conduct discovery on the matter, notwithstanding their ability to depose Dr. Bell on February 7, 2025. *See David*, 324 F.3d at 857. And, despite the Court's willingness throughout the case to allow the parties all the time necessary for the completion of discovery, no party requested an extension or stay of the scheduling and discovery deadlines to cure the issue. *See id*. As the current

circumstances reveal, both sides had an incentive to do so yet no party acted. Instead, the issue was presented to the Court for the first time on February 19, 2025, with the filing of the instant Motion by Defendants. Even then, however, while the instant Motion was pending but not yet ripe, each side proceeded to file timely dispositive and *Daubert* motions on March 5, 2025. As a result, it cannot seriously be doubted that the trial schedule, and the broader procedural posture of the case, would be disrupted if the Court stopped short of striking the improper rebuttal offered through Dr. Bell. *See id*. For these reasons, Defendants' Motion to Strike is **GRANTED**. Dr. Bell's opinions as to loss-of-use damages between 1955 and 1973 are **STRICKEN**. *See Cage*, 2012 WL 5557410 at *2 ("If parts of an expert's testimony constitutes improper bolstering while other parts fairly respond to the conclusions of the opposing party's experts, the appropriate course is to limit the proposed rebuttal expert's testimony rather than striking it altogether.").

### III. CONCLUSION

For the reasons explained above, Defendants' Motion to Strike is **GRANTED**. Dr. Bell's opinions as to loss-of-use damages between 1955 and 1973 are **STRICKEN**.

**SO ORDERED.**

Dated: September 16, 2025

_____
DAVID W. DUGAN
United States District Judge