**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CITY OF EAST ST. LOUIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:21-cv-232-DWD** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PHARMACIA LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MOTION *IN LIMINE* NO. 16**
**TO EXCLUDE EVIDENCE, ARGUMENT, OR REFERENCE**
**TO CERTAIN BOOKS, ARTICLES, AND OTHER ADVOCACY PUBLICATIONS**

In this omnibus motion, Defendants hereby move *in limine* to exclude any evidence, argument, or reference to the following unfairly prejudicial and inadmissible publications: (1) an article entitled The Desolate Year published in 1962 in *Monsanto Magazine* discussing DDT-based pesticides ("The Desolate Year"); (2) a report prepared by the office of Senator Edward J. Markey (D-Mass.) titled The ABCs of PCBs: A Toxic Threat to America's Schools (the "Markey Report"); (3) a book authored by David Michaels titled *Doubt Is Their Product: How Industry's Assault on Science Threatens Your Health* ("*Doubt Is Their Product*"); (4) a book by advocate Ellen Griffith Spears entitled *Baptized in PCBs: Race, Pollution, and Justice in an All-American Town* ("*Baptized in PCBs*"); and (5) PCB-related pamphlets published by the American Council on Science and Health ("ACSH") (collectively, the "Publications").

The Publications are inadmissible hearsay. Indeed, some of them contain hearsay within hearsay. They are also unfairly prejudicial and would invite the jury to decide this case based on

emotion rather than admissible evidence.[1] These second-hand, sensationalized Publications are not scientific or verified factual evidence, and they have no relevance to the issues in this case.

Plaintiff should also be prohibited from offering evidence or argument about the ACSH Pamphlets, including arguing that Monsanto had anything to do with the ACSH Pamphlets or that Monsanto participated in some sort of disinformation campaign about PCBs through ACSH. Such arguments are both unsupported and irrelevant to this case, as well as unfairly prejudicial.

## LEGAL STANDARD

As a general principle, "relevant evidence is admissible and irrelevant evidence is not." *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (citing Fed. R. Evid. 402) (citation modified). To be relevant, evidence must be both *probative*, having "any tendency to make a fact more or less probable than it would be without the evidence," and *material*, meaning that the fact is "of consequence in determining the action." *Id.* (citation omitted). But not all relevant evidence is admissible. Even relevant evidence is properly excluded where its "probative value is substantially outweighed by a danger of unfair prejudice," *i.e.*, "it will induce the jury to decide the case on an improper basis." *Davies v. Benbenek*, 836 F.3d 887, 890 (7th Cir. 2016) (citation modified).

Relevant evidence must also be excluded if it is hearsay and not subject to any exception to the hearsay rule. *Thomas v. Walmart Inc.*, 2025 WL 2696344, at *3 (N.D. Ill. Sept. 22, 2025); Fed. R. Evid. 802 (same). "Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Breland*, 356 F.3d 787, 792 (7th Cir. 2004) (citation omitted). Double hearsay, or hearsay-within-

[1] Defendants dispute that any claims in this action should be tried to a jury, as detailed in their pending Motion for Judicial Determination of Plaintiff's Demand for Jury Trial. *See* Docs. 357, 362.

hearsay, is inadmissible unless "each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805; *see United States v. Severson*, 49 F.3d 268, 271 (7th Cir. 1995) ("[B]oth levels of hearsay must come within exceptions to the hearsay rule for hearsay within hearsay to be admissible.").

## ARGUMENT

### I. The Publications Are All Inadmissible Hearsay

As a preliminary matter, the Court should exclude each of the Publications because they constitute hearsay for which no exception applies. Statements by authors, politicians, and other creators of these Publications are out-of-court statements being offered to prove the truth of the matter asserted. Fed. R. Evid. 801. This is textbook inadmissible hearsay. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (excluding newspaper and magazine articles as hearsay where, when "not being attested are considered less reliable than affidavits or depositions"); *Flowers v. Wray*, 511 F. App'x 576, 580 (7th Cir. 2013) (noting "newspaper articles offered for the truth of what they report are inadmissible hearsay").

