**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CITY OF EAST ST. LOUIS,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | Case No. 3:21-cv-00232-DWD |
| **MONSANTO COMPANY, et. al.,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE AND MOTION TO DENY DEFENDANTS' REQUEST FOR COSTS**

The City of East St. Louis, Illinois ("the City"), through its undersigned counsel, submits its Response and Motion to Deny Defendants' ("Monsanto") Requests for Costs, and in support states as follows:

**BACKGROUND**

The City incorporates by reference as if fully set forth herein its simultaneously filed Objections and Response to Defendants' Request for Costs.

On February 27, 2026, this Court granted Defendants' Motion for Summary Judgment "based on statute of limitations and repose and the *nullum tempus* doctrine." (ECF 427, p.2). The Court held that the *nullum tempus* doctrine did not apply to this case, (ECF 427, p. 27), and that all counts were time-barred. (ECF 427, p. 37).

On March 27, 2026, the Defendants filed their non-verified Request for Costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and Southern District of Illinois Local Rule 54.2. (ECF 435). All told, Defendants seek a total of $321,500.02 in what they term their "Bill of Costs." (ECF

435-2, Exhibit B, p. 2, "Bill of Costs"). Of this amount, $200 is for "fees for service of summons and subpoena." The Defendants also seek $93,022.52 in "fees for printed or electronically recorded transcripts necessarily obtained for use in the case," and $228,277.50 for "other costs," which the City understands is for alleged entitlement to retained expert fees for deposition preparation and attendance. (ECF 435-2).

**THE LAW**

**Federal Rule of Civil Procedure 54(d)(1)**

Rule 54(d)(1) provides that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." *See* Fed.R.Civ.P. 54(d)(1). "[A] district court may not tax costs under Rule 54(d) unless a federal statute authorizes an award of those costs." *Republic Tobacco Co. v. North Atl. Trading Co., Inc.,* 481 F.3d 442, 447 (7th Cir.2007). The list of recoverable costs pursuant to 28 U.S.C. § 1920 includes: (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court-appointed experts and interpreters.[1] *See Id.* Rule 54(d)(1) "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *LG Electronics U.S.A., Inc. v. Whirlpool Corporation*, No. 08-cv-0242, 2011 WL 5008425, at *1 (N.D. Ill. Oct. 20, 2011); *Rivera v. City of Chicago,* 469 F.3d 631, 634 (7th Cir. 2006).

A prevailing party is entitled to recover costs only if: (1) the expenses are allowable under § 1920 and (2) the expenses are reasonable both in amount and necessity to the litigation. *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995). Costs incurred merely for the

[1] In addition, Southern District Local Rule 54.2 (Taxation of Costs) provides that "costs shall be taxed in accordance with Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920, consistent with those statutory costs referenced above."

convenience of the prevailing party may not be recovered. *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993). The prevailing party has the "burden of demonstrating the amount of its recoverable costs." *Telular Corp. v. Mentor Graphics Corp.*, No. 01 C 431, 2006 WL 1722375, at *1 (N.D. Ill. June 16, 2006).

**Federal Rule of Civil Procedure 26(b)(4)(E)**

Fed. R. Civ. P. 26(b)(4)(E) provides that: "Unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)."[2]

**"Indigency" Under Rules 54(b)(1) and 26(b)(4)(E)**

The Seventh Circuit recognizes "only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order if the losing party is indigent." *Mother & Father v. Cassidy,* 338 F.3d 704, 708 (7th Cir.2003); *Rivera v. City of Chicago,* 469 F.3d 631, 634-35 (7th Cir. 2006). Taxing costs against the non-prevailing party requires two inquiries: (1) whether the cost is recoverable; and (2) whether the amount assessed is reasonable. *See Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir.2000).