Moreover, not only are the Publications themselves hearsay, but they also include many quotations and characterizations of statements from individuals other than the author, making them double hearsay. *See*, *e.g.*, Exhibit 1 (10/2016 Markey Report) at 14 (recounting newspaper articles and vaguely described reports made by individuals to unknown persons or organizations about "unusual health issues" the document implies were caused by PCBs). In such cases, "both levels of hearsay must come within exceptions to the hearsay rule for hearsay within hearsay to be admissible." *Severson*, 49 F.3d at 271. Here, there is no applicable hearsay exception for the

Publications themselves, much less the hearsay statements made therein. Thus, the Court should exclude the Publications from evidence as inadmissible hearsay (or double hearsay).[2]

**II. Each of the Publications Is Also Irrelevant and Unfairly Prejudicial.**

A. <u>"The Desolate Year"</u>

The Desolate Year is a work of fiction that was published in 1962 in Monsanto Magazine. *See* Exhibit 2 (*The Desolate Year*, Monsanto Magazine (October 1962)). It hypothesizes about certain adverse environmental impacts that could result if DDT-based pesticides were banned in the United States. For example, the six-page work of fiction describes the proliferation of insects following the ban of pesticides, stating:

> Quietly, then, the desolate year began. Not many people seemed aware of the danger. After all, in the winter, hardly a housefly was about. What could a few bugs do, here and there? How could the good life depend upon something so seemingly trivial as a bug spray? Where *were* the bugs anyway?
>
> The bugs were everywhere. Unseen. Unheard. Unbelievably universal. On or under every square foot of land, every square yard, every acre, and country, and state and region in the entire sweep of the United States. In every home and barn

[2] Although at least one ACSH Pamphlet and "The Desolate Year" were published before the January 1, 1998 threshold for the ancient documents exception to the hearsay rule, *see* Fed. R. Evid. 803(16), Plaintiffs cannot avoid the hearsay rule by arguing that the testimony is admissible as an ancient document. There is a more specific exception to the hearsay rule for learned treatises, periodicals and pamphlets, which these publications do not meet. The learned treatise exception requires that such publications be: (1) relied upon by an expert witness during direct examination and (2) established as a reliable authority by an expert or by judicial notice. *See* Fed. R. Evid. 803(18). These publications do not satisfy this standard, and this more specific exception governs their admissibility. *See Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 1986 WL 15580, at *6 (D. Del. May 19, 1986) (applying to pre-1998 testimony the more specific exception for former testimony under 803(8) rather than the ancient documents exception under 803(16) and explaining "the Court rejects plaintiff's attempt to force the … material into the hearsay exceptions for public records or ancient documents. Such a broad interpretation of the parameters of rules 803(8) and 803(16) would thwart the purpose of the Federal Rules of Evidence in limiting the admissibility of former testimony to only those cases where the predecessor in interest had a similar motive to develop the prior testimony."); *Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir. 2002) (holding that specific rules of evidence as to when prior judgments can be admitted found in Rules 803(22) and 803(23) govern over the more general exception for public records under 803(8)).

> and apartment house and chicken coop, and in their timbers and foundations and furnishings. Beneath the ground, beneath the waters, on and in limbs and twigs and stalks, under rocks, inside trees and animals and other insects—and yes, inside man.

*Id.* at 4. As noted in Defendants' separate motion in limine to exclude references to non-PCB products, this case is about PCBs and not DDT. DDT has no plausible relationship to any claim based on alleged contamination with PCBs. But even if DDT were at issue, this fictionalized musing would not be relevant. Any reference to "The Desolate Year" should therefore be excluded as irrelevant under Federal Rule of Evidence 402 and unduly prejudicial under Federal Rule of Evidence 403.