In *Rivera*, the Seventh Circuit commented at length on this issue:

> Since 1983, this Court has held that it is "within the discretion of the district court to consider a plaintiff's indigency in denying costs under Rule 54(d)." *Badillo v. Cent. Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir.1983); *see also Mother & Father v. Cassidy,* 338 F.3d 704, 708 (7th Cir.2003); *Reed v. Int'l Union,* 945 F.2d 198, 204 (7th Cir.1991); *Congregation of Passion v. Touche, Ross & Co.,* 854 F.2d 219, 222 (7th Cir.1988). Though the City asserts that we adopted the exception without analysis and without relying on any prior precedent, *Badillo* was a case

[2] Since ultimately the City is moving for denial of the Monsanto Request for Costs based on its "indigent" status, the City will argue that status under both Rules.

> of first impression for this Court, and that is why no precedent was cited in the opinion. In that case we relied on the unambiguous language of Rule 54(d), and held that the power to award costs is a matter within the sound discretion of the district court. *Badillo,* 717 F.2d at 1165.

*Rivera*, 469 F.3d at 634 (7th Cir. 2006),

The Seventh Circuit stated that the trial court must make a threshold finding that the losing party is incapable of paying the court-imposed costs at this time or in the future, citing *McGill v. Faulkner,* 18 F.3d 456, 460 (7th Cir.1994). The burden is on the losing party to provide the district court with "sufficient documentation to support such a finding," citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1039 (11th Cir.2000). This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses. Requiring a non-prevailing party to provide information about both income/assets and expenses will ensure that district courts have clear proof of the non-prevailing party's dire financial circumstances. *Id.* at 635.

The Seventh Circuit continued: "Second, the district court should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs. No one factor is determinative, but the district court should provide an explanation for its decision to award or deny costs." *Id.* at 635-36. *See Chapman,* 229 F.3d at 1039 (holding that a district court must have and state a sound basis for doing so). *Id.* at 635-36.

On the other hand, most courts have found that "manifest injustice" under Rule 26(b)(4)(E) either exists when (1) a party is indigent or (2) requiring a party to pay an expert's fee would create an undue hardship. *Bradford v. Obaisi*, No. 16-cv-8112, 2019 WL 4166855, at *2 (N.D. Ill. Sept. 3, 2019), citing *Edin v. The Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 547 (D. Ariz. 1999); *see*

*also Harris v. San Jose Mercury News, Inc.*, 235 F.R.D. 471, 473 (N.D. Cal. 2006). The ordinary meaning of 'indigent' in this context includes a party which lacks the means to pay costs today or in the future. *Bradford*, 2019 WL 4166855, at *2-*3. And this Court has noted that after reviewing the Advisory Comments to Fed. R. Civ. P. 16, which also uses the "manifest injustice" qualifier, "it appears that the Advisory Committee intended "manifest injustice" to encompass traditional notions of trial court discretion." *Crawford v. Arizona Beverages USA, LLC*, No. 22-cv-220, 2025 WL 658100, at *11 (S.D. Ill. Feb. 25, 2025).

## ARGUMENT

### I. THE CITY'S "INDIGENT[3]" STATUS IS GROUNDS FOR DENIAL OF MONSANTO'S REQUEST FOR COSTS AND FEES UNDER FEDERAL RULES 54(d)(1) AND 26(b)(4)(E)

#### A. <u>The Present Financial Reality of East St. Louis, Illinois</u>

The City attaches Exhibit A, the Declaration of its City Manager, Robert Betts, in support of its Response and Motion. A summary of the City's 2025 and 2026 budgets is attached to the Betts Declaration and discussed therein and below. Betts first explained that under no circumstances could the City have litigated this lawsuit without engaging outside counsel on a contingency fee basis and with outside counsel assuming all litigation expenses. He then described the historical financial dysfunction of the City, such that the Illinois legislature enacted the Illinois Distressed City Law of 1990, 65 ILCS 5/8-12, in large part to monitor the budgetary processes of the City with an independent outside "financial advisory authority.[4]" However, even when that

---

[3] While the City acknowledges that the word "indigency" is usually used in the context of individuals, it maintains that the functional equivalent for a municipality is typically discussed as being a "financially distressed city" as discussed herein.