B. The Markey Report

The Markey Report is a document prepared by the office of Senator Edward J. Markey (D-Mass.) titled "The ABCs of PCBs: A Toxic Threat to America's Schools" (the "Markey Report"). *See generally* Exhibit 1 (Markey Report). It is not a formal report of findings by any congressional committee, body, or government agency. Instead, it is one politician's platform for communicating a political perspective on PCBs existing in schools across the country. It is irrelevant, unfairly prejudicial, and would confuse and mislead the jury.

Even if the Markey Report were not full of hearsay within hearsay, it would not be relevant to this action. The Markey Report's content has no relevance to the claims at issue in this case and is certain to confuse the jury. It is about PCBs in schools and whether they pose a health risk in that setting. *See* Exhibit 1 (Markey Report) at 5. This case is not about PCBs in schools or personal injuries, but instead about the extent to which PCBs migrated from an industrial site to surrounding property and what that did or did not do to property values. The Markey Report is, thus, largely irrelevant to the issues in this action. And even if the report contains some general information about PCBs that could be marginally relevant, Plaintiffs can and should present that information

through other, more direct evidence, not a political advocacy piece. *See*, *e.g.*, *Bengtsson v. Sunnyworld Int'l, Inc.*, 469 P.3d 339, 349 (Wash. Ct. App. 2020) (excluding evidence that would create unnecessary "side" issues).

The Markey Report is also inflammatory, including statements such as "[t]his report demonstrates that children in schools across the country may be unknowingly exposed to cancer causing PCBs." Exhibit 1 (Markey Report) at 2. It also refers to other litigation involving the Defendants, including how some of those lawsuits were resolved. *Id.* at 15, 21. Even if the Markey Report did contain some general information about PCBs that was marginally relevant, these kinds of statements are clearly unfairly prejudicial.

There is also a particular risk here that the jury may mistakenly credit the assertions in the Markey Report—which has none of the *scientific* indicia of reliability such as peer review that is required of expert testimony on such technical topics—merely because it is signed by a prominent politician and may look to a layperson like some sort of official document. That would unfairly prejudice Defendants. Thus, the Court should exclude the Markey Report.

C. Advocacy Publications

Defendants anticipate that Plaintiff may attempt to introduce at trial certain references or excerpts from the books *Doubt Is Their Product* by David Michaels, *Baptized in PCBs* by Ellen Griffith Spears, or other non-authoritative, anti-industry publications. Such books are irrelevant to any issue in this case and should be excluded.

First, the facts of consequence in this case are those that relate to whether Defendants contaminated vacant parcels in East St. Louis with PCBs. Neither book addresses that issue. *Doubt Is Their Product* is described by its publisher as an account of "how the tobacco industry's duplicitous tactics spawned a multimillion dollar industry that is dismantling public health safeguards," and it purports to address how "industry executives" (by which the author seems to

refer to a variety of makers of "toxic materials") "have hired unscrupulous scientists and lobbyists to dispute scientific evidence about health risks." Exhibit 3 (*Doubt is Their Product*). *Baptized in PCBs* is described as an account of "Anniston[, Alabama]'s battles for environmental justice, exposing how systemic racial and class inequalities reinforced during the Jim Crow era played out in these intense contemporary social movements." Exhibit 4 (*Baptized in PCBs*). These sensationalized and unverified Publications do not make any element or claim in this case any more or less likely, nor do they provide any reliable source of support for Plaintiff's claims.

Further, references to these books should be excluded as prejudicial, confusing, and a waste of this Court's and the jury's time. This evidence would serve only to attack Defendants' reputation and to prompt the jury to decide this case on an improper basis. *Baptized in PCBs* includes extensive discussion of litigation relating to Monsanto's Anniston plant – including comments about the testimony of some witnesses jurors will hear from in this litigation and about Monsanto's conduct during the litigation. Referencing publications designed to present a captivating story – and in the case of *Doubt is Their Product*, lump Defendants in with "duplicitous" tobacco companies and other demonized organizations – would introduce sensationalized claims of profits and revenues and unverified accounts regarding PCBs and other products. This evidence would serve only to inflame the passions of the jury and distract jurors from their task: to provide a rational, dispassionate evaluation of the scientific and factual evidence presented at this trial regarding the alleged contamination of vacant parcels in East St. Louis. Further, if this evidence were admitted, Defendants would be forced to introduce evidence to rebut and correct the information presented in these publications, which would be an unnecessary waste of the jury's and this Court's time.