[4] In *City of East St. Louis v. East St. Louis Financial Advisory Authority,* 188 Ill.2d 474, 243 Ill.Dec. 60, 722 N.E.2d 1129 (1999), the City designated itself a financially distressed city. Under the Financially Distressed City Law (65 ILCS 5/8–12–1 *et seq.*), the City was required to submit

oversight ended in 2013, and up through the present, the City has continued to be in financial distress. (Exhibit A, pp. 2-3).

Mr. Betts discussed the City's 2026 budget, which faces a massive $8.01 million deficit. The General Fund, out of which core services are paid, will increase its deficit from $3.58 million in 2025 to $7.6 million in 2026, a 112% increase. While anticipated General Fund revenues remain essentially static, the anticipated expenses will increase approximately $3 million year over year. The City also faces approximately $50 million in unfunded obligations to its Police and Fire Department Pension Funds and is contractually bound to continue to award workers in both Departments competitive raises commensurate with other regional departments, despite the fact it has no funds to do so. (Exhibit A, pp. 2-3).

As this Court is aware, the City is also a defendant in a Clean Water Act lawsuit, *United States of America v. The City of East St. Louis, Illinois*, Cause No.: 3:24-cv-2592. The City has acknowledged liability for the various alleged violations, most of which arise out of the very antiquated City sewer system, which is approximately 120 years old, is partly lined with brick, and which combines storm water sewage with raw sewage. The City has acknowledged liability[5] and is doing its best to find federal and state grants which will help defray some of the anticipated $88 million it will take just to get within federal and state regulatory compliance. However, the City is discovering that some of the federal or state grants potentially available are "matching" grants, meaning the City would be obligated to pay a significant portion of the grant. For one example, Mr. Betts pointed out that even a potential $3.5 million grant, which is but a small fraction of the

its annual budget to a financial advisory authority for approval. To this date the City is the only Illinois municipality to be given the "financially distressed city" designation since the Act was passed in 1990.

[5] *United States of America, et al. v. The City of East St. Louis, Illinois*, Cause No.: 3:24-cv-2592, ECF 127.

anticipated cost for the City, would require an $836,070.00 City payment, funds it does not have. (Exhibit A, pp. 3-4).

In addition, the IEPA has mandated that the City make progress towards separating its storm water sewer system from its sewer water system, which is an estimated $120 million non-funded City obligation on the horizon. Although the City has a modest allocation to its Public Works Department, which is generally responsible for the City sewer system, that allocation is a pittance compared to the USEPA and IEPA mandated expenses referenced above. Currently, there are no known current or future revenue sources to meet these anticipated expenses. (Exhibit A, pp. 3-5).

Any forced payment to Monsanto regarding its Request for Costs will require a reduction of City services including police, fire, sewer maintenance, power bills for street lighting and traffic signals, and maintenance of streets and storm water infrastructure. (Exhibit A, p. 5).

**B. East St. Louis Meets the Definition of "Indigency" or its Functional Equivalent, a "Financially Distressed City," and Thus Monsanto's Request for Costs Should Be Denied.**

The City respectfully represents that it has established the municipality functional equivalent of "indigency" under the exception to the presumption of awarding taxable costs to a prevailing party under Fed. R. Civ. P. 54(d)(1). Moreover, that same status demonstrates that it would constitute "manifest injustice" under Fed. R. Civ. P. 24(b)(4)(E) to award expert witness deposition fees to Monsanto. *Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006); *McGill v. Faulkner,* 18 F.3d 456, 460 (7th Cir. 1990). The City has provided sworn testimony and documentation to prove that status, including the last two years of its budgets which itemize past and anticipated revenues, expenses, and the like. Moreover, this Court can take judicial notice of its own docket and the City's Clean Water Act litigation, *United States of America v. The City of East St. Louis, Illinois*, Cause No.: 3:24-cv-2592, and the extreme expenses the City faces presently

and into the indeterminable future, expenses for which the City Manager declared there are no known current or future revenue sources to meet those expenses.