D. The ACSH Pamphlet and Evidence and Argument about It

The ACSH Pamphlets and evidence relating to ACSH are similarly irrelevant. ACSH is a "pro-science consumer advocacy organization" and a "501(c)(3) nonprofit."[3] It describes itself as having "a long and successful track record" and touts, "We have long warned the public of the dangers of smoking, and we were the driving force behind seatbelt laws that save children."[4] The ACSH has published several different pamphlets addressing PCBs (the "ACSH Pamphlets") over the years.

Defendants anticipate based on prior PCB trials that Plaintiff may attempt to introduce the ACSH Pamphlets or other materials published by ACSH and also to argue that during and after Defendants' manufacture of PCBs, Monsanto participated in some sort of disinformation campaign through ACSH to deceive or mislead their customers and the public about the purported health effects associated with PCBs. Plaintiff has provided no evidence that anyone in East St. Louis has ever read, heard, or relied on any statements by ACSH with respect to PCB-containing products in the City. Nor is there any evidence that Defendants influenced any of the materials published by ACSH.

Defendants also anticipate that Plaintiff may seek to present this evidence as a collateral issue to divert the jury's attention away from the real issues in this case: whether Defendants contaminated vacant parcels in the City of East St. Louis with PCBs and, if so, what damage this caused to the City. Consequently, any argument or suggestion that Defendants engaged in a disinformation campaign and/or donated to, or were affiliated with ACSH would confuse the issues, mislead the jury, and unduly prejudice Defendants. Any evidence regarding the ACSH or

---

[3] *See* About American Council on Science and Health, *American Council on Science and Health*, https://www.acsh.org/about-acsh (last accessed November 3, 2025).

[4] *Id.*

its publications on PCBs should thus be excluded as irrelevant under Federal Rule of Evidence 402 and unduly prejudicial under Federal Rule of Evidence 403.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude these Publications and any evidence or arguments regarding ACSH.

Dated: February 24, 2026

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Ann E. Blackwell*
Ann E. Blackwell
Darci F. Madden
211 N. Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000 (telephone)
(314) 259-2020 (fax)
liz.blackwell@bclplaw.com
darci.madden@bclplaw.com

**KING & SPALDING LLP**

Tracie J. Renfroe
Mitchell B. Bryant
1100 Louisiana Street
Suite 4100
Houston, TX 77002
(713) 751-3200 (telephone)
trenfroe@kslaw.com
mbbryant@kslaw.com

**GOLDMAN ISMAIL TOMASELLI**

Emma Ross
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
(312) 681-6000 (telephone)
eross@goldmanismail.com

**SHOOK, HARDY & BACON L.L.P.**

Abigail Fears
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
(314) 690-0200 (telephone)
afears@shb.com

**McDERMOTT WILL & SCHULTE LLP**

Anthony Upshaw
Asra A. Chatham
333 SE 2nd Ave., Ste. 4500
Miami, FL 33131
(305) 358-3500 (telephone)
aupshaw@mwe.com
achatham@mwe.com

*Attorneys for Defendants Monsanto Company and Pharmacia LLC*

**LATHROP GPM LLP**

Charles R. Hobbs II
The Plaza in Clayton
190 Carondelet Plaza, Suite 1400
St. Louis, MO 63105
(314) 613-2800 (telephone)
Ron.Hobbs@lathropgpm.com

*Attorney for Defendant Solutia Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 24th day of February 2026, the foregoing was filed using the Court's CM/ECF system, which will serve notice upon all counsel of record.

*/s/ Ann E. Blackwell*
Ann E. Blackwell