The City has also met the second set of *Rivera* criteria for a finding of the functional equivalent of "indigency." The City has acted in good faith throughout, trying its best to win a lawsuit which would have provided some funding to remediate longstanding environmental contamination in its southern end. And the case was close on substantive liability. Although the case was dismissed on timing grounds, (ECF 427, p.2), Monsanto's Rule 30(b)(6) representative and retained experts acknowledged that Monsanto intentionally vented PCBs into the ambient atmosphere knowing that those PCBs would drift onto adjacent properties, and thus that some of the City's PCB contamination was from Monsanto's W.G. Krummrich Plant. (ECF 330, pp. 25-26, ¶¶ 62-86). *Rivera*, 469 F.3d at 635-36.

And the analysis is the same under the "manifest injustice" standard of Rule 26(b)(4)(E)(i). For the same reasons cited above, the City has no current or foreseeable future revenue sources to pay any of the over $100 million in anticipated expenses discussed by City Manager Betts or to lessen the massive General Fund deficit it currently faces. Under the *Bradford* standard, most courts have found that "manifest injustice" under Rule 26(b)(4)(E) either exists when (1) a party is indigent or (2) requiring a party to pay an expert's fee would create an undue hardship. *Bradford v. Obaisi*, No. 16-cv-8112, 2019 WL 4166855, at *2 (N.D. Ill. Sept. 3, 2019). For all the reasons cited above, the City has demonstrated *both* the functional equivalent of "indigency" *and* that ordering it to pay over $320,000.00 in litigation costs and expensive expert fees would constitute an undue hardship on its already fragile financial situation.

**CONCLUSION**

For the foregoing reasons, the City of East St. Louis, Illinois, respectfully moves that this

Court deny Monsanto's Request for Costs in its entirety or, alternatively, and in the event it does not deny the Request, to then consider the simultaneously filed Objections and Responses to Monsanto's Request for Costs.

Dated: April 27, 2026

Respectfully submitted,

**THE DRISCOLL FIRM, P.C.**

*_/s/ Paul W. Johnson_*
Paul W. Johnson, #6193774
Christopher J. Quinn, #6310758
211 N. Broadway, Suite 4050
St. Louis, MO 63102
Phone: (314) 932-3232
Fax: (314) 932-3233
Paul@thedriscollfirm.com
Chris@thedriscollfirm.com

**THE DRISCOLL FIRM, LLC**
John J. Driscoll, #6276464
1311 Avenida Ponce de Leon, 5th Floor
San Juan, PR 00907
Phone: (618) 444-6049
Fax: (314) 932-3233
John@thedriscollfirm.com

**THE DRISCOLL FIRM, P.C.**
Matthew J. Limoli, #6328051
434 Fayetteville Street, Ste. 560
Raleigh, NC 27601
Phone: (919) 582-6516
Matthew@thedriscollfirm.com

**CHATHAM & BARICEVIC**
John Baricevic, #3121537
Grey Chatham, #6312518
107 W. Main Street
Belleville, IL 62220
Phone: (618) 233-2200
Fax: (618) 233-1589
john@chathamlaw.org
greyjr@chathamlaw.org

**SMOUSE & MASON, LLC**
Roy L. Mason, #938118
Zachary E. Howerton, #151215033
233 Duke of Gloucester Street
Annapolis, MD 21401
Phone: (410) 269-6620
Fax: (410) 269-1235
rlm@smouseandmason.com
zeh@smouseandmason.com

**LEMMON LAW FIRM, LLC**
Andrew A. Lemmon, LA Bar # 18302
5301 Canal Boulevard, Suite A
New Orleans, LA 70124
Phone: (984) 257-7987
andrew@lemmonlawfirm.com

**MILBERG PLLC**
Vicki J. Maniatis, #6231297
405 East 50th Street
New York, NY 10022
Phone: (516) 491-4665
Fax: (865) 522-0049
vmaniatis@milberg.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 27, 2026, the foregoing document was electronically filed with the Clerk of Court and will be served by operation of the Court's CM/ECF system upon all registered parties. The foregoing document also was served via electronic mail upon:

Philip Rice
Rice Law Offices
110 E. Lincoln Street
Belleville, Illinois 62220
price@ricelawoffices.com

*/s/ Paul W. Johnson*
Paul W. Johnson